# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 0:21-md-03015-SINGHAL

IN RE:                                                    MDL CASE NO.: 3015

**JOHNSON & JOHNSON SUNSCREEN
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION**
_____ /


**THIS DOCUMENT RELATES TO: ALL CASES**

_____ /


## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e), Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich on behalf of the putative classes (collectively, the "Plaintiffs"), respectfully move the Court to enter an order: (1) preliminarily certifying a proposed nationwide Class for settlement purposes only, and appointing the Plaintiffs as the representatives of the Class and the undersigned as counsel for the Class; (2) preliminarily approving the Parties' proposed Class Action Settlement Agreement, including all exhibits thereto (collectively, the "Settlement"); (3) approving the notice plan and forms of notice to the Class proposed by the Settlement; (4) appointing Rust Consulting as the Settlement Administrator; (5) setting dates and procedures for opt-outs, objections, and a final fairness hearing under Federal Rule of Civil Procedure 23(c)(2); and (6) issuing a preliminary injunction for purposes of protecting the Court's jurisdiction while the Court considers whether the settlement should be finally approved. This motion is based on the following Memorandum of Points and Authorities, the accompanying declaration of Attorneys' R. Jason Richards, Kiley Grombacher, David Byrne, Seth Meyer, and Alexandria Walsh and the exhibits attached thereto

13230003v.1

("Class Counsel Decl."), the other pleadings on file in this matter, any other materials or testimony that may be submitted at the hearing, and any further argument that the Court might allow. The Parties' proposed Settlement is attached as Exhibit 1 to the Declaration of Kiley Lynn Grombacher ("Grombacher Decl.").

Prior to the filing of this motion, the undersigned conferred with counsel for Johnson & Johnson Consumer Inc. (hereafter "JJCI") pursuant to Local Rule 7.1(a)(3) regarding this motion and the relief it seeks, and JJCI's counsel stated their non-opposition to this motion for purposes of settlement only. Plaintiffs request oral argument on this motion, should the Court desire it, pursuant to Local Rule 7.1(b)(1). It is estimated that oral argument will require no more than one hour.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 3

I.     INTRODUCTION ......................................................................................................... 4

II.    PROCEDURAL BACKGROUND ............................................................................... 8

III.   THE PRIMARY TERMS OF THE SETTLEMENT ................................................... 10

A.   The Proposed Class ................................................................................................... 10

B.   Opt-Out Provisions ................................................................................................... 11

C.   Relief Provisions ....................................................................................................... 11

D.   Release ....................................................................................................................... 13

E.   Notice and Settlement Administration ..................................................................... 13

F.   Incentive Awards to Named Plaintiffs ..................................................................... 14

G.   Attorneys' Fees and Expenses .................................................................................. 15

IV.   THE CLASS SHOULD BE CONDITIONALLY CERTIFIED ................................. 15

A.   The Class Is Sufficiently Numerous ......................................................................... 16

B.   The Commonality Requirement Is Satisfied ............................................................ 16

C.   The Typicality Requirement Is Satisfied .................................................................. 17

D.   The Plaintiffs and Settlement Counsel Are Adequate Representatives .................... 18

E.   The Class Satisfies Rule 23(b)(3)'s Requirements .................................................. 20

1.   Common Questions of Law and Fact Predominate ................................................. 20

2.   The Class Device is the Superior Method of Adjudication ..................................... 22

V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ............... 23

A.   The Role of the Court ................................................................................................ 24

B.   The Criteria for Preliminary Approval ..................................................................... 25

C.   The Settlement Is Procedurally Fair ......................................................................... 27

D.   The Settlement Is Substantively Fair ........................................................................ 29

VI.   THE PROPOSED NOTICE PLAN SHOULD ALSO BE APPROVED ..................... 31

A.   The Content of the Proposed Notice Is Appropriate ................................................ 33

VII.  CONCLUSION ........................................................................................................... 35

LOCAL RULE 7.1(a)(3) CERTIFICATION ............................................................................. 36

## MEMORANDUM OF POINTS AND AUTHORITIES

The Plaintiffs respectfully seek certification of the proposed Class for purposes of settlement, and request that the Court grant preliminary approval of the Parties' Settlement (attached to the Grombacher Decl. as Exhibit 1).[1]

## I.    INTRODUCTION

The Plaintiffs brought this lawsuit on behalf of themselves and a putative class of consumers who purchased Neutrogena®- and Aveeno®-brand sunscreen products (hereafter "Sunscreen Products") allegedly contaminated and/or adulterated with benzene, a known human carcinogen. *See generally Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), ECF No. 1, Compl. The Parties engaged in early settlement discussions, ultimately engaging in mediation before a neutral third party followed by numerous rounds of negotiations and voluntary informal disclosures of data, information, and witness statements by JJCI. Through these efforts, counsel for the Plaintiffs were able to assess the merits of their claims, JJCI's defenses, and the material facts regarding the nature and cause of the benzene contamination in the Sunscreen Products at issue in this case. *See* Richards Class Counsel Decl. at ¶ 8.

Specifically, the Plaintiffs determined that JJCI first became aware of the benzene contamination through the filing of Valisure's Citizen Petition with the FDA on May 25, 2021, wherein Valisure reported it had tested numerous lots of aerosol and lotion sunscreen products from various manufacturers and discovered that certain JJCI sunscreens contained benzene. Immediately thereafter, JJCI began a comprehensive investigation that has determined that the benzene identified in some product samples

---

[1] The Plaintiffs employ certain capitalized words and phrases in this memorandum that are defined in Section 2 of the Parties' Settlement.

stemmed from the isobutane used as a propellant in those aerosol product lines. JJCI's testing did not confirm the presence of benzene in samples of non-aerosol products.

Thereafter, on July 14, 2021, in consultation with the U.S. Food & Drug Administration ("FDA"), JJCI instituted a nationwide voluntary recall from all distribution channels of five product lines of aerosol sunscreen products that had been found to contain benzene, and instructed consumers in possession of such Sunscreen Products to stop using the products.[2] JJCI's lotions, sticks and face mist sunscreens and sunless tanning products were not impacted by the voluntary recall.  On the same day JJCI instituted its recall, it announced it would offer full cash refunds for the full average retail selling price of the affected products, and established a process for claimants to obtain such refunds. That refund program is ongoing. Through due diligence and voluntary informal disclosures, the Plaintiffs have confirmed that millions of Sunscreen Products have been affected by the recall, resulting in refund requests from 323,028 claimants for refunds totaling $9,284,264.58, and an average refund check of $29.53. *See* Richards Class Counsel Decl. at ¶ 9.

