```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                     Case No. 21-MD-03015-SINGHAL
 3

 4    IN RE:                       )
                                   )  Fort Lauderdale, Florida
 5    JOHNSON & JOHNSON AEROSOL    )  January 6, 2022
      SUNSCREEN MARKETING, SALES   )  2:06 p.m.
 6    PRACTICES AND PRODUCTS       )
      LIABILITY LITIGATION         )
 7    _____)

 8              TRANSCRIPT OF ZOOM INITIAL CONFERENCE

 9             BEFORE THE HONORABLE RAAG SINGHAL

10                      U.S. DISTRICT JUDGE

11    Zoom Appearances:

12
      For the Plaintiffs:         BRADLEY/GROMBACHER, LLP
13                                BY:  KILEY GROMBACHER, ESQ.

14                                AYLSTOCK, WITKIN KREIS &
                                   OVERHOLTZ PLLC
15                                BY:  BRYAN AYLSTOCK, ESQ.
                                  BY:  ROBERT RICHARDS, ESQ.
16                                BY:  PAUL DOOLITTLE, ESQ.

17                                LEVIN SEDRAN & BERMAN LLP
                                  BY:  CHARLES SCHAFFER, ESQ.
18
                                  ANASTOPOULO LAW FIRM
19                                BY:  ROY WILLEY, ESQ.

20                                LAW OFFICES OF TIMOTHY P. RUMBERGER
                                  BY:  TIMOTHY RUMBERGER, ESQ.
21
                                  BEASLEY, ALLEN LAW FIRM
22                                BY:  DAVID BYRNE, III, ESQ.

23
      Reporter:                   Karl Shires, RMR, FCRR
24    (954) 769-5496              Official Court Reporter
                                  299 East Broward Boulevard, # 110B
25                                Fort Lauderdale, Florida  33301
```

```
 1    Zoom Appearances:   (Continued)

 2    For the Plaintiffs:          WALSH LAW PLLC
                                   BY:  ALEXANDRA WALSH, ESQ.
 3
                                   KELLER LENKNER LLC
 4                                 BY:  SETH MEYER, ESQ.

 5                                 SHUB LAW FIRM LLC
                                   BY:  JONATHAN SHUB, ESQ.
 6
                                   GIRARDI FIRM,LLC,
 7                                 BY:  MATTHEW GIRARDI, ESQ.

 8                                 LEVI & KORSINSKY, LLP
                                   BY:  MARK REICH,ESQ.
 9
10    For the Defendants:          PATTERSON, BELKNAP, WEBB &
                                    TYLER LLP
11                                 BY:  STEVEN ZALESIN, ESQ.

12                                 CARLTON FIELDS, PA
                                   BY:  BRUCE BERMAN, ESQ.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          (Call to Order of the Court.)

2          THE COURT:  All right.  Hi, everyone.  Good afternoon.

3    For those of you in California and out West, good morning.

4    It's nice to see you all.

5          We're hear today on Case 21-MD-3015.  It's In Re:

6    Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices

7    and Products Liability Litigation.

8          I just wanted to have this initial conference with all

9    of you.  I know just from the filings that I've seen, the

10   preliminary report, the proposed order granting motion for

11   preliminary approval of class action settlement, just the

12   things that have been filed, I know you all are working very

13   hard on the case.  But I think it's important that we just have

14   this initial hearing just to go over a few things, and also so

15   you all know that the Court is available if there are any

16   matters where you need Court intervention.  We are happy to set

17   things for hearing for you.

18         So let me do this.  I did get notices listing about 15

19   of you that were going to formally appear.  We have maybe 20

20   people here on our screen here today.  But with regard to our

21   case, I don't know if you've all spoken to kind of see who

22   would talk or do the bulk of any presentation or if everyone

23   had a little piece to say, but let me start off with

24   appearances for those who actually want to say anything here

25   today.
```

1        MS. GROMBACHER:  Good morning, Your Honor.  This is

2   Kiley Grombacher.  We are here with my co-counsel.

3        MR. RICHARDS:  This is Jason Richards, Your Honor.

4        MR. AYLSTOCK:  And Bryan Aylstock, Your Honor.  Nice

5   to meet you.

6        THE COURT:  Nice to see the three of you.  And you're

7   here I guess in the sense that there's really two buckets of

8   plaintiffs, Serota and Brennan.  You represent the Serota

9   plaintiffs, correct?

10       MS. GROMBACHER:  Both Serota and Brennan are our

11  plaintiffs.

12       THE COURT:  Got it.  Okay.  And anyone else?

13       MR. SCHAFFER:  Good morning, Your Honor.  Charles

14  Schaffer from Levin, Sedran & Berman in Philadelphia,

15  Pennsylvania.  I represent Steven Lavalle in the Case

16  7:21-CV-0609, which was transferred from the Southern District

17  of New York.  And I was the counsel who initiated the initial

18  request for the additional agenda items.  And I can speak to

19  that very quickly, if the Court would like, of what my intent

20  was and what my intent was not to do.

21       THE COURT:  Sure.  Let me just go through all the

22  appearances first, and then we'll definitely take care of that.

23       MR. WILLEY:  Your Honor, good afternoon.  Roy Willey.

24  Good to see you again.  I represent the Dickerson plaintiffs

25  whose case is 2:21-CV-07230, which was transferred in from the

```
 1    Central District of California.
 2            THE COURT:  Great.  Nice to see you.
 3            MR. RUMBERGER:  Timothy Rumberger.  I represent George
 4    Rafal in the case transferred in from the Northern District of
 5    California.
 6            THE COURT:  Nice to see you, Mr. Rumberger.
 7            MR. BYRNE:  Your Honor, this is David Byrne.  I'm
 8    plaintiff's counsel in the Goodwin matter that was already
 9    before Your Honor, and also the Dominguez plaintiffs from the
10    Northern District of California.
11            I probably will not be speaking today.
12    Ms. Grombacher, Mr. Richards, and Mr. Aylstock will be leading
13    the change for our group.  But I can certainly answer any
14    questions Your Honor has.
15            THE COURT:  Thank you, Mr. Byrne.  Nice to see you.
16            MS. WALSH:  Thank you, Your Honor.  This is Alexandra
17    Walsh.  And I'll chime in after Mr. Byrne because I'm in the
18    same category with him.  We are co-counsel in the matters that
19    he named.  But probably won't be speaking, unless Your Honor
20    has any questions for us, because we are coordinating with
21    Ms. Grombacher and her group.
22            THE COURT:  Nice to see you, Ms. Walsh.
23            MS. WALSH:  Nice to see you.
24            MR. MEYER:  I will echo the same, Your Honor, the same
25    as Ms. Walsh and Mr. Byrne.
```

```
1              THE COURT:  And that's Seth Meyer?

2              MR. MEYER:  It is.  Thanks, Your Honor.

3              THE COURT:  Thank you, sir.  Nice to see you.

4              MR. SHUB:  Good afternoon, Your Honor.  My name is

5    Jonathan Shub.  I represent Ms. Ocampo and Ms. Jimenez.  Our

6    case was transferred in from the District of New Jersey.

7              THE COURT:  Nice to see you.

8              MR. SHUB:  Nice to see you.

9              MR. GIRARDI:  Hi, Your Honor.  Matthew Girardi here.

10   I represent Shelli French and Nicole Sander.  Our case was

11   transferred in from the Central District of California.

12             THE COURT:  Nice to see you, Mr. Girardi.

13             MR. GIRARDI:  You as well.

14             MR. DOOLITTLE:  Good afternoon, Your Honor.  Paul

15   Doolittle here from the Anastopoulo Law Firm also representing

16   the Dickerson plaintiffs with Mr. Willey.

17             THE COURT:  Got it.  Good to see you, Mr. Doolittle.

18             MR. DOOLITTLE:  Good to see you, sir.

19             MR. ZALESIN:  I believe that's all the plaintiffs, so

20   I'll introduce myself, Your Honor.  My name is Steve Zalesin.

21   I am lead counsel for all of the defendants, Johnson & Johnson

22   Consumer, Inc., and the various our Johnson & Johnson entities.

23   I've been named as well as Costco Wholesale Corporation.  And

24   I'm very pleased to be appearing before Your Honor.  Thank you

25   for the privilege.
```

```
1              THE COURT:  Sure.  Good to see you, Mr. Zalesin.
2              MR. BERMAN:  This is Bruce Berman.  I'm co-counsel
3    locally for Mr. Zalesin.  He will be speaking today.
4              THE COURT:  Great.  Good to see you, Mr. Berman.  And
5    I think we're only left with Mr. Reich.
6              MR. REICH:  Yes.  Good afternoon, Your Honor.  Mark
7    Reich with the law firm of Levi & Korsinsky.  I'm here on
8    behalf of a host plaintiffs.  We'll call them the Baker
9    plaintiffs.  Our case was transferred out of New Jersey as
10   well.
11             THE COURT:  I apologize for mispronouncing your last
12   name.  I won't do that again.
13             MR. REICH:  No worries, Your Honor.
14             THE COURT:  All right.
15             MR. REICH:  Thank you.
16             THE COURT:  And I think we have a few other people,
17   but that seems to be everyone that's actually physically on the
18   screen that I see.  Is there anyone else that wanted to speak?
19             All right.  So then let's do it this way.
20   Mr. Zalesin, I got the preliminary report that you filed.  It
21   was concise.  I appreciate that.  I also reviewed the proposed
22   order granting the motion for preliminary approval of class
23   action settlement collectively that plaintiffs and defendants
24   filed.  I appreciate all of that.
25             You know, normally these hearings are to discuss a
```

1    number of things like settlement, discovery, appointment of

2    lead counsel, preservation of evidence, setting regular

3    conferences.  I think you all are well ahead of the curve on

4    all of that.  It's a little bit different of a case.

5              But let me start off with -- really, Ms. Grombacher, I

6    think maybe it's best if I go to you first, and then I'll go

7    over to, after that, Mr. Schaffer, I think, in terms of the

8    additional agenda items, and then over to Mr. Zalesin.

9              MS. GROMBACHER:  Thank you, Your Honor.  From our

10   perspective, I think the only thing to do here is set a hearing

11   on the motion for preliminary approval.  The Court adopted the

12   briefing schedule.  I think the final replies are due on

13   January 28th.  So we would propose a hearing date in early

14   February.  But we're cognizant that the Court has to review the

15   papers.  So open to hearing when the Court would like to have

16   the hearing.

17             THE COURT:  Sure.  And how long would you think that

18   we need to set aside for that hearing?

19             MS. GROMBACHER:  Well, I guess it depends.  We haven't

20   seen yet if there's going to be opposition.  I suspect that

21   there might be, but I guess it depends on whether it's

22   contested and how many questions the Court, if any, have for

23   the parties.  So I would think an hour at the most.

24             THE COURT:  Got it.

25             MS. GROMBACHER:  But again, there are some factors

1  here that are in play that I'm not really sure kind of how

2  things are going to pan out.

3        THE COURT:  Understood.  You know, all of us, our work

4  is fluid.  It's in flux.  You can't really just put it in a box

5  and seal it up.  So I appreciate that.  Anything else from you?

6        MS. GROMBACHER:  Not from our perspective.  I'm happy

7  to address anything as things come in.  I know there are other

8  individuals that are set to speak here today.  So to the extent

9  that we need to address anything that comes up, I'm happy to do

10  so.

11        THE COURT:  Sure.  Mr. Schaffer, let me go over to

12  you.

