UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:

JOHNSON & JOHNSON AEROSOL
SUNSCREEN MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY
LITIGATION

MDL CASE NO.: 3015

THIS DOCUMENT RELATES TO:
ALL CASES

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

PLEASE TAKE NOTICE that on August 12, 2022, at 2:00 p.m., or on such date as may be specified by the Court, before the Honorable Raag Singhal, United States District Court for the Southern District of Florida, via ZOOM Video Conference, Fort Lauderdale, Florida, the Plaintiffs, Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich, through Class Counsel, will request Court approval of this motion for an award of attorneys' fees and costs, and to retain jurisdiction for the purpose of potentially awarding incentive awards at a later date.

This motion is made pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, the Parties' Settlement Agreement filed December 17, 2021 (Doc.55-9), and paragraph 21 of the Court's Order of Preliminary Approval Order dated March 28, 2022 (Doc. 68).

Plaintiffs, on behalf of themselves and the Class, will request the entry of an order, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), granting the following relief:

(1)   Awarding Class Counsel $2,500,000 in attorneys' fees and $100,000 in costs and

litigation expenses; and

(2)   Retain jurisdiction over the matter of Incentive Awards until the ultimate disposition

of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) is known.

Plaintiffs show that if their Motion is approved, the Settlement will result in a minimum of

$4,850,000 in value for the Class members (i.e. the "common fund").  This common fund amount consists

of:

a.   $1,750,000 in vouchers;

b.   $500,000 in class notice/administrative costs;

c.   $2,500,000 in attorneys' fees;

d.   $100,000 in costs/expenses;

e.   The monetary relief provided to the Class resulting from the extension of time in which to file

claims in JJCI's Aerosol Products Refund Program;[1] and

f.   The non-monetary/injunctive relief provided to the Class resulting from JJCI's changed

business practices relative to benzene testing in sunscreen products.[2]

This Motion will be heard concurrent with Plaintiffs' Motion for Final Approval of Class Action

Settlement, which will be separately briefed and filed no later than June 24, 2022. *See* Order, Doc. 68, ¶ 20.

This Motion is based on this notice; the incorporated Memorandum of Law; the Declarations of Class

Counsel filed concurrently herewith; the Settlement Agreement (previously filed at Doc. 55-9); and on such

further evidence as may be submitted or as the Court may receive.

Pursuant to Rule 23(h), Class Counsel files this Motion thirty-five (35) calendar days before the

Objection and Exclusion Date and the Claims Deadline. *See* Order, Doc. 68 at ¶ 21. A copy of this Motion

---

[1] Class Counsel will provide additional support in their Motion for Final Approval of Class Action Settlement to support the monetary value of this relief.

[2] Class Counsel will provide additional support in their Motion for Final Approval of Class Action Settlement to support the monetary value of this relief. However, through deposition discovery, Class Counsel has confirmed that JJCI is complying with the Settlement Agreement's non-monetary/injunctive obligations and Class Counsel is awaiting additional confirmatory documents and data.

will be posted to the Settlement Website, https://www.sunproductsettlement.com, where it can easily be accessed by Class members.

## I.    INTRODUCTION

Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich ("Plaintiffs" or "Class Representatives"), by and through Class Counsel, respectfully submit this memorandum in support of Plaintiff's Motion for Fees, Costs, and Incentive Awards ("Motion"). Plaintiffs bring this Motion because the time and effort spent by them and their Class Counsel resulted in significant compensation to Class members in form of cash refunds and vouchers, as well as important injunctive relief. Specifically, the common fund's monetary and non-monetary benefits include:

a.    the monetary value of extending the cash refund period available under JJCI's Aerosol Products Refund Program from the fall of 2021 to January 14, 2022;

b.    the monetary value of providing vouchers to Class members for non-aerosol sunscreen products worth $10.58 each up to $1,750,000;

c.    the monetary value provided by JJCI paying up to $500,000 in class notice and administrative costs associated with the settlement;

d.    the monetary value of JJCI agreeing to separately pay Class Counsel's attorneys' fees up to $2,500,000;

e.    the monetary value of JJCI agreeing to separately pay Class Counsel's costs and expenses up to $100,000; and

f.    the non-monetary/injunctive value of requiring JJCI to adopt and implement new testing and business practices to prevent the recurrence of benzene contamination in its sunscreen products.

Consistent with the Settlement Agreement, Plaintiffs seek a total of $2,500,000 for their Class

v

Counsel for reasonable fees, and an additional $100,000 in reimbursable costs and expenses. Class Counsel reasonably anticipates that the requested amount will be consistent with standard awards approved in this circuit, which range between 33% and 38% of the value provided to the Class, plus costs. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *40 (S.D. Fla. Dec. 15, 2021) (noting that "courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."). Given the risks inherent in this litigation, the efficient way in which Class Counsel was able to negotiate a nation-wide resolution to this matter impacting both recalled *and* non-recalled sunscreen products, and the significant value of the changed business practices adopted by JJCI, such an award is appropriate.

From inception to now, Class Counsel has expended time and resources by, among other things, investigating the factual and legal bases for this suit, speaking with putative class representatives and witnesses, retaining class representatives, researching legal theories to draft the first-filed class action complaints and amended complaints in *Brennan* and *Serota,* staying abreast of legal developments in a variety of related cases, drafting an interested party response in support of consolidation in the Joint Panel on Multi-District Litigation (JPML), conducting extensive discussions with Class members and other class counsel, vetting and retaining experts, exchanging mediation memoranda and reviewing class data, participating in mediation and numerous additional settlement discussions, engaged in confirmatory written discovery, taking depositions of JJCI corporate witnesses, negotiating, drafting, and finalizing the Term Sheet, Settlement Agreement, Protective Order, and associated paperwork, and addressing this Court's discovery concerns regarding non-participating counsel.

