UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:

JOHNSON & JOHNSON AEROSOL
SUNSCREEN MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY
LITIGATION

MDL CASE NO.: 3015

THIS DOCUMENT RELATES TO:
ALL CASES

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

PLEASE TAKE NOTICE that on August 12, 2022, at 2:00 p.m., or on such date as may be specified by the Court, before the Honorable Raag Singhal, United States District Court for the Southern District of Florida, via ZOOM Video Conference, Fort Lauderdale, Florida, the Plaintiffs, Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich, through Class Counsel, will request Court approval of this motion for an award of attorneys' fees and costs, and to retain jurisdiction for the purpose of potentially awarding incentive awards at a later date.

This motion is made pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, the Parties' Settlement Agreement filed December 17, 2021 (Doc.55-9), and paragraph 21 of the Court's Order of Preliminary Approval Order dated March 28, 2022 (Doc. 68).

Plaintiffs, on behalf of themselves and the Class, will request the entry of an order, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), granting the following relief:

(1)   Awarding Class Counsel $2,500,000 in attorneys' fees and $100,000 in costs and

litigation expenses; and

1

(2)   Retain jurisdiction over the matter of Incentive Awards until the ultimate disposition

of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) is known.

Plaintiffs show that if their Motion is approved, the Settlement will result in a minimum of

$4,850,000 in value for the Class members (i.e. the "common fund").  This common fund amount consists

of:

  a.   $1,750,000 in vouchers;

  b.   $500,000 in class notice/administrative costs;

  c.   $2,500,000 in attorneys' fees;

  d.   $100,000 in costs/expenses;

  e.   The monetary relief provided to the Class resulting from the extension of time in which to file

   claims in JJCI's Aerosol Products Refund Program;[1] and

  f.   The non-monetary/injunctive relief provided to the Class resulting from JJCI's changed

   business practices relative to benzene testing in sunscreen products.[2]

This Motion will be heard concurrent with Plaintiffs' Motion for Final Approval of Class Action

Settlement, which will be separately briefed and filed no later than June 24, 2022. *See* Order, Doc. 68, ¶ 20.

This Motion is based on this notice; the incorporated Memorandum of Law; the Declarations of Class

Counsel filed concurrently herewith; the Settlement Agreement (previously filed at Doc. 55-9); and on such

further evidence as may be submitted or as the Court may receive.

Pursuant to Rule 23(h), Class Counsel files this Motion thirty-five (35) calendar days before the

---

[1] Class Counsel will provide additional support in their Motion for Final Approval of Class Action Settlement to support the monetary value of this relief.

[2] Class Counsel will provide additional support in their Motion for Final Approval of Class Action Settlement to support the monetary value of this relief. However, through deposition discovery, Class Counsel has confirmed that JJCI is complying with the Settlement Agreement's non-monetary/injunctive obligations and Class Counsel is awaiting additional confirmatory documents and data.

Objection and Exclusion Date and the Claims Deadline. *See* Order, Doc. 68 at ¶ 21. A copy of this Motion will be posted to the Settlement Website, https://www.sunproductsettlement.com, where it can easily be accessed by Class members.

## I.    INTRODUCTION

Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich ("Plaintiffs" or "Class Representatives"), by and through Class Counsel, respectfully submit this memorandum in support of Plaintiff's Motion for Fees, Costs, and Incentive Awards ("Motion"). Plaintiffs bring this Motion because the time and effort spent by them and their Class Counsel resulted in significant compensation to Class members in form of cash refunds and vouchers, as well as important injunctive relief. Specifically, the common fund's monetary and non-monetary benefits include:

a.    the monetary value of extending the cash refund period available under JJCI's Aerosol Products Refund Program from the fall of 2021 to January 14, 2022;

b.    the monetary value of providing vouchers to Class members for non-aerosol sunscreen products worth $10.58 each up to $1,750,000;

c.    the monetary value provided by JJCI paying up to $500,000 in class notice and administrative costs associated with the settlement;

d.    the monetary value of JJCI agreeing to separately pay Class Counsel's attorneys' fees up to $2,500,000;

e.    the monetary value of JJCI agreeing to separately pay Class Counsel's costs and expenses up to $100,000; and

f.    the non-monetary/injunctive value of requiring JJCI to adopt and implement new testing and business practices to prevent the recurrence of benzene contamination in its sunscreen products.

Consistent with the Settlement Agreement, Plaintiffs seek a total of $2,500,000 for their Class Counsel for reasonable fees, and an additional $100,000 in reimbursable costs and expenses. Class Counsel reasonably anticipates that the requested amount will be consistent with standard awards approved in this circuit, which range between 33% and 38% of the value provided to the Class, plus costs. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *40 (S.D. Fla. Dec. 15, 2021) (noting that "courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."). Given the risks inherent in this litigation, the efficient way in which Class Counsel was able to negotiate a nation-wide resolution to this matter impacting both recalled *and* non-recalled sunscreen products, and the significant value of the changed business practices adopted by JJCI, such an award is appropriate.

From inception to now, Class Counsel has expended time and resources by, among other things, investigating the factual and legal bases for this suit, speaking with putative class representatives and witnesses, retaining class representatives, researching legal theories to draft the first-filed class action complaints and amended complaints in *Brennan* and *Serota,* staying abreast of legal developments in a variety of related cases, drafting an interested party response in support of consolidation in the Joint Panel on Multi-District Litigation (JPML), conducting extensive discussions with Class members and other class counsel, vetting and retaining experts, exchanging mediation memoranda and reviewing class data, participating in mediation and numerous additional settlement discussions, engaged in confirmatory written discovery, taking depositions of JJCI corporate witnesses, negotiating, drafting, and finalizing the Term Sheet, Settlement Agreement, Protective Order, and associated paperwork, and addressing this Court's discovery concerns regarding non-participating counsel.

Class Counsel has undertaken the costs and time of this litigation on a pure contingency basis and therefore has paid out-of-pocket for expenses and has not received payment for their work to-date. Class Counsel took on these risks before JJCI initiated its voluntary recall of the sunscreen products, and JJCI has to date denied all alleged claims and fully defend this case every step of the way until the time of

4

resolution. Recovery was therefore far from certain when this litigation began, and even when secured, Class Counsel has worked diligently to effectuate immediate relief via the continuation of cash refunds to Class members affected by the recall, making available vouchers for non-contaminated products, and obtaining nonmonetary/injunctive relief designed to remediate the contamination in an expeditious and efficient manner.

Plaintiffs also seek reasonable service awards for the time they spent and the risks they took in bringing and participating in this litigation. Plaintiffs provided critical assistance to counsel, including providing counsel factual information for the various complaints, and reviewing pleadings and settlement papers. At the same time, Plaintiffs acknowledge that Eleventh Circuit precedent appears to prohibit the payments of service or incentive awards to class representatives, though no mandate has issued. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1257, 1260 (11th Cir. 2020). Given the current posture relative to incentive payments, Plaintiffs understand that the Court cannot grant their request for incentive awards at this time, however, Plaintiffs request that the Court retain jurisdiction to allow Plaintiffs to renew the request for incentive awards if *Johnson* ultimately is overruled.

Plaintiffs further submit that their requested fees, costs, and (tentative) incentive awards are especially appropriate because Plaintiffs and their Counsel achieved outstanding relief as to the primary allegations in their complaints. Plaintiffs alleged in the *Brennan* and *Serota* actions that certain of JJCI's sunscreen products were contaminated with benzene, a known human carcinogen. Approximately 1 ½ months later, JJCI initiated a voluntary recall of several of its aerosol sunscreen products due to benzene contamination. On the same day JJCI instituted its recall, it announced it would offer full cash refunds for the recalled aerosol products and established a process for claimants to obtain such refunds[3].

---

[3] JJCI calculated the refund based upon either: (1) the price actually paid by the consumer for the product if such evidence was submitted by the claimant; or (2) the highest manufacturer's suggested retail price ("MSRP") of the aerosol product for which a refund was claimed. This ensured that class members received a refund the amount of at least the full purchase price paid for the product, if not more.

As of May 24, 2022, millions of JJCI sunscreen products had been affected by the recall, resulting in refund requests from 323,028 claimants for refunds totaling $9,284,264.58, and an average refund check of $29.53. *See* Richards Class Counsel Decl. at ¶ 9. Of note, JJCI's cash refund program was initially set to expire in the fall of 2021 and did *not* provide vouchers or any other monetary relief for non-aerosol sunscreen products unaffected by the recall. As a result of this settlement, however, JJCI agreed to (1) extend its cash refund program through January 14, 2022—a full six (6) months from the date of the recall announcement; (2) offer consumers vouchers worth $10.58 each towards the purchase of certain non-aerosol Neutrogena and Aveeno products[4]; and (3) adopt and implement new testing protocols to prevent the recurrence of benzene contamination in its sunscreen products.  This was remarkable given the tremendous cost to JJCI and the fact that the non-recalled products had not, in testing performed by both JJCI and Plaintiff's independent labs, been shown to be contaminated with benzene.

With the settlement, Class members need only timely submit a valid claim form via the settlement website. Importantly, Class members are not required to purchase more expensive items to redeem their voucher(s); the vouchers may be used to purchase any Neutrogena or Aveeno product (not just sunscreen products); the vouchers are fully transferable; the vouchers may be aggregated; and the vouchers are valid for up to one (1) year from date of issuance. *See* Settlement Agreement, at ¶ 53 (previously filed at Doc. 55-9). To date, the voucher program has been a resounding success. As of May 28, 2022, there have been 111,276 total claims for vouchers under the settlement, equivalent to approximately $1,177,300 in voucher payments. *See* Exhibit A (Settlement Administrator Rust Consulting's Summary Report).

In sum, and as explained below, in light of the work performed by Class Counsel and the substantial time, effort, and personal sacrifice of the named Plaintiffs, the fees, costs, and (tentative)

---

[4] Plaintiffs confirmed through independent testing that JJCI's non-aerosol sunscreen products were not contaminated with benzene. Nevertheless, the voucher relief afforded Class members in this settlement provides compensation for non-contaminated products.

Incentive Awards sought in this Motion are reasonable. Moreover, because JJCI has agreed to separately pay attorneys' fees and costs, as well as the $250 Incentive Awards to each named Plaintiff to the extent allowed by law, the awards sought here will not reduce the relief being offered to Class members. For all of the reasons set forth herein, Plaintiffs respectfully request that the Court grant these awards.

## II.   CLASS COUNSEL'S REQUEST FOR COSTS AND ATTORNEYS' FEES IS REASONABLE

### A.  The Actual Expenses Incurred Were Reasonable and Necessary

Class Counsel requests the Court approve $100,000 in litigation costs and expenses that are being paid as part of the $100,000 dollars that JJCI has agreed to separately pay. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, and currently totals $114,888.33. *See* Joint Fee Decl., at ¶ 2. The expenses incurred are kept in the usual course of business by Class Counsel and were all necessary in this matter. These costs are outlined in Class Counsels' respective declarations and include expert fees, travel expenses, deposition expenses, product testing costs, filing fees, etc. *See* Exhibit B Joint Fee Decl. of Richards/Aylstock (hereafter Joint Fee Decl."), at ¶ 22; *see also* (Exhibit C) (Declarations of Bradley/Grombacher, Beasley Allen, Keller Postman, and Walsh Law). All of these out-of- pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action, and are paid separately from benefits that flow to the Class members as a result of the settlement.

### B.  The Requested Fee Award is Appropriate Under 11th Circuit Precedent

"It is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).[5] Not only does the settlement provide for

---

[5] "…Eleventh Circuit attorneys' fee law governs this request, not the law of Florida." *In re*

7

reasonable attorneys' fees to be paid from separately by JJCI, but Class Counsel's requested fees and expenses is expected to fall well within the acceptable range in this circuit.

### 1. Legal Standard

There is a strong judicial policy favoring the pretrial settlement of class actions. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Lee v. Ocwen Loan Servicing, LLC*, No. 0:14-cv-60649-JG, 2015 U.S. Dist. LEXIS 121998, *14 (S.D. Fla. Sept. 14, 2015) (same). A class settlement should be approved as long as it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and "not the product of collusion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Pursuant to Fed. R. Civ. P. 23(h), in a certified class action, the court may award reasonable attorney's fees and costs as authorized by law or by the parties' agreement:

> Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1)  A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2)  A class member, or a party from whom payment is sought, may object to the motion.
>
> (3)  The court may hold a hearing and must find the facts and state

_____

*Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362, n.3 (S.D. Fla. 2011) (district court presiding over diversity-based class action has equitable power to apply federal common law in deciding fees); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) (same).

8

its legal conclusions under Rule 52(a).

(4)     The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h). The agreed-upon cap for fee and cost amounts are properly considered part of the common fund.  As the MANUAL FOR COMPLEX LITIGATION (Fourth) provides:

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, ... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel.

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.7; *see also In re Progressive Ins. Corp. Underwriting and Rating Prac. Litig.*, 2008 WL 11348505 at *4 (N.D. Fla. Oct. 1, 2008) (quoting MANUAL for same proposition).

### 2.   Eleventh Circuit Law Supports Class Counsel's Attorneys' Fee Request

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is "well-established in the Eleventh Circuit that, when a representative party confers a benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Camden I*, 946 F.2d at 771. As the Eleventh Circuit noted in *Camden I*, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Such fees also encourage efforts to seek redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1367; *Mashburn v. Nat'l Healthcare*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). The Court has discretion to determine an appropriate fee percentage. *See Hensley*, 461 U.S. at 437. However, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re*

*Sunbeam Securities Litig.,* 176 F. Supp. 2d at 1333 (*quoting Camden I*, 946 F.2d at 774).

The requested amount of $2,500,000 in Attorneys' Fees and $100,000 in Expenses comports with both the Settlement Agreement and Eleventh Circuit law. *See* Settlement Agreement at ⁋ 61 (previously filed at Doc. 55-9) ("JJCI agrees to pay the approved fee amount, up to $2,500,000 million, and costs, up to $100,000[.]") The requested award is inclusive of not only all Class Counsel's fees, but also reimbursement of all litigation expenses (other than the cost of administration and notice, which JJCI is paying directly) as well as the value of the non-monetary/injunctive relief obtained on behalf of the Class. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *39 (S.D. Fla. Dec. 15, 2021) (noting that "courts may also consider the nonmonetary relief provided to the Class as 'part of the settlement pie'" for purposes of determining counsel's fee award). Class Counsel will offer evidence at the Final Hearing in support of the value of the non-monetary/injunctive relief component of the settlement.

Moreover, the fee and cost payment is separate from the relief due to the Class members. The Parties negotiated and reached this cap of $2,500,000 in Attorneys' Fees and $100,000 in Expenses only after reaching agreement on all other material terms of this settlement. *See* Joint Fee Decl., at ¶ 6. This was an appropriate way to resolve attorneys' fees and costs. *See Hensley v. Eckerhart*, 461 U.S. at 437 ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee"). Moreover, "[w]here class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately." *In re Home Depot*, 931 F.3d 1065, 1080 (11th Cir. 2019); *see also Saccoccio v. J.P. Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("The 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants.").

The typical common fund fee awarded is between 20% and 30%. See *Camden I*, 946 F.2d at 775; *see also In re Checking Account Overdraft Litig.*, 2014 WL 12557837 at * 16 (S.D. Fla. June 10. 2014) (awarding fees of 30% of $14,580,000 settlement fund). However, courts within this circuit routinely award attorneys'

fees in excess of 30%. *See Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *40 (S.D. Fla. Dec. 15, 2021) (noting that "courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % award); *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 %); *In re Home Shopping Network Sec. Litig.*, No. 87-428-T-13(A) (M.D. Fla. 1991) (33% award).

Although Class Counsel is waiting on confirmatory documents from JJCI relative to the value of the non-monetary/injunctive relief obtained via the settlement, at this time Class Counsel believes that the requested fees of $2,500,000 will represent approximately one-third of the common fund.

### 3. Application of the Johnson/Camden I Factors

In ruling on a fee request like this one, courts consider the "*Camden I* factors" (sometimes referred to as the "*Johnson* Factors"). *Camden I*, 946 F.2d at 772 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *Saccoccio*, 297 F.R.D. at 694-5. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. These twelve factors are merely guidelines, as the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (*citing Camden I*, 946 F.2d at 775). Additional factors include "time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (*quoting Camden I*, 946 F.2d at 775). Application of the *Camden I* and

11

other salient factors here supports Class Counsel's reasonable fee request.

a.          **First Factor: Time and Labor Required**

Prosecuting and settling this action demanded considerable time and labor, which began with interviewing the first-filed class representatives (i.e. *Brennan* and *Serota*), investigating their claims, conducting exhaustive legal research into the various causes of action that may be applicable, drafting pre-suit notice letters to the various named defendants, and drafting and filing the initial complaints. By the time this Court held its first hearing on January 6, 2022, Class Counsel had: (i) filed an interested party response to the motion for consolidation in the JPML; (ii) retained experts; (iii) conducted investigations with clients and members of the Class regarding their experiences with JJCI's recall program; (iv) filed Amended Complaints in both *Brennan* and *Serota*; (v) engaged in initial settlement discussions, (vi) engaged in the voluntary exchange of information; (vii) agreed on a mediation date and neutral mediator; (viii) formed a coalition with other class counsel; (ix) developed confirmatory discovery requests and served them on JJCI; (x) executed a non-disclosure agreement with JJCI; (xi) reviewed thousands of pages of discovery; (xii) prepared one shared and one confidential mediation statement; (xiii) engaged in a day-long mediation; (xiv) performed testing on sunscreen product samples; (xv) engaged in continued settlement discussions; and (xv) negotiated, drafted, and executed a term sheet tentatively resolving this litigation on a class-wide basis. *See* Joint Fee Decl., at ¶ 8. Since then, Class Counsel has negotiated and finalized the Settlement Agreement, retained a Claims Administrator, drafted a motion for appointment of interim counsel, drafted a motion for preliminary approval of class action settlement, reviewed and edited notice documents, negotiated and drafted a protective order, conducted confirmatory discovery, and arranged for the production of discovery to non-participating class counsel.

Moreover, Class Counsel's work is not yet done. If this settlement is approved, Class Counsel will be required to, among other things: (1) continue to monitor the notice program, (2) communicate with the Claims Administrator (Rust Consulting) (3) respond to continuing class member inquiries now and

throughout the remainder of the claims administration process; (4) respond to objections, if any; (5) prepare for and attend the final approval hearing; (6) continue to oversee the claims administration process, including addressing any claim issues; (7) monitor distribution of voucher payments to class members; and (8) potentially handle post-judgment appeals. *See* Joint Fee Decl. at ¶ 9. Ultimately, Class Counsel has, and will continue, to expend hundreds of person-hours on this case. *Id*. The fees and costs requested encompass all future work by Class Counsel. *Id*.

### b.          Second Factor: Novelty and Difficulty

This case initially presented a unique set of facts related to the testing by a third party pharmacy which found benzene contamination in numerous sunscreen products, including JJCI's. The test results were unique because some products tested high for benzene contamination while others—even ones made by the same manufacturer—did not. In other words, not all sunscreen products were contaminated with dangerous levels of benzene even though they were, in some cases, ostensibly the same sunscreen product. Moreover, JJCI argued, with some support, that benzene is not (and never has been) an "ingredient" in sunscreens but instead a residual solvent; and that, under federal regulations, benzene may be used as a solvent in the manufacturing of sunscreen products at levels up to 2 parts per million without the need to disclose its existence on the product's label. In other words, this was not your run-of-the-mill contamination case. The issues were complex and recovery to the Class members was not guaranteed.

Furthermore, after the filing of Class Counsel's initial complaints, JJCI initiated a voluntary recall of its aerosol sunscreen products. That recall did not include non-aerosol lotion, stick, or gel sunscreen products, notwithstanding that non-aerosol sunscreen products were also identified by third party testing labs to be contaminated with benzene. This presented more complexities with respect to identifying which products were actually contaminated with benzene, which renders measuring the impact on each Class member a dense and complicated process at best. Accordingly, long before this matter was brought to the court for approval, in an effort to offer 100% remediation to the Class members, Class Counsel had to work

closely with JJCI and experts to develop a settlement which (i) provided a fair window of opportunity for consumers affected by JJCI's recall to receive 100% compensation, (ii) encompassed those products affected by the contamination while providing some relief to consumers who, based on published third testing, still had doubts about potential benzene contamination with respect to *any* JJCI sunscreen product, and (iii) instituted adequate remediation and testing protocols to prevent such contamination from recurring. These complex factors favor approval of the requested award.

### c.        Third Factor: Requisite Skill

The quality of the representation by Class Counsel and the standing of class counsel are important factors that support the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n.15 (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one").

Here, each of the Class Counsel law firms have significant experience and a proven track record of successfully litigating and resolving complex national class action and mass tort actions. *See* Joint Fee Decl., at ¶¶ 27-31. Consistent with this background, Class Counsel prepared and prosecuted this complex case zealously, skillfully, and efficiently—providing extended relief to those impacted by JJCI's initial recall, relief to those who purchased non-recalled products, and significant non-monetary relief. "[T]he results achieved should play a major part in the determination of the fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Accordingly, the skill in which Class Counsel was able to negotiate such a favorable settlement favors approval of the requested award.

### d.        Fourth Factor: Preclusion of Other Employment

If Class Counsel were precluded from taking on other cases, that fact can be a factor in supporting the fee application. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at *17 (S.D. Fla. April 13, 2016). Each of these firms are engaged in very busy practices prosecuting consumer claims. Therefore, the time

14

spent on this litigation over a past year was time that could not be spent on litigating other matters. *See Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the expenditure of significant blocks of time, "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work"). The *Yates* court further acknowledged that such devotion of time and resources to complex matters like the instant action "should raise the amount of the award." *Id.*; *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 708 (D. Colo. 2007) ("[T]he *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium."). Finally, "a determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).

Here, Class Counsel has worked on this case for over a year, from when they first communicated with the *Brennan* and *Serota* Plaintiffs, investigated their claims and filed suit, to the present. *See* Joint Fee Decl., at ¶ 8. Their time and money spent was fully contingent, and there was a great risk of Class Counsel never receiving any compensation. *Id.* at ¶ 20. To date, Class members have never been paid a dime. *Id.* In effect, Class Counsel have advanced their legal services to the Class members since the beginning.

Moreover, after investigating this matter, Class Counsel recognized that due to the complex nature of the alleged claims for recovery, JJCI could have, and in fact did, raise factual and legal defenses in the Action that presented a risk that the Plaintiffs might not have prevailed on class certification. Among other defenses, JJCI asserted lack of standing and relied on federal regulations which ostensibly allow the use of benzene as a residual solvent in the manufacturing of JJCI's sunscreen products. Nevertheless, Class Counsel zealously prosecuted this Action and spent $114,888.33 in out-of-pocket, unreimbursed expenses, despite the risk. *See* Joint Fee Decl., at ¶ 22. These factors strongly favor the requested fee.

      **e.**        **Fifth and Sixth Factors: Customary Fee and Whether the Fee is**

**Fixed or Contingent**

The "customary fee" in a class action lawsuit of this nature is a contingency fee because no individual class member possesses a sufficiently large enough stake in the litigation to justify paying attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654, *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Court should therefore give substantial weight to the contingent nature of Class Counsels' fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

The customary and prevailing market rates for *single* class actions in this district range from $450 to $600 per hour. *See, e.g., Cornfeld v. Certain Underwriters at Lloyd's, et al.*, No. 19-60626-CIV (S.D. Fla. February 7, 2020), *Report and Recommendation adopted,* (finding $600/hr rate for partner with 20 years' experience reasonable in class action); *Rodriguez v. GeoVera Specialty Ins. Co.*, 2020 WL 6800451, at *4 (S.D. Fla. Nov. 19, 2020) (awarding $525/hour to lawyer with 22 years of legal experience, $450 to a lawyer with 12 years of legal experience, and $150 to paralegals); *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 2018 WL 2460295 at *4 (S.D. Fla. April 15, 2018), R*eport and Recommendation Adopted*, 2018 WL 2446196 (S.D. Fla. May 31, 2018) (finding $590/hr and $500/hr reasonable for partners who have practiced law for over 30 years).

However, this is not a single class action; it is a multi-district class action litigation that draws counsel from a "national collective"—literally from coast to coast—which suggests "a broader view of what constitutes the 'relevant legal community' when [assessing customary rates] rather than the locality found in single class actions." *In re Actos (Pioglitazone) Prods. Liab. Litig*., 274 F.Supp.3d 485, 521 (W.D. La. 2017); *see also  Eli Lilly & Co. v. Zenith Goldline Pharms., Inc*., 264 F. Supp. 2d 753, 764 (S.D. Ind. 2003) ("[S]ome distinctly 'national' litigation, such as multi-district litigation under 28 U.S.C. § 1407, may justify the use of essentially 'national' rates because the location of the forum court is fortuitous."); *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig*., 202 WL

16

1402875 at *8 (S.D. Ind. May 2, 202). (noting in MDL action that defendant "incorrectly…asserts that Indiana rates set the standard. They do not. Nothing requires a lawyer hired to appear in a case to reduce her regular hourly rate to match the rates common to the community in which the case pends; there would be even less reason to require her to adjust it again when the MDL Panel centralizes the case in still another legal billing community."). As aptly noted by the court in *In re Actos*:

> To use the typical hourly rates charged in the area which happens to be where the selected and temporary MDL Court sits . . . to calculate the lodestar, again, clearly lacks the compelling logic found in a class action and as noted, would result in an arbitrary determination, higher or lower than that which should be proper for compensation, either for the time expended, or for the caliber of work produced. Again, MDLs, by their statutory creation, represent a *temporary collective of cases from across the nation*, pursued by a *nationwide collective* of counsel, who engage in *a national practice*, for the common benefit of *a collection of nationwide claimants*. In reality, with an MDL, the "relevant legal community," is, in fact, as the Honorable Eldon Fallon noted in *In re: Vioxx Prod. Liab. Litig.*, 760 F.Supp.2d 640, 660 (E.D. La. 2010) that *collective of counsel* from *the collective of the proper venues* temporarily brought together for pre-trial purposes—here, *a national collective.*

*Id*. at 521 (emphasis in original). Therefore, as other MDL courts have found, "acknowledging the immense breadth of location and experience represented by plaintiffs' counsel in this case," the "relevant legal community" should be considered "national in nature" so that the court should consider those rates selected in similar MDLs when evaluating an applicable customary lodestar rate. *Id*. at 522.

The total hours billed by appointed Class Counsel for this litigation is 2,552.47 hours. The total lodestar based on a rate of $750 per hour—previously approved in multi-district litigations in this district and elsewhere—is $1,914,352.50.[6] *See, e.g., In re Actos,* 274 F.Supp.3d at 574 (awarding Aylstock, Witkin, Kreis & Overholtz $895/hr); *In re Avandia Mktg, Sales Prac. & Prod. Liab. Litig*., 2020 WL 5078106 at *2, 4 (E.D. Pa. July 29, 2020) (awarding Aylstock, Witkin, Kreis & Overholtz $805/hr); *In re Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2016 WL 7178421, at *15 (M.D. Pa. Dec. 9,

---

[6] The billable hours referenced herein constitute attorney time only and do not include paralegal or legal assistant time.

2016) (collecting cases) (stating that approved awards of attorneys' fees in class action settlements reached rates of $835 per hour); *In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (approving hourly rates of $855 for partners); *Vital Pharms., Inc v. Pepsico, Inc*., 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021) (approving a $1,313 hourly rate for a New York partner).

The risk of no recovery for the Class and Class Counsel in complex cases of this type was very real. As other courts have pointed out, one way to measure the risk of continued litigation is to look at the recent dismissals of factually similar cases. See *Ferron v. Kraft Heinz Foods Co.,* 2021 WL 2940240 at *11 ("An example of the risk of continued litigation is evidenced by the recent dismissal without prejudice of a factually similar case."). In doing so, one would see that the inherent risks of continued litigation is real. *See, e.g., Schloegel v. Edgewell Personal Care Co., et al*., 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) (order granting motion to dismiss based on lack of standing because class plaintiff does not allege specific sunscreen product she purchased was adulterated with benzene); *Bodle v. Johnson & Johnson Consumer Inc.,* Case No. 3:21-cv-07742 (N.D. Cal. Feb. 24, 2022) (order granting motion to dismiss under Rule 12(b)(6)) in class case involving benzene contaminated sunscreen products).

To be sure, there are numerous class actions in which plaintiffs' counsel expended many hours and yet received no remuneration whatsoever despite their diligence and expertise. Similarly, even the most promising case can be eviscerated by a sudden change in the law after years of litigation. Accordingly, courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award" and "A contingency fee arrangement often justifies an increase in the award of attorney's fees"); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award"); *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees").

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See e.g., Pinto*, 513 F. Supp. 2d at 1339.

In making a determination of what constitutes a fair percentage fee, this Court should be guided by those market rates and this circuit's benchmark standard. *See, e.g., Gutter v. E.I. Dupont De Nemours & Co*., No. 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (33 1/3%); *Waters,* 190 F.3d at 1300 (affirming 33 1/3%). Here, the requested fee of $2,500,000 of the total gross value of the settlement, which includes Class Counsel's fees, expenses, and the potential Incentive Awards, is consistent with the market rate for class actions when viewed in the context of the financial benefits achieved for this 111,000 plus member class.  A fee award of $2,500,000 is consistent with, and in fact much less than fee awards in similar cases. *See In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1366 n.35 (awarding 35%, noting that, in private marketplace, "contingent fees of 33-44 percent are common in mass action[s] and . . . higher fees often prevail"). As such, application of this *Camden I* factor supports Class Counsel's fee request.

### f.        Seventh Factor: Time Limitations

The potential health implications related to benzene exposure in sunscreen presented potential damages to Class members that increased on a daily basis. Thus, Class Counsel worked diligently to research and precisely craft the first-filed *Brennan* and *Serota* complaints. *See* Joint Fee Decl., at ¶ 8. As a testament to the clarity in which Class Counsel presented the merits of the alleged claims, numerous other law firms who filed putative class actions thereafter effectively cut-and-paste from the *Brennan* and *Serota* complaints directly into the body of their own complaints, and just two (2) months after the *Brennan* and *Serota* complaints were filed, the parties began negotiating a potential settlement. Indeed, if the settlement is approved, Class Counsel will have secured a settlement that offered an extension of the 100% refund of the purchase price of JJCI's recalled sunscreen products, a meaningful voucher for uncontaminated JJCI

sunscreen products, and valuable injunctive relief to over 111,000 consumers nationwide—all while avoiding wasteful litigation and expense. This factor weighs heavily in favor of approval of the requested fees.

g.          **Eighth Factor: Amount Involved and Results Obtained**

The eighth factor looks to the value of injunctive and monetary relief achieved. The "most critical factor is the degree of success obtained" by Class Counsel. *Hensley*, 461 U.S. at 436. The settlement is tremendous in this regard. In the operative complaints, Plaintiffs sought primarily monetary relief in the form of refunds to Class members and injunctive relief. After the complaints were filed, in July 2021 JJCI initiated a voluntarily recall of the affected sunscreen products which provided monetary relief to consumers in the form of refunds. However, that voluntary refund program was limited. It was slated to end in the fall 2021 and only provided refunds on recalled sunscreen products.

Through the settlement, Class members (i) were granted a full six (6) month window within which to make claims for full refunds under JJCI's Aerosol Products Refund Program, (ii) are eligible to make a claim for vouchers worth $10.58 each for *uncontaminated* sunscreen products; and (iii) obtained meaningful injunctive relief which requires JJCI to adopt and implement important testing protocols that will help alleviate the possibility that benzene contamination of this sort will reoccur. *See Rivera v. Amalgamated Debt Collection Services, Inc.*, 2007 WL 9701693 (S.D. Fla. Feb. 27, 2007) (assessing *Johnson* factors and approving fee award based in part on "meaningful injunctive relief [provided] to the Class…."); *Hamilton v. SunTrust Mortg., Inc.*, 2014 WL 5419507 at *4 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide."); *Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1381 (S.D. Fla. July 26, 2007)  (describing important injunctive relief in discussing range of possible recovery); *Lipuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005); (valuing injunctive relief as part of "significant relief" made available to class and determining that

settlement was fair, adequate, and reasonable). As the Northern District of Florida recently noted, it is "a rare class action settlement which provides complete relief for all alleged harms." *Begley v. Ocwen Loan Serv., LLC*, 2017 WL 11672899 at \*4 (N.D. Fla. Nov. 2, 2017) (citation omitted).

Further evidence of the excellent result Class Counsel achieved is the fact that the settlement has been met with near-universal approval at this stage. Indeed, there were no objections to Class Counsel's Motion for Preliminary Approval of the Class Action Settlement. *See* Joint Fee Decl., at ¶ 14. Similarly, the notice informed the Class about the settlement terms, including that Plaintiffs would seek Attorneys' Fees up to $2,500,000 and Expenses of up to $100,000, and (putative) Incentive Awards of $250 each for Class representatives. As of the date of this filing, more than 111,000 claims have been submitted, no objections have been filed with the Court or Claims Administrator, and no Class Members have opted out. *See* Exhibit A (Settlement Administrator Rust Consulting's Summary Report). *See also Braynen v. Nationstar Morg., LLC*, 2015 WL 6872519 at \*6 (S.D. Fla. Nov. 9, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable….") (internal quotations omitted). The favorable reaction of other counsel and the Class members to the relief offered to them favors approval of the requested fees.

**h.         Ninth Factor: Experience, Reputation and Skill of Counsel**

Here, each of the Class Counsel law firms have a significant experience and a record of successfully litigating and resolving complex national class action and mass tort actions. *See* Joint Fee Decl., at ¶¶ 29-33. Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. *Id.* Class Counsel regularly engage in major complex litigation involving consumer fraud, and have been appointed Class Counsel by courts throughout the country. *Id.* Consistent with this background outlined above, Class Counsel prepared and prosecuted this Action zealously, skillfully, and efficiently, and achieved a great result for the Class members.

**i.         Tenth Factor: "Undesirability" of Taking the Case**

When Class Counsel filed this case, they understood the risks associated with filing an action based

on uncorroborated testing from a third party, particularly given the inconsistent results with respect to the levels of benzene found among product manufacturers and even within the same product manufacturers' products. Class Counsel also understood the defenses that would be leveled regarding the class representatives' standing to pursue the matter and the defenses surrounding the use of benzene as solvent in the manufacturing process, which could be construed by some as sanctioned by the FDA, thus preempting the claims. So while Class Counsel views this case as distinctly desirable, peer firms, even those specializing in complex consumer class actions, might have rejected this case on uncertainty grounds. This supports the approval of the fee application under the tenth *Johnson* factor.

### j.        Eleventh Factor: Relationship with Client

The class representatives have never retained any of the Class Counsel firms prior to this case. *See* Joint Fee Decl., at ¶ 28. Therefore, this factor is not relevant here.

### k.        Twelfth Factor: Awards in Similar Cases

The fee award requested here is consistent with and in fact much less than fee awards in similar cases. *In re Hill's Pet Nutrition, Inc. Dog Food Prod. Liab. Litig.*, Case No. 2:19-md-02887, MDL No. 2887, (D. Kan. July 30, 2021) (awarding 32% in fees over in class action case alleging dog food contained excessive levels of vitamin D); *In re Honest Mktg. Litig.*, 2017 WL 8780329 at *3 (S.D. NY Dec. 8, 2017) (awarding attorney fees equal to 32% of settlement fund in class action over mislabeling consumer products as containing "no harsh chemicals (ever!)" even though they contained synthetic and toxic ingredients).; *Xavier et al. v. Bayer Healthcare LLC*, Case No. 5:20-cv-00102, (N.D. Cal. Dec. 15, 2021) (awarding 30% attorney's fees in class action over mislabeled sunscreen products) Further, the fees and costs are being paid separately by JJCI. Accordingly, Class Counsel's fee application, which they reasonably anticipate (pending confirmatory discovery) will not exceed one-third of the common fund, is reasonable under the twelfth *Johnson* factor.

### l.        The Remaining *Camden I* Factors Also Favor Approving Class Counsels'

**Fee Request**

The above-referenced twelve factors are guidelines; they are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775.  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id*. These additional factors also support the full award.

First, the time required to reach a settlement in this matter favors the fee request. The parties settled this matter only after the initial class action complaints were filed in May 2021, after the affected sunscreen products were recalled in July 2021, after the parties engaged in mediation in September 2021, and after numerous additional settlement talks thereafter.  Thus, the settlement—though efficiently handled—did not come quickly. Second, as of this filing, there have been no substantial objections by class members or other parties to the settlement terms or the fees requested by counsel. Third, the non-monetary benefits conferred upon the Class by the settlement are significant. The changes required to be made to JJCI's business practices, including its raw materials and finished goods testing of sunscreen products for benzene, will lessen the risk of future benzene contamination to Plaintiffs, the Class, and the public.  These company-wide policy changes provide considerable nonmonetary value for purposes of determining Class Counsels' fees. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (rejecting argument that value of injunctive relief should not also be considered in addition to cash for purposes of determining class counsel's fees). Finally, the economic risk involved in litigating this class—and continuing to litigate it after JJCI initiated its voluntary refund program—was significant. *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at * 16 (S.D. Fla. April 13, 2016) (noting the "monetary benefits and injunctive relief, are excellent — Settlement Class members will recover near-complete relief

23

and Defendants will be mandated to cease the key practices at the core of Plaintiffs' complaint. These results are powerful support for the fee award."). Moreover, as noted, similar benzene contamination sunscreen actions have recently been met with dismissals. *See, e.g., Schloegel*, 2022 WL 808694 (order granting motion to dismiss); *Bodle,* Case No. 3:21-cv-07742 (order granting motion to dismiss). Thus, the economic risk involved in this case was significant. *See In re Checking Account Overdraft Litig*., 2015 WL 12642178 at *!5 (S.D. Fla. April 2, 2015) (fee award supported by the economics involved in prosecuting a class action", where the "Court is convinced by its many years of presiding over significant cases like this one that proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one."); *Exum v. Nat'l Tire and Battery*, 2020 WL 1670997 at *7 (S.D. Fla. April 6, 2020) ("The value of the injunctive relief alone, involving substantial changes to Defendants' tire-registration practices, which will in turn lessen alleged dangers and property damage to Plaintiffs, the Class, and the public, warrants approval.").

### 4.    A Lodestar Cross-Check is Appropriate Here

Even though the Eleventh Circuit does not require that a lodestar cross-check be done in determining common benefit fee awards, "Courts often use a cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee." *In re Home Depot Inc*., 931 F.3d 1065, 1091 (11th Cir. 2019). Accordingly, this Court may refer that Class Counsel's billing for comparison. *Waters*, 190 F.3d at 1298 (noting that "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). A lodestar "cross-check" supports that the fees requested here are reasonable. Collectively, Class Counsel have submitted attorney time which shows 2,552.47 hours of work has been spent on this litigation. Applying an hourly rate of $750 per hour, which is a rate previously approved by multi-district courts in this district and elsewhere, results in a lodestar of $1,914,352.50, and Class Counsel's work is not yet complete. Accordingly, the lodestar cross-check supports the reasonableness of the requested fee award.

## C.   THE REQUESTED INCENTIVE AWARDS ARE REASONABLE

Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Checking Account Overdraft*, 830 F. Supp. 2d at 1357 (granting service awards of $5,000 per class representative); *Saccoccio*, 297 F.R.D. at 695 (granting $5,000 service award). Courts determine service awards by looking at "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* Courts in this Circuit have routinely authorized substantial payments to lead plaintiffs whenever requested settlements were approved. *See, e.g., City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Cellulose S.A.*, Case No. 08- 23317-CV-JAL, at 8 (S.D. Fla. July 7, 2013) ($40,000); *Fuller v. Imperial Holdings, Inc.*, No. 9:11-cv-81184-KAM, at 15 (S.D. Fla. Sept. 16, 2013) ($10,000).

Class Counsel submits that the modest incentive awards of $250 to be paid separately to each class representative is appropriate. As detailed in Plaintiffs' previously submitted declarations (previously filed at Doc. 55-1), each has performed admirably with respect to their duties as class representatives, including participating when requested, assisting in the investigation of the case, reviewing complaints, and staying abreast of the litigation. At the same time, Class counsel recognizes that the Eleventh Circuit has ruled that incentive or service awards are prohibited. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1257, 1260 (11th Cir. 2020). Nevertheless, it remains "something of an open question in this circuit whether incentive awards are available." *Marcrum v. Hobby Lobby Stores, Inc.*, 201 WL 3710133 at *5 (N.D. Ala. Aug. 20, 2021). This is because "an Eleventh Circuit judge has withheld the mandate, and the plaintiff has sought *en banc* review. In this posture, the Eleventh Circuit's decision is not final." *Id.* Thus, the current "best practice" is to approve the Settlement Agreement's fees and cost provisions, except for the incentive awards, and retain jurisdiction to allow Plaintiffs to renew the request for incentive awards if *Johnson*

ultimately is overruled. *Id*; *see also Fruitstone v. Sparten Race, Inc*., 2021 WL 2012362 (S.D. Fla. May 20, 2021) (carving out incentive award issue); *Janicijevic v. Classic Cruise Operator, Ltd.*, 2021 WL 2012366 at *10 (S.D. Fla. May 19, 2021) (same); *Cotter v. Checkers Drive-In Restaurants, Inc*., 2021 WL 3773414 at *13 (M.D. Fla. Aug. 25, 2021) (same).

Accordingly, Class Counsel requests that this Court approve the Motion for Fees and Costs, but retain jurisdiction regarding the application for incentive awards for the limited purpose of revisiting the denial of incentive awards if the Eleventh Circuit holds a rehearing *en banc* in and reverses its decision.[7]

## CONCLUSION

For the foregoing reasons, the Class Plaintiffs respectfully request that the Court grant the following relief:

(1)     Award Class Counsel $2,500,000 in attorneys' fees and $100,000 in costs and litigation expenses; and

(2)     Retain jurisdiction over the matter of Incentive Awards until the ultimate disposition of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) is known, either through a final decision of the Eleventh Circuit or a final decision of the United States Supreme Court. If *Johnson, supra,* is reversed after that final decision, Plaintiffs may file a motion renewing their request for approval of class representative incentive awards.

## LOCAL RULE 7.1(B) CERTIFICATION

Class Counsel have conferred with JJCI's counsel regarding the relief requested in this Motion, and JJCI has authorized Class Counsel to represent that, consistent with the Settlement Agreement, JJCI does

---

[7] This approach is permissible because the Settlement Agreement contains a severability provision which provides that "this settlement is not contingent on the court's approval of such Incentive Award." Settlement Agreement, at ¶57 (previously filed at Doc. 55-9).

not oppose the request for attorneys' fees (up to $2,500,000) and expenses (up to $100,000).

Date: June 3, 2022

By: /s/R. Jason Richards
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
BRYAN F. AYLSTOCK (FL Bar # 0078263)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Kiley L. Grombacher, Esq. (245960)
Marcus J. Bradley, Esq. (174156)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: kgrombacher@bradleygrombacher.com
mbradley@bradleygrombacher.com
rfisher@bradleygrombacher.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: R. Jason Richards
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
BRYAN F. AYLSTOCK (FL Bar # 0078263)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com

# Exhibit A

**J&J Sunscreen MDL**

RUST
CONSULTING
a SourceHOV company

**As Of May 28, 2022**

| NOTICE MAILING ACTIVITY | | |
|---|---|---|
| **Week Ending** | Notice Requests Mailed | Claim Form Requests Mailed |
| April 9, 2022 | 0 | 0 |
| April 16, 2022 | 0 | 0 |
| April 23, 2022 | 0 | 0 |
| April 30, 2022 | 0 | 0 |
| May 7, 2022 | 0 | 0 |
| May 14, 2022 | 0 | 0 |
| May 21,2022 | 0 | 0 |
| May 28, 2022 | 0 | 25 |
| **Total** | **0** | **25** |

| NOTICE RESPONSE ACTIVITY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Week Ending** | Paper Claims Received | Online Claims Filed | Total Claims Received | Claim Form Deficiency Letters Mailed | Claim Form Deficiency Responses Received | Determination Letters Mailed | Exclusions Received | Objections Received |
| April 9, 2022 | 0 | 103 | 103 | 0 | 0 | 0 | 0 | 0 |
| April 16, 2022 | 0 | 1,266 | 1,266 | 0 | 0 | 0 | 0 | 0 |
| April 23, 2022 | 0 | 417 | 417 | 0 | 0 | 0 | 0 | 0 |
| April 30, 2022 | 1 | 13,221 | 13,222 | 0 | 0 | 0 | 0 | 0 |
| May 7, 2022 | 12 | 38,878 | 38,890 | 0 | 0 | 0 | 0 | 0 |
| May 14,2022 | 16 | 17,561 | 17,577 | 0 | 0 | 0 | 0 | 0 |
| May 21,2022 | 15 | 23,593 | 23,608 | 0 | 0 | 0 | 0 | 0 |
| May 28, 2022 | 36 | 16,157 | 16,193 | 0 | 0 | 0 | 0 | 0 |
| **Total** | **80** | **111,196** | **111,276** | **0** | **0** | **0** | **0** | **0** |

| CALL CENTER AND WEBSITE ACTIVITY | | |
|---|---|---|
| **Week Ending** | Total Calls Received | Unique Website Visitors |
| April 9, 2022 | 0 | 1,086 |
| April 16, 2022 | 5 | 15,954 |
| April 23, 2022 | 2 | 15,566 |
| April 30, 2022 | 1 | 41,087 |
| May 7, 2022 | 26 | 89,416 |
| May 14, 2022 | 68 | 50,244 |
| May 21, 2022 | 53 | 52,290 |
| May 28, 2022 | 32 | 32,644 |
| **Total** | **187** | **298,287** |

# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:

JOHNSON & JOHNSON AEROSOL
SUNSCREEN MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY
LITIGATION

MDL CASE NO.: 3015

THIS DOCUMENT RELATES TO:
ALL CASES

**JOINT DECLARATION OF R. JASON RICHARDS AND BRYAN F. AYLSTOCK**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'**
**FEES, COSTS, AND INCENTIVE AWARDS**

Pursuant to 28 U.S.C. § 1746, We, R. Jason Richards and Bryan F. Aylstock, hereby

declare and state:

1.       R. Jason Richards is a partner at Aylstock, Witkin, Kreis & Overholtz, PLLC

("AWKO") and counsel of record for Plaintiffs Meredith Serota, Jacob Somers, Lauren Harper,

Heather Rudy, Fredric Salter, Judith Barich, Dina Casaliggi, Kelly Granda, Kyra Harrell, and

Carman Grisham, Katherine Brennan and Michelle Mang (collectively "Plaintiffs"). He is submitting

this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards.

The following statements are based on his personal knowledge and review of the files and, if called

on to do so, he could and would testify competently thereto.

2.       Bryan F. Aylstock is a founding partner at AWKO and counsel of record for

Plaintiffs.  He is submitting this declaration in support of Plaintiffs' Motion for Attorneys' Fees,

Costs, and Incentive Awards.  The following statements are based on his personal knowledge and

review of the files and, if called on to do so, he could and would testify competently thereto.

3.      Mr. Richards and Mr. Aylstock are over the age of eighteen and am fully competent to make this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards.

## MEDIATION AND SETTLEMENT

4.      On September 8, 2021, the Parties participated in a full day mediation session with the Honorable John C. Lifland (Ret.).

5.      The Parties did not reach settlement during this mediation but continued to engage in settlement discussions outside of mediation. The parties also continued to exchange documents and information regarding their respective positions.

6.      In the subsequent weeks, the Parties continued to negotiate and finalize all terms of this Settlement Agreement, and executed the final form on December 17, 2021.  The Parties negotiated attorneys' fees and costs only after reaching agreement on the monetary and injunctive relief for the Class.

7.      At all times, the negotiations were conducted at arms-length.

## Work Performed by Counsel, Hours and Expenses

8.      To date, Mr. Richards and Mr. Aylstock (collectively referred to as "Class Counsel") have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this matter. Class Counsel have spent hundreds of hours investigating and litigating this case since 2021, and have personally:

- •   reviewed thousands of pages of documents;
- •   engaged in early written and telephonic "meet and confer" discussions with counsel for Defendant Johnson & Johnson Consumer Inc. ("JJCI");
- •   interviewed and corresponded with dozens of witnesses and potential class representatives in numerous states and in some instances their attorneys as well;

- engaged in propounding Freedom of Information Act requests;

- preparing and filing the original and amended complaints in the first-filed *Serota* and *Brennan* actions;

- assisted in preparing and serving a pre-suit notice letter to JJCI;

- vetted and retained experts in this action;

- engaged and participated in reviewing and propounding written discovery requests;

- conducted investigations with clients regarding their experiences with JJCI's recall program;

- participated in drafting and filing Plaintiffs' interested party response in support of consolidation before the Joint Panel on Multidistrict Litigation;

- engaged in initial settlement discussions with JJCI;

- engaged in the voluntary exchange of information with JJCI;

- engaged in mediation with JJCI before a neutral mediator;

- worked with co-counsel on related actions;

- assisted in developing confirmatory discovery requests and served them on JJCI;

- executed a non-disclosure agreement with JJCI;

- facilitated testing on sunscreen samples;

- engaged in numerous settlement discussions with JJCI;

- negotiated, drafted, and executed a term sheet with JJCI;

- negotiated, drafted, and executed the Settlement Agreement with JJCI;

- participated in drafting and filing Plaintiffs' motion for appointment of interim lead counsel for the putative class;

- worked with co-counsel on retaining a Claims Administrator;

- participated in drafting a motion for preliminary approval of class action settlement;

- reviewed and edited notice documents;

- participated in negotiating and drafting a protective order with JJCI;

- conducted confirmatory discovery on JJCI;

- arranged for the production of discovery to non-participating class

counsel; and

- prepared and responded to other substantial law and motion matters.

9.    Class Counsel will continue to expend time and effort to ensure that settling Class members are able to file claims and receive benefits from the settlement and continue to perform the necessary functions expected of Class Counsel, including continuing to monitor the notice program, communicating with the Claims Administrator (Rust Consulting), responding to Class member inquiries now and throughout the remainder of the claims administration process, responding to objections, if any,  preparing for and attending the final approval hearing, continuing to oversee the claims administration process, including addressing any claim issues, monitoring distribution of voucher payments to Class members; and potentially handling post-judgment appeals. The current application for fees in this Motion do not include the significant time that is likely to be expended on these future efforts.

10.    From inception to today's date, Class Counsel's firm has spent hundreds of partner hours developing and managing the case, engaging in discovery, working with experts, drafting and filing pleadings, engaging in mediation and settlement discussions, and client management, among other tasks. In addition, only partners at AWKO performed work in this matter. The specific hours dedicated by each AWKO attorney in this matter are as follows:

**<u>AWKO</u>**

R. Jason Richards (partner): 586.3 hours

Bryan F. Aylstock (partner): 379.2 hours

Daniel Thornburgh (partner): 25.2 hours

Justin Witkin (partner): 3.3

Stephen Echsner (partner): 3.4

Mary Liu (partner): 2.5

<u>AWKO Total: 999.9 hours</u>

11.     In our experience, the aforementioned tasks are typical of this sort of litigation. They were necessary to the successful prosecution and resolution of the claims.

12.     Class Counsel has reviewed the attorney billable hours submitted by the other appointed Class Counsel in this litigation and a summary of those hours are as follows:

**Bradley/Grombacher**

Kiley Grombacher (partner) – 565.1 hours

Marcus Bradley (partner) – 29.5 hours

Lirit King (associate) – 52.7 hours

Lesley Joyer (associate) – 28.4 hours

Rob Fisher (associate) – 55.7 hours

Total: 731.4 hours

**Walsh Law**

Alex Walsh (partner) – 4.5 hours

Kim Channick (senior associate) – 70.49 hours

Total: 74.99 hours

**Keller Postman**

Seth Meyer (partner) – 289.5 hours

Nicole Berg (partner) – 0.5 hours

Alex Dravillas (associate) – 70.4 hours

Jennifer Hanna (associate) – 0.78 hours

Total: 360.68 hours

**Beasley Allen**

David Byrne (partner) - 383.3 hours

Andy Birchfield (partner) – 1.7 hours

Total: 385 hours

13.     Class Counsel submit these billable hours for the purpose of the Court engaging in a lodestar cross-check as deemed necessary, consistent with applicable law in the Eleventh Circuit. *See Waters v. Inter. Precious Metals Corp*., 190 F.3d 1291, 1298 (11th Cir. 1999) (noting "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").

14.     The hours Class Counsel has billed in this action are reasonable, reflect the intensity with which issues were disputed, and the amount of work necessary for this litigation to culminate in the successful resolution of behalf of the Class.

15.     Class Counsel reviewed their time records and made their best efforts to reduce duplicate billing. Time is billed in 1/10 hour increments per this Court's previous order. *See* Order at p. 3 (Doc.67) ("All work time for each firm shall be maintained in at least one-tenth (.1) hour increments, or smaller increments if the individual or firm regularly keeps time in smaller increments.") In addition, Class Counsel does not use block billing and maintains contemporaneous time records.

16.     Class Counsels' total hours do not include time spent on the Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards, nor time for which Class Counsel at my firm has not and will not seek reimbursement.

17.     Class Counsels' hourly rate for partners is $950 per hour based upon their experience and the skill required in performing the work. Similar rates have been approved for AWKO partners in past MDL matters. *See In re Actos (Pioglitazone) Prods. Liab. Litig*., 274 F.Supp.3d 485, 574 (W.D. La. 2017) (awarded $895/hr); *In re Avandia Mktg, Sales Prac. & Prod. Liab. Litig*., 2020 WL 5078106 at *2, 4 (E.D. Pa. July 29, 2020) (awarded $805/hr). Attorneys with

similar seniority and experience have been approved for comparable or higher rates by courts in this district. *See, e.g., Vital Pharms., Inc v. Pepsico, Inc*., 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021) (approving a $1,313 hourly rate for a New York partner).

18.     AWKO's lodestar based on 999.9 billable hours at the firm's current partner rate of $950 per hour is $949,905.00.

19.     Class Counsel took measures to litigate this case efficiently.

20.     Class Counsel communicated proactively among firms to ensure that no duplicate work would occur.

21.     Class Counsel litigated this case on a contingent basis, and have received no compensation for their efforts during the course of this litigation.

22.     Class Counsels' firm has advanced $54,433.36 in reasonable expenses, knowing that if our efforts were unsuccessful, we would not receive payment or other reimbursement for either our work or expenses.

23.     These costs are attributable to ordinary and necessary costs as follows:

| Costs and Expenses | Amount |
|---|---|
| Copies/Printing | $435.50 |
| Travel | $10,646.97 |
| Meals | $2,680.80 |
| Filing Fees/Court Costs | $2,249.00 |
| Process Service | $700.00 |
| Telephone | $32.41 |
| Expert Fees | $16,682.00 |
| Testing | $12,000.00 |
| Research/Discovery | $8,770.10 |
| Postage/Delivery | $236.58 |
| **Total** | **$54,433.36** |

24.     Class Counsel has reviewed these costs to ensure that they are not excessive or unnecessary.

25.     The work and participation of Plaintiffs were essential to achieve the settlement.

26.     In addition to its own costs, Class Counsel has reviewed the costs incurred by other appointed Class Counsel in this litigation and a summary of those unreimbursed costs are as follows:

Bradley/Grombacher - $53,769.85

Beasley Allen - $5,124.78

Keller Postman - $1,560.10

**Plaintiffs and the Class Members**

27.     Plaintiffs have represented the interests of the putative Class members throughout this litigation, will continue to do so, and understand their obligations as class representatives. To my knowledge, the Plaintiffs have no interests antagonistic or conflicting with the Class they have been appointed to represent.

28.     The Plaintiffs have never retained any of the Class Counsel firms prior to this case.

29.     Plaintiffs have retained counsel with experience and expertise in the areas of complex litigation and class actions, as well as in the specific areas of consumer protection at issue herein.

**Qualifications and Experience**

30.     AWKO is a national law firm with experience in products liability law, mass torts, class actions, insurance law, and personal injury matters. AWKO has extensive experience litigating claims in multidistrict litigations as well as experience in consumer class actions. AWKO also employs on-site IT specialists and a database administrator and software developer. Within

just the past eight months, members of AWKO have led or co-led multiple MDL trials that have

resulted in more than $250 million in jury verdicts in several different federal district courts.

Details on the work, experience and accomplishments of the firm can be found at

www.awkolaw.com.

31.     R. Jason Richards has been a member of the State Bar of Colorado since 2001 and

a member of the State Bar of Florida since 2005. He holds the following degrees: B.A., University

of Alabama at Birmingham; B.A., University of Alabama at Birmingham; M.A., University of

Colorado; J.D., University of Illinois Chicago School of Law; L.L.M., DePaul University College

of Law. He served as a Deputy District Attorney in Colorado prosecuting misdemeanor and felony

cases before joining AWKO in 2004. Since joining AWKO, he has specialized in products

liability, class actions, and insurance law and has litigated thousands of cases.

32.     Bryan F. Aylstock has been a member of the State Bar of Florida since 1996, a

member of the State Bar of Alabama since 1999, and a member of the State Bar of Mississippi

since 2002. He holds the following degrees: B.A., University of North Florida; J.D., University of

Florida College of Law. His involvement in various forms of multidistrict litigation and class

action litigation spans more than 25 years during which time he has litigated thousands of cases.

33.     Class Counsel, along with their partners at AWKO, have significant multidistrict

litigation and class action experience. Notable examples of this experience include: Class Actions –

*Hinote, et al. v. Ford Motor Company, et al*., Circuit Court, Escambia County, Florida, Case No.

2004- CA-01658; *In re: MCI Non-Subscriber Tel. Rates Litig*, MDL Docket No. 1275 (S.D. Ill); *In

re: America Online, Inc. Version 5.0 Software Litig.,* MDL Docket No. 1341 (S.D. Fla); *Ouellette

v. Wal-Mart*, Circuit Court, Washington County, Florida, Case No. 67-01- CA-32; *In re: DryClean

USA Litig.*, Circuit Court, Dade County, Florida, Case No. 02- 27169-CA-27; *In re: Shell Defective

Gas Litig.*, Circuit Court, Dade County, Florida, Case No. 04-12297-CA-10; and *Begley v Ocwen*

*Loan Servicing, LLC*, Case No. 3:16-cv-00149 (N.D. Fla.).

Members of the firm have also litigated other national class action cases, including: *In re: Honey Transshipping Litig.,* 13-cv-02905 (N.D. Ill.); *Cottrell, et al. v. Alcon Labs., et al*., 3:14- cv-05859 (D. N.J.); *In re: Microsoft Antitrust Litig.,* MDL Docket No. 1332 (D. Md.), as well as numerous state court class actions such as *In re: Baker v. Baptist Hospital, Inc*., Circuit Court, Santa Rosa County, Florida, Case No. 2010-CA-1591; *Patel v. Citizens Property Ins. Corp*., Circuit Court, Escambia County, Florida, No. 05-284; and *Lowry v. Vanguard Fire & Cas. Co*., Circuit Court, Santa Rosa County, Florida, Case No.05- 674.

Courts around the country have appointed the firm's attorneys to positions of leadership in a variety of national litigations. Examples include: Multidistrict Litigations – *In re: 3M Combat Arms Earplug Prods. Liab. Litig*., MDL 2885 (Lead Counsel and member of the Court Appointed Settlement Committee); *In re: Abilify Products Liab. Litig*., MDL 2734 (Liaison Counsel); *In re: Ethicon, Inc., Pelvic Repair System Prod. Liab. Litig*., MDL 2327 (Co-Lead Counsel); *In re: Avandia Marketing, Sales Practices and Prod. Liab. Litig*., MDL 1871 (Co- Lead Counsel); *In re: Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig*., MDL 2004 (Co- Lead Counsel); *In re: Effexor (Venlafaxine Hydrochloride) Prod. Liab. Litig*., MDL 2458 (Co- Lead Counsel and Multi-District Coordinating Counsel); *In re: Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig*., MDL 2342 (Coordinating Counsel); *In re: Incretin Mimetics Prod. Liab. Litig*., MDL 2452 (Plaintiffs' Executive Committee); *In re: Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig*., MDL 2385 (PEC); *In re: Actos (Pioglitazone) Prod. Liab. Litig.,* MDL 2299 (PSC and Plaintiffs' Settlement Review Committee); *In re: Viagra Prods. Liab. Litig.,* MDL 1724 (PSC and Co-Lead Settlement Counsel); *In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig*., MDL 2391 (PSC); *In re: Stryker Rejuvenate and ABGII Hip Implant Prod. Liab. Litig*., MDL 2441 (PSC); *In re: Ethicon, Inc. Power Morcellator Prod. Liab. Litig*., MDL 2652 (PSC); *In re: Xarelto*

-

*(Rivaroxaban) Prod. Liab. Litig.*, MDL 2592 (PSC*); In re: Zimmer NexGen Knee Implant Prod. Liab. Litig.*, MDL 2272 (PSC); *In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, MDL 2391 (PSC); *In re: Stryker Rejuvenate and ABGII Hip Implant Prod. Liab. Litig.*, MDL 2441 (PSC); *In re: Fleet Oral Sodium Phosphate Litig.,* MDL 2066 (PSC); and *In re: Trasylol Prod. Liab. Litig.*, MDL 1928 (PSC).

34.     As set forth above, Class Counsel has substantial experience and resources to bring to bear in this matter on behalf of Plaintiffs and the proposed settlement class. They have committed, and will continue to commit, their experience and resources to adequately represent Plaintiffs and the proposed class through the conclusion of this action.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of June, 2022 at Pensacola, Florida.


By:     /s/R. Jason Richards
        R. Jason Richards



By:     /s/Bryan F. Aylstock
        Bryan F. Aylstock

-

# Exhibit C

# KILEY GROMBACHER

# Declaration

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-md-03015-SINGHAL/Valle**

IN RE:                                          MDL CASE NO.: 3015

**JOHNSON & JOHNSON AEROSOL SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO: ALL CASES**
_____/

**DECLARATION OF KILEY LYNN GROMBACHER IN SUPPORT OF PLAINTIFFS'**
**MOTION IN SUPPORT OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

I, Kiley Lynn Grombacher, hereby declare as follows:

1.      I am an attorney and partner at Bradley/Grombacher LLP. I am admitted *pro hac vice* to appear and practice before this Court as Counsel for Plaintiffs Meredith Serota, Jacob Somers, Lauren Harper, Heather Rudy, Fredric Salter, Judith Barich, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham in the matter of *Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.) (the "*Serota* Plaintiffs"), and Katherine Brennan and Michelle Mang in the matter of *See Brennan v. Johnson & Johnson Consumer Inc.*, 21-cv-5419 (N.D. Cal.) (the "*Brennan* Plaintiffs").

2.      I have prepared this Declaration in Support of Plaintiffs' Motion for Appointment in Support of Attorneys' Fees, Costs and Incentive Award which is filed contemporaneously herewith. Plaintiffs' Motion for Appointment ("Motion") respectfully seeks attorneys' fees in the amount of Two Million Five Hundred Thousand Dollars to the firms of Aylstock, Witkin, Kreis & Overholtz PLLC; Bradley/Grombacher LLP, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Keller Lenkner LLC; and, Walsh Law, PPC. Plaintiffs' Motion further seeks reimbursement in the amount of One Hundred Thousand Dollars for reasonable costs incurred in the prosecution of this action.  Finally, the motion requests that, as to the service payments sought, the Court retain

jurisdiction over this matter until the final disposition of *Johnson v. NPAS Sols, LLC,* 975 F.3d 1244 (11th Circ. 2020).

3.　　I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein.  If called as a witness, I could and would competently testify to the information set forth below.

## EXPERIENCE OF COUNSEL

4.　　Bradley/Grombacher LLP is a national law firm with our main office located in California.  The firm's practice focuses primarily on complex litigation.  I have been a member of the State Bar of California since 2006. My involvement in various forms of class action litigation spans more than a decade during which time I have litigated hundreds of class actions.

5.　　I began my legal career at Arias, Ozzello & Gignac where I specialized in and gained extensive experience litigating consumer cases.  Thereafter, I joined Marlin & Saltzman in 2010 where I focused my practice almost exclusively on class, collective and enforcement actions including the reported case, *Faulkinbury v. Boyd & Associates*, which clarified the holding in a seminal case, *Brinker Restaurant Corp. v. Superior Court* to establish that legality of certain company policies could be determined on a class-wide basis even if the application of the polices varies by individual.

6.　　I have been appointed either lead or co-lead counsel including cases in multi-district litigation or coordinated proceedings where I worked collaboratively and cooperatively with co-counsel to bring about an efficient and beneficial resolution for all class members as the above results demonstrate.

7.　　I have argued cases before trial courts and courts of appeal. My writings on legal topics pertaining to class and representative actions have appeared in professional publications and I have been called upon to speak at conferences and seminars for professional organizations.   I have also been honored as a Rising Star and/or Super Lawyer in the area of class actions by Los Angeles Magazine for multiple years including the current year.

8.　　My partner, Mr. Bradley, has practiced since 1994.   He has been responsible for

all facets of class action and other complex litigation, from pre-filing investigation through trial and appeal.  Mr. Bradley has been honored as a Super Lawyer in the area of class actions by Los Angeles Magazine for multiple years including 2018. He is a member of a number of professional organizations including the Consumer Attorneys of Los Angeles, the Consumer Attorneys of California, the California Employment Lawyers Association, and the American Association of Justice.

       9.     Myself and Mr. Bradley, at our present firm or at our prior firms, have litigated numerous class actions to favorable settlements including:

      a.  *Guttierez v. State Farm Mutual*, Los Angeles Superior Court (BC236552).  The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $135 million just prior to trial, with final approval granted with no objections filed.

      b.  *Bednar v. Allstate Insurance Company*, Los Angeles Superior Court (BC240813).  The class was certified and summary adjudication was granted as to liability in favor of the class. The case settled for $120 million just prior to trial, with final approval granted with no objections filed.

      c.  *Roberts v. Coast National Insurance*, Orange County Superior Court (01CC08478).  Certification granted, and then the matter was tried before a binding arbitrator.  The case settled during the arbitration for in excess of $18 million.

      d.  *CNA Class Action Litigation*, Los Angeles Superior Court Class (JCCP 4230).  Case settled for $33 million, with final approval granted with no objections filed.

      e.  *Smith/Ballard v. Wal-Mart Stores, Inc.*  United States District Court for the Northern District of California (Case No. 4:06-cv-05411-SBA). The action was certified and settled for $86 million while Defendants' appeal of the certification was pending in the Ninth Circuit Court of Appeals.

f.   *In Re Bank of America Wage and Hour Employment Practices Litigation,* United States District Court for the District of Kansas (MDL 2138). Settled for $73 million.

g.   *Lemus v. H & R Block Litigation*, United States District Court for the Northern District of California (Case No. 3:09-cv-03179-SI).   Class certified, and settlement reached prior to trial.  Total settlement of $35 million.

h.   *Bickley v. Schneider National Trucking,* United States District Court for the Northern District of California (Case No. 4:08-cv-05806-JSW). Settled for $29.5 million.

i.   *Stern v. AT&T Mobility Corporation f/k/a Cingular Wireless Corporation,* United States District Court Central District of California (Case No. 2:05-CV-08842-CAS). Settlement with total value of the available settlement benefits that could have been claimed equaling $38,280,748.

j.   *Lozano v. AT&T Wireless Services, Inc.*, United States District Court Central District of California (Case No 2:02-CV-00090-CAS).  Settlement with total value of the available settlement benefits that could have been claimed equaling $42,700,800.

k.   *Brenner v. Kevita, Inc.,* Superior Court, State of California, County of Ventura (Case No. 56-2017-00502340-CU-FR-VTA).  Settlement with total estimated value of available monetary benefits that could have been claim equaling more than $5,000,000 and injunctive relief valuing between $26,200,446.76 and $34,397,145.69.

10.   My associates and I have considerable experience handling complex consumer class action cases with claims similar to those asserted in this action and have successfully represented tens of thousands of individuals in state and federal court cases.

11.   As discussed further in the accompanying Motion, the appointment of Bryan Aylstock and Jason Richards of Aylstock, Witkin, Kreis & Overholtz PLLC; and my firm as

interim co-lead class counsel and Class Counsel; and, David B. Byrne, III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Seth Meyer of Keller Lenkner LLC; and, Alexandra Walsh of Walsh Law, PPC as interim class liaison counsel and Class Counsel is critical to safeguard the important substantive rights of absent class members. Counsel are experienced, have devoted significant time and resources to the litigation and more than adequate to represent the class.

## **COUNSEL'S INVESTIGATION OF THE CLASS CLAIMS AND LITIGATION OF THE ACTION**

12.     Before filing any complaint in this action, our firm, in conjunction with our co-counsel extensively investigated the claims in this Action

13.     Our pre-suit investigation included but was not limited to:

- Obtaining and reviewing the JJCI aerosol and non-aerosol sunscreen products, including their labeling, packaging, and all other advertisements and promotions for them;

- Reviewing electronic images of Neutrogena's website and other electronic marketing platforms;

- Obtaining and reviewing the Petition on Benzene in Sunscreen and After-sun Care Products prepared by Valisure LLC ("Valisure Petition");

- Reviewing relevant FDA regulations;

- Reviewing pre-suit disclosure letters;

- Conducting research regarding benzene;

- Reviewing the FDA regulations and monograph related to sunscreen;

- Conducting in-depth, fact-finding interviews with Plaintiffs and other potential witnesses including the review and processing of consumer questionnaires;

- Extensive legal research to evaluate the prospective merits and weaknesses of the case

14.     Following the filing of the action, our firm as well as the other firms that have been appointed as Class Counsel have vigorously litigated this case on behalf of the purposed settlement class, devoting extensive time and resources, which includes, among other things:

- Preparing and filing the initial and amended complaints;

- Reviewing extensive documentary disclosures;

- Informally surveying class members,

- Undertaking a detailed analysis of the consumer protection laws of all fifty states and U.S. territories;

- Retaining a third-party laboratory and causing samples of JJCI sunscreen products to be tested for benzene;

- Retaining and conferring with experts in the fields of cosmetics testing and biological sciences;

- Retaining, conferring with and editing a report prepared by toxicology expert;

- Conferring with other plaintiffs' attorneys concerning case management and organization;

- Preparation of a mediation brief;

- Preparing for and attending mediation;

- Retaining and consulting with expert in statistics, accounting and damage valuation;

- Engaging in motion practice including brief and argument before the JPML panel; and

- Drafting and negotiating settlement documents;

## <u>MEDIATION AND SETTLEMENT</u>

15.     On September 8th, 2021, the Parties participated in a full day mediation session with the Honorable John C. Lifland (Ret.) A true and correct copy of the CV for Judge Lifland is attached hereto as **Exhibit 1**.  This document was printed by my office from the web address file:///C:/Users/kgrombacher/Downloads/Lifland_John_GeneralBiography_999.pdf

16.     The Parties did not reach settlement during this mediation but continued to engage in settlement discussions outside of mediation. The parties also continued to exchange documents and information regarding their respective positions.

17.     In the subsequent weeks, the Parties continued to negotiate and finalize all terms of this Settlement Agreement, and executed the final form on December 17, 2021.  The Parties

negotiated attorneys' fees and costs only after reaching agreement on the monetary and injunctive relief for the Class.

18.     At all times, the negotiations were conducted at arms-length.

## CLASS COUNSEL'S EFFORTS SINCE PRELIMINARY APPROVAL

19.     Following this Court's Order Granting Preliminary Approval of Class Action Settlement on March 28,2022, Class Counsel have spent numerous hours on behalf of Class Members by, *inter alia*:

- Preparing for and taking confirmatory depositions;
- Reviewing confirmatory data and documents;
- Corresponding regularly with Rust regarding class notice and Class Members' claims,
- Research and drafting for Plaintiffs' motion for final approval
- Reviewing and editing notice documents, press release and publications; and
- Responding to the Settlement Class Members.

20.     While these efforts were necessary to ensure Class Members will receive the reimbursements they are entitled to, they are not reflected in Class Counsel's fee request.

21.     I estimate that Class Counsel will incur additional hours of work, including expenses, which will be required to finalize the settlement.

## CLAIMS PROCESS

22.     The claims process will be detailed in the declarations of the claims administrator which will be filed in conjunction with Plaintiffs' Motion for Final Approval and for efficiency will not be repeated here.

23.     Although the class period has not yet expired, there are presently more than 111,000 claims that have been received.

24.     While the claims rate is not yet known, I anticipate this settlement will have a rate on par with other consumers settlements.  According to a study completed by respected class

administrator, Kurtzman Carson Consultants, the median claims rate in consumer class actions is 0.023% and "the expected claims rate in a consumer class action ... is less than 1%." See *Poertner v. The Gillette Company, et al.,* Case No. 6:12-cv-00803-GAP-DAP, Doc. 168, fn. 9 (M.D. Fla. Aug. 21, 2014) (granting final approval of settlement following a claims rate of 0.076%).

## JJCI HAS IMPLEMENTED THE NEGOTIATED LABEL MODIFICATIONS IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT

25.     As part of the settlement, JJCI agreed to provide prospective non-monetary relief as follows:

### *Non-Sale of Recalled Aerosol Products*

*JJCI shall not in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of Aerosol Products subject to the Aerosol Product Recall.*

### *Isobutane Raw Material Supply*

*To prevent recurrence, JJCI shall undertake or, where applicable, has already undertaken, the following corrective and preventive actions prior to manufacturing any additional units of Aerosol Products:*

*(a) Purge of Inventory: JJCI shall direct its external manufacturer to purge any existing inventory of isobutane intended for use in such Products.*

*(b) Raw Material Specification: JJCI shall adopt a new specification applicable to any supplier of isobutane raw material for use in Aerosol Products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene. Such specification shall be subject to review by Class Counsel and shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.*

*(c) Testing by Raw Material Supplier: JJCI shall direct its external manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in Aerosol Products, the raw material supplier test for the presence of benzene at one (1)*

*PPM or more in such raw material, and to refrain from shipping such raw material to JJCI's external manufacturer unless the shipment has passed such test. This requirement shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.*

*(d) Testing of Raw Material by External Manufacturer: JJCI shall require that, upon receipt of any shipment of raw material isobutane intended for use in Aerosol Products, JJCI's external manufacturer test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from use of such raw material unless it has passed such test. This requirement shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.*

***Finished Goods Aerosol Product Testing***

*JJCI shall require its external manufacturer to engage an independent, ISO-certified laboratory to test a reasonable number of random samples from at least 25% of manufacturing lots of finished goods Aerosol Products for the presence of benzene, and to withhold release of such finished*

*goods from any such lot unless all such samples have passed such test. The parties agree that such testing shall be conducted utilizing gas chromatography and detection by mass spectrometry ("GCMS") instrumentation. The results of this testing will be timely made available to FDA and Class Counsel. This requirement shall remain in effect until at least January 21, 2022.*

26.     Through deposition testimony, Class Counsel has preliminary confirmed that these modifications have implemented.  Documentary evidence of such modification are being produced and will be reviewed and analyzed by our office and co-counsel to verify such implementation and ensure continued compliance.

## CLASS COUNSEL'S FEES AND COSTS ARE REASONABLE

27.     As part of the Settlement, Class Counsel will request the payment of attorneys' fees in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000), presently estimated

to account for less than one-third of the settlement fund, i.e., and reimbursement of reasonable costs in the amount of One Hundred Thousand Dollars ($100,000).  Class Counsel believes that this amount in fees and expenses which it intends to seek is fair and reasonable and, in fact, the costs incurred exceed the amount sought to be reimbursed under the settlement terms.

28.     Our firm's litigation costs to date are $53,850.87 which includes, *inter alia*, product testing fees, mediation fees, and general litigation costs categorized as follows:

| Costs and Expenses | Amount |
|---|---|
| Travel | $11,753.22 |
| Filing Fees/Court Costs | $190.42 |
| Process Service | $700.00 |
| Mediation Fees | $3,207.23 |
| Testing | $31,000.00 |
| Survey Costs | $7,000.00 |
| **Total** | **$53,850.87** |

29.     A true and correct copy of the itemized cost bill and/or receipts for such charges can be provided to the Court.

30.     Our firm audited the cost bill and wrote-off all costs for some travel, mileage, postage, WESTLAW fees and copying.  Class Counsel is not seeking reimbursement for such expenses, although such fees total several hundred dollars.

31.     In understand that, in the aggregate our firm and our co-counsel have incurred more than $100,000 in costs, however, we are only requesting reimbursement in the amount of One Hundred Thousand Dollars.

32.     All costs incurred were necessary to the prosecution of this action, would normally have been billed to a client paying for services on a non-contingency basis, and are reasonable for a case such as this, in which substantial discovery and investigation took place since the filing of the Complaint.  Class counsel is prepared to submit receipts, if requested by the Court, in support

of Class Counsel's costs award request.

33. As demonstrated in the Motion, the risk of non-payment inherent in contingency fee contracts represents a gamble that Class Counsel could be left unpaid. For this reason, courts have enhanced the fee award to compensate for this risk. Here, Class Counsel represented Plaintiffs and the Class on a contingent fee basis and has therefore undertaken a risk of non-payment. Class Counsel took this risk, thereby making the decision to utilize the firm's time, money, and resources on this litigation as opposed to other potential employment opportunities. This risk is amplified given the nature of a nationwide class action regarding complex claims and the risks of losing the case on the merits or a possible appeal.

34. If Class Counsel did not reach the Settlement Agreement with Defendant, this case would have likely led to trial, thereby causing substantial increased costs to all parties that would not have been reimbursed without Plaintiffs prevailing.

35. From Plaintiffs and Class Counsels' initial investigations of the case, Class Counsel anticipated the need to, and was ready to, spend hundreds of hours litigating this case. This litigation carried the risk that Plaintiffs might not prevail on their claims, due to the complex and novel nature of the factual and legal claims at issue. This risk bore the possibility that Class Counsel would receive no compensation for its time, effort, and resources. Despite these risks, Class Counsel continued to prosecute the case on behalf of Plaintiffs and the Settlement Class.

36. As is the general practice of most law firms, each of the attorneys and support staff at the Bradley/Grombacher LLP are responsible for keeping track of their billable time.

37. In accordance with this Court's March 28, 2022 Order time was maintained in one-tenth (.1) hours increments.

38. I have personally reviewed all time and have used billing judgment to ensure that duplicative or unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. Class Counsel further worked in cooperation with one another to ensure case management, including dividing tasks and avoiding duplicative work.

39. As of June 2, 2022, the total hours billed by Bradley Grombacher for this case is

760.9 hours. The total lodestar based on the firm's current rates is $607,940.00 as of the same date and is broken down by timekeeper as follows:

| Professional[1] | Years of Experience | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Kiley Grombacher (P) | 14+ | 565.1 | $850 | $480,335.00 |
| Marcus Bradley (P) | 26+ | 29.5 | $900 | $26,550.00 |
| Lirit King (A) | 15+ | 52.7 | $700 | $36,890.00 |
| Leslie Joyner (A) | 14+ | 28.4 | $775 | $22,010.00 |
| Rob Fisher (A) | 7 | 55.7 | $675 | $37,597.5 |
| Maria Valle (S) | 4 | 23.7 | 125 | $2,962.5 |
| Suzette Boucher (PL) | 15+ | 5.8 | 275 | $1,595.00 |
| | | 760.9 | | $607,940.00 |

40.     This amount does not include the hours my firm will spend drafting and/or editing the motion for final approval or preparing for and attending the hearing on Final Approval of the Settlement.

41.      Class Counsel will continue to increase based on the substantial time and effort they will need to expend through the settlement administration process including work reviewing and approving the individual payment calculations prepared by the Settlement Administrator, and answering questions Class Members might have about the Settlement.

42.     I believe the rates are reasonable. Based on my knowledge, experience and research,

[1] (P)- Partner; (A)- Associate, (LC)- Law Clerk, (PL)- Paralegal,

the hourly rates charged by Bradley/Grombacher LLP are within the range of market rates charged for similar work performed by attorneys of equivalent experience, skill, and expertise. I became familiar with these rates by: (1) discussing fees with other class action attorneys; (2) reviewing prior attorneys' fees applications; (3) obtaining declarations regarding prevailing market rates filed by attorneys seeking similar fees; and (4) by researching surveys, articles, and legal opinions regarding the proper rates of fees for attorneys of similar skill and experience.

43.     Attached hereto as **Exhibit 2** is a true and correct copy of Westlaw Court Express's Legal Billing Report, Volume 17, Number 3, California Region for 2015;

44.     Attached hereto as **Exhibit 3** is a true and correct copy of the 2012 National Law Journal survey of hourly billing rates for Partners and Associates.

45.     Attached hereto as **Exhibit 4** is a true and correct copy of the Richard Pearl Declaration filed in the case of *Hohnbaum v. Brinker Restaurant Corp.* SDSC GIC834348.

46.     Attached hereto as **Exhibit 5** is a true and correct copy of the Karen Sloan National Law Journal article: $1,000 Per Hour Isn't Rare Anymore dated January 13, 2014.

47.      Furthermore, the nature of the contingency fee in this litigation provides little doubt that Class Counsel diligently worked to ensure efficiency in its work product due to the risk of not receiving compensation for the firm's time, labor, and resources. See *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical [risky, contingent] case where plaintiff's lawyer engages in churning."). Our legal services performed in conjunction with this litigation were wholly on a contingent fee basis. Therefore, Class Counsel has assumed the risk of nonpayment in litigating and prosecuting this action and have at all times ensured that sufficient resources were made available. Given the contingent nature of this case, Class Counsel risked nonpayment, particularly given that JJCI was represented by a first-rate law firm with significant experience litigating consumer class actions that vigorously represented liability and class certification in this case.

48.     Attached hereto as **Exhibit 6** are the resumes for Defense counsel detailing their experience and accomplishments in other litigations.

49.     These attorneys' fees are warranted and reasonable because of the substantial work and effort Class Counsel incurred to achieve significant relief on behalf of the class.  While confirmatory data is still being produced, our expert anticipates that the fee request will be one third or less of the total settlement fund value.

50.     Indeed, in devoting significant time and resources to this action, our firm needed to divert resources from other litigations.  Naturally, the time spent on this litigation, was time that could not be spent litigating other matters.

## CLASS REPRESENTATIVE SERVICE PAYMENTS TO PLAINTIFFS

51.     Plaintiffs further request service payments which shall be in addition to the benefits that they are entitled to request as a Class Member. As set forth in the accompanying memorandum of points and authorities that Plaintiffs will file in support of Plaintiffs' Motion, such awards are routinely made in class actions like this case, particularly when, as here, Plaintiffs regularly communicated with Class Counsel, searched for documents and evidence, and worked closely with Class Counsel throughout the litigation to protect the best interests of the Class.

52.     Each plaintiff acted admirably in their role as class representative and acted in the interests of the class members.

53.      Plaintiffs' participation was an essential element that allowed Class Counsel to reach a settlement. I believe other Class Members would not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiffs' contribution.  I believe that the requested Service Awards for Plaintiffs are accordingly fair and reasonable.

54.     While our office is cognizant that that entitlement to such an award is presently unsettled in the Eleventh Circuit, I would request that the Court retain jurisdiction over this issue until the ultimate disposition of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) is

known.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 2, 2022, at Westlake Village, California.

Respectfully,

_/s/ Kiley Lynn Grombacher_
Kiley Lynn Grombacher

# EXHIBIT 1





# Hon. John C. Lifland (Ret.)

JAMS Mediator, Arbitrator, Referee/Special Master,
Neutral Evaluator

**Case Manager**

Christine Persaud
T: 212-607-2773
F: 212-751-4099
620 Eighth Ave., 34th Floor, New York, NY 10018
CPersaud@jamsadr.com

John C. Lifland is available to conduct cases virtually. JAMS is equipped to provide virtual ADR
services on a variety of online platforms, including Zoom, Microsoft Teams, WebEx, and more.

## Biography

**Hon. John C. Lifland (Ret.)** is highly regarded by counsel for his exceptional ability to handle com
litigation. He is perceived by parties as being well prepared, knowledgeable, courteous, and a
consummate professional. Prior to his 19 years of distinguished service in the federal judiciary at the
United States District Court, District of New Jersey, he was in private practice for 27 years
concentrating on commercial litigation including antitrust, employment, construction, banking,
intellectual property, and securities matters.

## ADR Experience and Qualifications

- Facilitated settlement negotiations involving a full range of issues including:

Hon  John C  L fland (Ret )   JAMS Neutral   General B ography
NY T mes Bu ld ng • 620 8th Ave • 34th Floor • New York  NY 10018 • Tel 212 751 2700 • Fax 212 751 4099 • www jamsadr com
Page 1 of 4

- Antitrust
- Banking
- Business
- Class action
- Complex commercial
- Employment
- Environmental
- Government agencies
- Health Care
- Insurance
- Intellectual property: patents, copyrights, trademarks, unfair competition, and licensing
- Pharmaceuticals/Mass torts
- Securities

- During the last several years while serving on the federal bench, cases presided over were mostly civil with an emphasis on intellectual property matters and included multidistrict litigation
- Managed such cases to settlement or judgment, and his decisions included resolving challenges to validity and enforceability of patents on various brand-name drugs by generic drug manufacturers, questions of infringement in such cases and questions of patent validity, infringement, and damages in other varied contexts including consumer products, construction materials, and electronic devices. His work also included evaluating infringement issues in trademark and copyright cases and resolving various issues in securities litigation.

# Representative Matters

A substantial part of Judge Lifland's work involves serving alone or with other retired federal or state judges on mock panels organized by clients or law firms to evaluate upcoming trial or appellate presentations, or to evaluate legal or factual positions. Judge Lifland has been advised that these exercises usually provide valuable insights into litigation and settlement positions. The issues discussed include patent, contract, insurance, antitrust, bankruptcy, D & O Liability, corporate governance, toxic tort, advertising and copyright issues. Judge Lifland's breadth of experience extends to include:

- **Admiralty:** Presided over admiralty personal injury trials
- **Antitrust:** Presided over *In re Neurontin Antitrust Litigation* (multidistrict)
- **Bankruptcy:** Addressed rights of mortgagees in bankruptcy litigation
- **Civil Rights:** Presided over litigation against municipality, addressed rights of developer and municipality; Decided *Fair v. Rumsfeld*, involving the First Amendment in the military recruiting

Hon  John C  L fland (Ret )   JAMS Neutral   General B ography
NY T mes Bu ld ng • 620 8th Ave • 34th Floor • New York NY 10018 • Tel 212 751 2700 • Fax 212 751 4099 • www jamsadr com
Page 2 of 4

context which was upheld by the Supreme Court of the United States

- **Employment/Labor:** Presided over numerous trials alleging improper discharge and addressed issues regarding confirmation of arbitration awards, ERISA, and rights of former union-represented employees to lifetime benefits
- **Environmental:** Addressed insurance coverage issues, water and air pollution responsibility issues, and penalty issues
- **Health Care:** Cases involving off-label marketing by pharmaceutical companies, nursing home reimbursement under Medicaid, and medical malpractice
- **Insurance:** Wrote opinion resolving automobile coverage issues when sitting by designation on Court of Appeals for the Third Circuit
- **Intellectual Property:**
  - **Patent litigation:** Wrote opinion addressing on-sale bar to patentability when sitting by designation on Court of Appeals for the Federal Circuit; presided over *Pfizer et al. v. Teva Pharms*. USA, No. 04-754 (D. N.J. 2007) and *In re Gapabentin Patent Litigation* (multidistrict)
  - Addressed liability of search engine for alleged trademark violations
  - Addressed many likelihood of confusion issues in trademark litigations
  - Served on panels of retired federal judges at seminars discussing various issues raised by Hatch-Waxman patent litigation
  - Served on CPR Patent Task Force
  - Participates in programs organized by American Conference Institute and Momentum
- **International**
  - Served as JAMS neutral Chair of an arbitration panel on a case administered from Paris, France by the ICC
  - Serving as panelist on an ICDR administered case
- **Securities:** Presided over litigation alleging securities fraud against short sellers, addressed obligations of various parties having differing roles in transactions, such as issuer, accountants, and underwriters

# Honors, Memberships, and Professional Activities

- Completed Virtual ADR training conducted by the JAMS Institute, the training arm of JAMS
- Founding member and active participant, John C. Lifland American Inn of Court (an association dedicated to fostering and developing the practice of intellectual property law and federal litigation)
- Sat by designation on the Federal Circuit and wrote opinion addressing on-sale bar to patentability
- Judicial Participant, Second National Forum on Presenting and Defending Pharmaceutical and Biotech Patent Litigation, December 2005; Speaker, Federal Circuit Judicial Conference and numerous other professional meetings related to patent and ADR issues, including Practicing Law Institute, New York Intellectual Property Law Association and New Jersey State Bar

Hon  John C  L fland (Ret )   JAMS Neutral    General B ography
NY T mes Bu ld ng • 620 8th Ave • 34th Floor • New York  NY 10018 • Tel 212 751 2700 • Fax 212 751 4099 • www.jamsadr com
Page 3 of 4

Association
- Member and Chairman, New Jersey Board of Bar Examiners, 1969-1977

# Background and Education

- Judge, United States District Court, District of New Jersey, 1988-2007
- Private practice, Stryker, Tams and Dill, Newark, New Jersey, 1961-1988
- Law Clerk, Hon. Thomas F. Meaney, U.S. District Court, District of New Jersey
- LL.B., Harvard Law School
- B.A., Yale University

Available nationwide ›

**Disclaimer**

This page is for general information purposes.  JAMS makes no representations or warranties regarding its accuracy or completeness.  Interested persons should conduct their own research regarding information on this website before deciding to use JAMS, including investigation and research of JAMS neutrals. See More

Hon  John C  L fland (Ret )   JAMS Neutral   General B ography
NY T mes Bu ld ng • 620 8th Ave • 34th Floor • New York  NY 10018 • Tel 212 751 2700 • Fax 212 751 4099 • www.jamsadr.com
Page 4 of 4

# EXHIBIT 2



THOMSON REUTERS

# LEGAL BILLING REPORT
## By Region, By Firm

Volume 17, Number 3
December 2015

# California Region

## Firm: Snell & Wilmer

Firm Size: **419**    Firm Rank **104**

Court Name: Arizona
Case Name: Xhibit Corp., et al.,
Case Number: 2:15-bk-00679-BKM

For fee applications
1/22/2015 through 9/11/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Eric S. Pezold | Partner | CA | 2004 | 2004 | $520 | 0.10 | $52.00 |
| | | | | | **Total:** | **0.10** | **$52.00** |

## Firm: Klee, Tuchin, Bogdanoff & Stern, LLP

Firm Size: **19**    Firm Rank **0**

Court Name: California Central
Case Name: State Fish Co. Inc
Case Number: 2:15-bk-11084-SK

For fee applications
6/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Kenneth Klee | Partner | CA | 1974 | 1975 | $1,300 | 0.20 | $260.00 |
| David Stern | Partner | CA | 1975 | 1975 | $1,080 | 189.50 | $204,660.00 |
| Michael Tuchin | Partner | CA | 1990 | 1990 | $1,080 | 137.10 | $148,068.00 |
| Maria Scountas Argiropoulos | Partner | CA | 2006 | 2006 | $675 | 25.20 | $17,010.00 |
| Colleen M. Keating | Counsel | CA | 2008 | 2008 | $650 | 111.20 | $72,280.00 |
| Jonathan M. Weiss | Associate | CA | 2012 | 2012 | $475 | 525.00 | $249,375.00 |
| Kathryn T. Zwicker | Associate | CA | 1986 | 1986 | $440 | 9.50 | $4,180.00 |
| Sasha M. Gurvitz | Associate | CA | 2014 | 2014 | $395 | 40.80 | $16,116.00 |
| | | | | | **Total:** | **1038.50** | **$711,949.00** |

## Firm: Bracewell & Giuliani LLP

Firm Size: **422**    Firm Rank **103**

Court Name: Delaware
Case Name: Optim Energy, LLC, et al,
Case Number: 14-10262 (BLS)

For fee applications
2/12/2014 through 10/15/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Joe R. Hull | Partner | CA | 1969 | 1969 | $790 | 0.60 | $474.00 |
| | | | | | **Total:** | **0.60** | **$474.00** |

## Firm: Brown Rudnick LLP

Firm Size: **184**    Firm Rank **211**

Court Name: Delaware
Case Name: Corinthian Colleges Inc
Case Number: 15-10952 (KJC)

For fee applications
5/4/2015 through 9/21/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Ronald Rus | Partner | CA | 1975 | 1975 | $880 | 1.50 | $1,320.00 |
| Lauren E. Curry | Partner | CA | 2010 | 2010 | $730 | 78.90 | $57,597.00 |
| | | | | | **Total:** | **80.40** | **$58,917.00** |

# California Region

## Firm Cooley LLP

Firm Size: 613    Firm Rank 63

| | | Court Name | Delaware | | | For fee applications | |
| | | Case Name | RS Legacy Corporation | | | 6/1/2015 through 10/7/2015 | |
| | | Case Number | 15-10197 (BLS) | | | | |
| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Seth A. Rafkin | Partner | CA | 1998 | 1998 | $810 | 0.50 | $405.00 |
| Janet D. Gertz | Associate | CA | 2004 | 2004 | $755 | 14.60 | $11,023.00 |
| Shannon L. Sorrells | Associate | CA | 2011 | 2011 | $595 | 2.80 | $1,666.00 |
| | | | | | Total: | **17.90** | **$13,094.00** |

## Firm Gibson Dunn & Crutcher, LLP

Firm Size: 1039    Firm Rank 21

| | | Court Name | Delaware | | | For fee applications | |
| | | Case Name | ENERGY FUTURE HOLDINGS CORP | | | 8/1/2015 through 8/31/2015 | |
| | | Case Number | 14-10979 (CSS) | | | | |
| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Matthew Bouslog | Associate | CA | 2011 | 2011 | $625 | 5.10 | $3,187.50 |
| | | | | | Total: | **5.10** | **$3,187.50** |

## Firm Kirkland & Ellis LLP

Firm Size: 1442    Firm Rank 13

| | | Court Name | Delaware | | | For fee applications | |
| | | Case Name | ENERGY FUTURE HOLDINGS CORP | | | 8/1/2015 through 8/31/2015 | |
| | | Case Number | 14-10979 (CSS) | | | | |
| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Mike Beinus | Partner | CA | 1999 | 1999 | $1,220 | 3.10 | $3,782.00 |
| Mark E. McKane | Partner | CA | 1997 | 1997 | $1,025 | 198.50 | $203,462.50 |
| Christopher Keegan | Partner | CA | 2002 | 2002 | $855 | 75.50 | $64,552.50 |
| Michael Esser | Associate | CA | 2009 | 2009 | $825 | 213.40 | $176,055.00 |
| Alexander Davis | Associate | CA | 2012 | 2012 | $710 | 192.60 | $136,746.00 |
| Justin Sowa | Associate | CA | 2013 | 2013 | $710 | 199.70 | $141,787.00 |
| Austin Klar | Associate | CA | 2013 | 2013 | $635 | 35.00 | $22,225.00 |
| Sarah Stock | Associate | CA | 2013 | 2013 | $635 | 121.60 | $77,216.00 |
| Anna Terteryan | Associate | CA | 2014 | 2014 | $555 | 241.80 | $134,199.00 |
| James Barolo | Associate | CA | 2014 | 2014 | $555 | 108.60 | $60,273.00 |
| Kevin Chang | Associate | CA | 2014 | 2014 | $555 | 170.80 | $94,794.00 |
| | | | | | Total: | **1560.60** | **$1,115,092.00** |

By Region, By Firm

## California Region

### Firm Klee, Tuchin, Bogdanoff & Stern, LLP

Firm Size: 19    Firm Rank 0

Court Name Delaware
Case Name SEAL123, INC., et al.
Case Number 15-10081 (CSS)

For fee applications
7/1/2015 through 11/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Lee Bogdanoff | Partner | CA | 1985 | 1985 | $1,080 | 7.30 | $7,884.00 |
| Michael Tuchin | Partner | CA | 1990 | 1990 | $1,080 | 37.10 | $40,068.00 |
| David Fidler | Partner | CA | 1997 | 1998 | $850 | 12.70 | $10,795.00 |
| Robert J. Pfister | Partner | CA | 2001 | 2001 | $795 | 0.20 | $159.00 |
| David M. Guess | Partner | CA | 2005 | 2005 | $695 | 67.30 | $46,773.50 |
| Maria Sountas Argiropoulos | Partner | CA | 2006 | 2006 | $675 | 1.70 | $1,147.50 |
| Justin D. Yi | Partner | CA | 2009 | 2009 | $625 | 0.80 | $500.00 |
| Jonathan M. Weiss | Associate | CA | 2012 | 2012 | $475 | 34.70 | $16,482.50 |
| Kathryn T. Zwicker | Associate | CA | 1986 | 1986 | $440 | 12.40 | $5,456.00 |
| | | | | | Total: | 174.20 | $129,265.50 |

### Firm Morrison & Foerster LLP

Firm Size: 1025    Firm Rank 22

Court Name Delaware
Case Name ENERGY FUTURE HOLDINGS CORP
Case Number 14-10979 (CSS)

For fee applications
8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Clara Lim | Associate | CA | 2012 | 2012 | $635 | 39.80 | $25,273.00 |
| Chika Arakawa | Associate | CA | 2013 | 2013 | $495 | 8.30 | $4,108.50 |
| | | | | | Total: | 48.10 | $29,381.50 |

## California Region

### Firm: Munger, Tolles & Olson LLP
Firm Size: 181  Firm Rank: 216

Court Name: Delaware
Case Name: ENERGY FUTURE HOLDINGS CORP
Case Number: 14-10979 (CSS)

For fee applications
8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| John W. Spiegel | Partner | CA | 1977 | 1977 | $1,065 | 36.30 | $38,659.50 |
| Thomas B. Walper | Partner | CA | 1980 | 1980 | $1,065 | 184.05 | $196,013.25 |
| Stephen D. Rose | Partner | CA | 1991 | 1991 | $960 | 29.20 | $28,032.00 |
| Todd J. Rosen | Partner | CA | 1999 | 1999 | $875 | 53.20 | $46,550.00 |
| Jay M. Fujitani | Partner | CA | 1984 | 1984 | $830 | 92.50 | $76,775.00 |
| Kevin S. Allred | Partner | CA | 1986 | 1986 | $830 | 94.50 | $78,435.00 |
| Seth Goldman | Partner | CA | 2002 | 2002 | $750 | 154.70 | $116,025.00 |
| Bradley R. Schneider | Of Counsel | CA | 2004 | 2004 | $680 | 115.10 | $78,268.00 |
| Emily A. Bussigel | Associate | CA | 2010 | 2010 | $635 | 184.80 | $117,348.00 |
| Sam Greenberg | Associate | CA | 2010 | 2010 | $615 | 61.70 | $37,945.50 |
| Alex D. Terepka | Associate | CA | 2012 | 2012 | $510 | 89.40 | $45,594.00 |
| Andrea M. Weintraub | Associate | CA | 2013 | 2013 | $510 | 68.30 | $34,833.00 |
| Sara N. Taylor | Associate | CA | 2012 | 2012 | $510 | 70.40 | $35,904.00 |
| Peter E. Boos | Associate | CA | 2014 | 2014 | $395 | 11.40 | $4,503.00 |
| | | | | | Total: | 1245.55 | $934,885.25 |

### Firm: O'Melveny & Myers LLP
Firm Size: 1193  Firm Rank: 16

Court Name: Delaware
Case Name: Colt Holding Company
Case Number: 15-11296 (LSS)

For fee applications
8/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| John-Paul Motley | Partner | CA | 1999 | 1999 | $930 | 6.70 | $6,231.00 |
| Sarah Hoffner | Counsel | CA | 2004 | 2004 | $755 | 11.20 | $8,456.00 |
| Jeeho Lee | Counsel | CA | 2007 | 2007 | $745 | 5.00 | $3,725.00 |
| Joannah Caneda | Associate | CA | 2015 | 2015 | $460 | 4.90 | $2,254.00 |
| Christopher Martin | Associate | CA | 2014 | 2014 | $415 | 1.20 | $498.00 |
| Joseph Zujkowski | Counsel | CA | 2008 | 2008 | $390 | 183.60 | $71,604.00 |
| | | | | | Total: | 212.60 | $92,768.00 |

By Region, By Firm

# California Region

**Firm** Pachulski Stang Ziehl Young Jones & Wei
Firm Size: 55     Firm Rank 0

Court Name Delaware
Case Name DDMG Estate
Case Number 12-12568(BLS)

For fee applications
8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Debra I. Grassgreen | Partner | CA | 1991 | 1994 | $925 | 1.30 | $1,202.50 |
| William Ramseyer | Of Counsel | CA | 1980 | 1980 | $650 | 1.10 | $715.00 |
| | | | | | Total: | 2.40 | $1,917.50 |

**Firm** Pachulski Stang Ziehl Young Jones & Wei
Firm Size: 55     Firm Rank 0

Court Name Delaware
Case Name ICL Holdings Company, INC
Case Number 12-13319

For fee applications
6/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| William L. Ramseyer | Of Counsel | CA | 1980 | 1980 | $650 | 7.60 | $4,940.00 |
| | | | | | Total: | 7.60 | $4,940.00 |

**Firm** Pachulski Stang Ziehl Young Jones & Wei
Firm Size: 55     Firm Rank 0

Court Name Delaware
Case Name NE OPCO Inc
Case Number 1:13-BK-11483

For fee applications
8/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Andrew W. Caine | Partner | CA | 1983 | 1983 | $925 | 0.20 | $185.00 |
| William L. Ramseyer | Of Counsel | CA | 1980 | 1980 | $650 | 1.30 | $845.00 |
| William Ramseyer | Of Counsel | CA | 1980 | 1980 | $650 | 2.10 | $1,365.00 |
| | | | | | Total: | 3.60 | $2,395.00 |

**Firm** Pachulski Stang Ziehl Young Jones & Wei
Firm Size: 55     Firm Rank 0

Court Name Delaware
Case Name SEA123, INC., et al.
Case Number 15-10081 (CSS)

For fee applications
7/1/2015 through 11/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Andrew W. Caine | Of Counsel | CA | 1983 | 1983 | $925 | 0.40 | $370.00 |
| Jeffrey Pomerantz | Partner | CA | 1989 | 1989 | $895 | 0.90 | $805.50 |
| Shirley S. Cho | Of Counsel | CA | 1997 | 1997 | $750 | 13.10 | $9,825.00 |
| | | | | | Total: | 14.40 | $11,000.50 |

## California Region

**Firm** Pachulski Stang Ziehl Young Jones & Wei

Firm Size: 55    Firm Rank: 0

Court Name: Delaware
Case Name: SS Body Armor I, INC
Case Number: 10-11255-(PJW)

For fee applications:
9/1/2014 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Alan J. Kornfeld | Partner | CA | 1987 | 1987 | $925 | 8.90 | $8,232.50 |
| Andrew Caine | Of Counsel | CA | 1983 | 1983 | $895 | 0.20 | $179.00 |
| David J. Barton | Partner | CA | 1981 | 1981 | $850 | 0.30 | $255.00 |
| David M. Bertenthal | Partner | CA | 1989 | 1993 | $850 | 10.00 | $8,500.00 |
| Maxim B. Litvak | Partner | CA | 2001 | 2001 | $775 | 1.70 | $1,317.50 |
| Joshua M. Fried | Partner | CA | 2006 | 2006 | $725 | 2.80 | $2,030.00 |
| Jonathan Kim | Of Counsel | CA | 1995 | 1995 | $665 | 0.80 | $532.00 |
| Elissa Wagner | Of Counsel | CA | 2000 | 2001 | $625 | 46.60 | $29,125.00 |
| William Ramseyer | Of Counsel | CA | 1980 | 1980 | $625 | 2.40 | $1,500.00 |
| | | | | | **Total:** | **73.70** | **$51,671.00** |

**Firm** Paul Hastings LLP

Firm Size: 881    Firm Rank: 30

Court Name: Delaware
Case Name: Mshycorp, Inc
Case Number: 15-11357 (CSS)

For fee applications:
8/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Leslie A. Plaskon | Partner | CA | 1988 | 1988 | $1,150 | 111.10 | $127,765.00 |
| Peter Burke | Partner | CA | 1996 | 1996 | $975 | 3.90 | $3,802.50 |
| Daniel C. Tola | Associate | CA | 2013 | 2013 | $550 | 20.50 | $11,275.00 |
| Kevin Kraft | Associate | CA | 2014 | 2014 | $495 | 4.80 | $2,376.00 |
| | | | | | **Total:** | **140.30** | **$145,218.50** |

**Firm** Paul Hastings LLP

Firm Size: 881    Firm Rank: 30

Court Name: Delaware
Case Name: SEAL123, INC., et al.
Case Number: 15-10081 (CSS)

For fee applications:
7/1/2015 through 11/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Nancy L. Abell | Partner | CA | 1979 | 1979 | $995 | 0.90 | $895.50 |
| Stephen D. Cooke | Partner | CA | 1985 | 1985 | $973 | 0.30 | $292.13 |
| | | | | | **Total:** | **1.20** | **$1,187.63** |

By Region, By Firm

# California Region

## Firm: Quinn Emanuel Urquhart & Sullivan, LLP
Firm Size: 647   Firm Rank: 58

Court Name: Delaware
Case Name: RS Legacy Corporation
Case Number: 15-10197 (BLS)

For fee applications
6/1/2015 through 10/7/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Benjamin Finestone | Partner | CA | 2004 | 2005 | $840 | 11.20 | $9,408.00 |
| Katherine Scherling | Associate | CA | 2008 | 2010 | $735 | 211.50 | $155,452.50 |
| Randa Osman | Partner | CA | 1990 | 1990 | $695 | 47.20 | $32,804.00 |
| | | | | | Total: | 269.90 | $197,664.50 |

## Firm: Robins Kaplan LLP
Firm Size: 250   Firm Rank: 0

Court Name: Delaware
Case Name: Corinthian Colleges Inc
Case Number: 15-10952 (KJC)

For fee applications
5/4/2015 through 9/21/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Roman M. Silberfeld | Partner | CA | 1995 | 1995 | $810 | 5.70 | $4,617.00 |
| Howard Weg | Partner | CA | 2014 | 2014 | $795 | 60.30 | $47,938.50 |
| David B. Shemano | Partner | CA | 2014 | 2014 | $675 | 17.00 | $11,475.00 |
| Scott F. Gautier | Partner | CA | 2014 | 2014 | $675 | 452.00 | $305,100.00 |
| James P. Menton, Jr. | Partner | CA | 2014 | 2014 | $650 | 17.40 | $11,310.00 |
| Cynthia C. Hernandez | Associate | CA | 2009 | 2009 | $470 | 397.90 | $187,013.00 |
| Lorie A. Ball | Associate | CA | 2014 | 2014 | $450 | 568.10 | $255,645.00 |
| Amy Churan | Partner | CA | 2001 | 2001 | $420 | 18.10 | $7,602.00 |
| | | | | | Total: | 1536.50 | $830,700.50 |

## Firm: Torys LLP
Firm Size: 236   Firm Rank: 0

Court Name: Delaware
Case Name: Nortel Networks Inc.
Case Number: 09-10138

For fee applications
8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Sheila Block | Partner | CA | 1974 | 1974 | $1,090 | 9.10 | $9,919.00 |
| Adam Slavens | Associate | CA | 2007 | 2007 | $775 | 163.00 | $126,325.00 |
| | | | | | Total: | 172.10 | $136,244.00 |

## California Region

**Firm** Cooley LLP

**Firm Size:** 613    **Firm Rank** 63

**Court Name** Virginia Eastern
**Case Name** Health Diagnostic Laboratory, Inc.
**Case Number** 15-32919-KRH

For fee applications
6/7/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Aarti G. Reddy | Associate | CA | 2010 | 2010 | $655 | 11.20 | $7,336.00 |
| Amanda B. Pacheco | Associate | CA | 2013 | 2013 | $470 | 3.30 | $1,551.00 |
| | | | | | Total: | **14.50** | **$8,887.00** |

By Region, By Firm

## West Region

### Firm: Faegre Baker Daniels LLP

Firm Size: 750   Firm Rank: 0

Court Name: Colorado
Case Name: ROBERT D. MORDINI, JR.,
Case Number: 11-15491-ABC

For fee applications
9/1/2013 through 11/18/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Michael K. Bolton | Partner | CO | 2001 | 2001 | $540 | 0.50 | $270.00 |
| Brandan K. Oliver | Associate | CO | 2010 | 2010 | $295 | 3.50 | $1,032.50 |
| | | | | | **Total:** | **4.00** | **$1,302.50** |

### Firm: Greenberg Traurig LLP

Firm Size: 1699   Firm Rank: 9

Court Name: Delaware
Case Name: ATLS Acquisition LLC
Case Number: 13-10262 (PJW)

For fee applications
8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Matthew L. Hinker | Associate | CO | 2010 | 2010 | $635 | 2.30 | $1,460.50 |
| | | | | | **Total:** | **2.30** | **$1,460.50** |

### Firm: O'Melveny & Myers LLP

Firm Size: 1193   Firm Rank: 16

Court Name: Delaware
Case Name: Colt Holding Company
Case Number: 15-11296 (LSS)

For fee applications
8/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Robert Blashek | Partner | CO | 1977 | 1977 | $1,075 | 1.50 | $1,612.50 |
| Peter Friedman | Partner | CO | 1998 | 1998 | $935 | 107.00 | $100,045.00 |
| | | | | | **Total:** | **108.50** | **$101,657.50** |

### Firm: Jenner & Block LLP

Firm Size: 433   Firm Rank: 98

Court Name: Alabama Northern
Case Name: Walter Energy Inc
Case Number: 15-02741-TOM11

For fee applications
7/15/2015 through 10/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Jarrell A. Cook | Associate | WA | 2014 | 2014 | $460 | 10.00 | $4,600.00 |
| | | | | | **Total:** | **10.00** | **$4,600.00** |

# West Region

## Firm: Akin Gump Strauss Hauer & Feld LLP

Firm Size: 790   Firm Rank 40

| | | | Court Name | Delaware | | | | |
| | | | Case Name | Quicksilver Resources Inc | | | | |
| | | | Case Number | 15-10585(LSS) | | | | |

For fee applications 7/1/2015 through 10/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Matthew W. Kinskey | Associate | WA | 2014 | 2014 | $430 | 28.60 | $49,493.00 |
| | | | | | | 115.10 | $49,493.00 |
| | | | | | Total: | 115.10 | $49,493.00 |

## Firm: Bracewell & Giuliani LLP

Firm Size: 422   Firm Rank 103

| | | | Court Name | Delaware | | | | |
| | | | Case Name | Optim Energy, LLC, et al, | | | | |
| | | | Case Number | 14-10262 (BLS) | | | | |

For fee applications 2/12/2014 through 10/15/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Nancy Jo Nelson | Partner | WA | 1984 | 1984 | $975 | 28.60 | $27,885.00 |
| Jacqueline Java | Counsel | WA | 2000 | 2000 | $670 | 0.90 | $603.00 |
| Jacqueline Java | Counsel | WA | 2000 | 2000 | $650 | 54.50 | $35,432.63 |
| Sandra Snyder | Associate | WA | 2006 | 2006 | $529 | 106.80 | $56,583.71 |
| Sandra Snyder | Associate | WA | 2006 | 2006 | $520 | 2.30 | $1,196.00 |
| Blake Urban | Associate | WA | 2009 | 2009 | $481 | 5.10 | $2,455.50 |
| Serena Rwejuna | Associate | WA | 2013 | 2013 | $363 | 37.00 | $13,449.87 |
| | | | | | Total: | 235.20 | $137,605.71 |

## Firm: Foley & Lardner LLP

Firm Size: 874   Firm Rank 31

| | | | Court Name | Delaware | | | | |
| | | | Case Name | Universal Cooperatives Inc | | | | |
| | | | Case Number | 14-11187 (MFW) | | | | |

For fee applications 8/1/2015 through 8/31/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Jack G. Haake | Associate | WA | 2011 | 2011 | $315 | 12.40 | $3,906.00 |
| | | | | | | 12.40 | $3,906.00 |
| | | | | | Total: | 12.40 | $3,906.00 |

## Firm: Jones Day

Firm Size: 2407   Firm Rank 3

| | | | Court Name | Delaware | | | | |
| | | | Case Name | Molycorp, Inc | | | | |
| | | | Case Number | 15-11357 (CSS) | | | | |

For fee applications 8/1/2015 through 9/30/2015

| Name | Title | State | Graduated | Admitted | Rate | Hours | Fees |
|---|---|---|---|---|---|---|---|
| Kent L. Killelea | Of Counsel | WA | 1984 | 1984 | $750 | 5.30 | $3,975.00 |
| | | | | | | 5.30 | $3,975.00 |
| | | | | | Total: | 5.30 | $3,975.00 |

By Region, By Firm

## California Region

| Title | Professional | Firm | Graduated | Admitted | State | Rate | Hours | Total |
|---|---|---|---|---|---|---|---|---|
| Partner | Kenneth Klee | Klee, Tuchin, Bogdanoff & Stern, LLP | 1975 | 1974 | CA | $1,300 | 0.2 | $260.00 |
| Partner | Mike Beinus | Kirkland & Ellis LLP | 1999 | 1999 | CA | $1,220 | 3.1 | $3,782.00 |
| Partner | Leslie A. Plaskon | Paul Hastings LLP | 1988 | 1988 | CA | $1,150 | 111.1 | $127,765.00 |
| Partner | Sheila Block | Torys LLP | 1974 | 1974 | CA | $1,090 | 9.1 | $9,919.00 |
| Partner | David Stern | Klee, Tuchin, Bogdanoff & Stern, LLP | 1975 | 1975 | CA | $1,080 | 189.5 | $204,660.00 |
| Partner | Lee Bogdanoff | Klee, Tuchin, Bogdanoff & Stern, LLP | 1985 | 1985 | CA | $1,080 | 7.3 | $7,884.00 |
| Partner | Michael Tuchin | Klee, Tuchin, Bogdanoff & Stern, LLP | 1990 | 1990 | CA | $1,080 | 174.2 | $188,136.00 |
| Partner | John W. Spiegel | Munger Tolles & Olson LLC | 1977 | 1977 | CA | $1,065 | 36.3 | $38,659.50 |
| Partner | Thomas B. Walper | Munger Tolles & Olson LLC | 1980 | 1980 | CA | $1,065 | 184.05 | $196,013.25 |
| Partner | Mark E. McKane | Kirkland & Ellis LLP | 1997 | 1997 | CA | $1,025 | 198.5 | $203,462.50 |
| Partner | Nancy L. Abell | Paul Hastings LLP | 1979 | 1979 | CA | $995 | 0.9 | $895.50 |
| Partner | Peter Burke | Paul Hastings LLP | 1996 | 1996 | CA | $975 | 3.9 | $3,802.50 |
| Partner | Stephen D. Cooke | Paul Hastings LLP | 1985 | 1985 | CA | $973 | 0.3 | $292.13 |
| Partner | Stephen D. Rose | Munger Tolles & Olson LLC | 1991 | 1991 | CA | $960 | 29.2 | $28,032.00 |
| Partner | John-Paul Motley | O'Melveny & Myers LLP | 1999 | 1999 | CA | $930 | 6.7 | $6,231.00 |
| Partner | Alan J. Kornfeld | Pachulski Stang Ziehl Young Jones & Weintraub | 1987 | 1987 | CA | $925 | 8.9 | $8,232.50 |
| Of Counsel | Andrew W. Caine | Pachulski Stang Ziehl Young Jones & Weintraub | 1983 | 1983 | CA | $925 | 0.6 | $555.00 |
| Partner | Debra I. Grassgreen | Pachulski Stang Ziehl Young Jones & Weintraub | 1994 | 1991 | CA | $925 | 1.3 | $1,202.50 |
| Of Counsel | Andrew Caine | Pachulski Stang Ziehl Young Jones & Weintraub | 1983 | 1983 | CA | $895 | 0.2 | $179.00 |
| artner | Jeffrey Pomerantz | Pachulski Stang Ziehl Young Jones & Weintraub | 1989 | 1989 | CA | $895 | 0.9 | $805.50 |
| artner | Ronald Rus | Brown Rudnick LLP | 1975 | 1975 | CA | $880 | 1.5 | $1,320.00 |
| artner | Todd J. Rosen | Munger Tolles & Olson LLC | 1999 | 1999 | CA | $875 | 53.2 | $46,550.00 |
| artner | Christopher Keegan | Kirkland & Ellis LLP | 2002 | 2002 | CA | $855 | 75.5 | $64,552.50 |
| Partner | David Fidler | Klee, Tuchin, Bogdanoff & Stern, LLP | 1998 | 1997 | CA | $850 | 12.7 | $10,795.00 |
| Partner | David J. Barton | Pachulski Stang Ziehl Young Jones & Weintraub | 1981 | 1981 | CA | $850 | 0.3 | $255.00 |
| Partner | David M. Bertenthal | Pachulski Stang Ziehl Young Jones & Weintraub | 1993 | 1989 | CA | $850 | 10 | $8,500.00 |
| Partner | Benjamin Finestone | Quinn Emanuel Urquhart & Sullivan, LLP | 2005 | 2004 | CA | $840 | 11.2 | $9,408.00 |
| Partner | Jay M. Fujitani | Munger Tolles & Olson LLC | 1984 | 1984 | CA | $830 | 92.5 | $76,775.00 |
| Partner | Kevin S. Allred | Munger Tolles & Olson LLC | 1986 | 1986 | CA | $830 | 94.5 | $78,435.00 |
| Associate | Michael Esser | Kirkland & Ellis LLP | 2009 | 2009 | CA | $825 | 213.4 | $176,055.00 |
| Partner | Roman M. Silberfeld | Robins Kaplan LLP | 1995 | 1995 | CA | $810 | 5.7 | $4,617.00 |
| Partner | Seth A. Rafkin | Cooley LLP | 1998 | 1998 | CA | $810 | 0.5 | $405.00 |
| Partner | Howard Weg | Robins Kaplan LLP | 2014 | 2014 | CA | $795 | 60.3 | $47,938.50 |
| Partner | Robert J. Pfister | Klee, Tuchin, Bogdanoff & Stern, LLP | 2001 | 2001 | CA | $795 | 0.2 | $159.00 |
| Partner | Joe R. Hull | Bracewell & Giuliani LLP | 1969 | 1969 | CA | $790 | 0.6 | $474.00 |
| Associate | Adam Slavens | Torys LLP | 2007 | 2007 | CA | $775 | 163 | $126,325.00 |
| Partner | Maxim B. Litvak | Pachulski Stang Ziehl Young Jones & Weintraub | 2001 | 2001 | CA | $775 | 1.7 | $1,317.50 |
| Associate | Janet D. Gertz | Cooley LLP | 2004 | 2004 | CA | $755 | 14.6 | $11,023.00 |
| Counsel | Sarah Hoffner | O'Melveny & Myers LLP | 2004 | 2004 | CA | $755 | 11.2 | $8,456.00 |
| Partner | Seth Goldman | Munger Tolles & Olson LLC | 2002 | 2002 | CA | $750 | 154.7 | $116,025.00 |
| Of Counsel | Shirley S. Cho | Pachulski Stang Ziehl Young Jones & Weintraub | 1997 | 1997 | CA | $750 | 13.1 | $9,825.00 |

## California Region

| Title | Professional | Firm | Graduated | Admitted | State | Rate | Hours | Total |
|---|---|---|---|---|---|---|---|---|
| Counsel | Jeeho Lee | O'Melveny & Myers LLP | 2007 | 2007 | CA | $745 | 5 | $3,725.00 |
| Associate | Katherine Scherling | Quinn Emanuel Urquhart & Sullivan, LLP | 2010 | 2008 | CA | $735 | 211.5 | $155,452.50 |
| Partner | Lauren E. Curry | Brown Rudnick LLP | 2010 | 2010 | CA | $730 | 78.9 | $57,597.00 |
| Partner | Joshua M. Fried | Pachulski Stang Ziehl Young Jones & Weintraub | 2006 | 2006 | CA | $725 | 2.8 | $2,030.00 |
| Associate | Alexander Davis | Kirkland & Ellis LLP | 2012 | 2012 | CA | $710 | 192.6 | $136,746.00 |
| Associate | Justin Sowa | Kirkland & Ellis LLP | 2013 | 2013 | CA | $710 | 199.7 | $141,787.00 |
| Partner | David M. Guess | Klee, Tuchin, Bogdanoff & Stern, LLP | 2005 | 2005 | CA | $695 | 67.3 | $46,773.50 |
| Partner | Randa Osman | Quinn Emanuel Urquhart & Sullivan, LLP | 1990 | 1990 | CA | $695 | 47.2 | $32,804.00 |
| Of Counsel | Bradley R. Schneider | Munger Tolles & Olson LLC | 2004 | 2004 | CA | $680 | 115.1 | $78,268.00 |
| Partner | David B. Shemano | Robins Kaplan LLP | 2014 | 2014 | CA | $675 | 17 | $11,475.00 |
| Partner | Maria Sountas Argiropoulos | Klee, Tuchin, Bogdanoff & Stern, LLP | 2006 | 2006 | CA | $675 | 26.9 | $18,157.50 |
| Partner | Scott F. Gautier | Robins Kaplan LLP | 2014 | 2014 | CA | $675 | 452 | $305,100.00 |
| Of Counsel | Jonathan Kim | Pachulski Stang Ziehl Young Jones & Weintraub | 1995 | 1995 | CA | $665 | 0.8 | $532.00 |
| Associate | Aarti G. Reddy | Cooley LLP | 2010 | 2010 | CA | $655 | 11.2 | $7,336.00 |
| Counsel | Colleen M. Keating | Klee, Tuchin, Bogdanoff & Stern, LLP | 2008 | 2008 | CA | $650 | 111.2 | $72,280.00 |
| Partner | James P. Menton, Jr. | Robins Kaplan LLP | 2014 | 2014 | CA | $650 | 17.4 | $11,310.00 |
| Of Counsel | William L. Ramseyer | Pachulski Stang Ziehl Young Jones & Weintraub | 1980 | 1980 | CA | $650 | 8.9 | $5,785.00 |
| Of Counsel | William Ramseyer | Pachulski Stang Ziehl Young Jones & Weintraub | 1980 | 1980 | CA | $650 | 3.2 | $2,080.00 |
| Associate | Austin Klar | Kirkland & Ellis LLP | 2013 | 2013 | CA | $635 | 35 | $22,225.00 |
| ssociate | Clara Lim | Morrison & Foerster LLP | 2012 | 2012 | CA | $635 | 39.8 | $25,273.00 |
| ssociate | Emily A. Bussigel | Munger Tolles & Olson LLC | 2010 | 2010 | CA | $635 | 184.8 | $117,348.00 |
| ssociate | Sarah Stock | Kirkland & Ellis LLP | 2013 | 2013 | CA | $635 | 121.6 | $77,216.00 |
| f Counsel | Elissa Wagner | Pachulski Stang Ziehl Young Jones & Weintraub | 2001 | 2000 | CA | $625 | 46.6 | $29,125.00 |
| Partner | Justin D. Yi | Klee, Tuchin, Bogdanoff & Stern, LLP | 2009 | 2009 | CA | $625 | 0.8 | $500.00 |
| Associate | Matthew Bouslog | Gibson Dunn & Crutcher, LLP | 2011 | 2011 | CA | $625 | 5.1 | $3,187.50 |
| Of Counsel | William Ramseyer | Pachulski Stang Ziehl Young Jones & Weintraub | 1980 | 1980 | CA | $625 | 2.4 | $1,500.00 |
| Associate | Sam Greenberg | Munger Tolles & Olson LLC | 2010 | 2010 | CA | $615 | 61.7 | $37,945.50 |
| Associate | Shannon L. Sorrells | Cooley LLP | 2011 | 2011 | CA | $595 | 2.8 | $1,666.00 |
| Associate | Anna Terteryan | Kirkland & Ellis LLP | 2014 | 2014 | CA | $555 | 241.8 | $134,199.00 |
| Associate | James Barolo | Kirkland & Ellis LLP | 2014 | 2014 | CA | $555 | 108.6 | $60,273.00 |
| Associate | Kevin Chang | Kirkland & Ellis LLP | 2014 | 2014 | CA | $555 | 170.8 | $94,794.00 |
| Associate | Daniel C. Tola | Paul Hastings LLP | 2013 | 2013 | CA | $550 | 20.5 | $11,275.00 |
| Partner | Eric S. Pezold | Snell & Wilmer | 2004 | 2004 | CA | $520 | 0.1 | $52.00 |
| Associate | Alex D. Terepka | Munger Tolles & Olson LLC | 2012 | 2012 | CA | $510 | 89.4 | $45,594.00 |
| Associate | Andrea M. Weintraub | Munger Tolles & Olson LLC | 2013 | 2013 | CA | $510 | 68.3 | $34,833.00 |
| Associate | Sara N. Taylor | Munger Tolles & Olson LLC | 2012 | 2012 | CA | $510 | 70.4 | $35,904.00 |
| Associate | Chika Arakawa | Morrison & Foerster LLP | 2013 | 2013 | CA | $495 | 8.3 | $4,108.50 |
| Associate | Kevin Kraft | Paul Hastings LLP | 2014 | 2014 | CA | $495 | 4.8 | $2,376.00 |
| Associate | Jonathan M. Weiss | Klee, Tuchin, Bogdanoff & Stern, LLP | 2012 | 2012 | CA | $475 | 559.7 | $265,857.50 |
| Associate | Amanda B. Pacheco | Cooley LLP | 2013 | 2013 | CA | $470 | 3.3 | $1,551.00 |
| Associate | Cynthia C. Hernandez | Robins Kaplan LLP | 2009 | 2009 | CA | $470 | 397.9 | $187,013.00 |

# California Region

| Title | Professional | Firm | Graduated | Admitted | State | Rate | Hours | Total |
|---|---|---|---|---|---|---|---|---|
| Associate | Joannah Caneda | O'Melveny & Myers LLP | 2015 | 2015 | CA | $460 | 4.9 | $2,254.00 |
| Associate | Lorie A. Ball | Robins Kaplan LLP | 2014 | 2014 | CA | $450 | 568.1 | $255,645.00 |
| Associate | Kathryn T. Zwicker | Klee, Tuchin, Bogdanoff & Stern, LLP | 1986 | 1986 | CA | $440 | 21.9 | $9,636.00 |
| Partner | Amy Churan | Robins Kaplan LLP | 2001 | 2001 | CA | $420 | 18.1 | $7,602.00 |
| Associate | Christopher Martin | O'Melveny & Myers LLP | 2014 | 2014 | CA | $415 | 1.2 | $498.00 |
| Associate | Peter E. Boos | Munger Tolles & Olson LLC | 2014 | 2014 | CA | $395 | 11.4 | $4,503.00 |
| Associate | Sasha M. Gurvitz | Klee, Tuchin, Bogdanoff & Stern, LLP | 2014 | 2014 | CA | $395 | 40.8 | $16,116.00 |
| Counsel | Joseph Zujkowski | O'Melveny & Myers LLP | 2008 | 2008 | CA | $390 | 183.6 | $71,604.00 |

## West Region

| Title | Professional | Firm | Graduated | Admitted | State | Rate | Hours | Total |
|---|---|---|---|---|---|---|---|---|
| Partner | Robert Blashek | O'Melveny & Myers LLP | 1977 | 1977 | CO | $1,075 | 1.5 | $1,612.50 |
| Partner | Peter Friedman | O'Melveny & Myers LLP | 1998 | 1998 | CO | $935 | 107 | $100,045.00 |
| Associate | Matthew L. Hinker | Greenberg Traurig LLP | 2010 | 2010 | CO | $635 | 2.3 | $1,460.50 |
| Partner | Michael K. Bolton | Faegre Baker Daniels LLP | 2001 | 2001 | CO | $540 | 0.5 | $270.00 |
| Associate | Brandan K. Oliver | Faegre Baker Daniels LLP | 2010 | 2010 | CO | $295 | 3.5 | $1,032.50 |
| Partner | Nancy Jo Nelson | Bracewell & Giuliani LLP | 1984 | 1984 | WA | $975 | 28.6 | $27,885.00 |
| Of Counsel | Kent L. Killelea | Jones Day | 1984 | 1984 | WA | $750 | 5.3 | $3,975.00 |
| Counsel | Jacqueline Java | Bracewell & Giuliani LLP | 2000 | 2000 | WA | $670 | 0.9 | $603.00 |
| Counsel | Jacqueline Java | Bracewell & Giuliani LLP | 2000 | 2000 | WA | $650 | 54.5 | $35,432.63 |
| Associate | Sandra Snyder | Bracewell & Giuliani LLP | 2006 | 2006 | WA | $529 | 106.8 | $56,583.71 |
| Associate | Sandra Snyder | Bracewell & Giuliani LLP | 2006 | 2006 | WA | $520 | 2.3 | $1,196.00 |
| Associate | Blake Urban | Bracewell & Giuliani LLP | 2009 | 2009 | WA | $481 | 5.1 | $2,455.50 |
| Associate | Jarrell A. Cook | Jenner & Block LLP | 2014 | 2014 | WA | $460 | 10 | $4,600.00 |
| Associate | Matthew W. Kinskey | Akin Gump Strauss Hauer & Feld LLP | 2014 | 2014 | WA | $430 | 115.1 | $49,493.00 |
| Associate | Serena Rwejuna | Bracewell & Giuliani LLP | 2013 | 2013 | WA | $363 | 37 | $13,449.87 |
| Associate | Jack G. Haake | Foley & Lardner LLP | 2011 | 2011 | WA | $315 | 12.4 | $3,906.00 |

# EXHIBIT 3

© ALM Media Properties, LLC. All rights reserved.
ALM LEGAL INTELLIGENCE

## NLJ Billing Survey

| Firm Name | Location | Partner Billing Rate High | Partner Billing Rate Low | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Average | Partner Billing Rate Average | Associate Billing Rate Med | Partner Billing Rate Med | Paralegal Billing Rate Med | NLJ Billing Source |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams and Reese | New Orleans | $595.00 | $275.00 | $325.00 | $175.00 | $250.00 | $375.00 | 250 | 375 | 320 | 2012 NLJ Billing Survey |
| Best Best & Krieger | Riverside, CA | $625.00 | $310.00 | $360.00 | $250.00 | $275.00 | $425.00 | 250 | 435 | 390 | 2012 NLJ Billing Survey |
| Brinks Hofer Gilson & Lione | Chicago | $675.00 | $395.00 | $495.00 | $225.00 | $305.00 | $525.00 | 305 | 525 | 385 | 2012 NLJ Billing Survey |
| Bryan Cave | St. Louis | $795.00 | $360.00 | $550.00 | $320.00 | $375.00 | $555.00 | 375 | 560 | 480 | 2012 NLJ Billing Survey |
| Budd Larner | Detroit | $750.00 | $290.00 | $425.00 | $210.00 | $320.00 | $545.00 | 340 | 540 | 313 | 2012 NLJ Billing Survey |
| Cozen O'Connor | Philadelphia | $870.00 | $320.00 | $520.00 | $210.00 | $345.00 | $515.00 | 340 | 515 | 445 | 2012 NLJ Billing Survey |
| Dickinson Wright | Detroit | $585.00 | $285.00 | $325.00 | $205.00 | $245.00 | $375.00 | 245 | 500 | 310 | 2012 NLJ Billing Survey |
| Dinsmore & Shohl | Cincinnati | $525.00 | $285.00 | $235.00 | $130.00 | $225.00 | $350.00 | 310 | 350 | 310 | 2012 NLJ Billing Survey |
| DLA Piper | New York | $1000.00 | $550.00 | $780.00 | $335.00 | $530.00 | $775.00 | 530 | 775 | 605 | 2012 NLJ Billing Survey |
| Dorsey & Whitney | Minneapolis | $855.00 | $420.00 | $520.00 | $200.00 | $275.00 | $625.00 | 275 | 625 | 410 | 2012 NLJ Billing Survey |
| Dykema Gossett | Chicago | $675.00 | $395.00 | $495.00 | $225.00 | $305.00 | $525.00 | 305 | 505 | 415 | 2012 NLJ Billing Survey |
| Epstein Becker Green | New York | $750.00 | $330.00 | $520.00 | $195.00 | $315.00 | $570.00 | 305 | 530 | 415 | 2012 NLJ Billing Survey |
| Fisher & Phillips | Atlanta | $505.00 | $300.00 | $395.00 | $215.00 | $300.00 | $505.00 | 325 | 525 | 410 | 2012 NLJ Billing Survey |
| Foley & Lardner | Milwaukee | $875.00 | $390.00 | $605.00 | $200.00 | $370.00 | $570.00 | 370 | 570 | 495 | 2012 NLJ Billing Survey |
| Fox Rothschild | Philadelphia | $760.00 | $340.00 | $480.00 | $200.00 | $310.00 | $500.00 | 310 | 500 | 435 | 2012 NLJ Billing Survey |
| Frost Brown Todd | Cincinnati | $525.00 | $205.00 | $275.00 | $150.00 | $205.00 | $350.00 | 205 | 350 | 295 | 2012 NLJ Billing Survey |
| Gardere Wynne Sewell | Dallas | $715.00 | $320.00 | $525.00 | $205.00 | $350.00 | $560.00 | 340 | 565 | 485 | 2012 NLJ Billing Survey |
| Harris Beach | Rochester, NY | $625.00 | $295.00 | $330.00 | $175.00 | $250.00 | $400.00 | 250 | 400 | 350 | 2012 NLJ Billing Survey |
| Hiscock & Barclay | Syracuse, NY | $660.00 | $255.00 | $275.00 | $175.00 | $225.00 | $441.00 | 225 | 441 | 361 | 2012 NLJ Billing Survey |
| Hogan Lovells | Washington | $1200.00 | $545.00 | $695.00 | $310.00 | $495.00 | $750.00 | 495 | 750 | 625 | 2012 NLJ Billing Survey |
| Holland & Hart | Denver | $685.00 | $375.00 | $400.00 | $180.00 | $280.00 | $425.00 | 290 | 420 | 360 | 2012 NLJ Billing Survey |
| Holland & Knight | Washington | $795.00 | $315.00 | $525.00 | $195.00 | $375.00 | $575.00 | 310 | 500 | 395 | 2012 NLJ Billing Survey |
| Hunton & Williams | St. Louis | $875.00 | $345.00 | $545.00 | $235.00 | $335.00 | $605.00 | 225 | 455 | 395 | 2012 NLJ Billing Survey |
| Kelley Drye & Warren | New York | $780.00 | $450.00 | $500.00 | $250.00 | $450.00 | $525.00 | 400 | 500 | 435 | 2012 NLJ Billing Survey |
| Knobbe Martens Olson & Bear | Irvine, CA | $760.00 | $425.00 | $425.00 | $200.00 | $330.00 | $525.00 | 330 | 525 | 390 | 2012 NLJ Billing Survey |
| Lathrop & Gage | Kansas City, MO | $595.00 | $265.00 | $395.00 | $125.00 | $245.00 | $450.00 | 240 | 410 | 305 | 2012 NLJ Billing Survey |
| Lewis and Roca | Phoenix | $725.00 | $410.00 | $450.00 | $225.00 | $330.00 | $520.00 | 330 | 470 | 355 | 2012 NLJ Billing Survey |
| Locke Lord | Dallas | $795.00 | $325.00 | $495.00 | $205.00 | $400.00 | $605.00 | 330 | 655 | 560 | 2012 NLJ Billing Survey |
| McGuireWoods | Oklahoma City | $650.00 | $250.00 | $395.00 | $185.00 | $275.00 | $460.00 | 295 | 375 | 340 | 2012 NLJ Billing Survey |
| McKenna Long & Aldridge | Cleveland | $595.00 | $310.00 | $370.00 | $195.00 | $270.00 | $440.00 | 270 | 440 | 360 | 2012 NLJ Billing Survey |
| Michael Best & Friedrich | Morristown, NJ | $575.00 | $300.00 | $325.00 | $190.00 | $255.00 | $395.00 | 255 | 385 | 300 | 2012 NLJ Billing Survey |
| Miles & Stockbridge | Atlanta | $830.00 | $375.00 | $560.00 | $215.00 | $395.00 | $550.00 | 395 | 385 | 405 | 2012 NLJ Billing Survey |
| Miller & Martin | Milwaukee | $750.00 | $245.00 | $320.00 | $195.00 | $245.00 | $425.00 | 245 | 425 | 360 | 2012 NLJ Billing Survey |
| Nelson Mullins Riley & Scarborough | Baltimore | $700.00 | $320.00 | $450.00 | $230.00 | $460.00 | $585.00 | 330 | 565 | 540 | 2012 NLJ Billing Survey |
| Patton Boggs | Chattanooga, TN | $650.00 | $250.00 | $295.00 | $185.00 | $225.00 | $395.00 | 225 | 395 | 340 | 2012 NLJ Billing Survey |
| Perkins Coie | Columbia, SC | $660.00 | $250.00 | $370.00 | $175.00 | $270.00 | $420.00 | 270 | 420 | 380 | 2012 NLJ Billing Survey |
| Polsinelli Shughart | Washington | $910.00 | $425.00 | $570.00 | $240.00 | $435.00 | $695.00 | 435 | 695 | 550 | 2012 NLJ Billing Survey |
| Schulte Roth & Zabel | Seattle | $600.00 | $280.00 | $325.00 | $195.00 | $305.00 | $550.00 | 395 | 500 | 350 | 2012 NLJ Billing Survey |
| Sedgwick | Kansas City, MO | $650.00 | $290.00 | $320.00 | $185.00 | $290.00 | $530.00 | 440 | 560 | 495 | 2012 NLJ Billing Survey |
| Shumaker Loop & Kendrick | Costa Mesa, CA | $830.00 | $335.00 | $325.00 | $210.00 | $290.00 | $530.00 | 280 | 560 | 500 | 2012 NLJ Billing Survey |
| Shutts & Bowen | Philadelphia | $995.00 | $385.00 | $510.00 | $225.00 | $310.00 | $560.00 | 310 | 360 | 460 | 2012 NLJ Billing Survey |
| Stinson Morrison Hecker | New York | $587.00 | $188.00 | $420.00 | $157.00 | $595.00 | $561.00 | 595 | 866 | 605 | 2012 NLJ Billing Survey |
| Stoel Rives | San Francisco | $570.00 | $198.00 | $420.00 | $190.00 | $290.00 | $341.00 | 280 | 391 | 299 | 2012 NLJ Billing Survey |
| Strasburger & Price | Toledo, OH | $835.00 | $280.00 | $325.00 | $210.00 | $295.00 | $402.00 | 245 | 415 | 375 | 2012 NLJ Billing Survey |
| Sullivan & Worcester | Miami | $600.00 | $255.00 | $375.00 | $200.00 | $285.00 | $415.00 | 283 | 385 | 380 | 2012 NLJ Billing Survey |
| Thompson & Knight | Portland, OR | $640.00 | $300.00 | $415.00 | $200.00 | $275.00 | $402.00 | 278 | 460 | 400 | 2012 NLJ Billing Survey |
| Thompson Coburn | Dallas | $900.00 | $313.00 | $395.00 | $190.00 | $242.00 | $402.00 | 243 | 402 | 397 | 2012 NLJ Billing Survey |
| Ulmer & Berne | Boston | $900.00 | $500.00 | $540.00 | $150.00 | $430.00 | $470.00 | 420 | 670 | 570 | 2012 NLJ Billing Survey |
| Vedder Price | St. Louis | $750.00 | $440.00 | $480.00 | $280.00 | $395.00 | $556.00 | 395 | 530 | 530 | 2012 NLJ Billing Survey |
| Winstead | Chicago | $815.00 | $330.00 | $480.00 | $200.00 | $420.00 | $420.00 | 280 | 420 | 380 | 2012 NLJ Billing Survey |
| Winstead | Chicago | $855.00 | $410.00 | $450.00 | $230.00 | $510.00 | $510.00 | 420 | 510 | 440 | 2012 NLJ Billing Survey |
| Winstead | Dallas | $645.00 | $375.00 | $425.00 | $215.00 | $320.00 | $475.00 | 320 | 475 | 410 | 2012 NLJ Billing Survey |

# EXHIBIT 4

1  DEBRA L. HURST (SBN 106118)
   KYLE VAN DYKE (SBN 171186)
2  JULIE CORBO RIDLEY (SBN 234274)
   **HURST & HURST**
3  701 "B" Street, Suite 1700
   San Diego, CA 92101
4  Telephone: 619.236.0016
   Facsimile: 619.236.8569

5

6  RAUL CADENA (SBN 185787)
   NICOLE R. ROYSDON (SBN 262237)
7  **CADENA CHURCHILL, LLP**
   701 "B" Street, Suite 1700
8  San Diego, CA 92101
   Telephone: 619.546.0888
   Facsimile: 619.923.3208

9

   WILLIAM TURLEY (SBN 122408)
   DAVID T. MARA (SBN 230498)
   **The Turley Law Firm, APLC**
   625 Broadway, Suite 625
   San Diego, CA 92101
   Telephone: 619.234.2833
   Facsimile: 619.234.4048

   L. TRACEE LORENS (SBN 150138)
   **LORENS AND ASSOCIATES, APLC**
   701 B Street, Suite 1700
   San Diego, CA 92101
   Telephone: 619.239-1233
   Facsimile: 619.239-1178

10  Additional Counsel Listed After Signature Page
    Attorneys for Plaintiffs and the certified Class

11

12

13                SUPERIOR COURT OF CALIFORNIA

14          FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

15

16  ADAM HOHNBAUM, ILLYA HAASE,          )  CASE NO.: GIC834348
    ROMEO OSORIO, AMANDA JUNE RADER,     )
17  and SANTANA ALVARADO and ROES 1      )  CLASS ACTION
    through 500, Inclusive on behalf of themselves )
18  and all others similarly situated, and on behalf )  DECLARATION OF RICHARD M.
    of the general public,                )  PEARL IN SUPPORT OF PLAINTIFFS'
19                                         )  **UNOPPOSED** MOTION FOR FINAL
                  Plaintiffs,             )  APPROVAL AND OF CLASS ACTION
20                                         )  SETTLEMENT AND MOTION FOR
         v.                               )  AWARD OF ATTORNEYS' FEES,
21                                         )  COSTS, CLASS REPRESENTATIVE
    BRINKER RESTAURANT CORPORATION,      )  SERVICE PAYMENTS, AND CLAIMS
22  BRINKER INTERNATIONAL, INC. and      )  ADMINISTRATION EXPENSES
    BRINKER INTERNATIONAL PAYROLL        )
23  COMPANY, LP a Delaware Corporation; and )  Date:     December 12, 2014
    DOES 1 through 500, Inclusive         )  Time:     1:30 p.m.
24                                         )  Dept.:    C-69
                                           )  Judge:    Hon. Katherine A. Bacal
25                  Defendants.            )
                                           )  Complaint Filed: August 16, 2004
26  ────────────────────────────────────  )

27

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' **UNOPPOSED** MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1    I, RICHARD M. PEARL, hereby declare the following:

2        1.    I am a member in good standing of the California State Bar. I am in

3    private practice as the principal of my own law firm, the Law Offices of Richard

4    M. Pearl, in Berkeley, California. I specialize in issues related to court-awarded

5    attorneys' fees, including the representation of parties in fee litigation and

6    appeals, serving as an expert witness, and serving as a mediator and arbitrator in

7    disputes concerning attorneys' fees and related issues. In this case, I have been

8    asked by Plaintiffs' counsel to render my opinion on the reasonableness of the

9    hourly rates they are requesting in this matter. I make this Declaration in Support

10   of Plaintiffs' Motion for Award of Reasonable Attorneys' Fees.

11   **Professional Background**

12       1.    Briefly summarized, my background is as follows: I am a 1969

13   graduate of Boalt Hall School of Law, University of California, Berkeley,

14   California. I took the California Bar Examination in August 1969 and passed it in

15   November of that year, but because I was working as an attorney in Atlanta,

16   Georgia for the Legal Aid Society of Atlanta (LASA), I was not admitted to the

17   California Bar until January 1970. I worked for LASA until summer of 1971,

18   when I then went to work in California's Central Valley for California Rural Legal

19   Assistance, Inc. (CRLA), a statewide legal services program. From 1977 to 1982,

20   I was CRLA's Director of Litigation, supervising more than fifty attorneys. In

21   1982, I went into private practice, first in a small law firm, then as a sole

22   practitioner. Martindale Hubbell rates my law firm "AV." I also have been

23   selected as a Northern California "Super Lawyer" in Appellate Law for 2005,

24   2006, 2007, 2008, 2010, 2011, 2012, 2013, and 2014. A copy of my current

25   Resume is attached hereto as Exhibit A.

26       2.    Since 1982, my practice has been a general civil litigation and

27   appellate practice, with an emphasis on cases and appeals involving court-awarded

28   attorneys' fees. I also am the author of *California Attorney Fee Awards* (3d ed.

- 1 -

1  Cal. CEB 2010) and its February 2011, 2012, 2013, and March 2014 Supplements,

2  as well as all its previous editions and annual supplements. California appellate

3  courts have cited this treatise on more than 35 occasions. *See, e.g., Graham v.*

4  *DaimlerChrylser Corp.* (2004) 34 Cal.4th 553, 576, 584; *Lolley v. Campbell* (2002)

5  28 Cal.4th 367, 373; *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1259; *Syers*

6  *Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698, 700. I also have

7  lectured and written extensively on court-awarded attorneys' fees. I have been a

8  member of the California State Bar's Attorneys' Fees Task Force and have

9  testified before the State Bar Board of Governors and the California Legislature on

10  attorneys' fee issues. In addition, I authored a federal manual on attorneys' fees

11  entitled *Attorneys' Fees: A Legal Services Practice Manual*, published by the

12  Legal Services Corporation. I also co-authored the chapter on "Attorney Fees" in

13  Volume 2 of CEB's *Wrongful Employment Termination Practice*, 2d Ed. (1997).

14       3.       More than 90% of my practice is devoted to issues involving court-

15  awarded attorneys' fees. I have been counsel in over 180 attorneys' fee

16  applications in state and federal courts, primarily representing other attorneys. I

17  also have briefed and argued more than 40 appeals, at least 25 of which have

18  involved attorneys' fees issues. I have successfully handled five cases in the

19  California Supreme Court involving court-awarded attorneys' fees: (1) *Maria P. v.*

20  *Riles* (1987) 43 Cal.3d 1281, a landmark early decision on the scope of California

21  Code of Civil Procedure section 1021.5; (2) *Delaney v. Baker* (1999) 20 Cal.4th

22  23, which held that heightened remedies, including attorneys' fees, are available in

23  suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v.*

24  *Moses* (2001) 24 Cal.4th 1122, which held, *inter alia,* that contingent risk

25  multipliers remain available under California attorney fee law, despite the United

26  States Supreme Court's contrary ruling on federal law (note that in *Ketchum,* I was

27  primary appellate counsel in the Court of Appeal and "second chair" in the

28  Supreme Court); (4) *Flannery v. Prentice* (2001) 26 Cal.4th 572, which held that in

-2-

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' <u>UNOPPOSED</u> MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1   the absence of an agreement to the contrary, statutory attorneys' fees belong to the

2   attorney whose services they are based upon; and (5) *Graham v. DaimlerChrysler*

3   *Corp.* (2004) 34 Cal.4th 553, which held, *inter alia*, that the "catalyst" theory was

4   still valid under California law despite federal Supreme Court authority to the

5   contrary.  I also represented and argued on behalf of *amicus curiae* in

6   *Conservatorship of McQueen* (2014) 59 Cal.4th 602, and, along with Richard

7   Rothschild, filed an *amicus curiae* brief in *Vasquez v. State of California* (2009) 45

8   Cal.4th 243.  I also have handled numerous other appeals involving attorney's fees,

9   including: *Davis v. City & County of San Francisco* (9th Cir. 1992) 976 F.2d 1536;

10  *Mangold v. CPUC* (9th Cir. 1995) 67 F.3d 1470; *Moore v. Bank of America* (9th

11  Cir. 2007) 245 Fed.Appx. 613; *Velez v. Wynne* (9th Cir. 2007) 2007

12  U.S.App.LEXIS 2194; *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523

13  F.3d 973; *Center for Biological Diversity v. County of San Bernardino* (2010) 185

14  Cal.App.4th 866; and *Environmental Protection Information Center v. California*

15  *Dept. of Forestry & Fire Protection et al* (2010) 190 Cal.App.4th 217.  For an

16  expanded list of my representative decisions, *see* Exhibit A.

17      4.      I also have been retained by various governmental entities, including

18  the State of California, at my then current rates to consult with them regarding their

19  affirmative attorney fee claims.

20      5.      I am frequently called upon to opine about the reasonableness of

21  attorneys' fees, and numerous federal and state courts have cited my testimony on

22  that issue favorably.  The reported cases referencing my testimony include the

23  following California appellate courts: *Laffite v. Robert Half Int'l* (2014)

24  __Cal.App.4th __, 2014 Cal.App.LEXIS 1059; *In re Tobacco Cases I* (2013) 216

25  Cal.App.4th 570; *Heritage Pacific Financial LLC v. Monroy* (2013) 215

26  Cal.App.4th 972, 1009; *Children's Hospital & Medical Center v. Bonta* (2002) 97

27  Cal.App.4th 740; *Wilkinson v. South City Ford* (2010) 2010 Cal.App.Unpub.

28  LEXIS 8680; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628

- 3 -

1  (anti-SLAPP case). My declaration also has been favorably referenced by the

2  following federal courts: *Prison Legal News v. Schwarzenegger* (9th Cir. 2010)

3  608 F.3d 446, 455, in which the expert declaration referred to in that opinion is

4  mine; *Antoninetti v. Chipotle Mexican Grill, Inc.* (9th Cir. 2012) Order filed Dec.

5  26, 2012; *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D.Cal. 2013) No. M

6  07-1827 SI, MDL, No. 1827, Report and Recommendation of Special Master re

7  Motions for Attorneys' Fees etc., filed Nov. 9, 2012, adopted in relevant part, 2013

8  U.S.Dist.LEXIS 49885; *Rosenfeld v. United States Dept. of Justice* (N.D. Cal.

9  2012) 904 F.Supp.2d 988; *Stonebrae v. Toll Bros.* (N.D. Cal. 2011) 2011

10  U.S.Dist.LEXIS 39832, at *9 (thorough discussion), *aff'd* (9th Cir. 2013) 2013

11  U.S.App.LEXIS 6369; *Hajro v. United States Citizenship & Immigration Service*

12  (N.D.Cal 2012) 900 F.Supp.2d 1034, 1054; *Armstrong v. Brown* (N.D. Cal. 2011)

13  2011 U.S.Dist.LEXIS 87428; *Californians for Disability Rights, Inc. v. California*

14  *Dept. of Transportation* (N.D. Cal. 2010) 2010 U.S.Dist.LEXIS 141030; *Prison*

15  *Legal News v. Schwarzenegger* (N.D. Cal. 2008) 561 F.Supp.2d 1095 (an earlier

16  motion); *Oberfelder v. City of Petaluma* (N.D. Cal. 2002) 2002 U.S.Dist.LEXIS

17  8635, *aff'd* (9th Cir. 2003) 2003 U.S.App.LEXIS 11371; *Bancroft v. Trizechahn*

18  *Corp.*, C.D. Cal. No. CV 02-2373 SVW (FMOx), Order Granting Reasonable

19  Attorneys' Fees etc., filed Aug. 14, 2006; *Willoughby v. DT Credit Corp.*, C.D.

20  Cal. No. CV 05-05907 MMM (Cwx), Order Awarding Reasonable Attorneys' Fees

21  After Remand, filed July 17, 2006; *A.D. v. California Highway Patrol* (N.D.Cal.

22  2009) 2009 U.S.Dist.LEXIS 110743, *rev's'd on other grounds* (9th Cir. 2013) 712

23  F.3d 446, *reaffirmed and additional fees awarded on remand* at 2013

24  U.S.Dist.LEXIS 169275; *National Federation of the Blind v. Target Corp.*

25  (N.D.Cal. 2009) 2009 U.S.Dist.LEXIS 67139.  In addition, numerous trial courts

26  have relied upon my testimony in unpublished fee orders.

27    6.    I also have extensive experience litigating the merits of class actions,

28  including numerous housing, government benefits, and consumer class actions.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' **UNOPPOSED** MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1  See, e.g., *Employment Dev. Dept. v. Superior Court (Boren)* (1981) 30 Cal.3d 256.

2  I also have represented Class Counsel on their fee requests in numerous highly-

3  contested class actions, including *Davis v. City & County of San Francisco, supra,*

4  *Duran v. First National Bank,* Alameda County Superior Court No. 2001-035537,

5  and *Molina, et al. v. Lexmark International, et al.,* Los Angeles County Superior

6  Court No. BC339177.

7      7.    In this matter, I have reviewed several documents from the underlying

8  litigation and fee motion, including the entire Motion for Preliminary Approval, as

9  well as the declarations of Plaintiffs' principal counsel filed in support of the

10  instant motion. I also have discussed the case with class counsel Julie Corbo-

11  Ridley.

12      **PLAINTIFFS'   ATTORNEYS'   HOURLY   RATES   ARE**

13  **REASONABLE**

14      8.    Through my writing and practice, I have become knowledgeable

15  about the non-contingent market rates charged by attorneys in California and

16  elsewhere. I have obtained this knowledge in several ways: (1) by handling

17  attorneys' fee litigation; (2) by preparing expert declarations in numerous cases;

18  (3) by discussing fees with other attorneys; (4) by obtaining declarations regarding

19  prevailing market rates in cases in which I represent attorneys seeking fees; and (5)

20  by reviewing attorneys' fee applications and awards in other cases, as well as

21  surveys and articles on attorneys' fees in the legal newspapers and treatises.

22      9.    I am aware of the hourly rates being requested by Plaintiffs' attorneys

23  in this case, their experience and qualifications, the nature of the work performed,

24  and the results achieved. Under California law, Plaintiff's attorneys are entitled to

25  their requested rates if those rates are "within the range of reasonable rates charged

26  by and judicially awarded comparable attorneys for comparable work." *Children's*

27  *Hosp. & Med. Ctr. v. Bonta [CHMC]* (2002) 97 Cal.App.4th 740, 783. In my

28  opinion, the information about non-contingent hourly rates I have gathered, some

- 5 -

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1  of which is summarized below, shows that the rates requested by Plaintiffs'

2  counsel in this matter are well within the range of the non-contingent market rates

3  charged by California and San Diego attorneys of reasonably comparable

4  experience, skill, and expertise for reasonably comparable services. I base that

5  opinion in large part on the following data:

6  **Court Awards**

7      10.    Several of the Plaintiffs' law firms have had the hourly rates requested

8  here, or their equivalent rates in prior years, approved by the courts in other class

9  actions. For example, Hurst & Hurst's rates were found reasonable in *Serochi v.*

10  *Bosa Development California II, Inc., et al.*, San Diego Superior Court Case No.:

11  37-2009-00096686-CU-BT-CTL.  Similarly, Ms. Lorens's 2012 rate of $795/hour

12  was approved in November 2012 in *Hoch v. Rockin' Baja Coastal Cantina, et al.*,

13  San Diego Superior Court Case No. 37-2012-00095176-CU-OE-CTL/*Mojica v.*

14  *Rockin' Baja Coastal Cantina, et al.*, San Diego Superior Court Case No. 37-2012-

15  00091490-CU-OE-CTL.  This is highly probative evidence of the reasonableness

16  of their rates in subsequent reasonably similar cases.

17      11.    Counsel's rates are also consistent with the following court awards

18  from the Southern District of California[1]:

19      (1)  In *Hartless v. Clorox*, 273 F.R.D. 630, 644 (S.D. Cal. 2011), the

20  Court found, *inter alia*, that class counsel's requested rates were consistent with

21  the hourly rates found reasonable in numerous other class actions and with rates

22  charged by other firms in the San Diego area, including rates of $795 per hour for a

23  25-year attorney and $675 per hour for an experienced partner. 273 F.R.D. at 644.

24

---

25  [1] In my experience, for purposes of the hourly rates charged and found reasonable by the courts,

26  the differences between types of class actions (i.e. wage and hour class actions versus consumer

class actions) are not significant, either factually or legally. See, e.g., *Heritage Pacific Financial,*

27  *LLC v. Monroy*, 215 Cal.App.4th 972, 1009 (2013); *Camacho v. Bridgeport Financial, Inc.*, 523

28  F.3d 973, 979 (9th Cir. 2008).

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' <u>UNOPPOSED</u> MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1   Given the rate increases that have occurred over the ensuing three years, counsel's
2   rates here are certainly within the same range.

3        (2)   In *Shames v. Hertz Corp.*, 2012-2 Trade Case. (CCH) ¶78,120 (S.D.
4   Cal. 2012), the Court, relying on *Hartless,* found that plaintiffs' San Diego
5   Counsel there were comparable in skill and experience to the attorneys whose rates
6   were found reasonable in *Hartless.* At \*59-61.

7        (3)   In *Briarwood Capital LLC v. HCC Investors LLC,* San Diego
8   Superior Court No. GIC877446, on March 30, 2011, the court (Judge William R.
9   Nevitt Jr.) found that the 2009 hourly rates charged by the San Diego office of
10   Bernstein Litowitz Berger & Grossman LLP -- $725 for partners, $490-550 for
11   associates -- were reasonable.

12        (4)   Similarly, in the same case, the court found that the 2009 rates
13   charged by the Century City office of O'Melveny & Myers LLP, including rates of
14   $860-950 for a 36-37 year attorney and $700-710 for 16-18 year attorneys also
15   were reasonable for San Diego litigation. Again, given the rate increases that have
16   occurred over the past three years, Plaintiffs' attorneys' current rates here are in the
17   same range as those found reasonable in *Briarwood Capital.*

18        (5)   In *Atlas v. Accredited Home Lenders Holdings, Co.* Case No. 07-
19   CV-488-H-CAB (S.D. Cal. 2009), the court (Judge Marilyn Huff) found the 2009
20   rates charged by Bernstein Litowitz's San Diego office reasonable. Again, those
21   rates ranged from $490 to $550 for associates, and $725 for a partner.

22        (6)   In *In re Virgil's Tours,* Case No. 08-30659 (Bank. N.D. Cal. 2008),
23   the court found reasonable the 2008 rates requested by Morrison & Foerster LLP's
24   San Diego office. Those rates ranged from $600 to $675 for partners, from $350 to
25   $485 for associates, and from $220 to $245 for paralegals.

26        (7)   In *Qualcomm, Inc. v. Broadcom, Inc.* Case No. 05-CV-1958-B,
27   2008 WL 2705161 (S.D. Cal. 2008), the court found the 2007 hourly rates
28   requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable for San

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

1   Diego-based litigation. Those rates ranged from $45 to $300 for staff and

2   Paralegals, from $275 to $505 for associates and counsel, and from $435 to $850

3   for partners.

4       12.      In addition to local courts, the following hourly rates have been

5   found reasonable by various California courts for reasonably similar services:

6   **2014**

7       (1)     *IPVX Patent Holdings, Inc. v. Voxernet LLC,* N.D. Cal. No.

8   5:13-CV-01708-HRL, a patent infringement case, in which the court found the

9   following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| **2014** | |
| 45 | $750 |
| 35 | 750 |
| 23 | 725 |
| 19 | 695 |
| 5 | 400 |
| 3 | 350 |
| Paralegal | 125 |
| **2013** | |
| 18 | $755 |
| 11 | 595 |
| 2 | 425 |
| **2012** | |
| 40 | $865 |
| 17 | 755 |
| 10 | 595 |
| 1 | 375 |

23       (2)     *Doe v. United Healthcare Insurance Co., et al.,* C.D. Cal. No.

24   SACV 13-0864 DOC(JPRx), Order Granting Attorney's Fees and Costs, filed

25   October 15, 2014, a multi-Plaintiff consumer action, in which the court found the

26   following hourly rates reasonable:

| **Whatley Kallas** | |
|---|---|
| Years of Experience | Rate |
| 36 | $950 |

- 8 -

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' <u>UNOPPOSED</u> MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

**Whatley Kallas**

| Years of Experience | Rate |
|---|---|
| 27 | 900 |
| 32 | 800 |
| 33 | 750 |
| 21 | 700 |
| 10 | 600 |
| 4 | 400 |
| 2 | 375 |
| Paralegal | 225 |
| Intern | 125 |

**Consumer Watchdog**

| | |
|---|---|
| 35 | $925 |
| 19 | 650 |
| 4 | 425 |

(3)   *Rose v. Bank of America Corp.*, N.D. Cal. No. 5:11-CV-02390-EJD; 5:12 CV-04009-EJD, Order Granting Motion for Final Approval of Settlement; Granting in Part and Denying in Part Motion for Attorney's Fees and Costs, filed August 29, 2014, a consumer class action involving the Bank's loan servicing calls, in which the court found the following hourly rates reasonable:

Partners:  $775-350

Associates: $525-325

(4)   *Carpio v. California Department of Social Services, Los Angeles County Superior Court*, No. BS 135127, Order Granting Petitioner's Motion For Attorney's Fees, filed July 24, 2014, a government benefits writ of mandate, in which the court found the following hourly rates reasonable:

| Years | Rate |
|---|---|
| 39 | $750 |
| 35 | 730 |
| 13 | 500 |
| 8 | 460 |
| 6 | 440 |

(5)   *Cornell v. City & County of San Francisco*, San Francisco County

- 9 -

1    Superior Court No. CGC-11-509240, Order Granting Motion for Reasonable

2    Attorneys' Fees, Subject to Modifications, filed May 15, 2014, an individual police

3    misconduct/employment action, in which the court found the following hourly

4    rates reasonable, plus a 1.25 lodestar multiplier for merits work:

| Years of Experience | Rate |
|---|---|
| 45 | $750 |
| 35 | 750 |
| 23 | 725 |
| 19 | 695 |
| 5 | 400 |
| 3 | 350 |
| Paralegal | 125 |

### 2013 Rates

12    (1)   *Ellis v. Costco Wholesale Corp.,* N.D. Cal. No. C04-3341 EMC,

13    Order Granting Motion for Final Approval of Class Action Settlement, filed May

14    27, 2014, an employment class action, in which the court found the following

15    hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 38 | $700 |
| 35 | 825 |
| 30 | 650-825 |
| 29 | 875 |
| 19 | 725 |
| 9 | 500 |
| 8 | 460 |
| 7 | 425-575 |
| 6 | 435 |
| 3 | 315 |
| Paralegals | 155-295 |
| Law Clerks | 185-275 |

25    (2)   *In re Pacific Bell Late Fee Litigation,* Contra Costa County Superior

26    Ct. No. MSC10-00840, Order Awarding Attorneys' Fees, Costs and Expenses and

27    Authorizing Payment of Incentive Award to the Class Representative, filed

28    October 18, 2013, a consumer class action, in which the court found the following

- 10 -

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 17 | $850 |
| 16 | 680 |
| 11 (partner) | 680 |
| 36 | 675 |
| 32 | 675 |
| 28 (assoc.) | 620 |
| 4 | 400 |
| 3 | 390 |
| Paralegals and Litigation Support | 160-180 |

(3)   *Reuters America LLC v. The Regents of the Univ. of Calif.*, Alameda County Superior Court No. RG12-613664, Order Granting in Part Motion of Petitioner for Attorneys' Fees filed May 2, 2013, reversed on the merits sub nom *Regents of U.C. v. Superior Court* (2014) 222 Cal.App.4th 383, a California Public Records Act action, in which the trial court found the following hourly rates reasonable, before applying a 1.3 lodestar multiplier:

| Years of Experience | Rate |
|---|---|
| 31 | $785 |
| 27 | 600 |
| 6 | 400 |

(4)   *Recouvreur v. Carreon* (N.D. Cal. 2013) 940 F.Supp.2d 1063, a Lanham Act/ sanctions fee motion, in which the court found the following hourly rate reasonable:

| Years of Experience | Rate |
|---|---|
| 20+ | $700 |

## 2012 Rates

(1)   *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D.Cal. 2013) No. M 07 1827 SI, MDL, No. 1827, an antitrust class action, in which the court found the following hourly rates reasonable:

- 11 -

**Zelle Hofman**

| Bar Admission | Rate |
|---|---|
| 1967 | $1000 |
| 1978 | 861 |
| 2001 | 619 |
| 2002 | 525 |
| 2005 | 500 |
| 2006 | 472 |
| 2009 | 417 |

**Stever, Lowenthal** *et al.*

| Bar Admission | Rate 2012 | Rate 2011 | Rate 2010 |
|---|---|---|---|
| 1981 | $820 | $770 | $730 |
| 1995 | 660 | 640 | 590 |
| 2007 | 380 | 360 | 320 |
| 2008 | 380 | 360 | 320 |
| 1982 | 750 | 710 | 680 |
| Paralegal | 190 | | |

**Cooper & Kirkham**

| Bar Admission | Rates 2010-2012 |
|---|---|
| 1964 | $950 |
| 1975 | 825 |
| 2001 | 550 |

(2)    *Rosenfeld v. United States Dept. of Justice* (N.D. Cal. 2012) 904 F.Supp.2d 988, a Freedom of Information Act action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 28 | $700 |
| 21 | 550 |
| 1 | 200 |
| Law students | 160-180 |

(3)    *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the following hourly

rates reasonable:

| Year of Bar Admission | Rate |
|---|---|
| 1970 | $785 |
| 1976 | 775 |
| 1981 | 750 |
| 1993 | 650-700 |
| 1994-1997 | 500-650 |
| 2004 | 500 |
| 2005 | 470 |
| 2006 | 445-475 |
| 2007 | 450 |
| 2008 | 400 |
| 2009 | 350 |

(4)     *American Civil Liberties Union v. Drug Enforcement Administration,* N.D. Cal. No. C-11-01977 RS, Order Granting Motion for Attorneys' Fees and Litigation Costs Pursuant to 5 U.S.C. §552, filed November 8, 2012, a Freedom of Information Act case, in which the court found the following hourly rates reasonable:

| Year of Bar Admission | Rate |
|---|---|
| 1970 | $700 |
| 1996 | 595 |
| 1999 | 575 |
| Law Clerks | 150 |

(5)     *Luquetta v. The Regents of the Univ. of California,* San Francisco Superior Ct. No.CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the following hourly rates reasonable:

| Year of Bar Admission | Rate |
|---|---|
| 1977 | $850 |
| 1986 | 785 |
| 1991 | 750 |
| 1994 | 700 |
| 1998 | 625 |

- 13 -

| | |
|---|---|
| 2000 | 570 |
| 2001 | 550 |
| 2002 | 520 |
| Law Clerks | 250 |
| Paralegals | 215 |

(6)    *Davis v. Prison Health Services* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 138556, an individual Fair Employment and Housing Act case, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 33 | $750 |
| 29 | 675 |
| 4 | 300 |
| 6 | 265 |

## 2011 Rates

(1)    *Pierce v. County of* Orange (C.D. Cal. 2012) 905 F.Supp.2d 1017, a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar, including appellate fees, based on the following 2011 rates:

| Years of Experience | Rate |
|---|---|
| 42 | $850 |
| 32 | 825 |
| 23 | 625 |
| 18 | 625 |
| Law Clerks | 250 |
| Paralegals | 250 |

(2)    *Davis v. Prison Health Services* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 138556, an individual Fair Employment and Housing Act case, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 33 | $750 |
| 29 | 675 |
| 4 | 300 |
| 6 | 265 |

(3)    *Holloway et. al. v. Best Buy Co., Inc.* (N.D. Cal. 2011) No. 05-5056

- 14 -

1  PJH, Order dated November 9, 2011, a class action alleging that Best Buy

2  discriminated against female, African American and Latino employees by denying

3  them promotions and lucrative sales positions, in which the court approved a

4  lodestar award based on the following rates:

5

| Years of Experience | Rate |
|---|---|
| 37 | $825 |
| Associates | |
| 8 | 490 |
| 6 | 405 |
| Law Clerks | 225 |
| Paralegals | 215 |

10  (3)  *Molina, et al. v. Lexmark International, et al.,* Los Angeles County

11  Superior Court No. BC339177, Order Granting Petitioners' Motion for Attorneys'

12  Fees and Costs in the Amount of $5,722,008.07, filed October 28, 2011, *aff'd*

13  (2013) 2013 Cal.App.Unpub. LEXIS 6684, a class action to recover forfeited

14  vacation pay, in which the court found the following hourly rates reasonable

15  (before applying a 2.0 multiplier):

| Years of Experience | Rate |
|---|---|
| 42 | $675 |
| 25 | 550 |
| 24 | 655-675 |
| 23 | 625 |
| 20 | 550 |
| 17 | 600 |
| 9 | 475 |
| 6 | 350 |
| Paralegals | 210 |
| Paralegals | 210 |

### 2010 Rates

(1)  *Californians for Disability Rights, Inc., et al. v. California*

*Department of Transportation, et al.* (N.D.Cal. 2010) 2010 U.S.Dist.LEXIS

141030, adopted by Order Accepting Report and Recommendation filed February

2, 2011, a disability-access class action, in which the court found the following

1  2010 hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 49 | $835 |
| 34 | 730 |
| 26 | 740 |
| 25 | 730 |
| 19 | 660 |
| 10 | 570 |
| 9 | 560 |
| 7 | 535 |
| 6 | 500 |
| 5 | 475 |
| 3 | 350 |
| 2 | 290 |
| 1 | 225-265 |
| Senior Paralegals | 265 |
| Law Clerks | 175 |
| Case Clerks | 165 |

**Rate Information from Surveys**

12.   I also base my opinion on several credible surveys of legal rates, including the following:

• The 2014 *Laffey Matrix* is a survey of District of Columbia hourly rates that is often relied upon in other jurisdictions, with appropriate adjustments for differences in income levels, to determine reasonable hourly rates.   See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 695.   A copy of that survey is attached hereto as Exhibit B.   It shows that for attorneys with 20+ years out of law school, the prevailing market in the period between June 1, 2013, and May 31, 2014 was $771 per hour. For lawyers with 11-19 years out of law school, the prevailing rate for the same period was $640 per hour. The difference in the Local Pay Tables for the Washington D.C. area and the San Diego-Carlsbad-San Marcos areas are de minimis -- .03%.

- On January 13, 2014, the National Law Journal published an article about its most recent rate survey. That article included a chart listing the billing rates of the 50 firms that charge the highest average hourly rates for partners. A true and correct copy of that article is attached hereto as Exhibit C. Of the 50 firms listed, several have offices in the San Diego area and many others have significant litigation experience in this area. And, although the rates that Plaintiffs' counsel are requesting here are significantly *lower* than many of the rates charged by the top 50 firms, the NLJ chart does show the *range* of rates charged for similar services, which *is* the applicable standard. *See CHMC,* 97 Cal.App.4th at 783.

- In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. A true and correct copy of that article is attached hereto as Exhibit D. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an *average* rate between $879 and $882 per hour.

- In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. A true and correct copy of that article is attached hereto as Exhibit E. That article confirms that the rates charged by experienced and well-qualified attorneys have continued to rise over the five-year period between 2006 and 2011, particularly in large urban areas. It also shows, for example, that the top quartile of lawyers bill at an *average* of "just under $900 per hour."

- 17 -

Rates Charged by Other Law Firms

14.     The standard hourly non-contingent rates for comparable civil litigation stated in court filings, depositions, surveys, or other reliable sources by numerous California law firms or law firms with offices or practices in California also support counsel's rates. The following hourly rates are those charged where full payment is expected promptly upon the rendition of the billing and without consideration of factors other than hours and rates.  If any substantial part of the payment were to be contingent or deferred for any substantial period, for example, the fee arrangement would be adjusted accordingly to compensate the attorneys for those factors. These rates include, in alphabetical order:[2]

*Altshuler Berzon LLP***

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 38 | $895 |
| **2012 Rates:** | Years of Experience | Rate |
| | 34 | $850 |
| | 26 | 785 |
| | 21 | 750 |
| | 18 | 700 |
| | 14 | 625 |
| | 12 | 570 |
| | 11 | 550 |
| | 10 | 520 |
| | 6 | 410 |
| | 5 | 385 |
| | 4 | 335 |
| | Law Clerks | 250 |
| | Paralegals | 215 |
| **2011 Rates:** | Years of Experience | Rate |
| | 43 | $825 |
| | 17 | 675 |
| | 12 | 575 |
| | 10 | 520 |
| | Law Clerks | 225 |

---

[2] Firms based in San Diego are marked with an *. Firms with substantial class action practices, which tend to be statewide, are marked "**".

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

*Altshuler Berzon LLP\*\**

|  | Paralegals | 215 |
|---|---|---|

*Arnold Porter LLP*

| 2013 Rates: | Average Partner | $815 |
|---|---|---|
|  | Highest Partner | 950 |
|  | Lowest Partner | 670 |
|  | Average Associate | 500 |
|  | Highest Associate | 610 |
|  | Lowest Associate | 345 |

*The Arns Law Firm LLP \*\**

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
|  | 37 | $950 |
|  | Law Clerks | 165 |

*Bernstein Litowitz Borger & Grossman LLP (San Diego Office)\*, \*\**

| 2009 Rates: | Years of Experience | Rate |
|---|---|---|
|  | Partners | $725 |
|  | Associates | 490-550 |

*Bingham McCutchen*

| 2013 Rates: | Average Partner | $795 |
|---|---|---|
|  | Highest Partner | 1,080 |
|  | Lowest Partner | 670 |
|  | Average Associate | 450 |
|  | Highest Associate | 605 |
|  | Lowest Associate | 185 |
| 2011 Rates: | Years of Experience | Rate |
|  | 30 | $780 |
| 2010 Rates: | Years of Experience | Rate |
|  | 13 | $655 |
|  | 4 | 480 |
|  | 2 | 400 |

*Blood Hurst & O'Reardon\*, \*\**

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
|  | 22 | $655 |
|  | 17 | 585 |

- 19 -

*Blood Hurst & O'Reardon\*, \*\**

|  |  |
|---|---|
| 6 | 510 |
| 5 | 410 |
| 1 | 305 |
| Paralegals | 260 |

*Burson & Fisher\*\**

| 2013 Rates: | Years of Experience | Rate |
|---|---|---|
| | 16 | $680-850 |
| | 11 | 680 |
| | 4 | 400 |
| | 3 | 390 |
| | 2 | 375 |
| | 1 | 300 |
| | Law Clerks | 225 |
| | Litigation Support Specialists | 180 |

*Chavez & Gertler\**

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 33 | $750 |
| | 29 | 725 |
| | 32 | 675 |
| | 21 | 575 |
| | 11 | 535 |
| | 7 | 475 |
| | Legal Assistant | 185 |
| **2011 Rates:** | Years of Experience | Rate |
| | 32 | $725 |
| | 28 | 700 |
| | 10 | 550 |
| | 9 | 510 |
| | 5 | 425 |
| | Paralegals | 225 |

*Coblentz Patch & Duffy*

| 2013 Rates: | Year of Bar Admission | Rate |
|---|---|---|
| | 1979 | $720 |
| | 1994 | 575 |
| | 2008 | 320 |
| | Paralegals/Case Clerks | 295 |

- 20 -

### Cohelan Khoury & Singer

**2012 Rates:**

| Years of Experience | Rate |
|---|---|
| 38 | $750 |
| 28 | 750 |
| 11 | 400 |
| Paralegal | 170 |

### Cooper & Kirkham

**2012 Rates:**

| Years of Experience | Rate |
|---|---|
| 48 | $950 |
| 37 | 825 |
| 11 | 600 |

### Covington Burling

**2013 Rates:**

| Years of Experience | Rate |
|---|---|
| 28 | $750 |
| 16 | 670 |
| 14 | 670 |
| 7 | 510 |
| 2 | 375 |
| 5 | 490 |
| Litigation Support | 110-355 |

**2012 Rates:**

| Years of Experience | Rate |
|---|---|
| 27 | $730 |
| 15 | 632-650 |
| 13 | 650 |

**2011 Rates:**

| Years of Experience | Rate |
|---|---|
| 26 | $710 |
| 14 | 640 |
| 12 | 600 |
| 9 | 565 |
| 7 | 550 |
| 5 | 425 |
| 3 | 390 |
| 1 | 320 |

**2010 Rates:**

| Years of Experience | Rate |
|---|---|
| 25 | $710 |
| 13 | 640 |
| 11 | 575-600 |
| 8 | 550-565 |

- 21 -

*Covington Burling*

|  | 6 | 525-550 |
|  | 4 | 390-425 |
|  | 2 | 350-390 |

*Farella Braun & Martell LLP*

| **2010 Rates:** | Years of Experience | Rate |
|  | 31 | $715 |

*Fenwick & West*

| **2014 Rates** | Years of Experience | Rate |
|  | 45 | $750 |
|  | 35 | 750 |
|  | 23 | 725 |
|  | 19 | 695 |
|  | 5 | 400 |
|  | 3 | 350 |
|  | Paralegal | 125 |
| **2013 Rates** | 18 | $755 |
|  | 11 | 595 |
|  | 2 | 425 |
| **2012 Rates** | 40 | $865 |
|  | 17 | 755 |
|  | 10 | 595 |
|  | 1 | 375 |

*Furth Firm LLP\*\**

| **2010 Rates:** | Years of Experience | Rate |
|  | 51 | $875 |
|  | 39 | 750 |
|  | 38 | 600 |
|  | 33 | 775 |
|  | 25 | 550 |
|  | 23 | 650 |
|  | 21 | 625 |
|  | 19 | 610 |
|  | 18 | 600 |
|  | 17 | 585 |
|  | 16 | 570 |
|  | 15 | 560 |

- 22 -

*Furth Firm LLP***

| | | |
|---|---|---|
| | 14 | 550 |
| | 13 | 525 |
| | 12 | 515 |
| | 11 | 510 |
| | 10 | 505 |
| | 9 | 500 |
| | 7 | 460 |
| | 4 | 435 |
| | Law Clerks | 125-260 |

*Gibson Dunn & Crutcher LLP*

**2013 Rates:**

| | |
|---|---|
| Average Partner | $980 |
| Highest Partner | 1,800 |
| Lowest Partner | 765 |
| Average Associate | 590 |
| Highest Associate | 930 |
| Lowest Associate | 175 |

*Goldstein, Borgen, Dardarian & Ho***

| **2014 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 33 | $795 |
| | 27 | 750 |
| | 8 | 500 |
| | 4 | 395 |
| | 3 | 350 |
| | 1 | 300 |
| | Law Clerks/Paralegals | 160-250 |
| **2012 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 42 | $785 |
| | 36 | 750 |
| | 31 | 700 |
| | 18 | 650 |
| | Associates | |
| | 7 | 470 |
| | 6 | 445 |
| **2011 Rates:** | Years of Experience | Rate |
| | Partners | |
| | 41 | $725 |
| | 35 | 725 |

- 23 -

*Goldstein, Borgen, Dardarian & Ho\*\**

|  |  |  |
|---|---|---|
|  | 30 | 700 |
|  | 24 | 650 |
|  | 18 | 600 |
|  | 17 | 600 |
|  | 16 | 550 |

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | Partners |  |
|  | 40 | $700 |
|  | 34 | 700 |
|  | 29 | 675 |
|  | 23 | 625 |
|  | 17 | 575 |
|  | 16 | 575 |
|  | Of Counsel |  |
|  | 40 | 725 |
|  | Associates |  |
|  | 15 | $500 |
|  | 11 | 440 |
|  | 6 | 375 |
|  | 5 | 365 |
|  | 4 | 355 |
|  | 3 | 340 |
|  | 2 | 325 |
|  | 1 | 305 |
|  | Law Clerks | 195 |
|  | Paralegals | 150-225 |

*Greenberg, Traurig, LLP*

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 22 | $850 |

*Greines, Martin, Stein & Richland*

| **2012 Rates:** | Years of Experience | Rate |
|---|---|---|
|  | 41 | $850 |
|  | 29 | 850 |
|  | 23 | 650 |
|  | 18 | 500 |
|  | Law Clerks | 100 |

- 24 -

*Hadsell, Stormer, Keeny, Richardson & Renick\*\**

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 38 | $825 |
| | 33 | 775 |
| | 22-23 | 625 |
| | 17 | 600 |
| | 12 | 525 |
| | 10 | 425 |
| | 4 | 275 |
| | 3 | 250 |

| 2010 Rates: | Years of Experience | Rate |
|---|---|---|
| | 36 | $800 |
| | 31 | 750 |
| | 20-21 | 600 |
| | 15 | 575 |
| | 10 | 475-500 |
| | 8 | 425 |
| | 4 | 325 |
| | 2 | 275 |
| | 1 | 250 |

*Hausfeld LLP\*\**

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
| | 45 | $985 |
| | 37 | 935-895 |
| | 15 | 610-510 |
| | 14 | 600 |
| | 7 | 490 |
| | 3 | 370 |
| | Paralegals | 300-320 |
| | Law Clerks | 325 |

*Irell & Manella*

| 2013 Rates: | | |
|---|---|---|
| | Average Partner | $890 |
| | Highest Partner | 975 |
| | Lowest Partner | 800 |
| | Average Associate | 535 |
| | Highest Associate | 750 |
| | Lowest Associate | 395 |

- 25 -

*Janssen Malloy LLP*

**2014 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 33 | $775 |
| | Paralegals | 175 |

*Jones Day*

**2013 Rates:**

| | | |
|---|---|---|
| | Average Partner | $745 |
| | Highest Partner | 975 |
| | Lowest Partner | 670 |
| | Average Associate | 435 |
| | Highest Associate | 775 |
| | Lowest Associate | 205 |

*Kaye, McLane, Bednarski & Litt* \*\*

**2013 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 44 | $925 |
| | 27 | 725 |
| | 24 | 725 |
| | 7 | 525 |
| | 5 | 475 |

*Keker & Van Nest, LLP*

**2010 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 32 | $775 |
| | Other Partners | 525-975 |
| | Associates | 340-500 |
| | Paralegals/Support Staff | 120-260 |

*Kemnitzer, Barron & Krieg*

**2014 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | 38 | $750 |
| | 32 | 750 |
| | 8 | 475 |
| | 3 | 350 |
| | Senior Paralegal | 250 |

*Kiesel, Boucher, Larson LLP* \*, \*\*

**2012 Rates:**

| | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 27-28 | $890 |

- 26 -

*Kiesel, Boucher, Larson LLP \*, \*\**
          Associates               625-325

*Kingsley & Kingsley\*\**

| 2010 Rates: | Years of Experience | Rate |
|---|---|---|
| | 14 | $655 |
| | 8 | 475-515 |
| | 7 | 475 |
| | 6 | 485 |
| | 5 | 375 |
| | 3 | 350 |
| | 2 | 300 |

*Kirkland & Ellis*

| 2013 Rates: | | |
|---|---|---|
| | Average Partner | $825 |
| | Highest Partner | 995 |
| | Lowest Partner | 670 |
| | Average Associate | 540 |
| | Highest Associate | 715 |
| | Lowest Associate | 235 |

*Knapp, Petersen & Clarke*

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 36 | $753 |
| | 9 | 554 |
| | 6 | 383 |

*Knobbe Martin Olson & Bear LLP*

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | Partners | $395-710 |
| | Associates | 285-450 |

*Latham & Watkins*

| 2013 Rates: | | |
|---|---|---|
| | Average Partner | $990 |
| | Highest Partner | 1,100 |
| | Lowest Partner | 670 |
| | Average Partner | 895 |
| | Average Associate | 605 |
| | Highest Associate | 725 |
| | Lowest Associate | 465 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

*Lewis Feinberg Lee, Renaker & Jackson, P.C.* \*\*

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 38 | $825 |
| | 29 | 750 |
| | 24 | 725 |
| | 21 | 700 |
| | 8 | 450 |
| | 7 | 425 |
| | 3 | 375 |
| | Senior Paralegals | 250 |
| | Law Clerks | 225 |

*Litt, Estuar, & Kitson, LLP* \*\*

| 2011 Rates: | Years of Experience | Rate |
|---|---|---|
| | 42 | $825 |
| | 18 | 625 |
| | 17 | 625 |
| | 5 | 425 |
| | 3 | 375 |
| | Senior Paralegals | 125-235 |
| | Law Clerks | 225 |

*Manatt, Phelps & Phillips*

| 2013 Rates: | Average Partner | $740 |
|---|---|---|
| | Highest Partner | 795 |
| | Lowest Partner | 670 |
| | Lowest Partner | 640 |
| 2010 Rates: | Partners | 525-850 |
| | Associates | 200-525 |

*McKenna Long & Aldridge LLP*

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
| | 30 | $775 |
| | 9 | 650 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' <u>UNOPPOSED</u> MO. FOR FINAL APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

*McKenna Long & Aldridge LLP*

| | | |
|---|---|---|
| | 5 | 420 |
| | Litigation Support Mgr. | 350 |
| | Paralegals | 225 |

*Minami Tamaki LLP*

| **2012 Rates:** | Years of Experience | Rate |
|---|---|---|
| | 36 | $750 |
| | 15 | 525 |
| | 5 | 395 |
| | Paralegals | 175 |

*Morrison Foerster LLP*

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | 1,195 |
| | Lowest Partner | 670 |
| | Lowest Partner | 595 |
| | Average Associate | 525 |
| | Highest Associate | 725 |
| | Lowest Associate | 230 |
| **2011 Rates:** | Years of Experience | Rate |
| | 22 | $775 |
| | 11 | 625 |
| | 10 | 620 |
| | 1 | 335 |
| **2009 Rates:** | Years of Experience | Rate |
| | 24 | $750 |

*O'Melveny & Myers*

| **2013 Rates:** | Years of Experience | Rate |
|---|---|---|
| | Average Partner | $715 |
| | Highest Partner | 950 |
| | Lowest Partner | 615 |
| **2012 Rates:** | Years of Experience | Rate |
| | 12 | $695 |
| | 4 | 495 |

*Patton Boggs*

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|

- 29 -

*Patton Boggs*

| Partners | |
|---|---|
| 14 | $830 |
| 29 | 750 |
| 20 | 750 |
| 33 | 700 |
| 27 | 700 |
| 13 | 575 |
| 24 | 550 |
| 14 | 530 |
| Of Counsel | |
| 30 | 600 |
| 15 | 500 |
| Associates | |
| 9 | 450 |
| 7 | 425 |
| 3 | 340 |
| 2 | 315 |
| Senior Paralegals | 200-265 |
| Paralegals | 170 |

*Pillsbury Winthrop Shaw Pittman LLP*

| 2013 Rates: | Years of Experience | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | 1,070 |
| | Lowest Partner | 670 |
| | Average Associate | 520 |
| | Highest Associate | 860 |
| | Lowest Associate | 375 |
| 2010 Rates: | Years of Experience | Rate |
| | Partners | |
| | 30 | $705-775 |
| | Other Partners | 595-965 |
| | Associates | 320-650 |
| | Paralegals/Support Staff | 85-380 |

*Quinn Emanuel Urquhart &Sullivan*

| 2013 Rates: | Average Partner | $915 |
|---|---|---|
| | Highest Partner | 1,075 |
| | Lowest Partner | 810 |
| | Average Associate | 410 |

- 30 -

*Quinn Emanuel Urquhart &Sullivan*

| | |
|---|---|
| Highest Associate | 675 |
| Lowest Associate | 320 |

*Reed Smith LLP*
**2013 Rates:**

| Years of Experience | Rate |
|---|---|
| Partner | |
| 36 | $830 |
| 30 | 805 |
| 17 | 610-615 |
| 14 | 570 |
| Associates | |
| 8 | 450-535 |
| 6 | 495 |

*Robbins Geller Rudman & Dowd LLP \*, \*\**
**2012 Rates:**

| Years of Experience | Rate |
|---|---|
| Partners | |
| 26 | $695 |
| 19 | 575 |
| Associates | 535-345 |
| Paralegals | 295 |

*Rosen, Bien, Galvan & Grunfeld LLP*
**2013 Rates:**

| Years of Experience | Rate |
|---|---|
| Partners | |
| 51 | $875 |
| 33 | 780 |
| 29 | 660 |
| 16 | 630 |
| Of Counsel | |
| 30 | 580 |
| Associates | |
| 20 | 550 |
| 10 | 480 |
| 9 | 465 |
| 8 | 445-450 |
| 7 | 440 |
| 6 | 435 |
| 5 | 405 |
| 4 | 375 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

| | | |
|---|---|---|
| *Rosen, Bien, Galvan & Grunfeld LLP* | | |
| | 3 | 355 |
| | Paralegals | 220-280 |
| | Litigation Support/ | 170 |
| | Paralegal clerk | |
| | Law Clerk/Students | 250 |
| | Word Processing | 80 |
| **2012 Rates:** | <u>Years of Experience</u> | <u>Rate</u> |
| | Partners | |
| | 50 | $860 |
| | 32 | 760 |
| | 28 | 640 |
| | 15 | 610 |
| | Of Counsel | |
| | 29 | 570 |
| | Associates | |
| | 19 | 540 |
| | 10 | 470 |
| | 9 | 460 |
| | 7 | 400 |
| | 6 | 400 |
| | 5 | 380 |
| | 4 | 360 |
| | 3 | 340 |
| | Paralegals | 215-280 |
| | Litigation Support/ | 150 |
| | Paralegal clerk | |
| | Law Clerk/Students | 240 |
| | Word Processing | 80 |
| **2011 Rates:** | <u>Years of Experience</u> | <u>Rate</u> |
| | Partners | |
| | 49 | $840 |
| | 31 | 740 |
| | 27 | 625 |
| | 14 | 590 |
| | Of Counsel | |
| | 28 | 540 |
| | Associates | |
| | 18 | 525 |
| | 11 | 465 |
| | 10 | 450 |

- 32 -

*Rosen, Bien, Galvan & Grunfeld LLP*

| | | |
|---|---|---|
| | 9 | 440 |
| | 8 | 420 |
| | 6 | 385 |
| | 5 | 365 |
| | 4 | 350 |
| | 3 | 325 |
| | 2 | 315 |
| | Paralegals | 205-275 |
| | Litigation Support/ Paralegal clerk | 140-220 |
| | Law Clerk/Students | 225 |
| | Word Processing | 75 |

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 48 | $800 |
| | 30 | 700 |
| | 26 | 575 |
| | 13 | 560 |
| | Of Counsel | |
| | 27 | 520 |
| | Associates | |
| | 17 | 510 |
| | 13 | 490 |
| | 9 | 430 |
| | 8 | 415 |
| | 7 | 390 |
| | 5 | 360 |
| | 3 | 325 |
| | 1 | 285 |
| | Paralegals | 200-275 |
| | Litigation Support/ Paralegal clerk | 135-220 |
| | Law Clerk/Students | 190 |
| | Word Processing | 70 |

*Rudy, Exelrod, Zieff & Lowe LLP*

| **2010 Rates:** | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 42 | $725 |
| | 32 | 725 |

*Rudy, Exelrod, Zieff & Lowe LLP*

|  | 15 | 625 |
|--|----|-----|
|  | Associates | |
|  | 21 | 495 |
|  | 13 | 485 |
|  | 8 | 450 |

*Schneider Wallace Cottrell Brayton Konecky LLP\*\**

| 2014 Rates: | Years of Experience | Rate |
|-------------|---------------------|------|
|  | Partners | |
|  | 13-22 | $750 |
|  | Associates/Of Counsel | 575 |
|  | 20 | 535-345 |
|  | 37 | 295 |
|  | 10-13 | 650 |
|  | 0-3 | 350-475 |
|  | Paralegals/Law Clerks | 135-300 |

*Schonbrun, DeSimone, Seplow, Harris & Hoffman\*\**

| 2012 Rates: | Years of Experience | Rate |
|-------------|---------------------|------|
|  | 27 | $695 |
|  | 22 | 630 |

*Sheppard, Mullin, Richter & Hampton*

| 2010 Rates: | Years of Experience | Rate |
|-------------|---------------------|------|
|  | Partners | $495-820 |
|  | Associates | 270-620 |

*Sidley Austin*

| 2010 Rates: | Years of Experience | Rate |
|-------------|---------------------|------|
|  | Partners | |
|  | 33 | $900 |
|  | Senior Partners | 1,100 |
|  | Legal Assistants | 120-280 |

*Skadden, Arps, Slate, Meagher & Flom*

| 2013 Rates: | Average Partner | $1,035 |
|-------------|-----------------|--------|
|  | Highest Partner | 1,150 |
|  | Lowest Partner | 845 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES. COSTS. CLASS REP. SERVICE PAYMENTS, ETC.

*Skadden, Arps, Slate, Meagher & Flom*
| | | |
|---|---|---|
| | Average Associate | 620 |
| | Highest Associate | 845 |
| | Lowest Associate | 340 |

*Spiro Moore LLP\*\**
| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 30+ | $700 |
| | 17 | 600 |

*Law Offices of Michael D. Thamer*
| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
| | 31 | $775 |

*Townsend and Townsend and Crew*
| 2010 Rates: | Years of Experience | Rate |
|---|---|---|
| | Partners | $470-475 |
| | Associates | 260-460 |

*Wilson Sonsini Goodrich & Rosati PC*
| 2010 Rates: | Years of Experience | Rate |
|---|---|---|
| | 28 | $875 |
| | Other Partners | 650-975 |
| | Associates | 290-610 |
| | Paralegals/Litigation Support | 120-300 |

*Zelle Hofmann Voelbel & Mason, LLP\*\**
| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | Partners | Up to $950 |
| | Associates | Up to $540 |
| | Paralegals | Up to $290 |
| | Law Clerks | Up to $250 |
| 2012 Rates: | Years of Experience | Rate |
| | Partners | |
| | 38 | $800 |
| | 26 | 685 |
| | 23 | 650 |
| | 22 | 640 |
| | Associates | |
| | 9 | 500 |

- 35 -

*Zelle Hofmann Voelbel & Mason, LLP***

| | |
|---|---|
| 4 | 435 |
| 3 | 415 |
| 2 | 405 |
| 1 | 395 |
| Paralegals | 210-290 |

13.     The declaration of San Diego attorneys Vincent J. Bartolotta and Timothy Blood, filed with this motion, also support the rates requested here. All of this evidence shows that Plaintiffs' requested rates are well within the range of rates charged in this forum by comparably qualified and experienced attorneys for comparably difficult work.

14.     In my experience, fee awards are almost always determined based on current rates, *i.e.*, the attorney's rate at the time a motion for fees is made, rather than the historical rate at the time the work was performed. This is a common and accepted practice to compensate attorneys for the delay in being paid. The hourly rates set forth above are those charged where full payment is expected promptly upon the rendition of the billing and without consideration of factors other than hours and rates. If any substantial part of the payment were to be deferred for any substantial period of time, for example, the fee arrangement would be adjusted accordingly to compensate the attorneys for those factors.

15.     If called as a witness, I could and would competently testify from my personal knowledge to the facts stated herein. I declare under penalty of perjury that the foregoing is true and correct. Executed this 25 day of November 2014, in Berkeley, California.

Richard M. Pearl

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

ADDITIONAL COUNSEL FOR PLAINTIFFS AND THE CERTIFIED CLASS

Timothy D. Cohelan (Bar No. 60827)
Michael D. Singer (Bar No. 115301)
COHELAN KHOURY & SINGER
605 "C" Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MO. FOR FINAL
APPROVAL AND MO. FOR ATTORNEYS' FEES, COSTS, CLASS REP. SERVICE PAYMENTS, ETC.

EXHIBIT A

# RESUME OF RICHARD M. PEARL

**RICHARD M. PEARL**
**LAW OFFICES OF RICHARD M. PEARL**
1816 Fifth Street
Berkeley, CA 94710
(510) 649-0810
(510) 548-5074 (facsimile)
rpearl@interx.net (e-mail)

## EDUCATION

University of California, Berkeley, B.A., Economics (June 1966)
Boalt Hall School of Law, Berkeley, J.D. (June 1969)

## BAR MEMBERSHIP

Member, State Bar of California (admitted January 1970)
Member, State Bar of Georgia (admitted June 1970) (inactive)
Admitted to practice before all California State Courts; the United States Supreme Court; the United States Court of Appeals for the District of Columbia and Ninth Circuits; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, for the District of Arizona, and for the Northern District of Georgia; and the Georgia Civil and Superior Courts and Court of Appeals.

## EMPLOYMENT

LAW OFFICES OF RICHARD M. PEARL (April 1987 to Present): Civil litigation practice (AV rating), with emphasis on court-awarded attorney's fees, class actions, and appellate practice. Selected Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, and 2014.

QUALIFIED APPELLATE MEDIATOR, APPELLATE MEDIATION PROGRAM, Court of Appeal, First Appellate District (October 2000 to 2013) (program terminated).

ADJUNCT PROFESSOR, HASTINGS COLLEGE OF THE LAW (January 1988 to Present): Teach Public Interest Law Practice, a 2-unit course that focuses on the history, strategies, and issues involved in the practice of public interest law.

PEARL, McNEILL & GILLESPIE, Partner (May 1982 to March 1987): General civil litigation practice, as described above.

RICHARD M. PEARL
Page 2

CALIFORNIA RURAL LEGAL ASSISTANCE, INC. (July 1971 to September 1983) (part-time May 1982 to September 1983):

> Director of Litigation (July 1977 to July 1982)
> Responsibilities: Oversaw and supervised litigation of more than 50 attorneys in CRLA's 15 field offices; administered and supervised staff of 4-6 Regional Counsel; promulgated litigation policies and procedures for program; participated in complex civil litigation.

> Regional Counsel (July 1982 to September 1983 part-time)
> Responsibilities: Served as co-counsel to CRLA field attorneys on complex projects; provided technical assistance and training to CRLA field offices; oversaw CRLA attorney's fee cases; served as counsel on major litigation.

> Directing Attorney, Cooperative Legal Services Center (February 1974 to July 1977) (Staff Attorney February 1974 to October 1975)
> Responsibilities: Served as co-counsel on major litigation with legal services attorneys in small legal services offices throughout California; supervised and administered staff of four senior legal services attorneys and support staff.

> Directing Attorney, CRLA McFarland Office (July 1971 to February 1974) (Staff Attorney July 1971 to February 1972)
> Responsibilities: Provided legal representation to low income persons and groups in Kern, King, and Tulare Counties; supervised all litigation and administered staff of ten.

HASTINGS COLLEGE OF THE LAW, Instructor, Legal Writing and Research Program (August 1974 to June 1978)
Responsibilities: Instructed 20 to 25 first year students in legal writing and research.

CALIFORNIA AGRICULTURAL LABOR RELATIONS BOARD, Staff Attorney, General Counsel's Office (November 1975 to January 1976, while on leave from CRLA)
Responsibilities: Prosecuted unfair labor practice charges before Administrative Law Judges and the A.L.R.B. and represented the A.L.R.B. in state court proceedings.

ATLANTA LEGAL AID SOCIETY, Staff Attorney (October 1969 to June 1971)
Responsibilities: Represented low-income persons and groups as part of 36-lawyer legal services program located in Atlanta, Georgia.

RICHARD M. PEARL
Page 3

PUBLICATIONS

Pearl, *California Attorney Fee Awards, Third Edition* (Cal. Cont. Ed. Bar 2010) and February 2011, 2012, 2013, and 2014 Supplements

Pearl, *California Attorney Fee Awards, Second Edition* (Cal. Cont. Ed. Bar 1994), and 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements

*Graham v. DaimlerChrysler Corp.* and *Tipton-Whittingham v. City of Los Angeles*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Feb. 2005)

*Current Issues in Attorneys' Fee Litigation*, California Labor and Employment Law Quarterly (September 2002 and November 2002)

*Flannery v. Prentice: Shifting Attitudes Toward Fee Agreements and Fee-Shifting Statutes*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Nov. 2001)

*A Practical Introduction to Attorney's Fees*, Environmental Law News (Summer 1995)

Wrongful Employment Termination Practice, Second Edition (Cal. Cont. Ed. Bar 1997) (co-authored chapter on "Attorney Fees")

California Attorney's Fees Award Practice (Cal. Cont. Ed. Bar 1982) (edited), and 1984 through 1993 Supplements

Program materials on attorney fees, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations in Determining, Billing, and Collecting (October 1992)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Effective Representation Before California Administrative Agencies (October 1986)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations (March 1984)

*Settlors Beware/The Dangers of Negotiating Statutory Fee Cases* (September 1985) Los Angeles Lawyer

Program Materials on Remedies Training (Class Actions), sponsored by Legal Services Section, California State Bar, San Francisco (May 1983)

RICHARD M. PEARL
Page 4

Attorneys' Fees: A Legal Services Practice Manual (Legal Services Corporation 1981)

**PUBLIC SERVICE**

Member, Attorneys' Fee Task Force, California State Bar

Chairperson, Board of Directors, California Rural Legal Assistance Foundation

**REPRESENTATIVE REPORTED CASES**

*Alcoser v. Thomas*
(2011) 2011 Cal.App.Unpub.LEXIS 1180

*Boren v. California Department of Employment*
(1976) 59 Cal.App.3d 250

*Cabrera v. Martin*
(9th Cir. 1992) 973 F.2d 735

*Camacho v. Bridgeport Financial, Inc.*
(9th Cir. 2008) 523 F.3d 973

*Campos v. E.D.D.*
(1982) 132 Cal.App.3d 961

*Center for Biological Diversity v. County of San Bernardino*
(2010) 185 Cal.App.4th 866

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*
(1991) 229 Cal.App.3d 633

*David C. v. Leavitt*
(D. Utah 1995) 900 F.Supp. 1547

*Delaney v. Baker*
(1999) 10 Cal.4th 23

*Employment Development Dept. v. Superior Court (Boren)*
(1981) 30 Cal.3d 256

*Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*
(N.D. Cal. 2002) 229 F. Supp.2d 993, *aff'd* (9th Cir. 2004) 103 Fed. Appx. 627

RICHARD M. PEARL
Page 5

**Representative Reported Cases (cont.)**

*Flannery v Prentice*
(2001) 26 Cal. 4th 572

*Graham v. DaimlerChrysler Corp.*
(2004) 34 Cal. 4th 553

*Horsford v. Board of Trustees of Univ. of Calif.*
(2005) 132 Cal.App.4th 359

*Ketchum v. Moses*
(2001) 24 Cal.4th 1122

*Kievlan v. Dahlberg Electronics*
(1978) 78 Cal.App.3d 951, *cert. denied* (1979)
440 U.S. 951

*Lealao v. Beneficial California, Inc.*
(2000) 82 Cal.App.4th 19

*Lewis v. California Unemployment Insurance Appeals Board*
(1976) 56 Cal.App.3d 729

*Local 3-98 etc. v. Donovan*
(N.D. Cal. 1984) 580 F.Supp. 714,
*Aff'd* (9th Cir. 1986) 792 F.2d 762

*Mangold v. California Public Utilities Commission*
(9th Cir. 1995) 67 F.3d 1470

*Maria P. v. Riles*
(1987) 43 Cal.3d 1281

*Martinez v. Dunlop*
(N.D. Cal. 1976) 411 F.Supp. 5,
*aff'd* (9th Cir. 1977) 573 F.2d 555

*McQueen, Conservatorship of*
(2014) 59 Cal.4th 602 (argued for *amici curiae*)

*McSomebodies v. Burlingame Elementary School Dist.*
(9th Cir. 1990) 897 F.2d 974

RICHARD M. PEARL
Page 6

Representative Reported Cases (cont.)

*McSomebodies v. San Mateo City School Dist.*
        (9th Cir. 1990) 897 F.2d 975

*Molina v. Lexmark International*
        (2013) 2013 Cal.App. Unpub. LEXIS 6684

*Moore v. Bank of America*
        (9th Cir. 2007) 2007 U.S. App. LEXIS 19597

*Moore v. Bank of America*
        (S.D. Cal. 2008) 2008 U.S. Dist. LEXIS 904

*Mora v. Chem-Tronics, Inc.*
        (S.D. Cal. 1999) 1999 U.S. Dist. LEXIS 10752,
        5 Wage & Hour Cas. 2d (BNA) 1122

*Nadaf-Rahrov v. Nieman Marcus Group*
        (2014) 2013 Cal.App. Unpub. LEXIS 6975

*Pena v. Superior Court of Kern County*
        (1975) 50 Cal.App.3d 694

*Ponce v. Tulare County Housing Authority*
        (E.D. Cal 1975) 389 F.Supp. 635

*Ramirez v. Runyon*
        (N.D. Cal. 1999) 1999 U.S. Dist. LEXIS 20544

*Rubio v. Superior Court*
        (1979) 24 Cal.3d 93 (amicus)

*Sokolow v. County of San Mateo*
        (1989) 213 Cal. App. 3d. 231

*S.P. Growers v. Rodriguez*
        (1976) 17 Cal.3d 719 (amicus)

*Tongol v. Usery*
        (9th Cir. 1979) 601 F.2d 1091,
        *on remand* (N.D. Cal. 1983) 575 F.Supp. 409,
        *revs'd* (9th Cir. 1985) 762 F.2d 727

RICHARD M. PEARL
Page 7

Representative Reported Cases (cont.)

*Tripp v. Swoap*
(1976) 17 Cal.3d 671 (amicus)

*United States (Davis) v. City and County of San Francisco*
(N.D. Cal. 1990) 748 F.Supp. 1416, *aff'd in part
and revs'd in part sub nom Davis v. City and County
of San Francisco* (9th Cir. 1992) 976 F.2d 1536,
*modified on rehearing* (9th Cir. 1993) 984 F.2d 345

*United States v. City of San Diego*
(S.D.Cal. 1998) 18 F.Supp.2d 1090

*Vasquez v. State of California*
(2008) 45 Cal.4th 243 (*amicus*)

*Velez v. Wynne*
(9th Cir. 2007) 2007 U.S. App. LEXIS 2194

REFERENCES

Furnished upon request.

September 2014

**EXHIBIT B**

matrix

# LAFFEY MATRIX



| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of

practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

**EXHIBIT C**

## $1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

The National Law Journal

January 13, 2014 Monday

Copyright 2014 ALM Media Properties, LLC All Rights Reserved Further duplication without permission is prohibited

# THE NATIONAL
# LAW JOURNAL

Section: NLJ'S *BILLING SURVEY*; Pg. 1; Vol. 36; No. 20

Length: 1860 words

Byline: KAREN SLOAN

## Body

As recently as five years ago, law partners charging $1,000 an hour were outliers. Today, four-figure hourly rates for indemand partners at the most prestigious firms don't raise eyebrows-and a few top earners are closing in on $2,000 an hour.

These rate increases come despite hand-wringing over price pressures from clients amid a tough economy. But examining standard billing rates also obscure the growing practice of discounts, falling collection rates, and slow march toward alternative fee arrangements.

Nearly 20 percent of the firms included in The National Law Journal's annual survey of large law firm billing rates this year had at least one partner charging more than $1,000 an hour. Gibson, Dunn & Crutcher partner Theodore Olson had the highest rate recorded in our survey, billing $1,800 per hour while representing mobile satellite service provider LightSquared Inc. in Chapter 11 proceedings.

Of course, few law firm partners claim Olson's star power. His rate in that case is nearly the twice the $980 per hour average charged by Gibson Dunn partners and three times the average $604 hourly rate among partners at NLJ 350 firms. Gibson Dunn chairman and managing partner Ken Doran said Olson's rate is "substantially" above that of other partners at the firm, and that the firm's standard rates are in line with its peers.

"While the majority of Ted Olson's work is done under alternative billing arrangements, his hourly rate reflects his stature in the legal community, the high demand for his services and the unique value that he offers to clients given his extraordinary experience as a former solicitor general of the United States who has argued more than 60 cases before the U.S. Supreme Court and has counseled several presidents," Doran said.

In reviewing billing data this year, we took a new approach, asking each firm on the NLJ 350-our survey of the nation's 350 largest firms by attorney headcount-to provide their highest, lowest and average billing rates for associates and partners. We supplemented those data through public records. All together, this year's survey includes information for 159 of the country's largest law firms and reflects billing rates as of October.

The figures show that, even in a down economy, hiring a large law firm remains a pricey prospect. The median among the highest partner billing rates reported at each firm is $775 an hour, while the median low partner rate is $405. For associates, the median high stands at $510 and the low at $235. The average associate rate is $370.

Multiple industry studies show that law firm billing rates continued to climb during 2013 despite efforts by corporate counsel to rein them in. TyMetrix's 2013 Real Rate Report Snapshot found that the average law firm billing rate increased by 4.8 percent compared with 2012. Similarly, the Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor found that law firms increased their rates by an average 3.5 percent during 2013.

Richard Pearl

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

Of course, rates charged by firms on paper don't necessarily reflect what clients actually pay. Billing realization rates-which reflect the percentage of work billed at firms' standard rates- have fallen from 89 percent in 2010 to nearly 87 percent in 2013 on average, according to the Georgetown study. When accounting for billed hours actually collected by firms, the realization rate falls to 83.5 percent.

"What this means, of course, is that- on average-law firms are collecting only 83.5 cents for every $1.00 of standard time they record," the Georgetown report reads. "To understand the full impact, one need only consider that at the end of 2007, the collected realization rate was at the 92 percent level."

In other words, law firms set rates with the understanding that they aren't likely to collect the full amount, said Mark Medice, who oversees the Peer Monitor Index. That index gauges the strength of the legal market according to economic indicators including demand for legal services, productivity, rates and expenses. "Firms start out with the idea of, 'I want to achieve a certain rate, but it's likely that my client will ask for discounts whether or not I increase my rate,'" Medice said.

Indeed, firms bill nearly all hourly work at discounts ranging from 5 percent to 20 percent off standard rates, said Peter Zeughauser, a consultant with the Zeughauser Group. Discounts can run as high as 50 percent for matters billed under a hybrid system, wherein a law firm can earn a premium for keeping costs under a set level or for obtaining a certain outcome, he added. "Most firms have gone to a two-tier system, with what is essentially an aspirational rate that they occasionally get and a lower rate that they actually budget for," he said.

Most of the discounting happens at the front end, when firms and clients negotiate rates, Medice said. But additional discounting happens at the billing and collections stages. Handling alternative fee arrangements and discounts has become so complex that more than half of the law firms on the Am Law 100-NLJ affiliate The American Lawyer's ranking of firms by gross revenue-have created new positions for pricing directors, Zeughauser said.

THE ROLE OF GEOGRAPHY

Unsurprisingly, rates vary by location. Firms with their largest office in New York had the highest average partner and associate billing rates, at $882 and $520, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per hour or more for contracts and commercial work.

Washington was the next priciest city on our survey, with partners charging an average $748 and associates $429. Partners charge an average $691 in Chicago and associates $427. In Los Angeles, partners charge an average $665 while the average associate rate is $401.

Pricing also depends heavily on practice area, Zeughauser and Medice said. Bet-the-company patent litigation and white-collar litigation largely remain at premium prices, while practices including labor and employment have come under huge pressure to reduce prices.

"If there was a way for law firms to hold rates, they would do it. They recognize how sensitive clients are to price increases," Zeughauser said. But declining profit margins-due in part to higher technology costs and the expensive lateral hiring market-mean that firms simply lack the option to keep rates flat, he said.

*BILLING SURVEY* METHODOLOGY

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

The NLJ asked respondents to its annual survey of the nation's largest law firms (the NLJ 350) to provide a range of hourly billing rates for partners and associates as of October 2013.

For firms that did not supply data to us, in many cases we were able to supplement billing-rate data derived from public records.

In total, we have rates for 159 of the nation's 350 largest firms.

Richard Pearl

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

Rates data include averages, highs and low rates for partners and associates. Information also includes the average full-time equivalent (FTE) attorneys at the firm and the city of the firm's principal or largest office.

We used these data to calculate averages for the nation as a whole and for selected cities.

Billing Rates at the Country's Priciest Law Firms

Here are the 50 firms that charge the highest average hourly rates for partners.

Billing Rates at the Country's Priciest Law Firms

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS** | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |

* Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. For complete numbers, please see *NLJ.com*.

** Firm did not exist in this form for the entire year.

| FIRM NAME | LARGEST U.S. OFFICE | AVERAGE FTE ATTORNEYS | PARTNER AVERAGE | PARTNER HIGH | PARTNER LOW | ASSOCIATE AVERAGE | ASSOCIATE HIGH | ASSOCIATE LOW |
|---|---|---|---|---|---|---|---|---|
| Debevoise & Plimpton | New York | 615 | $1,055 | $1,075 | $955 | $490 | $760 | $120 |
| Paul, Weiss, Rifkind, Wharton & Garrison | New York | 803 | $1,040 | $1,120 | $760 | $600 | $760 | $250 |
| Skadden, Arps, Slate, Meagher & Flom | New York | 1,735 | $1,035 | $1,150 | $845 | $620 | $845 | $340 |
| Fried, Frank, Harris, Shriver & Jacobson | New York | 476 | $1,000 | $1,100 | $930 | $595 | $760 | $375 |
| Latham & Watkins | New York | 2,033 | $990 | $1,110 | $895 | $605 | $725 | $465 |
| Gibson, Dunn & Crutcher | New York | 1,086 | $980 | $1,800 | $765 | $590 | $930 | $175 |
| Davis Polk & Wardwell | New York | 787 | $975 | $985 | $850 | $615 | $975 | $130 |
| Willkie Farr & Gallagher | New York | 540 | $950 | $1,090 | $790 | $580 | $790 | $350 |
| Cadwalader, Wickersham & Taft | New York | 435 | $930 | $1,050 | $800 | $605 | $750 | $395 |
| Weil, Gotshal & Manges | New York | 1,201 | $930 | $1,075 | $625 | $690 | $790 | $300 |
| Quinn Emanuel Urquhart & Sullivan | New York | 697 | $915 | $1,075 | $810 | $410 | $675 | $320 |
| Wilmer Cutler Pickering Hale and Dorr | Washington | 961 | $905 | $1,250 | $735 | $290 | $695 | $75 |
| Dechert | New York | 803 | $900 | $1,095 | $670 | $530 | $735 | $395 |
| Andrews Kurth | Houston | 348 | $890 | $1,090 | $745 | $528 | $785 | $265 |
| Hughes Hubbard & Reed | New York | 344 | $890 | $995 | $725 | $555 | $675 | $365 |
| Irell & Manella | Los Angeles | 164 | $890 | $975 | $800 | $535 | $750 | $395 |
| Proskauer Rose | New York | 746 | $880 | $950 | $725 | $465 | $675 | $295 |
| White & Case | New York | 1,900 | $875 | $1,050 | $700 | $525 | $1,050 | $220 |

Richard Pearl

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

| FIRM NAME | LARGEST U.S. OFFICE' | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS' | PARTNER HOURLY RATES | | ASSOCIATE HOURLY RATES | | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Morrison & Foerster | San Francisco | 1,010 | $865 | $1,195 | $395 | $525 | $725 | $230 |
| Pillsbury Winthrop Shaw Pittman | Washington | 609 | $865 | $1,070 | $615 | $520 | $860 | $375 |
| Kaye Scholer | New York | 414 | $860 | $1,080 | $715 | $510 | $680 | $320 |
| Kramer Levin Naftalis & Frankel | New York | 320 | $845 | $1,025 | $740 | $590 | $750 | $400 |
| Hogan Lovells | Washington | 2,280 | $835 | $1,000 | $705 | - | - | - |
| Kasowitz, Benson, Torres & Friedman | New York | 365 | $835 | $1,195 | $600 | $340 | $625 | $200 |
| Kirkland & Ellis | Chicago | 1,517 | $825 | $995 | $590 | $540 | $715 | $235 |
| Cooley | Palo Alto | 632 | $820 | $990 | $660 | $525 | $630 | $160 |
| Arnold & Porter | Washington | 748 | $815 | $950 | $670 | $500 | $610 | $345 |
| Paul Hastings | New York | 899 | $815 | $900 | $750 | $540 | $755 | $335 |
| Curtis, Mallet-Prevost, Colt & Mosle | New York | 322 | $800 | $860 | $730 | $480 | $785 | $345 |
| Winston & Strawn | Chicago | 842 | $800 | $995 | $650 | $520 | $590 | $425 |
| Bingham McCutchen | Boston | 900 | $795 | $1,080 | $220 | $450 | $605 | $185 |
| Akin Gump Strauss Hauer & Feld | Washington | 806 | $785 | $1,220 | $615 | $525 | $660 | $365 |
| Covington & Burling | Washington | 738 | $780 | $890 | $605 | $415 | $565 | $320 |
| King & Spalding | Atlanta | 838 | $775 | $995 | $545 | $460 | $735 | $125 |
| Norton Rose Fulbright | N/A** | N/A** | $775 | $900 | $525 | $400 | $515 | $300 |
| DLA Piper | New York | 4,036 | $765 | $1,025 | $450 | $510 | $750 | $250 |
| Bracewell & Giuliani | Houston | 432 | $760 | $1,125 | $575 | $440 | $700 | $275 |
| Baker & McKenzie | Chicago | 4,004 | $755 | $1,130 | $260 | $395 | $925 | $100 |
| Dickstein Shapiro | Washington | 308 | $750 | $1,250 | $590 | $475 | $585 | $310 |
| Jenner & Block | Chicago | 432 | $745 | $925 | $565 | $465 | $550 | $380 |
| Jones Day | New York | 2,363 | $745 | $975 | $445 | $435 | $775 | $205 |
| Manatt, Phelps & Phillips | Los Angeles | 325 | $740 | $795 | $640 | - | - | - |
| Seward & Kissel | New York | 152 | $735 | $850 | $625 | $400 | $600 | $290 |
| O'Melveny & Myers | Los Angeles | 738 | $715 | $950 | $615 | - | - | - |
| McDermott Will & Emery | Chicago | 1,024 | $710 | $835 | $525 | - | - | - |
| Reed Smith | Pittsburgh | 1,468 | $710 | $945 | $545 | $420 | $530 | $295 |
| Dentons | N/A** | N/A** | $700 | $1,050 | $345 | $425 | $685 | $210 |
| Jeffer Mangels Butler & Mitchell | Los Angeles | 126 | $690 | $875 | $560 | - | - | - |
| Sheppard, Mullin, | Los | 521 | $685 | $875 | $490 | $415 | $535 | $275 |

Richard Pearl

$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow.

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | ASSOCIATE HOURLY RATES | | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Richter & Hampton | Angeles | | | | | | | |
| Alston & Bird | Atlanta | 805 | $675 | $875 | $495 | $425 | $575 | $280 |

THE FOUR-FIGURE CLUB

THE FOUR-FIGURE CLUB

These 10 firms posted the highest partner billing rates.

| | |
|---|---|
| Gibson, Dunn & Crutcher | $1,800 |
| Dickstein Shapiro | $1,250 |
| Wilmer Cutler Pickering Hale and Dorr | $1,250 |
| Akin Gump Strauss Hauer & Feld | $1,220 |
| Kasowitz, Benson, Torres & Friedman | $1,195 |
| Morrison & Foerster | $1,195 |
| Skadden, Arps, Slate, Meagher & Flom | $1,150 |
| Baker & McKenzie | $1,130 |
| Bracewell & Giuliani | $1,125 |
| Paul, Weiss, Rifkind, Wharton & Garrison | $1,120 |

Contact Karen Sloan at ksloan@alm.com

## Classification

Language: ENGLISH

Publication-Type: Newspaper

Subject: POLLS & SURVEYS (90%); LEGAL SERVICES (90%); MAJOR US LAW FIRMS (90%); LAW FIRM BILLING RATES (90%); LAWYERS (89%); LAW PRACTICE (89%); LAW FIRM BILLABLE HOURS (78%); ECONOMIC CONDITIONS (76%); CORPORATE COUNSEL (73%); US CHAPTER 11 BANKRUPTCY (73%); LAW COURTS & TRIBUNALS (68%); SATELLITE TECHNOLOGY (67%); SUPREME COURTS (63%)

Company: GIBSON DUNN & CRUTCHER LLP (93%); LIGHTSQUARED INC (83%)

Industry: NAICS541110 OFFICES OF LAWYERS (93%); SIC8111 LEGAL SERVICES (93%); NAICS517410 SATELLITE TELECOMMUNICATIONS (83%); NAICS334220 RADIO & TELEVISION BROADCASTING & WIRELESS COMMUNICATIONS EQUIPMENT MANUFACTURING (83%)

Geographic: UNITED STATES (92%)

Load-Date: January 13, 2014

Richard Pearl

EXHIBIT D

- Law.com Home
- Newswire
- LawJobs
- CLE Center
- LawCatalog
- Our Sites
- Advertise

An ALM Web site

# AM LAW DAILY

- This Site
- Law.com Network
- Legal Web



This Site | Legal Web     Go >>

- HOME
- THE AM LAW DAILY
- LITIGATION DAILY
- RANKINGS
- VIDEOS
- MAGAZINE
- ADVERTISE
- SUBSCRIBE
- FREE ACCESS
- CONTACT US
- Search

## THE AM LAW DAILY

- The Firms
- The Work
- The Score
- The Churn
- The Talent
- The Management
- The World
- The Life

## SURVEYS AND RANKINGS

- AM LAW 100
- AM LAW 200
- AM LAW TECH
- A-LIST
- GLOBAL 100
- CORPORATE SCORECARD
- DEALMAKERS OF THE YEAR
- MIDLEVEL ASSOCIATES SURVEY
- SUMMER ASSOCIATES SURVEY
- DIVERSITY SCORECARD
- PRO BONO SCORECARD
- LITIGATION DEPARTMENT OF THE YEAR
- LATERALS REPORT
- LAW FIRM LEADERS
- Lifetime Achievers
- Legal Intelligence
- WOMEN PARTNER WATCH

When It Comes to Billing, Latest Rate Report Shows the Rich Keep Ge...   http://amlawdaily.typepad.com/amlawdaily/2012/04/report-rates-kee...

## MAGAZINE

- Current Issue
- Previous Issue
- Search Archive

## SPECIAL REPORTS

- Intellectual Property
- Labor & Employment
- LITIGATION
- FOCUS EUROPE
- ASIAN LAWYER
- STUDENT EDITION

## VIDEOS

## Bookstore

## Legal Recruiters
## Digital Edition

## Hall of Fame

## ALM EVENTS

## SUBSCRIBE

## ADVERTISE

## ABOUT US

## FEATURED SPONSORS

## LAW.COM NETWORK

- Sites
- Jobs
- Verdicts
- LawCatalog
- Experts
- Online CLE
- Legal Intelligence
- Events
- Resources
- Law Firm Papers
- Court Reporters
- Legal Dictionary
- Legal Blogs

## The Firms

April 16, 2012 5:20 PM

When It Comes to Billing, Latest Rate Report Shows the Rich Keep Getting Richer

Posted by Sara Randazzo.

Hourly rates just keep rising—and the best-paid lawyers are raising their rates faster than everyone else.

Those are two of the key findings contained in the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. The report, released Monday, is the second such collaboration between TyMetrix, a company that manages and audits

When It Comes to Billing, Latest Rate Report Shows the Rich Keep Ge...   http://amlawdaily.typepad.com/amlawdaily/2012/04/report-rates-kee...

legal bills for corporate legal departments, and the Corporate Executive Board.

Many of the new rate report's findings echo those contained in the 2010 study, including the fact that rates keep going up, almost across the board, and that the cost of a given matter can vary dramatically depending on a law firm's size and location and its relationship with a particular client.

At the same time, this year's study shows that the legal sector is becoming increasingly bifurcated, with top firms raising rates faster than those at the bottom of the market and large firms charging a premium price based purely on their size.

"What it's really showing is that there's an increased premium being paid for experience and expertise," says Julie Peck, vice president of strategy and market development at TyMetrix. "Some parts of the lawyer market are able to raise rates much more quickly, and are more impervious to economic forces than others."

To compile the current rate report, TyMetrix received permission from its clients to examine legal fees billed to 62 companies across 17 industries including energy, finance, retail, technology, insurance, and health care. The bills, which represent the amount actually paid by the companies in question rather than the amount initially charged, came from more than 4,000 firms in 84 metropolitan areas around the country. Every firm on the 2011 Am Law 100 is represented in the data.

The report's key data points include:

A Widening Gap: Hourly rates charged by lawyers in the legal sector's upper echelon grew faster between 2009 and 2011 than those charged by lawyers toiling on the lower rungs. Particularly striking was the jump in associate rates billed by those falling in the report's top quartile: 18 percent on average, to just over $600 per hour. Rates billed by top quartile partners, meanwhile, rose 8 percent, to just under $900 per hour. In the bottom quartile, associate rates rose 4 percent and partner rates rose 3 percent during the same period.

The Recession's (Minor) Toll: Even amid the economic downturn, the cost of an hour of a lawyer's time continued to rise faster than key measures of inflation. That said, the legal industry wasn't completely immune to the broader economy's slowdown. After rising 8.2 percent between 2007 and 2008, hourly rates rose just 2.3 percent in 2009. Law firms bounced back a bit last year, with rates climbing 5.1 percent, to an average of $530 an hour.

Location Counts: Not surprisingly, lawyers working in major metropolitan areas—where, as the rate report notes, rents are typically higher—are the priciest. An address in Boston, Chicago, Los Angeles, San Francisco, or Washington, D.C., alone adds about $161 to the hourly rate charged by an individual lawyer. Those six cities and Baltimore, Houston, Philadelphia, and San Jose are the ten U.S. markets with the highest hourly rates. With an average partner rate topping $700 per hour and average associate rate of more than $450 per hour, New York is the most expensive market in the country. The least expensive? Riverside, California, where the average partner bills at under $250 per hour and associates bill at just over $300 an hour.

In the Minority: A small group of lawyers—12 percent—bucked the trend toward higher fees and actually lowered rates between 2009 to 2011—and 3 percent trimmed rates by $50 or more per hour. (Most of those in the rate-cutting camp were based outside the big six markets identified above.) At the other end of the spectrum, 52 percent of lawyers increased rates by between $25 and $200 or more per hour. Another 18 percent increased rates by less than $25 per hour, and the final 18 percent held rates steady.

First-Year Blues: Even before the recession hit, clients balked at paying for what they considered on-the-job training for first-year associates. The latest rate report is likely to reinforce that reluctance, given its finding that using entry-level lawyers adds as much as 20 percent to the cost of a legal matter. The report offers evidence that firms may be accommodating clients on this front: The percentage of bills attributed to entry-level associates dropped from 7 percent in 2009 to 2.9 percent last year.

Ties That Bind: The more work one firm handles for a client—and the longer the client relationship extends—the higher the average rate the firm charges. For companies that paid one firm $10 million or more in a single year, the average hourly rate paid was $553 in 2011. By comparison, clients that limited their spending on an individual firm to $500,000 paid that firm an average of $319 per hour.

Four-Digit Frontier: Data has consistently shown that many lawyers hesitate to charge more than $1,000 an hour, and in 2011 just under 3 percent of the lawyers covered by the rate report had broken that barrier. Of those, the vast majority were working in the six main legal markets identified above and 60 percent of the time, they billed in increments of one hour or less.

Playing Favorites: Across all practice areas, 90 percent of lawyers changed different clients different rates for similar types of work. (The figure for mergers and acquisitions lawyers was 100 percent.) The differences from client to client can be extreme, and were even more pronounced in the current report than in the 2010 edition. Rates charged by intellectual property specialists, for instance, had a median variance of 23.1 percent, while lawyers doing commercial and contract work showed a 18.7 percent median difference.

Who's Doing What? A closer look at law firm bills for work performed on litigation and intellectual property assignments shows that the kind of timekeeper billing on a matter varies by practice type. On patent matters, the report shows, 47 percent of hours billed on average are attributable to paralegals, and 37 percent by partners. By comparison, paralegals account for just 8 percent of the work done on labor and employment litigation hours, while partners handle 45 percent.

Make a comment

Comments (1)
Save & Share: Facebook | Del.icio.ous | Digg It | Email |

Reprints & Permissions

Comments

Report offensive comments to The Am Law Daily.

The Big Law law firm is a dinosaur - a dieing species. This kind of self-interested greed will ultimately kill the beast.

4/17/2012 10:07 AM

When It Comes to Billing, Latest Rate Report Shows the Rich Keep Ge...   http://amlawdaily.typepad.com/amlawdaily/2012/04/report-rates-kee...

Comment By Publicus - April 17, 2012 at 11:50 AM

**Verify your Comment**

Previewing your Comment

Posted by: |

This is only a preview. Your comment has not yet been posted.

Post | Edit

Your comment could not be posted. Error type:
Your comment has been saved. Comments are moderated and will not appear until approved by the author. Post another comment

The letters and numbers you entered did not match the image. Please try again.

As a final step before posting your comment, enter the letters and numbers you see in the image below. This prevents automated programs from posting comments.

Having trouble reading this image? View an alternate.

Continue

**Post a comment**

If you have a TypeKey or TypePad account, please Sign In

Name:

Email Address:(Not displayed with comment.)

URL:

☐ Remember personal info?

Comments:

Preview | Post

theamlawdaily@alm.com

**Popular Pages Today**
1. When It Comes to Billing, Latest Rate Report Shows the Rich Keep Getting Richer 11.87%
2. Dewey Losses Accelerate: Nine More New York Partners Head to the Exits 3.05%
3. Latest Dewey Losses Span the Globe, Push 2012 Departure Figure Above 60 10.61%
4. The Am Law Daily 4.47%
5. Nine IP Litigators Jump from Duane Morris to Cozen 4.37%
6. The Am Law Daily 3.34%
7. O'Melveny Adds Top Capital Markets Partner from Shearman in New York 4.30%
8. With St. Louis Firm Fading, Show Me State Rivals Eye Possible Hires 2.80%
9. Which Firms Are Cashing in on Dewey Departures? 2.18%
10. Paul Weiss Takes Lead on Two Private Equity Deals 2.17%

4/17/2012 10:07 AM

EXHIBIT E

Law Firms Raise Rates, but Ease Blow With Discounts - WSJ.com                    Page 1 of 4



**LAW  |  April 9, 2013, 4:46 p.m. ET**

# On Sale: The $1,150-Per-Hour Lawyer

*Lawyer Fees Keep Growing, But Don't Believe Them. Clients Are Demanding, and Getting, Discounts*

By JENNIFER SMITH

Top partners at leading U.S. law firms are charging more than ever before, yet those hourly rates aren't all they appear to be.

Having blown past the once-shocking price tag of $1,000 an hour, some sought-after deal, tax and trial lawyers are commanding hourly fees of $1,150 or more, according to an analysis of billing rates compiled from public filings.

But, as law firms boost their standard rates, many are softening the blow with widespread discounts and write-offs, meaning fewer clients are paying full freight. As a result, law firms on average are actually collecting fewer cents on the dollar, compared with their standard, or "rack," rates, than they have in years.

Top partners at leading U.S. law firms are charging more than ever — routinely $1,150 or more an hour — but after discounts and write-offs the actual rates aren't all they appear to be. Jennifer Smith reports. Photo: Getty Images.

Think of hourly fees "as the equivalent of a sticker on the car at a dealership," said legal consultant Ward Bower, a principal at Altman Weil Inc. "It's the beginning of a negotiation....Law firms think they are setting the rates, but clients are the ones determining what they're going to pay."

Star lawyers still can fetch a premium, and some of them won't budge on price. The number of partners billing $1,150-plus an hour has more than doubled since this time last year, according to Valeo Partners, a consulting firm that maintains a database of legal rates pulled from court filings and other publicly disclosed information. More than 320 lawyers in the firm's database billed at that level in the first quarter of 2013, up from 158 a year earlier.

---

News, Quotes, Companies, Videos    SEARCH

U.S. EDITION  Tuesday, April 9, 2013 As of 4:48 PM EDT

Home   World   U.S.   Business   Tech   Markets   Market Data   Your Money   Opinion   Life & Culture   N.Y.   Real Estate   Management

Earnings   Economy   Health   Law   Autos   Management   Media & Marketing   Energy   Small Business   Startups   More Industries

IN BUSINESS
- Eiji Toyoda, Driver of Global Expansion, Dies at 100
- EA Taps Insider Andrew Wilson as CEO
- 'The Circle' Takes Vengeance on Google, Facebook
- New Touch for iPhone

Article   Video   Stock Quotes   Comments (34)                    MORE IN LAW

see how Knobbe Martens wins again and again »

Knobbe Martens
INTELLECTUAL PROPERTY LAW

THE NEW PORTFOLIO TOOL ON WSJ.COM: THE ULTIMATE INVESTMENT TRACKER. AVAILABLE EXCLUSIVELY FOR SUBSCRIBERS. LEARN MORE »

Don't Miss

Mossberg on Apple's New iPhone   Shark Eats Shark in Wild New Photo   Five False Assumptions About The Rich

More in Law
China's Baby-Milk Issues Flare Anew

Popular Now                    What's Reid

1   Where Job Growth Is Coming

Law Firms Raise Rates, but Ease Blow With Discounts - WSJ.com                    Page 2 of 4

That gilded circle includes tax experts such as Christopher Roman of King & Spalding LLP and Todd Maynes of Kirkland & Ellis LLP, intellectual-property partner Nader A. Mousavi of Sullivan & Cromwell LLP, and deal lawyers such as Kenneth M. Schneider of Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Those lawyers and their firms either declined to comment or didn't reply to requests for comment.

When corporate legal departments need a trusted hand to fend off a hostile takeover or win a critical court battle, few general counsels will nitpick over whether a key lawyer is charging $900 an hour or $1,150 an hour. But for legal matters where their future isn't on the line, companies are pushing for—and winning—significant price breaks.

"We almost always negotiate rates down from the rack rates," said Randal S. Milch, general counsel for phone giant Verizon Communications Inc. VZ +0.39% The result, he said, is a "not-insignificant discount."

For the bread-and-butter work that many big law firms rely on, haggling has become the norm. Many clients grew accustomed to pushing back on price during the recession and continue to demand discounts.

Some companies insist on budgets for their legal work. If a firm billing by the hour exceeds a set cap, lawyers may have to write off some of that time.

Other clients refuse to work with firms who don't discount, lopping anywhere from 10% to 30% off their standard rates. Some may grant rate increases to individual partners or associates they deem worthy. Another tactic: locking in prices with tailored multiyear agreements with formulas governing whether clients grant or refuse a requested rate increase.

In practical terms, that means the gap between law firms' sticker prices and the amount of money they actually bill and collect from their clients is wider than it has been in years.

According to data collected by Thomson Reuters Peer Monitor, big law firms raised their average standard rate by about 9.3% over the past three years. But they weren't able to keep up on the collection side, where the increase over the same period was just 6%. Firms that used to collect on average about 92 cents for every dollar of standard time their lawyers worked in 2007, before the economic downturn, now are getting less than 85 cents. "That's a historic low," said James Jones, a senior fellow at the Center for the Study of the Legal Profession at Georgetown Law.

To be sure, things have certainly picked up some since the recession, when some clients flat-out refused to pay rate increases.

In the first quarter of 2013, the 50 top-grossing U.S. law firms boosted their partner rates by as much as 5.7%, billing on average between $879 and $882 an hour, according to Valeo Partners. Rates for junior lawyers, whose labors have long been a profit engine for major law firms, jumped even more.

While some clients resisted using associate lawyers during the downturn, refusing to pay hundreds of dollars an hour for inexperienced first- or second-year attorneys, the largest U.S. law firms have managed to send the needle back up again. This year, for the first time, the average rate for associates with one to four years of experience rose to $500 an hour, according to Valeo.

The increases continue the upward trend of 2012, when legal fees in general rose 4.8% and associate billing rates rose by 7.4%, according to a coming report by TyMetrix Legal Analytics, a unit of Wolters Kluwer WKL.AE +0.85% and CEB, a research and advisory-services company. Those numbers are based on legal-spending data from more than 17,000 law firms.

2   Steps to Better
    Foot Health

3   Opinion: The
    Power of 2x8

4   Shooting Suspect
    Had Record of
    Gun Use

5   Jetpacks Are
    Coming—From
    New Zealand

Show 5 More



Press Release Marketing
Effective Affordable Distribution. Attract New Clients Now. Learn How!
publicity.24-7pressrelease.com/

SUPER PC Multiple Monitor
The Original Multi-Monitor Store! Buy Multi-Screen Computers & Displays
www.Multi-Monitors.com

world news cnn online
Improve Network Infrastructure. Expert Advice & Industry Trends.
techtarget.com/Network-Structure

Content from our Sponsors   ▤

 

HERSHEY NATIONAL
A Southern Spin on Grilled Franks

DOVE IT
Arroz con Pollo al Estilo Puertorriqueño

HCPLIVE
Kids with Neurological Disorders No More Likely to Get Flu Vaccine

Law Firms Raise Rates, but Ease Blow With Discounts - WSJ.com                    Page 3 of 4

More than a dozen leaders at major law firms declined to discuss rate increases on
the record, though some said privately that the increase in associate rates could be
caused in part by step increases as junior lawyers gain in seniority.

Joe Sims, an antitrust partner at Jones Day and former member of the firm's
partnership committee, said clients don't mind paying for associates, as long as
they feel they are getting their money's worth.

Sophisticated clients, he said, tend to focus on the overall price tag for legal work,
not on individual rates. "They are more concerned about how many people are
working on the project and the total cost of the project," Mr. Sims said. "Clients want
value no matter who is on the job."

While a handful of elite lawyers have successfully staked out the high end—the deal
teams at Wachtell, Lipton, Rosen & Katz, for example—legal experts say that client
pressure to control legal spending means most law firms must be considerably
more flexible on price.

"There will always be some 'bet the company' problem where a client will not
quibble about rates," said Mr. Jones, the Georgetown fellow. "Unfortunately, from
the law firms' standpoint, that represents a small percentage of the work."

Write to Jennifer Smith at jennifer.smith@wsj.com

JOIN THE DISCUSSION                          MORE IN
38 Comments, add yours »                     Law »

Email      Print              Order Reprints

THE NEW PORTFOLIO YOU: ONLY ON WSJ.COM
THE ULTIMATE INVESTMENT TRACKER
AVAILABLE EXCLUSIVELY FOR OUR PLUS.

DHVS Stock Pick Win
Opportunities Abound with This Company—Invest Today, Free Info!
www.OnTheMoveSystems.com

Mortgage Rates HR 2.47%
White House Program Cuts Up to $1k off Monthly Payments! (3.12% APR)
www.SeeRefinanceRates.com

Warren Buffett Confesses
Warren Buffett's Shocking Confession Will Change your Investing Strategy
www.MarketTrendSignal.com

The End Of Obama?
This looming scandal could ruin the 44th President and disrupt the...
StansberryResearch.com

Don't Miss

 Model Behavior
Storms Social Media

 Top Five Cars at the
Frankfurt Motor
Show

 How Gang Rape Is
Changing India's
Laws

 Billionaire Builds
High-End Resort
Town In Swiss Alps

You Might Like                          Content from our Sponsors
                                        What is this?
Woman Tries to Sell Daughter's Virginity
                                        Immigrant Scientists Launch Braintrust -
Jeep's new Wrangler makes a statement. You   Create 1000 American Jobs (timepieces.com)
might not want to hear it

Law Firms Raise Rates, but Ease Blow With Discounts - WSJ.com                    Page 4 of 4

Living Together Before Marriage Stalls

Companies are increasingly choosing to generate their own power, delivering a jolt to utilities

Redbox's DVD-rental business is weaker than expected

Three Things Every Leader Should Do in a Meeting (The Adult Network)

Made in the west doesn't always work in asia (Singapore Editions)

Four Retailers Beat Amazon At Its Own Game: INFOGRAPHIC (About The Future of Retail)

The Worst Business Lawyer Habit: "Punchbowling" (Legal Productions)

## Add a Comment
View All Comments (36)

JOURNAL COMMUNITY
Community Rules

To add a comment please

| Log in | Create an Account |
| --- | --- |
| | Your real name is required for commenting. |

☐ Track replies to my comment

CLEAR     POST



**$1 A WEEK** *for* **12 WEEKS**

**WSJ SUBSCRIBER'S CONTENT PROVIDERS:**
- WSJ Portfolio a new advisory investment tool that tracks and tracks all your investments
- Mobile Apps global news, in-depth analysis and real time market analysis anywhere
- WSJ Weekend Travel, real estate, personal finance and expanded lifestyle coverage

**SUBSCRIBE NOW**

## Editors' Picks


Antibiotics Losing Battle Against Bugs: Report


For TV Shows, It's a Seller's Market


Are You Ready for a Jetpack?


The 400 Richest Americans Who's New on the List?

Steps to Better Foot Health

☐☐☐☐☐☐☐☐     Subscribe / Login     Back to Top

| Customer Service | Policy | Advertise | Tools & Features | More |
| --- | --- | --- | --- | --- |
| Customer Center | Privacy Policy | Advertise | Apps | Register for Free |
| Need Live Help | Data Policy | Place a Classified Ad | Newsletters and Alerts | Reprints |
| Contact Us | Copyright Policy | Sell Your Home | Graphics & Photos | Content Partnerships |
| WSJ Weekend | Subscriber Agreement & Terms of Use | Sell Your Business | Columns | Conferences |
| Contact Directory | Your Ad Choices | Commercial Real Estate Ads | Topics | SafeHouse |
| Corrections | | Recruitment & Career Ads | Guides | Mobile Site |
| | | Franchising | Portfolio | News Archive |
| | | Advertise Locally | Old Portfolio | |

Jobs at WSJ

Copyright ©2013 Dow Jones & Company, Inc. All Rights Reserved



# EXHIBIT 5

*$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow. The National Law Journal January 13, 2014 Monday*

Copyright 2014 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

THE NATIONAL
LAW JOURNAL

The National Law Journal

January 13, 2014 Monday

**SECTION:** NLJ'S BILLING SURVEY; Pg. 1 Vol. 36 No. 20

**LENGTH:** 1860 words

**HEADLINE:** $1,000 Per Hour **Isn't Rare Anymore**;
Nominal billing levels rise, but discounts ease blow.

**BYLINE:** KAREN SLOAN

**BODY:**

As recently as five years ago, law partners charging $1,000 an hour were outliers. Today, four-figure hourly rates for indemand partners at the most prestigious firms don't raise eyebrows-and a few top earners are closing in on $2,000 an hour.

These rate increases come despite hand-wringing over price pressures from clients amid a tough economy. But everrising standard billing rates also obscure the growing practice of discounts, falling collection rates, and slow march toward alternative fee arrangements.

Nearly 20 percent of the firms included in The National Law Journal's annual survey of large law firm billing rates this year had at least one partner charging more than $1,000 an hour. Gibson, Dunn & Crutcher partner Theodore Olson had the highest rate recorded in our survey, billing $1,800 per hour while representing mobile satellite service provider LightSquared Inc. in Chapter 11 proceedings.

Of course, few law firm partners claim Olson's star power. His rate in that case is nearly the twice the $980 per hour average charged by Gibson Dunn partners and three times the average $604 hourly rate among partners at NLJ 350 firms. Gibson Dunn chairman and managing partner Ken Doran said Olson's rate is "substantially" above that of other partners at the firm, and that the firm's standard rates are in line with its peers.

"While the majority of Ted Olson's work is done under alternative billing arrangements, his hourly rate reflects his stature in the legal community, the high demand for his services and the unique value that he offers to clients given his extraordinary experience as a former solicitor general of the United States who has argued more than 60 cases before the U.S. Supreme Court and has counseled several presidents," Doran said.

In reviewing billing data this year, we took a new approach, asking each firm on the NLJ 350-our survey of the nation's 350 largest firms by attorney headcount-to provide their highest, lowest and average billing rates for associates and partners. We supplemented those data through public records. All together, this year's survey includes information for 159 of the country's largest law firms and reflects billing rates as of October.

The figures show that, even in a down economy, hiring a large law firm remains a pricey prospect. The median among the highest partner billing rates reported at each firm is $775 an hour, while the median low partner rate is $405. For associates, the median high stands at $510 and the low at $235. The average associate rate is $370.

Multiple industry studies show that law firm billing rates continued to climb during 2013 despite efforts by corporate counsel to rein them in. TyMetrix's 2013 Real Rate Report Snapshot found that the average law firm billing rate increased by 4.8 percent compared with 2012. Similarly, the Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor found that law firms increased their rates by an average 3.5 percent during 2013.

Of course, rates charged by firms on paper don't necessarily reflect what clients actually pay. Billing realization rates-which reflect the percentage of work billed at firms' standard rates- have fallen from 89 percent in 2010 to nearly 87 percent in 2013 on average, according to the Georgetown study. When accounting for billed hours actually collected by firms, the realization rate falls to 83.5 percent.

"What this means, of course, is that- on average-law firms are collecting only 83.5 cents for every $1.00 of standard time they record," the Georgetown report reads. "To understand the full impact, one need only consider that at the end of 2007, the collected realization rate was at the 92 percent level."

In other words, law firms set rates with the understanding that they aren't likely to collect the full amount, said Mark Medice, who oversees the Peer Monitor Index. That index gauges the strength of the legal market according to economic indicators including demand for legal services, productivity, rates and expenses. "Firms start out with the idea of, 'I want to achieve a certain rate, but it's likely that my client will ask for discounts whether or not I increase my rate,'" Medice said.

Indeed, firms bill nearly all hourly work at discounts ranging from 5 percent to 20 percent off standard rates, said Peter Zeughauser, a consultant with the Zeughauser Group. Discounts can run as high as 50 percent for matters billed under a hybrid system, wherein a law firm can earn a premium for keeping costs under a set level or for obtaining a certain outcome, he added. "Most firms have gone to a two-tier system, with what is essentially an aspirational rate that they occasionally get and a lower rate that they actually budget for," he said.

Most of the discounting happens at the front end, when firms and clients negotiate rates, Medice said. But additional discounting happens at the billing and collections stages. Handling alternative fee arrangements and discounts has become so complex that more than half of the law firms on the Am Law 100-NLJ affiliate The American Lawyer's ranking of firms by gross revenue-have created new positions for pricing directors, Zeughauser said.

THE ROLE OF GEOGRAPHY

Unsurprisingly, rates vary by location. Firms with their largest office in New York had the highest average partner and associate billing rates, at $882 and $520, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per

hour or more for contracts and commercial work.

Washington was the next priciest city on our survey, with partners charging an average $748 and associates $429. Partners charge an average $691 in Chicago and associates $427. In Los Angeles, partners charge an average $665 while the average associate rate is $401.

Pricing also depends heavily on practice area, Zeughauser and Medice said. Bet-the-company patent litigation and white-collar litigation largely remain at premium prices, while practices including labor and employment have come under huge pressure to reduce prices.

"If there was a way for law firms to hold rates, they would do it. They recognize how sensitive clients are to price increases," Zeughauser said. But declining profit margins-due in part to higher technology costs and the expensive lateral hiring market-mean that firms simply lack the option to keep rates flat, he said.

BILLING SURVEY METHODOLOGY

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

The NLJ asked respondents to its annual survey of the nation's largest law firms (the NLJ 350) to provide a range of hourly billing rates for partners and associates as of October 2013.

For firms that did not supply data to us, in many cases we were able to supplement billing-rate data derived from public records.

In total, we have rates for 159 of the nation's 350 largest firms.

Rates data include averages, highs and low rates for partners and associates. Information also includes the average full-time equivalent (FTE) attorneys at the firm and the city of the firm's principal or largest office.

We used these data to calculate averages for the nation as a whole and for selected cities.

Billing Rates at the Country's Priciest Law Firms

Here are the 50 firms that charge the highest average hourly rates for partners.

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Debevoise & Plimpton | New York | 615 | $1,055 | $1,075 | $955 | $490 | $760 | $120 |
| Paul, Weiss, | New York | 803 | $1,040 | $1,120 | $760 | $600 | $760 | $250 |

* Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. For complete numbers, please see NLJ.com.

** Firm did not exist in this form for the entire year.

Rifkind Wharton & Garrison

| Firm | City | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom | New York | 1,735 | $1,035 | $1,150 | $845 | $620 | $845 | $340 |
| Fried, Frank, Harris, Shriver & Jacobson | New York | 476 | $1,000 | $1,100 | $930 | $595 | $760 | $375 |
| Latham & Watkins | New York | 2,033 | $990 | $1,110 | $895 | $605 | $725 | $465 |
| Gibson, Dunn & Crutcher | New York | 1,086 | $980 | $1,800 | $765 | $590 | $930 | $175 |
| Davis Polk & Wardwell | New York | 787 | $975 | $985 | $850 | $615 | $975 | $130 |
| Willkie Farr & Gallagher | New York | 540 | $950 | $1,090 | $790 | $580 | $790 | $350 |
| Cadwalader, Wickersham & Taft | New York | 435 | $930 | $1,050 | $800 | $605 | $750 | $395 |
| Weil, Gotshal & Manges | New York | 1,201 | $930 | $1,075 | $625 | $600 | $790 | $300 |
| Quinn Emanuel Urquhart & Sullivan | New York | 697 | $915 | $1,075 | $810 | $410 | $675 | $320 |
| Wilmer Cutler Pickering Hale and Dorr | Washington | 961 | $905 | $1,250 | $735 | $290 | $695 | $75 |
| Dechert | New York | 803 | $900 | $1,095 | $670 | $530 | $735 | $395 |
| Andrews Kurth | Houston | 348 | $890 | $1,090 | $745 | $528 | $785 | $265 |
| Hughes Hubbard & Reed | New York | 344 | $890 | $995 | $725 | $555 | $675 | $365 |
| Irell & Manella | Los Angeles | 164 | $890 | $975 | $800 | $535 | $750 | $395 |
| Proskauer Rose | New York | 746 | $880 | $950 | $725 | $465 | $675 | $295 |
| White & Case | New York | 1,900 | $875 | $1,050 | $700 | $525 | $1,050 | $220 |
| Morrison & Foerster | San Francisco | 1,010 | $865 | $1,195 | $595 | $525 | $725 | $230 |
| Pillsbury Winthrop Shaw Pittman | Washington | 609 | $865 | $1,070 | $615 | $520 | $860 | $375 |
| Kaye Scholer | New York | 414 | $860 | $1,080 | $715 | $510 | $680 | $320 |
| Kramer Levin Naftalis & Frankel | New York | 320 | $845 | $1,025 | $740 | $590 | $750 | $400 |
| Hogan Lovells | Washington | 2,280 | $835 | $1,000 | $705 | - | - | - |

| Firm | City | Count | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Kasowitz, Benson, Torres & Friedman | New York | 365 | $835 | $1,195 | $600 | $340 | $625 | $200 |
| Kirkland & Ellis | Chicago | 1,517 | $825 | $995 | $590 | $540 | $715 | $235 |
| Cooley | Palo Alto | 632 | $820 | $990 | $660 | $525 | $630 | $160 |
| Arnold & Porter | Washington | 748 | $815 | $950 | $670 | $500 | $610 | $345 |
| Paul Hastings | New York | 899 | $815 | $900 | $750 | $540 | $755 | $335 |
| Curtis, Mallet-Prevost, Colt & Mosle | New York | 322 | $800 | $860 | $730 | $480 | $785 | $345 |
| Winston & Strawn | Chicago | 842 | $800 | $995 | $650 | $520 | $590 | $425 |
| Bingham McCutchen | Boston | 900 | $795 | $1,080 | $220 | $450 | $605 | $185 |
| Akin Gump Strauss Hauer & Feld | Washington | 806 | $785 | $1,220 | $615 | $525 | $660 | $365 |
| Covington & Burling | Washington | 738 | $780 | $890 | $605 | $415 | $565 | $320 |
| King & Spalding | Atlanta | 838 | $775 | $995 | $545 | $460 | $735 | $125 |
| Norton Rose Fulbright | N/A** | N/A** | $775 | $900 | $525 | $400 | $515 | $300 |
| DLA Piper | New York | 4,036 | $765 | $1,025 | $450 | $510 | $750 | $250 |
| Bracewell & Giuliani | Houston | 432 | $760 | $1,125 | $575 | $440 | $700 | $275 |
| Baker & McKenzie | Chicago | 4,004 | $755 | $1,130 | $260 | $395 | $925 | $100 |
| Dickstein Shapiro | Washington | 308 | $750 | $1,250 | $590 | $475 | $585 | $310 |
| Jenner & Block | Chicago | 432 | $745 | $925 | $565 | $465 | $550 | $380 |
| Jones Day | New York | 2,363 | $745 | $975 | $445 | $435 | $775 | $205 |
| Manatt, Phelps & Phillips | Los Angeles | 325 | $740 | $795 | $640 | - | - | - |
| Seward & Kissel | New York | 152 | $735 | $850 | $625 | $400 | $600 | $290 |
| O'Melveny & Myers | Los Angeles | 738 | $715 | $950 | $615 | - | - | - |
| McDermott Will & Emery | Chicago | 1,024 | $710 | $835 | $525 | - | - | - |
| Reed Smith | Pittsburgh | 1,468 | $710 | $945 | $545 | $420 | $530 | $295 |
| Dentons | N/A** | N/A** | $700 | $1,050 | $345 | $425 | $685 | $210 |
| Jeffer Mangels Butler & Mitchell | Los Angeles | 126 | $690 | $875 | $560 | - | - | - |
| Sheppard, | Los | 521 | $685 | $875 | $490 | $415 | $535 | $275 |

| Mullin, Richter & Hampton | Angeles | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Alston & Bird | Atlanta | 805 | $675 | $875 | $495 | $425 | $575 | $280 |

THE FOUR-FIGURE CLUB


These 10 firms posted the highest partner billing rates.


**THE FOUR-FIGURE CLUB**

| | |
|---|---|
| Gibson, Dunn & Crutcher | $1,800 |
| Dickstein Shapiro | $1,250 |
| Wilmer Cutler Pickering Hale and Dorr | $1,250 |
| Akin Gump Strauss Hauer & Feld | $1,220 |
| Kasowitz, Benson, Torres & Friedman | $1,195 |
| Morrison & Foerster | $1,195 |
| Skadden, Arps, Slate, Meagher & Flom | $1,150 |
| Baker & McKenzie | $1,130 |
| Bracewell & Giuliani | $1,125 |
| Paul, Weiss, Rifkind, Wharton & Garrison | $1,120 |


Contact Karen Sloan at ksloan@alm.com

**LOAD-DATE:** January 13, 2014

Source: **Legal** > / · · · / > **The National Law Journal** 
Terms: **"isn't rare anymore"** (Suggest Terms for My Search)
View: Full
Date/Time: Friday, August 15, 2014   6:12 PM EDT

LexisNexis® About LexisNexis  | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright ©  2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT 6

# Patterson Belknap



## Andrew D. Cohen, Ph.D.

Counsel
acohen@pbwt.com
Tel: 212-336-2605
Fax: 212-336-1261

Andrew D. Cohen, Ph.D. is Counsel in the Firm's Litigation department, where he focuses on patent litigation with an emphasis on the pharmaceutical and biotechnology industries. He represents clients in patent litigation on a variety of subject matters including small molecule chemistry, biologics, and medical devices. He has litigated cases brought under the Hatch-Waxman Act and the Biologics Price Competition and Innovation Act (BPCIA), and has represented clients in *inter partes* reviews (IPR). He maintains an active *pro bono* practice including civil rights litigation, housing disputes, and asylum applications.

From 2012 to 2013, Mr. Cohen served as a law clerk to the Hon. Cathy Seibel of the United States District Court for the Southern District of New York. Prior to clerking, Mr. Cohen also spent three years as a patent agent at an international law firm, where he worked on motion practice, patent prosecution, due diligence, and opinion drafting. Before that, he was a scientific advisor for three years at a boutique intellectual property law firm, where he worked on several Hatch-Waxman litigations, as well as due diligence, opinion drafting and patent prosecution. Mr. Cohen was recognized as a Rising Star in the New York-Metro edition of *Super Lawyers* from 2017-2020.

**Representative Experience:**

- Obtained a trial victory for a Fortune 100 pharmaceutical company in a Hatch-Waxman patent litigation following a multi-week virtual bench trial. At stake was nearly 10 years of patent protection for a blockbuster medicine with over $1.5 billion in annual sales in the United States.
- Represented a Fortune 500 biotechnology company in obtaining dismissal of a $530 million patent infringement suit regarding recombinant DNA expression vectors.
- Represented multinational pharmaceutical company in one the first cases brought under the BPCIA involving a blockbuster antibody product and methods of manufacturing biologics.
- Represented multinational pharmaceutical company against U.S. Customs in a bench trial, successfully obtaining judgment that the company's blockbuster small-molecule drug can be imported duty-free.
- Represented a pharmaceutical company in arbitration regarding small-molecule product royalties.

**Education**

- Fordham University School of Law (J.D., *magna cum laude*, 2012)
  - o Order of the Coif
  - o Senior Articles Editor, *Fordham Law Review*, Vol. 79
  - o Wilkinson Scholar
- Johns Hopkins University (Ph.D., 2006)
  - o Chemistry (Organic)

# Patterson Belknap

- Johns Hopkins University (M.A., 2004)
  - Chemistry (Organic)
- Princeton University (A.B., *cum laude*, 2000)
  - Chemistry (Organic)

## Admissions

- U.S. Supreme Court
- U.S. Patent and Trademark Office
- U.S. Court of Appeals, Federal Circuit
- U.S. District Court, Southern District of New York
- U.S. Court of International Trade
- New York

## Professional Activities

MEMBERSHIPS: American Chemical Society; New York City Bar Association (Member of the Patents Committee); New York Intellectual Property Law Association (Member of the Amicus Briefs Committee).

# Patterson Belknap



## Jonah M. Knobler

Partner
jknobler@pbwt.com
Tel: 212-336-2134
Fax: 212-336-2222

Jonah M. Knobler practices in the Firm's Litigation department. His practice centers on class action defense, false advertising litigation, and food-and-drug law. He also handles copyright and trademark litigation and key appeals.

Mr. Knobler has over a decade of experience representing global and national pharmaceutical, food, beverage, cosmetic, and dietary supplement manufacturers in high-stakes false advertising, consumer protection, civil RICO, and product liability suits. His practice has given him a keen understanding of FDA-regulated industries and the surrounding regulatory landscape. He frequently litigates and publishes on cutting-edge legal topics of interest to these industries, such as standing, preemption, class certification, damages models, innovator liability, and commercial free speech. He also founded and co-edits the Firm's food, drug, and cosmetic false advertising blog, _Misbranded_.

In the IP arena, Mr. Knobler has litigated and settled numerous claims of copyright infringement, trademark infringement/counterfeiting, and "hot news" misappropriation. He has represented major media companies, consumer-product manufacturers, and individual artists. Mr. Knobler published one of the first major articles analyzing the copyright implications of Internet streaming and downloading, which has been cited in _Nimmer on Copyright_, the _Oxford Handbook of Mobile Music Studies_, and U.S. Supreme Court briefing.

Mr. Knobler has also handled high-value appeals across a range of subject areas, from false advertising to product liability to insurance law. He has briefed and/or argued appeals in both the state and federal systems, including in the U.S. Supreme Court and most federal Courts of Appeals.

Recently, Mr. Knobler was named a 2019 "Rising Star" by the _New York Law Journal_, a designation that "recognizes the region's most promising lawyers ages 40 and under." Mr. Knobler was named to the National LGBT Bar Association's 2018 "Best LGBT Lawyers Under 40," which recognizes LGBT legal professionals "who have distinguished themselves in their field and have demonstrated a profound commitment to LGBT equality." He was also named to _Benchmark Litigation_'s "40 & Under Hot List" each year since 2017, which recognizes "practitioners…aged 40 or younger [who] have been deemed the most promising emerging talent in their respective litigation communities…by peers and clients."Mr. Knobler was listed in the _Premier Appellate Lawyers_ directory in 2021. _Premier Appellate Lawyers_ lists only one attorney and firm in each city and inclusion in the guide is by invitation only.

Mr. Knobler's active _pro bono_ practice focuses on voting rights and LGBTQ+ rights. For his _pro bono_ work, he was named a 2019 "Defender of Democracy" by Common Cause.

# Patterson Belknap

From 2009 to 2010, Mr. Knobler served as a law clerk to the Honorable Danny J. Boggs of the U.S. Court of Appeals for the Sixth Circuit. From 2008 to 2009, Mr. Knobler served as a law clerk to the Honorable Frederic Block of the U.S. District Court for the Eastern District of New York. In 2004, Mr. Knobler held a McCleary Law Fellowship at the Human Rights Campaign.

## Education

- Harvard Law School (J.D., *cum laude*, 2006)
  - Nathan Burkan Prize for Copyright Law (American Society of Composers, Authors and Publishers)
  - *Harvard Civil Rights - Civil Liberties Law Review*
- Harvard University (B.A., *cum laude*, 2003)
  - Phi Beta Kappa

## Admissions

- U.S. Supreme Court
- U.S. Court of Appeals for the First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Federal Circuits
- U.S. District Court, Southern and Eastern Districts of New York
- New York

## Languages

- Spanish

## Professional Activities

HONORS:

- Common Cause "Defender of Democracy" (2019)
- *New York Law Journal* "Rising Star" (2019)
- National LGBT Bar Association "Best LGBT Lawyers Under 40" (2018)
- *Benchmark Litigation* "Under 40 Hotlist" (2017, 2018, 2019, 2020, 2021)
- *Super Lawyers* "Rising Star" (2013, 2014, 2015, 2016, 2017, 2018, 2019)
- *Premier Appellate Lawyers* (2021)

## Publications

- "Courts Are Right To Limit Disclosure Requirements For Cos.," *Law360* (September 1, 2020)
- "How High Court TM Profits Ruling Bears On False Advertising," *Law360* (May 1, 2020)
- "INSIGHT: Don't Expect High Court's Romag Ruling to Upend Trademark Litigation," *Bloomberg Law* (May 1, 2020)
- "Paint It Black: The Ninth Circuit OKs RICO Liability For Failure To Warn About Drug Safety Risks," *Drug and Device Law Blog* (December 12, 2019)
- "*Merck v. Albrecht*: Victories, Uncertainties & Opportunities From Supreme Court's Return to Branded-Drug Preemption," *Washington Legal Foundation* (June 28, 2019)

## Patterson Belknap

- "NY's Legislature Should Fix Runaway Consumer Class Action Damages—Not Make Them Worse," *New York Law Journal* (May 17, 2019)
- Co-Author, "Frank v. Gaos: Cy Pres Gets Its Day at the Supreme Court," *Bloomberg Law* (June 8, 2018)
- "Seventh Circuit Issues Strong Endorsement of Learned Intermediary Doctrine in Medical-Device MDL," Washington Legal Foundation (April 2018)
- "*City Select v. BMW*: Ascertainability Is Alive And Well In The Third Circuit," Bloomberg BNA's *Class Action Litigation Report* (September 2017)
- "Petrobras Renounces 2nd Circ. 'Preference' For Class Cert.," *Law360* (July 2017)
- "Petrobras Does Little To Clarify Class Ascertainability," *Law360* (July 2017)
- "Town Of Chester: An Answer On Class-Member Standing?," *Law360* (June 2017)
- "*Tyson Foods*: Victory in Defeat for Class-Action Defendants?," Bloomberg BNA's *Class Action Litigation Report* (April 2016)
- "Class Actions in the Second Circuit: Do Plaintiffs Have Unfair Advantage?," *New York Law Journal* (March 2015)
- "Public Performance Rights in Music Downloads: United States v. ASCAP and Beyond," *Journal of Internet Law* (June 2008)
- "Performance Anxiety: The Internet and Copyright's Vanishing Performance/Distribution Distinction," *Cardozo Arts & Entertainment Law Journal* (December 2007)

## Publications

September 1, 2020
**Courts Are Right To Limit Disclosure Requirements For Cos.**
Law360

July 6, 2020
**U.S. Supreme Court Determines Otherwise Generic Term When Combined With Generic ".com" Can Be A Registrable Trademark**

May 1, 2020
**INSIGHT: Don't Expect High Court's *Romag* Ruling to Upend Trademark Litigation**
*Bloomberg Law*

May 1, 2020
**How High Court TM Profits Ruling Bears On False Advertising**
*Law360*

May 17, 2019
**NY's Legislature Should Fix Runaway Consumer Class Action Damages—Not Make Them Worse**
*New York Law Journal*

December 17, 2018
**FDA Withdraws Proposed Rule Abolishing Generic Preemption; Recognizes "Downsides" Of Expanded Tort Liability**

October 29, 2018
***In re Asacol:*** **First Circuit Sharply Limits Certification of Classes Containing Uninjured Members**

## Patterson Belknap

June 8, 2018

**Frank v. Gaos:** ***Cy Pres*** **Gets Its Day at the Supreme Court**

April 20, 2018

**Seventh Circuit Issues Strong Endorsement of Learned Intermediary Doctrine in Medical-Device MDL**

September 12, 2017

***City Select v. BMW*****: Ascertainability Is Alive And Well In The Third Circuit**

July 27, 2017

**Petrobras Renounces 2nd Circ. 'Preference' For Class Cert.**

July 14, 2017

**Petrobras Does Little To Clarify Class Ascertainability**

June 7, 2017

**Town Of Chester: An Answer On Class-Member Standing?**

April 24, 2017

**"Et tu,** ***Bruton*****?": Ninth Circuit Revives Baby-Food Labeling Class Action, Broadens UCL Liability**

April 25, 2016

***Tyson Foods*****: Victory in Defeat for Class-Action Defendants?**

December 8, 2015

**The "Cannibal Cop" and Protection of Computerized Data**

July 2015

***Remijas v. Neiman Marcus*****: Seventh Circuit Affords Broad Standing To Sue Over Consumer Data Breaches**

March 2015

**Class Actions in the Second Circuit: Do Plaintiffs Have Unfair Advantage?**

June 2014

**Supreme Court Nixes Aereo TV, Holding That Internet Streaming of Broadcast TV to Subscribers Violates Copyright Law**

# Patterson Belknap



## Maxwell  K. Weiss

Associate
maweiss@pbwt.com
Tel: 212-336-2711
Fax: 212-336-7946

Maxwell ("Max") Weiss is an Associate in the Firm's Litigation department. From 2018 to 2020, Mr. Weiss served as a law clerk to the Hon. William J. Martini of the United States District Court for the District of New Jersey. Prior to clerking, Mr. Weiss was an associate at an international law firm in New York.

**Education**

- The George Washington University Law School (J.D., *summa cum laude*, 2016)
  - o  Senior Projects Editor, *The George Washington Law Review*
  - o  Order of the Coif
- University of Pittsburgh (B.A., *magna cum laude*, 2013)

**Admissions**

- New York

**Publications**

- "Corporate Recidivism in the FCPA Context" Compliance & Enforcement (July 7, 2017)
- Essay, "The Constitutionality of SEC Administrative Law Judges: Exploring Hill v. SEC" 84 GEO. WASH. L. REV. 1407 (2016)
- "Redefining the Scope of the Fourth Amendment in the 21st Century: The Wake-Up Call of United States v. Jarrett" Crim. L. Soc'y Brief (Mar. 24, 2016)

# Patterson Belknap



## Steven A. Zalesin

Partner
sazalesin@pbwt.com
Tel: 212-336-2110
Fax: 212-336-2111

Steve Zalesin is a nationally recognized trial lawyer with extensive experience in intellectual property, false advertising and complex commercial matters. He has successfully tried cases and argued appeals in numerous courts throughout the United States. He has also represented clients in arbitration proceedings in several countries.

For more than 30 years, Mr. Zalesin has represented the nation's leading manufacturers and service providers in a series of landmark cases that have shaped the law of false advertising, while helping to preserve and grow the markets for our clients' products. He recently secured a federal jury verdict for the world's leading beverage company in a closely-watched advertising dispute over juice labeling. Mr. Zalesin initially obtained summary judgment dismissing the claims against our client, and successfully defended that ruling before the Ninth Circuit. The U.S. Supreme Court subsequently vacated the Ninth Circuit's decision, and remanded the case for trial. The Los Angeles jury rejected the plaintiff's claim in full, returning a verdict in our client's favor after a six-day trial and less than a day of deliberation. As a result of the favorable verdict, Mr. Zalesin was named "Litigator of the Week" by *The American Lawyer* (March 24, 2016). More recently, Mr. Zalesin obtained a nationwide preliminary injunction for a leading animal health company, enjoining ads that falsely claimed that dairy products made with milk from cows treated with our client's supplement were unsafe and less wholesome than other dairy products.

A significant portion of Mr. Zalesin's practice involves high-stakes commercial disputes in the pharmaceutical, medical device and biotech industries. He recently co-tried a closely-watched case on behalf of a leading pharmaceutical company against a competitor, arising out of the competitor's acquisition of another major player in the industry. The case settled on terms favorable to our client.

Mr. Zalesin also represents Fortune 50 companies in patent litigation. In 2014, he co-tried an ANDA case that resulted in an injunction against the launch of a generic version of our client's billion-dollar AIDS drug. In another win, Mr. Zalesin obtained summary judgment on behalf of the world's largest software company, demonstrating that a competitor's patent on voice recognition technology was obvious as a matter of law.

Mr. Zalesin has substantial experience defending consumer class actions. He is currently representing major beverage and confectionary producers in litigation over their product labeling and advertising. In 2020, he obtained dismissal of a class action complaint that targeted a leading online petitioning platform and its efforts to promote racial justice. In the recent past, he has successfully defended the makers of several best-selling food, beverage and pharmaceutical products against consumer protection claims.

Mr. Zalesin is listed in *Chambers USA* as a leading practitioner in the area of Advertising, where he is described as a "*terrific - highly strategic and remarkably efficient, bringing the value of years of experience and a myriad of*

# Patterson Belknap

*professional contacts to bear on each matter in a straightforward, soft-spoken way. That ensures we get to great outcomes in a very efficient way...*" Clients note, "*[h]e is extremely smart and knows the law backwards and forwards*" and "*is terrific - a go-to lawyer in the industry and a force to be reckoned with in the Lanham Act space.*" In addition to his individual recognition, the Firm has been named "Advertising Firm of the Year" by *Chambers USA*.

Mr. Zalesin is listed as "Litigation Star" in Euromoney Institutional Investor PLC's *Benchmark: America's Leading Litigation Firms and Attorneys*. He is recognized in *The Best Lawyers in America®* in the area of Advertising Law, and was named as a 2020 and 2022 "Client Service All-Star" by The BTI Consulting Group. This award recognizes attorneys who "stand above all the others in delivering the absolute best in client service."

## Education

- University of Pennsylvania Carey Law School (J.D., *cum laude*, 1985)
    - Editor, *University of Pennsylvania Law Review*
- Syracuse University (B.S., *magna cum laude*, 1982)

## Admissions

- U.S. Supreme Court
- U.S. Court of Appeals, First Circuit; Second Circuit; Third Circuit; Seventh Circuit; Eighth Circuit; Ninth Circuit; Federal Circuit; D.C. Circuit
- U.S. District Court, Southern and Eastern Districts of New York; Eastern District of Wisconsin; Northern District of Florida
- New York

## Professional Activities

HONORS: Recognized in *Chambers USA* in the area of Advertising; Listed as a "Litigation Star" for New York in Euromoney Institutional Investor PLC's *Benchmark: America's Leading Litigation Firms and Attorneys*; Named in *The Best Lawyers in America®* in the area of Advertising Law; Named in *Super Lawyers* in the area of Intellectual Property Litigation; Recognized as a 2020 and 2022 "Client Service All-Star" by The BTI Consulting Group

SPEAKING ENGAGEMENTS:

- "Five Years of BioPharma IPRs: Where We Are and What Now," Bloomberg BNA Webinar (September 15, 2017)
- "Follow-On Consumer Class Actions: Risk Avoidance and Defense Strategies," American Conference Institute (October 21, 2015)
- "*Inter Partes* Review (IPR) Proceedings for Biotech and Pharmaceutical Patents: Key Strategies for U.S. Patent Owners," Association of Corporate Counsel Webcast (June 17, 2015)

# DAVID B. BYRNE, III AND ANDY BIRCHFIELD, Jr

# Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:                                          MDL CASE NO.: 3015

JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
_____/


THIS DOCUMENT RELATES TO: ALL CASES
_____/


JOINT DECLARATION OF DAVID B. BYRNE, III AND ANDY BIRCHFIELD, Jr.,
(BEASLEY ALLEN, P.C.) IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS COUNSEL FEES AND COSTS

Pursuant to 28 U.S.C. § 1746, We, David B. Byrne, III and Andy D. Birchfield, Jr., hereby

declare and state:

1.      We are attorneys and partners with the law firm of Beasley, Allen, Crow, Methvin, Portis

& Miles, P.C.  We are admitted *pro hac vice* to appear and practice before this Court as Counsel for

Plaintiffs in the matter of *Goodwin, et al. v. Johnson & Johnson Consumer Inc.*, 0:21-cv-61890-AHS

(S.D. Fla.) (the "*Goodwin* Plaintiffs").   By order of this Court, the *Goodwin* Plaintiffs' action was

consolidated with *Serota v. Johnson & Johnson Consumer Inc.*, 0:21-cv-61103-AHS (S.D. Fla.). The

*Serota* action was the first filed case seeking class relief arising out of the presence of benzene in

Defendants' sunscreen products. We are also Counsel for Plaintiffs in the matter of *Dominguez, et al. v.

Johnson & Johnson Consumer Inc.*, 4:21-cv-05419-JD (N.D Cal.) (the "*Dominguez* Plaintiffs").  The

*Dominguez* Plaintiffs' action was consolidated with *Brennan, et al. v. Johnson & Johnson Consumer,

Inc.,* 4:21-cv-04869-KAW (N.D. Cal.).  The *Brennan* action was the second filed case seeking class

relief arising out of the presence of benzene in Defendants' sunscreen products.  The *Brennan* and

*Dominguez* cases were transferred to this Court for consolidated pre-trial proceedings pursuant to the

JPML's October 8, 2021, Transfer Order. On February 9, 2022, the Court entered an Order appointing Aylstock, Witkin, Kreis & Overholtz, PLLC; Bradley/Grombacher, LLP; Beasley, Allen, Crow, Methvin, Portis & Miles, PC; Keller Lenkner, LLC; and Walsh Law, PLLC as Interim Class Counsel in this MDL proceeding. [Doc. 64; *see also*, Doc. 67].

2.      We have prepared this Declaration in Support of Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Award which is filed contemporaneously herewith. Plaintiffs' Motion respectfully seeks attorneys' fees in the amount of Two Million Five Hundred Thousand Dollars to the firms of Aylstock, Witkin, Kreis & Overholtz PLLC; Bradley/Grombacher LLP, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Keller Lenkner LLC; and, Walsh Law, PPC. Plaintiffs' Motion further seeks reimbursement in the amount of One Hundred Thousand Dollars for reasonable costs incurred in the prosecution of this action.  Finally, the motion requests that, as to the service payments sought, the Court retain jurisdiction over this matter until the final disposition of Johnson v. NPAS Sols, LLC, 975 F.3d 1244 (11th Circ. 2020).  We have personal knowledge of the facts stated herein.  If called upon, we would competently testify that the facts set forth herein are true and correct.

**EXPERIENCE OF COUNSEL**

3.      Beasley, Allen, Crow, Methvin, Portis, & Miles, P.C. ("Beasley Allen") is a national law firm with extensive experience handling complex litigation, attorney general litigation, multi-district litigation throughout the U.S., including district and federal courts, *qui tam* litigation, and class-action lawsuits.  Beasley Allen has successfully represented the states of Alabama, Louisiana, Mississippi, Alaska, Hawaii, South Carolina, Kansas, Utah, and Kentucky involving various issues within the healthcare, environmental, and consumer-product arenas, and has confidentially investigated matters for several other Attorneys General.

4.      **Class Action Litigation** - Beasley Allen has successfully brought a number of class actions, some of which were subsequently transferred to multidistrict litigation, which we originally

filed in federal and state courts, including: *Ace Tree Surgery, Inc. v. Terex Corporation, et al.*, Case No. 1:16-cv-00775-SCJ D (N.D. Ga., filed July 22, 2015); *In re: Polaris Marketing, Sales Practices, and Products Liability Litigation*, Case No. 0:18-cv-00939-WMW-DTS (D. Minn., filed April 5, 2018); *Scott Peckerar et al. v. General Motors, LLC*, Case No. 5:18-cv-02153-DMG-SP (C.D. Cal., filed December 9, 2018); *Jason Compton et al v. . General Motors, LLC*, Case No. 1:19-cv-00033-MW-GRJ (N.D. Fla., filed February 21, 2019); *Simerlein v. Toyota Motor Corporation et al.*, Case No. 3:17-cv-01091-VAB (D. Conn., filed June 30, 2017); *Kerkorian et al v. Nissan North America, Inc.*, Case No. 18-cv-07815-DMR (N.D Cal., filed December 31, 2018); *Monteville Sloan, Jr. v. General Motors LLC*, Case No. 3:16-cv-07244-EMC (C.D. Cal., filed December19, 2016); *William Don Cook v. Ford Motor Company*, Case No. 2:19-cv-00335-ECM-GMB (M.D. Ala., filed  May 8, 2019); *Sigfredo Rubio et al., vs. ZF-TRW Automotive Holdings Corp., et al.*, Case No. 2:19-cv-11295-LVP-RSW (E.D. Mich., filed May 3, 2019); *Weidman, et al. v. Ford Motor Co.*, Case No. 2:18-cv-12719 (E.D. Mich., filed August 30, 2018); *Gerrell Johnson v. Subaru of America, Inc. et al.*, Case No. 2:19-cv-05681-JAK-MAA (C.D. Cal., filed June 28, 2019); *Thondukolam et al., vs. Corteva, Inc., et al.*, Case No. 4:19-cv-03857 (N.D. Cal., filed July 3, 2019); *Dickman, et al. v. Banner Life Insurance Company, et al., Case No.* 1:16-cv-00192-WMN (D. Md., filed January 19, 2016); *Lesley S. Rich, et al. v. William Penn Life Insurance Company of New York*, Case No. 1:17-cv-02026-GLR (D. Md., filed July 20, 2017); *Vivian Farris, et al. v. U.S. Financial Life Insurance Company*, Case No. 1:17-cv-417 (S.D. Ohio, filed June 19, 2017); *In Re: Apple Inc. Device Performance Litigation*, Case No. 5:18-md-02827-EJD (N.D. Cal., filed April 5, 2018); *Intel Corp. CPU Marketing, Sales Practices and Products Liability Litigation*, Case No. 3:18-md-02828 (D.Or., filed April 5, 2018); *In Re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. Case 1:14-md-02583-TWT (N.D. Ga., filed November 13, 2014); *In Re: German Automotive Manufacturers Antitrust Litigation*, Case No. 3:17-md-02796-CRB (N.D. Cal., filed October 5, 2017); *In re: Domestic Airline Travel Antitrust Litigation*, Case No. 1:15-mc-

01404-CKK (D.D.C., filed October 13, 2015); *In Re: Facebook, Inc., Consumer Privacy User Profile Litigation*; Case No. 5:18-md-02827-EJD (N.D. Cal., filed June 6, 2018); *Estrada v. Johnson & Johnson, et al.*, Case No. 2:14-cv-01051-TLN-KJN (E.D. Cal., filed April 28, 2014); *Larry Clairday, et al. v. Tire Kingdom, Inc., et al.,* No. 2007-CV-020 (S.D. Ga.); *Wimbreth Chism, et al. v. The Pantry, Inc. d/b/a Kangaroo Express,* No. 7:09-CV-02194-LSC (N.D. Ala.); *Danny Thomas, et al. v. Southern Pioneer Life Insurance Company,* No. CIV-2009-257JF, in the Circuit Court of Greene County, State of Arkansas*; Dolores Dillon v. MS Life Insurance Company n/k/a American Bankers Life Assurance Company of Florida*, No. 03-CV-2008-900291, in the Circuit Court of Montgomery County, Alabama; *Coates v. MidFirst Bank*, 2:14-cv-01079 (N.D. Ala., certified July 29, 2015); *Walls v. JP Morgan Chase Bank, N.A*., 3:11-cv-00673 (W.D. Ky., certified October 13, 2016); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 3:15-md-02672 (N.D. Cal., settlements approved October 25, 2016 and May 17, 2017); *Rowe, et al. v. E.I. DuPont De Nemours & Co*.; 1:06-cv-01810 (D. NJ, certified March 22, 2011); *Krueger v. Wyeth*; 03-cv-2496 (S.D. Cal., class certified and settlement approved September 1, 2020); and, *In re Takata Airbag Products Liability Litig.*, 1:15-md-02599 (S.D. Fla.).  Beasley Allen's class action cases involve a variety of complex legal issues.

5.   **Multi-District Litigation (Lead or Co-Lead Counsel)** - Beasley Allen is one of the country's leading firms involved in complex civil litigation on behalf of claimants, having represented hundreds of thousands of people.  Attorneys from Beasley Allen have been selected by Federal Courts as lead counsel or co-lead counsel in the following complex multidistrict litigations:

a.   *In Re Vioxx Products Liability Litigation*, United States District Court for the Eastern District of Louisiana, Judge Eldon E. Fallon, MDL No. 1657; (Andy Birchfield, Shareholder of Beasley Allen);

b.   *In Re Reciprocal of America (ROA) Sales Practices Litigation*, United States District Court for the Western District of Tennessee, Judge J. Daniel Breen,

MDL No. 1551; (Dee Miles and Jere Beasley, both Shareholders in Beasley Allen);

c.   *In Re American General Life and Accident Insurance Company Industrial Life Insurance Litigation*, United States District Court for the District of South Carolina, Judge Cameron McGowan Currie, MDL No. 11429; (Dee Miles, Shareholder of Beasley Allen);

d.   *In Re Dollar General Corp. Fair Labor Standards Acts Litigation*, United States District Court for the Northern District of Alabama, Western Division, Judge U.W. Clemon, MDL No. 1635; (Dee Miles, Shareholder of Beasley Allen);

e.   *In re: Xarelto (Rivaroxaban) Products Liability Litigation*, District of Louisiana, Judge Eldon E. Fallon, Eastern MDL No. 2592;

f.   *Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, United States District Court for the District of New Jersey, Judge Freda L. Wolfson, MDL No. 2738 (Leigh O'Dell, Shareholder of Beasley Allen);

g.   *Bruner et al v. Polaris Industries, Inc. et al*, United States District Court for the District of Minnesota, Judge David T. Schultz Case 0:18-cv-00939-WMW-DTS, 0:18-cv-00975-WMW-DTS (Dee Miles, Shareholder of Beasley Allen)[1];

h.   *Weidman et al v. Ford Motor Company*, United States District Court of the Eastern District of Michigan, Judge Gershwin A. Drain, 2:18-cv-12719 (Dee Miles, Shareholder of Beasley Allen)[2].

---

[1] Beasley Allen was appointed as interim co-lead counsel.
[2] Beasley Allen was appointed as interim co-lead counsel.

  i. *Sharon Cheng, et al. v. Toyota Motor Corporation, et al.*, United States District Court, Eastern District of New York, Judge William F. Kuntz, II, 1:20-cv-00629-WFK-CLP (Dee Miles, Shareholder of Beasley Allen)[3];

  j. *Tucker Oliver, et al. v. Honda Motor Company Limited, et al.*, United States District Court, Eastern District of Alabama, Judge Madeline Hughes Haikala, 5:20-cv-006666-MHH (Dee Miles, Shareholder of Beasley Allen)[4]; and,

  k. *The K's Inc. v. Westchester Surplus Lines Insurance Company*, United States District Court, Northern District of Georgia, Judge William M. Ray, II, 1:20-cv-1724-WMR (Dee Miles, Shareholder of Beasley Allen).

  6. **<u>Multi-District Litigation (Lead or Co-Lead Counsel)</u> -** Beasley Allen has been appointed to the Plaintiff's Executive Committee and/or Steering Committee in many complex litigations. All of these multidistrict litigations involved multiple claims against multiple defendants, which required excellent organization and leadership from our attorneys. Beasley Allen has been appointed to the following MDL complex litigation cases:

  a. *In Re: Motor Fuel Temperature Sales Practices Litigation*, United States District Court for the Middle District of Kansas, Judge Kathryn Vratil, MDL No. 1840;

  b. *Bextra/Celebrex, Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, United States District Court for the Northern District of California, Judge Charles R. Breyer, MDL No. 1699;

  c. *In Re: Vioxx Products Liability Litigation*, United States District Court for the Eastern District of Louisiana, Judge Eldon E. Fallon, MDL No. 1657;

  d. *In Re: Actos (Pioglitazone) Products Liability Litigation*, United States District Court for the Western District of Louisiana, Judge Rebecca F. Doherty, MDL No. 2299;

---

[3] Beasley Allen was appointed as interim co-lead counsel.
[4] Beasley Allen was appointed as interim co-lead counsel.

e.   *In Re: Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, United States District Court for the Eastern District of Pennsylvania, Judge Cynthia M. Rufe, MDL No. 2342;

f.   *In Re: Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*, United States District Court District of New Jersey, Judge Garrett E. Brown, Jr., MDL No. 2243;

g.   *In Re: Fosamax Products Liability Litigation*, United States District Court, Southern District of New York, Judge John F. Keenan, MDL No. 1789;

h.   *In Re: Depuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, United States District Court for the Northern District of Ohio, Judge David A. Katz, MDL No. 2197;

i.   *In Re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, US District Court for the Northern District of Texas, Judge Ed Kinkeade, MDL No. 2244;

j.   *In Re: Biomet M2a Magnum Hip Implant Products Liability Litigation,* US District Court for the Northern District of Indiana, Judge Robert L. Miller, Jr., MDL No. 2391;

k.   *In Re: Prempro Products Liability Litigation*, United States District Court, Eastern District of Arkansas, Western Division, Judge Billy Roy Wilson, MDL No. 1507;

l.   *In Re: Mirena IUD Products Liability Litigation*, United States District Court, Southern District of New York, Judge Cathy Seibel, MDL No. 2434;

m.   *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, United States District Court, District of Massachusetts, Judge Douglas P. Woodlock, MDL No. 2428;

n.   *In Re: American Medical Systems, Inc. Pelvic Repair Systems Products Liability Litigation*, United States District Court, Southern District of Ohio, Judge Joseph R. Goodwin, MDL No. 2325;

o.   *In Re: C.R. Bard, Inc. Pelvic Repair Systems Products Liability Litigation*, United States District Court, Charleston Division, Judge Joseph R. Goodwin, MDL No. 2187;

p.  *In Re: Boston Scientific Corp. Pelvic Repair Systems Products Liability Litigation*, United States District Court, Southern District of West Virginia, Judge Joseph R. Goodwin, MDL No. 2326;

q.  *In Re: Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation*, United States District Court, Charleston Division, Judge Joseph R. Goodwin, MDL No. 2327;

r.  *In Re: Coloplast Corp. Pelvic Repair Systems Products Liability Litigation*, United States District Court, Charleston Division, Judge Joseph R. Goodwin, MDL No. 2387;

s.  *In Re: Google Inc. Gmail Litigation*; United States District Court for the Northern District of California, San Jose Division, Judge Lucy H. Koh, MDL No. 2430;

t.  *In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, United States District Court for the Central District of California, Judge James V. Selna, MDL No. 2151;

u.  *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*; California Northern District (San Francisco), Hon. Charles R. Breyer, Case No. 3:15-md-02672-CRB;

v.  *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, District of Louisiana, Judge Eldon E. Fallon, Eastern MDL No. 2592;

w.  *In Re: Target Corporation Customer Data Security Breach Litigation*, United States District Court for the District of Minnesota, Judge Paul A. Magnuson, MDL No. 2522;

x.  *In Re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, United States District Court for the District of South Carolina, Judge Richard M. Gergel, MDL No. 2502;

y.  *In Re: Blue Cross Blue Shield Antitrust Litigation*, United States District Court for the Northern District of Alabama, Judge R. David Proctor, MDL No. 2406;

z.  *In Re: Androgel Products Liability Litigation,* United States District Court for the Northern District of Illinois, Judge Matthew F. Kennelly, MDL No. 2545;

aa.     *In Re: The Home Depot, Inc., Customer Data Security Breach Litigation*, United States District Court for the Northern District of Georgia, Judge, Thomas W. Thrash, Jr., MDL No. 2583;

bb.     *In Re: Takata Airbag Products Liability Litigation*, United States District Court for the Southern District of Florida, Judge Federico A. Moreno, MDL No. 2599, serving on a discovery committee responsible for two Auto Manufacturer's discovery[5];

cc.     *In Re: Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, United States District Court for the Northern District of California, Judge Edward Chin, MDL No. 2777;

dd.     *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, United States District Court of the Eastern District of Louisiana, Judge Carl J. Barbier, MDL No. 2179;

ee.     *In re: Invokana (Canagliflozin) Products Liability Litigation,* United States District Court District of New Jersey, Judge Lois H. Goodman, MDL No. 2750;

ff.     *In re: Proton-Pump Inhibitor Products Liability Litigation*, United States District Court District of New Jersey, Judge Claire C. Cecchi, MDL No. 2789;

gg.     *In Re: Apple Inc. Device Performance Litigation,* United States District Court for the Northern District of California, Judge Edward J. Davila, MDL 2827;

hh.     *In Re: JUUL Labs, Inc. Marketing, Sales Practices & Products Liability Litigation,* United States District Court for the Northern District of California, Judge William H. Orrick, MDL 2913;

ii.     *In re ZF-TRW Airbag Control Units Products Liability Litigation*, United States District Court Central District of California, Judge John A. Kronstadt, MDL No. 2905;

jj.     *In Re: Zantac (Ranitidine) Products Liability Litigation*, United States District Court for the Southern District of Florida, Judge Robin L. Rosenberg, MDL No. 2924;

---

[5] Discovery Committee appointment only.

kk. *In Re: Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, United States District Court for the Western District of New York, Judge Geoffrey Crawford, MDL No. 1:19-mc-2903;

ll. *In Re: Robinhood Outage Litigation*, United States District Court for the Northern District of California, Judge James Donato, Case No. 20-cv-01626-JD; and

mm. *In Re: Paraquat Products Liability Litigation,* United States District Court for the Southern District of Illinois, Judge Nancy J. Rosenstengel, Case No. 3:21-md-03004-NJR.

7. Additionally, Beasley Allen attorneys have some of this country's largest verdicts and settlements in the following categories:

a. Largest verdict against an oil company in American history, $11,903,000,000, in *State of Alabama v. Exxon*, filed in the Circuit Court of Montgomery County, Alabama, Case No. CV-99-2368, Judge Tracy S. McCooey;

b. Largest environmental settlement in American history, $750,000,000, in *Tolbert v. Monsanto*, filed in the United States District Court for the Northern District of Alabama, Civil Action No. CV-01-1407PWG-S, Judge Paul W. Greene;

c. Largest predatory lending verdict in American history $581,000,000, in *Barbara Carlisle v. Whirlpool*, filed in the Circuit Court of Hale County, Alabama, Case No. CV-97-068, Judge Marvin Wiggins;

d. Largest average wholesale price litigation verdict, $215,000,000, in *State of Alabama v. AstraZeneca*, filed in the Circuit Court of Montgomery County, Alabama, Case No. CV-05-219.10, Judge Charles Price (Dee Miles as Co-Lead Counsel);

e. Second largest average wholesale price litigation verdict, $114,000,000, in *State of Alabama v. GlaxoSmithKline - Novartis*, filed in the Circuit Court of Montgomery County, Alabama, Case No. CV-05-219.52, Judge Charles Price (Dee Miles as Co-Lead Counsel);

f.  Third largest average wholesale price litigation verdict, $78,000,000, in *State of Alabama v. Sandoz, Inc.*, filed in the Circuit Court of Montgomery County, Alabama, Case No. CV-05-219.65, Judge Charles Price (Dee Miles as Co-Lead Counsel);

g.  Average wholesale price litigation verdict, $30,200,000, in *State of Mississippi v. Sandoz, Inc.*, filed in the Chancery Court of Rankin County, Mississippi, Case No. 09-00480, Judge Thomas L. Zebert (Dee Miles as Co-Lead Counsel);

h.  Average wholesale price litigation verdict, $30,262.052, in *State of Mississippi v. Watson Laboratories, Inc., et al.*, filed in the Chancery Court of Rankin County, Mississippi, Case Nos. 09-488, 09-487, and 09-455, Judge Thomas L. Zebert (Dee Miles as Co-Lead Counsel);

i.  Air Pollution Verdict, $20,709,000, in *Action Marine, et al. v. Continental Carbon Co.*, filed in the United States District Court for the Middle District of Alabama, Case No. 3:01-cv-994, Judge Mark E. Fuller;

j.  Hormone Therapy Litigation Verdict, $72,600,000, *in Elfont v. Wyeth Pharmaceuticals, Inc., et al.*, *Mulderig v. Wyeth Pharmaceuticals, Inc., et al.*, *Kalenkoski v. Wyeth Pharmaceuticals, Inc., et al.*, filed in the County of Philadelphia, Court of Common Pleas, Case Nos. July Term 2004, 00924, 00556, 00933, Judge Gary S. Glazer;

k.  Hormone Therapy Litigation Verdict, $5,100,100, in *Okuda v. Wyeth Pharmaceuticals, Inc.*, filed in the United States Distruct Court of Utah, Northern Division, Case No. 1:04-cv-00080-DN, Judge David Nuffer;

l.  Talcum Powder Litigation Verdict, $72,000,000, in *Fox v. Johnson & Johnson, et al.*, filed in the Circuit Court of St. Louis City, Case No. 1422-CC03012-01, Judge Rex M. Burlison; and,

m. Talcum Powder Litigation Verdict, $55,000,000, *in Ristesund v. Johnson & Johnson, et al.*, filed in the Circuit Court of St. Louis City, Case No. 1422-CC03012-01, Judge Rex M. Burlison.

8. **<u>Andy D. Birchfield – Personal Qualifications & Experience</u>** – Mr. Birchfield received his J.D. with honors from Faulkner University's Thomas Goode Jones School of Law in 1992. Mr. Birchfield is admitted to practice law in the state of Alabama. He is also admitted to practice before the United States Supreme Court, the United States Circuit Court for the Eleventh Circuit, the United States Court of Appeals for the Fifth Circuit, and numerous federal district courts. He has been admitted *pro hac vice* in federal district courts throughout the country. Mr. Birchfield served as the Co-Lead Counsel of *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, MDL No. 2592 (E.D. La.), a multi-district litigation that resulted in the successful resolution of over 25,000 claims for $775 million. Mr. Birchfield also served as Co-Lead Counsel in *In re: Vioxx Prods. Liab. Litig.,* MDL No. 1657 (E.D. La.), a multi-district litigation that resulted in successful resolution of over 55,0000 claims for $4.85 billion. Mr. Birchfield is a nationally-recognized leader in complex litigation.

9. **<u>David B. Byrne, III - Personal Qualifications & Experience</u>** – Mr. Byrne received his undergraduate degree from The Citadel in 1989 and his law degree from the Cumberland School of Law in 1992. He is a member of the Alabama State Bar and has been admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Middle District of Alabama, the United States District Court for the Southern District of Alabama, and the United States District Court for the Northern District of Alabama. Further, he has been admitted to practice *pro hac vice* by more than 30 U.S. District Courts and state trial courts. Following his graduation from law school, Mr. Byrne served as a Deputy Alabama Attorney General (Criminal Trials Division) and as a law clerk to U.S. District Judge Robert Varner and Alabama Court of

Criminal Appeals Judge John M. Patterson. He then entered private practice with another Montgomery, Alabama law firm before joining Beasley Allen in February 2001. Mr. Byrne currently serves as the Chair of the Alabama State Bar's Federal Court Practice Section. He is also the President of the Middle District of Alabama Chapter of the Federal Bar Association. In 2021, he was appointed to serve on the Middle District of Alabama's Bar Advisory Committee and currently serves as the Co-Chair of the Middle District's Pro Se Assistance Program. Mr. Byrne is a trial attorney in Beasley Allen's Mass Torts Section, handling claims against pharmaceutical, medical device, and consumer product manufacturers. Before joining that section, he served as a trial attorney in the firm's Toxic Torts Section where he handled numerous complex environmental cases in state and federal courts throughout the United States. During that time, Mr. Byrne handled cases involving wide-ranging topics such as drinking water contamination, toxic air emissions, contaminated waste-water discharges, toxic exposure, improper landfill activities, petroleum spills, medical monitoring claims, and soil and groundwater contamination. Additionally, Mr. Byrne has participated in numerous class action and/or mass-action cases including the following: *Richard A. Rowe, et al. v. E. I. du Pont de Nemours & Company*, U. S. District Court (NJ*); April Krueger, et al. v. Wyeth, Inc.,* U.S. District Court (N.D. Cal.); *Antonia Tolbert, et al. v. Monsanto Company, et al.,* U.S. District Court (N.D. AL); *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, MDL No. 2592, District Court (E.D. La.); *In Re: Biomet M2a Magnum Hip Implant Products Liability Litigation,* MDL No. 2391, U.S. District Court (N.D. Ind.); *Charles Riley, et al. v. Continental Carbon Company, et al.,* Circuit Court (Russell County, AL); *City of Ponca City, et al. v. Continental Carbon Company, et al.,* District Court (Kay County, OK); *Felicia Palmer, et al. v. 3M Company, et al.,* District Court (Washington County, MN); *McCracken, et al. v. Appleton Papers, Inc.;* U.S. District Court (S.D. OH); and, *Riverside Texaco, et al. v. Occidental Chemical Corp, et al.,* U.S. District Court (N.D. AL); *June, et al. v. Union Carbide, et al.,* U.S. District Court (M.D. CO); *In re: Motor Fuel Temperature Sales Practices Litigation*, U. S. District Court (KS);

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, MDL 2179,* U.S. District Court (E.D. La.); *In Re: American Medical Systems, Inc. Pelvic Repair Systems Products Liability Litigation*, MDL No. 2428, U.S. District Court (S.D. OH); *In Re: C.R. Bard, Inc. Pelvic Repair Systems Products Liability Litigation*, MDL No. 2187, U.S. District Court (S.D. WV); *In Re: Boston Scientific Corp. Pelvic Repair Systems Products Liability Litigation*, MDL No. 2326, U.S. District Court (S.D. WV);  *In Re: Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation,* MDL No. 2327, U.S. District Court (S.D. WV);  *Chesney, et al, v. Tennessee Valley Authority*, U.S. District Court (E.D. TN).  In connection with the BP Oil Spill disaster, Mr. Byrne represented the State of Alabama, Gulf County, Florida, Santa Rosa County, Florida, Walton County, Florida, and numerous municipalities and businesses throughout Alabama and Northwest Florida. Further, Mr. Byrne served as counsel in numerous ground-breaking cases including the landmark $700-million toxic tort settlement with Solutia, Monsanto and Pharmacia over PCB contamination in Anniston, Alabama; the federal trial against the Tennessee Valley Authority over the company's catastrophic release of more than 1 billion gallons of coal ash sludge from an impoundment at its Kingston Fossil Plant, which resulted in an assessment of more than $1 billion in cleanup costs; and, as co-lead trial counsel for various municipalities affected by carbon black air pollution that resulted in ten-of-millions of dollars in jury verdicts and settlements.

### Work Performed by Beasley Allen, P.C. and Hours and Costs Expended

10.    Beasley Allen has performed substantial work in this litigation to identify, investigate and prosecute the potential class action claims in this case. This has included pre-filling investigation and research into the claims in this case; communications with the named Plaintiffs; legal research concerning the claims that should be brought in the initial and amended complaint; drafting and filing class action complaints in Florida and California; communications with class members; surveying of class members; drafting and service of pre-suit disclosure letters; preparation and service of FOIA document requests; consultation with potential experts regarding

this case; conferring with other plaintiffs' attorneys concerning case management and organization; and, assisting with motion practice, including in the JPML in support of consolidation.

11.     As discussed further in the accompanying motion, the Plaintiffs' requested attorneys' fees, costs and incentive awards are fair and reasonable.   Moreover, all the work performed by Beasley Allen, P.C. in this matter was reasonable and necessary to the prosecution of the action.   To date, Class Counsel have spent hundreds of hours investigating and litigating this case, and have personally:

- reviewed thousands of pages of documents;
- engaged in early written and telephonic "meet and confer" discussions with counsel for Defendant Johnson & Johnson Consumer Inc. ("JJCI");
- interviewed and corresponded with dozens of witnesses and potential class representatives in numerous states and in some instances their attorneys as well;
- engaged in propounding Freedom of Information Act requests;
- assisted in preparing and filing the complaints in the *Dominguez* and *Goodwin* actions;
- vetted experts in this action;
- conducted investigations with clients regarding their experiences with JJCI's recall program;
- participated in drafting and filing Plaintiffs' interested party response in support of consolidation before the Joint Panel on Multidistrict Litigation;
- engaged in the voluntary exchange of information with JJCI;
- worked with co-counsel on related actions;
- assisted in developing confirmatory discovery;
- executed a non-disclosure agreement with JJCI;
- participated in drafting and filing Plaintiffs' motion for appointment of interim lead counsel for the putative class;
- worked with co-counsel on retaining a Claims Administrator;
- participated in drafting a motion for preliminary approval of class

action settlement;

- reviewed and edited notice documents;
- participated in negotiating and drafting a protective order with JJCI;
- conducted confirmatory deposition discovery on JJCI; and,
- prepared and responded to substantial motions.

12.     The following table accurately sets forth the total hours expended on this litigation by attorneys and legal professionals at Beasley Allen.

| Position/Title | First Name | Last Name | Sum of Hours | Fee Rate | Sum of Fee Rate |
|---|---|---|---|---|---|
| Paralegal | Amber | Killough | 18.5 | $220 | $4,070.00 |
| Partner | David | Byrne | 383.3 | $800 | $306,640.00 |
| Partner/Section Head | Andy | Birchfield | 1.7 | $850 | $1,445.00 |
| GRAND TOTAL | | | 403.5 | | $312,155.00 |

13.     The billable hours set forth above are submitted for the purpose of the Court engaging in a lodestar cross-check as deemed necessary, consistent with applicable law in the Eleventh Circuit. *See Waters v. Inter. Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (noting "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). Further, the hourly rates set forth above are based on the experience and skill of Beasley Allen's relevant counsel and staff.  Similar rates have been approved for these same Beasley Allen attorneys in other class action cases.  See, *Krueger v. Wyeth, Inc.*, Case 3:03-cv-02496-JAH, Doc. No. 432 (S.D. Calif., 09/01/2020). Attorneys with similar seniority and experience have been approved for comparable or higher rates by courts in this District. *See, e.g., Vital Pharms., Inc v. Pepsico, Inc.*, 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021) (approving a $1,313 hourly rate for a New York partner).

14.     Also, through June 2, 2022, Beasley Allen has expended $5,124.78 in unreimbursed expenses in connection with the prosecution of this litigation.  The expenses were actually and

necessarily incurred in this case and are reflected in the records of our firm maintained in the normal course of business. The following table accurately sets forth the total expenses incurred by our firm in this litigation.

| Expense Item | Amount | Matter ID | Expense Details |
|---|---|---|---|
| Travel Expense | $1,545.97 | 202100008077 | Deposition Travel |
| Postage | $92.75 | 202100008077 | Mailings to Class Member/Reps |
| Printing | $492.18 | 202100008077 | Discovery Documents and Mailings |
| FedEx Deliveries | $54.58 | 202100008077 | Deposition Doc Shipments |
| Court Reporting & Video | $2,935.80 | 202100008077 | Deposition of Derek Henderson |
| Zoom Conference | $3.50 | 202100008077 | Calls with Class Co-Counsel |
| GRAND TOTAL | $5,124.78 | | |

15.      Beasley Allen has substantial experience and resources to bring to bear in this matter on behalf of Plaintiffs and the proposed settlement class. We have committed, and will continue to commit, our experience and resources to adequately represent Plaintiffs and the proposed class through the conclusion of this action.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of June 2022, in Montgomery, Alabama.

/s/ David B. Byrne, III
DAVID B. BYRNE, III

/s/ Andy D. Birchfield, Jr.
ANDY D. BIRCHFIELD, Jr.

# SETH MEYER

# Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:                                              MDL CASE NO.: 3015

JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
_____/


THIS DOCUMENT RELATES TO: ALL CASES
_____/


**DECLARATION OF SETH MEYER IN SUPPORT OF PLAINTIFFS' MOTION IN
SUPPORT OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

I, Seth Meyer, hereby declare as follows:

1.      I am an attorney and partner at Keller Postman LLC. I am admitted *pro hac vice* to

appear and practice before this Court as Counsel for Plaintiffs in the matter of *Goodwin, et al. v.*

*Johnson & Johnson Consumer Inc.*, 0:21-cv-61890-AHS (S.D. Fla.) (the "*Goodwin* Plaintiffs").

By order of this Court, the *Goodwin* Plaintiffs' action was consolidated with *Serota v. Johnson &*

*Johnson Consumer Inc.*, 0:21-cv-61103-AHS (S.D. Fla.). The *Serota* action was the first filed case

seeking class relief arising out of the presence of benzene in Defendants' sunscreen products. I am

also Counsel for Plaintiffs in the matter of *Dominguez, et al. v. Johnson & Johnson Consumer Inc.*,

4:21-cv-05419-JD (N.D Cal.) (the "*Dominguez* Plaintiffs"). The *Dominguez* Plaintiffs' action was

consolidated with *Brennan, et al. v. Johnson & Johnson Consumer, Inc.,* 4:21-cv-04869-KAW

(N.D. Cal.). The *Brennan* action was the second filed case seeking class relief arising out of the

presence of benzene in Defendants' sunscreen products. The *Brennan* and *Dominguez* cases were

transferred to this Court for consolidated pre-trial proceedings pursuant to the JPML's October 8, 2021, Transfer Order.

2.      I have prepared this Declaration in Support of Plaintiffs' Motion in Support of Attorneys' Fees, Costs, and Incentive Award, which is filed contemporaneously herewith. Plaintiffs' Motion for Appointment ("Motion") respectfully seeks attorneys' fees in the amount of Two Million Five Hundred Thousand Dollars to the firms of Aylstock, Witkin, Kreis & Overholtz PLLC; Bradley/Grombacher LLP, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; Keller Postman LLC; and, Walsh Law, PPC. Plaintiffs' Motion further seeks reimbursement in the amount of One Hundred Thousand Dollars for reasonable costs incurred in the prosecution of this action.  Finally, the motion requests that, as to the service payments sought, the Court retain jurisdiction over this matter until the final disposition of *Johnson v. NPAS Sols, LLC,* 975 F.3d 1244 (11th Circ. 2020).

3.      The following statements are based on my personal knowledge and review of the files and, if called on to do so, I could and would testify competently thereto.

## EXPERIENCE OF COUNSEL

4.      Keller Postman LLC is a national plaintiffs' law firm representing a broad array of clients in class and mass actions, individual arbitrations, and multidistrict litigation matters at the trial and appellate levels across federal and state courts. Serving hundreds of thousands of clients in litigation and arbitration, we have prosecuted high-profile antitrust, employment, privacy, consumer-rights, and product liability cases (involving medical devices, pharmaceutical products, and a wide variety of other consumer products). Our firm also acts as plaintiffs' counsel in high-stakes public-enforcement actions. Keller Postman has broken new ground in our approach to business and operations—including through building an in-house client services team to serve our

clients using cutting-edge technology and processes—which contributed to our being named Trial Strategy Innovation Law Firm of the Year by the National Law Journal and American Lawyer Media at the 2021 Elite Trial Lawyers Awards. Our business infrastructure ensures we can successfully litigate thousands of claims at once.

5.      I have been a member of the State Bar of New York since 2014, a member of the State Bar of Illinois since 2016, a member of the State Bar of Michigan since 2018, a member of the State Bar of Texas since 2020, a member of the State Bar of Utah since 2020, and a member of the State Bar of Wyoming since 2021. I graduated from the University of Virginia School of Law, where I was elected to Order of the Coif and served as In Brief Editor on the Managing Board of the Virginia Law Review. I earned my undergraduate degree in three years, *summa cum laude,* from Northwestern University. I also served as a law clerk for Judge Richard F. Suhrheinrich of the U.S. Court of Appeals for the Sixth Circuit.

6.      I was promoted to partner at Keller Postman at the end of 2020, then known as Keller Lenkner LLC. Today, I represent thousands of plaintiffs in arbitration and litigation at the trial and appellate levels. My practice focuses on antitrust, product liability, class actions, appellate, and bankruptcy matters with more than 8 years of experience litigating dozens of cases. I have also previously handled cases involving a broad array of subject matters, including contracts, fraud, labor and employment, mergers and acquisitions, securities, and unfair trade practices.

7.      Of my notable representations, I act on behalf of state and local government entities in connection with the opioid crisis, representing the State of Arizona and 18 municipalities. I also coordinate 41 class actions throughout the country against opioid defendants on behalf of insurance ratepayers. This work helped lay the foundation for the launch of Keller Postman's Public

Institutions Practice. I also represent the States of Texas, Idaho, Mississippi, North Dakota, and South Dakota in the States' antitrust litigation against Google for monopolizing products and services used by advertisers and publishers in online-display advertising.

8.      When I first joined Keller Postman, I helped develop the firm's revolutionary arbitration practice, including pursuing individual arbitrations for tens of thousands of employees or consumers whose claims are subject to arbitration clauses with class-action waivers. To date, Keller Postman has secured more than $375 million in settlements for more than 150,000 consumers and employees nationwide. Most recently, I applied this innovative legal strategy when Keller Postman filed more than 1,000 individual arbitrations on behalf of underpaid delivery drivers against NPC International, the nation's largest Pizza Hut franchisee. I successfully steered those drivers' claims to resolution after the company filed bankruptcy in July 2020. The claims were moved to the U.S Bankruptcy Court in the Southern District of Texas, where the action ultimately settled for more than $10 million. This matter is significant, as we received one of the first rulings citing the precedent set by *Epic Systems v. Lewis*, which binds companies to their arbitration agreements.

9.      I am also responsible for launching Keller Postman's Data Breach Practice. As privacy and data security issues continue to be a primary concern for every industry, it is pivotal for Keller Postman to step in and help define legal precedent for this evolving area of law. I currently represent several certified and putative classes of individuals whose information has been compromised by through one or more data breaches.

10.      I have argued cases before trial courts and courts of appeal, and have served as lead counsel at trial. I have authored briefs submitted federal district courts, federal circuit courts, and state appellate courts. I serve as an adjunct professor at the Northwestern University Weinberg

College of Arts and Sciences Center for Legal Studies. I have been honored by Super Lawyer's Magazine in the area of class action and mass tort litigation, named a 2021 Rising Star in Law by Crain's Chicago Business, listed on the National Trial Lawyers' 40 Under 40, and named a 2021 Lincoln Fellow by the Claremont Institute. Before joining Keller Postman, I was also a representative of the International Chamber of Commerce's Young Arbitrator's Forum, which annually selects a handful of representatives nationwide.

11.     My team and I have significant class action and multidistrict litigation experience. Notable examples of this experience include:

- *West et al v. Amazon.com Inc.*, Case No. 2:21-cv-00694, United States District Court for the Western District of Washington
- *C.O., a minor, v. Amazon.com Inc. et al*, Case No. 2:19-cv-00910, United States District court for the Western District of Washington
- *Fishon et al v. Peloton Interactive, Inc.*, Case No. 1:19-cv-11711, United States District Court for the Southern District of New York
- *Olivia Van Iderstine et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888, United States District Court for the Central District of California
- *TopDevs, LLC et al v. LinkedIn Corporation*, Case No. 5:20-cv-08324, U.S. District for the Northern District of California
- *The State of Texas et al v. Google, LLC*, Case No. 4:20-cv-00957, U.S. District Court for the Eastern District of Texas
- *Richard A. Ross and Fieldstone Ventures, LLC v. EQT Corporation et al.*, No. GD-21-011948, Fifth Judicial District of Pennsylvania, County of Allegheny
- *Hestrup & Peiss v. DuPage Medical Group. Ltd. d/b/a DuPage Medical Group,* Case No. 2021L000937, 18th Judicial Court, DuPage County
- *Alexander v. Otis Bowen*, Case No. No. 43D04-2104-CT-000019, Kosciusko Superior Court 4

- *Gilbert v. AFTRA Retirement Fund et al*, Case No. 1:20-cv-10834-ALC, U.S. District Court for the Southern District of New York
- *Hall, et al v. AspenPointe, Inc., et al,* Case No. 2020CV32175, 4th District Court, County of El Paso
- *Hackerott v. Central Kansas Orthopedic Group, Inc., et al*, Case No. 2020-cv-000120, District Court of Barton County
- *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL 2885
- *In re: Zantac (Ranitidine) Prods. Liab. Litig.,* MDL 2924
- *In re: Paragard IUD Prods. Liab. Litig.,* MDL 2974
- *In re: Onglyza (Saxagliptin) and Kombiglyze XR (Saxagliptin and Metformin) Prods. Liab. Litig.*, MDL 2809

12.     Keller Postman represents tens of thousands of clients in some of the largest multi-district product liability cases in the country. Our team also continues to be selected to lead federal and state product-liability litigation through appointments to leadership positions. The firm's attorneys hold court-appointed leadership positions in the Zantac MDL (Partner Ashley Keller chairs the Law & Briefing Committee), 3M Combat Arms Earplugs MDL (Partner Nicole Berg sits on the Law & Briefing Subcommittee), Paragard Intrauterine Device MDL (Partner Nicole Berg sits on the Plaintiffs' Executive Committee), and Onglyza and Kombiglyze MDL (Associate Ashley Barriere leads the Law & Briefing Committee).

13.     Our office has performed substantial work in this litigation to identify, investigate and prosecute the potential class action claims in this case. This has included pre-filling investigation and research into the claims in this case; communications with the named Plaintiffs; legal research concerning the claims that should be brought in the initial and amended complaint; drafting and filing the initial class action complaints in Florida and California as well as the amended complaints; communications with class members; surveying of class members; drafting and service of pre-suit disclosure letters; preparation of document requests; consultation with

potential experts regarding this case; conferring with other plaintiffs' attorneys concerning case management and organization; and engaging in motion practice, including in the JPML in support of consolidation. Such work has provided an unsurpassed base of knowledge about this case. This work allows us the deep insight into the litigation, access to resources and pivotal information, and the utmost confidence to successfully drive claims forward in this case on behalf of plaintiffs.

14.     My firm and I are committed to vindicating the rights of the named Plaintiffs and putative class. Our team has experience litigating product-liability claims involving a wide variety of consumer products, pharmaceuticals, and medical devices. We are also equipped with deep knowledge and experience in false advertising claims. We advocate relentlessly for our clients, we develop and harness our own technology to facilitate a well-managed litigation process, and we commit the resources necessary to succeed. Furthermore, 80% of Keller Postman's partners and associates hail from national defense-oriented law firms and 72% have practiced at AmLaw25 firms and elite trial boutiques. Because our lawyers have experience on both sides of the courtroom, this allows our team to anticipate our opponents' moves and better understand their litigation and negotiation strategies.

**<u>COUNSEL'S FEES AND COSTS</u>**

15.     As discussed further in the accompanying motion, Keller Postman has committed significant time and resources, described in the attached Exhibits A and B, to the successful resolution of this litigation.

16.     Keller Postman has incurred an aggregate $159,600.00 in time and $1,560.10 in expenses in pursuing these claims.

17.     All time spent and costs incurred were necessary to the prosecution of this action, would normally have been billed to a client paying for services on a non-contingency basis, and

are reasonable for a case such as this, in which substantial discovery and investigation took place since the filing of the Complaint.  Keller Postman is prepared to submit receipts, if requested by the Court, in support of Keller Postman's costs award request.

18.     As demonstrated in the Motion, the risk of non-payment inherent in contingency fee contracts represents a gamble that Keller Postman could be left unpaid. For this reason, courts have enhanced the fee award to compensate for this risk. Here, Keller Postman represented Plaintiffs and the Class on a contingent fee basis and has therefore undertaken a risk of non-payment. Keller Postman took this risk, thereby making the decision to utilize the firm's time, money, and resources on this litigation as opposed to other potential employment opportunities. This risk is amplified given the nature of a nationwide class action regarding complex claims and the risks of losing the case on the merits or a possible appeal.

19.     If Keller Postman did not reach the Settlement Agreement with Defendant, this case would have likely led to trial, thereby causing substantial increased costs to all parties that would not have been reimbursed without Plaintiffs prevailing.

20.     From Plaintiffs and Keller Postman's initial investigations of the case, Keller Postman anticipated the need to, and was ready to, spend hundreds of hours litigating this case. This litigation carried the risk that Plaintiffs might not prevail on their claims, due to the complex and novel nature of the factual and legal claims at issue. This risk bore the possibility that Keller Postman would receive no compensation for its time, effort, and resources. Despite these risks, Keller Postman continued to prosecute the case on behalf of Plaintiffs and the Settlement Class.

21.     As is the general practice of most law firms, each of the attorneys and support staff at the Keller Postman are responsible for keeping track of their billable time. I have personally reviewed all time and have used billing judgment to ensure that duplicative or unnecessary time

has been excluded and that only time reasonably devoted to the litigation has been included. Keller Postman further worked in cooperation with Class Counsel to ensure case management, including dividing tasks and avoiding duplicative work.

22.     I believe the rates are reasonable. Based on my knowledge, experience and research, the hourly rates charged by Keller Postman are within the range of market rates charged for similar work performed by attorneys of equivalent experience, skill, and expertise. I became familiar with these rates by: (1) discussing fees with other class action attorneys; (2) reviewing prior attorneys' fees applications; (3) obtaining declarations regarding prevailing market rates filed by attorneys seeking similar fees; and (4) by researching surveys, articles, and legal opinions regarding the proper rates of fees for attorneys of similar skill and experience.

23.     Furthermore, the nature of the contingency fee in this litigation provides little doubt that Keller Postman diligently worked to ensure efficiency in its work product due to the risk of not receiving compensation for the firm's time, labor, and resources. See *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical [risky, contingent] case where plaintiff's lawyer engages in churning."). Our legal services performed in conjunction with this litigation were wholly on a contingent fee basis. Therefore, Keller Postman has assumed the risk of nonpayment in litigating and prosecuting this action and have at all times ensured that sufficient resources were made available. Given the contingent nature of this case, Keller Postman risked nonpayment, particularly given that JJCI was represented by a first-rate law firm with significant experience litigating consumer class actions that vigorously represented liability and class certification in this case.

24.     These attorneys' fees are warranted and reasonable because of the substantial work and effort Keller Postman incurred to achieve the Settlement on behalf of the Class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of June 2022, in Chicago, Illinois.

/s/ Seth A. Meyer
SETH A. MEYER

# ALEXANDRA WALSH & KIMBERLY CHANNICK Declaration

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-md-03015-SINGHAL/Valle**

IN RE:                                              MDL CASE NO.: 3015

**JOHNSON & JOHNSON AEROSOL SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO: ALL CASES**
_____/

**DECLARATION OF ALEXANDRA WALSH IN SUPPORT OF PLAINTIFFS' MOTION**
**IN SUPPORT OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

I, Alexandra Walsh, hereby declare as follows:

      1.      I am an attorney and founding partner at Walsh Law PLLC.  I am admitted *pro*

*hac vice* to appear and practice before this Court as Counsel for Plaintiffs Johanna Dominguez

and Sharron Meijer in the matter of *Dominguez et al. v. Johnson & Johnson Consumer, Inc.*,

No. 4:21-cv-05419 (N.D. Cal.), and Christine Goodwin and Christina Geloso in the matter of

*Goodwin et al. v. Johnson & Johnson Consumer Inc.*, 0:21-cv-61890 (S.D. Fla.).

      2.      I have personal knowledge of the facts contained in the declaration and, if called

upon to do so, I could and would testify competently to the matters set forth herein.

      3.      Attached as Exhibit A to this declaration is an accurate and complete copy of my

timekeeping records.

      4.      My hourly rate is $950.  Attorneys of my similar seniority, experience, and

geographic location have been approved for comparable or higher rates.  *See, e.g.*, *Vital Pharms.,*

*Inc v. Pepsico, Inc.*, No. 20-CV-62415, 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021)

(approving a $1,313 hourly rate for a New York partner).  I graduated from Stanford Law School

in 2001.  Following law school, I completed a federal circuit clerkship and a Supreme Court of

the United States clerkship.  I have been practicing in complex litigations for more than 20 years,

including first and second chairing numerous jury trials.  I currently live in Washington D.C.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

DATED: June 2, 2022

By: */s/ Alexandra Walsh*
Alexandra Walsh

# EXHIBIT A

| Name | Date | Activities | Hours | Hourly Billable Rate |
|------|------|-----------|-------|---------------------|
| Alexandra Walsh | 7/23/2021 | Review research re legal claims and background materials re product, contamination, marketing. | 5.2 | 950 |
| Alexandra Walsh | 7/27/2021 | Review and revise filings. Strategy conference. | 1.2 | 950 |
| Alexandra Walsh | 8/3/2021 | Call with counsel for other plaintiffs re litigation strategy. Review and revise JPML statement | 1.4 | 950 |
| Alexandra Walsh | 9/27/2021 | Strategy re JPML presentation. | 0.8 | 950 |
| Alexandra Walsh | 9/29/2021 | Prep for JPML argument. | 1 | 950 |
| Alexandra Walsh | 9/30/2021 | Attend JPML hearing and present argument. | 1.3 | 950 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:                                                    MDL CASE NO.: 3015

JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
_____/

THIS DOCUMENT RELATES TO: ALL CASES
_____/

DECLARATION OF KIMBERLY CHANNICK IN SUPPORT OF PLAINTIFFS'
MOTION IN SUPPORT OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

I,   imberly Channick, hereby declare as follows:

1.       I am an attorney and senior associate at Walsh Law.  I am a member in good

standing of the bar of the State of California and am admitted to practice in this District.  I

practice before this Court as Counsel for Plaintiffs Johanna Dominguez and Sharron Meijer in

the matter of *Dominguez et al. v. Johnson & Johnson Consumer, Inc*., No. 4:21-cv-05419 (N.D.

Cal.) and Christine Goodwin and Christina Geloso in the matter of *Goodwin et al. v. Johnson &

Johnson Consumer Inc*., 0:21-cv-61890 (S.D. Fla.).

2.       I have personal knowledge of the facts contained in the declaration and, if called

upon to do so, I could and would testify competently to the matters set forth herein.

3.       Attached as Exhibit A to this declaration is an accurate and complete copy of my

timekeeping records.

4.       My hourly rate is $  25.  Attorneys of my similar seniority, experience, and

geographic location have been approved for a comparable rate.  *See, e.g.*, *Vital Pharms., Inc v.

Pepsico, Inc.*, No. 20-CV-62415, 2021 WL 3639819, at *5 (S.D. Fla. May 3, 2021) (approving a

$  50 hourly rate for a New York associate who graduated from law school in 2013).  I graduated

from Fordham University School of Law in 2014.  During law school, I served on the editorial

board for the *ordham aw eview*.  Following law school, I completed a federal district clerkship in the Southern District of New York.  I have worked on numerous complex product liability litigations for more than seven years.  I currently live in Los Angeles.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

DATED: June 2, 2022

By: */s/ im erl Channic*
imberly Channick

# EXHIBIT A

| Name | Date | Activities | Hours | Hourly Billable Rate |
|---|---|---|---|---|
| Kimberly Channick | 7/23/2021 | Team call, calls with outside counsel, editing relatedness motion | 7.7 | 725 |
| Kimberly Channick | 7/26/2021 | Reading and responding to emails, calling opposing counsel, draft documents for filings | 1.3 | 725 |
| Kimberly Channick | 7/27/2021 | Updating relatedness filing | 0.75 | 725 |
| Kimberly Channick | 7/28/2021 | Preparing filing | 0.51 | 725 |
| Kimberly Channick | 7/29/2021 | Reading and responding to emails, call with other sunscreen attorneys, legal research | 4.3 | 725 |
| Kimberly Channick | 7/30/2021 | Background research on MDL | 0.62 | 725 |
| Kimberly Channick | 7/31/2021 | Call with co counsel, summarizing call and followup tasks | 1 | 725 |
| Kimberly Channick | 8/2/2021 | Call with team mate, reading and responding to emails, coordinating calls, drafting task list | 3.19 | 725 |
| Kimberly Channick | 8/3/2021 | Call with co counsel, reading and responding to emails, drafting call summary, team call | 1.21 | 725 |
| Kimberly Channick | 8/4/2021 | JPML petition statement, call with co-counsel, background research | 3.48 | 725 |
| Kimberly Channick | 8/5/2021 | JPML petition research | 1.95 | 725 |
| Kimberly Channick | 8/10/2021 | Planning team calls, reviewing filings | 0.75 | 725 |
| Kimberly Channick | 8/11/2021 | Judge research, interested party statement | 5 | 725 |
| Kimberly Channick | 8/12/2021 | call with co-counsel | 1.5 | 725 |
| Kimberly Channick | 8/13/2021 | Interested party statement | 3 | 725 |
| Kimberly Channick | 8/15/2021 | Reading and responding to emails | 0.46 | 725 |
| Kimberly Channick | 8/19/2021 | Preparing interested party filing | 7.55 | 725 |
| Kimberly Channick | 8/23/2021 | reading and responding to emails | 0.07 | 725 |
| Kimberly Channick | 9/7/2021 | Team call; call with co-counsel, editing filing | 2.5 | 725 |
| Kimberly Channick | 9/22/2021 | Calls re oral arguments, collecting materials for partner review | 1.5 | 725 |
| Kimberly Channick | 9/23/2021 | Call re oral argument | 0.5 | 725 |
| Kimberly Channick | 9/27/2021 | Prepping for JPML argument | 3.3 | 725 |
| Kimberly Channick | 9/28/2021 | Call with cocounsel re JPML, preparing for JPML, call with cocounsel | 3.03 | 725 |
| Kimberly Channick | 9/29/2021 | Preparing for JPML, team call | 2 | 725 |

| | | | | |
|---|---|---|---|---|
| Kimberly Channick | 9/30/2021 | JPML prep and argument | 3.5 | 725 |
| Kimberly Channick | 10/22/2021 | Call with co-counsel, debrief after call with co-counsel | 1 | 725 |
| Kimberly Channick | 10/26/2021 | Call re joint prosecution agreement, call with cocounsel | 1.17 | 725 |
| Kimberly Channick | 11/2/2021 | Call with co counsel | 0.75 | 725 |
| Kimberly Channick | 12/21/2021 | Team call | 0.5 | 725 |