**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-md-03015-SINGHAL/Valle**

IN RE:                                                          MDL CASE NO.: 3015

**JOHNSON & JOHNSON AEROSOL SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO: ALL CASES**
_____/

## DECLARATION OF KILEY LYNN GROMBACHER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Kiley Lynn Grombacher, hereby declare as follows:

1.      I am an attorney and partner at Bradley/Grombacher LLP. I am admitted *pro hac vice* to appear and practice before this Court as Counsel for Plaintiffs Meredith Serota, Jacob Somers, Lauren Harper, Heather Rudy, Fredric Salter, Judith Barich, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham in the matter of *Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.) (the "*Serota* Plaintiffs"), and Katherine Brennan and Michelle Mang in the matter of *See Brennan v. Johnson & Johnson Consumer Inc.*, 21-cv-5419 (N.D. Cal.) (the "*Brennan* Plaintiffs").

I have prepared this Declaration in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), which is filed contemporaneously herewith. Plaintiffs' Motion for Appointment respectfully seeks entry of a Final Order and Judgment: (1) confirming their appointment as the Class Representatives for the Class; (2) confirming the appointment of Class Counsel; (3) confirming and making final the Court's certification of the Settlement Class for settlement purposes only; and (4) granting final approval to the Parties' Stipulation of Settlement and Release.

1

2.     I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein. If called as a witness, I could and would competently testify to the information set forth below.

3.     For the Court's convenience, a true and correct copy of the fully executed Class Action Settlement Agreement ("Settlement Agreement") is attached hereto as Exhibit 1.

## BACKGROUND REGARDING THE ALLEGED CONTAMINATION

4.     On May 25, 2021, Valisure, an independent third-party laboratory, filed a Citizen Petition with the U.S. Food and Drug Administration ("FDA") wherein Valisure reported it had tested numerous lots of aerosol and lotion sunscreen products from various manufacturers and discovered that many of them, including certain JJCI aerosol sunscreens, contained benzene.

5.     JJCI, which had previously been unaware of the presence of benzene as a contaminant in its sunscreen production immediately began a comprehensive investigation that confirmed the presence of benzene in some of its aerosol sunscreen products and determined that the isobutane used as a propellant in those aerosol product lines was the root cause of such contamination.

6.     Thereafter, on July 14, 2021, JJCI instituted a nationwide voluntary recall from all distribution channels of five product lines of aerosol Sunscreen Products -- 1) NEUTROGENA® Beach Defense® aerosol sunscreen; (2) NEUTROGENA® Cool Dry Sport aerosol sunscreen; (3) NEUTROGENA® Invisible Daily™ defense aerosol sunscreen; (4) NEUTROGENA® Ultra Sheer® aerosol sunscreen, and (5) AVEENO® Protect + Refresh aerosol sunscreen-- that had been found to contain benzene, and instructed consumers in possession of such Sunscreen Products to stop using the products.

7.     JJCI's testing did not detect the presence of benzene in samples of non-aerosol products. As Such, JJCI's lotions, sticks, face mist sunscreens and sunless tanning products were not impacted by the voluntary recall.

8.      On the same day JJCI instituted its recall, it announced it would offer cash refunds for the full manufacturer's suggested retail selling price of the affected products and established a process for claimants to obtain such refunds.  That refund program, which is discussed in detail below, has since concluded.

9.      Over the course of this litigation, JJCI has fully cooperated with  the Plaintiffs in their effort to identify and investigate the benzene contamination issue; in identifying the number of lots potentially affected by contamination issue; and in developing a plan to remediate any potential benzene contamination in the Sunscreen Products in the future.

## BILATERAL NEGOTIATIONS & MEDIATION

10.     After filing of the *Serota* and *Brennan* complaints, Class Counsel began settlement discussions with JJCI.

11.     After a preliminary exchange of information and several rounds of bilateral discussion, the Parties agreed to jointly retain former United States District Court Judge John C. Lifland as a mediator to reach a nationwide resolution.

12.     Mediation statements were prepared by both Parties and submitted prior to mediation. The mediation session took place on September 8, 2021, wherein the Parties discussed and evaluated the claims, damages, allegations and defenses, and were able to agree in principle on a general framework for global settlement, including with respect to retailer defendant Costco Wholesale Corporation ("Costco").

13.     The Parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, and for several weeks thereafter Class Counsel and JJCI's counsel did so.

14.     During this process, Class Counsel also retained experienced experts and consultants to evaluate JJCI's factual representations.

15.     Ultimately, the Parties were able to reach an agreement in principle to settle the litigation on a class-wide basis. The agreement in principle was memorialized on October 21, 2021 via a Confidential Term Sheet.

16.     A Notice of Settlement was then filed with the Court on October 29, 2021.

17.     Before and during these settlement discussions and mediation, as described above, the Parties had an arm's-length exchange of information sufficient to permit both Parties and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

18.     At all times, the negotiations were conducted at arms-length.

19.     The Parties negotiated Class Counsel's attorneys' fees and costs only after reaching agreement on the monetary and injunctive relief for the Class.

## PRE-FILING INVESTIGATION

20.     Before filing any complaint in this action, our firm, in conjunction with our co-counsel extensively investigated the claims in this Action.

21.     Our pre-suit investigation included but was not limited to:

- Obtaining and reviewing the JJCI aerosol and non-aerosol sunscreen products, including their labeling, packaging, and all other advertisements and promotions for them;
- Reviewing electronic images of Neutrogena's website and other electronic marketing platforms;
- Obtaining and reviewing the Petition on Benzene in Sunscreen and After-sun Care Products prepared by Valisure LLC ("Valisure Petition");
- Reviewing relevant FDA regulations;
- Reviewing pre-suit disclosure letters;
- Conducting in-depth, fact-finding interviews with Plaintiffs and other potential witnesses including the review and processing of consumer questionnaires
- Extensive legal research to evaluate the prospective merits and weaknesses of the case

## POST-FILING INFORMAL DISCOVERY

22.     Shortly after filing our firm in conjunction with our counsel engaged in a bilateral

exchange of information with counsel for Defendant.

23.     Class Counsel continued to actively investigate the claims of the litigation, this included:

- Informally surveying class members,
- Undertaking a detailed analysis of the consumer protection laws of all fifty states and U.S. territories;
- Retaining a third-party laboratory and causing samples of JJCI sunscreen products to be tested for benzene;
- Retaining experts in toxicology, consulting with such expert and preparing a report for the purposes of mediation; and
- Retaining experts in the field of cosmetics testing and regulation and consulting with such experts;

24.     Following mediation, Class Counsel specifically negotiated for additional disclosures of data, documents and information to confirm JJCI's factual representations.

25.     Following execution of the Confidential Term Sheet, the Parties began drafting the necessary documentation to allow for this disclosure of documents and information. Class Counsel initially drafted and provided JJCI with a list of documents and data they requested be provided, which was subsequently negotiated by the Parties and revised.

26.     Following an agreement on the initial voluntary disclosures to be provided, the Parties negotiated a Non-Disclosure Agreement, which was executed on November 20, 2021.

27.     On November 30, 2021, JJCI began its voluntarily disclosure of data, information and sworn statements by company employees.

28.     Over the course of the Parties' negotiations, JJCI voluntarily produced information by which Plaintiffs were able to further assess the merits of the claims and defenses, as well as confirm JJCI's factual representations.

29.     The material produced included information regarding JJCI's notice of benzene

contamination, communications between JJCI and its affiliates concerning benzene contamination; information regarding studies and analysis performed by JJCI with respect to benzene contamination; JJCI's communications with FDA regarding the contamination; information about JJCI's sunscreen manufacturers and raw material suppliers; and information on JJCI's refund program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications.

30.     These voluntary exchanges of information were coupled with Plaintiffs' independent investigation regarding their claims and JJCI's defenses.

31.     Thereafter, JJCI and Class Counsel jointly drafted the Settlement that memorializes and governs the Settlement.

## POST-APPROVAL CONFIRMATORY DISCOVERY

32.     Following preliminary approval, Plaintiffs conducted depositions of two JJCI employees who were instrumental players in JJCI'S response to the purported benzene contamination. Carla Oliviera, Regional Leader for the North American Consumer Care Center (who headed the consumer-facing aspects of JJCI's recall and refund program), and Derek Henderson, Head of Global Franchise Quality at JJCI, were both subject to in-person depositions. Mr. Henderson was responsible for JJCI's root-cause investigation and had knowledge regarding the company's testing, investigation, suppliers and FDA interactions.

33.     Additionally, in accordance with the terms of the Settlement Agreement, JJCI made an additional documentary production which included documents and data related to material specifications and testing. Our office has reviewed these materials and confirmed that testing was conducted in accordance with the terms of the agreement and that the results were in conformance thereto as well.

34.     Finally, all documents produced by JJCI to Class Counsel during the settlement negotiations/investigation as well as deposition transcripts, have been provided to all other plaintiffs'

counsel who requested copies of such materials and executed the corresponding Acknowledgment and Agreement to be Bound by the Stipulated Protective Order.

## **SUMMARY OF SETTLEMENT TERMS**

35.      The Settlement resolves all claims of the Plaintiffs and the Class against JJCI related to the presence of benzene in the Sunscreen Products, excluding claims for bodily injuries. A synopsis of the primary terms of the Settlement are described below.

36.      The Settlement Class is comprised of all consumers who purchased Neutrogena and/or Aveeno Sunscreen Products at issue in this litigation, and is defined as:

> All persons and entities in the United States who, at any time between May 26, 2015 and the Notice Date purchased one or more of the Aerosol Products or Non-Aerosol Products defined herein for personal, family, or household use and not for resale:
> Neutrogena/Aveeno Aerosol Products: Neutrogena® Beach Defense® aerosol sunscreen, Neutrogena® Cool Dry Sport aerosol sunscreen, Neutrogena® Invisible Daily™ defense aerosol sunscreen, Neutrogena® Ultra Sheer® aerosol sunscreen, and Aveeno® Protect + Refresh aerosol sunscreen.
> Neutrogena/Aveeno Non-Aerosol Products: Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion.[1]

37.      Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of JJCI, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff.

---

[1] The Neutrogena and Aveeno products referenced in this class definition encompass the entire product lines of Sunscreen Products impacted by this Settlement.

38.     The Settlement allows any Class Member to opt-out of the Settlement and the Class. Any Class Member who wishes to seek exclusion from the Class has been advised of his or her right to be excluded, and of the deadline and procedures for exercising that right. Settlement.

39.     In exchange for the relief described above, and upon entry of a Final Order and Judgment approving the Settlement, the Plaintiffs and the Class will release JJCI, Costco and their related and affiliated entities (the "Released Parties," as further defined in Paragraph 34 of the Settlement) from, *inter alia*, all claims (excluding claims for bodily injuries) for injunctive relief or economic loss arising out of or relating to the facts, activities, or circumstances alleged in the Action (as defined in Paragraph 1 of the Settlement). Settlement ¶¶ 68-71. In other words, the Settlement contemplates a release specific to the subject matter addressed in this Action, and does not contemplate a general release of any and all claims of any kind against JJCI.

40.     Under the Settlement, Class Counsel have also reserved the right to petition the Court for an award of reasonable attorneys' fees of up to $2,500,000 and reimbursement of costs and expenses incurred in the prosecution of this case up to $100,000. Settlement at ¶ 63. The Attorneys' Fees and Expenses provision was separately and independently negotiated by the Parties apart from the class settlement provisions, in an arm's-length negotiation.  Any such Attorneys' Fees and Expenses award would be paid separately by JJCI from the relief being offered to the Class Members. The Settlement is not conditioned upon any Attorneys' Fees and Expenses award being approved by the Court.

## **CLASS COUNSEL HAS CONFIRMED THAT JJCI HAS COMPLIED WITH THE TERMS OF THE SETTLEMENT AGREEMENT THUS FAR**

41.     Through due diligence, confirmatory depositions, and voluntary informal disclosures, Class Counsel has confirmed that, as a result of JJCI's cash refund program, 326,480 claimants have

received refund checks in the amount of, on average, of $29.73.

42.     JJCI calculated the refund based upon either: (1) the price actually paid by the consumer for the product if such evidence was submitted by the claimant; or (2) the manufacturer's suggested retail price ("MSRP") of the aerosol product for which a refund was claimed. This ensured that Class Members received a refund of at least the full purchase price paid for the product, if not more.

43.     In total, JJCI has paid consumers Nine Million Five Hundred Twenty-Eight Thousand Two Hundred Seven Dollars and Sixty-Two Cents ($9,528,207.62) as part of the refund program.

44.     Further, through confirmatory depositions and review of data and documents produced, Plaintiffs have confirmed that JJCI:

(1) Directed its external manufacturer to purge any existing inventory of isobutane;

(2) Adopted new specifications applicable to any supplier of isobutane raw material for use in its aerosol Sunscreen Products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene;

(3) Directed its external manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in aerosol Sunscreen Products, the raw material supplier test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from shipping such raw material to JJCI's external manufacturer unless the shipment has passed such test;

(4) Required JJCI's external manufacturer to test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from use of such raw material unless it has passed such test; and

(5) Required JJCI's external manufacturer to test at least 25% of finished goods aerosol Sunscreen Products for the presence of benzene, and to refrain from release of such

finished goods unless all such samples have passed such test.

## THE MONETARY VALUE OF THE SETTLEMENT TO CLASS MEMBERS

45.     Class Counsel through confirmatory discovery has determined that as a result of JJCI's cash refund program, 326,480 claimants have received refund checks in the amount of, on average, of $29.73.

46.     JJCI calculated the refund based upon either: (1) the price actually paid by the consumer for the product if such evidence was submitted by the claimant; or (2) the manufacturer's suggested retail price ("MSRP") of the aerosol product for which a refund was claimed. This ensured that Class Members received a refund of at least the full purchase price paid for the product, if not more.

47.     In total, JJCI has paid consumers Nine Million Five Hundred Twenty-Eight Thousand Two Hundred Seven Dollars and Sixty-Two Cents ($9,528,207.62).

48.     Additionally, the injunctive provisions of the settlement agreement caused an estimated financial impact to JJCI of more than $80 million.

49.     This estimated amount is comprised of the following:

a. Value of inventory of Recalled Products that became obsolete and were discarded;

b. Lost profits on anticipated sales of Recalled Products that were discarded;

c. Reimbursements paid to wholesale customers who had received, but were instructed to return or destroy, affected products;

d. Handling costs for the return and disposal of Recalled Product on behalf of certain wholesale customers;

e. Staffing and outside vendor expenses to respond to consumer inquiries regarding the Recall, and to manage the refund program that JJCI voluntarily instituted for Recalled Products;

f. Cash payments to consumers who requested and received refunds of the purchase price paid for Recalled Products during the six-month period following the Recall;

g. Outside laboratory expenses necessitated by the investigation into the root cause of the purported benzene contamination that led to the Recall; and

h. Lost profits on anticipated but lost sales for the 2022 sunscreen season, caused by production delays that resulted from the implementation of new procedures and protocols to reduce the risk future benzene contamination.

## THE PARTIES AND THE THIRD-PARTY ADMINISTRATOR HAVE DUTIFULLY COMPLIED WITH THE NOTICE PROCESS APPROVED BY THE COURT

50.     The claims process is detailed in the declarations of Tiffaney Janowicz and Jason Rabe and for efficiency will not be repeated here.

## THE CLASS MEMBERS HAVE RESPONDED FAVORABLY TO THE SETTLEMENT

51.     Although the class period has not yet expired, there are presently 172,611 claims that have been received by the administrator.

52.     Our office retained an expert, Gary Olsen, who calculated the settlement class to be comprise of approximately 5,984,167 household during the relevant time period.  Based on the claims submitted to date, the claims rate would be approximately 2.88%.

## ENDORSEMENT OF THE SETTLEMENT

53.     Based on my experience, my familiarity with every material aspect of this case, and when weighing the risks of continued litigation, I believe that the proposed Settlement is fair, adequate, and reasonable.

54.     In considering whether to enter into the Settlement, Plaintiffs and Counsel considered the monetary refunds being provided, by JJCI through their refund/recall program, the significant risks of proceeding with the litigation, including the risks of securing class certification, establishing liability, proving damages at trial, and the likely duration of posttrial motions and appeals. Even if Plaintiffs prevailed at trial, and any appeals were resolved in Plaintiffs' favor, payment to Class members would likely be delayed for several years.

.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 24, 2022, at Westlake Village, California.

Respectfully,

*/s/ Kiley Lynn Grombacher*
Kiley Lynn Grombacher

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-md-03015-SINGHAL**

IN RE:                                                         MDL CASE NO.: 3015

**JOHNSON & JOHNSON SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**

_____ /

**THIS DOCUMENT RELATES TO: ALL CASES**

_____ /

**CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

I.     RECITALS .................................................................................................................. 17

II.    DEFINITIONS ........................................................................................................... 17

III.   SUBMISSION OF THE SETTLEMENT TO THE COURT .................................... 17

IV.    SETTLEMENT CONSIDERATION ........................................................................ 17

  A.  Prospective Non-Monetary Relief. ......................................................................... 15

    (1)  Non-Sale of Recalled Aerosol Products ......................................................... 12

    (2)  Isobutane Raw Material Supply ..................................................................... 12

    (3)  Finished Goods Aerosol Product Testing ...................................................... 213

  B.  Refunds for Aerosol Products Subject to Aerosol Product Recall. ........................ 15

    (1)  Refund Program .............................................................................................. 13

    (2)  Continuation of Aerosol Products Refund Program........................................ 13

    (3)  Enhancements to Aerosol Products Refund Program...................................... 14

    (4)  Voucher Program for Non-Aerosol Products .................................................. 14

  C.  Notice Program and Claims Process........................................................................ 15

  D.  Incentive Awards to Settlement Plaintiffs. ............................................................. 16

  E.  Attorneys' Fees and Expenses. ................................................................................ 16

V.     RELEASE ................................................................................................................... 17

VI.    SETTLEMENT IMPLEMENTATION PROCEDURE ............................................ 18

  A.  Provision of Settlement Benefits. ........................................................................... 18

  B.  Responsibilities of Settlement Administrator. ........................................................ 18

  C.  Notice to the Class. ................................................................................................. 20

    (1)  The Long Form Notice ................................................................................... 21

    (2)  Settlement Website ......................................................................................... 22

    (3)  Toll-Free Telephone Number ......................................................................... 22

  D.  Claim Submission. .................................................................................................. 22

  E.  Claim Administration Protocol. .............................................................................. 22

    (1)  Locating, Obtaining, and Submitting Claims Forms....................................... 23

    (2)  Claim Form Review and Processing ............................................................... 24

    (3)  Claim Calculation and Payment of Valid Claims............................................ 28

  F.  Objections and Opt-outs. ........................................................................................ 28

VII.   CAFA COMPLIANCE ............................................................................................... 32

ii

VIII.    SCOPE AND EFFECT OF CONDITIONAL CERTIFICATION OF THE CLASS SOLELY FOR PURPOSES OF SETTLEMENT ................................................................. 32

IX.    CONFIRMATORY DISCOVERY ................................................................................. 33

X.    MODIFICATION OR TERMINATION OF THE SETTLEMENT ................................ 33

XI.    SETTLEMENT NOT EVIDENCE AGAINST PARTIES ............................................. 34

XII.    COOPERATION ............................................................................................................ 35

XIII.    MISCELLANEOUS PROVISIONS .............................................................................. 35

## EXHIBIT LIST

Ex. A - Class Notice/Long Form Notice

Ex. B - Summary Notice

Ex. C - Claim Form

Ex. D - Notice Protocol

CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fred Salter, and Judith Barich on behalf of the putative classes (collectively, "Settlement Plaintiffs"), and Defendant Johnson & Johnson Consumer Inc. ("JJCI") (Settlement Plaintiffs and JJCI are collectively referred to below as "Parties"), by and through their respective counsel, in consideration for and subject to the promises, terms, and conditions contained in this Settlement, hereby stipulate and agree, subject to Court approval, to the following:

## I.    RECITALS

WHEREAS, JJCI produces and markets over-the-counter sunscreen products under the brand names Neutrogena® and Aveeno®.