Over the course of this litigation, JJCI has fully cooperated with the Plaintiffs in their effort to identify and investigate the benzene contamination issue; in identifying the number of lots potentially affected by contamination issue; and in developing a plan to remediate any potential benzene contamination in the Sunscreen Products in the future. In fact, the Parties agreed early on to attempt to reach a resolution of this matter through private mediation overseen by former United States District Judge John C. Lifland. Through that process, and the Parties' subsequent arms'-length negotiations

---

[2] The aerosol Sunscreen Products impacted by the recall were: (1) NEUTROGENA® Beach Defense® aerosol sunscreen; (2) NEUTROGENA® Cool Dry Sport aerosol sunscreen; (3) NEUTROGENA® Invisible Daily™ defense aerosol sunscreen; (4) NEUTROGENA® Ultra Sheer® aerosol sunscreen, and (5) AVEENO® Protect + Refresh aerosol sunscreen.

and voluntary informal disclosure efforts, the Parties reached the instant Settlement for which the Plaintiffs now seek preliminary approval.

The Parties' Settlement is a fair, reasonable and adequate compromise of the claims at issue in this lawsuit. Plaintiff Serota's operative complaint—the First Amended Class Action Complaint (ECF No. 4)—asserts claims on behalf of herself and a putative class of consumers for violations of various states' consumer protection and/or deceptive and unfair trade practices acts, unjust enrichment, negligent misrepresentation/omission, breach of express and implied warranties, strict product liability-failure to warn, and strict product liability-manufacturing defect. *See generally Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), ECF No. 4, First Am. Compl. at ¶¶ 38-237. The relief sought under all of these claims is compensatory and injunctive in nature. It seeks, *inter alia*, an award of compensatory damages, interest, attorneys' fees and costs, as well as injunctive relief to prevent JJCI from continuing to market and sell Sunscreen Products that may be contaminated with benzene. *Id.* at ¶¶ 1, 36, 52.

In summary, the relief offered by the Settlement offers members of the Class a full accounting by (1) providing a full refund for those Sunscreen Products subject to JJCI's voluntary recall through January 14, 2022 and (2) providing a voucher equal to the average retail selling price of certain non-aerosol products which may be used toward the purchase of any Neutrogena or Aveeno product(s). The vouchers shall be transferable, may be aggregated and shall expire not less than twelve (12) months from their issuance.

The Settlement also offers injunctive relief that requires JJCI to direct its external manufacturer to (1) purge any existing inventory of isobutane intended for the use in Sunscreen Products; (2) adopt new testing protocols requiring any supplier of isobutane raw material intended for use in Sunscreen Products to test for the presence of benzene at no more than 1 part per million (PPM) and refrain from shipping such raw material unless the shipment has passed such test; and (3) engage an independent, ISO-certified

laboratory to test random samples from at least 25% of manufacturing lots of finished goods Sunscreen Products for the presence of benzene, and to withhold release of such finished goods from such lots unless all samples have passed the test.

The right of exclusion provided by the Settlement also permits those who are not satisfied with the Settlement's terms to exclude themselves from the Class, and thereby preserve their right to bring an individual lawsuit against JJCI if they choose to do so. Moreover, the Parties have agreed to retain a third-party administrator, Rust Consulting, to administer the Settlement and to provide the Class with notice *at JJCI's expense*. In other words, the Costs of Administration of the Settlement will not reduce the relief being offered to the Class Members, so the Class Members will have the opportunity to obtain a 100% refund for the recalled products and a voucher for the purchase price of replacement, non-recalled Neutrogena or Aveeno products (though the voucher can be applied to *any* Neutrogena or Aveeno product, not just sunscreen). The Plaintiffs and JJCI reached the Settlement through hard-fought, protracted, arm's-length negotiations that included a full day of mediation and several weeks of on-going negotiations thereafter.

The Settlement is supported by confirmatory due diligence verification of the critical facts through the voluntary informal exchange of information, and will be further subject to confirmatory discovery in the form of the depositions of JJCI representatives Derek Henderson and Carla Oliveira. Because the Settlement offers Class Members a 100% refund on recalled products, a voucher toward the purchase of replacement Neutrogena or Aveeno products, and requires JJCI to initiate a testing protocol to prevent benzene contamination in its Sunscreen Products in the future—all without the need, cost and risk of litigation over JJCI's defenses to the Plaintiffs' claims—it is clear that the Settlement represents a fair, reasonable and adequate compromise warranting preliminary approval and conditional class certification for purposes of settlement and notice. *Messineo v. Ocwen Loan Serv., LLC*, No. 15-cv-02076, 2017 WL 733219, at *9 (N.D. Cal. Feb. 24, 2017) (noting it is "a rare class action settlement which provides

complete relief for all alleged harms."). Moreover, JJCI does not oppose this motion and will continue to cooperate in the settlement process. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's cooperation "is an appropriate factor for a court to consider in approving a settlement.").

## II.    PROCEDURAL BACKGROUND

Plaintiff Serota initially commenced this action in this Court on May 25, 2021. *See generally* Compl., ECF No. 1.  Serota's case is the first filed of all cases seeking class relief arising out of the presence of benzene in JJCI's Sunscreen Products. The Brennan Plaintiffs, also represented by undersigned counsel, filed their suit in California State Superior Court on May 26, 2021, which was subsequently removed by JJCI to the United States District Court for the Northern District of California, seeking to represent a putative California-only class. *See Brennan v. Johnson & Johnson Consumer Inc*., 21-cv-5419 (N.D. Cal.), ECF No. 1. The Brennan action was the second filed case.

On July 14, 2021, JJCI announced it was initiating a voluntary recall of several of its aerosol Sunscreen Products due to the presence of benzene. Shortly thereafter, counsel for Plaintiffs in the Serota and Brennan actions began settlement discussions with JJCI. Then, on July 29, 2021, counsel for the plaintiffs in a parallel action filed papers before the Joint Panel on Multi-District Litigation ("JPML") for transfer of the actions to the District of New Jersey. On July 30, 2021, the Serota Plaintiffs filed a first amended class action complaint adding an additional Florida plaintiff and plaintiffs from Colorado, Illinois, Maryland, Michigan, New York, Ohio, Oregon, and Washington. *See Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), ECF No. 4, Am. Compl. The JPML issued its Transfer Order consolidating these cases before this Court on October 8, 2021. *See generally* ECF No. 1.