13        MR. SCHAFFER:  Yes.  Good afternoon, Your Honor.  My

14  intent was not to create more work busy work for the Court or

15  for anyone.  I've been doing this for 25 years in Philadelphia,

16  class actions for 25 years, and typically the cart doesn't come

17  before the horse.  Meaning, lead counsel gets appointed, a

18  settlement happens, things are done that way.  That's what the

19  manual suggests.  That's what is routinely followed.

20        Here we started with the cart before the horse.  So my

21  intent was not to create two objection periods, which is going

22  to happen now if people choose to object to the settlement.

23  Notice then will get issued, and then there will be another

24  objection period.

25        My only intention was to try to get information, to

1    get information that was voluntarily exchanged from the

2    defendants to settling plaintiffs' counsel, which according to

3    their preliminary approval papers and declarations allowed them

4    to assess where the benzene was, in what products, what

5    products it was not in, put together a remediation program,

6    assess the strengths and weaknesses of the case.

7            So my only ask is to have that information available,

8    that I can evaluate it, and then (inaudible) suggestions if

9    (inaudible) want to the parties, but not to come in and just --

10   we're in the position now that the only way we can exchange or

11   convey information is to formally object to the settlement,

12   which I think is inefficient.

13           So what I would propose happen is have a 30-day

14   exchange of information period, we get the information for the

15   people who want it, maybe put together a non-settling plaintiff

16   party committee who get the information, and then we can

17   provide any input we have to the defendants, the settling

18   plaintiffs.  If they like it, they can consider it.  If they

19   don't, they can move on.  But I think this way it's going to be

20   inefficient because it puts people in the corner for the voice

21   to be heard to file an objection.  And the Court rules upon

22   that, notice will go out, and then down the road there may be

23   other objections.  So that was my only intent, Your Honor, and

24   I think that would be the best course.

25           THE COURT:  And I guess, reading between the lines,

1    what you're saying is that if I weren't to give you this 30-day

2    period, that there are certainly going to be objections to any

3    settlement agreement because that would be the only way for,

4    let's say, your clients to effectively investigate the case.

5          MR. SCHAFFER:  I believe that's correct, Your Honor.

6    It doesn't mean that it will happen, but I think there's a

7    strong likelihood.  I'm not saying I'm in a position that I

8    would do that, but I think the exchange -- and we would execute

9    the same confidentiality agreements that the settling

10   plaintiffs did.  And I don't think you need to give it to

11   everyone.  I think you give it to maybe a committee to look at

12   or whoever the Court deems worthy and fit to have it.

13         THE COURT:  All right.  Mr. Zalesin, let me go over to

14   you.

15         MR. ZALESIN:  Thank you, Your Honor.  I don't disagree

16   fundamentally with Mr. Schaffer that there's going to have to

17   be an exchange of information in order for all of the parties

18   to the case to assess whether they think they want to support

19   the settlement or oppose it.

20         Where I think we part ways is I think he's, in

21   essence, conflating two ideas.  So we have currently pending

22   before the Court a motion for preliminary approval of the

23   settlement, which would enable, if the Court approves, notice

24   to go out to the class and the claims period to begin.  And it

25   would also begin a period of further discovery as provided for

1    in the settlement agreement and information exchange so that

2    when we come to a final approval hearing, assuming that the

3    Court does grant preliminary approval, when we come to that

4    final hearing, people will have had the opportunity to review

5    all of the relevant information, including the claims rate and

6    the experience throughout the claims process, and decide

7    whether to object or not.

8         The standard for approval, the final approval is quite

9    a bit different from preliminary approval.  Preliminary

10   approval is a rather differential one.  Unless the settlement

11   is unreasonable on its face, then the law in this circuit says

12   that the settlement should be preliminarily approved.

13        We're not going to resist sharing information pursuant

14   to an appropriate protective order issued by the Court so that

15   come final approval everyone will have all of the information

16   that they believe is necessary to make a decision whether to

17   object or not.  But at this stage, where the motion is now been

18   pending for roughly three weeks, opposition brief is due in one

19   week, and then the replies two weeks hence, I think the wiser,

20   more efficient course would be to move ahead with the motion

21   for preliminary approval and deal with the information exchange

22   and further discovery and those topics in connection with the

23   final approval, which we'll have several months at that point

24   to do.  Even if the Court moves expeditiously and grants

25   preliminary approval, let's say, by with early to mid February,

1   we have a claims period that lasts three or four months and we

2   wouldn't be dealing with final approval until probably sometime

3   this summer.  So that's the process that I would recommend we

4   follow.

5          The last thing I would say, Your Honor, is I agree

6   with Mr. Schaffer, and I think many others on this call share

7   this sentiment, but this is an unusual case in that a

8   resolution for an MDL was reached early on.  But it's unusual

9   because of its facts.

10          And without taking up, you know, more than literally

11   60 seconds of the Court's time, you know, this is a case in

12   which a Johnson & Johnson consumer learned about this

13   contamination of benzene from a citizen -- a public petition in

14   late May, moved very expeditiously to investigate the issues,

15   was in contact with FDA throughout that process, commenced a

16   voluntary recall of the products that were affected in mid

17   July, and immediately began a voluntary refund program that

18   enabled consumers to get back all the money they had paid for

19   all the products that had been recalled on very, very generous

20   terms.

21          And that refund program has been wildly successful

22   from -- if this were a class action settlement, it would be the

23   greatest class action settlement in history in terms of the

24   participation rate, the speed with which consumers received the

25   compensation for their products.  Roughly $10 million have been

1   paid out to hundreds of thousands of claimants.  So we've

2   already, in effect, had a settlement with consumers.

3        There is additional relief provided for by this

4   settlement, including keeping the refund program open for a

5   longer period of time, including some compensation for

6   purchases of products which were not even recalled.  But this

7   was made possible by the fact that, in essence, the claims in

8   the case were largely, if not entirely, mooted by Johnson &

9   Johnson's voluntary actions.  And it's because of that unusual

10  set of facts that we're able to bring to Your Honor on

11  literally the first time we're together for this MDL a proposed

12  settlement.  Or actually a few weeks earlier.  So I'm very

13  happy that we're in this unusual situation, and I think it

14  would be great if every class action proceeded the way this one

15  has to date.

16        And as far as the procedure goes, we'll obviously take

17  Your Honor's lead.  But our suggestion would be to move ahead

18  with preliminary approval and deal with objections after

19  preliminary approval is granted.

20        MR. SCHAFFER:  Your Honor, if I may respond?

21        THE COURT:  Yes, Mr. Schaffer.

22        MR. SCHAFFER:  So if defense counsel -- can you

23  pronounce your name again?  I don't want to mispronounce it.

24        THE COURT:  Zalesin.

25        MR. SCHAFFER:  Zalesin.

1          MR. ZALESIN:  Thank you, Your Honor.

2          MR. SCHAFFER:  I have a bad habit of -- and I had four

3    years of Latin, Greek, Spanish, and I butcher every language.

4          Is willing to provide the discovery that was given,

5    which led to the settlement and also the confirmatory

6    discovery, and allow plaintiffs' counsel, not just settling

7    plaintiffs' counsel, to have that to make that assessment after

8    preliminary approval, I can live with that because all I'm

9    looking for is the information.  And if that were to happen, I

10   am fine with that.  And I would say for me, you know, if the

11   Court is inclined to preliminarily approve the settlement, I

12   can live with that as long as I get the information to make the

13   assessment.  And that's all I'm looking for.  And that's all I

14   have to add, Your Honor.

15         THE COURT:  Well, I'd like to take some credit for all

16   this collegiality and the fact that you're able to resolve this

17   MDL so quickly, as it seems, but I don't think I can take any

18   credit for it.  I think for this kind of case putting the cart

19   before the horse is one of the times where it might be a good

20   thing.  It's nice to see.

21         Let me ask this question.  There's also pending docket

22   entry 57, which is the motion regarding appointment of lead or

23   liaison counsel.  Is there any input with regard to that

24   motion?  Are there any objections to that motion as written?

25         MR. WILLEY:  Your Honor, Roy Willey.  And I represent

1    the Dickerson plaintiffs in a putative class action, as

2    Mr. Schaffer does.  And I would endorse his idea for having a

3    non-settling plaintiffs' committee for those individuals that

4    also filed putative class actions.

5            We began requesting information about the potential

6    settlement before it was entered.  And I would note for the

7    Court that the settlement was only reached two weeks after the

8    case was transferred to the MDL.  And basically we have

9    received -- not basically.  We have received no information,

10   none of the, quote/unquote, informal discovery that led to the

11   settlement or any other information to confirm that Johnson &

12   Johnson didn't know until the citizen petition study was filed,

13   et cetera.

14           And so I think what the Court might have if we don't

15   go that route is numerous objections to a preliminary approval

16   from numerous plaintiffs simply because we don't have the

17   information.  And I agree with Mr. Schaffer that a far more

18   efficient way to proceed would be to appoint a committee of

19   non-settling plaintiffs that could gather that information and

20   hold sessions with other plaintiffs' counsel like we did prior

21   to the MDL and prior to the settlement.  And there was no

22   intimation or conversation that settlement negotiations were

23   even going on at that point.  And so we have not received

24   anything since then.

25           So I would endorse, you know, Mr. Schaffer's plan.  I

1  think it would lead to efficiency for the Court, and it would

2  allow us to evaluate the information and see if, in fact, it's

3  appropriate to put the cart before the horse.

4       Because, frankly, I'm not convinced that full relief

5  is being offered in this settlement.  And I won't get into the

6  merits of that at this point, but I would like to see the

7  information before making a final determination on that.  And

8  at this point I would be forced to file an opposition with the

9  Court without all of the information.  And that's not fair to

10  the individuals who have put work into reaching the settlement

11  or, obviously, to my plaintiffs or the other plaintiffs who

12  haven't had the opportunity to review it.

13       THE COURT:  Okay.

14       MR. SHUB:  Your Honor, may I speak?  Mr. Shub.

15       THE COURT:  Sure.  Give me one second.

16       MR. SHUB:  Sure.

17       THE COURT:  I appreciate your position, Mr. Willey,

18  but I think it's almost -- you're kind of endorsing a position

19  of Mr. Schaffer that's changed a little bit.  Because after

20  Mr. Zalesin spoke, Mr. Schaffer seemed content with the

21  preliminary approval process and then the four- to six-month

22  process that comes after between preliminary approval and

23  potential final approval, keeping in mind the different

24  standards for preliminary and final.  So I understand what

25  you're saying there.  But let me go to Mr. Shub, and then we'll

1   talk about it a little more.

2          MR. SHUB:   Thank you.   Your Honor, I think that there

3   are obviously different paths we could take here.   But for

4   efficiency purposes, I would think that J & J and settlement

5   counsel would not want to go through the entire process of

6   issuing notice and spending all kinds of money and time before

7   the other counsel.

8          As you know, Your Honor, there was only a few lawyers

9   on the plaintiffs' side that new anything about the settlement.

10  When we were doing MDL papers and trying to organize, we didn't

11  know anything about the settlement.   It was news to us.   It was

12  news to all the lawyers except for maybe two or three different

13  firms, Ms. Grombacher's firm and a couple others.

14         We're not -- I don't think anyone is here saying that

15  the settlement itself should be objectionable.   What we're

16  saying is that without any endorsement of the Court in a

17  leadership position, it was sort of a de facto leadership role

18  that they played in settling this case.

19         And it might be appropriate I think -- Mr. Schaffer

20  had a great idea.   Just because he might have backpedaled a

21  little bit, doesn't mean that it wasn't a good idea.   I agree

22  with Mr. Willey, what he says, the reasons why.   We just want

23  some time as a non-settlement plaintiffs' committee to be able

24  to understand how we got to where we are rather than go through

25  the motions of objections for an approval, getting notice out,

 1   and then, you know, having to go through that process.  We

 2   don't see what the urgency is to move forward now at this

 3   point.