Class Counsel has undertaken the costs and time of this litigation on a pure contingency basis and therefore has paid out-of-pocket for expenses and has not received payment for their work to-date. Class Counsel took on these risks before JJCI initiated its voluntary recall of the sunscreen products, and JJCI has to date denied all alleged claims and fully defend this case every step of the way until the time of resolution. Recovery was therefore far from certain when this litigation began, and even when secured,

Class Counsel has worked diligently to effectuate immediate relief via the continuation of cash refunds to Class members affected by the recall, making available vouchers for non-contaminated products, and obtaining nonmonetary/injunctive relief designed to remediate the contamination in an expeditious and efficient manner.

Plaintiffs also seek reasonable service awards for the time they spent and the risks they took in bringing and participating in this litigation. Plaintiffs provided critical assistance to counsel, including providing counsel factual information for the various complaints, and reviewing pleadings and settlement papers. At the same time, Plaintiffs acknowledge that Eleventh Circuit precedent appears to prohibit the payments of service or incentive awards to class representatives, though no mandate has issued. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1257, 1260 (11th Cir. 2020). Given the current posture relative to incentive payments, Plaintiffs understand that the Court cannot grant their request for incentive awards at this time, however, Plaintiffs request that the Court retain jurisdiction to allow Plaintiffs to renew the request for incentive awards if *Johnson* ultimately is overruled.

Plaintiffs further submit that their requested fees, costs, and (tentative) incentive awards are especially appropriate because Plaintiffs and their Counsel achieved outstanding relief as to the primary allegations in their complaints. Plaintiffs alleged in the *Brennan* and *Serota* actions that certain of JJCI's sunscreen products were contaminated with benzene, a known human carcinogen. Approximately 1 ½ months later, JJCI initiated a voluntary recall of several of its aerosol sunscreen products due to benzene contamination. On the same day JJCI instituted its recall, it announced it would offer full cash refunds for the recalled aerosol products and established a process for claimants to obtain such refunds[3].

As of May 24, 2022, millions of JJCI sunscreen products had been affected by the recall, resulting

---

[3] JJCI calculated the refund based upon either: (1) the price actually paid by the consumer for the product if such evidence was submitted by the claimant; or (2) the highest manufacturer's suggested retail price ("MSRP") of the aerosol product for which a refund was claimed.  This ensured that class members received a refund the amount of at least the full purchase price paid for the product, if not more.

in refund requests from 323,028 claimants for refunds totaling $9,284,264.58, and an average refund check of $29.53. *See* Richards Class Counsel Decl. at ¶ 9. Of note, JJCI's cash refund program was initially set to expire in the fall of 2021 and did *not* provide vouchers or any other monetary relief for non-aerosol sunscreen products unaffected by the recall. As a result of this settlement, however, JJCI agreed to (1) extend its cash refund program through January 14, 2022—a full six (6) months from the date of the recall announcement; (2) offer consumers vouchers worth $10.58 each towards the purchase of certain non-aerosol Neutrogena and Aveeno products[4]; and (3) adopt and implement new testing protocols to prevent the recurrence of benzene contamination in its sunscreen products.  This was remarkable given the tremendous cost to JJCI and the fact that the non-recalled products had not, in testing performed by both JJCI and Plaintiff's independent labs, been shown to be contaminated with benzene.

With the settlement, Class members need only timely submit a valid claim form via the settlement website. Importantly, Class members are not required to purchase more expensive items to redeem their voucher(s); the vouchers may be used to purchase any Neutrogena or Aveeno product (not just sunscreen products); the vouchers are fully transferable; the vouchers may be aggregated; and the vouchers are valid for up to one (1) year from date of issuance. *See* Settlement Agreement, at ¶ 53 (previously filed at Doc. 55-9). To date, the voucher program has been a resounding success. As of May 28, 2022, there have been 111,276 total claims for vouchers under the settlement, equivalent to approximately $1,177,300 in voucher payments. *See* Exhibit A (Settlement Administrator Rust Consulting's Summary Report).

In sum, and as explained below, in light of the work performed by Class Counsel and the substantial time, effort, and personal sacrifice of the named Plaintiffs, the fees, costs, and (tentative) Incentive Awards sought in this Motion are reasonable. Moreover, because JJCI has agreed to separately pay attorneys' fees and costs, as well as the $250 Incentive Awards to each named Plaintiff to the extent

---

[4] Plaintiffs confirmed through independent testing that JJCI's non-aerosol sunscreen products were not contaminated with benzene. Nevertheless, the voucher relief afforded Class members in this settlement provides compensation for non-contaminated products.

allowed by law, the awards sought here will not reduce the relief being offered to Class members. For all of the reasons set forth herein, Plaintiffs respectfully request that the Court grant these awards.

## II.  CLASS COUNSEL'S REQUEST FOR COSTS AND ATTORNEYS' FEES IS REASONABLE

### A.  The Actual Expenses Incurred Were Reasonable and Necessary

Class Counsel requests the Court approve $100,000 in litigation costs and expenses that are being paid as part of the $100,000 dollars that JJCI has agreed to separately pay. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, and currently totals $114,888.33. *See* Joint Fee Decl., at ¶ 2. The expenses incurred are kept in the usual course of business by Class Counsel and were all necessary in this matter. These costs are outlined in Class Counsels' respective declarations and include expert fees, travel expenses, deposition expenses, product testing costs, filing fees, etc. *See* Exhibit B Joint Fee Decl. of Richards/Aylstock (hereafter Joint Fee Decl."), at ¶ 22; *see also* (Exhibit C) (Declarations of Bradley/Grombacher, Beasley Allen, Keller Postman, and Walsh Law). All of these out-of- pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action, and are paid separately from benefits that flow to the Class members as a result of the settlement.