WHEREAS, on May 25, 2021, an analytical pharmacy known as Valisure LLC ("Valisure") filed a citizen's petition (the "Petition") with the United States Food and Drug Administration ("FDA").  The Petition stated that Valisure had performed tests on nearly 300 batches of sunscreen products from 69 different manufacturers, and that a significant number of these products contained detectable levels of benzene.

WHEREAS, although benzene is not an ingredient in any JJCI sunscreen product, the Petition listed several JJCI sunscreens as having tested positive for the substance.

WHEREAS, immediately after the Petition was published on May 25, 2021, JJCI began a comprehensive investigation that has determined that the benzene identified in some product samples stemmed from the isobutane used as a propellant in those aerosol product lines.  JJCI's testing did not confirm the presence of benzene in samples of non-aerosol products.

WHEREAS, on May 25, 2021, Plaintiff Meredith Serota, a Florida resident, filed a lawsuit in the Southern District of Florida on behalf of a nationwide putative class with the exception of California, alleging that certain JJCI sunscreen products sold in the United States were contaminated with benzene, and seeking injunctive relief and compensation for alleged economic losses sustained by U.S. consumer purchasers of the products.  *See Serota v. Johnson & Johnson*

1

*Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.) (the "*Serota* Action") ECF No. 1, Compl. ¶¶ 23-24.

WHEREAS, on May 26, 2021, Katherine Brennan and Michelle Mang, California residents, filed a lawsuit in the Superior Court for the State of California, County of Ventura, which was subsequently removed by JJCI to the United States District Court for the Northern District of California, seeking to represent a putative California-only class. *See Brennan v. Johnson & Johnson Consumer Inc.*, 21-cv-5419 (N.D. Cal.) (the "*Brennan* Action"), ECF No. 1. The *Brennan* Action alleges that certain JJCI sunscreen products sold in California were contaminated with benzene, and seeks injunctive relief and compensation for alleged economic losses sustained by California consumer purchasers of the products.

WHEREAS, on July 14, 2021, JJCI instituted a voluntary recall from all distribution channels of five product lines of aerosol sunscreen products that had been found to contain benzene, to be either destroyed or used for future testing only.  JJCI instructed consumers to stop using the products and offered full cash refunds, with either minimal or no proof of purchase required for compensation.  For the affected product lines, there is no time limitation for when such products needed to have been purchased to receive the full cash refunds.

WHEREAS, on July 30, 2021, an amended complaint was filed in the *Serota* Action adding an additional Florida plaintiff and plaintiffs from Colorado, Illinois, Maryland, Michigan, New York, Ohio, Oregon, and Washington.  *See Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), ECF No. 4, Am. Compl. ¶¶ 5-14.

WHEREAS, in the weeks and months that followed, 16 additional actions were filed in various federal district courts across the country that sought injunctive relief and monetary compensation for economic losses allegedly incurred by consumer purchasers of JJCI sunscreen products: (1) *Rafal v. Johnson & Johnson,* No. 21-cv-5524 (N.D. Cal.); (2) *Dominguez v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-05419 (N.D. Cal.); (3) *French v. Johnson & Johnson Consumer Inc.*, No. 21-cv-05048 (C.D. Cal.); (4) *Jimenez v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-13113 (D.N.J.); (5) *McLaughlin v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-13710 (D.N.J.); (6) *Briglio v. Johnson & Johnson Consumer Inc.*, No. 21-cv-13972 (D.N.J.); (7)

2

*Bodine v. Johnson & Johnson Consumer Inc.*, No. 21-cv-14343 (D.N.J.); (8) *Baker v. Johnson & Johnson Consumer Inc.*, No. 21-cv-14421 (D.N.J.); (9) *Fernandez v. Johnson & Johnson Consumer Inc.*, No. 21-cv-14492 (D.N.J.); (10) *Lavalle v. Neutrogena Corporation*, No. 21-cv-06091 (S.D.N.Y.); (11) *Pedron v. Johnson & Johnson Consumer Inc.*, No. 21-cv-23189 (S.D. Fla.); (12) *Dickerson v. Johnson & Johnson Consumer Inc.*, No. 21-cv-07230 (C.D. Cal.); (13) *Goodwin v. Johnson & Johnson Consumer Companies Inc.*, No. 21-cv-61890 (S.D. Fla.); and (14) *Lokietz v. Johnson & Johnson,* No. 21-cv-17290 D.N.J.) (collectively these actions, including the *Serota* and *Brennan* Actions, shall be referred to as the "Actions" as defined further below).[1]

WHEREAS all of the Actions similarly allege that the sunscreen products the plaintiffs purchased were contaminated with benzene, a human carcinogen; that the possible presence of benzene was not disclosed in the products' advertising or labels; and that, as a result, the products were misbranded, adulterated and/or falsely advertised.

WHEREAS on October 8, 2021, the U.S. Joint Panel on Multidistrict Litigation ("JPML") issued a Transfer Order finding that centralization of the consumer actions in the Southern District of Florida will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  *See generally* ECF No. 1.

WHEREAS, Settlement Plaintiffs, by and through their counsel, conducted a robust investigation into the facts and law relating to the matters alleged in their complaints, including into (i) marketing, advertising, and labeling of the Products; (ii) sales, pricing, consumer, distribution, and financial data; and (iii) Settlement Plaintiffs' own documents and information relating to the Products. This investigation included extensive voluntary disclosures of data, information and witness statements provided by JJCI; consultation with numerous experts; as well as legal research as to the strength and sufficiency of the claims and defenses thereto, and appropriateness of class certification.

---

[1] The remaining two actions— (15) *Santos v. Johnson & Johnson*, 21-cv-01208 (N.D. Ala.) and (16) *Bodle v. Johnson & Johnson Consumer Inc.*, 21-cv-07742 (N.D. Cal.)—sought damages for alleged personal injuries related to the Products, and thus were not consolidated with the Actions.

WHEREAS, JJCI has implemented measures to address the benzene contamination in the five affected product lines, including undertaking a detailed Health Hazard Evaluation ("HHE"), working cooperatively with FDA, instituting a voluntary recall, instructing consumers to stop using the products and offering full cash refunds.

WHEREAS, this Settlement was reached as a result of extensive arms'-length negotiations between the Parties and their counsel, facilitated by a mediation with a respected mediator, the Honorable John C. Lifland (Retired).  Before and during these settlement discussions and mediation, the Parties had an arms'-length exchange of sufficient information to permit Settlement Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

WHEREAS, Settlement Plaintiffs, as class representatives, believe that the claims settled herein have merit, but they and their counsel recognize and acknowledge the risks and expense of continued proceedings necessary to prosecute the claims through trial and appeal. Settlement Plaintiffs, and their counsel, have specifically taken into account the uncertain outcome and risk of any litigation, as well as the difficulties and delay inherent in such litigation, and they believe that the terms and conditions set forth in this Settlement confer substantial benefits upon the Class Members and are in the best interest of the Class.

WHEREAS, JJCI has also considered the potential risks and the cost of continued litigation of the Action, and has determined to settle the Actions upon the terms and conditions set forth in this Settlement.

WHEREAS, JJCI has denied, and continues to deny, that it has engaged in any wrongdoing of any kind, or violated any law or regulation, or breached any duty to Settlement Plaintiffs or others.

WHEREAS, JJCI further denies that it has liability as a result of any and all allegations arising out of or relating to the allegations in the Actions, and is entering into the Settlement to eliminate the burden, distraction, expense, and uncertainty of further litigation.

WHEREAS, JJCI has agreed to class action treatment of the claims alleged in the Actions

CLASS ACTION SETTLEMENT AGREEMENT

solely for the purpose of compromising and settling those claims on a class basis as set forth herein.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and between the Parties, through their respective counsel, that: (a) the Actions be fully and finally compromised, settled, and released upon final settlement approval by the Court after the hearings as provided for in this Settlement; and (b) upon such approval by the Court, a Final Order and Final Judgment be entered upon the following terms and conditions.

## II.   DEFINITIONS

1.      "Actions" shall mean the actions presently or in the future consolidated in the multidistrict litigation lawsuit entitled *In re Johnson & Johnson Sunscreen Marketing,* Sales *Practices and Products Liability Litigation*, MDL No. 3015.

2.      "Aerosol Product(s)" means the following five over-the-counter aerosol sunscreen product lines, produced and marketed by JJCI under the brand names Neutrogena® and Aveeno®: Neutrogena® Beach Defense® aerosol sunscreen, Neutrogena® Cool Dry Sport aerosol sunscreen, Neutrogena® Invisible Daily™ defense aerosol sunscreen, Neutrogena® Ultra Sheer® aerosol sunscreen, and Aveeno® Protect + Refresh aerosol sunscreen.

3.      "Aerosol Product Recall" refers to the recall of all Aerosol Products in the United States, and instruction to consumers in possession of Aerosol Products to stop using them, which was instituted by JJCI on July 14, 2021.

4.      "Aerosol Products Refund Program" refers to the program instituted by JJCI on July 14, 2021, whereby it agreed to reimburse consumer purchasers for the full average retail selling price of the Aerosol Products, and established a process for claimants to obtain such refunds as detailed in in Paragraphs 53-55 of this Settlement.

5.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for their fees and expenses in connection with the Action and the Settlement, as described in Paragraphs 62-68 of this Settlement.

6.      "CAFA Notice" means the notice which the Settlement Administrator shall serve upon the appropriate State and Federal officials, providing notice of the proposed settlement.  The Settlement

Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with Settlement Plaintiffs' motion for final approval.

7.      "Claim Form" means the proof of claim substantially in the form attached hereto as Exhibit C which may be modified to meet the requirements of the Settlement Administrator, and which Class Members may use to apply for Vouchers as described in Paragraphs 57, 82, 86, 91, 98-99.

8.      "Claim Form Deadline" means the final time and date by which a Claim Form must be submitted to the Settlement Administrator in order for a Class Member to be eligible for any Voucher available under the terms and conditions of this Settlement.

9.      "Claim Period" means the deadline for Class Members to submit Claims Forms, as described in Paragraphs 57 and 92 of this Settlement, and which shall be ninety (90) calendar days from the date the Class Notice is mailed.

10.     "Claimant" means a Class Member who files a Claim Form seeking a Voucher under this Settlement.

11.     "Class" means all persons and entities in the United States who purchased one or more of the Aerosol Products or Non-Aerosol Products defined herein for personal, family, or household use and not for resale at any time between May 26, 2015 and the Notice Date (defined herein).  Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of JJCI, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff.

12.     "Class Counsel" means the law firm of Aylstock, Witkin, Kreis & Overholtz, PLLC, the law firm of Bradley/Grombacher LLP, and any other law firms appointed by the Court as such.

13.     "Class Member(s)" means any member of the Class who does not elect exclusion (i.e., opt out) from the Class pursuant to the terms and conditions for exclusion set out in this Settlement and the Class Notice.

14.     "Class Notice" shall mean the Long Form Notice and Summary Notice provided to the

Class substantially in the form attached hereto as Exhibits A and B as directed by the Court.

15. "Court" means the United States District Court for the Southern District of Florida and the Judge assigned to the Action (the Honorable Anuraag Singhal).

16. "JJCI" means defendant Johnson & Johnson Consumer Inc.

17. "Defense Counsel" means the law firm of Patterson Belknap Webb & Tyler LLP.

18. "Effective Date" means the first business date after all of the following conditions have been satisfied:

    (a)    the Final Order and Final Judgment have been entered; and

    (b)    (i) if reconsideration and/or appellate review is not sought from the Final Order and Final Judgment, the expiration of the time for the filing or noticing of any motion for reconsideration, appeal, petition, and/or writ has expired; or (ii) if reconsideration and/or appellate review is sought from the Final Order and Final Judgment: (A) the date on which the Final Order and Final Judgment are affirmed and are no longer subject to judicial review, or (B) the date on which the motion for reconsideration, appeal, petition, or writ is dismissed or denied and the Final Order and Final Judgment are no longer subject to judicial review.  The Parties may agree in writing to waive all or some of the provisions in this subparagraph (b).

19. "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) determining whether the Settlement should be approved as fair, reasonable, and adequate; (b) ruling upon an application for Incentive Awards by the Settlement Plaintiffs; (c) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; (d) entering the Final Order and Final Judgment; and (e) entering any final order awarding Attorneys' Fees and Expenses and Incentive Awards.

20. "Incentive Award(s)" means such funds as may be awarded by the Court to the Settlement Plaintiffs to compensate them for their services to the Class, as described in Paragraphs 59 of this Settlement.

21. "Long Form Notice" means the long form notice of settlement, substantially in the form

attached hereto as Exhibit A.

22.     "Non-Aerosol Product(s)" means the following three non-aerosol (i.e., lotion) over-the-counter sunscreen product lines: Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion.

23.     "Notice Date" means the first date upon which the Class Notice is disseminated by the Settlement Administrator.

24.     "Notice of Missing or Inaccurate Information" means the notice sent by the Settlement Administrator to a Class Member who has submitted a Claim Form with inaccurate, disqualifying, incomplete, or missing information that is required for the Claimant to be considered eligible for a Voucher provided by this Settlement.

25.     "Objection and Exclusion Period" means the deadline for Class Members to submit objections or requests for exclusion, as described in Paragraph 82 of this Settlement, and which shall be ninety (90) calendar days from the date the Class Notice is mailed.

26.     "Parties" means Plaintiffs and JJCI, collectively, as each of those terms is defined in this Settlement.

27.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Class Notice.

28.     "Product(s)" refers to both Aerosol Product(s) and Non-Aerosol Product(s) as defined above.

29.     "Proof of Purchase" means some evidence of purchase, such as a store receipt or photograph of the container of Aerosol Product(s) or Non-Aerosol Product(s).

30.     "Refund" means the cash payment of the full average retail selling price of any Aerosol Product.

31.     "Release" means the release and waiver set forth in Paragraphs 69-72 of this Settlement and in the Final Order and Final Judgment.

32.     "Released Claims"

(a)　　"Released Claims" means and includes any and all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory arising prior to the Effective Date for injunctive relief or economic loss arising from or relating to the facts, activities, or circumstances alleged in the Actions.

(b)　　Notwithstanding any other provision of this Settlement, "Released Claims" do not include claims for bodily injuries. Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to bodily injuries allegedly caused by the Products and/or for medical monitoring related to such alleged injuries.

33.　　"Released Parties" shall be defined to include JJCI or its past or present parents, subsidiaries, affiliated companies, and their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing).　For avoidance of doubt, Released Parties includes Johnson & Johnson, which is named as a defendant in certain of the Actions.　Released Parties also includes Costco Wholesale Corporation ("Costco"), which is named as a defendant in one of the Actions, *McLaughlin v. Johnson & Johnson Consumer*, Inc., No. 21-cv-13710 (D.N.J.), and Costco's past or present parents, subsidiaries, affiliated companies, and their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing).

34.　　"Releasing Parties" means Settlement Plaintiffs and all Class Members.

35.　　"Settlement Plaintiffs" means Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham.

36.　　"Settlement" means the terms and conditions embodied in this settlement agreement, including all attached Exhibits (which are an integral part of this Settlement and are incorporated in their entirety by reference).

37.　　"Settlement Administrator" means the qualified third-party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Class Notice.　The Parties agree to recommend

that the Court appoint Rust Consulting as Settlement Administrator to design, consult on, and implement the notice and related requirements of this Settlement, including the Settlement Website claim review, the issuance of Vouchers, the service of CAFA Notice, and related requirements of this Settlement, subject to the Court's approval.

38.    "Settlement Website" refers to the Internet website (www.sunproductsettlement.com).

39.    "Unit" means a single Product.

40.    "Valid Claim" means a Claim Form submitted by a Class Member that is: (a) submitted in accordance with the directions accompanying the Claim Form and the provisions of the Settlement; (b) accurately, fully and truthfully completed and executed, with all of the information requested in the Claim Form, by a Class Member; (c) signed physically or by e-signature by a Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator.  The Settlement Administrator may require additional information from the Class Member to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature.  Failure to respond to the Settlement Administrator's request for additional information may result in a determination that the claim is not a Valid Claim.

41.    "Petition" refers to the May 24, 2021 citizen's petition that analytical pharmacy Valisure LLC filed with the United States Food and Drug Administration ("FDA").

42.    "Voucher" refers to a voucher toward the purchase of replacement Neutrogena or Aveeno products available to eligible Class Members via the submission of a Claim Form. The specific Voucher provided is subject to review, validation, and adjustments by the Settlement Administrator based upon the terms and conditions of this Settlement.

### III.    SUBMISSION OF THE SETTLEMENT TO THE COURT

43.    As soon as practicable but no later than December 17, 2021, Class Counsel shall move the Court for entry of the Preliminary Approval Order for the purpose of, among other things:

(a)    Preliminarily approving the Settlement as being within the range of possible

approval as fair, adequate, and reasonable, such that the Class Notice should be provided pursuant to this Settlement;

(b)      Finding that the requirements for provisional certification of the Class for settlement purposes only have been satisfied;

(c)      Appointing Settlement Plaintiffs as the representatives of the Class and Class Counsel as counsel for the Class;

(d)      Appointing Rust Consulting as the Settlement Administrator;

(e)      Approving the Class Notice, substantially in the form set forth at Exhibits A & B to be distributed to Class Members; and

(f)      Scheduling the Fairness Hearing on a date ordered by the Court and in compliance with applicable law, to determine whether the Settlement should be approved as fair, reasonable, and adequate, and to determine whether a Final Order and Final Judgment should be entered.