After initiating settlement discussions, in July 2021 the Parties agreed to jointly retain former United States District Court Judge John C. Lifland as the mediator in an attempt to reach a nationwide resolution. Confidential mediation statements were prepared by both Parties and submitted to Judge

Lifland prior to mediation. The mediation session took place on September 8, 2021, wherein the Parties discussed and evaluated the claims, damages, allegations and defenses, and were able to agree in principle on a general framework for global settlement, including with respect to retailer defendant Costco Wholesale Corporation ("Costco").[3] The Parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, and for several weeks thereafter Settlement Counsel and JJCI's counsel did so. During this process, Settlement Counsel also retained experienced experts and consultants to evaluate the claims asserted by JJCI. Richards Class Counsel Decl. at ¶8. Ultimately the Parties were able to reach an agreement in principle to settle the litigation on a classwide basis, which agreement was memorialized on October 21, 2021 via a Confidential Term Sheet. A Notice of Settlement was then drafted and filed with the Court on October 29, 2021. *See* ECF No. 25.

Following execution of the Confidential Term Sheet, the Parties began drafting the necessary documentation to allow for the voluntary disclosure of information. Settlement Counsel initially drafted and provided JJCI with a list of documents and data they requested be provided. That request was subsequently negotiated by the Parties and revised. Following an agreement on the initial voluntary disclosures to be provided, the Parties negotiated a Non-Disclosure Agreement, which was executed on November 20, 2021. On November 30, 2021, JJCI began its voluntarily disclosure of data, information and witness statements. Counsel for JJCI and the Class jointly drafted and then executed the Class Action Settlement Agreement that memorializes and governs the Settlement.

Over the course of the Parties' negotiations, JJCI has voluntarily produced information by which Plaintiffs have been able to assess the merits of the claims and defenses.  The type of information produced to the Plaintiffs included information regarding JJCI's notice of benzene contamination,

_____

[3] Costco is named as a defendant in one of the Actions pending before this Court. *See McLaughlin v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-13710 (D.N.J.).

communications between JJCI and its affiliates concerning benzene contamination; information regarding studies and analysis performed by JJCI with respect to the benzene contamination; JJCI's communications with FDA regarding the contamination; information about JJCI's sunscreen manufacturers and raw material suppliers; and information on JJCI's refund program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications. Richards Class Counsel Decl. at ¶9. The voluntary disclosure of information thus far provided is subject to further confirmatory discovery in the form of depositions, as discussed herein, prior to seeking final approval of the Settlement.

These voluntary exchanges of information were coupled with Plaintiff's independent investigation regarding their claims and JJCI's defenses.  Such investigation included the testing of products using an independent third-party laboratory, consultations with experts in the fields of chemistry, cosmetics and toxicology and informal surveys of class members regarding issues such as the sufficiency of JJCI's voluntary refund/recall.

## III.     THE PRIMARY TERMS OF THE SETTLEMENT

The Settlement resolves all claims of the Plaintiffs and the Class against JJCI, excluding claims for personal injuries. The details are contained in the Settlement Agreement. *See generally* Exhibit 1 to Grombacher Decl. The primary terms of the Settlement are described below.

### A.     The Proposed Class

The proposed Class comprises all consumers who purchased Neutrogena and/or Aveeno Sunscreen Products at issue in this litigation, and is defined as:

> All persons and entities in the United States who, at any time between May 26, 2015 and the Notice Date purchased one or more of the Aerosol Products or Non-Aerosol Products defined herein for personal, family, or household use and not for resale:
> Neutrogena/Aveeno Aerosol Products: Neutrogena® Beach Defense® aerosol sunscreen,

Neutrogena® Cool Dry Sport aerosol sunscreen, Neutrogena® Invisible Daily™ defense aerosol sunscreen, Neutrogena® Ultra Sheer® aerosol sunscreen, and Aveeno® Protect + Refresh aerosol sunscreen.

<u>Neutrogena/Aveeno Non-Aerosol Products</u>: Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion.[4]

Settlement at ¶ 11. Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of JJCI, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff. (*Id.*).

**B.   <u>Opt-Out Provisions</u>**

The Settlement allows any Class Member to opt-out of the Settlement and the Class. Any Class Member who wishes to seek exclusion from the Class will be advised of his or her right to be excluded, and of the deadline and procedures for exercising that right. Settlement at ¶¶ 56, 76, 106.

**C.   <u>Relief Provisions</u>**

a.   Monetary Relief

The Settlement offers relief in the form of refunds to consumers for the full average retail selling price of the recalled aerosol Sunscreen Products. For refunds of three (3) or fewer items, no proof of purchase is required. Claimants seeking refunds for more than three units must submit some evidence of their purchases (e.g., a store receipt or photograph of the containers of Sunscreen Products). JJCI will continue the refund program until January 14, 2022. An independent, mutually agreed upon external

---

[4] The Neutrogena and Aveeno products referenced in this class definition encompass the entire product lines of Sunscreen Products impacted by this Settlement.

ombudsman shall be retained to assist in resolving any complaints or concerns about, or claims submitted in connection with, the refund program, and JJCI shall inform claimants of the availability of the services of the ombudsman on its settlement website.  In the event of a disagreement, the ombudsman shall retain final decision-making authority with respect to claims submitted pursuant to the refund program.

In addition, a voucher program has been incorporated into the Settlement to provide relief to consumers with respect to JJCI's non-aerosol Sunscreen Products (i.e. those Sunscreen Products not subject to JJCI's recall). Through this voucher program, JJCI will offer the purchaser a voucher equal to the average retail selling price of the non-aerosol Sunscreen Products, up to a maximum of two (2) such products per household, toward the purchase of any Neutrogena or Aveeno products (i.e., not limited to sunscreen). Vouchers shall be transferrable and shall expire not less than twelve (12) months from their issue date. The maximum face value of vouchers to be distributed by JJCI under the non-aerosol voucher program will be $1.75 million, and each claim will be reduced on a *pro rata* basis in the event that claims exceed this amount. *See* Settlement at ¶ 53. Purchasers of non-aerosol Sunscreen Products will be informed that they may be eligible for partial compensation under the voucher program through the notice program described below.

   b.  Injunctive/Non-Monetary Relief

The Settlement also offers injunctive/non-monetary relief which is designed to appropriately address the benzene contamination issue in this litigation. Specifically, the Settlement provides injunctive relief that requires:

   (1) JJCI to direct its external manufacturer to purge any existing inventory of isobutane intended for the use in Sunscreen Products;

   (2) JJCI to adopt a new specification, applicable to any supplier of isobutane raw material for use in its Sunscreen Products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene for a period of two (2) years from the date of execution of the Settlement;

(3) JJCI to direct its external manufacturer to require that, prior to dispatching any shipment of isobutane intended for use in Sunscreen Products, its raw material suppliers test for the presence of benzene at one (1) PPM or more in such material, and to refrain from shipping such raw material unless the shipment has passed such test;

(4) JJCI to require that, upon receipt of any shipment of raw material isobutane intended for use in Sunscreen Products, JJCI's external manufacturer test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from use of such raw material unless it has passed such test; and

(5) JJCI's external manufacturer to engage an independent, ISO-certified laboratory to test a reasonable number of random samples from at least 25% of manufacturing lots of finished goods Sunscreen Products for the presence of benzene for a minimum period of three (3) months from the execution of the Confidential Term Sheet, or until January 21, 2022, and to withhold release of such finished goods from such lots unless all samples have passed the test.