 4           THE COURT:  So let me ask you this, Mr. Shub.  I mean,

 5   it's an adversarial business that we're in.  But what's the

 6   harm with including in the lead and liaison counsel lawyers

 7   that right now are contemplating objecting and just having it

 8   be one committee that works together as opposed to here's lead

 9   counsel and here's a non-settling plaintiffs' committee.  I

10   mean, it seems to me that appointing two different committees

11   like that encourages division, as opposed to one committee

12   composed of lawyers that may not agree.  That's the whole

13   purpose of a committee, right.  How about doing it that way?

14           MR. SHUB:  Actually, Your Honor, I think that's

15   actually a very good idea to have that kind of committee.  But

16   I'm concerned that if we do have that kind of committee,

17   certain members of the committee want to go forward immediately

18   and get this motion for preliminary approval approved while

19   other members of that committee who don't -- who have not been

20   privy to the information that certain members have are going to

21   hesitate to move forward in the same timely manner that the

22   settling lawyers want to.  In other words, we're not up to

23   speed yet, the non-settling plaintiffs' lawyers, and we would

24   like to have some information about how this process went down

25   and, you know, details about the terms that one doesn't get

1    just from reading the motion for preliminary approval.

2          So I think your idea is a good one as long as there's

3    some -- gives us some time to meet as a committee and to

4    discuss the matters before the Court now regarding the

5    settlement.

6          MR. SCHAFFER:  Your Honor, if I may.  Mr. Schaffer.

7          THE COURT:  Yes, Mr. Schaffer.

8          MR. SCHAFFER:  So I didn't backtrack.  I took a

9    sidestep because --

10         THE COURT:  Right.

11         MR. SCHAFFER:  -- to me most important thing is

12   getting the information.

13         THE COURT:  Sure.

14         MR. SCHAFFER:  I've been doing this -- I've never had

15   a defense counsel offer to give the discovery to non-settling

16   plaintiffs' counsel either before or after preliminary

17   approval.  So to me that was pretty magnanimous.

18         THE COURT:  Right.

19         MR. SCHAFFER:  And the information is important.  I

20   think the idea of a committee with settling and non-settling

21   plaintiffs is a good idea.  I think it could work either way.

22   Preliminary approval first, then get the information, or get

23   the information first, then preliminary approval.

24         And I think the elephant in the room is how the

25   defendant wants to do it.  Because I know Mr. Aylstock.  I know

1   Mr. Richards and the others.  They're agreeable people and not

2   hard to work with.

3            THE COURT:  Well, let me ask you this.  You've seen

4   the proposed order attached to docket entry 57 which suggests

5   who should be appointed as lead counsel.  Have you had a chance

6   to look at that?

7            MR. SCHAFFER:  Yes, Your Honor.  I looked at it and --

8            THE COURT:  You want me to add you to that?

9            MR. SCHAFFER:  If you would add me to that, I would be

10  honored to serve and assist.

11           MS. GROMBACHER:  Your Honor, if I can be heard.

12           THE COURT:  Yes, Ms. Grombacher.

13           MS. GROMBACHER:  I think -- you know, I know that

14  there are a lot of counsel that were not actively involved in

15  the settlement process and have some questions, but that can be

16  the case in many litigations, and I'm not sure why we would

17  unseat the typical structure here.

18           I mean, inherently certification has a two-step

19  process, and it does exactly what we're trying to do here.  It

20  has a lower threshold for preliminary approval, and then there

21  can be -- and there's going to be clearly here, because

22  defendants don't oppose, a voluntarily exchange of information.

23  In fact, we are still set to take some depositions in this

24  litigation.  So we're still compiling some information, at

25  least on a confirmatory basis.

 1          And so it doesn't seem like it makes sense to unseat

 2    the whole system and the structure that has been in place and

 3    works for every other litigation and form some committee here

 4    where, you know, defendant's willing to give all of the

 5    plaintiffs' counsel information.  I don't know why we would

 6    parse it out.  We don't oppose it.  They don't oppose it.  And

 7    then the structure works.  Because at that point when we come

 8    back to court and we ask for final approval, that's when they

 9    have the opportunity to either object or not.  They'll have the

10    information.

11          But the question is, does Your Honor find it fair and

12    reasonable out of this threshold?  And there's just such a

13    deep-seated mechanism that works in every case.  I know this is

14    a little atypical, but there's no reason to believe that the

15    typical structure wouldn't work here.

16          So, you know, I think the best course is to go forward

17    with the approval here.  It is a little bit atypical in that

18    people have the opportunity to oppose the motion, but that's

19    always the case with a notice of motion.  I guess people can

20    intervene before preliminary approval.  There are other ways to

21    do it.  So it's not inherently completely atypical.

22          So use the standard structure.  Let's have the

23    preliminary approval.  If, you know, the Court doesn't even

24    find this reasonable then we're -- from square one and we can

25    start making out consolidated complaints and leadership

```
 1   structure.  If not, then let's give the counsel all the
 2   information they need, they can talk to their client, and they
 3   can make a decision of whether they want to object or not.
 4   That's how these work.  They're structured in a way so that
 5   Your Honor will be have the benefit of not just this counsel
 6   but all of the class members getting an opportunity to say
 7   here's what I think about the settlement.  Not just giving a
 8   sneak peek to certain people because they filed a case.  I
 9   mean, I think that every class member who's involved should
10   have the opportunity to get whatever information is out there
11   and to make a decision about whether they want to participate
12   or opt out, which is an option, or object.  I mean, counsel
13   here can opt out their clients if they want to as well.
14        So it's not an all or nothing endeavor here.  There
15   are other routes.  And I think that the standard structure
16   works just fine.
17        MR. SHUB:  Your Honor, may I respond?  Mr. Shub.
18        THE COURT:  Yes.
19        MR. SHUB:  I think the issue -- the fundamental
20   disagreement we're having is that, you know, this MDL moved
21   obviously quite quickly without any appointment of counsel.
22        You know, there appears to be a de facto lead counsel
23   here because that's who defendant decided to settle the matter
24   with.  It wasn't as if plaintiffs' counsel got together, we
25   decided that we would delegate responsibility to Ms. Grombacher
```

1    and her colleagues and we would defer.  There was none of that.

2    There was no information.

3          And, therefore, I think what Mr. Willey has put

4    forward is the idea that, you know, we were in the dark until

5    this was thrown at us, and now there's a sense of urgency for

6    some reason to move this through now, and we don't really

7    understand why it can't wait for six weeks so that we can get

8    the information that we want so that we don't have to engage in

9    an adversarial role vis-a-vis plaintiffs' counsel.  We don't

10   want to do that.  Plaintiffs' counsel do not like to fight with

11   each other.  We want to try to get along.  We intend to get

12   along.  We understand that Ms. Grombacher wants to move

13   quickly, and we understand that, but I think it's at the

14   expense of expediency because we don't want to have to go back

15   and redo this again.

16         THE COURT:  Sure.  Listen, I understand that.  I think

17   just looking at the case -- and I might be wrong, and you all

18   can correct me.  But from my perspective really what happens is

19   that this issue with this spray suntan location comes out and

20   within probably 24 to 48 hours cases are filed.  And

21   Ms. Grombacher is one of the lawyers filing that initial set of

22   cases, the Serota and Brennan cases.  And so naturally if

23   Mr. Zalesin is on the other side, that's who he's going to work

24   with to try to resolve a suit that's brought by these

25   individuals.

```
1              And so as lawyers, though, we're taught don't trust.
2    And because we don't trust, we now look at something that may
3    be on the precipice of resolving, and our initial thought as
4    lawyers is, wait a second, this is resolving fast, something's
5    fishy.  And so that's just how we all think as lawyers.
6              So I guess my thought is this.  I mean, I don't want
7    to redo things.  I don't want to do things twice.  Judges don't
8    want to try cases two and three times.  You know that.  Lawyers
9    don't either, actually.  But I do agree with Ms. Grombacher
10   that things are moving in a certain order and that assuming,
11   and we don't know yet, assuming that we have a mid February
12   preliminary approval hearing -- because I don't even have the
13   briefing yet.  There's briefly due on the 14th and 28th of this
14   month.  Then we still have that discovery period, if you want
15   to call it that, between the preliminary and the final.
16             And I guess the only thing that I was thinking, I just
17   wanted to hear opinions I guess from you Ms. Grombacher, what
18   about me putting Mr. Schaffer on this -- we can call it
19   coordinating counsel as opposed to leader/liaison counsel.
20   What about me just adding him on there?  That, in essence,
21   would give him a head start in terms of the discovery prior to
22   that mid February hearing, assuming everything was approved.
23             MR. AYLSTOCK:  Your Honor, this is Bryan Aylstock.
24   Mr. Schaffer's firm and my firm go back many -- really decades.
25   I worked with him and his partners on many different matters.
```

```
 1    And I completely get where Your Honor said, you know, lawyers

 2    don't trust.  And that's true in particular with me because I

 3    spent my career litigating against Johnson & Johnson in

 4    particular.  So I came into this with the same attitude.  You

 5    know, what's going on here, this doesn't make a lot of sense to

 6    me.  So I think that the information -- and Mr. Zalesin, as

 7    Your Honor noted, agreed to share it with everybody.  With

 8    regard to that request, that's fine with us.

 9            What I don't want, and I think would be

10    counterproductive, is to simply add -- particularly given that

11    everybody is going to get the information if they sign a

12    protective order -- just an unwieldy committee structure that

13    frankly doesn't make sense.

14            We had certainly attempted to coordinate with

15    everybody.  As Your Honor knows, our cases were filed very,

16    very quickly.  Much more quickly than really anybody else on

17    this call.  And we've worked cooperatively with Mr. Zalesin and

18    his team.  This mediation and settlement was certainly hard

19    fought and involved formal mediation with a retired federal

20    judge and so forth.  So it's not as though a lot of thought

21    hasn't been put into this by lawyers that, I would submit, know

22    what they're doing.

23            I think the point, and it's a fair point, about the

24    lack of information I get.  But in this unique situation --

25    magnanimous I think was the term was used -- they're going to
```

1    share the information.  So why don't we move forward with the

2    typical structure with the one addition, perhaps, and then we

3    see where we are.  If Your Honor is happy with the preliminary

4    approval papers and decides to move forward, everybody can see

5    the information and from there objections can be made or not,

6    and we can move on down the line.

7              THE COURT:  Okay.

8              MR. WILLEY:  Your Honor --

9              THE COURT:  Yes, Mr. Willey.

10             MR. REICH:  Yes, if I may briefly.  You know, one

11   thing I would raise for the Court is that part of the

12   preliminary approval papers and motion are a voluntary recall

13   and full refund by January 14th of 2022.  And part of,

14   obviously, the issue in the original filing of that, given the

15   timing that we are here today, is whether or not plaintiffs

16   should take advantage of that or how they should proceed.  And

17   so, you know, one of the things that I think would be helpful

18   is if there were, you know, some agreement or informal

19   agreement on a stay of those.  Because I think at this point we

20   certainly could not, you know, agree to that.

21             With respect to your suggestion of adding non-settling

22   counsel, you know, to the list, obviously, none of us applied

23   for lead or interim co-lead because that is not the normal

24   course of things.  The normal course of things is that the

25   Court sets a schedule and applications are prepared.  If Your

 1   Honor would like to do that informally, I would be happy to

 2   participate on that as well.  Your Honor appointed me co-lead

 3   last year.  I don't think I'm any less qualified this year in

 4   this case.  But if you would like for us to submit papers, we

 5   would be glad to do that.  I think that's a fine suggestion.