### B.  The Requested Fee Award is Appropriate Under 11th Circuit Precedent

"It is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).[5] Not only does the settlement provide for

---

[5] "…Eleventh Circuit attorneys' fee law governs this request, not the law of Florida." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362, n.3 (S.D. Fla. 2011) (district court presiding over diversity-based class action has equitable power to apply federal common law in deciding fees); *see also Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) (same).

reasonable attorneys' fees to be paid from separately by JJCI, but Class Counsel's requested fees and expenses is expected to fall well within the acceptable range in this circuit.

### 1.     Legal Standard

There is a strong judicial policy favoring the pretrial settlement of class actions. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Lee v. Ocwen Loan Servicing, LLC*, No. 0:14-cv-60649-JG, 2015 U.S. Dist. LEXIS 121998, *14 (S.D. Fla. Sept. 14, 2015) (same). A class settlement should be approved as long as it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and "not the product of collusion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Pursuant to Fed. R. Civ. P. 23(h), in a certified class action, the court may award reasonable attorney's fees and costs as authorized by law or by the parties' agreement:

> Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1)     A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2)     A class member, or a party from whom payment is sought, may object to the motion.
>
> (3)     The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
> (4)     The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule

54(d)(2)(D).

Fed. R. Civ. P. 23(h). The agreed-upon cap for fee and cost amounts are properly considered part of the common fund.  As the MANUAL FOR COMPLEX LITIGATION (Fourth) provides:

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, ... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel.

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.7; *see also In re Progressive Ins. Corp. Underwriting and Rating Prac. Litig.*, 2008 WL 11348505 at *4 (N.D. Fla. Oct. 1, 2008) (quoting MANUAL for same proposition).

### 2.   Eleventh Circuit Law Supports Class Counsel's Attorneys' Fee Request

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is "well-established in the Eleventh Circuit that, when a representative party confers a benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Camden I*, 946 F.2d at 771. As the Eleventh Circuit noted in *Camden I*, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Such fees also encourage efforts to seek redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1367; *Mashburn v. Nat'l Healthcare*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). The Court has discretion to determine an appropriate fee percentage. *See Hensley*, 461 U.S. at 437. However, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam*, 176 F. Supp. 2d at 1333 (*quoting Camden I*, 946 F.2d at 774).

The requested amount of $2,500,000 in Attorneys' Fees and $100,000 in Expenses comports with

both the Settlement Agreement and Eleventh Circuit law. *See* Settlement Agreement at ⁋ 61 (previously filed at Doc. 55-9) ("JJCI agrees to pay the approved fee amount, up to $2,500,000 million, and costs, up to $100,000[.]") The requested award is inclusive of not only all Class Counsel's fees, but also reimbursement of all litigation expenses (other than the cost of administration and notice, which JJCI is paying directly) as well as the value of the non-monetary/injunctive relief obtained on behalf of the Class. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *39 (S.D. Fla. Dec. 15, 2021) (noting that "courts may also consider the nonmonetary relief provided to the Class as 'part of the settlement pie'" for purposes of determining counsel's fee award). Class Counsel will offer evidence at the Final Hearing in support of the value of the non-monetary/injunctive relief component of the settlement.

Moreover, the fee and cost payment is separate from the relief due to the Class members. The Parties negotiated and reached this cap of $2,500,000 in Attorneys' Fees and $100,000 in Expenses only after reaching agreement on all other material terms of this settlement. *See* Joint Fee Decl., at ¶ 6. This was an appropriate way to resolve attorneys' fees and costs. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee"). Moreover, "[w]here class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately." *In re Home Depot*, 931 F.3d 1065, 1080 (11th Cir. 2019); *see also Saccoccio v. J.P. Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("The 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants.").

The typical common fund fee awarded is between 20% and 30%. See *Camden I*, 946 F.2d at 775; *see also In re Checking Account Overdraft Litig.*, 2014 WL 12557837 at * 16 (S.D. Fla. June 10. 2014) (awarding fees of 30% of $14,580,000 settlement fund). However, courts within this circuit routinely award attorneys' fees in excess of 30%. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *40 (S.D. Fla. Dec. 15, 2021) (noting that "courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more

of the gross settlement fund."); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % award); *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 %); *In re Home Shopping Network Sec. Litig.*, No. 87-428-T-13(A) (M.D. Fla. 1991) (33% award).

Although Class Counsel is waiting on confirmatory documents from JJCI relative to the value of the non-monetary/injunctive relief obtained via the settlement, at this time Class Counsel believes that the requested fees of $2,500,000 will represent approximately one-third of the common fund.

### 3. Application of the Johnson/Camden I Factors

In ruling on a fee request like this one, courts consider the "*Camden I* factors" (sometimes referred to as the "*Johnson* Factors"). *Camden I*, 946 F.2d at 772 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974[6])); *Saccoccio*, 297 F.R.D. at 694-5. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* These twelve factors are merely guidelines, as the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (*citing Camden I*, 946 F.2d at 775). Additional factors include "time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement, and the economics involved in prosecuting a class action." *In re*

---

[6] As stated in the Court's March 28, 2022 Order Establishing The Duties, Responsibilities, and Organizational Structure Of Interim Class Counsel (Doc. No. 67), as regards attorneys' fees, "the Court will be guided by the factors set forth in *Johnson v. Georgia Hwy. Exp., Inc.,* 488 F.2d 714 (5th Cir. 1974)1 (abrogated on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87 (1989)), as directed by the Eleventh Circuit in *Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008).") .