44.      Following the entry of the Preliminary Approval Order, the Class Notice shall be given and published by the Settlement Administrator within ten (10) days in the manner directed and approved by the Court.

45.      At the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment. Settlement Plaintiffs shall also seek to obtain a final order approving the Attorneys' Fees and Expenses and the Incentive Awards. The Final Order and Final Judgment shall, among other things:

(a)      Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

(b)      Finally approve this Settlement;

(c)      Certify the Class for purposes of settlement only;

(d)      Find that the Class Notice complies with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

11

(e)    Incorporate the Release set forth in this Settlement and make the Release effective as of the date of the Final Order and Final Judgment;

(f)    Authorize the Parties to implement the terms of the Settlement;

(g)    Dismiss the Actions with prejudice; and

(h)    Retain jurisdiction over the Settlement to interpret and enforce its terms and conditions, and for any other necessary purpose.

## IV.   SETTLEMENT CONSIDERATION

46.    In consideration for the Release contained in this Settlement, JJCI will implement the following:

**A.   <u>Prospective Non-Monetary Relief.</u>**

**(1) Non-Sale of Recalled Aerosol Products**

47.    JJCI shall not in the future ship, distribute, offer for sale or otherwise make available for purchase or use any unit of Aerosol Products subject to the Aerosol Product Recall.

**(2) Isobutane Raw Material Supply**

48.    To prevent recurrence, JJCI shall undertake or, where applicable, has already undertaken, the following corrective and preventive actions prior to manufacturing any additional units of Aerosol Products:

(a)    <u>Purge of Inventory</u>: JJCI shall direct its external manufacturer to purge any existing inventory of isobutane intended for use in such Products.

(b)    <u>Raw Material Specification</u>: JJCI shall adopt a new specification applicable to any supplier of isobutane raw material for use in Aerosol Products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene.  Such specification shall be subject to review by Class Counsel and shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.

(c)    <u>Testing by Raw Material Supplier</u>: JJCI shall direct its external manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended

12

for use in Aerosol Products, the raw material supplier test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from shipping such raw material to JJCI's external manufacturer unless the shipment has passed such test. This requirement shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.

(d) <u>Testing of Raw Material by External Manufacturer</u>: JJCI shall require that, upon receipt of any shipment of raw material isobutane intended for use in Aerosol Products, JJCI's external manufacturer test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from use of such raw material unless it has passed such test. This requirement shall remain in effect for a minimum period of two (2) years from the date of execution of this Class Action Settlement Agreement.

**(3) Finished Goods Aerosol Product Testing**

49. JJCI shall require its external manufacturer to engage an independent, ISO-certified laboratory to test a reasonable number of random samples from at least 25% of manufacturing lots of finished goods Aerosol Products for the presence of benzene, and to withhold release of such finished goods from any such lot unless all such samples have passed such test. The parties agree that such testing shall be conducted utilizing gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation. The results of this testing will be timely made available to FDA and Class Counsel. This requirement shall remain in effect until at least January 21, 2022.

**B.** **<u>Refunds for Aerosol Products Subject to Aerosol Product Recall.</u>**

**(1) Refund Program**

50. The Aerosol Products Refund Program is ongoing. For refunds of three or fewer units, no proof of purchase is required. Claimants seeking refunds for more than three units must submit Proof of Purchase.

**(2) Continuation of Aerosol Products Refund Program**

51. Subject to certain agreed-upon enhancements delineated below, JJCI will hold open and

13

not discontinue the Aerosol Products Refund Program until January 14, 2022.

52.  JJCI will cause to be published on its Aerosol Products Refund Program website a notification to consumers that the refund amount is calculated based on the full average retail selling price of the affected product(s).

### (3) Enhancements to Aerosol Products Refund Program

53.  Within fourteen (14) days of entry of the Preliminary Approval Order, JJCI will modify the Aerosol Products Refund Program in the following respects:

(a)  <u>Ombudsman</u>: JJCI shall inform claimants of the availability of an external ombudsman to assist in resolving any complaints or concerns about, or claims submitted in connection with, the Aerosol Products Refund Program.  Information regarding the availability and contact information for the ombudsman shall appear on the Settlement Website, as well as the dedicated webpage for submitting a claim pursuant to the Aerosol Products Refund Program. The ombudsman shall be mutually agreed upon by the parties and, unless otherwise agreed, shall be a representative of the Settlement Administrator.  In the event of a disagreement, the ombudsman shall retain final decision-making authority with respect to claims submitted pursuant to the Aerosol Products Refund Program. JJCI shall bear the cost for the services performed by the Ombudsman, subject to the $500,000 cap on costs of administration as provided by Paragraph 58 below.

### (4) Voucher Program for Non-Aerosol Products:

(b)  The Aerosol Products Refund Program is limited to the products subject to the Aerosol Products Recall. However, under this Settlement, Class Members will be able to submit a Claim for a Voucher to be used to acquire replacement or substitute Neutrogena or Aveeno products.  The face value of the Voucher will be equal to the average retail selling price of the Non-Aerosol Product(s) purchased, up to a maximum of two (2) such units per household.

(c)  Vouchers shall be transferable, may be aggregated and shall expire not less than

twelve (12) months from their issuance. The email or cover letter accompanying the Voucher and the Voucher provided to Class Members pursuant to the terms of this Settlement shall conspicuously state the Voucher's expiration date. Vouchers may be used toward the purchase of any Neutrogena or Aveeno product(s) and will not be limited to the specific Non-Aerosol Product previously purchased, nor to sunscreen products in general.

(d)     Through the notice program described in Paragraph 55 below, Class Members will be informed that they may be eligible for a Voucher if they submit a timely, valid written Claim Form, the value of which is based on the number of units claimed (with a maximum of two (2) units per household) and that, should the claims exceed One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00), each claim will be reduced on a *pro rata* basis.

(e)     In no event will the total face value of all Vouchers issued to Class Members who timely submit a valid written Claim Form be more than One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00).   In the event that claims exceed this amount, the value of each Voucher will be reduced on a *pro rata* basis.

(f)     JJCI will also notify consumers on its Aerosol Products Refund Program website of the availability of this Voucher program.

**C.     Notice Program and Claims Process.**

54.     In connection with the Settlement Agreement, the Parties will request that the court appoint an independent Settlement Administrator to, *inter alia*, provide consumer purchasers of Aerosol Products and Non-Aerosol Products with notice of the settlement and its essential terms. The Class Notice will inform the Class of the Vouchers available under this Settlement, and of their right to opt out of the Settlement. The Settlement Administrator will also establish a dedicated Settlement Website to provide information regarding the settlement; be designated as the person or entity to receive and process opt-out forms; and provide notice to appropriate authorities in compliance with the provisions of the Class Action Fairness Act, see 28 U.S.C. § 1715.

15

55.     Subject to the rights and limitations set forth in this Settlement, every Class Member shall have the right to submit a claim for Vouchers under this Settlement. A claim shall be a Valid Claim only if submitted on the Claim Form pursuant to and in compliance with the procedures set forth herein during the Claim Period.  Submission of a claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Class Member, or any other person, except as expressly provided herein.

56.     JJCI shall be responsible for paying all Settlement Notice and administration costs, which shall not exceed Five Hundred Thousand Dollars ($500,000.00).

**D.     <u>Incentive Awards to Settlement Plaintiffs.</u>**

57.     In recognition of the time and effort the Settlement Plaintiffs expended in pursuing this Action and in fulfilling their obligations and responsibilities as class representatives, and of the relief conferred on all Class Members by the Settlement, Class Counsel may ask the Court to approve the payment of an Incentive Award to each of the Settlement Plaintiffs. Within thirty (30) days of final approval by the Court of the Settlement Agreement, including any appeal relating thereto, JJCI shall, subject to court approval, pay to Katherine Brennan, Heather Rudy, Fred Salter, Judith Barich, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham, the sum of $250 each, for a total of $3,000, for their service as class representatives.  However, this settlement is not contingent on the court's approval of such Incentive Award.

58.     The Settlement Administrator shall issue an IRS Form 1099-MISC to Settlement Plaintiffs solely for the amount awarded by the Court for each Incentive Award. Settlement Plaintiffs shall be solely and legally responsible to pay all applicable taxes, penalties, or interest arising as a result of the Incentive Awards.

59.     Payment by JJCI of the Incentive Award is separate from, and in addition to, the other relief afforded to the Class Members in the Settlement.

**E.     <u>Attorneys' Fees and Expenses.</u>**

60.     Class Counsel, Aylstock, Witkin, Kreis and Overholtz, PLLC and Bradley/Grombacher

LLP, may make an application to the Court for an award of Attorneys' Fees and Expenses in the Action to be paid by JJCI for their work in connection with the *Brennan* Action and the *Serota* Action, and as co-lead counsel for the Settlement Class(es), which shall be the sole aggregate compensation received by Class Counsel.

61.     JJCI will not object to a fee application up to and including the sum of Two Million Five Hundred Thousand Dollars ($2,5,00,000), plus reimbursement of reasonable costs and expenses up to and including the sum of One Hundred Thousand Dollars ($100,000), being approved by the Court. JJCI agrees to pay the approved fee amount, up to $2,500,000 million, and costs, up to $100,000, within thirty (30) days of the Effective Date.

62.     Nothing in this Agreement shall restrict Settlement Plaintiffs or Class Counsels' ability to appeal any decision by the Court to award less than the requested Attorneys' Fees and Expenses. Any order relating to the award of Attorneys' Fees and Expenses or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement.

63.     Any Attorneys' Fees and Expenses awarded by the Court will be in lieu of statutory fees Settlement Plaintiffs and/or Class Counsel might otherwise have been entitled to recover from JJCI. Settlement Plaintiffs and Class Counsel agree that JJCI shall not pay, or be obligated to pay, Class Counsel in excess of any award of Attorneys' Fees and Expenses authorized by the Court.

64.     JJCI shall have no liability or other responsibility for allocation of any such Attorneys' Fees and Expenses awarded, and, in the event that any dispute arises relating to the allocation of Attorneys' Fees and Expenses, Class Counsel agree to hold JJCI harmless from any and all such liabilities, costs, and expenses of such dispute.  JJCI shall pay its own fees and costs incurred in this Action.

## V.     RELEASE

65.     Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties.

66.     Members of the Class who have sought exclusion from the Settlement prior to termination of the Objection Exclusion Period do not release their claims and will not obtain any benefits under the terms and conditions of the Settlement.

67.     Class Members are not releasing any claims for bodily injuries.

68.     Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Settlement Plaintiffs and Class Members; and (b) Settlement Plaintiffs and the Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal all Released Claims.

## VI.     SETTLEMENT IMPLEMENTATION PROCEDURE

### A.     <u>Provision of Settlement Benefits.</u>

69.     JJCI shall transmit to the Settlement Administrator the aggregate dollar value of all Attorneys' Fees and Expenses, Attorney costs, Incentive Awards, and Administrator Fees by no later than Fifteen (15) calendar days after the Effective Date.

### B.     <u>Responsibilities of Settlement Administrator.</u>

70.     The Parties shall jointly recommend and retain Rust Consulting to be the Settlement Administrator. Following the Court's preliminary approval of this Settlement and the Court's appointment of the proposed Settlement Administrator, the Settlement Administrator shall disseminate the Class Notice as specified in the Preliminary Approval Order and in this Settlement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

71.     In fulfilling its responsibilities in providing Class Notice, the Settlement Administrator, without limitation, shall be responsible for: (a) dissemination of the Class Notice pursuant to the requirements of this Settlement; (b) designing and implementing notice to the Class by various electronic media as set forth herein; (c) responding to requests from Class Counsel and/or Defense Counsel; and (d) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement pursuant to the requirements of this Settlement.

72.     The Settlement Administrator also shall be responsible for implementing the terms of the claim process and related administrative activities that relate to the Voucher that include communications with the Class concerning the Settlement, the claim process, and their options thereunder. In particular, the Settlement Administrator shall be responsible for: (a) printing, e-mailing, mailing, or otherwise arranging for the distribution of the Claim Forms in response to requests by members of the Class; (b) making any electronic or physical mailings required under the terms of this Settlement; (c) establishing the Settlement Website that contains the Claim Form that can be completed and submitted online; (d) establishing a toll-free voice response unit with message and interactive voice response (IVR) capabilities to which the Class may refer for information about the Action and the Settlement; (e) receiving and maintaining any correspondence from the Class regarding requests for exclusion and objections to the Settlement; (f) forwarding inquiries from the Class to Class Counsel or their designee for a response, if warranted; (g) establishing a post office box for the receipt of Claim Forms, exclusion requests, objections, and any correspondence from the Class; (h) reviewing Claim Forms according to the review protocols agreed to by the Parties and set forth in this Settlement; (i) providing weekly updates via e-mail each Friday to Defense Counsel and Class Counsel regarding the number of claims, requests for exclusion, and objections; and (j) otherwise implementing and/or assisting with the claim review process and payment of Valid Claims.

73.     The Settlement Administrator shall administer the Settlement in accordance with the terms and conditions of this Settlement and, without limiting the foregoing, shall:

(a)     Treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement or by Court order;

(b)     Receive correspondence from members of the Class to exclude themselves from the Settlement. If the Settlement Administrator receives any exclusion (i.e., opt-out) requests from members of the Class after the deadline for the submission of such requests, the Settlement Administrator shall promptly provide Class Counsel

19

and Defense Counsel with copies thereof;

       (c)     Receive copies of objections from members of the Class who are objecting to any aspect of the Settlement; and

       (d)     Receive and maintain all other correspondence from any Class Member regarding the Settlement.

74.    If the Settlement is not approved or for any reason the Effective Date does not occur, no payments or distributions of any kind shall be made pursuant to this Settlement, except for the costs and expenses of the Settlement Administrator, which shall be paid by JJCI up to a maximum of $500,000, and for which Settlement Plaintiffs and/or Class Counsel are not responsible.

75.    In the event the Settlement Administrator fails to perform its duties, and/or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Settlement Plaintiffs, Class Counsel, Defendant, and/or Defense Counsel, then the Party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced.  No Party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith, and, if they are unable to do so, will refer the matter to the Court for resolution.

**C.**      **<u>Notice to the Class.</u>**

76.    The Parties agree that the notice plan contemplated by this Settlement, as described in the Notice Protocol attached as Exhibit D hereto, is valid and that if effectuated, it would provide reasonable notice to the Class, and that it represents the best practicable notice under the circumstances.

77.    Because the names of Class Members and other personal information about them will be provided to the Settlement Administrator for purposes of providing Vouchers to Class Members and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Defendant and Class Counsel and will take all reasonable steps to ensure that any information provided to it by Class Members will be used solely for the purpose of effecting

its obligation under the terms and conditions of this Settlement.

### (1) The Long Form Notice

78.    The Long Form Notice shall be in a form substantially similar to the document attached to this Settlement as Exhibit A and shall comport to the following:

(a)    <u>General Terms</u>: The Long Form Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information regarding the definition of the Class, the identity of members of the Class, how the proposed Settlement would provide relief to Class Members, what claims are released under the proposed Settlement, eligibility requirements for receiving a Voucher, and other relevant information.

(b)    <u>Alert as to Voucher Program</u>: The Notice will inform Class Members of the limited availability of vouchers for Non-Aerosol Products and shall instruct Class members on how to file a claim for Vouchers for Non-Aerosol Products.

(c)    <u>Opt-out Rights</u>: The Long Form Notice shall inform the Class Members that any member of the Class has the right to seek exclusion from (i.e., opt out of) the Settlement.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

(d)    <u>Objection to the Settlement</u>: The Long Form Notice shall inform the Class Members that any member of the Class has the right to object to the Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

(e)    <u>Claim Process and Claim Form</u>: The Long Form Notice shall inform the Class about how to file a Valid Claim prior to the Claim Form Deadline in order to be eligible to obtain a Voucher under the terms and conditions of the Settlement.  The Claim Form shall be available as part of the Class Notice.

(f)    <u>Attorneys' Fees and Expenses and Incentive Awards</u>: The Long Form Notice shall provide information about the Attorneys' Fees and Expenses and Incentive Awards

21

sought by Class Counsel and Plaintiffs.

### (2) Settlement Website

79.     Before the dissemination of the Class Notice, the Settlement Administrator shall establish an Internet website that will inform the Class of the terms and conditions of this Settlement, their rights, important dates and deadlines, and related information. The Settlement Website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, including but not limited to the Long Form Notice, the Claim Form, the Preliminary Approval Order, and this Settlement Agreement.

### (3) Toll-Free Telephone Number

80.     Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a voice response unit with message and interactive voice response (IVR) capabilities to which the Class may refer for information about the Action and the Settlement.

### D.     Claim Submission.

81.     Each Class Member may submit a Claim Form pursuant to the instructions set forth therein.

82.     Any Class Member who does not submit a Valid Claim in accordance with the terms and conditions of this Settlement will not be entitled to receive a Voucher pursuant to this Settlement, but will in other respects be bound together with all Class Members by all of the terms of this Settlement, including the terms of the Final Order and Final Judgment to be entered in the Action and the Release provided for herein, and will be barred from bringing any action in any forum (state or federal) against the Released Parties concerning any of the Released Claims.

### E.     Claim Administration Protocol.

83.     The Settlement Administrator shall take all reasonable efforts to administer the Settlement and claims for Vouchers efficiently and to avoid unnecessary fees and expenses.  As soon as work commences, the Settlement Administrator shall provide a detailed written accounting of all fees and expenses on a regular basis to Class Counsel and Defense Counsel, and shall respond promptly to inquiries by Class Counsel and Defense Counsel concerning the administration and notice fees and

expenses.

84.     The Parties are entitled to observe and monitor the performance of the Settlement Administrator to assure compliance with the Settlement and this Protocol. The Settlement Administrator shall promptly respond to all inquiries and requests for information made by JJCI, its counsel, or Class Counsel.

85.     The Settlement Administrator shall provide periodic reports to Class Counsel and Defense Counsel regarding the implementation of the Settlement and this Protocol.

86.     The Settlement Administrator may retain one or more persons to assist in the completion of its responsibilities.

### (1) Locating, Obtaining, and Submitting Claims Forms

87.     The Claim Form, which is substantially similar to the form attached as Exhibit C to the Settlement, shall be available as part of the Class Notice, on the Settlement Website, in response to requests through the toll-free voice response unit with message and interactive voice response (IVR), and also through contacting by telephone or by mail or other similar service the Settlement Administrator and requesting a copy of the Claim Form be sent. The Claim Form on the Settlement Website and the hard copy Claim Form shall be consistent in all substantive respects. Class Members shall have access to the Claim Form by using a unique Class Member identifier provided by the Settlement Administrator.