**D.    Release**

In exchange for the relief described above, and upon entry of a Final Order and Judgment approving the Settlement, the Plaintiffs and the Class will release JJCI, Costco and their related and affiliated entities (the "Released Parties," as further defined in Paragraph 34 of the Settlement) from, *inter alia*, all claims (excluding claims for bodily injuries) for injunctive relief or economic loss arising out of or relating to the facts, activities, or circumstances alleged in the Action (as defined in Paragraph 1 of the Settlement). Settlement at ¶¶ 68-71. In other words, the Settlement contemplates a release specific to the subject matter addressed in this Action, and does not contemplate a general release of any and all claims of any kind against JJCI.

**E.    <u>Notice and Settlement Administration</u>**

The Parties have agreed to the appointment of Rust Consulting to act as the Settlement

13

Administrator and to provide notice to the proposed Class. Settlement at ¶ 38. The costs of distributing notice and for settlement administration (up to a maximum of $500,000) are to be paid separately by JJCI, outside of, and in addition to, the refund and voucher programs being offered to the Class Members. *Id.* at ¶ 58.

## F.     Incentive Awards to Named Plaintiffs

Under the Settlement, Settlement Counsel have reserved the right to seek reasonable Incentive Awards to named plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich in the amount of $250 each, for a total of $3,000, for their services as the representatives of the Class. Settlement at ¶ 59. The Incentive Awards would be paid separately by JJCI from the relief being offered to the Class Members, and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs. *Id*. at ¶ 61.

The Incentive Awards are intended to recognize the time and effort expended by the Plaintiffs on behalf of the Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer to the Class Members, as well as the exposure and risk the Plaintiffs incurred by participating and taking a leadership role in this litigation. *Id.* at ¶ 59; *see also, e.g.*, *Walters v. Cook's Pest Control, Inc*., No. 2:07-cv-00394, 2012 WL 2923542, at *14 (N.D. Ala. July 17, 2012) ("[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.") (quoting *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)). *Accord* 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 6:28 at 197 (10th ed. 2013) ("[T]here is near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000 - $20,000."). Plaintiffs are cognizant of the Eleventh Circuit's opinion in *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244 (11th Cir. 2020) and, while Plaintiffs are

hopeful that the petition for rehearing *en banc* will be granted, the Settlement is not conditioned upon any Incentive Award being approved by the Court. Settlement at ¶ 59.

## G. <u>Attorneys' Fees and Expenses</u>

Under the Settlement, Class Counsel have also reserved the right to petition the Court for an award of reasonable attorneys' fees of up to $2,500,000 and reimbursement of costs and expenses incurred in the prosecution of this case up to $100,000. Settlement at ¶ 63. The Attorneys' Fees and Expenses provision was separately and independently negotiated by the Parties apart from the class settlement provisions, in an arm's-length negotiation.  Any such Attorneys' Fees and Expenses award would be paid separately by JJCI from the relief being offered to the Class Members. The Settlement is not conditioned upon any Attorneys' Fees and Expenses award being approved by the Court. *Id*.

## IV. <u>THE CLASS SHOULD BE CONDITIONALLY CERTIFIED</u>

Before evaluating the fairness, adequacy and reasonableness of the Parties' Settlement, the Court must "make a preliminary determination" as to whether the proposed Settlement "satisfies the criteria [for class certification] set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 at 321 (2004). In other words, while "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits," *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), a court must still "find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (internal quotations omitted).[5]

---

[5] *See also Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "the strong judicial policy in favor of settlements, particularly in the class action context."); *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 311 (3d Cir. 2011) (there is a "strong presumption in favor of voluntary settlement agreements" which "is especially strong in class actions and other complex

To be certifiable, Rule 23(a) requires that a proposed class meet four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a)(1)-(4). In addition, where, as here, a plaintiff seeks certification of a class under Rule 23(b)(3), she must demonstrate "that questions of law or fact common to class members predominate over any questions affecting only individual members," and that use of the class device "is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

## A.      The Class Is Sufficiently Numerous

Rule 23(a)'s numerosity requirement is met if the potential class is so numerous that the alternative—joinder of individual plaintiffs—is "impracticable." FED. R. CIV. P. 23(a)(1). "While there is no predetermined threshold number of plaintiffs required to certify a class, in the Eleventh Circuit, a prospective class consisting of more than forty members is generally deemed sufficient." *Navelski v. Int'l Paper Co*., No. 3:14-cv-445, 2017 WL 1132569, at *15 (N.D. Fla. Mar. 25, 2017) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Here, the Class is comprised of hundreds of thousands of consumers that purchased Sunscreen Products potentially contaminated with benzene. Richards Class Counsel Decl. at ¶ 9. Accordingly, the proposed Class easily satisfies Rule 23(a)'s numerosity requirement.

## B.      The Commonality Requirement Is Satisfied

Rule 23(a)(2) requires there be some "questions or law or fact common to the class." FED. R. CIV. P. 23(a)(2). In other words, not all questions of law and fact at issue in a case need to be common—instead, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). A question of law or fact will be common to the class if it is "of such a

---

cases"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350; *see also Navelski*,  2017 WL 1132569, at *15.

Here, the claims of the Plaintiffs and the Class present a number of common factual and legal questions, including but not limited to:

- whether JJCI's Sunscreen Products contained benzene;

- whether JJCI's omissions are misleading, or objectively reasonably likely to deceive;

- whether the alleged conduct constitutes violations of the laws asserted;

- whether JJCI's alleged conduct violates public policy;

- whether JJCI engaged in false or misleading advertising;

- whether JJCI was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Sunscreen Products; and

- whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss.