 6        But I do think that we need some time to look at the

 7   information.  I don't think that -- you know, from my

 8   perspective, it's not matter of, you know, just getting on a

 9   committee to be on a committee.  I think there's still some

10   work to do with respect to the non-settling folks.  And

11   certainly we have the ability, you know, to speak to a lot of

12   these folks, we worked with a lot of these folks, you know, to

13   tell them what we find.  And I would be glad to do that.  But I

14   think time is of the essence and it is going to be a heavy lift

15   and require a lot of work.

16        And I would just point out that this settlement was

17   reached after the transfer.  This is not something that

18   happened because there was a first filed case and a second

19   filed case.  We all filed cases together.  And this settlement

20   was not reached until after the MDL transfer when it was

21   apparent to all counsel, you know, what lawyers were involved

22   at that point.

23        MR. AYLSTOCK:  I guess I disagree with that

24   characterization of facts given the timing of it and the

25   negotiations.  But we don't need to get into who's right and

```
1    who's wrong on that.
2              THE COURT:  That's was Mr. Aylstock.
3              MR. WILLEY:  And Mr. Willey, again.  And I apologize.
4    I'm just basing that on the papers.  The case was transferred
5    on October 8th.  And on page 9 of the motion for preliminary
6    approval, it indicates that the settlement was memorialized on
7    October 21st.  And so that's what I'm relying on for that
8    statement.
9              THE COURT:  Mr. Byrne.
10             MR. BYRNE:  Yes, Your Honor.  Just one note of
11   caution.  And I, of course, do agree with Ms. Grombacher's
12   comments.  But, you know, if the interim class counsel bench is
13   expanded beyond the existing petition, then I think we set up a
14   situation where six weeks from now, six months from now we've
15   got people who are designated class counsel or liaison class
16   counsel who disavow a settlement that the existing group fully
17   supports, and it creates a situation where we can't get past
18   the preliminary approval stage because we've got people who are
19   graced with the class counsel imprimatur and they don't agree
20   with it.
21             Now, the normal course would be that those counsel who
22   disagree with the settlement object to it or they direct their
23   clients to opt out from it, and then they proceed and try cases
24   as they wish to do.  But I would be somewhat concerned if the
25   preliminary class counsel bench is expanded beyond those firms
```

1   and people designated in the existing motion, which to my

2   knowledge is the only motion on the table at this point.  But

3   with that I'll certainly defer to Your Honor.

4           THE COURT:  Thank you, Mr. Byrne.

5           Mr. Schaffer?

6           MR. SCHAFFER:  Yes, Your Honor.  With that is assuming

7   that whoever is added, and if it were me, than I'm naturally

8   going to oppose the settlement.  That's not necessarily so.

9   And I think with the Court's background and understanding with

10  this colloquy can put whatever view I had in the context and

11  the Court is learned and smart enough to take whatever I would

12  say position for what it's worth.  Just because I have a

13  title -- I don't need to have a title.  I'm just looking for

14  involvement.  So I think that's a point that really goes

15  nowhere.  And with that, that's all I have, Your Honor, unless

16  you have any questions for me.

17          THE COURT:  Anyone else that wants to be heard?

18          MR. ZALESIN:  Your Honor, if I can just make a couple

19  of additional comments.  Steve Zalesin.

20          THE COURT:  Yes.

21          MR. ZALESIN:  First, on the question of the

22  composition of the committee or identity of lead plaintiffs'

23  counsel, we obviously don't have much of a dog in that fight.

24          However, I would say from a practical standpoint we

25  have been negotiating dealing with the plaintiff group that

1   filed the motion for preliminary approval for many months going

2   back.  We had a mediation in early September.  We had, as

3   Mr. Aylstock indicated, hard fought negotiations before,

4   during, and after that mediation.  And we've exchanged a lot of

5   information and a lot of progress has been made.  And,

6   candidly, a lot of goodwill has been built up.  And I think

7   that that group is working very effectively with defense

8   counsel.

9        And I tend to agree with Mr. Byrne that putting people

10  on the lead counsel committee now might be inclined to object

11  or at least have intimated that they are provisionally thinking

12  about objecting now would create an awkward situation for the

13  Court and the class, if certified, that we have, you know,

14  members of the lead counsel group opposing the settlement and

15  certification.

16       So practically speaking, my recommendation, at least,

17  and preference would be to keep the committee as presently

18  proposed.  Again, we are not trying to exclude anybody from the

19  process, but someone has to take ownership or leadership, and I

20  think the group has already been proposed and put forward.

21       Finally with regard to the process of whether we do

22  the exchange of information now or later.  You know, all we've

23  heard -- and I completely agree with Your Honor.  We're

24  lawyers.  We're trained to be suspicious.  And there are a

25  number of people on this call who haven't seen everything that

1    Mr. Aylstock and his group have seen and, therefore, are

2    suspicious.  But, honestly, that is not a basis for denying

3    preliminary approval on a settlement that on its face is very,

4    very fair and reasonable to the Court and provides consumers

5    with a great deal of relief that many of whom have already

6    received that relief and many more who will under the

7    settlement.

8         You know, if, after preliminary approval is granted

9    and after all the facts come to light, people have merit-based

10   factual challenges to the settlement, they'll have every

11   opportunity to bring them forward.  But, you know, the fact

12   that, I, Mr. Shub, or I, Mr. Willey, wasn't included in the

13   conversation doesn't inherently make the preliminary approval

14   motion suspect or the settlement suspect.

15        And so, you know, from the standpoint of the legal

16   requirements for preliminary approval, obviously, it will be

17   briefed and argued if there is opposition.  But we don't think

18   this process issue really goes to that question and that should

19   really come later.  It would be far more efficient.

20        And it does matter for the class.  This is all

21   supposed to be for the consumers of the products.  It does

22   matter whether they get the relief now or a year or more from

23   now, if we're going to have it drawn out process.  You know,

24   these products were purchased, most of them, in 2020 or early

25   2021.  People are going to have a hard time remembering what

1  they bought and when they bought it or where they bought it the

2  further we get from, you know, the actual purchase date.  I

3  think that's one of the reasons why the voluntary refund

4  program has been so successful, because it was so proximate in

5  time to when the news about the contamination came out and when

6  those purchases were made at the very beginning of the sun

7  season.

8          So time does matter here.  It's not a dire emergency.

9  But putting this off for six months would not be in the

10  interest of consumers.

11          THE COURT:  All right.  Mr. Zalesin, I appreciate that

12  very much.

13          Okay.  What I'm going to do, let me consider a few

14  things and review, once again, the documents that everyone

15  filed.  I'll be getting the oppositions in by January 14th and

16  any replies by January 28th with regard to the joint notice of

17  settlement.

18          In terms of the lead counsel, liaison counsel,

19  coordinating counsel, I don't mind at all, Mr. Willey, if you

20  want to submit a resume and information.  As you've noted, I

21  have seen it before from you.  And so, you know, it's not a

22  question of qualifications so much in that I think everyone

23  here is qualified, right.  But I do think that I shouldn't just

24  simply say, okay, Schaffer's on, Willey, you're not, just

25  because it was his idea first type of thing.  So, you know,

1    absolutely get that to me.

2           At this point my thought is to review the filings I

3    get and to set that final -- or not final but that preliminary

4    approval hearing sometime around February 17th, which is the

5    middle of February.  Now, it's not set in stone yet.  I have to

6    talk with my clerks to make sure that I have a chunk of time.

7    Typically when a lawyer says it shouldn't take more than an

8    hour, I put it on for two.  So I just want to make sure that I

9    do have that chunk of time available.

10          But I really appreciate all of the hard work that's

11   gone into this.  I understand the tension that's involved.  I

12   mean, keep in mind, I was a capital crimes criminal defense

13   lawyer for 18 years.  So, you know, trust is something that you

14   really have to weigh depending on who you're dealing with and

15   what your experience is.  And I do appreciate all the hard work

16   that's gone into getting us here relatively quickly.

17          So I guess the last thing I would say is be healthy

18   and be safe, and then we'll get some orders out to you

19   within -- tomorrow's Friday already.  I would say by Monday.

20          MS. GROMBACHER:  Thank you, Your Honor.

21          THE COURT:  The one thing I do need -- the lead

22   counsel proposed order, I think it was filed on CM/ECF.  But if

23   you could also send a Word version to me.  It's much easier for

24   me to make changes using that Word version.  I know you can

25   convert pdf to Word, but I'm still a Luddite in terms of

1  computers all these years later.  So I would appreciate that

2  very much.

3        UNIDENTIFED SPEAKER:  We'll send that to you, Your

4  Honor.

5        THE COURT:  Okay.  Thanks, everyone.

6      (Proceedings concluded at 2:55 p.m.)

7

8                    C E R T I F I C A T E

9      I, Karl Shires, Registered Merit Reporter and Federal

10 Certified Realtime Reporter, certify that the foregoing is a

11 correct transcript from the record of proceedings in the

12 above-entitled matter.

13       Dated this 17th day of May, 2022.

14

15 _____

   Karl Shires, RMR FCRR

16

17

18

19

20

21

22

23

24

25

36

**MR. AYLSTOCK: [3]** 4/4 25/23 28/23
**MR. BERMAN: [1]** 7/2
**MR. BYRNE: [2]** 5/7 29/10
**MR. DOOLITTLE: [2]** 6/14 6/18
**MR. GIRARDI: [2]** 6/9 6/13
**MR. MEYER: [2]** 5/24 6/2
**MR. REICH: [4]** 7/6 7/13 7/15 27/10
**MR. RICHARDS: [1]** 4/3
**MR. RUMBERGER: [1]** 5/3
**MR. SCHAFFER: [15]** 4/13 9/13 11/5 14/20 14/22 14/25 15/2 20/6 20/8 20/11 20/14 20/19 21/7 21/9 30/6
**MR. SHUB: [8]** 6/4 6/8 17/14 17/16 18/2 19/14 23/17 23/19
**MR. WILLEY: [4]** 4/23 15/25 27/8 29/3
**MR. ZALESIN: [5]** 6/19 11/15 15/1 30/18 30/21
**MS. GROMBACHER: [9]** 4/1 4/10 8/9 8/19 8/25 9/6 21/11 21/13 34/20
**MS. WALSH: [2]** 5/16 5/23
**THE COURT: [50]**
**UNIDENTIFED SPEAKER: [1]** 35/3

**$**
**$10 [1]** 13/25

**0**
**0609 [1]** 4/16
**07230 [1]** 4/25

**1**
**110B [1]** 1/24
**14th [3]** 25/13 27/13 33/15
**15 [1]** 3/18
**17th [2]** 34/4 35/13
**18 [1]** 34/13

**2**
**20 [1]** 3/19
**2020 [1]** 32/24
**2021 [1]** 32/25
**2022 [3]** 1/5 27/13 35/13
**21-MD-03015-SINGHAL [1]** 1/2
**21-MD-3015 [1]** 3/5
**21st [1]** 29/7

**24 [1]** 24/20
**25 [2]** 9/15 9/16
**28th [3]** 8/13 25/13 33/16
**299 [1]** 1/24
**2:06 [1]** 1/5
**2:21-CV-07230 [1]** 4/25
**2:55 [1]** 35/6