*Sunbeam*, 176 F. Supp. 2d at 1335 (*quoting Camden I*, 946 F.2d at 775). Application of the *Camden I* and other salient factors here supports Class Counsel's reasonable fee request.

### a.        First Factor: Time and Labor Required

Prosecuting and settling this action demanded considerable time and labor, which began with interviewing the first-filed class representatives (i.e. *Brennan* and *Serota*), investigating their claims, conducting exhaustive legal research into the various causes of action that may be applicable, drafting pre-suit notice letters to the various named defendants, and drafting and filing the initial complaints. By the time this Court held its first hearing on January 6, 2022, Class Counsel had: (i) filed an interested party response to the motion for consolidation in the JPML; (ii) retained experts; (iii) conducted investigations with clients and members of the Class regarding their experiences with JJCI's recall program; (iv) filed Amended Complaints in both *Brennan* and *Serota*; (v) engaged in initial settlement discussions, (vi) engaged in the voluntary exchange of information; (vii) agreed on a mediation date and neutral mediator; (viii) formed a coalition with other class counsel; (ix) developed confirmatory discovery requests and served them on JJCI; (x) executed a non-disclosure agreement with JJCI; (xi) reviewed thousands of pages of discovery; (xii) prepared one shared and one confidential mediation statement; (xiii) engaged in a day-long mediation; (xiv) performed testing on sunscreen product samples; (xv) engaged in continued settlement discussions; and (xv) negotiated, drafted, and executed a term sheet tentatively resolving this litigation on a class-wide basis. *See* Joint Fee Decl., at ¶ 8. Since then, Class Counsel has negotiated and finalized the Settlement Agreement, retained a Claims Administrator, drafted a motion for appointment of interim counsel, drafted a motion for preliminary approval of class action settlement, reviewed and edited notice documents, negotiated and drafted a protective order, conducted confirmatory discovery, and arranged for the production of discovery to non-participating class counsel.

Moreover, Class Counsel's work is not yet done. If this settlement is approved, Class Counsel will be required to, among other things: (1) continue to monitor the notice program, (2) communicate with the

Claims Administrator (Rust Consulting) (3) respond to continuing class member inquiries now and throughout the remainder of the claims administration process; (4) respond to objections, if any; (5) prepare for and attend the final approval hearing; (6) continue to oversee the claims administration process, including addressing any claim issues; (7) monitor distribution of voucher payments to class members; and (8) potentially handle post-judgment appeals. *See* Joint Fee Decl. at ¶ 9. Ultimately, Class Counsel has, and will continue, to expend hundreds of person-hours on this case. *Id*. The fees and costs requested encompass all future work by Class Counsel. *Id*.

      **b.**          **Second Factor: Novelty and Difficulty**

This case initially presented a unique set of facts related to the testing by a third party pharmacy which found benzene contamination in numerous sunscreen products, including JJCI's. The test results were unique because some products tested high for benzene contamination while others—even ones made by the same manufacturer—did not. In other words, not all sunscreen products were contaminated with dangerous levels of benzene even though they were, in some cases, ostensibly the same sunscreen product. Moreover, JJCI argued, with some support, that benzene is not (and never has been) an "ingredient" in sunscreens but instead a residual solvent; and that, under federal regulations, benzene may be used as a solvent in the manufacturing of sunscreen products at levels up to 2 parts per million without the need to disclose its existence on the product's label. In other words, this was not your run-of-the-mill contamination case. The issues were complex and recovery to the Class members was not guaranteed.

Furthermore, after the filing of Class Counsel's initial complaints, JJCI initiated a voluntary recall of its aerosol sunscreen products. That recall did not include non-aerosol lotion, stick, or gel sunscreen products, notwithstanding that non-aerosol sunscreen products were also identified by third party testing labs to be contaminated with benzene. This presented more complexities with respect to identifying which products were actually contaminated with benzene, which renders measuring the impact on each Class member a dense and complicated process at best. Accordingly, long before this matter was brought to the

court for approval, in an effort to offer 100% remediation to the Class members, Class Counsel had to work closely with JJCI and experts to develop a settlement which (i) provided a fair window of opportunity for consumers affected by JJCI's recall to receive 100% compensation, (ii) encompassed those products affected by the contamination while providing some relief to consumers who, based on published third testing, still had doubts about potential benzene contamination with respect to *any* JJCI sunscreen product, and (iii) instituted adequate remediation and testing protocols to prevent such contamination from recurring. These complex factors favor approval of the requested award.

### c.        Third Factor: Requisite Skill

The quality of the representation by Class Counsel and the standing of class counsel are important factors that support the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. at 654; *see also Am. Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, at *26-29 n.15 (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one").

Here, each of the Class Counsel law firms have significant experience and a proven track record of successfully litigating and resolving complex national class action and mass tort actions. *See* Joint Fee Decl., at ¶¶ 27-31. Consistent with this background, Class Counsel prepared and prosecuted this complex case zealously, skillfully, and efficiently—providing extended relief to those impacted by JJCI's initial recall, relief to those who purchased non-recalled products, and significant non-monetary relief. "[T]he results achieved should play a major part in the determination of the fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Accordingly, the skill in which Class Counsel was able to negotiate such a favorable settlement favors approval of the requested award.

### d.        Fourth Factor: Preclusion of Other Employment

If Class Counsel were precluded from taking on other cases, that fact can be a factor in supporting the fee application. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at *17 (S.D. Fla. April 13, 2016).

Each of these firms are engaged in very busy practices prosecuting consumer claims. Therefore, the time spent on this litigation over a past year was time that could not be spent on litigating other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the expenditure of significant blocks of time, "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work"). The *Yates* court further acknowledged that such devotion of time and resources to complex matters like the instant action "should raise the amount of the award." *Id.*; *Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) ("[T]he *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium."). Finally, "a determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).