88.     Class Members may submit a claim to the Settlement Administrator during the Claim Period. As part of the claim process, Class Members shall be eligible for the Vouchers provided in the Settlement, provided Class Members complete and timely submit the Claim Form to the Settlement Administrator within the Claim Period, subject to the terms herein and in the Settlement.

89.     Claims may be submitted by completing the Claim Form in hard copy by mail or other similar delivery service or on-line through a web-based Claim Form at the Settlement Website.

90.     The Settlement Administrator shall establish and maintain the Settlement Website that shall be easily accessible through commonly used Internet Service Providers for the submission of claims. The Long Form Notice, Claim Form, Settlement Agreement, and Preliminary Approval

Order, in addition to any other materials agreed upon by the Parties and/or required by the Court, shall be available on the Settlement Website. The Settlement Website shall be designed to permit Class Members to readily and easily submit claims and obtain information about their rights and options under the Settlement. The Settlement Website shall be maintained continuously until the end of the Claim Period. The Settlement Administrator shall be solely responsible for receiving and processing requests for Claim Forms and for promptly delivering Claim Forms to the Class Members who request them.

91.     The Settlement Administrator also shall establish a toll-free telephone number that will have recorded information answering frequently asked questions about certain terms of the Settlement, including, but not limited to, the claim process and instructions about how to request a Claim Form and/or Class Notice.

### (2) Claim Form Review and Processing

92.     Class Members must submit their claims so that they are postmarked, or submitted online no later than the Claim Form Deadline. The Claim Form shall be deemed to have been submitted when it is actually received by the Settlement Administrator. The web-based Claim Form shall include necessary disclaimers to comply with federal and state law.

93.     The Settlement Administrator shall determine whether a Claim Form meets the requirements set forth in this Settlement. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine in accordance with the terms and conditions of the Settlement the extent, if any, to which each claim shall be allowed. The Settlement Administrator shall have the authority to determine whether a claim by any Class Member is complete and timely. The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims, including, without limitation, indexing all funds provided to Class Members. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties can require information from Class Members or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court.

94.     The Settlement Administrator shall gather, review, prepare, and address the Claim Forms

received pursuant to the Settlement as follows:

    (a)    Claims that have been properly submitted shall be designated as "Valid Claims." The Settlement Administrator shall examine the Claim Form before designating the claim as a Valid Claim, to determine that the information on the Claim Form is reasonably complete and contains sufficient information to enable the mailing or electronic delivery of Voucher(s) to the Class Member.

    (b)    No Class Member may submit more than one Claim Form.  The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Class Member.  The Settlement Administrator shall determine whether there is any duplication of claims, if necessary by contacting the Class Member(s) or their counsel.  The Settlement Administrator shall designate any such duplicative claims as rejected claims to the extent they allege the same purchases on behalf of the same Class Member.

    (c)    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the claim process.  The Settlement Administrator may, in its discretion, deny in whole or in part any claim to prevent actual or possible fraud or abuse.

    (d)    By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate to preserve the funds provided under the Settlement to further the purposes of the Settlement if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any claim to prevent actual or possible fraud or abuse.

95.    If a Valid Claim is not contested by the Parties, that claim shall be processed for payment by the Settlement Administrator.

96.    Claim Forms that do not meet the terms and conditions of this Settlement shall be

promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Class Member of the reason(s) why the Claim Form was rejected.

    (a)    However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator shall send a Notice of Missing or Inaccurate Information explaining what information is missing or inaccurate and needed to validate the claim and have it submitted for payment.  The Settlement Administrator shall notify the Class Member using the contact information provided in the Claim Form.  The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Class Member's physical or e-signature.  Class Members shall have until the end of the Claim Period, or twenty-one (21) calendar days from when the Notice of Missing or Inaccurate Information was mailed, whichever is later, to reply to the Notice of Missing or Inaccurate Information, and provide the required information.

    (i)    In the event the Class Member timely and adequately provides the requested information and/or documentation, the claim shall be deemed validated and shall be processed by the Settlement Administrator for payment.

    (ii)    In the event the Class Member does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the claim unless Defendant and Class Counsel otherwise agree.

    (b)    Where a good faith basis exists, the Settlement Administrator may reject a Class Member's Claim Form for, among other reasons, the following:

    (i)    The Class Member purchased products that are not covered by the terms of this Settlement;

    (ii)    Failure to fully complete and/or sign the Claim Form;

    (iii)    Illegible Claim Form;

    (iv)    The Claim Form is fraudulent;

    (v)    The Claim Form is duplicative of another Claim Form;

    (vi)    The person submitting the Claim Form is not a Class Member;

    (vii)    The person submitting the Claim Form requests that payment be made to a person or entity other than the Class Member for whom the Claim Form is submitted;

    (viii)    Failure to submit a Claim Form by the Claims Form Deadline; and/or

    (ix)    The Claim Form otherwise does not comply with the requirements of this Settlement.

97.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

    (a)    The Settlement Administrator shall have thirty (30) days from the end of the Claim Period to exercise the right of rejection based on findings of fraud or duplication.

    (b)    A request for additional information shall not be considered a rejection for purposes of this Paragraph.

    (c)    If a claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Class Member using the contact information provided in the Claim Form. Class Counsel and Defense Counsel shall be provided with copies of all such notifications to Class Members.

    (d)    The Settlement Administrator's determination as to whether to approve or deny a claim shall be final and binding, except that, if any Claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the Claimant must, within fifteen (15) business days from receipt of the rejection, transmit to the Settlement Administrator by e-mail or U.S. mail a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Class Counsel and Defense Counsel, of the

27

denial of the claim.  If Class Counsel and Defense Counsel cannot agree on a resolution of the Claimant's notice contesting the rejection, then the Settlement Administrator's determination shall become final.

98.     The Settlement Administrator shall provide all information gathered in investigating claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defense Counsel.  Additionally, Class Counsel and Defense Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

99.     No person shall have any claim against JJCI, Defense Counsel, Settlement Plaintiffs, the Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

100.    Not later than seven (7) days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court the details regarding the number of Valid Claims received and processed by the Settlement Administrator to date.

### (3) Claim Calculation and Payment of Valid Claims

101.    The Settlement Administrator shall identify the timely, valid, and approved claims submitted pursuant to the claim process to be paid by JJCI pursuant to the terms and conditions of this Settlement.

102.    Thirty-one (31) days after the Effective Date the Settlement Administrator shall begin to issue Vouchers.  Not later than ninety (90) days after the occurrence of the Effective Date, the Settlement Administrator shall have completed issuance of Vouchers to Class Members who have submitted Valid Claims pursuant to the claim process.

### F.     Objections and Opt-outs.

103.    Class Members who fail to file with the Court and serve upon the Settlement Administrator, Class Counsel, and Defense Counsel timely written objections in the manner specified in this Settlement and the Class Notice shall be deemed to have waived all objections and shall be

foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  Any member of the Class who submits a timely request for exclusion (i.e., to opt out) may not file an objection to the Settlement and shall have no rights or entitlement to Vouchers under this Settlement.

104.   Any Class Member who intends to object to the fairness, reasonableness, and/or adequacy of the Settlement must, in addition to timely filing a written objection with the Court, send the written objection to the Settlement Administrator by U.S. mail (at the mailing address to be included in the Long Form Notice, substantially in the form attached as Exhibit A or by e-mail to the following e-mail address: info@sunproductsettement.com, along with a copy by U.S. mail or e-mail to Class Counsel and Defense Counsel (at the addresses set forth below) postmarked no later than the date specified in the Preliminary Approval Order.  Class Members who object must set forth: (a) their full name; (b) current address; (c) a written statement of their objection(s) and the reasons for each objection; (d) a statement of whether they intend to appear at the Fairness Hearing, and if so, whether they will appear with separate counsel; (e) their signature; (f) the case name and case number (*In re Johnson & Johnson Sunscreen Marketing,* Sales *Practices and Products Liability Litigation*, MDL No. 3015); (g) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions in any court, whether state or otherwise, in the United States in the previous five (5) years; and (h) documents sufficient to establish the person's standing as a Settlement Class Member, i.e., verification under penalty of perjury as to the person's purchase of Aerosol Products or Non-Aerosol Products during the Class Period, or a Proof of Purchase.  If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the objection to this Settlement.  Objections must be served on the Settlement Administrator (at the mailing address to be included in the Long Form Notice, substantially in the form attached as Exhibit A or by e-mail to the following e-mail address: info@sunproductsettement.com, as well as Class Counsel and Defense Counsel as follows:

CLASS ACTION SETTLEMENT AGREEMENT

| **Upon Class Counsel at:** | **and** | **Upon Defense Counsel at:** |
|---|---|---|

Kiley Grombacher
BRADLEY/GROMBACHER LLP
31365 Oak Crest Dr., Suite 240
Westlake Village, CA 91361
kgrombacher@bradleygrombacher.com

Steven A. Zalesin
PATTERSON BELKNAP
WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
sazalesin@pbwt.com

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
jrichards@awkolaw.com

105.   No Class Member shall be entitled to object to the Settlement, and no written objections or briefs submitted by any Class Member shall be received or considered by the Court at the Fairness Hearing, unless written notice of the objecting Class Member's intention to appear (or not appear) at the Fairness Hearing and copies of any written objections and/or briefs, shall have been filed with the Court and served on the Settlement Administrator, Class Counsel, and Defense Counsel on or before the date specified in the Preliminary Approval Order.  Objections that are mailed to the Court (and not filed with the Court), or objections that are served on the Parties but not filed with the Court, shall not be received or considered by the Court at the Fairness Hearing.

106.   The Parties shall request that the Court allow any interested party to file a response to any objection, as described in Paragraph 109, no later than seven (7) days before the Fairness Hearing, or as the Court may otherwise direct.

107.   Members of the Class may elect to exclude themselves from (i.e., opt out of) the Settlement, relinquishing their rights to Vouchers hereunder.  Members of the Class who opt out of the Settlement will not release their claims pursuant to this Settlement.  Members of the Class wishing to opt out of the Settlement must send to the Settlement Administrator by U.S. mail (at the mailing address to be included in the Long Form Notice, substantially in the form attached as Exhibit A) a personally signed letter including (a) their full name; (b) current address; (c) a clear statement communicating that they

elect to be excluded from the Class, do not wish to be a Class Member, understand that they will not receive any Voucher under the Settlement, and elect to be excluded from any judgment entered pursuant to the Settlement; (d) their signature; and (e) the case name and case number (*In re Johnson & Johnson Sunscreen Marketing,* Sales *Practices and Products Liability Litigation*, MDL No. 301). Any request for exclusion must be postmarked on or before the exclusion deadline provided in the Court's Preliminary Approval Order.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. A member of the class cannot opt out on behalf of anyone but himself or herself.  No Class Member shall be deemed to have opted out of the Settlement through any purported "mass" or "class" opt-outs, or via any class action, mass action, or collective or representative action.  Members of the Class who fail to submit a valid and timely request for exclusion on or before the date specified in the Court's Preliminary Approval Order shall be bound by all terms of this Settlement and the Final Order and Final Judgment, regardless of whether they have requested exclusion from the Settlement.  If a Class Member submits both a Claim Form and a request for exclusion, the Claim Form shall take precedence and be considered binding, and the opt-out request shall be deemed to have been sent by mistake and rejected.

108.   The Settlement Administrator shall promptly provide copies of all requests for exclusion, objections, and/or related correspondence from the Class to Class Counsel and Defense Counsel.  Not later than three (3) business days after the deadline for submission of requests for exclusion (i.e., to opt out), the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete opt-out list, which shall also be filed with the Court no later than seven (7) days before the Fairness Hearing, together with copies of the opt-out requests.

109.   On the date set forth in the Preliminary Approval Order, a Fairness Hearing shall be conducted to determine final approval of the Settlement.  Class Members who wish to be heard at the Fairness Hearing (whether individually or through separate counsel) and are objecting to the Settlement shall comply with the provisions of this Settlement.  Class Members who wish to be heard at the Fairness Hearing (whether individually or through separate counsel) and are not objecting to

31

the Settlement shall file a notice of appearance with the Court, and serve the notice upon Class Counsel and Defense Counsel at the addresses indicated above at least fourteen (14) calendar days before the Fairness Hearing.

110.    At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage any Party or Settlement Class Member to submit Objections or Requests for Exclusion, or to appeal from the Court's Judgment.

## VII.    CAFA COMPLIANCE

111.    Within ten (10) days following Preliminary Approval, the Settlement Administrator shall serve the CAFA Notice to appropriate state and federal officials pursuant to the Class Action Fairness Act ("CAFA") at 28 U.S.C. § 1715.  The Settlement Administrator shall be responsible for drafting and preparing the notice in conformity with 28 U.S.C. § 1715 and for identifying the appropriate state and federal officials to be notified.

## VIII.   SCOPE AND EFFECT OF CONDITIONAL CERTIFICATION OF THE CLASS SOLELY FOR PURPOSES OF SETTLEMENT

112.    For purposes of settlement only, the Parties agree to seek provisional certification of the Class.  The Parties further agree that the Court should make preliminary findings and enter the Preliminary Approval Order granting provisional certification of the Class subject to final findings and ratification in the Final Order and Final Judgment, and appointing the Settlement Plaintiffs as the representatives of the Class and Class Counsel as counsel for the Class.

113.    JJCI does not consent to certification of the Class for any purpose other than to effectuate this Settlement.  JJCI's agreement to conditional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Settlement Plaintiffs or any members of the Class.

114.    If this Settlement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the order certifying the Class for purposes of effectuating this Settlement, and all preliminary and/or final findings regarding that class certification order, shall be automatically

vacated upon notice of the same to the Court; the Action shall proceed as though the Class had never been certified pursuant to this Settlement and such findings had never been made; and the Action shall return to the procedural status quo ante in accordance with this Paragraph.  Class Counsel shall not refer to or invoke the vacated findings and/or order relating to this Settlement in this Action or any future proceeding in the event this Settlement is not consummated and the Action, including the appropriateness of class certification, is later litigated and contested by Defendant.

## IX.    CONFIRMATORY DISCOVERY

115.    Following preliminary approval, the Parties agree to engage in confirmatory discovery in the form of the depositions of JJCI representatives Derek Henderson and Carla Oliveira.

## X.    MODIFICATION OR TERMINATION OF THE SETTLEMENT

116.    The terms and provisions of this Settlement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement and its implementing documents (including all Exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not materially alter, reduce or limit the rights of Class Members under this Settlement.

117.    In the event the terms or conditions of this Settlement are materially modified by any court, either Party in its sole discretion may, within fourteen (14) days after such a material modification, declare this Settlement null and void. For purposes of this Paragraph, material modifications include but are not limited to substantial changes to the definition of the Class, Class Members, the Vouchers, or Released Claims; substantial changes to the Notice Plan, the terms of the settlement consideration, or the terms of the Attorneys' Fees and Expenses and Incentive Awards.  In addition to and without limiting the foregoing, either Party may declare this Settlement null and void if, during the Objection and Exclusion Period, more than 250 Class Members have opted out or excluded themselves from the Settlement.  In the event that a Party exercises his/her/its option to withdraw from and terminate this Settlement, then the Settlement proposed herein shall become null and void and shall have no

CLASS ACTION SETTLEMENT AGREEMENT

force or effect, the Parties shall not be bound by this Settlement, and the Parties in the Action will be returned to their respective positions existing immediately prior to the execution of this Settlement. Notwithstanding the foregoing, in the event this Settlement is not approved by any court, or is declared null and void, or in the event that the Effective Date does not occur, Class Members, Settlement Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any costs of notice and administration associated with this Settlement, except that each Party shall bear its own attorneys' fees and costs and Defendant's future payment obligations to Class Counsel or Class Members pursuant to this Settlement shall cease.

## XI.    SETTLEMENT NOT EVIDENCE AGAINST PARTIES

118.   The Parties expressly acknowledge and agree that this Settlement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute a compromise.  In no event shall this Settlement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement, or to enforce the rights of the Parties or their counsel under the terms and conditions of this Settlement. Without limiting the foregoing, neither this Settlement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, Defendant, the Released Parties, Settlement Plaintiffs, or the Class, or as a waiver by Defendant, the Released Parties, Settlement Plaintiffs, or the Class of any applicable privileges, claims or defenses.

119.   The provisions contained in this Settlement are not and shall not be deemed a presumption, concession, or admission by Defendant of any fault, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings, nor shall they be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal or administrative.

34

## XII.    COOPERATION

120.    The Parties (including their counsel, successors, and assigns) agree to cooperate fully and in good faith with one another and to use their best efforts to effectuate the Settlement, including without limitation in seeking preliminary and final Court approval of this Settlement, carrying out the terms of this Settlement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

121.    Settlement Plaintiffs shall provide JJCI the opportunity to review such filings related to settlement approval in advance.  The Parties acknowledge that JJCI has provided certain confidential information, data and evidence in connection with the Parties' settlement negotiations.  The Parties will meet and confer and reach mutual agreement as to the appropriate form of disclosing such information to the Court, which may involve filing under seal. The Parties acknowledge and recognize that, in accordance with the interest of public transparency, the filing of any such information under seal will not be requested unless the Parties believe it is necessary to do so.

122.    In the event that the Court does not approve the Settlement or does not issue the Final Order and Final Judgment, the Parties agree to use all reasonable efforts, consistent with this Settlement, to cure any defect identified by the Court.

123.    The Parties shall cooperate in connection with effectuating the Settlement or the administration of claims thereunder.  Any requests for cooperation shall be narrowly tailored and reasonably necessary for the requesting Party to recommend the Settlement to the Court, and to carry out its terms.

## XIII.    MISCELLANEOUS PROVISIONS

124.    The Parties agree that the recitals are contractual in nature and form a material part of this Settlement.

125.    This Settlement and its accompanying Exhibits set forth the entire understanding of the Parties.  No change or termination of this Settlement shall be effective unless in writing and signed by Class Counsel and Defense Counsel.  No extrinsic evidence or parol evidence shall be used to interpret this Settlement.

126.   Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Settlement, whether written or oral, are superseded and hereby revoked by this Settlement. The Parties expressly agree that the terms and conditions of this Settlement will control over any other written or oral agreements.

127.   All of the Parties warrant and represent that they are agreeing to the terms of this Settlement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Settlement with their attorneys, and that the terms and conditions of this Settlement are fully understood and voluntarily accepted.