In other words, this case presents *several* common questions of law and fact.  These issues are susceptible to classwide proof, and their resolution would "affect all or a significant number of the putative class members" in a manner "apt to drive the resolution of th[is] litigation." *Wal-Mart Stores*, 564 U.S. at 350. Because these common issues can be resolved for all members of the proposed Class in a single adjudication, through common class-wide proof, and are the central focus of this litigation, Rule 23(a)(2)'s commonality requirement is also satisfied.

**C.**    **The Typicality Requirement Is Satisfied**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Therefore, "[a] class representative must

possess the same interest and suffer the same injury as the class members." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004). "Yet, the '[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012) (quotation omitted). Typicality therefore exists where "the claims of the class and its representatives arise from the same events, practice, or conduct and are based on the same legal theories." *Navelski*, 2017 WL 1132569, at *15.

Here, the Plaintiffs' claims arise from the same events, practices, and conduct that give rise to the claims of all other Class Members. The Plaintiffs and the members of the proposed Class purchased JJCI's Sunscreen Products without knowledge that they were contaminated with benzene, and they all suffered financial harm as a result. But for JJCI's misconduct, Plaintiffs and the members of the proposed Class would not have purchased JJCI's Sunscreen Products. In other words, "the same unlawful conduct affected both [the Plaintiffs] and the rest of the [proposed C]lass." *Navelski*, 2017 WL 1132569, at *15. And the Plaintiffs' claims and those of the members of the proposed Class are based on the same legal theories—that JJCI wrongfully failed to disclose that its Sunscreen Products contained benzene, in violation of applicable law, and Plaintiffs would not have purchased the Sunscreen Products had they known they contained benzene. Because the claims of the Plaintiffs and the absent class members concern the same alleged conduct by JJCI, allege the same harm, and arise from the same legal theories, Rule 23(a)(3)'s typicality requirement is satisfied.

## D. **The Plaintiffs and Settlement Counsel Are Adequate Representatives**

"Rule 23(a)(4) requires that both the named plaintiffs and their counsel will 'fairly and adequately protect the interests of the class." *Navelski*, 20017 WL 1132569, at *16 (quoting FED. R. CIV. P. 23(a)(4)). "The adequacy of representation requirement encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the

18

representatives will adequately prosecute the action." *Busby v. JRHBW, Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, no conflict exists between the named and unnamed Class members because their interests are aligned. The Plaintiffs are members of the Class they seek to represent. They and the members of the proposed Class all purchased Sunscreen Products allegedly contaminated with benzene, suffering financial harm. As a result, "[t]he economic interests and litigation objectives of [the Plaintiffs and] all class members are . . . entirely consistent," even though their "damages will differ in degree." *Navelski*, 2017 WL 1132569, at *16.

Moreover, the Plaintiffs have and will continue to adequately protect the interests of the Class. The Plaintiffs were integral in timely coming forward with Sunscreen Products allegedly contaminated with benzene and providing information with respect to their purchases, and they continue to stay actively involved in the litigation. *See* Declarations of Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Heather Rudy, Judith Barich, Fredric Salter, and Carman Grisham. *see also Spinelli v. Capital One Bank*, 265 F.R.D. 598, 602 (M.D. Fla. 2009) (holding class representative who was knowledgeable about the case and lacked any conflict of interest with the class was adequate representative); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 688 (S.D. Fla. 2013) (holding class representative with "no antagonism between [his] interests and those of the putative class members" met the adequacy requirement). Further, while the Settlement provides Class Counsel with the right to seek $250 Incentive Awards payable to each named class representative, "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015); *see also In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036, 2014 WL 12557836, at *9 (S.D. Fla. Apr. 1, 2014) (approving $5,000 service award to class representative, and noting "[t]here is ample precedent for awarding incentive

19

compensation to class representatives at the conclusion of a successful class action.") (quotation omitted); *Walters*, 2012 WL 2923542, at *14 (same).  Here, the Plaintiffs understand that, despite their efforts and the risks assumed on behalf of the Class, they may not be eligible for an Incentive Award pending the Eleventh Circuits disposition of the petition for rehearing *en banc* in *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244 (11th Cir. 2020).

Additionally, Class Counsel are qualified and competent, and will continue to adequately protect the interests of the proposed Class. Counsel regularly engage in the litigation of class action and complex litigation lawsuits. *See* Richards Class Counsel Decl. at ¶ 7, Aylstock Decl. at ¶¶ 6-7; Grombacher Decl. at ¶¶6-11; Meyer Decl. at ¶¶ 4-12; Byrne Declaration at ¶¶; Birchfield Decl. ¶¶ 5-6; Walsh Decl. at ¶¶ 3-8; *see also City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010) ("Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action."). Moreover, Class Counsel have diligently investigated, prosecuted and dedicated substantial resources to this litigation both before, during and after mediation, and will continue to do so throughout the pendency of this case. *See* Richards Class Counsel Decl. at ¶¶ 9, 10. As such, the Plaintiffs and Class Counsel will adequately represent the members of the Class and their interests.

**E.**     **The Class Satisfies Rule 23(b)(3)'s Requirements**

In addition to the four requirements of Rule 23(a), the proposed class must also satisfy at least one provision of Rule 23(b). *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).  Here, certification of the Class is sought under Rule 23(b)(3), which requires that (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members; and (2) use of the class device is the superior method for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). Both requirements are met here.

**1.**     **Common Questions of Law and Fact Predominate**

The predominance requirement focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Such cohesiveness exists where questions of law or fact common to the class will turn on "the same evidence," *Brown v. Electrolux Home Prods., Inc*., 817 F.3d 1225, 1234 (11th Cir. 2016), and their resolution will "have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo*, 823 F.3d at 985 (quotation omitted). In other words, a common question of law or fact will predominate if "the addition or subtraction of any of the plaintiffs to or from the class [will] not have a substantial effect on the substance or quantity of evidence offered" to resolve that question. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quotation omitted).

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 113 S. Ct. 1184, 1191 (2013). And a plaintiff is not required "to prove that each element of her claim is susceptible to classwide proof." *Id.* at 1196. Rather, she need only show that common questions will predominate with respect to her case as a whole. *Id.* In making this determination, the individualized nature of damage calculations alone cannot "preclude class certification." *Carriuolo*, 823 F.3d at 988 (collecting cases); *see also Brown*, 817 F.3d at 1239; *Allapattah Servs., Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003) ("[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.").