**3**
**30-day [2]** 10/13 11/1
**3015 [1]** 3/5
**33301 [1]** 1/25

**4**
**48 [1]** 24/20

**5**
**5496 [1]** 1/24
**57 [2]** 15/22 21/4

**6**
**60 [1]** 13/11

**7**
**769-5496 [1]** 1/24
**7:21-CV-0609 [1]** 4/16

**8**
**8th [1]** 29/5

**9**
**954 [1]** 1/24

**A**
**ability [1]** 28/11
**able [3]** 14/10 15/16 18/23
**above-entitled [1]** 35/12
**absolutely [1]** 34/1
**action [6]** 3/11 7/23 13/22 13/23 14/14 16/1
**actions [3]** 9/16 14/9 16/4
**actively [1]** 21/14
**actual [1]** 33/2
**add [4]** 15/14 21/8 21/9 26/10
**added [1]** 30/7
**adding [2]** 25/20 27/21
**addition [1]** 27/2
**additional [4]** 4/18 8/8 14/3 30/19
**address [2]** 9/7 9/9
**adopted [1]** 8/11
**advantage [1]** 27/16
**adversarial [2]** 19/5 24/9
**AEROSOL [2]** 1/5 3/6
**afternoon [6]** 3/2 4/23 6/4 6/14 7/6 9/13
**agenda [2]** 4/18 8/8
**agree [10]** 13/5 16/17

18/2 19/12 25/5 27/20 29/11 29/19 31/9 31/23
**agreeable [1]** 21/1
**agreed [1]** 26/7
**agreement [4]** 11/3 12/1 27/18 27/19
**agreements [1]** 11/9
**ahead [3]** 8/3 12/20 14/17
**ALEXANDRA [2]** 2/2 5/16
**ALLEN [1]** 1/21
**allow [2]** 15/6 17/2
**allowed [1]** 10/3
**ANASTOPOULO [2]** 1/18 6/15
**answer [1]** 5/13
**anybody [2]** 26/16 31/18
**apologize [2]** 7/11 29/3
**apparent [1]** 28/21
**appear [1]** 3/19
**appearances [1]** 1/11 2/1 3/24 4/22
**appearing [1]** 6/24
**appears [1]** 23/22
**applications [1]** 27/25
**applied [1]** 27/22
**appoint [1]** 16/18
**appointed [3]** 9/17 21/5 28/2
**appointing [1]** 19/10
**appointment [3]** 8/1 15/22 23/21
**appreciate [8]** 7/21 7/24 9/5 17/17 33/11 34/10 34/15 35/1
**appropriate [3]** 12/14 17/3 18/19
**approval [45]**
**approve [1]** 15/11
**approved [2]** 12/12 19/18 25/22
**approves [1]** 11/23
**argued [1]** 32/17
**aside [1]** 8/18
**assess [3]** 10/4 10/6 11/18
**assessment [2]** 15/7 15/13
**assist [1]** 21/10
**assuming [5]** 12/2 25/10 25/11 25/22 30/6
**attached [1]** 21/4
**attempted [1]** 26/14
**attitude [1]** 26/4
**atypical [3]** 22/14 22/17 22/21
**available [3]** 3/15 10/7 34/9
**awkward [1]** 31/12
**AYLSTOCK [9]** 1/14 1/15 4/4 5/12 20/25

23/23 25/2 31/3 32/14

**B**
**back [5]** 13/18 22/8 24/14 25/24 31/2
**background [1]** 30/9
**backpedaled [1]** 18/20
**backtrack [1]** 20/8
**bad [1]** 15/2
**Baker [1]** 7/8
**based [1]** 32/9
**basically [2]** 16/8 16/9
**basing [1]** 29/4
**basis [2]** 21/25 32/2
**BEASLEY [1]** 1/21
**began [3]** 13/17 16/5
**beginning [1]** 33/6
**behalf [1]** 7/8
**believe [4]** 6/19 11/5 12/16 22/14
**BELKNAP [1]** 2/10
**bench [2]** 29/12 29/25
**benefit [1]** 23/5
**benzene [2]** 10/4 10/13
**BERMAN [5]** 1/17 2/12 4/14 7/2 7/4
**best [3]** 8/6 10/24 22/16
**beyond [2]** 29/13 29/25
**bit [5]** 8/4 12/9 17/19 18/21 22/17
**bought [3]** 33/1 33/1 33/1
**Boulevard [1]** 1/24
**box [1]** 9/4
**BRADLEY [1]** 1/12
**BRADLEY/GROMBAC HER [1]** 1/12
**Brennan [3]** 4/8 4/10 24/22
**brief [1]** 12/18
**briefed [1]** 32/17
**briefing [2]** 8/12 25/13
**briefly [2]** 25/13 27/10
**bring [2]** 14/10 32/11
**brought [1]** 24/24
**Broward [1]** 1/24
**BRUCE [2]** 2/12 7/2
**BRYAN [3]** 1/15 4/4 25/23
**buckets [1]** 4/7
**built [1]** 31/6
**bulk [1]** 3/22
**business [1]** 19/5
**busy [1]** 9/14
**butcher [1]** 15/3
**BYRNE [8]** 1/22 5/7 5/15 5/17 5/25 29/9 30/4 31/9

**C**
**California [5]** 3/3 5/1 5/5 5/10 6/11

**call [9]** 3/1 7/8 13/6 25/15 25/18 26/17 31/25
**candidly [1]** 31/6
**capital [1]** 34/12
**care [1]** 4/22
**career [1]** 26/3
**CARLTON [1]** 2/12
**cart [4]** 9/16 9/20 15/18 17/3
**case [29]** 1/2 3/5 3/13 3/21 4/15 4/25 5/4 6/6 6/10 7/9 8/4 10/6 11/4 11/18 13/7 13/11 14/8 15/18 16/8 18/18 21/16 22/13 22/19 23/8 24/17 28/4 28/18 28/19 29/4
**cases [7]** 24/20 24/22 24/22 25/8 26/15 28/19 29/23
**category [1]** 5/18
**caution [1]** 29/11
**Central [2]** 5/1 6/11
**certain [4]** 19/17 19/20 23/8 25/10
**certainly [5]** 5/13 11/2 26/14 26/18 27/20 28/11 30/3
**certification [2]** 21/18 31/15
**certified [2]** 31/13 35/10
**certify [1]** 35/10
**cetera [1]** 16/13
**challenges [1]** 32/10
**chance [1]** 21/5
**change [1]** 5/13
**changed [1]** 17/19
**changes [1]** 34/24
**characterization [1]** 28/24
**CHARLES [2]** 1/17 4/13
**chime [1]** 5/17
**choose [1]** 9/22
**chunk [2]** 34/6 34/9
**circuit [1]** 12/11
**citizen [2]** 13/13 16/12
**claimants [1]** 14/1
**claims [5]** 11/24 12/5 12/6 13/1 14/7
**class [18]** 3/11 7/22 9/16 11/24 13/22 13/23 14/14 16/1 16/4 23/6 23/9 29/12 29/15 29/15 29/19 29/25 31/13 32/20
**clearly [1]** 21/21
**clerks [1]** 34/6
**client [1]** 23/2
**clients [2]** 11/4 23/13 29/23
**CM [1]** 34/22
**CM/ECF [1]** 34/22
**co-counsel [3]** 4/2

**C**

co-counsel... [2] 5/18 7/2
co-lead [2] 27/23 28/2
cognizant [1] 8/14
colleagues [1] 24/1
collectively [1] 7/23
collegiality [1] 15/16
colloquy [1] 30/10
come [9] 9/7 9/16 10/9 12/2 12/3 12/15 22/7 32/9 32/19
comes [3] 9/9 17/22 24/19
commenced [1] 13/15
comments [2] 29/12 30/19
committee [22] 10/16 11/11 16/3 16/18 18/23 19/8 19/9 19/11 19/13 19/15 19/16 19/17 19/19 20/3 20/20 22/3 26/12 28/9 28/9 30/22 31/10 31/17
committees [1] 19/10
compensation [2] 13/25 14/5
compiling [1] 21/24
complaints [1] 22/25
completely [3] 22/21 26/1 31/23
composed [1] 19/12
composition [1] 30/22
computers [1] 35/1
concerned [2] 19/16 29/24
concise [1] 7/21
concluded [1] 35/6
conference [2] 1/8 3/8
conferences [1] 8/3
confidentiality [1] 11/9
confirm [1] 16/11
confirmatory [2] 15/5 21/25
conflating [1] 11/21
connection [1] 12/22
consider [2] 10/18 33/13
consolidated [1] 22/25
consumer [2] 6/22 13/12
consumers [6] 13/18 13/24 14/2 32/4 32/21 33/10
contact [1] 13/15
contamination [2] 13/13 33/5
contemplating [1] 19/7
content [1] 17/20
contested [1] 8/22
context [1] 30/10

**Continued** [1] 2/1
conversation [2] 16/22 32/13
convert [1] 34/25
convey [1] 10/11
convinced [1] 17/4
cooperatively [1] 26/17
coordinate [1] 26/14
coordinating [3] 5/20 25/19 33/19
corner [1] 10/20
Corporation [1] 6/23
correct [4] 4/9 11/5 24/18 35/11
Costco [1] 6/23
counsel [49]
counterproductive [1] 26/10
couple [2] 18/13 30/18
course [7] 10/24 12/20 22/16 27/24 27/24 29/11 29/21
court [32] 1/1 1/24 3/1 3/15 3/16 4/19 8/11 8/14 8/15 8/22 9/14 10/21 11/12 11/22 11/23 12/3 12/14 12/24 15/11 16/7 16/14 17/1 17/9 18/16 20/4 22/8 22/23 27/11 27/25 30/11 31/13 32/4
Court's [2] 13/11 30/9
create [3] 9/14 9/21 31/12
creates [1] 29/17
credit [2] 15/15 15/18
crimes [1] 34/12
criminal [1] 34/12
currently [1] 11/21
curve [1] 8/3
CV [2] 4/16 4/25

**D**

dark [1] 24/4
date [3] 8/13 14/15 33/2
Dated [1] 35/13
DAVID [2] 1/22 5/7
day [3] 10/13 11/1 35/13
de [2] 18/17 23/22
deal [3] 12/21 14/18 32/5
dealing [3] 13/2 30/25 34/14
decades [1] 25/24
decide [1] 12/6
decided [2] 23/23 23/25
decides [1] 27/4
decision [3] 12/16 23/3 23/11
declarations [1] 10/3

**deems** [1] 17/12
deep [1] 22/13
deep-seated [1] 22/13
defendant [2] 20/25 23/23
defendant's [1] 22/4
defendants [6] 2/10 6/21 7/23 10/2 10/17 21/22
defense [4] 14/22 20/15 31/7 34/12
defer [2] 24/1 30/3
definitely [1] 4/22
delegate [1] 23/25
denying [1] 32/2
depending [1] 34/14
depends [2] 8/19 8/21
depositions [1] 21/23
designated [2] 29/15 30/1
details [1] 19/25
determination [1] 17/7
Dickerson [3] 4/24 6/16 16/1
didn't [3] 16/12 18/10 20/8
different [7] 8/4 12/9 17/23 18/3 18/12 19/10 25/25
differential [1] 12/10
dire [1] 33/8
direct [1] 29/22
disagree [3] 11/15 28/23 29/22
disagreement [1] 23/20
disavow [1] 29/16
discovery [9] 8/1 11/25 12/22 15/4 15/6 16/10 20/15 25/14 25/21
discuss [2] 7/25 20/4
DISTRICT [9] 1/1 1/1 1/10 4/16 5/1 5/4 5/10 6/6 6/11
division [1] 19/11
docket [2] 15/21 21/4
documents [1] 33/14
dog [1] 30/23
doing [5] 9/15 18/10 19/13 20/14 26/22
Dominguez [1] 5/9
DOOLITTLE [3] 1/16 6/15 6/17
drawn [1] 32/23
due [3] 8/12 12/18 25/13

**E**

earlier [1] 14/12
early [5] 8/13 12/25 13/8 31/2 32/24
easier [1] 34/23
East [1] 1/24
ECF [1] 34/22