Here, Class Counsel has worked on this case for over a year, from when they first communicated with the *Brennan* and *Serota* Plaintiffs, investigated their claims and filed suit, to the present. *See* Joint Fee Decl., at ¶ 8. Their time and money spent was fully contingent, and there was a great risk of Class Counsel never receiving any compensation. *Id.* at ¶ 20. To date, Class members have never been paid a dime. *Id.* In effect, Class Counsel have advanced their legal services to the Class members since the beginning.

Moreover, after investigating this matter, Class Counsel recognized that due to the complex nature of the alleged claims for recovery, JJCI could have, and in fact did, raise factual and legal defenses in the Action that presented a risk that the Plaintiffs might not have prevailed on class certification. Among other defenses, JJCI asserted lack of standing and relied on federal regulations which ostensibly allow the use of benzene as a residual solvent in the manufacturing of JJCI's sunscreen products. Nevertheless, Class Counsel zealously prosecuted this Action and spent $114,888.33 in out-of-pocket, unreimbursed expenses, despite the risk. *See* Joint Fee Decl., at ¶ 22. These factors strongly favor the requested fee.

      **e.**        **Fifth and Sixth Factors: Customary Fee and Whether the Fee is**

**Fixed or Contingent**

The "customary fee" in a class action lawsuit of this nature is a contingency fee because no individual class member possesses a sufficiently large enough stake in the litigation to justify paying attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654, *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Court should therefore give substantial weight to the contingent nature of Class Counsels' fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The customary and prevailing market rates for *single* class actions in this district range from $450 to $600 per hour. *See, e.g., Cornfeld v. Certain Underwriters at Lloyd's, et al.*, No. 19-60626-CIV (S.D. Fla. February 7, 2020), *Report and Recommendation adopted*, (finding $600/hr rate for partner with 20 years' experience reasonable in class action); *Rodriguez v. GeoVera Specialty Ins. Co.*, 2020 WL 6800451, at *4 (S.D. Fla. Nov. 19, 2020) (awarding $525/hour to lawyer with 22 years of legal experience, $450 to a lawyer with 12 years of legal experience, and $150 to paralegals); *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 2018 WL 2460295 at *4 (S.D. Fla. April 15, 2018), R*eport and Recommendation Adopted*, 2018 WL 2446196 (S.D. Fla. May 31, 2018) (finding $590/hr and $500/hr reasonable for partners who have practiced law for over 30 years).

However, this is not a single class action; it is a multi-district class action litigation that draws counsel from a "national collective"—literally from coast to coast—which suggests "a broader view of what constitutes the 'relevant legal community' when [assessing customary rates] rather than the locality found in single class actions." *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F.Supp.3d 485 (W.D. La. 2017); *see also Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 753, 764 (S.D. Ind. 2003) ("[S]ome distinctly 'national' litigation, such as multi-district litigation under 28 U.S.C. § 1407, may justify the use of essentially 'national' rates because the location of the forum court is fortuitous."); *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig.*, 202 WL 1402875

v

at *8 (S.D. Ind. May 2, 202). (noting in MDL action that defendant "incorrectly…asserts that Indiana rates set the standard. They do not. Nothing requires a lawyer hired to appear in a case to reduce her regular hourly rate to match the rates common to the community in which the case pends; there would be even less reason to require her to adjust it again when the MDL Panel centralizes the case in still another legal billing community."). As aptly noted by the court in *In re Actos*:

> To use the typical hourly rates charged in the area which happens to be where the selected and temporary MDL Court sits . . . to calculate the lodestar, again, clearly lacks the compelling logic found in a class action and as noted, would result in an arbitrary determination, higher or lower than that which should be proper for compensation, either for the time expended, or for the caliber of work produced. Again, MDLs, by their statutory creation, represent a *temporary collective of cases from across the nation*, pursued by a *nationwide collective* of counsel, who engage in *a national practice*, for the common benefit of *a collection of nationwide claimants*. In reality, with an MDL, the "relevant legal community," is, in fact, as the Honorable Eldon Fallon noted in *In re: Vioxx Prod. Liab. Litig.*, 760 F.Supp.2d 640, 660 (E.D. La. 2010) that *collective of counsel* from *the collective of the proper venues* temporarily brought together for pre-trial purposes—here, *a national collective.*

*Id.* at 521 (emphasis in original). Therefore, as other MDL courts have found, "acknowledging the immense breadth of location and experience represented by plaintiffs' counsel in this case," the "relevant legal community" should be considered "national in nature" so that the court should consider those rates selected in similar MDLs when evaluating an applicable customary lodestar rate. *Id.* at 522.

The total hours billed by appointed Class Counsel for this litigation is **2,982.13** hours. The total lodestar based on a rate of $750 per hour—previously approved in multi-district litigations in this district and and elsewhere—is $235,847.50 *See, e.g., In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F.Supp.3d 485, 574 (W.D. La. 2017) (awarding Aylstock, Witkin, Kreis & Overholtz $895/hr); *In re Avandia Mktg, Sales Prac. & Prod. Liab. Litig.*, 2020 WL 5078106 at *2, 4 (E.D. Pa. July 29, 2020) (awarding Aylstock, Witkin, Kreis & Overholtz $805/hr); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 WL 7178421, at *15 (M.D. Pa. Dec. 9, 2016) (collecting cases) (stating that approved awards of attorneys' fees in class action settlements reached rates of $835 per hour); *In re Mercedes-Benz Tele Aid Contract Litig.*,

No. 07-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (approving hourly rates of $855 for partners); *Vital Pharms., Inc v. Pepsico, Inc.*, 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021) (approving a $1,313 hourly rate for a New York partner).