128.   The waiver by any Party of a breach of any term of this Settlement shall not operate or be construed as a waiver of any subsequent breach by any Party. The failure of a Party to insist upon strict adherence to any provision of this Settlement shall not constitute a waiver or thereafter deprive such Party of the right to insist upon strict adherence.

129.   The headings in this Settlement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

130.   This Settlement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.  The date of execution shall be the latest date on which any Party signs this Settlement.

131.   This Settlement has been negotiated among and drafted by Class Counsel and Defense Counsel.  Settlement Plaintiffs, Class Members, and JJCI shall not be deemed to be the drafter of this Settlement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. Accordingly, this Settlement should not be construed in favor of or against one Party as to the drafter, and the Parties agree that principles of construing ambiguities against the drafter shall have no application.  All Parties agree that counsel for the Parties drafted this Settlement during extensive arms' length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement was made or executed.

132.   Settlement Plaintiffs and Class Counsel will not issue any press releases or communicate with the media regarding the Settlement or the Action without prior approval by JJCI of the statement or communications.  However, if Settlement Plaintiffs or Class Counsel receive an inquiry from any third party, they may decline to comment, refer to the Class Notice, refer to the Complaint, or refer to the Court docket.  Settlement Plaintiffs and Class Counsel agree not to make disparaging public statements about JJCI, the Products, and/or Defense Counsel out-of-court.  Settlement Plaintiffs and Class Counsel are free to (a) respond in a truthful and non-disparaging manner to inquiries regarding the Action and/or Settlement from the Class; and (b) state they served as legal counsel in this Action and reference the terms and amount of the Settlement on their firm websites, biographies, or similar marketing materials, and in connection with future applications to serve as interim-class or lead counsel, or as otherwise required by law.  JJCI and Defense Counsel agree not to make disparaging public statements about Settlement Plaintiffs, Class Counsel, or the Settlement.

133.   Each Party represents and warrants that the individual(s) executing this Settlement are authorized to enter into this Settlement on the Party's behalf.

134.   Any disagreement and/or action to enforce this Settlement shall be commenced and maintained only in the Court in which this Action is pending.  The Parties agree that the Court shall retain jurisdiction over the Settlement to interpret and enforce its terms and conditions, and for any other necessary purpose.

135.   Whenever this Settlement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and legal holidays) express delivery service as follows:

|  | | |
|---|---|---|
| **Upon Class Counsel at:** | **and** | **Upon Defense Counsel at:** |

|  |  |
|---|---|
| Kiley Grombacher | Steven A. Zalesin |
| BRADLEY/GROMBACHER LLP | PATTERSON BELKNAP WEBB & TYLER LLP |
| 31365 Oak Crest Dr., Suite 240 | |
| Westlake Village, CA 91361 | 1133 Avenue of the Americas |
| kgrombacher@bradleygrombacher.com | New York, New York 10036 |
| | sazalesin@pbwt.com |

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
jrichards@awkolaw.com

136.    The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement.

137.    This Settlement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

138.    The Parties believe that this Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

        IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement as of the date set forth below.

## **PLAINTIFFS**

Dated: December ___ 17 , 2021                    _____
                                                 Katherine Brennan

Dated: December ___, 2021                        _____
                                                 Michelle Mang

Dated: December ___, 2021                        _____
                                                 Meredith Serota

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
jrichards@awkolaw.com

136.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement.

137.   This Settlement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

138.   The Parties believe that this Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement as of the date set forth below.

## **<u>PLAINTIFFS</u>**

Dated: December ___, 2021

_____
Katherine Brennan

Dated: December __17__, 2021

_____
Michelle Mang

Dated: December ___, 2021

_____
Meredith Serota

38

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
jrichards@awkolaw.com

136.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement.

137.   This Settlement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

138.   The Parties believe that this Settlement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arms'-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement as of the date set forth below.

## **PLAINTIFFS**

Dated: December ___, 2021                    _____

Katherine Brennan

Dated: December ___, 2021                    _____

Michelle Mang

Dated: December 17, 2021                    _____

Meredith Serota

CLASS ACTION SETTLEMENT AGREEMENT

Dated: December __17__, 2021

_____

Jacob Somers

Dated: December ____, 2021

_____

Lauren Harper

Dated: December ____, 2021

_____

Dini Casaliggi

Dated: December ____, 2021

_____

Kelly Granda

Dated: December ____, 2021

_____

Kyra Harrell

Dated: December ____, 2021

_____

Carman Grisham

## **DEFENDANT**

Dated: December ____, 2021

_____

Johnson & Johnson Consumer Inc.

By:

_____

_____

39

Dated: December ___, 2021

_____

Jacob Somers

Dated: December __17__, 2021

_____

Lauren Harper

Dated: December ___, 2021

_____

Dini Casaliggi

Dated: December ___, 2021

_____

Kelly Granda

Dated: December ___, 2021

_____

Kyra Harrell

Dated: December ___, 2021

_____

Carman Grisham

## **DEFENDANT**

Dated: December ___, 2021

_____

Johnson & Johnson Consumer Inc.

By: _____

_____

CLASS ACTION SETTLEMENT AGREEMENT

DocuSign Envelope ID: 3EFA3265-B798-45ID-A533-963162B2EA52

Dated: December ___, 2021        _____

                                 Jacob Somers


Dated: December ___, 2021        _____

                                 Lauren Harper


Dated: December <sup>DC</sup> ___, 2021

                                 Dina Casaliggi


Dated: December ___, 2021        _____

                                 Kelly Granda


Dated: December ___, 2021        _____

                                 Kyra Harrell


Dated: December ___, 2021        _____

                                 Carman Grisham


### DEFENDANT


Dated: December ___, 2021        _____

                                 Johnson & Johnson Consumer Inc.

                           By:   _____


                                 _____

CLASS ACTION SETTLEMENT AGREEMENT

Dated: December ___, 2021

_____

Jacob Somers


Dated: December ___, 2021

_____

Lauren Harper


Dated: December ___, 2021

_____

Dina Casaliggi


Dated: December 17 ___, 2021

_____

Kelly Granda


Dated: December ___, 2021

_____

Kyra Harrell


Dated: December ___, 2021

_____

Carman Grisham


## **DEFENDANT**


Dated: December ___, 2021

_____

Johnson & Johnson Consumer Inc.

By: _____

_____

CLASS ACTION SETTLEMENT AGREEMENT

Dated: December ____, 2021

_____

Jacob Somers


Dated: December ____, 2021

_____

Lauren Harper


Dated: December ____, 2021

_____

Dina Casaliggi


Dated: December ____, 2021

_____

Kelly Granda


Dated: December 17, 2021

_____

Kyra Harrell


Dated: December ____, 2021

_____

Carman Grisham


**<u>DEFENDANT</u>**


Dated: December ____, 2021

_____

Johnson & Johnson Consumer Inc.

By: _____


_____

CLASS ACTION SETTLEMENT AGREEMENT

DocuSign Envelope ID: CC1DA59A-3F54-4731-8657-3286F7E686E6

Dated: December ____, 2021

_____

Jacob Somers

Dated: December ____, 2021

_____

Lauren Harper

Dated: December ____, 2021

_____

Dina Casaliggi

Dated: December ____, 2021

_____

Kelly Granda

Dated: December ____, 2021

_____

Kyra Harrell

Dated: December __17__, 2021

_____

Carmen Grisham

### **DEFENDANT**

Dated: December ____, 2021

_____

Johnson & Johnson Consumer Inc.

By:
_____


_____

CLASS ACTION SETTLEMENT AGREEMENT

Dated: December ___, 2021

_____

Jacob Somers

Dated: December ___, 2021

_____

Lauren Harper

Dated: December ___, 2021

_____

Dini Casaliggi

Dated: December ___, 2021

_____

Kelly Granda

Dated: December ___, 2021

_____

Kyra Harrell

Dated: December ___, 2021

_____

Carman Grisham

**DEFENDANT**

Dated: December ___, 2021

_____

Johnson & Johnson Consumer Inc.

By: _Tina S. French_

_Secretary_

39

## ADDITIONAL PLAINTIFFS

Dated: December ___, 2021                     17

_____
Heather Rudy

Dated: December ___, 2021

_____
Fred Salter

Dated: December ___, 2021

_____
Judith Barich


## CLASS COUNSEL

Dated: December ___, 2021

_____
Kiley Grombacher
BRADLEY/GROMBACHER LLP

Dated: December ___, 2021

_____
R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC


## DEFENSE COUNSEL

Dated: December ___, 2021

_____
Steven A. Zalesin
PATTERSON BELKNAP WEBB &
TYLER LLP

CLASS ACTION SETTLEMENT AGREEMENT

13230469

**ADDITIONAL PLAINTIFFS**

Dated: December ___, 2021

_____

Heather Rudy

Dated: December __17__, 2021

_____

Fred Salter

Dated: December ___, 2021

_____

Judith Barich

**CLASS COUNSEL**

Dated: December __17_, 2021

_____

Kiley Grombacher
BRADLEY/GROMBACHER LLP

Dated: December ___, 2021

_____

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC

**DEFENSE COUNSEL**

Dated: December ___, 2021

_____

Steven A. Zalesin
PATTERSON BELKNAP WEBB &
TYLER LLP

CLASS ACTION SETTLEMENT AGREEMENT

13230469

**ADDITIONAL PLAINTIFFS**

Dated: December ____, 2021                    _____

                                              Heather Rudy

Dated: December __17__, 2021                  _____

                                              Fred Salter

Dated: December ____, 2021                    _____

                                              Judith Barich

**CLASS COUNSEL**

Dated: December __17__, 2021                  _____

                                              Kiley Grombacher
                                              BRADLEY/GROMBACHER LLP

Dated: December __17__, 2021                  _____

                                              R. Jason Richards
                                              AYLSTOCK, WITKIN, KREIS &
                                              OVERHOLTZ, PLLC

**DEFENSE COUNSEL**

Dated: December ____, 2021                    _____

                                              Steven A. Zalesin
                                              PATTERSON BELKNAP WEBB &
                                              TYLER LLP

CLASS ACTION SETTLEMENT AGREEMENT

13230469

## ADDITIONAL PLAINTIFFS

Dated: December ___, 2021

_____

Heather Rudy

Dated: December ___, 2021

_____

Fred Salter

Dated: December ___, 2021

_____

Judith Barich

## CLASS COUNSEL

Dated: December ___, 2021

_____

Kiley Grombacher
BRADLEY/GROMBACHER LLP

Dated: December ___, 2021

_____

R. Jason Richards
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC

## DEFENSE COUNSEL

Dated: December _17_, 2021

_____

Steven A. Zalesin
PATTERSON BELKNAP WEBB &
TYLER LLP

40

CLASS ACTION SETTLEMENT AGREEMENT

13230469

# EXHIBIT A

<u>**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA**</u>

**If You Bought Neutrogena® or Aveeno® Sunscreens, YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION SETTLMENT.**

**If You Bought Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen Lotion, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen Lotion or Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion, YOU MAY BE ENTITLED TO RECEIVE A VOUCHER TO PURCHASE REPLACEMENT PRODUCTS.**

*A Court authorized this Notice.  This is not a solicitation from a lawyer.*

**READ THIS NOTICE CAREFULLY.  YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT.**

- There is a proposed settlement ("Proposed Settlement") in a class action lawsuit that claims Johnson & Johnson Consumer Inc. ("JJCI" or "Defendant") violated state laws regarding the manufacturing, labeling, sale and marketing of certain Neutrogena® and Aveeno® Sunscreen Products (*see* Question 2, below).  JJCI denies it did anything wrong and denies all of the claims made in this lawsuit.  The Court did not rule in favor of either party.  Instead, the Parties agreed to a Proposed Settlement in order to avoid the expense and risks of continuing the lawsuit.  For instructions on how to obtain the Proposed Settlement, please see www.sunproductsettlement.com.

- Anyone in the United States who bought one or more containers of the JJCI sunscreen products listed below under Question 6 ("Product(s)"), at any time between May 26, 2015 and the date of this Notice ("Notice Date"), is affected by the Proposed Settlement.

- Eligible purchasers of Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen Lotion, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen Lotion, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion ("Non-Aerosol Products") may be entitled to a voucher equal to the average retail price of the Non-Aerosol Products ($11.35) to be used to purchase a replacement Neutrogena® or Aveeno® product (with a maximum of two (2) units per household). If claims exceed a total voucher value of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) the amount of the voucher you receive will be reduced *pro rata*.  Vouchers may be used toward the purchase of any Neutrogena® or Aveeno® product(s) and will not be limited to the specific Non-Aerosol Product previously purchased, nor to sunscreen products in general.

- The Proposed Settlement will provide: (1) enhancements to JJCI's prior refund/recall program for Aerosol Products (*see* Question 6 for a list of Aerosol Products); (2) vouchers to eligible Class Members who make claims, (3) the costs of notice and administration, (4) an incentive award to the named plaintiffs, if

**QUESTIONS? VISIT** www.sunproductsettlement.com**, OR CALL [NUMBER] TOLL FREE**

approved by the Court, and (5) attorneys' fees and expenses to Class Counsel as approved by the Court. JJCI has also agreed to implement meaningful modifications to its specifications and testing protocols for raw materials and finished goods.

- Your legal rights are affected whether you act or not. **Read this Notice carefully because it explains decisions you must make and actions you must take <u>now</u>.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT | |
|---|---|
| **DO NOTHING** | Get no voucher. Give up your rights to sue JJCI regarding any of the claims at issue in this case (aside from claims for bodily injuries). |
| **SUBMIT A CLAIM FORM** | Receive a voucher if a valid claim form is submitted by **[CLAIMS FORM DEADLINE]** (*see* Question 12). |
| **EXCLUDE YOURSELF FROM THE CLASS** | Receive no voucher but keep the right to participate in another lawsuit against Defendant about the claims and products at issue in this case. You must send in a written request to be excluded by **[OPT OUT DEADLINE]** in order to be excluded (*see* Question 15). |
| **OBJECT TO THE PROPOSED SETTLEMENT** | You can write to the Court by **[OBJECTION DEADLINE]** to explain why you think the Settlement is not fair or reasonable or that it is otherwise improper (*see* Question 18). |
| **GO TO A HEARING** | If you file a written objection, you can ask by **[OBJECTION DEADLINE]** to speak before the Court about the fairness of the Proposed Settlement (*see* Question 24). Even if you do not wish to object, you can also appear at the hearing by filing a Notice of Appearance by **[APPEARANCE DEADLINE].** |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The deadlines may be moved, cancelled or otherwise modified. Consult the Settlement Website at www.sunproductsettlement.com regularly for updates and further details.

- The Court in charge of this case still has to decide whether to finally approve the Proposed Settlement. If the Settlement is approved by the Court, processing claims will take several months. Please be patient. If you do not exclude yourself, the Proposed Settlement (if approved) will release certain claims and will affect your right to start or continue any other lawsuit or proceeding involving the Products. The release is set forth in the Proposed Settlement, available at www.sunproductsettlement.com. It has been reprinted in full below (*see* Question 10).

## IMPORTANT QUESTIONS AND ANSWERS

**BASIC INFORMATION**………………………………………………………………………………....4
      1.     Why was this Notice issued?
      2.     What is this lawsuit about?
      3.     What is a class action?
      4.     Why is there a Proposed Settlement?

**WHO IS PART OF THE PROPOSED SETTLEMENT?**……………………………………………….5
      5.     Am I part of the Class?
      6.     Which Products are included in the Proposed Settlement?
      7.     What if I'm not sure if the Proposed Settlement includes me?

2

**QUESTIONS? VISIT** www. sunproductsettlementwebsite.com**, OR CALL [NUMBER] TOLL FREE**

**THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU CAN GET**…..……..…………….…6
     8.     What does the Proposed Settlement provide?
     9.     What can I get from the Proposed Settlement?
     10.    What am I giving up if I stay in the Class?
     11.    When will I get my Benefit, if any?

**HOW TO RECEIVE A BENEFIT**……………………………………………………….….…8
     12.    How can I get a Benefit?
     13.    What is the claim process?
     14.    What if I do nothing?

**EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT**…………………………...10
     15.    How can I opt out of the Proposed Settlement?
     16.    If I exclude myself, can I still get a Benefit?
     17.    If I don't exclude myself, can I sue Defendant for the same thing later?

**OBJECTING TO THE PROPOSED SETTLEMENT**………………………………..………...11
     18.    How can I tell the Court if I do not like the Proposed Settlement?
     19.    What is the difference between objecting and asking to be excluded?

**THE LAWYERS REPRESENTING THE CLASS**……………………..……………………..12
     20.    Do I have a lawyer in this case?
     21.    How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING**………..………………………………………....12
     22.    When and where will the Court decide whether to approve the Proposed Settlement?
     23.    Do I have to come to the Fairness Hearing?
     24.    May I speak at the Fairness Hearing?

**GETTING MORE INFORMATION**………………………………….………………………14
     25.    How can I get more information?

**QUESTIONS? VISIT** www.sunproductsettlementwebsite.com**, OR CALL [NUMBER] TOLL FREE**

## BASIC INFORMATION

| 1.  Why was this Notice issued? |
|---|

The Court ordered that this Notice be given because purchasers of the Products (*see* Question 6) at any time between May 26, 2015 and the Notice Date have the right to know about the Proposed Settlement of class action lawsuits, and about their rights and options, before the Court decides whether to finally approve the Proposed Settlement.  You can follow the progress of the Settlement on the Settlement Website.

This Notice explains: (1) this lawsuit, (2) the Proposed Settlement, (3) your legal rights, (4) what Benefits are available, (5) who is eligible for what Benefits under the Proposed Settlement, (6) how to get a Benefit, and (7) other important information.

Information about the Proposed Settlement is summarized below.  The settlement agreement, called the "Settlement," and available on the Settlement Website (www.sunproductsettlement.com), gives greater detail on the rights and duties of the Parties and Class Members.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**If you are a Class Member, your legal rights are affected whether you act or do not act, so please read this notice carefully.**

| 2.  What is this lawsuit about? |
|---|

The individuals who sued are called the "Plaintiffs."  JJCI is the defendant and together they are the "Parties." This lawsuit concerns claims that Defendant violated certain state laws and consumer protection statutes in connection with the sale, advertising, marketing, labeling, distribution, and manufacturing of the Products. The lawsuit alleged that the sale, labeling and marketing of Defendant's Products were improper because certain sunscreen Products sold in the United States were allegedly contaminated with benzene.  Defendant denies all these claims.

The Court in charge of this lawsuit is the United States District Court for the Southern District of Florida. The class action lawsuits are two of sixteen lawsuits that have been centralized as Multi-district Litigation CASE NO.: 3015.