Here, the commonality requirement is easily met. The evidence necessary to prove liability for the Plaintiffs' claims is the same as it would be for each Class Member. The question whether JJCI failed to disclose the presence of benzene in its Sunscreen Products, in violation of applicable law, are not only common to the Class, but are the predominate consideration in deciding whether JJCI is liable to the Plaintiffs and Class Members. *See, e.g.*, *Demsheck v. Ginn Dev. Co., LLC*, No. 3:09-CV-335-J-25TEM,

2013 WL 12177811, at *3 (M.D. Fla. Sept. 30, 2013) (common questions predominated because the "crux of all class members' claims" was an allegation that the defendant treated them identically in failing to provide them with a property report before they signed a real estate purchase contract). And those questions are susceptible to resolution through common, generalized proof—namely, by looking at the Sunscreen Products labeling in conjunction with applicable disclosure requirements. In other words, the evidence the Plaintiffs would offer at an individual trial to establish liability would be the same sort of evidence that every member of the proposed Class would also have to offer at their own individual trials.

**2.**     **The Class Device is the Superior Method of Adjudication**

The superiority prong of Rule 23(b)(3) requires a court to determine whether use of the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The focus of this inquiry is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Navelski*, 2017 WL 1132569, at *18 (quotation omitted). Factors relevant to the superiority analysis include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. FED. R. CIV. P. 23(b)(3).[6]

Here, use of the class action device is superior to other available procedural methods for adjudicating the claims at issue in this case. The damages or other financial detriment suffered by the Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against JJCI. Thus, members of the Class would have

---

[6] Rule 23(b)(3) also lists a fourth factor—the likely difficulties in managing a class action. However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

little interest in pursuing their own separate actions given that "this matter involves relatively small individual claims compared to the cost of litigating complexing legal issues against a relatively large corporate entity like [JJCI]." *Navelski*, 2017 WL 1132569, at *18; *see also Amchem,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). And although the membership of the Class is readily identifiable, the joinder of even a fraction of Class Members is impracticable.

At the same time, the use of the class action mechanism is likely the only practical way of resolving the claims of the hundreds of thousands of Class Members, while at the same time avoiding the potential for repetitious litigation and inconsistent adjudications if the claims were pursued individually. Individual litigation against JJCI could result in inconsistent judgments. Under these circumstances, use of the class mechanism is the superior alternative for resolving this dispute as it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979). After all, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

Accordingly, use of the class action mechanism here is the superior method for adjudicating this controversy, and because all other requirements for class certification under Rule 23 are met, the proposed Class should be conditionally certified for purposes of settlement only.

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

After the Court makes a determination that the proposed class satisfies the requirements for certification under Rule 23, the Court must then make a "preliminary fairness evaluation" of the proposed class settlement based on the "briefs, motions, [and] informal presentations by parties."   MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 21.632 at 320-21 (2004).

Here, the Court should preliminarily approve the Settlement not only because public policy favors the settlement of complex class actions such as this one, but also because the Settlement offers full reimbursement for the purchase price of recalled Sunscreen Products, a voucher towards the purchase of Sunscreen Products not subject to recall, and injunctive relief which addresses the cause of the contamination and implements new protocols and procedures to remedy it and prevent it from recurring. As previously noted, the relief sought in this Action is both compensatory and injunctive in nature. *See generally* ECF No. 4, First Am. Compl. And it is "a rare class action settlement which provides complete relief for all alleged harms." *Messineo*, 2017 WL 733219, at *9 (noting class settlement recoveries of 9% are generally considered a "substantial achievement," and approving settlement that offered class members the opportunity to submit claims "to remediate any actual damages they may have suffered"). At the same time, the Settlement allows Class Members dissatisfied with the Settlement's terms to exclude themselves from the Class to pursue their own lawsuit against JJCI.

## A.       The Role of the Court

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class action basis. Such review involves a well-established two-step process involving (1) preliminary approval of the settlement and the method and form of class notice; and (2) final approval after notice and a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The purpose of the first step of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* at 621 n.3. In this regard, the Settlement should be preliminarily approved if it (i) "appears to fall within the range of possible approval," and (ii) "does not disclose grounds to doubt its fairness or other obvious deficiencies." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001); *see also Family Med. Pharm., LLC v. Holdings*, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016)

("Preliminary approval . . . does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. . . . [T]he court simply determines whether the proposed settlement falls within the range of possible approval."); *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

Approval of a proposed class action settlement is a matter within the discretion of the court. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Such discretion is conferred in recognition that "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972), *rev'd on other grounds by* 495 F.2d 448 (2d Cir. 1974); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 627 (11th Cir. 2015). In exercising that discretion, courts have recognized that as a matter of sound public policy, settlements of disputed claims are encouraged and the settlement approval process should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *accord In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). Recognizing that a settlement represents an exercise of judgment by the parties, it has been consistently held that the function of a court reviewing a settlement is neither to rewrite the parties' agreement nor to try the case by resolving issues left unresolved by the settlement. *See, e.g.*, *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) ("Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by the parties.").

**B.**     **The Criteria for Preliminary Approval**

To grant preliminary approval, the Court need only find that the terms of  the Settlement fall within the range of possible final approval. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 at 320-21. The range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable."  *Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (citation omitted). The Court should instead "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," because it is "proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Accordingly, the relevant inquiry is "whether the recovery falls within that range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil Co. v. Wotoco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd.*, 166 F.3d 581 (3d Cir. 1999).  In addition, courts should also assess whether "the proposed settlement appears to be the product of serious, informed, non–collusive negotiations," and whether it "improperly grant[s] preferential treatment to class representatives or segments of the class" to ensure the Settlement's procedural fairness. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. at 102.

In making any preliminary approval determination, the Court need not reach any ultimate conclusions on the substantive factual or legal issues presented in the case. *Carson v. Am. Brands, Inc.*,

450 U.S. 79, 88 n.14 (1981) (in considering whether to approve a class settlement, courts "do not decide the merits of the case or resolve unsettled legal questions."). "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the Court try the case which is before it for settlement . . . such procedure would emasculate the very purpose for which settlements are made." *Grinnell Corp.*, 495 F.2d at 462. Nor should the court "make the proponents of the agreement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

**C.**     **<u>The Settlement Is Procedurally Fair</u>**

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. at 102.  In making this determination, courts begin with a presumption of good faith in the negotiating process. *See Lee v. Ocwen Loan Serv., LLC*, No. 14-CV-60649, 2015 WL 5449813, at*11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, NA*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").