**echo** [1] 9/24
effect [1] 14/2
effectively [2] 11/4 31/7
efficiency [2] 17/1 18/4
efficient [3] 12/20 16/18 32/19
either [4] 20/16 20/21 22/9 25/9
elephant [1] 20/24
emergency [1] 33/8
enable [1] 11/23
enabled [1] 13/18
encourages [1] 19/11
endeavor [1] 23/14
endorse [2] 16/2 16/25
endorsement [1] 18/16
endorsing [1] 17/18
engage [1] 24/8
entered [1] 16/6
entire [1] 18/5
entirely [1] 14/8
entities [1] 6/22
entitled [1] 35/12
entry [2] 15/22 21/4
ESQ [14] 1/13 1/15 1/15 1/16 1/17 1/19 1/20 1/22 2/2 2/4 2/5 2/7 2/11 2/12
essence [4] 11/21 14/7 25/20 28/14
et [1] 16/13
et cetera [1] 16/13
evaluate [2] 10/8 17/2
everybody [4] 26/7 26/11 26/15 27/4
evidence [1] 8/2
exactly [1] 21/19
exchange [8] 10/10 10/14 11/8 11/17 12/1 12/21 21/22 31/22
exchanged [2] 10/1 31/4
exclude [1] 31/18
execute [1] 11/8
existing [3] 29/13 29/16 30/1
expanded [2] 29/13 29/25
expediency [1] 24/14
expeditiously [2] 12/24 13/14
expense [1] 24/14
experience [2] 12/6 34/15
extent [1] 9/8

**F**

face [2] 12/11 32/3
fact [5] 14/7 15/16 17/2 21/23 32/11
facto [2] 18/17 23/22
factors [1] 8/25

**facts** [4] 13/9 14/10 28/24 32/9
factual [1] 32/10
fair [4] 17/9 22/11 26/23 32/4
far [3] 14/16 16/17 32/19
fast [1] 25/4
FCRR [2] 1/23 35/15
FDA [1] 13/15
February [6] 8/14 12/25 25/11 25/22 34/4 34/5
February 17th [1] 34/4
federal [2] 26/19 35/9
FIELDS [1] 2/12
fight [2] 24/10 30/23
file [2] 10/21 17/8
filed [14] 3/12 7/20 7/24 16/4 16/12 23/8 24/20 26/15 28/18 28/19 28/19 31/1 33/15 34/22
filing [2] 24/21 27/14
filings [2] 3/9 34/2
final [14] 8/12 12/2 12/4 12/8 12/15 12/23 13/2 17/7 17/23 17/24 22/8 25/15 34/3 34/3
Finally [1] 31/21
find [3] 22/11 22/24 28/13
fine [3] 15/10 23/16 26/8 28/5
firm [8] 1/18 1/21 2/5 6/15 7/7 18/13 25/24 25/24
FIRM,LLC [1] 2/6
firms [2] 18/13 29/25
first [8] 4/22 8/6 14/11 20/22 20/23 28/18 30/21 33/25
fishy [1] 25/5
fit [1] 11/12
FLORIDA [3] 1/1 1/4 1/25
fluid [1] 9/4
flux [1] 9/4
folks [4] 28/10 28/12 28/12
follow [1] 13/4
followed [1] 9/19
forced [1] 17/8
foregoing [1] 35/10
form [1] 22/3
formal [1] 26/19
formally [2] 3/19 10/11
Fort [2] 1/4 1/25
forth [1] 26/20
forward [9] 19/2 19/17 19/21 22/16 24/4 27/1 27/4 31/20 32/11
fought [2] 26/19 31/3
four [3] 13/1 15/2

**F**

four... [1] 17/21
frankly [2] 17/4 26/13
French [1] 6/10
Friday [1] 34/19
full [2] 17/4 27/13
fully [1] 29/16
fundamental [1] 23/19
fundamentally [1]
 11/16
further [3] 11/25
 12/22 33/2

**G**

gather [1] 16/19
generous [1] 13/19
George [1] 5/3
getting [6] 18/25
 20/12 23/6 28/8 33/15
 34/16
GIRARDI [4] 2/6 2/7
 6/9 6/12
give [8] 11/1 11/10
 11/11 17/15 20/15
 22/4 23/1 25/21
given [4] 15/4 26/10
 27/14 28/24
gives [1] 20/3
giving [1] 23/7
glad [2] 28/5 28/13
go [17] 3/14 4/21 8/6
 8/6 9/11 10/22 11/13
 11/24 16/15 17/25
 18/5 18/24 19/1 19/17
 22/16 24/14 25/24
goes [3] 14/16 30/14
 32/18
going [21] 3/19 8/20
 9/2 9/21 10/19 11/2
 11/16 12/13 16/23
 19/20 21/21 24/23
 26/5 26/11 26/25
 28/14 30/8 31/1 32/23
 32/25 33/13
good [19] 3/2 3/3 4/1
 4/13 4/23 4/24 6/4
 6/14 6/17 6/18 7/1 7/4
 7/6 9/13 15/19 18/21
 19/15 20/2 20/21
goodwill [1] 31/6
Goodwin [1] 5/8
graced [1] 29/19
grant [1] 12/3
granted [2] 14/19 32/8
granting [2] 3/10 7/22
grants [1] 12/24
great [5] 5/2 7/4 14/14
 18/20 32/5
greatest [1] 13/23
Greek [1] 15/3
GROMBACHER [12]
 1/12 1/13 4/2 5/12
 5/21 8/5 21/12 23/25
 24/12 24/21 25/9
 25/17
Grombacher's [2]

**H**

habit [1] 15/2
happen [4] 9/22 10/13
 11/6 15/9
happened [1] 28/18
happens [2] 9/18
 24/18
happy [6] 3/16 9/6 9/9
 14/13 27/3 28/1
hard [7] 3/13 21/2
 26/18 31/3 32/25
 34/10 34/15
harm [1] 19/6
head [1] 25/21
healthy [1] 34/17
hear [2] 3/5 25/17
heard [4] 10/21 21/11
 30/17 31/23
hearing [12] 3/14 3/17
 8/10 8/13 8/15 8/16
 8/18 12/2 12/4 25/12
 25/22 34/4
hearings [1] 7/25
heavy [1] 28/14
helpful [1] 27/17
hesitate [1] 19/21
Hi [2] 3/2 6/9
history [1] 13/23
hold [1] 16/20
honestly [1] 32/2
Honor [56]
Honor's [1] 14/17
HONORABLE [1] 1/9
honored [1] 21/10
horse [4] 9/17 9/20
 15/19 17/3
host [1] 7/8
hour [2] 8/23 34/8
hours [1] 24/20
hundreds [1] 14/1

**I**

I'd [1] 15/15
I'll [5] 5/17 6/20 8/6
 30/3 33/15
I'm [23] 5/7 5/17 6/24
 7/2 7/7 9/1 9/6 9/9
 11/7 11/7 14/12 15/8
 15/13 17/4 19/16
 21/16 28/3 29/4 29/7
 30/7 30/13 33/13
 34/25
I've [5] 3/9 6/23 9/15
 20/14 20/14
idea [9] 16/2 18/20
 18/21 19/15 20/2
 20/20 20/21 24/4

idea/... [1] 17/21
group [8] 5/13 5/21
 29/16 30/25 31/7
 31/14 31/20 32/1
guess [10] 4/7 8/19
 8/21 10/25 22/19 25/6
 25/16 25/17 28/23
 34/17

ideas [1] 11/21
identity [1] 30/22
III [1] 1/22
immediately [2] 13/17
 19/17
important [3] 3/13
 20/11 20/19
imprimatur [1] 29/19
inaudible [2] 10/8
 10/9
Inc [1] 6/22
inclined [2] 15/11
 31/10
included [1] 32/12
including [4] 12/5
 14/4 14/5 19/6
indicated [1] 31/3
indicates [1] 29/6
individuals [4] 9/8
 16/3 17/10 24/25
inefficient [2] 10/12
 10/20
informal [2] 16/10
 27/18
informally [1] 28/1
information [46]
 22/21 32/13
inherently [3] 21/18
 22/21 32/13
initial [1] 1/8 3/8 3/14
 4/17 24/21 25/3
initiated [1] 4/17
input [2] 10/17 15/23
intend [1] 24/11
intent [5] 4/19 4/20
 9/14 9/21 10/23
intention [1] 9/25
interest [1] 33/10
interim [2] 27/23
 29/12
intervene [1] 22/20
intervention [1] 3/16
intimated [1] 31/11
intimation [1] 16/22
introduce [1] 6/20
investigate [2] 11/4
 13/14
involved [5] 21/14
 23/9 26/19 28/21
 34/11
involvement [1] 30/14
issue [4] 23/19 24/19
 27/14 32/18
issued [2] 9/23 12/14
issues [1] 13/14
issuing [1] 18/6
it's [25] 3/4 3/5 3/13
 8/4 8/6 8/21 9/4 10/19
 13/8 14/9 15/20 17/2
 17/18 19/5 22/21
 23/14 24/13 26/20
 26/23 28/8 30/12 33/8
 33/21 34/5 34/23
items [1] 4/18 8/8

**J**

January [5] 1/5 8/13
 27/13 33/15 33/16
January 14th [2]
 27/13 33/15
January 28th [2] 8/13
 33/16
Jason [1] 4/3
Jersey [2] 6/6 7/9
Jimenez [1] 6/5
JOHNSON [15] 1/5
 1/5 3/6 3/6 6/21 6/21
 6/22 6/22 13/12 13/12
 14/8 16/11 16/12 26/3
 26/3
Johnson's [1] 14/9
joint [1] 33/16
JONATHAN [2] 2/5
 6/5
judge [2] 1/10 26/20
Judges [1] 25/7
July [1] 13/17

**K**

keep [2] 31/17 34/12
keeping [2] 14/4
 17/23
KELLER [1] 2/3
KILEY [2] 1/13 4/2
kind [6] 3/21 9/1 15/18
 17/18 19/15 19/16
kinds [1] 18/6
know [55]
knowledge [1] 30/2
knows [1] 26/15
KORSINSKY [2] 2/8
 7/7
KREIS [1] 1/14

**L**

lack [1] 26/24
language [1] 15/3
largely [1] 14/8
lasts [1] 13/1
late [1] 13/14
Latin [1] 15/3
Lauderdale [2] 1/4
 1/25
Lavalle [1] 4/15
law [8] 1/18 1/20 1/21
 2/2 2/5 6/15 7/7 12/11
lawyer [2] 34/7 34/13
lawyers [15] 18/8
 18/12 19/6 19/12
 19/22 19/23 24/21
 25/1 25/4 25/5 25/8
 26/1 26/21 28/21
 31/24
lead [18] 6/21 8/2 9/17
 14/17 15/22 17/1 19/6
 19/8 21/5 23/22 27/23
 27/23 28/2 30/22
 31/10 31/14 33/19
 34/21
leader [1] 25/19
leader/liaison [1]