 The risk of no recovery for the Class and Class Counsel in complex cases of this type was very real. As other courts have pointed out, one way to measure the risk of continued litigation is to look at the recent dismissals of factually similar cases. See *Ferron*, 2021 WL 2940240, at *11 ("An example of the risk of continued litigation is evidenced by the recent dismissal without prejudice of a factually similar case."). In doing so, one would see that the inherent risks of continued litigation is real. *See, e.g., Schloegel v. Edgewell Personal Care Co., et a*l., Case No. 4:21-cv-00631 (W.D. Mo. Mar. 16, 2022) (order granting motion to dismiss based on lack of standing because class plaintiff does not allege specific sunscreen product she purchased was adulterated with benzene); *Bodle v. Johnson & Johnson Consumer Inc.,* Case No. 3:21-cv-07742 (N.D. Cal. Feb. 24, 2022) (order granting motion to dismiss under Rule 12(b)(6)) in class case involving benzene contaminated sunscreen products).

 To be sure, there are numerous class actions in which plaintiffs' counsel expended many hours and yet received no remuneration whatsoever despite their diligence and expertise. Similarly, even the most promising case can be eviscerated by a sudden change in the law after years of litigation. Accordingly, courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award" and "A contingency fee arrangement often justifies an increase in the award of attorney's fees"); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award"); *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees"). A determination of a fair fee for Class Counsel must include consideration of

the contingent nature of the fee, the outlay of out-of-pocket expenses, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See e.g., Pinto*, 513 F. Supp. 2d at 1339.

In making a determination of what constitutes a fair percentage fee, this Court should be guided by those market rates and this circuit's benchmark standard. *See, e.g., Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (33 1/3%); *Waters*, 190 F.3d (affirming 33 1/3%); *Tapken v. Brown*, No. 90-691-CIV-MARCUS, 1992 U.S. Dist. LEXIS 11744 (S.D. Fla. Mar. 13, 1992) (33%). Here, the requested fee of $2,500,000 of the total gross value of the settlement, which includes Class Counsel's fees, expenses, and the potential Incentive Awards, is consistent with the market rate for class actions when viewed in the context of the financial benefits achieved for this 111,000 plus member class.  A fee award of $2,500,000 is consistent with, and in fact much less than fee awards in similar cases. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1366, n.35 (awarding 35%, noting that, in private marketplace, "contingent fees of 33-44 percent are common in mass action[s] and . . . higher fees often prevail"). As such, application of this *Camden I* factor supports Class Counsel's fee request.

### f.        Seventh Factor: Time Limitations

The potential health implications related to benzene exposure in sunscreen presented potential damages to Class members that increased on a daily basis. Thus, Class Counsel worked diligently to research and precisely craft the first-filed *Brennan* and *Serota* complaints. *See* Joint Fee Decl., at ¶ 8. As a testament to the clarity in which Class Counsel presented the merits of the alleged claims, numerous other law firms who filed putative class actions thereafter effectively cut-and-paste from the *Brennan* and *Serota* complaints directly into the body of their own complaints, and just two (2) months after the *Brennan* and *Serota* complaints were filed, the parties began negotiating a potential settlement. Indeed, if the settlement is approved, Class Counsel will have secured a settlement that offered an extension of the 100% refund of the purchase price of JJCI's recalled sunscreen products, a meaningful voucher for uncontaminated JJCI

sunscreen products, and valuable injunctive relief to over 111,000 consumers nationwide—all while avoiding wasteful litigation and expense. This factor weighs heavily in favor of approval of the requested fees.

g.          **Eighth Factor: Amount Involved and Results Obtained**

The eighth factor looks to the value of injunctive and monetary relief achieved. The "most critical factor is the degree of success obtained" by Class Counsel. *Hensley*, 461 U.S. at 436. The settlement is tremendous in this regard. In the operative complaints, Plaintiffs sought primarily monetary relief in the form of refunds to Class members and injunctive relief. After the complaints were filed, in July 2021 JJCI initiated a voluntarily recall of the affected sunscreen products which provided monetary relief to consumers in the form of refunds. However, that voluntary refund program was limited. It was slated to end in the fall 2021 and only provided refunds on recalled sunscreen products.

Through the settlement, Class members (i) were granted a full six (6) month window within which to make claims for full refunds under JJCI's Aerosol Products Refund Program, (ii) are eligible to make a claim for vouchers worth $10.58 each for *uncontaminated* sunscreen products; and (iii) obtained meaningful injunctive relief which requires JJCI to adopt and implement important testing protocols that will help alleviate the possibility that benzene contamination of this sort will reoccur. *See Rivera v. Amalgamated Debt Collection Services, Inc.*, 2007 WL 9701693 (S.D. Fla. Feb. 27, 2007) (assessing *Johnson* factors and approving fee award based in part on "meaningful injunctive relief [provided] to the Class…."); *Hamilton v. SunTrust Mortg., Inc.*, 2014 WL 5419507 at *4 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide."); *Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1381 (S.D. Fla. July 26, 2007)  (describing important injunctive relief in discussing range of possible recovery); *Lipuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005); (valuing injunctive relief as part of "significant relief" made available to class and determining that

settlement was fair, adequate, and reasonable). As the Northern District of Florida recently noted, it is "a rare class action settlement which provides complete relief for all alleged harms." *Begley v. Ocwen Loan Serv., LLC*, 2017 WL 11672899 at *4 (N.D. Fla. Nov. 2, 2017) (citation omitted).