Information about the Proposed Settlement is summarized in this Notice.  More detail is provided in the Settlement and other documents (including the First Amended Class Action Complaint), all available at www.sunproductsettlement.com.

| 3.  What is a class action? |
|---|

In a class action, one or more people called "named plaintiffs" or "class representatives" sue on behalf of themselves and other people whom they believe to have similar claims.  Together, all of these people are referred to as the "class."  A court resolves the claims of the entire class in a class action, except for those who exclude themselves from the class (*see* Question 15).  (To determine whether you are a member of the class covered by the Proposed Settlement (the "Class"), *see* Question 5.)

**4.  Why is there a Proposed Settlement?**

The Court has not decided in favor of the Plaintiffs or Defendant.  Instead, both sides have agreed to the Proposed Settlement.  By agreeing to the Proposed Settlement, and if the Proposed Settlement is approved by the Court, they avoid the costs and uncertainty of a trial, and Class Members receive the Benefits described in this Notice.  The Proposed Settlement does not mean that any law was broken or that Defendant did anything wrong, or that the Plaintiffs and the Class would or would not win their case if it were to go to trial. The Parties believe that the Proposed Settlement is fair, reasonable, and adequate and will provide a substantial benefit to the Class.

# WHO IS PART OF THE PROPOSED SETTLEMENT?

**5.  Am I part of the Class?**

You are a member of the Class ("Class Member") if:
- You are in the United States; and
- You purchased one or more containers of the Products described in Question 6 in the United States between May 26, 2015 and the Notice Date.

You are NOT a member of the Class if you:
- Are an employee, director, officer, and/or agent of Defendant, its subsidiaries, or affiliated companies;
- Purchased the Product(s) primarily for the purposes of resale;
- Are the judge presiding over the class action, his immediate family, and/or a member of the Court staff;
- Are a governmental entity; or
- Timely and properly exclude yourself from the Class (*see* Question 15).

**6.  Which Products are included in the Proposed Settlement?**

The Products covered by this Proposed Settlement are as follows:
- **Aerosol Products**: Neutrogena® Beach Defense® Aerosol Sunscreen, Neutrogena® Cool Dry Sport Aerosol Sunscreen, Neutrogena® Invisible Daily™ Defense Aerosol Sunscreen, Neutrogena® Ultra Sheer® Aerosol Sunscreen, and Aveeno® Protect + Refresh Aerosol Sunscreen.
- **Non-Aerosol Products**: Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen Lotion, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen Lotion, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion.

**7.  What if I'm not sure if the Proposed Settlement includes me?**

If you are not sure whether you are a Class Member, or have any other questions about the Proposed Settlement, visit the Settlement Website, www.sunproductsettlement.com, or call the toll-free number, [NUMBER].  You may also send questions to the Settlement Administrator via email at info@settlementwebsite.com or via U.S. Mail at Rust Consulting, PO Box #####, -####.

## THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU CAN GET

| 8.  What does the Proposed Settlement provide? |
|---|

If the Proposed Settlement is approved and becomes final, it will provide benefits ("Benefits") to Class Members.  Defendant will (i) provide vouchers to those eligible Class Members who purchased Non-Aerosol Products and file a valid claim by submitting a claim form (*see* Question 12), (ii) pay for the costs associated with this Notice and administration of the Proposed Settlement, (iii) pay attorneys' fees and expenses for Class Counsel awarded by the Court (*see* Question 21), and (iv) pay an incentive award to the named Plaintiffs if awarded by the Court (*see* Question 21).

In addition, to prevent recurrence, Defendant has agreed to: (1) adopt a new specification applicable to any supplier of isobutane raw material for use in Aerosol Products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene; (2) direct its external manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in Aerosol Products, the raw material supplier test for the presence of benzene above one (1) PPM in such raw material, and to refrain from shipping such raw material to Defendant's external manufacturer unless the shipment has passed such test; (3) require that, upon receipt of any shipment of raw material isobutane intended for use in Aerosol Products, Defendant's external manufacturer test for the presence above one (1) PPM in such raw material, and refrain from use of such raw material unless it has passed such test.; and (4) require its external manufacturer to engage an independent, ISO-certified laboratory to test a reasonable number of random samples from at least 25% of manufacturing lots of finished goods Aerosol Products for the presence of benzene, and to withhold release of such finished goods from any such lot unless all such samples have passed such test.  The Settlement, which is available at www.sunproductsettlement.com, has more information on these changes.

| 9.  What can I get from the Proposed Settlement? |
|---|

If you purchased any of the Non-Aerosol Products listed in response to Question 6 and you submit a timely and valid claim form, you will receive a voucher in the amount of $11.35 per Product to acquire replacement or substitute Neutrogena or Aveeno products up to a maximum of two (2) such units per household. Vouchers shall be transferable, may be aggregated and shall expire not less than twelve (12) months from their issuance. If claims exceed a total voucher value of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) the amount of the voucher you receive will be reduced *pro rata*.

| 10.  What am I giving up if I stay in the Class? |
|---|

Unless you affirmatively exclude yourself from the Proposed Settlement in writing, you can't sue Defendant or be part of any other lawsuit against Defendant or other "Released Parties" about the issues in this case. Unless you exclude yourself, all of the decisions by the Court will be binding on you.  The Settlement is available at www.sunproductsettlement.com and describes in detail the claims that you give up if you remain in the Class and the Released Parties.

If you do not affirmatively request exclusion from (*i.e.*, "opt out" of) the Class and otherwise satisfy the requirements in Question 5, you become a Class Member and you will automatically release Defendant and other Released Parties from any claims set forth below and will give up your rights to pursue or continue any action against Defendant and other Released Parties relating to the Products and the claims at issue in this lawsuit.  **The definition of "Released Claims" from the Proposed Settlement is copied below.**  Because Class Members will release a wide range of claims relating to the Products, **please carefully read** the following:

6

"Released Claims" means any and all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory arising prior to the Effective Date for injunctive relief or economic loss arising from or relating to the facts, activities, or circumstances alleged in the Actions.

Notwithstanding any other provision of this Settlement, "Released Claims" do not include claims for bodily injuries. Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to bodily injuries allegedly caused by the Products.

Class members who have opted out of the Settlement are not releasing their claims and will not obtain any Benefit from the Settlement.

| 11.  When will I get my Benefit, if any? |
| --- |

Eligible Class Members who submit claims that are determined to be valid by the Settlement Administrator will receive their Benefits only after the Court grants final approval to the Proposed Settlement and after any appeals (*i.e.*, legal challenges to the Proposed Settlement) are resolved (*see* "The Court's Fairness Hearing" and Questions 22-24 below). If there are appeals, resolving them can take time. Please be patient.

## HOW TO RECEIVE A BENEFIT

| 12.  How can I get a Benefit? |
| --- |

If you are a member of the Class and want to receive a Benefit under the Proposed Settlement, you must submit a claim form. A claim form and directions are attached as **Appendix A** to this Notice. You may also obtain and print a claim form and other relevant documents by visiting www.sunproductsettlement.com. Please read the instructions carefully and fill out the claim form completely and accurately. claim forms can be submitted electronically or by mail.

Your claim form must be submitted electronically at www.settlement.com no later than 11:59 p.m. Pacific Time on **[CLAIMS FORM DEADLINE]** or by mail postmarked no later than **[CLAIMS FORM DEADLINE]** and addressed to:

JJCI Settlement Administrator
c/o Rust Consulting
PO Box #####
-####

| 13.  What is the claim process? |
| --- |

The Settlement Administrator will review each claim form. If a claim is deemed to be valid, you will receive payment for that claim in accordance with the terms of the Proposed Settlement. Claim forms that do not meet the terms and conditions of the Settlement shall be promptly rejected by the Settlement Administrator, except if the claim form is rejected for containing incomplete or inaccurate information, and/or omitting required information or proof, the Settlement Administrator shall send a notice of missing or inaccurate information explaining what information is missing or inaccurate. The Settlement Administrator shall notify the Class Member using the contact information provided in the claim form.

Class Members shall have until the end of the "Claim Period" (ending [**90 DAYS FROM <u>DATE OF NOTICE</u>**]), or thirty (30) calendar days from when the notice of missing or inaccurate information was mailed, whichever is later, to reply to the notice of missing or inaccurate information, and provide the required information.

If a Class Member fails to respond by the end of the Claim Period or within thirty (30) calendar days from when the notice of missing or inaccurate information was mailed, whichever is later, or the Settlement Administrator is unable to provide a notice of missing or inaccurate information as a result of the omitted information, the Settlement Administrator will reject the claim and will not be obligated to issue any voucher.

The Settlement Administrator shall have thirty (30) days from the end of the Claim Period to exercise the right of rejection based on findings of fraud or duplication. A request for additional information shall not be considered a rejection. If a claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Class Member using the contact information provided in the claim form. Class Counsel and Defense Counsel shall be provided with copies of all such notifications to Class Members.

The Settlement Administrator's determination as to whether to approve or deny a claim shall be final and binding, except that, if any claimant whose claim form has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within fifteen (15) business days from receipt of the rejection, transmit to the Settlement Administrator by email or U.S. mail a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Class Counsel and Defense Counsel, of the denial of the claim. If Class Counsel and Defense Counsel cannot agree on a resolution of the Claimant's notice contesting the rejection, the Settlement Administrator's determination will become final.

The Court will hold a Fairness Hearing on [**DATE**] at [**TIME**] to decide whether or not to approve the Proposed Settlement. The Court must finally approve the Proposed Settlement before any payments can be made. The Court will grant approval only if it finds that the Proposed Settlement is fair, adequate, and reasonable. (*see* Question 22-24 for more information on the Fairness Hearing.)

In addition, the Court's order approving the Proposed Settlement may be subject to further legal challenges, or appeals. It is always uncertain whether these appeals can be resolved in favor of the Proposed Settlement, and resolving them takes time. Finally, there remains a possibility that this Proposed Settlement may be terminated for other reasons.

Everyone who submits a claim form can be informed of the progress of the Proposed Settlement by contacting the Settlement Administrator, Class Counsel, or by visiting www.sunproductsettlement.com. Please be patient. The Settlement Administrator will begin to process approved Claims no later than ninety (90) days after the Settlement is approved by the Court and becomes final.

| **14. What if I do nothing?** |
| --- |

If you fall within the definition set forth in the response to Question 5 and you do nothing, you will still be bound by the Court's decisions and the Proposed Settlement's "Release and Waiver of Claims" (*see* Question 10). You will give up (or "release") all claims that have been made and all related claims that could have been made in this lawsuit (this means that you are agreeing to fully, finally and forever release, relinquish, and discharge all Released Claims against the Released Parties, as set forth above in response to Question 10). To receive a voucher, you must complete and submit a claim form on or before [**CLAIMS FORM DEADLINE**] (*see* Question 12).

Unless you affirmatively exclude yourself from (*i.e.*, "opt out" of) the Class, if the Proposed Settlement is approved, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant about the claims asserted in this lawsuit ever again, regardless of whether you submit a claim form.

The Settlement Agreement describes the Released Claims in more detail, so please read it carefully.  If you have any questions, you can contact the lawyers listed in Question 20 for free to discuss, or you can talk to another lawyer of your own choosing if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT

| **15.  How can I opt out of the Proposed Settlement?** |
| --- |

If you don't want to be bound by the Proposed Settlement, and you want to keep the right to sue or continue to sue Defendant on your own about the legal issues in this case, then you must take steps to get out of the Class.  This is called excluding yourself (*i.e.*, "opting out") of the Class.

To exclude yourself from the Class, you must send by U.S. mail a letter or other written request to the Settlement Administrator.  You may <u>not</u> opt out electronically.  Your request must include all of the following:

1.  Your full name and current address;
2.  A clear statement that you wish to be excluded from the Class and that you understand you will not receive a Benefit under the Settlement;
3.  The case name and case number (*In Re: Johnson & Johnson Sunscreen Marketing, Sales Practices and Products Liability Litigation, MDL CASE NO.: 3015*); and
4.  Your original signature (you must personally sign the letter).

Please write "**EXCLUSION REQUEST**" on the lower left-hand corner of the front of the envelope.

Your exclusion request must be postmarked no later than **[OPT OUT DEADLINE]**.  Send your request to:

JJCI Settlement Administrator
c/o Rust Consulting
PO Box #####
-####

| **16. If I exclude myself, can I still get a Benefit?** |
| --- |

No.  You will not get a Benefit if you exclude yourself from the Proposed Settlement.  If you request exclusion from the Class, then:

- You will <u>not</u> be eligible for a Benefit under the Proposed Settlement;
- You will <u>not</u> be allowed to object to or contest the terms of the Proposed Settlement;
- You will <u>not</u> release any claims against Defendant or other Released Parties; and
- You will <u>not</u> be bound by any subsequent rulings entered in this case if the Proposed Settlement is finally approved.

However, if your request for exclusion is late or not complete, you will still be a part of the Class, you will be bound by the Proposed Settlement and by all other orders and judgments in this lawsuit, and you will not be able to participate in any other lawsuits based on the claims in this case.

**17.  If I don't exclude myself, can I sue Defendant for the same thing later?**

No.  If the Court approves the Proposed Settlement and you do not exclude yourself from the Class, you give up (or "release") all claims that have been made and all related claims that could have been made in this lawsuit (this means that you are agreeing to fully, finally and forever release, relinquish, and discharge all Released Claims against the Released Parties, as set forth above in response to Question 10).

# OBJECTING TO THE SETTLEMENT

**18.  How can I tell the Court if I do not like the Proposed Settlement?**

Class Members have the right to tell the Court that you do not agree with, or "object to," the Proposed Settlement or any or all of its terms.

You can only object if you stay in the Class (i.e., if you do not "opt out" or exclude yourself).

To object, you must **file** a timely, written objection with the Court in accordance with the Court's procedures for accepting filings, including electronically, send (or "serve") the written objection by U.S. mail or email to the Settlement Administrator, and send by U.S. mail or email a copy to Class Counsel and Defense Counsel postmarked/time-stamped no later than **[OBJECTION DEADLINE]**.  Class Members who fail to file and serve timely written objections as described here and in the Proposed Settlement shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Proposed Settlement.

Your written objection must include:

(1) your full name;
(2) your current address;
(3) a written statement of your objection(s) to the Proposed Settlement and the reasons for each objection;
(4) a statement of whether you intend to appear at the Fairness Hearing;
(5) your signature;
(6) the case name and case number: *In Re:Johnson & Johnson Sunscreen Marketing, Sales Practices And Products Liability Litigation, MDL CASE NO.: 3015;*and
(7) a detailed list of any other objections submitted by you or your counsel to any class actions in any court, whether state or otherwise, in the United States in the previous five (5) years.  If you or your counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, you shall affirmatively so state.

If you choose to object, in order to be considered by the Court, your written objection(s) must be **filed with the Court and served by U.S. Mail or email on the Settlement Administrator, Class Counsel, and Defense Counsel no later than [OBJECTION DEADLINE]**.  Objections that are served on the Parties but not filed with the Court shall not be received or considered by the Court at the Fairness Hearing.

Objections must be served:

> **Upon Settlement Administrator at:**
>
> JJCI Settlement Administrator
> c/o Rust Consulting
> xxx
> E-mail: xxxx@sunproductsettlement.com
>
> **Upon Class Counsel at:**
>
> Kiley Grombacher
> BRADLEY/GROMBACHER LLP
> 31365 Oak Crest Dr., Suite 240
> Westlake Village, CA 91361
> E-mail: kgrombacher@bradleygrombacher.com
>
> Bryan Aylstock
> R. Jason Richards
> AYLSTOCK, WITKIN, KREIS OVERHOLTZ, PLLC
> 17 East Main Street, Suite 200
> Pensacola, FL 32502
> E-mail: jrichards@awkolaw.com
>
> **Upon Defense Counsel at:**
>
> Steven A. Zalesin
> PATTERSON BELKNAP WEBB & TYLER LLP
> 1133 Avenue of the Americas
> New York, New York 10036
> E-mail: sazalesin@pbwt.com

If you file objections, but the Court approves the Proposed Settlement, you can still complete a claim form to be eligible for a voucher under the Settlement, subject to the terms and conditions discussed in this Notice and in the Settlement, including the requirement that such claims be submitted before [CLAIM FORM DEADLINE].

**19.  What is the difference between objecting and asking to be excluded?**

Objecting is simply a way of telling the Court that you don't like something about the Proposed Settlement. You can only object if you stay in the Class.  You will also be bound by any subsequent rulings in this case and you will not be able to file or participate in any other lawsuit based upon or relating to the Released Claims.  If you object to the Proposed Settlement, you still remain a Class Member and you will still be eligible to submit a claim form.  Excluding yourself (*i.e.*, opting out) is telling the Court that you don't want to be a part of the Class.  If you exclude yourself, you have no basis to object to the Proposed Settlement or appear at the Fairness Hearing because it no longer affects you.

## THE LAWYERS REPRESENTING THE CLASS

| 20.  Do I have a lawyer in this case? |
| --- |

The Court has appointed attorneys at the law firms of Aylstock, Witkin, Kreis and Overholtz, PLLC, Bradley/Grombacher LLP, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Keller Lenkner LLC, and Walsh Law PPLC to represent you and the other Class Members in this lawsuit.  The lawyers representing you and the Class Members are called "Class Counsel."  You will not be charged for these lawyers.

You may contact Class Counsel as follows:

> Kiley Grombacher
> BRADLEY/GROMBACHER LLP
> 31365 Oak Crest Dr., Suite 240
> Westlake Village, CA 91361
> E-mail: kgrombacher@bradleygrombacher.com
>
> Bryan Aylstock
> R. Jason Richards
> AYLSTOCK, WITKIN, KREIS OVERHOLTZ, PLLC
> 17 East Main Street, Suite 200
> Pensacola, FL 32502
> E-mail: jrichards@awkolaw.com

You have the right to retain your own lawyer to represent you in this case, but you are not obligated to do so.  If you do hire your own lawyer, you will have to pay his or her fees and expenses.  You also have the right to represent yourself before the Court without a lawyer.

Class Counsel, Defense Counsel, or the Settlement Administrator may not advise you on the tax consequences of participating or not participating in the Settlement.

| 21.  How will the lawyers be paid? |
| --- |

Class Counsel have not been paid anything to date for their work on this case.  Class Counsel will request Attorneys' Fees of no more than $2.5 million and Expenses of no more than $100,000.  The Court has to approve any Attorneys' Fees and Expenses awarded in this case.

Class Counsel will also ask the Court to approve Incentive Awards of $250 each (no more than $3,000 in total) for the named Plaintiffs (Katherine Brennan, Michelle Mang, Heather Rudy, Fred Salter and Judith Barich, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, and Carman Grisham) for their work on behalf of the Class.  Any such payment to these individuals also must be approved by the Court.