Here, the record supports the procedural fairness of the proposed Settlement. The Parties were separately represented by able and experienced counsel in complex actions and consumer litigation, and "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. The Parties' negotiations were protracted, continuing over a four-month period, with the assistance of experts working closely with a significant amount of data produced in the initial voluntary disclosures and due diligence process with respect to the claims at issue, which will be subject to confirmatory discovery in the form of future depositions of JJCI representatives Derek

Henderson and Carla Oliveira. *See* Settlement ¶ 118 . Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977), and the Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). On top of that, the Parties' negotiations occurred within the context of mediation conducted by retired United States District Judge John C. Lifland. The participation of such a respected neutral in the settlement negotiation process should give the Court "confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner." *In re AMF Bowling,* 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004); *see also Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd.*, 68 F.3d 1233 (11th Cir. 2011).

In addition, there is no evidence suggesting that the Plaintiffs or Class Counsel are unfairly benefiting at the expense of the Class. The proposed compensation to Class Counsel of up to $2,500,000 in attorneys' fees and expenses and up to $100,000 in costs reimbursement is sufficiently reasonable at this stage to warrant preliminary approval, in light of the total potential economic impact in terms of the relief being offered to the Class. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 1/3% of settlement value); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (approving 33% award, and noting "[t]he requested fee is entirely consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Southern and Middle Districts of Florida."). The proposed Settlement does not grant preferential treatment to the Plaintiffs, who may receive up to $250 individually as an incentive award as compensation for their time, effort, and inconvenience in connection with acting as class representatives in this matter. *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *2 (S.D.

Fla. Sept. 3, 2020) (awarding $15,000 to plaintiff as class representative); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *11 (S.D. Fla. Nov. 9, 2018) (awarding each class representative a $50,000.00 incentive award); *Almanzar v. Select Portfolio Serv., Inc*., 2016 WL 1169198, at *4 (S.D. Fla. Mar. 25, 2016) ($5,000 service award "fair, reasonable, and adequate"). There is nothing collusive about the Plaintiffs and Settling Class Counsel's reservation of the right to seek such awards. Accordingly, there is no evidence or settlement term that suggests the Settlement is tainted by fraud or collusion. Furthermore, the Settlement is not conditioned on the Court's approval of the incentive award.  Therefore, if the Court rejects the incentive award under *Johnson*, 975 F.3d 1244, the remainder of the Settlement should still be approved.

## D.      The Settlement Is Substantively Fair

In evaluating whether to grant preliminary approval, the Court need only determine whether the terms of the Settlement fall within the range of possible final approval. *See, e.g*., *Lazy Oil Co*., 95 F. Supp. 2d at 338 (in considering a class settlement, the inquiry properly is "whether the recovery falls within th[e] range of reasonableness, not whether it is the most favorable possible result of litigation"). After a settlement in principle was negotiated, the Parties worked to craft terms of the proposed Settlement and a plan for notice to the Class. The Settlement affords relief that is not only within the range of possible final approval, but which closely tracks what is arguably the best possible recovery available to the Plaintiffs and the Class Members if they were to successfully litigate this Action through trial. The Plaintiffs' claim that they and the other Class Members were subjected to the same unlawful conduct by JJCI. ECF No. 4¶ 31. The primary objective of this Action was compensatory and injunctive: to reimburse consumers for their purchase of contaminated Sunscreen Products and to ensure that corrective action is taken to prevent it from happening again. *Id*. ¶¶ 36, 59. The relief offered by the Settlement accomplishes the stated objectives for each consumer encompassed within the Class. Through the Settlement, Class Members can receive reimbursement for recalled products *and* a voucher toward the

purchase of other Neutrogena or Aveeno products not subject to recall *and* ensure that corrective action is taken to prevent future contamination.

---

In purely quantitative terms, settlement relief is unquestionably an excellent result for the Class Members. Since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class members' estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001). The Settlement here offers a 100% recovery of actual damages for recalled products, a recovery for non-recalled products in the form of a voucher that can be used for any Neutrogena or Aveeno product (not just sunscreens), and injunctive relief, rendering it "a rare class action settlement which provides complete relief for all alleged harms." *Messineo,* 2017 WL 733219, at *9.

Qualitative considerations further bolster the reasonableness of the Settlement. If not settled, there exists real potential for years of further litigation, as well as a possibility that JJCI could prevail on the merits or defeat contested class certification. JJCI's defenses include the fact that benzene was largely undetectable in the non-aerosol products and thus, consumers, in fact, received the product as advertised, labeled and bargained for. Accordingly, liability was not a foregone conclusion. Such facts could also undercut Plaintiffs' ability to satisfy the ascertainability requirement and secure class certification. Moreover, JJCI could assert that benzene is not an "ingredient" in any JJCI sunscreen products (*see* Settlement at [Page#]), so there is no need to label benzene as an ingredient on Sunscreen Products under applicable regulations. Another potential JJCI defense is that applicable product standards, in particular United States Pharmacopeia ("USP") <467>, arguably set a 2ppm limit for benzene as a residual solvent in products. Thus, JJCI could argue, as other manufacturers of benzene contaminated sunscreen have done, that the presence of benzene in sunscreen products is permitted at levels up to 2 ppm. *See*, *e.g. Bowen v. Energizer Holdings, Inc.,* Central District of California, Case No., 2:21-cv-04356-MWF-AGR, ECF Dkts. 50, 58, 62. In other words, JJCI could argue that its Sunscreen Products may contain up to 2 ppm benzene, without the need to disclose the presence of benzene in its products. Additionally, JJCI

could also attempt to invoke the primary jurisdiction doctrine and potentially delay the litigation indefinitely. Although the Plaintiffs are confident that they could successfully overcome JJCI's defenses, if the Court agreed with JJCI on any of its defenses, certification could be denied or class members could be left with no compensation for non-recalled products or an injunctive component that is less than adequate. *See, e.g.*, *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526 (noting that in the class action settlement context, it is "proper to take the bird in hand instead of a prospective flock in the bush."); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) (noting that settlement was approved where "the risk of going forward was substantial" despite the court's belief that the case had merit).

Finally, "[i]t is neither required, nor is it possible, for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member, rather the settlement, *taken as a whole*, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp*., No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993). This Settlement is sufficiently within the range of possible final approval to justify its preliminary approval.

## VI.   THE PROPOSED NOTICE PLAN SHOULD ALSO BE APPROVED

The threshold inquiry concerning the sufficiency of class notice is whether the notice is reasonably calculated to apprise the class of the pendency of the action, of the terms of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). Notice of a class settlement ensures that the due process rights of class members are protected. *See, e.g.*, *Pearson v. Ecological Sci. Corp*., 522 F.2d 171, 176-77 (5th Cir. 1975). Accordingly, a court should ensure that "the best notice that is practicable under the circumstances" is disseminated "in a reasonable manner to all class members who would be bound by the proposal," including through "individual notice to all [class] members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B),(e)(1). Further,

notice can be conveyed by various means, including electronically. *Id*.