25/19
leadership [4] 18/17
 18/17 22/25 31/19
leading [1] 5/12
learned [2] 13/12
 30/11
led [2] 15/5 16/10
left [1] 7/5
legal [1] 32/15
LENKNER [1] 2/3
LEVI [2] 2/8 7/7
LEVIN [2] 1/17 4/14
LIABILITY [2] 1/6 3/7
liaison [1] 15/23 19/6
 25/19 29/15 33/18
lift [1] 28/14
light [1] 32/9
likelihood [1] 11/7
line [1] 27/6
lines [1] 10/25
list [1] 27/22
Listen [1] 24/16
listing [1] 3/18
literally [2] 13/10
 14/11
litigating [1] 26/3
litigation [4] 1/6 3/7
 21/24 22/3
litigations [1] 21/16
little [7] 3/23 8/4 17/19
 18/1 18/21 22/14
 22/17
live [2] 15/8 15/12
LLC [2] 2/3 2/5
LLP [4] 1/12 1/17 2/8
 2/10
locally [1] 7/3
location [1] 24/19
long [3] 8/17 15/12
 20/2
longer [1] 14/5
look [4] 11/11 21/6
 25/2 28/6
looked [1] 21/7
looking [4] 15/9 15/13
 24/17 30/13
lot [9] 21/14 26/5
 26/20 28/11 28/12
 28/15 31/4 31/5 31/6
lower [1] 21/20
Luddite [1] 34/25

**M**

magnanimous [2]
 20/17 26/25
making [2] 17/7 22/25
manner [1] 19/21
manual [1] 9/19
MARK [2] 2/8 7/6
MARKETING [2] 1/5
 3/6
matter [7] 5/8 23/23
 28/8 32/20 32/22 33/8
 35/12
matters [4] 3/16 5/18
 20/4 25/25

**M**

MATTHEW [2]  2/7 6/9
MD [2]  1/2 3/5
MDL [8]  13/8 14/11
15/17 16/8 16/21
18/10 23/20 28/20
mean [9]  11/6 18/21
19/4 19/10 21/18 23/9
23/12 25/6 34/12
Meaning [1]  9/17
mechanism [1]  22/13
mediation [4]  26/18
26/19 31/2 31/4
meet [2]  4/5 20/3
member [1]  23/9
members [5]  19/17
19/19 19/20 23/6
31/14
memorialized [1]  29/6
merit [2]  32/9 35/9
merit-based [1]  32/9
merits [1]  17/6
MEYER [2]  2/4 6/1
mid [4]  12/25 13/16
25/11 25/22
middle [1]  34/5
million [1]  13/25
mind [3]  17/23 33/19
34/12
mispronounce [1]
14/23
mispronouncing [1]
7/11
Monday [1]  34/19
money [2]  13/18 18/6
month [2]  17/21 25/14
months [5]  12/23 13/1
29/14 31/1 33/9
mooted [1]  14/8
morning [3]  3/3 4/1
4/13
motion [19]  3/10 7/22
8/11 11/22 12/17
12/20 15/22 15/24
15/24 19/18 20/1
22/18 22/19 27/12
29/5 30/1 30/2 31/1
32/14
motions [1]  18/25
move [10]  10/19 12/20
14/17 19/2 19/21 24/6
24/12 27/1 27/4 27/6
moved [2]  13/14
23/20
moves [1]  12/24
moving [1]  25/10
Mr [5]  5/25 6/17 7/4
20/6 30/5
Mr. [52]
Mr. Aylstock [5]  5/12
20/25 29/2 31/3 32/1
Mr. Byrne [5]  5/15
5/17 29/9 30/4 31/9
Mr. Girardi [1]  6/12
Mr. Reich [1]  7/5
Mr. Richards [2]  5/12

27/1
Mr. Rumberger [1]
5/6
Mr. Schaffer [12]  8/7
9/11 11/16 13/6 14/21
16/2 16/17 17/19
17/20 18/19 20/7
25/18
Mr. Schaffer's [2]
16/25 25/24
Mr. Shub [5]  17/14
17/25 19/4 23/17
32/12
Mr. Willey [8]  6/16
17/17 18/22 24/3 27/9
29/3 32/12 33/19
Mr. Zalesin [10]  7/1
7/3 7/20 8/8 11/13
17/20 24/23 26/6
26/17 33/11
Ms [1]  23/25
Ms. [14]  5/12 5/21
5/22 5/25 6/5 6/5 8/5
18/13 21/12 24/12
24/21 25/9 25/17
29/11
Ms. Grombacher [8]
5/12 5/21 8/5 21/12
24/12 24/21 25/9
25/17
Ms. Grombacher's [2]
18/13 29/11
Ms. Jimenez [1]  6/5
Ms. Ocampo [1]  6/5
Ms. Walsh [2]  5/22
5/25

**N**

name [4]  6/4 6/20 7/12
14/23
named [2]  5/19 6/23
naturally [2]  24/22
30/7
necessarily [1]  30/8
necessary [1]  12/16
need [9]  3/16 8/18 9/9
11/10 23/2 28/6 28/25
30/13 34/21
negotiating [1]  30/25
negotiations [3]
16/22 28/25 31/3
never [1]  20/14
new [4]  4/17 6/6 7/9
18/9
New Jersey [1]  6/6
news [3]  18/11 18/12
33/5
nice [13]  3/4 4/4 4/6
5/2 5/6 5/15 5/22 5/23
6/3 6/7 6/8 6/12 15/20
Nicole [1]  6/10
non [10]  10/15 16/3
16/19 18/23 19/9
19/23 20/15 20/20
27/21 28/10
non-settlement [1]

18/23
non-settling [9]  10/15
16/3 16/19 19/9 19/23
20/15 20/20 27/21
28/10
normal [2]  27/23
27/24 29/21
normally [1]  7/25
Northern [2]  5/4 5/10
note [2]  16/6 29/10
noted [2]  26/7 33/20
notice [7]  9/23 10/22
11/23 18/6 18/25
22/19 33/16
notices [1]  3/18
number [2]  8/1 31/25
numerous [2]  16/15
16/16

**O**

object [9]  9/22 10/11
12/7 12/17 22/9 23/3
23/12 29/22 31/10
objecting [2]  19/7
31/12
objection [3]  9/21
9/24 10/21
objectionable [1]
18/15
objections [7]  10/23
11/2 14/18 15/24
16/15 18/25 27/5
obviously [8]  14/16
17/11 18/3 23/21
27/14 27/22 30/23
32/16
Ocampo [1]  6/5
October [2]  29/5 29/7
October 21st [1]  29/7
October 8th [1]  29/5
offer [1]  20/15
offered [1]  17/5
OFFICES [1]  1/20
Official [1]  1/24
okay [6]  4/12 17/13
27/7 33/13 33/24 35/5
once [1]  33/14
open [2]  8/15 14/4
opinions [1]  25/17
opportunity [7]  12/4
17/12 22/9 22/18 23/6
23/10 32/11
oppose [6]  11/19
21/22 22/6 22/6 22/18
30/8
opposed [3]  19/8
19/11 25/19
opposing [1]  31/14
opposition [2]  8/20
12/18 17/8 32/17
oppositions [1]  33/15
opt [3]  23/12 23/13
29/23
option [1]  23/2
order [9]  3/1 3/10 7/22
11/17 12/14 21/4

23/10 26/12 34/22
orders [1]  34/18
organize [1]  18/10
original [1]  27/14
OVERHOLTZ [1]  1/14
ownership [1]  31/19

**P**

p.m [2]  1/5 35/6
PA [1]  2/12
page [1]  29/5
paid [2]  13/18 14/1
pan [1]  9/2
papers [7]  8/15 10/3
18/10 27/4 27/12 28/4
29/4
parse [1]  22/6
part [3]  11/20 27/11
27/13
participate [2]  23/11
28/2
participation [1]
13/24
particular [2]  26/2
26/4
particularly [1]  26/10
parties [3]  8/23 10/9
11/17
partners [1]  25/25
party [1]  10/16
paths [1]  18/3
PATTERSON [1]  2/10
PAUL [2]  1/16 6/14
pdf [1]  34/25
peek [1]  23/8
pending [3]  11/21
12/18 15/21
Pennsylvania [1]  4/15
people [17]  3/20 7/16
9/22 10/15 10/20 12/4
21/1 22/18 22/19 23/8
29/15 29/18 30/1 31/9
31/25 32/9 32/25
period [8]  9/24 10/14
11/2 11/24 11/25 13/1
14/5 25/14
periods [1]  9/21
perspective [4]  8/10
9/6 24/18 28/8
petition [2]  13/13
16/12 29/13
Philadelphia [2]  4/14
9/15
physically [1]  7/17
piece [1]  3/23
place [1]  22/2
plaintiff [2]  10/15
30/25
plaintiff's [1]  5/8
plaintiffs [21]  1/12 2/2
4/8 4/9 4/11 4/24 5/9
6/16 6/19 7/8 7/9 7/23
10/18 11/10 16/1
16/16 16/19 17/11
17/11 20/21 27/15
plaintiffs' [15]  10/2

13/6 18/7 18/9 18/20
18/9 18/23 19/9 19/23
20/16 22/5 23/24 24/9
24/10 30/22
plan [1]  16/25
play [1]  9/1
played [1]  18/18
pleased [1]  6/24
PLLC [2]  1/14 2/2
point [14]  12/23 16/23
17/6 17/8 19/3 22/7
26/23 26/23 27/19
28/16 28/22 30/2
30/14 34/2
position [6]  10/10
11/7 17/17 17/18
18/17 30/12
possible [1]  14/7
potential [2]  16/5
17/23
practical [1]  30/24
practically [1]  31/16
PRACTICES [2]  1/6
3/6
precipice [1]  25/3
preference [1]  31/17
preliminarily [2]  12/12
15/11
preliminary [40]
prepared [1]  27/25
presentation [1]  3/22
presently [1]  31/17
preservation [1]  8/2
pretty [1]  20/17
prior [3]  16/20 16/21
25/21
privilege [1]  6/25
privy [1]  19/20
probably [4]  5/11 5/19
13/2 24/20
procedure [1]  14/16
proceed [3]  16/18
27/16 29/23
proceeded [1]  14/14
proceedings [2]  35/6
35/11
process [14]  12/6
13/3 13/15 17/21
17/22 18/5 19/1 19/24
21/15 21/19 31/19
31/21 32/18 32/23
products [10]  1/6 3/7
10/4 10/5 13/16 13/19
13/25 14/6 32/21
32/24
program [5]  10/5
13/17 13/21 14/4 33/4
progress [1]  31/5
pronounce [1]  14/23
propose [2]  8/13
10/13
proposed [7]  3/10
7/21 14/11 21/4 31/18
31/20 34/22
protective [2]  12/14
26/12

**P**

provide [2] 10/17 15/4
provided [2] 11/25 14/3
provides [1] 32/4
provisionally [1] 31/11
proximate [1] 33/4
public [1] 13/13
purchase [1] 33/2
purchased [1] 32/24
purchases [2] 14/6 33/6
purpose [1] 19/13
purposes [1] 18/4
pursuant [1] 12/13
put [10] 9/4 10/5 10/15 17/3 17/10 24/3 26/21 30/10 31/20 34/8
putative [2] 16/1 16/4
puts [1] 10/20
putting [4] 15/18 25/18 31/9 33/9

**Q**

qualifications [1] 33/22
qualified [2] 28/3 33/23
question [5] 15/21 22/11 30/21 32/18 33/22
questions [5] 5/14 5/20 8/22 21/15 30/16
quickly [7] 4/19 15/17 23/21 24/13 26/16 26/16 34/16
quite [2] 12/8 23/21
quote [1] 16/10
quote/unquote [1] 16/10

**R**

RAAG [1] 1/9
Rafal [1] 5/4
raise [1] 27/11
rate [2] 12/5 13/24
reached [4] 13/8 16/7 28/17 28/20
reaching [1] 17/10
reading [2] 10/25 20/1
really [13] 4/7 8/5 9/1 9/4 24/6 24/18 25/24 26/16 30/14 32/18 32/19 34/10 34/14
Realtime [1] 35/10
reason [2] 22/14 24/6
reasonable [3] 22/12 22/24 32/4
reasons [2] 18/22 33/3
recall [2] 13/16 27/12
recalled [2] 13/19 14/6
received [5] 13/24