Further evidence of the excellent result Class Counsel achieved is the fact that the settlement has been met with near-universal approval at this stage. Indeed, there were no objections to Class Counsel's Motion for Preliminary Approval of the Class Action Settlement. *See* Joint Fee Decl., at ¶ 14. Similarly, the notice informed the Class about the settlement terms, including that Plaintiffs would seek Attorneys' Fees up to $2,500,000 and Expenses of up to $100,000, and (putative) Incentive Awards of $250 each for Class representatives. As of the date of this filing, more than 111,000 claims have been submitted, no objections have been filed with the Court or Claims Administrator, and no Class Members have opted out. See Rust Consulting Status Report dated May 28, 2022. *See Braynen v. Nationstar Morg., LLC*, 2015 WL 6872519 at *6 (S.D. Fla. Nov. 9, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable….") (internal quotations omitted). The favorable reaction of other counsel and the Class members to the relief offered to them favors approval of the requested fees.

h.        **Ninth Factor: Experience, Reputation and Skill of Counsel**

Here, each of the Class Counsel law firms have a significant experience and a record of successfully litigating and resolving complex national class action and mass tort actions. *See* Joint Fee Decl., at ¶¶ 29-33. Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. *Id.* Class Counsel regularly engage in major complex litigation involving consumer fraud, and have been appointed Class Counsel by courts throughout the country. *Id.* Consistent with this background outlined above, Class Counsel prepared and prosecuted this Action zealously, skillfully, and efficiently, and achieved a great result for the Class members.

i.        **Tenth Factor: "Undesirability" of Taking the Case**

When Class Counsel filed this case, they understood the risks associated with filing an action based

on uncorroborated testing from a third party, particularly given the inconsistent results with respect to the levels of benzene found among product manufacturers and even within the same product manufacturers' products. Class Counsel also understood the defenses that would be leveled regarding the class representatives' standing to pursue the matter and the defenses surrounding the use of benzene as solvent in the manufacturing process, which could be construed by some as sanctioned by the FDA, thus preempting the claims. So while Class Counsel views this case as distinctly desirable, peer firms, even those specializing in complex consumer class actions, might have rejected this case on uncertainty grounds. This supports the approval of the fee application under the tenth *Johnson* factor.

### j.        Eleventh Factor: Relationship with Client

The class representatives have never retained any of the Class Counsel firms prior to this case. *See* Joint Fee Decl., at ¶ 28. Therefore, this factor is not relevant here.

### k.        Twelfth Factor: Awards in Similar Cases

The fee award requested here is consistent with and in fact much less than fee awards in similar cases. *In re Hill's Pet Nutrition, Inc. Dog Food Prod. Liab. Litig*., Case No. 2:19-md-02887, MDL No. 2887, (D. Kan. July 30, 2021) (awarding 32% in fees over in class action case alleging dog food contained excessive levels of vitamin D); *In re Honest Mktg. Litig*., 2017 WL 8780329 at *3 (S.D. NY Dec. 8, 2017) (awarding attorney fees equal to 32% of settlement fund in class action over mislabeling consumer products as containing "no harsh chemicals (ever!)" even though they contained synthetic and toxic ingredients).; *Xavier et al. v. Bayer Healthcare LLC*, Case No. 5:20-cv-00102, (N.D. Cal. Dec. 15, 2021) (awarding 30% attorney's fees in class action over mislabeled sunscreen products) Further, the fees and costs are being paid separately by JJCI. Accordingly, Class Counsel's fee application, which they reasonably anticipate (pending confirmatory discovery) will not exceed one-third of the common fund, is reasonable under the twelfth *Johnson* factor.

### l.        The Remaining *Camden I* Factors Also Favor Approving Class Counsels'

**Fee Request**

The above-referenced twelve factors are guidelines; they are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775.  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id*. These additional factors also support the full award.

First, the time required to reach a settlement in this matter favors the fee request. The parties settled this matter only after the initial class action complaints were filed in May 2021, after the affected sunscreen products were recalled in July 2021, after the parties engaged in mediation in September 2021, and after numerous additional settlement talks thereafter.  Thus, the settlement—though efficiently handled—did not come quickly. Second, as of this filing, there have been no substantial objections by class members or other parties to the settlement terms or the fees requested by counsel. Third, the non-monetary benefits conferred upon the Class by the settlement are significant. The changes required to be made to JJCI's business practices, including its raw materials and finished goods testing of sunscreen products for benzene, will lessen the risk of future benzene contamination to Plaintiffs, the Class, and the public.  These company-wide policy changes provide considerable nonmonetary value for purposes of determining Class Counsels' fees. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (rejecting argument that value of injunctive relief should not also be considered in addition to cash for purposes of determining class counsel's fees). Finally, the economic risk involved in litigating this class—and continuing to litigate it after JJCI initiated its voluntary refund program—was significant. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at * 16 (S.D. Fla. April 13, 2016) (noting the "monetary benefits and injunctive relief, are excellent — Settlement Class members will recover near-complete relief

v

and Defendants will be mandated to cease the key practices at the core of Plaintiffs' complaint. These results are powerful support for the fee award."). Moreover, as noted, similar benzene contamination sunscreen actions have recently been met with dismissals. *See, e.g., Schloegel*, Case No. 4:21-cv-00631 (W.D. Mo. Mar. 16, 2022) (order granting motion to dismiss); *Bodle,* Case No. 3:21-cv-07742 (N.D. Cal. Feb. 24, 2022) (order granting motion to dismiss). Thus, the economic risk involved in this case was significant. *See In re Checking Account Overdraft Litig*., 2015 WL 12642178 at *!5 (S.D. Fla. April 2, 2015) (fee award supported by "the economics involved in prosecuting a class action", where the "Court is convinced by its many years of presiding over significant cases like this one that proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one.")  *Exum v. Nat'l Tire and Battery*, 2020 WL 1670997 at *7 (S.D. Fla. April 6, 2020) ("The value of the injunctive relief alone, involving substantial changes to Defendants' tire-registration practices, which will in turn lessen alleged dangers and property damage to Plaintiffs, the Class, and the public, warrants approval.").