Class Counsel's motion(s) for attorneys' fees and expenses and incentive awards to the named Plaintiffs will be filed on or before **[90 DAYS AFTER NOTICE DATE]**.  The motion(s) will be posted on the Settlement Website at www.sunproductsettlement.com.

## THE COURT'S FAIRNESS HEARING

The Court will hold a final hearing (called a Fairness Hearing) to decide whether to finally approve the Proposed Settlement. You may attend and ask to speak, but you don't have to.

| **22. When and where will the Court decide whether to approve the Proposed Settlement?** |
|---|

On **[DATE]**, at [**TIME**], the Court will hold a Fairness Hearing at the United States District Court for the Southern District of Florida, before the Honorable Raag Singhal, in Courtroom 110, U.S. Federal Building and Courthouse, 299 East Broward Boulevard Fort Lauderdale, Florida 33301.

The hearing may be moved to a different date or time, or via videoconference rather than in-person, so it is a good idea to check the Settlement Website (www.sunproductsettlement.com) for updates. At the Fairness Hearing, the Court will consider whether the Proposed Settlement is fair, reasonable, and adequate. The Court will also decide whether to award attorneys' fees and expenses, as well as incentive awards to the named Plaintiffs. If there are objections, the Court will consider them at that time. After the Fairness Hearing, the Court will decide whether to approve the Proposed Settlement. We do not know how long these decisions will take.

| **23. Do I have to come to the Fairness Hearing?** |
|---|

No. Class Counsel will answer any questions the Court may have at the Fairness Hearing. But you are welcome to come at your own expense. Please note that the Court has the right to change the date and/or time of the Fairness Hearing, so it is a good idea to check the Settlement Website (www.sunproductsettlement.com) for updates. If you are planning to attend the Fairness Hearing, you should confirm the date, time, and format on the Settlement Website.

| **24. May I speak at the Fairness Hearing?** |
|---|

Yes, you may ask the Court for permission to speak at the Fairness Hearing. You must include with your objection a statement of whether you wish to speak, or you may file a document called a "Notice of Intention to Appear" with the Court. If you or your attorney wants to appear and speak at the Fairness Hearing, you (or your attorney) must, in addition to filing a Notice of Intention to Appear at the Fairness Hearing with the Court, mail or email copies to the Settlement Administrator, Class Counsel, and Defense Counsel, whose addresses are listed above in Question 20. Your Notice of Intention to Appear at the Fairness Hearing must be filed and received by the Court, and mailed and/or emailed to the Settlement Administrator, Defense Counsel, and Class Counsel no later than **[OBJECTION DEADLINE]**. Class Members wishing to appear without objecting may file a Notice of Appearance no later than **[APPEARANCE DEADLINE].**

## GETTING MORE INFORMATION

| **25. How can I get more information?** |
|---|

This Notice summarizes the Proposed Settlement. More details are in the Settlement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Website at www.sunproductsettlement.com. You also may write with questions to the Settlement Administrator at: JJCI

Settlement Administrator, c/o Rust Consulting, PO Box #####, -####, call the toll-free number, [NUMBER], or email questions to xxxx@sunproductsettlement.com.

**PLEASE DO NOT CALL THE COURT.**

Dated:  [NOTICE DATE], 2022

**QUESTIONS? VISIT www. sunproductsettlementwebsite.com, OR CALL [NUMBER] TOLL FREE**

13230507

# EXHIBIT B

# If You Bought Neutrogena® or Aveeno® Sunscreens, You Could Get Vouchers for Replacement Products from a Settlement.

There is a proposed Settlement in a class action lawsuit against Johnson & Johnson Consumer Inc. ("Defendant") regarding certain Neutrogena® and Aveeno® aerosol and lotion Sunscreen Products. Defendant denies all claims made in this lawsuit.

## WHO IS INCLUDED IN THE PROPOSED SETTLEMENT?

Anyone in the United States who bought certain Neutrogena and Aveeno aerosol or lotion Sunscreen Products, at any time between May 26, 2015 and the date of this Notice, is affected by the Settlement.  The lotion products include: Neutrogena® Ultra Sheer®, Dry-Touch Water Resistant Sunscreen Lotion, Neutrogena® Sheer Zinc™, Dry-Touch Face Sunscreen Lotion, or Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion. A full list of all products covered by the Settlement is available at www.sunproductsettlement.com or by calling 1-8XX-XXX-XXXX.

## WHAT DOES THIS PROPOSED SETTLEMENT PROVIDE?

The Settlement will provide vouchers to eligible Class Members who purchased the lotion products listed above, as well as pay for costs associated with the notice and administration of the Settlement, attorneys' fees and costs to the attorneys for the Class, and an incentive award to the named Plaintiffs.  Purchases of aerosol products are not eligible for vouchers.

In addition, the Defendant has agreed to adopt new requirements and testing protocols to ensure that Sunscreen Products produced in the future are not contaminated with benzene.  Full details are available at www.sunproductsettlement.com.

## HOW CAN I GET A VOUCHER?

If you bought one of the included lotion products listed above, you may submit a Claim Form online at www.sunproductsettlement.com or by mail by **Month XX, 2022** (limit two products per household).  Vouchers will be worth $11.35 each and may be used toward the purchase of any Neutrogena or Aveeno product.  Vouchers are transferable and may be combined and used within 12 months from issuance.  The value of the Voucher you receive may be reduced if claims exceed a total value of $1,750,000.

## WHAT ARE YOUR OPTIONS?

Even if you do nothing, you will be bound by the Court's decisions. If you want to keep your right to sue the Defendant yourself, you must exclude yourself from the Settlement by **[DATE], 2022**. If you stay in the Settlement but disagree with the terms, you may object to it by **[DATE], 2022**.

The Court will hold a hearing on **[DATE], 2022** to consider whether to approve the Settlement, a request for attorneys' fees and costs up to $2,600,000, and incentive award payments of $3,000. You may appear at the hearing, but you are not required to appear.

For more information or to File a Claim:

www.sunproductsettlement.com          1-XXX-XXX-XXXX

13230517

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOURTHEN DISTRICT OF FLORIDA**

Must Be Postmarked
No Later Than
**[CLAIM FORM
DEADLINE]**

## NEUTROGENA® & AVEENO® NON-AEROSOL SUNSCREEN SETTLEMENT CLAIM FORM

As detailed in the Notice, this settlement applies to the following non-aerosol sunscreen products ("Non-Aersol Sunscreen Products"):

- Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen Lotion
- Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen Lotion
- Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion

If you purchased one or more of these Non-Aerosol Sunscreen Products, you may file a claim to receive a voucher. Your completed Claim Form must be postmarked, if returned by mail, on or before **[CLAIM FORM DEADLINE]** or submitted online at www.sunproductsettlement.com on or before 11:59 pm PT on **[CLAIM FORM DEADLINE].**

Please read the full notice of this Settlement (available at www.sunproductsettlement.com) carefully before filling out this Claim Form. Claim Forms may be submitted online or by mail:

**Online:** Visit www.sunproductsettlement.com and submit your claim online.

**Mail to:**

JJCI Settlement Administrator
c/o Rust Consulting
PO Box #####
####

Failure to submit a complete, truthful, accurate and timely Claim Form will result in a reduction or the denial of your Claim.

## A.   CLASS MEMBER INFORMATION.

**Name** *(required)*:

_____          _____
*First Name*                                                                  *Last Name*

**Street Address** *(required)*:

**City** *(required)*:                                                              **State** *(required)*:  ____ ____

**Zip Code** *(required)*: _____ - _____ *(zip4 optional)*

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Email Address:**

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Unique Class Member Identifier (to be provided by Settlement Administrator)

| | | | | | |
|---|---|---|---|---|---|

## B.   POTENTIAL VOUCHER AWARD

If you submit a claim you may be eligible for a voucher in an amount up to a maximum of $11.35 per container of Non-Aerosol Sunscreen Product(s) you purchased.  There is a maximum redemption of two (2) Products per household. If claims exceed a total voucher value of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) the amount of the voucher you receive will be reduced *pro rata*.

Total number of containers of Non-Aerosol Sunscreen Product(s) purchased: ____.  My purchase(s) is/are broken down as follows:

_____ containers of Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen Lotion

_____ containers of Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen Lotion

_____ containers of Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion

## C.   SIGN AND DATE YOUR CLAIM FORM

| | | ___ ___ / ___ ___ / ___ ___ ___ ___ |
|---|---|---|
| Signature | Type/Print Name | Date |

**Claim Forms must be electronically submitted or postmarked no later than [CLAIM FORM DEADLINE].**
**Please keep a copy of your Claim Form for your records.**

**ACCURATE CLAIMS PROCESSING TAKES TIME. THANK YOU FOR YOUR PATIENCE.**

**Questions?  Visit www.sunproductsettlement.com or call, toll-free, [NUMBER]**

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:21-md-03015-SINGHAL/Valle

IN RE:                                                          MDL CASE NO.: 3015

JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
_____/

THIS DOCUMENT RELATES TO: ALL CASES
_____/

DECLARATION OF TIFFANEY A. JANOWICZ
__REGARDING NOTICE TO CLASS MEMBERS__

I, Tiffaney Janowicz, hereby declare as follows:

1.       I am a senior vice president of Rust Consulting, Inc. ("Rust"), a nationally recognized notice and administration firm. Rust designs and implements notice and administration programs of all sizes and types, including consumer, antitrust, securities, insurance, healthcare, labor and employment, property, finance, telecom, and products liability class actions. A C.V. outlining Rust's services and experience is attached as Exhibit A.

2.       I have over 25 years of experience at Rust. I lead Rust's consumer, insurance, and healthcare practice areas, and I also have a significant depth of experience in antitrust and product liability matters. I have designed and/or managed hundreds of class action notice and administration programs. I speak on class action matters (Continuing Legal Education courses), and I have been a co-author or panelist on relevant topics in the notice and administration industry. Attached as Exhibit B is my C.V., which outlines my experience and qualifications.

3.      I submit this declaration in connection with the above-captioned matter to describe the plan of notification and administration ("Notice Program") and notices.  This declaration is based upon my personal knowledge and information provided by my associates and staff.  The information included in this declaration is of a type reasonably relied upon in the fields of class notice and administration.

4.      Subject to the approval of the Court, the parties have agreed to jointly request that the Court appoint Rust to fulfill the role of Settlement Administrator in the above-captioned case to design the Notice Program and help implement the terms and conditions of the Settlement Agreement.  I submit this declaration to describe the Notice Program to reach class members and why it is reasonable and adequate under the circumstances.

<u>**OVERVIEW**</u>

5.      I understand that the class includes all persons and entities in the United States who purchased one or more of the Aerosol Products or Non-Aerosol Products defined in the Settlement Agreement for personal, family, or household use and not for resale.

<u>**NOTICE PROGRAM**</u>

6.      The Notice Program is designed to reach the greatest practicable number of class members; provide class members opportunities to learn about the Settlement and act upon their rights; and ensure that they will be exposed to, see, review, and understand the Notices.

7.      Based on information provided by Counsel, there is no readily available Class Member list, therefore, a notification program was designed that includes print, digital, and social media advertising, and a national press release.

8.     The Notice Program also includes Notices designed to meet due process requirements.

### *Paid Media Notice*

9.     The proposed media program was designed to satisfy due process by reaching a broad target audience that includes class members and targeting online media to reach known purchasers of Aveeno and Neutrogena Sunscreen.

10.     The first step in determining what media is appropriate to reach potential class members is to establish an equivalent demographic profile, otherwise known as a target audience, of potential class members.  The second step is to analyze available data (demographics, media habits) about that target audience.  This information is used to select the most appropriate media to reach potential class members.

11.     We used media survey data from MRI-Simmons 2021 *Doublebase Study* ("MRI")[1] to choose the target audience and analyze the notice program.  In this case, MRI measures individuals who used Aveeno and Neutrogena in the last 12 months ("Aveeno/Neutrogena Sunscreen Users").

---

[1] MRI-Simmons produces an annual survey, called a *Doublebase Study.*  The study includes survey responses from over 50,000 people and covers thousands of brands and hundreds of product categories.

***Paid Media***

12.     The paid media notice is designed to ensure that the Notice is placed in media outlets whose audiences are likely to include potential class members.   This paid media program includes print, digital, and social media.

<u>*Consumer Magazines*</u>

13.     Most adults read one or more magazines during an average month, and nearly three out of five adults read or look at a magazine daily.  Aveeno/Neutrogena Sunscreen Users read an average of five magazines per month.

14.     The Publication Notice will appear once as a 1/2-page ad in *People*, a national magazine with the following circulation:

| Magazine | Circulation |
|----------|-------------|
| *People* | 3,400,000 |

<u>Digital Advertising</u>

15.     The Notice Program includes Internet advertising to provide class members with additional notice opportunities beyond the print placement.  Over 96% of Aveeno/Neutrogena Sunscreen Users have used the Internet in the past 30 days.[2]   Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly click through to the website for further information.

---

[2]  2021 MRI-Simmons *Spring Study*.

4

16.     An estimated 35,300,000 gross impressions[3] will be delivered nationally across mobile, tablet, and desktop platforms for six weeks on Google Display Network, Facebook, Instagram, and Conversant, with an estimated frequency[4] of 2.1.

17.     Targeted Internet advertising will also be used to reach potential class members digitally using third party data sources.  These sources collect information from credit card purchase data and loyalty rewards programs. Ads will be targeted to individuals who have purchased Aveeno or Neutrogena Sunscreen.

### Earned Media Program

18.     An earned media program also will be implemented to amplify the paid media and provide additional notice to class members.  The message will be distributed to media outlets (newspapers, websites, and television and radio stations) to spark press interest and generate coverage.

19.     The earned media program will focus on a press release highlighting the toll-free telephone number and Settlement website address so that class members can obtain complete information about the proceeding and settlement.  The press release will be distributed on P.R. Newswire's US1 national wire.  It will reach approximately 5,400 traditional media outlets (T.V., radio, newspaper, magazine), relevant trade publications, and 4,000 national websites.

---

[3] *Gross impressions* are the total number of times a digital ad will be shown. This figure does not represent the total number of unique viewers of the ad, as some viewers will see the ad on more than one website.

[4] Frequency is the estimated average number of opportunities an audience member has to see a notice.

### *Class Member Response Mechanisms*

20.     Rust will establish a website to enable class members to get information about the Settlement, including the Long Form Notice, the Claim Form, frequently asked questions, the Settlement Agreement, and other court documents from this action.  Class members will be able to download materials and the Claim Form and file a claim online.  The Settlement Website will be operational before the Notice Program begins.

21.     Rust will establish a toll-free informational number to allow class members to call and listen to answers to frequently asked questions 24 hours a day and seven days a week.  The toll-free informational number will be operational before the Notice Program begins.

22.     Rust will establish a U.S. Mail Post Office Box to allow class members to submit Requests for Exclusion, Claim Forms, and correspondence by mail with any specific requests or questions.

### CONCLUSION

23.     The Notice Program is expected to reach at least 75% of the class.

24.     The Notice Program incorporates a modern approach to Notice.  The reach is within the guidelines established by the Federal Judicial Center.[5]

25.     It is my opinion that the Notice Program is adequate and reasonably designed to maximize the likelihood of reaching the largest number of class members that is practicable under

---

[5] The Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, https://www.consumerclassdefense.com/wp-content/uploads/sites/235/2013/06/FJC-Notice-Checklist-and-Plain-Language-Guide.pdf (last visited Dec. 17, 2021).

the circumstances.  It is consistent with the standards employed by Rust in administering these types of class action settlements and designing effective notice programs to reach class members.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed in Niwot, Colorado this 17th day of December 2021.

Tiffaney A. Janowicz

# EXHIBIT A



# Qualifications Summary

This document outlines Rust Consulting's qualifications to serve as the administrator for class action, mass tort, and regulatory settlements, as well as to perform other similar, complex and time-sensitive matters such as remediation programs, data breach responses, and product recalls. It includes summary information categorized as follows:

- Firm Overview
- Practice Area Organization
- Personnel
- Services
- Representative Case Experience
- Data and System Security

## Firm Overview

Rust, an Exela Technologies brand, is an industry-leading consulting and administration firm that provides public and private sector clients a full complement of services required to administer legal settlements and similar programs. These services include consulting; project management; data management; notification; contact center and websites; claims processing; and fund management, distribution, and tax reporting.

Rust grew out of the litigation support firm the Rust Consulting Group, which was founded in 1976. In 1988, the Group administered its first class action settlement, eventually leading in 1995 to the formation of Rust Consulting, Inc. as a separate entity focused on legal settlement administration. Since then, Rust has administered more than 7,500 settlements and projects.

Headquartered in Minneapolis, Rust also has an office in Faribault, Minnesota. Our subsidiary Kinsella Media maintains a Washington, D.C., location. Rust and Kinsella are wholly owned subsidiaries of Exela Technologies, Inc. (NASDAQ: XELA, XELAW and XELAU), one of the largest global providers of transaction processing solutions and enterprise information management.

## Practice Area Organization

Rust administers programs spanning diverse subject matter. The depth and breadth of our legal settlement administration experience spans all prominent practice areas, such as antitrust, consumer, finance, insurance and healthcare, labor and employment, product liability, and securities matters on behalf of private sector clients and governmental agencies at all levels. Our services also lend themselves to our clients' non-settlement needs, including data breach responses, recalls, and remediation programs.

Our leadership and certain operations and client services personnel focus on specific practice areas relevant to our clients, deepening their subject matter expertise and directly relevant experience.

## Personnel

Our permanent staff of approximately 200 includes professionals with backgrounds and disciplines including project management, information technology, finance, law, and operations. This cross-functional, innovative team includes experts in their respective disciplines, such as CPAs, Ph.D.s, attorneys, and PMPs.

Rust's team includes some of the most experienced practitioners in the industry, with much of that experience Rust-specific. Our senior vice presidents average 17 years of Rust experience and our functional directors average over 20 years.

## Services

The Rust team provides high quality administrative services for matters of any size and scope. Specific approaches may vary depending upon the requirements of each individual matter; however, the below services are typical of our engagements.

### Preliminary Consulting

Rust consults with clients prior to settlement to help set expectations based on our experience with similar matters and to anticipate otherwise identified issues that may arise in administration based on a settlement or program's characteristics.