The Court is vested with considerable discretion in fashioning notice—both in terms of the notice's content and manner of distribution. 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1797.6, at 200 (3d ed. 2005). This is particularly true within the context of a class action settlement. *See, e.g.*, *Handschu v. Special Serv. Div*, 787 F.2d 828, 833 (2d Cir. 1986); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 913 (E.D. La. 2012), *aff'd*., 739 F.3d 790 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (2014). Such discretion is limited only by the requirement that the contents of the notice "inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [settlement fairness] hearing." 2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (FOURTH) § 8:32 (2002).

After all, Rule 23(e) notice is designed to be only a summary of, and not a complete recitation regarding, the litigation and proposed settlement. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) ("Class Members are not expected to rely upon the notices as a complete source of settlement information."). As such, the notice need not be unduly specific, or reference every term of the proposed settlement. *Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1239 (11th Cir. 2011) ("The standard for the adequacy of a settlement notice . . . is measured by reasonableness," and "the notice need not include 'every material fact' or be 'overly detailed.'"); *Churchill Vill., LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir.2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). This is in keeping with the principle that Rule 23(e) notice is bound only by Constitutional Due Process principles, such that the notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to

present their objections." *Mullane*, 339 U.S. at 314 (citation omitted).

**A.**     **The Content of the Proposed Notice Is Appropriate**

As a general rule, Rule 23 notice should:

(1)     define the class, and disclose whether certification is limited or conditional in nature;

(2)     describe the litigation, including the allegations of the complaint;

(3)     summarize the essential terms of the proposed settlement;

(4)     describe the options available to each class member under the proposed settlement, along with any deadlines;

(5)     disclose any requested allowances for attorneys' fees and special benefits to the class representatives;

(6)     indicate the time and place of the fairness hearing and describe its purpose;

(7)     describe the procedures for filing appearances and objections;

(8)     disclose how class members can contact class counsel; and

(9)     explain how class members may inspect and obtain documents relating to the settlement and the entire litigation.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 at 295-96; 2 NEWBERG ON CLASS

ACTIONS (FOURTH) § 8:32. "It is not the function of the settlement notice to fully inform the class of

all the details of the settlement, but merely to put class members on notice of the general parameters of

the settlement and to inform them of where information as to the specifics may be obtained." *Bennett v.

Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd.*, 737 F.2d 982 (11th Cir. 1984); *accord

Faught*, 668 F.3d at 1239-40.

Here, the class notice proposed by the Parties satisfy all the requirements and guidelines

associated with Rule 23. Specifically, the notice:

•     defines the Class and discloses that it has been certified for purposes of settlement only;

- discloses each Class Member's right to opt-out of the Settlement and the method and deadlines for doing so;

- describes the litigation and the allegations;

- summarizes the key terms of the Settlement, and disclose that the notice is merely a summary of the Settlement's actual and complete terms;

- provides information to Class members on how they may obtain additional information and inspect additional documents relating to the Settlement and the Action generally;

- describes the relief to be offered to Class Members under the Settlement, their options under the Settlement, and the procedures for filing appearances and objections;

- identifies and explain the scope of the Release and Released Claims;

- discloses that incentive awards to the Plaintiffs, and attorneys' fees and expenses to Class Counsel, will be sought (and the maximum amounts that will be sought), but that such awards must be approved by the Court; and

- provides the time and location of the Fairness Hearing, along with a description of that hearing's purpose. *See* Grombacher Decl., Exhibits A and B to Exhibit 1.

The Settlement also calls for the notices to be distributed to the Class Members within ten (10) days following the entry of the Preliminary Approval Order. Settlement, at ¶ 45. The Settlement establishes, and the notices disclose, that the deadline for Class Members to exclude themselves from or object to the Settlement will be the deadline provided in the Court's Preliminary Approval Order before the Fairness Hearing. *Id*. ¶ 111. As a result, Class Members will be afforded a sufficient amount of time, as determined by the Court, to request exclusion or object to the Settlement. *Greco v. Ginn Devel. Co., LLC*, 635 F. App'x 628, 6234 (11th Cir. 2015) (collecting cases, and concluding 45 day response period adequate); *accord Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1352 (M.D. Fla. 2016) (approving notice plan affording class members 60 day response period); *Lusby v. GameStop Inc.*, No. C12–03783, 2015 WL 1501095, at *7 (N.D. Cal. Mar. 31, 2015) (same).

At bottom, the proposed notices provide Class Members with sufficient information to make an

informed and intelligent decision about the Settlement. The proposed notices satisfy the requirements of Rule 23 and Due Process. Accordingly, the Court should approve the form and content of the Paid- Off Notice and Active/Transfer Notice proposed by the Settlement.

**B.**     **The Plan for Disseminating the Notices Is Also Appropriate**

The Court should also approve the Parties' plan for disseminating the notices to the Class Members. "The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required." *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380 n. 6 (M.D. Ga. 2006) *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

Here, the Sunscreen Products were distributed nationwide through a variety of retail channels. As such, the Parties have agreed to provide notice to the Class by various electronic means designed to provide the best notice that is practicable under the circumstances.  The details of the notice plan are set out in the Class Notice/Long Form Notice. *See* Grombacher Decl., Exhibits A and B to Exhibit 1. The Settlement also calls for the Settlement Administrator to create an internet website dedicated to the Settlement, and to post and make available on it various documents and information relating to the Settlement and claim process. *See* Settlement ¶¶ 55, 56. A toll-free telephone number will also be available to Class Members. *Id.* ¶¶ 76, 84.

Accordingly, the Court should approve not only the form and content of the proposed notices, but also the means proposed by the Parties for distributing those notices to the Class Members.

**VII.**   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court conditionally certify the Class for settlement purposes, appoint the Plaintiffs as class representatives and the undersigned as Class Counsel for the Class, preliminarily approve the Settlement, approve the proposed plan of notice to the

Class, and schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the proposed Settlement is fair, reasonable and adequate and should be given final approval.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiffs has conferred with Defendants' counsel and Defendants do not oppose the relief requested herein for purposes of settlement only.

Dated:  December 17, 2021.

By: R. Jason Richards
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Kiley L. Grombacher, Esq. (245960)
Marcus J. Bradley, Esq. (174156)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: kgrombacher@bradleygrombacher.com
mbradley@bradleygrombacher.com
rfisher@bradleygrombacher.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>R. Jason Richards</u>
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com