16/9 16/9 18/23 32/3
13/25
recommend [1] 13/3
recommendation [1] 31/16
record [1] 35/11
redo [2] 24/15 25/7
refund [5] 13/17 13/21 14/4 27/13 33/3
regard [5] 3/20 15/23 26/8 31/21 33/16
regarding [2] 15/22 20/4
Registered [1] 35/9
regular [1] 8/2
Reich [2] 7/5 7/7
REICH,ESQ [1] 2/8
relatively [1] 34/16
relevant [1] 12/5
relief [5] 14/3 17/4 32/5 32/6 32/22
relying [1] 29/7
remediation [1] 10/5
remembering [1] 32/25
replies [3] 8/12 12/19 33/16
report [2] 3/10 7/20
Reporter [4] 1/23 1/24 35/9 35/10
represent [7] 4/8 4/15 4/24 5/3 6/5 6/10 15/25
representing [1] 6/15
request [2] 4/18 26/8
requesting [1] 16/5
require [1] 28/15
requirements [1] 32/16
resist [1] 12/13
resolution [1] 13/8
resolve [2] 15/16 24/24
resolving [2] 25/3 25/4
respect [2] 27/21 28/10
respond [2] 14/20 23/17
responsibility [1] 23/25
resume [1] 33/20
retired [1] 26/19
review [5] 8/14 12/4 17/12 33/14 34/2
reviewed [1] 7/21
RICHARDS [4] 1/15 4/3 5/12 21/1
right [11] 3/2 7/14 7/19 11/13 19/7 19/13 20/10 20/18 28/25 33/11 33/23
RMR [2] 1/23 35/15
road [1] 10/22
ROBERT [1] 1/15
role [2] 18/17 24/9
room [1] 20/24

roughly [2] 12/18
13/25
route [1] 16/15
routes [1] 23/15
routinely [1] 9/19
ROY [3] 1/19 4/23 15/25
rules [1] 10/21
RUMBERGER [4] 1/20 1/20 5/3 5/6

**S**

safe [1] 34/18
SALES [1] 1/5 3/6
Sander [1] 6/10
saying [5] 11/1 11/7 17/25 18/14 18/16
says [3] 12/11 18/22 34/7
SCHAFFER [16] 1/17 4/14 8/7 9/11 11/16 13/6 14/21 16/2 16/17 17/19 17/20 18/19 20/6 20/7 25/18 30/5
Schaffer's [3] 16/25 25/24 33/24
schedule [2] 8/12 27/25
screen [2] 3/20 7/18
seal [1] 9/5
season [1] 23/17
seated [1] 22/13
second [3] 17/15 25/4 28/18
seconds [1] 13/11
SEDRAN [2] 1/17 4/14
see [24] 3/4 3/21 4/6 4/24 5/2 5/6 5/15 5/22 5/23 6/3 6/7 6/8 6/12 6/17 6/18 7/1 7/4 7/18 15/20 17/2 17/6 19/2 27/3 27/4
seen [6] 3/9 8/20 21/3 31/25 32/1 33/21
send [2] 34/23 35/3
sense [5] 4/7 22/1 24/5 26/5 26/13
sentiment [1] 13/7
September [1] 31/2
Serota [4] 4/8 4/8 4/10 24/22
serve [1] 21/10
sessions [1] 16/20
set [10] 3/16 8/10 8/18 9/8 14/10 21/23 24/21 29/13 34/3 34/5
SETH [2] 2/4 6/1
sets [1] 27/25
setting [1] 8/2
settle [1] 23/23
settlement [47]
settling [16] 10/2 10/15 10/17 11/9 15/6 16/3 16/19 18/18 19/9 19/22 19/23 20/15 20/20 20/20 27/21

28/10
share [3] 13/6 26/7 27/1
sharing [1] 12/13
Shelli [1] 6/10
SHUB [8] 2/5 2/5 6/5 17/14 17/25 19/4 23/17 32/12
side [2] 18/9 24/23
sidestep [1] 20/9
sign [1] 26/11
simply [5] 16/16 26/10 33/24
SINGHAL [2] 1/2 1/9
sir [2] 6/3 6/18
situation [5] 14/13 26/24 29/14 29/17 31/12
six [5] 17/21 24/7 29/14 29/14 33/9
six-month [1] 17/21
smart [1] 30/11
sneak [1] 23/8
something's [1] 25/4
somewhat [1] 29/24
sort [1] 18/17
SOUTHERN [2] 1/1 4/16
Spanish [1] 15/3
speak [5] 4/18 7/18 9/8 17/14 28/11
speaking [4] 5/11 5/19 7/3 31/16
speed [2] 13/24 19/23
spending [1] 18/6
spent [1] 26/3
spoke [1] 17/20
spoken [1] 3/21
spray [1] 24/19
square [1] 22/24
stage [2] 12/17 29/18
standard [3] 12/8 22/22 23/15
standards [1] 17/24
standpoint [2] 30/24 32/15
start [4] 3/23 8/5 22/25 25/21
started [1] 9/20
statement [1] 29/8
STATES [1] 1/1
stay [1] 27/19
step [1] 21/18
Steve [2] 3/16 8/10 8/18
STEVEN [2] 2/11 4/15
stone [1] 34/5
strengths [1] 10/6
strong [1] 11/7
structure [9] 21/17 22/2 22/7 22/15 22/22 23/1 23/15 26/12 27/2
structured [1] 23/4
study [1] 16/12
submit [3] 26/21 28/4 33/20
successful [2] 13/21

33/4
suggestion [3] 14/17 27/21 28/5
suggestions [1] 10/8
suggests [2] 9/19 21/4
suit [1] 24/24
summer [1] 13/3
sun [1] 33/8
SUNSCREEN [2] 1/5 3/6
suntan [1] 24/19
support [1] 11/18
supports [1] 29/17
supposed [1] 32/21
sure [12] 4/21 7/1 8/17 9/1 9/11 17/15 17/16 20/13 21/16 24/16 34/6 34/8
suspect [3] 8/20 32/14 32/14
suspicious [2] 31/24 32/2
system [1] 22/2

**T**

table [1] 30/2
take [10] 4/22 14/16 15/15 15/17 18/3 21/23 27/16 30/11 31/19 34/7
talk [4] 3/22 18/1 23/2 34/6
taught [1] 25/1
team [1] 26/18
tell [1] 28/13
tend [1] 31/9
tension [1] 34/11
term [1] 26/25
terms [7] 8/7 13/20 13/23 19/25 25/21 33/18 34/25
Thank [11] 5/15 5/16 6/3 6/24 7/15 8/9 11/15 15/1 18/2 30/4 34/20
Thanks [2] 6/2 35/5
then we're [1] 22/24
thing [8] 8/10 13/5 15/20 20/11 25/16 27/11 33/25 34/17 34/21
things [14] 3/12 3/14 3/17 8/1 9/2 9/7 9/18 25/7 25/7 25/10 27/17 27/24 27/24 33/14
think [69]
thinking [2] 25/16 31/11
thought [4] 25/3 25/6 26/20 34/2
thousands [1] 14/1
three [5] 4/6 12/18 13/1 18/12 25/8
threshold [2] 21/20 22/12

**T**

**thrown [1]** 24/5
**time [13]** 13/11 14/5 14/11 18/6 18/23 20/3 28/6 28/14 32/25 33/5 33/8 34/6 34/9
**timely [1]** 19/21
**times [2]** 15/19 25/8
**timing [2]** 27/15 28/24
**TIMOTHY [3]** 1/20 1/20 5/3
**title [2]** 30/13 30/13
**today [7]** 3/5 3/20 3/25 5/11 7/3 9/8 27/15
**tomorrow's [1]** 34/19
**topics [1]** 12/22
**trained [1]** 31/24
**transcript [2]** 1/8 35/11
**transfer [2]** 28/17 28/20
**transferred [8]** 4/16 4/25 5/4 6/6 6/11 7/9 16/8 29/4
**true [1]** 26/2
**trust [4]** 25/1 25/2 26/2 34/13
**try [5]** 9/25 24/11 24/24 25/8 29/23
**trying [3]** 18/10 21/19 31/18
**twice [1]** 25/7
**two [10]** 4/7 9/21 11/21 12/19 16/7 18/12 19/10 21/18 25/8 34/8
**two-step [1]** 21/18
**TYLER [1]** 2/10
**type [1]** 33/25
**typical [3]** 21/17 22/15 27/2
**typically [2]** 9/16 34/7

**U**

**U.S [1]** 1/10
**understand [7]** 17/24 18/24 24/7 24/12 24/13 24/16 34/11
**understanding [1]** 30/9
**Understood [1]** 9/3
**unique [1]** 26/24
**UNITED [1]** 1/1
**unquote [1]** 16/10
**unreasonable [1]** 12/11
**unseat [2]** 21/17 22/1
**unusual [4]** 13/7 13/8 14/9 14/13
**unwieldy [1]** 26/12
**urgency [2]** 19/2 24/5
**use [1]** 22/22

**V**

**various [1]** 6/22

**version [2]** 34/23 34/24
**view [1]** 30/10
**vis [2]** 24/9 24/9
**voice [1]** 10/20
**voluntarily [2]** 10/1 21/22
**voluntary [5]** 13/16 13/17 14/9 27/12 33/3

**W**

**wait [2]** 24/7 25/4
**WALSH [5]** 2/2 2/2 5/17 5/22 5/25
**want [24]** 3/24 10/9 10/15 11/18 14/23 18/5 18/22 19/17 19/22 21/8 23/3 23/11 23/13 24/8 24/10 24/11 24/14 25/6 25/7 25/8 25/14 26/9 33/20 34/8
**wanted [3]** 3/8 7/18 25/17
**wants [3]** 20/25 24/12 30/17
**way [10]** 7/19 9/18 10/10 10/19 11/3 14/14 16/18 19/13 20/21 23/4
**ways [2]** 11/20 22/20
**we've [6]** 14/1 26/17 29/14 29/18 31/4 31/22
**weaknesses [1]** 10/6
**WEBB [1]** 2/10
**week [1]** 12/19
**weeks [6]** 12/18 12/19 14/12 16/7 24/7 29/14
**weigh [1]** 34/14
**well [9]** 6/13 6/23 7/10 8/3 8/19 15/15 21/3 23/13 28/2
**went [1]** 19/24
**West [1]** 3/3
**Wholesale [1]** 6/23
**wildly [1]** 13/21
**WILLEY [12]** 1/19 4/23 6/16 15/25 17/17 18/22 24/3 27/9 29/3 32/12 33/19 33/24
**willing [2]** 15/4 22/4
**wiser [1]** 12/19
**wish [1]** 29/24
**WITKIN [1]** 1/14
**Word [3]** 34/23 34/24 34/25
**words [1]** 19/22
**work [13]** 9/3 9/14 9/14 17/10 20/21 21/2 22/15 23/4 24/23 28/10 28/15 34/10 34/15
**worked [3]** 25/25 26/17 28/12
**working [2]** 3/12 31/7

**works [5]** 19/8 22/3 22/7 22/13 23/16
**worries [1]** 7/13
**worth [1]** 30/12
**worthy [1]** 11/12
**written [1]** 15/24
**wrong [2]** 24/17 29/1

**Y**

**year [3]** 28/3 28/3 32/22
**years [5]** 9/15 9/16 15/3 34/13 35/1
**York [1]** 4/17

**Z**

**ZALESIN [15]** 2/11 6/20 7/1 7/3 7/20 8/8 11/13 14/24 14/25 17/20 24/23 26/6 26/17 30/19 33/11
**ZOOM [3]** 1/8 1/11 2/1