### 4.      A Lodestar Cross-Check is Appropriate Here

Even though the Eleventh Circuit does not require that a lodestar cross-check be done in determining common benefit fee awards, "Courts often use a cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee." *In re Home Depot Inc*. 931 F.3d 1065, 1091 (11th Cir. 2019). Accordingly, this Court may refer that Class Counsel's billing for comparison. *Waters v. Inter. Precious Metals Corp*., 190 F.3d 1291, 1298 (11th Cir. 1999) (noting that "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). A lodestar "cross-check" supports that the fees requested here are reasonable. Collectively, Class Counsel have submitted time which shows 2,981.13 hours of work has been spent on this litigation. Applying an hourly rate of $750 per hour, which is a rate previously approved by multi-district courts in this district and elsewhere, results in a lodestar of $2,235,847.50, and Class Counsel's work is not yet

complete. Accordingly, the lodestar cross-check supports the reasonableness of the requested fee award.

### C.   THE REQUESTED INCENTIVE AWARDS ARE REASONABLE

Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Checking Account Overdraft*, 830 F. Supp. 2d at 1357 (granting service awards of $5,000 per class representative); *Saccoccio*, 297 F.R.D. at 695 (granting $5,000 service award). Courts determine service awards by looking at "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* Courts in this Circuit have routinely authorized substantial payments to lead plaintiffs whenever requested settlements were approved. *See, e.g., City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, Case No. 08- 23317-CV-JAL, [D.E. 201], at 8 (S.D. Fla. Jul. 7, 2013) ($40,000); *Fuller v. Imperial Holdings, Inc.*, No. 9:11-cv-81184-KAM, [D.E. 95], at 15 (S.D. Fla. Sept. 16, 2013) ($10,000).

Class Counsel submits that the modest incentive awards of $250 to be paid separately to each class representative is appropriate. As detailed in Plaintiffs' previously submitted declarations (previously filed at Doc. 55-1), each has performed admirably with respect to their duties as class representatives, including participating when requested, assisting in the investigation of the case, reviewing complaints, and staying abreast of the litigation. At the same time, Class counsel recognizes that the Eleventh Circuit has ruled that incentive or service awards are prohibited. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1257, 1260 (11th Cir. 2020). Nevertheless, it remains "something of an open question in this circuit whether incentive awards are available." *Marcrum v. Hobby Lobby Stores, Inc.*, 201 WL 3710133 at *5 (N.D. Ala. Aug. 20, 2021). This is because "an Eleventh Circuit judge has withheld the mandate, and the plaintiff has sought *en banc* review. In this posture, the Eleventh Circuit's decision is not final." *Id.* Thus, the current "best practice" is to approve the Settlement Agreement's fees and cost provisions, except for the incentive

awards, and retain jurisdiction to allow Plaintiffs to renew the request for incentive awards if *Johnson* ultimately is overruled. *Id*; *see also Fruitstone v. Sparten Race, Inc*., 2021 WL 2012362 (S.D. Fla. May 20, 2021) (carving out incentive award issue); *Janicijevic v. Classic Cruise Operator, Ltd.*, 2021 WL 2012366 at *10 (S.D. Fla. May 19, 2021) (same); *Cotter v. Checkers Drive-In Restaurants, Inc*., 2021 WL 3773414 at *13 (M.D. Fla. Aug. 25, 2021) (same).

Accordingly, Class Counsel requests that this Court approve the Motion for Fees and Costs, but retain jurisdiction regarding the application for incentive awards for the limited purpose of revisiting the denial of incentive awards if the Eleventh Circuit holds a rehearing *en banc* in and reverses its decision.[7]

## CONCLUSION

For the foregoing reasons, the Class Plaintiffs respectfully request that the Court grant the following relief:

(1)   Award Class Counsel $2,500,000 in attorneys' fees and $100,000 in costs and litigation expenses; and

(2)   Retain jurisdiction over the matter of Incentive Awards until the ultimate disposition of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) is known, either through a final decision of the Eleventh Circuit or a final decision of the United States Supreme Court. If *Johnson, supra,* is reversed after that final decision, Plaintiffs may file a motion renewing their request for approval of class representative incentive awards.

## LOCAL RULE 7.1(B) CERTIFICATION

Class Counsel have conferred with JJCI's counsel regarding the relief requested in this Motion, and

---

[7] This approach is permissible because the Settlement Agreement contains a severability provision which provides that "this settlement is not contingent on the court's approval of such Incentive Award." Settlement Agreement, at ¶57 (previously filed at Doc. 55-9).

JJCI has authorized Class Counsel to represent that, consistent with the Settlement Agreement, JJCI does not oppose the request for attorneys' fees (up to $2,500,000) and expenses (up to $100,000).

Date: June 2, 2022

By: /s/R. Jason Richards
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
BRYAN F. AYLSTOCK (FL Bar # 0078263)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Kiley L. Grombacher, Esq. (245960)
Marcus J. Bradley, Esq. (174156)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: kgrombacher@bradleygrombacher.com
mbradley@bradleygrombacher.com
rfisher@bradleygrombacher.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2022, I electronically filed the foregoing with the Clerk of

the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of

record.

By: R. Jason Richards
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ,
PLLC**
R. JASON RICHARDS (FL Bar # 18207)
BRYAN F. AYLSTOCK (FL Bar # 0078263)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com