### Project Management

Our project management personnel prepare plans of notice and administration, create or customize project tracking tools and reports, and oversee the creation of project-specific databases designed to house and capture appropriate information for use in claims administration. Throughout the administration process, project management personnel coordinate all activities between the parties, vendors, and internal Rust departments to ensure work is completed accurately and according to any service level agreements, internal standards, settlement documents, etc. We provide regular and on-demand reports and statistics to the appropriate parties and raise potential issues requiring their attention, as necessary. Upon completion of each major phase of administration, or as required, we prepare declarations or affidavits attesting to the scope and results of our work.

### Data Management

The secure and efficient handling of data underlies all aspects of claims administration; Rust creates and customizes data management processes, databases, applications to meet the unique needs of each settlement or project. Tasks associated with data management throughout administration may include:

- Intaking original client data.
- Normalizing data for cross-platform usability, such as meeting mailing or other outreach requirements.
- Consolidating and deduplicating data from multiple sources.
- Extracting data for standard or customized trace services.
- Extracting data for mailing or other outreach.
- Calculating awards.



## Notification

Rust disseminates hundreds of millions of notices annually by mail and email. We also work with our subsidiary Kinsella Media, the leading provider of notice to unidentified audiences and the only firm in the nation with qualified, court-recognized notice expertise, to develop and implement notice plans.

With respect to legal settlements, these notice programs notify class members or other affected individuals of their legal rights and options. With respect to data breach responses, recalls, or remediation, these programs inform affected individuals about the situations and any options those affected individuals may have.

Among our notification-related services are:
- Designing notice programs (through Kinsella Media).
- Drafting plain language materials (through Kinsella Media).
- Designing and proofreading notice materials.
- Locating unidentified individuals and updated addresses.
- Printing and mailing.
- Processing and forwarding undeliverable mail.
- Opining about notice program adequacy (through Kinsella Media).

## Contact Center

Rust supports the programs we administer through an assortment of contact center services including call center, websites, and email support up to 24/7 and for class members and other affected individuals worldwide.

Our call center services include inbound and outbound calls in our own domestic, in-house call center. The call center is located in our Minneapolis headquarters and is readily expandable to meet the needs of specific programs of any size.

All customer service representatives (CSRs)—permanent or temporary—undergo background checks and training on Rust's policies and technology, customer service fundamentals, and project-specific information. Typical engagements include English- and Spanish-speaking CSRs, while we provide support in additional languages, as required. In one case, Rust CSRs took live inbound calls in 10 languages.

In lieu of or in conjunction with live customer service, Rust builds and maintains automated Interactive Voice Response (IVR) systems that provide 24/7 service to toll-free numbers and include menus of prerecorded options such as program overviews, frequently asked questions and answers, and options for requesting forms or filing claims. Rust's IVR systems regularly support English- and Spanish-language speakers and can be programmed to support other languages, as required. In one case, Rust managed IVR support including translations of information pre-recorded by native speakers in 67 languages.



*Rust Consulting Qualifications Summary,* 4

## Claims Processing

Rust develops or executes claims processing or adjudication programs as required by the diverse terms of our engagements. We use several proprietary software applications and tested, streamlined processes to provide the most appropriate solutions for each engagement's needs, whether for paper or online claims. Our systems automate the claims administration process:

- Receipt.
- Link to class member database record.
- Data capture.
- Review of supporting documentation.
- Initial adjudication.
- Deficiency processing.
- Final adjudication.
- Rejection letters.
- Reporting/affidavits.

To meet the needs of each engagement, our systems can be configured to give clients or authorized parties secure online access to claimant data and reporting, or to class members to facilitate online claims filing.

## Fund Management, Distribution, and Tax Reporting

Rust annually distributes billions of dollars associated with settlements and similar programs. Our Bank and Tax group is responsible for day-to-day banking and tax reporting functions for all settlement funds.

| Banking Services | Tax Reporting Services |
|---|---|
| <ul><li>Account setup.</li><li>Online bank reporting.</li><li>Escrow, investment and distribution accounts.</li><li>Escrow agent services.</li><li>Positive Pay – all claimant checks are issued with Positive Pay verification.</li><li>Check images.</li><li>Wire transfers.</li><li>Account reconciliation (daily, weekly or monthly).</li><li>Balance inquiry and reporting.</li></ul> | <ul><li>Tax identification numbers (federal and state).</li><li>Qualified Settlement Fund (QSF) determination.</li><li>Claimant award taxability and reporting.</li><li>W-9 review.</li><li>Annual 1120 SF tax returns and quarterly tax deposits.</li><li>IRS and state 1099 and 1042S reporting and transmission.</li><li>Backup withholding deposits and 945 annual reporting.</li><li>Employment payroll taxes: 941, 940, SUTA, SIT, and local income taxes.</li></ul> |



# Representative Case Experience

Having administered more than 7,500 projects, a complete listing of our experience is voluminous. However, the below tables demonstrate the scope of our experience and capacity.

*Note: All numbers are rounded*

| Notices | Case |
|---|---|
| 183 million | *In re Domestic Airline Travel Antitrust Litigation,* MDL 2656 (D.D.C.). |
| 83 million | *In re Target Corporation Customer Data Security Breach Litigation,* MDL 2522 (D. Minn.). |
| 31 million | *In re Lawnmower Engine Horsepower Marketing and Sales Practices Litigation,* No. 2:08-md-01999 (E.D. Wis.). |
| 24 million | *Microsoft I-V Cases,* J.C.C.P. No. 4106 (Cal. Super. Ct. San Francisco County). |
| 15.7 million | *Blessing v. Sirius XM Radio,* No. 09-cv-10035 (S.D.N.Y.). |

| Distributed | Case |
|---|---|
| $3.6 billion | Independent Foreclosure Review |
| $1.5 billion | National Mortgage Settlement |
| $800 million | *Naef v. Masonite Corp.,* No. CV 944033 (Ala. Cir. Ct. Mobile County). |
| $800 million | *Microsoft I-V Cases,* J.C.C.P. No. 4106 (Cal. Super. Ct. San Francisco County). |
| $762 million | *In re American International Group, Inc. Securities Litigation,* No. 04 Civ. 8141 (S.D.N.Y.). (PwC, Company, Starr, and Gen Re Settlements) |

| Claims | Case |
|---|---|
| 3.5 million | *In re Compact Disc Minimum Advertised Price Antitrust Litigation,* MDL No. 1361 (D. Me.). |
| 3.2 million | *In re American International Group, Inc. Securities Litigation,* No. 04-cv-8141 (S.D.N.Y.) (Company, PwC, Starr, and Gen Re settlements). |
| 3 million | Abbott Infant Formula Settlements |
| 2.8 million | *Fogel v. Farmers Group, Inc.,* No. BC300142 (Cal. Super. Ct. Los Angeles County). |
| 1.2 million | National Mortgage Settlement |

| Calls | Case |
|---|---|
| 3.6 million | Independent Foreclosure Review |
| 1.5 million | *Dyson v. Flagstar Corp.,* No. DKC93-1503 (D. Md.). |
| 1.4 million | National Mortgage Settlement |
| 1.3 million | Abbott Infant Formula Settlements |
| 1 million | *Naef v. Masonite Corp.,* No. CV 94-4033 (Ala. Cir. Ct. Mobile County). |

# Data and System Security

The security of systems and applications and confidentiality of data are of utmost importance to Rust, our clients, the parties to engagements we administer, and members of the public impacted by our operations. Thus Rust actively protects its systems and mitigates potential threats by adhering to a comprehensive assortment of security best practices, certifications, and audits that we refer to collectively as our "unified compliance posture."

As part of our unified compliance posture, Rust:

- Has received from three federal agencies (CFPB, FTC, and SEC) an Authority to Utilize Controlled Unclassified Information under the guidelines of FISMA and NIST 800-171.
- Undergoes an annual SSAE18 SOC 2 Type II Report audit of our data and system security controls and protocols.
- Complies with applicable laws, such as the Sarbanes-Oxley Act (SOX), Gramm-Leach-Bliley Act (GLBA) and the Health Insurance Portability and Accountability Act (HIPAA).
- Continues to adhere to the (now invalidated) controls formerly known as the U.S.-E.U. Privacy Shield Framework.
- Adheres to documented and audited processes.
- Maintains a business continuity plan to ensure uninterrupted, secure service.
- Has implemented controls to prevent unauthorized access or disclosure, maintain data accuracy, and ensure the appropriate use and confidentiality of information, either for its own purposes or on behalf of our clients.
- Has put in place appropriate physical, electronic, and managerial procedures to safeguard and secure the information we process.
- Processes personal information only in ways compatible with the purpose for which it was collected or subsequently authorized to do.



# EXHIBIT B





Senior Vice President

## Tiffaney A. Janowicz, Esq.

**625 Marquette Avenue, Suite 900**
**Minneapolis, MN 55402**

**M:** 612.770.8805
**E:** tjanowicz@rustconsulting.com

## Education & Certifications

- **J.D.** William Mitchell College of Law, 1995 (St. Paul, MN)
- **B.S. Marketing Education** University of Minnesota, 1990 (Minneapolis, MN)

Tiffaney Janowicz leads Rust's consumer, product liability, and insurance and healthcare practice areas, with a depth of experience in antitrust matters. She also has been recognized as a class action notice and claims administration expert by state and federal courts.

Janowicz began her career as a consultant at Rust in 1996 and was promoted to senior vice president in 2003. In her current role, Janowicz specializes in customer relations and strategic consultation on class action notice and claims administration programs. She also provides guidance to a team of project management professionals who handle projects within her practice areas. Rust's clients benefit from her expertise in developing and executing strategies designed to achieve their settlement administration goals.

Janowicz has overseen all aspects of hundreds of settlements, including many of the firm's largest claims-processing matters. Examples include Microsoft's antitrust settlements for the states of California, Iowa, Minnesota, New York and Wisconsin, as well as the multi-district litigation claiming that companies fixed the price of Dynamic Random Access Memory (DRAM) in the United States. Janowicz has also lead many of Rust's insurance-related settlements and a number of credit life settlements.

## Recent Declarations

- *Hamm v. Sharp*, No. 19-cv-488 (M.D. Fla.).
- *Marya v. Warner Chappell*, No. CV 13-04460 (C.D. Cal.).
- *Gold v. Lumber Liquidators*, No.  3:14-cv-05373 (N.D. Cal.).
- *Fleisher v. Phoenix*, No. 11-cv-8405 (S.D.N.Y.).
- *Farar v. Bayer*, No. 3:14-cv-04601 (N.D. Cal.).
- *Royal Mile Company v. UPMC*, No. 2:10-cv-01609 (W.D. Penn.).

- *In re CenturyLink Sales Practices and Securities Litigation*, MDL 17-2795 (D. Minn.).
- *Opalka v. Amalie Oil*, No. 18-40605 (Fla. Cir. Ct. Miami-Dade County).

# Case Experience

Following are some additional details of cases that Rust has administered under the leadership of Janowicz.

- ***In re: CenturyLink Sales Practices and Securities Litigation*, No. 17-2795 (D. Minn.).** Rust received several data files that constituted the class list and which included more than 17 million rows of information. The data team at Rust concatenated that data, sent it to National Change of Address, appended emails through a trace processes, and formatted the data to prepare for notification. Rust ultimately sent notice of the settlement to 6.5 million potential class members via email, and 6.7 million via First-Class Mail, eventually distributing 122,000 payments totaling nearly $8.5 million.

- ***Parko v. Shell Oil Company*, No. 3:12-cv-00336 (S.D. Ill.).** Janowicz was personally appointed as the neutral arbitrator in this $4.83 million class action settlement resolving claims against Shell and ConocoPhillips over groundwater contamination in Roxana, Illinois.

- ***Stinson v. The City of New York*, No. 10 Civ. 4228 (S.D.N.Y.).** In a major civil rights class action settlement valued at up to $75 million, the City of New York agreed to provide compensation to class members who received summonses from New York police officers that had been issued without probable cause, allegedly in response to a summons quota within the NYPD. Rust mailed 922,000 notices and managed a website that received 131,000 unique visitors.

- ***Chaudhri v. Osram Sylvania*, No. 11-CV-05504 (D. N.J.).** A lawsuit claimed that Sylvania made misrepresentations regarding the performance of certain premium automotive lighting. The notice program used a mix of direct and media notice that included 1.6 million mailed postcards along with television, radio, and Internet advertising. Rust mailed 1.4 million checks totaling $16 million; Sylvania also changed the packaging for the covered products to address the issues in the lawsuit.

- ***In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (D. Minn.).** Plaintiffs claimed that Target did not adequately protect their payment card data and personal information and that Target delayed in providing notice of a widespread data breach. Rust's direct notice program consisted of 12 million mailed notices and 71 million email notices.

- ***In re Dynamic Random Memory (DRAM) Antitrust Litigation*, MDL No. 1486 (N.D. Cal.).** The lawsuits combined into this multi-district litigation claimed that the Defendant companies fixed the price of DRAM in the United States, causing individuals and businesses to pay more for DRAM and DRAM-containing devices. The combined direct and indirect settlements totaled $310 million.

- ***Maksimovic v. Sony of Canada Ltd.*, Ontario Superior Court of Justice, No. CV-11 425487-00CP.** This Canadian settlement resolved allegations that Sony failed to adequately safeguard the computer systems used to provide the Sony PlayStation Network, the Qriocity service, and the Sony Online Entertainment services, which were attacked by criminal intruders in April 2011. Rust managed the translation of all materials into French and provided all documentation and communication in both English and French. Rust also established a Canadian P.O. box for the matter and drop-shipped the mail to our processing center in Minnesota.



- ***In re Nutella Marketing and Sales Practices Litigation**, No. 3:11-cv-01086-FLW-DEA (D.N.J.).* Plaintiffs claimed that Defendant Ferrero U.S.A., Inc. made representations through its marketing and advertising of Nutella® brand hazelnut spread, improperly suggesting that Nutella is healthier than it actually is. Rust placed notice of the settlement in magazines and banner ads on popular websites; the settlement website received over 1 million visits and over a quarter million consumers filed claims.

- ***In re Online DVD Rental Antitrust Litig.**, MDL No. 2029 (N.D. Cal.)* Rust sent over 34 million email notices to potential class members in this project. Rust has processed more than 1.1 million claims for gift cards or cash benefit in this ongoing project. Rust also created a settlement website which has to-date received over 2.2 million site visits.

- ***Microsoft I-V Cases**, J.C.C.P. No. 4106, (Cal. Super. Ct. S.F. County).* Janowicz was responsible for the design and management of the direct mail notice program that involved the mailing of 18 million notice-and-claim form packages and deployment of 7 million email notices to a class consisting of consumers who purchased at retail selected Microsoft software for use in California. During the first years of the multi-year program, Janowicz was actively involved in the daily project activities and second in project responsibility only to the company president. Janowicz was and continues to be responsible for overseeing project management, claims and voucher processing, benefits and cy pres distribution, and call center activities.

- ***The Authors Guild, Inc. v. Google, Inc.**, No. 05-cv-8135 (S.D.N.Y.).* Janowicz led and continues to lead her team in the administration services provided this settlement involving rights-holders around the world. Janowicz oversaw the translations of the claim forms and supporting materials and well as the provision of telephone support in more than 30 languages. For this ongoing project, Rust's CSRs assist rights-holders in claiming their books and inserts, responding to questions related to the complex settlement and providing technical support throughout the online claims process.

- ***Thompson v. Metropolitan Life**, No. 00-CIV-5071 (W.D. Pa.).* Janowicz was second in project responsibility only to the company president in overseeing Rust's provision of services for this settlement, which included an estimated 25 million policies. Rust mailed more than 550,000 customized and 104,000 generic notices to potential class members. In this race-based underwriting insurance settlement, Rust received 220,000 claim forms, forwarded them on a rolling basis to the company for their research into class membership, and followed up on the company's direction by mailing 80,000 "cure" letters and more than 270,000 response letters to claimants. Rust's call centers answered calls generated by both the mailed notice and an extensive media campaign. During the national TV noticing campaign, there were 500 call center operators in two sites.

- ***McNeil v. American General Life & Accident**, No. 3:99-1157 (D. Tenn.).* Janowicz was second in project responsibility only to the company president in the management of Rust's claims administration services for a settlement covering 9 million class members. Rust mailed over 3 million notices within approximately two weeks. Rust also arranged for an ad campaign to help reach class members for whom the company did not have current addresses. Rust received 600,000 calls on this project, and printed and mailed more than 440,000 payments.

- ***Naef v. Masonite Corp.**, No. CV 944033 (Ala. Cir. Ct. Mobile County).* Project involved receiving and processing according to pre-determined criteria (including proof of property ownership, proof of product ownership, and proof of damage) more than 400,000 claims, eventually distributing more than $800

million to more than 260,000 claimants whose claims were validated. Janowicz co-directed the initial design of the claims intake process of this 10-year claims program, and managed claims review and contact center operations.

# Thought Leadership

- Co-Author, "**The Plain Language Toolkit for Class Action Notice,**" in *A Practitioner's Guide to Class Actions, 3rd Ed.* (Marcy Greer ed., 2021).
- Speaker, "**How to Get Your Notice Actually Noticed: Claims Stimulation 3.0,**" Women Antitrust Plaintiffs' Attorneys, Napa, CA (June 2018).
- Webinar Speaker, "**Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement,**" American Association for Justice (Sept. 2016).
- Speaker, "**Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement,**" Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).
- Co-Author, "**Estimating Claims – What Every Attorney Should Know,**" What We've Noticed, Feb. 2015
- Co-Author, "**Increasing Judicial Attention to Claims-Filing Rates,**" What We've Noticed, Oct. 2014
- Co-Author, "**The Case for Simplified Notice and Claims,**" What We've Noticed, July 2014
- Co-Author, "**Tracking Ted…,**" What We've Noticed, April 2014
- Panelist, "**Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More – Minimizing Court Scrutiny and Overcoming Objector Challenges,**" Strafford CLE Webinar, Feb. 2014
- Co-Author, "**Efficient, Cost-Effective Notification and Administration in Antitrust Class Actions,**" Class Action Perspectives, 2013
- Co-Author, "**Recent Court Decisions Indicate Greater Scrutiny of Class Notice Programs,**" What We've Noticed, Dec. 2013
- Panelist, "**Mechanics, Logistics & Statistics: How to Settle a Class Action Lawsuit,**" FDCC Section Presentations for CLE 2013 Winter Program, March 2013
- Panelist, "**Emerging Trends in Class Action Notice,**" CLE International 6th Annual Conference Class Actions: Hot Topics, Winning Strategies and More, June 2010
- Speaker, "**Class Action Notice and Claims Administration: Trends and Innovation,**" Women Antitrust Plaintiffs' Attorneys Networking Event, Aug. 2009
- Author, "**Anticipating Claims Filing Rates in Class Action Settlements,**" Class Action Perspectives, Nov. 2008

# Bar Admissions

- Licensed to practice law in Minnesota

