**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:21-md-03015-SINGHAL/Valle**

| | |
|---|---|
| IN RE:<br><br>JOHNSON & JOHNSON SUNSCREEN<br>MARKETING, SALES PRACTICES AND<br>PRODUCTS LIABILITY LITIGATION | **MDL CASE NO. 3015** |
| Theodore H. Frank,<br><br> Objector | |

---

**OBJECTION OF THEODORE H. FRANK**

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      Objector Frank is a member of the settlement class. ...........................................................3

II.     Because class-action settlements are predisposed to agency problems, courts
        scrutinize settlements to prevent class counsel from self- dealing at the expense
        of absent class members. ....................................................................................................4

        A.      Courts must be wary of the allocation of a class-action settlement. ...........................4

        B.      Coupon settlements present specific allocation issues and are
                disfavored. ....................................................................................................................5

        C.      Settlements may contain illusory relief that obscures the true allocation
                of the class relief. ........................................................................................................6

III.    The coupon settlement is unfair, as the class is not the foremost beneficiary. ....................8

        A.      The $5 vouchers are coupons ......................................................................................9

        B.      In economic reality, the settlement impermissibly benefits class
                counsel at the expense of the class. ...........................................................................10

                1.      Class counsel asks for a disproportionate distribution of fees. .......................11

                2.      The settlement agreement contains a disfavored clear-sailing
                        clause. ...........................................................................................................16

                3.      The segregated fee fund acts as a disfavored kicker ......................................16

IV.     If the prospective injunctive relief is of value, the class cannot be certified
        under Rule 23(a)(4) because of an impermissible conflict of interest between
        past purchasers and repeat purchasers ...............................................................................17

V.      Alternatively, if the Court approves the settlement, it should defer the fee
        award until after the coupon redemption period. .............................................................18

CONCLUSION ...............................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*In re Aqua Dots Prod. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ........................................................................................2

*Arkin v. Pressman,*
    No. 21-11019, 2022 U.S. App. LEXIS 18205 (11th Cir. Jun. 30, 2022) ................3, 11, 16

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...............................................................................*passim*

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ................................................................................11, 13

*Chambers v. Whirlpool Corp.,*
    980 F.3d 645 (9th Cir. 2020) ..................................................................................16, 19

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.,*
    418 F.3d 277 (3d Cir. 2005).........................................................................................16

*Dardarian v. Officemax N. Am., Inc.,*
    No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653 (N.D. Cal. July 12, 2013) ....................9

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ........................................................................................7

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir. 2013) ...............................................................................*passim*

*In re EasySaver Rewards Litig.,*
    906 F.3d 747 (9th Cir. 2018) .....................................................................................5, 9

*In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995).....................................................................................11, 15

*Figueroa v. Sharper Image Corp.,*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007)..................................................................4, 5, 9

*Hertz Corp. v. Alamo Rent-A-Car,*
    16 F.3d 1126 (11th Cir. 1994) .......................................................................................6

*Holmes v. Cont'l Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) .................................................................................4, 12

*In re Home Depot Inc., Customer Data Sec. Breach Litig.,*
    931 F.3d 1065 (11th Cir. 2019) ....................................................................................12

*In re HP Inkjet Printer Litig.,*
716 F.3d 1173 (9th Cir. 2013) ................................................................................5, 9, 12

*Jane Roes 1-2 v. SFBSC Mgmt., LLC,*
944 F.3d 1035 (9th Cir. 2019) ....................................................................................*passim*

*Johnson v. NPAS Sols., LLC,*
975 F.3d 1244 (11th Cir. 2020) ..........................................................................................8

*Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.,*
566 U.S. 560 (2012) ............................................................................................................9

*Linneman v. Vita-Mix Corp.,*
970 F.3d 621 (6th Cir. 2020) ................................................................................16, 18, 19

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg, Sales Prac. & Prods.*
*Liab. Litig.,*
952 F.3d 471 (4th Cir. 2020) ............................................................................................18

*McKinney-Drobnis v. Oreshack,*
16 F.4th 594 (9th Cir. 2021) ...................................................................................6, 9, 10, 18

*McKnight v. Uber Techs., Inc.,*
2019 U.S. Dist. LEXIS 136706, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019)...........18

*In re Mexico Money Transfer Litig.,*
267 F.3d 743 (7th Cir. 2001) ..............................................................................................5

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934 (9th Cir. 2015) ........................................................................................9, 10

*Piambino v. Bailey II,*
757 F.2d 1112 (11th Cir. 1985) ...................................................................................4, 5, 11

*Redman v. Radioshack Corp.,*
768 F.3d 622 (7th Cir. 2014) ...................................................................................9, 12, 16

*Reed v. Continental Guest Servs. Corp.,*
No. 10 Civ. 5642, 2011 WL 1311886 (S.D.N.Y. Apr. 4, 2011) ........................................6

*Richardson v. L'Oreal United States,*
991 F. Supp. 2d 181 (D.D.C. 2013) ..................................................................................16

*Rougvie v. Ascena Retail Grp., Inc.,*
2016 WL 4111320, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016) ..................18

*Serota v. Johnson & Johnson Consumer Inc.,*
No. 21-cv-61103 (S.D. Fla.) ................................................................................................2

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................................7

*In re Stericycle Sec. Litig.*,
    35 F.4th 555 (7th Cir. 2022) ...........................................................................................4

*Swinton v. Squaretrade, Inc.*,
    454 F. Supp. 3d 848 (S.D. Iowa. 2020).........................................................................12

*Tech. Training Assocs., Inc., v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) .......................................................................................15

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) ..........................................................................16

**Statutes & Rules**

28 U.S.C. § 1711 note § 2(a)(3) ...................................................................................... 1, 5

28 U.S.C. § 1711 note § 2(a)(3)(A) .....................................................................................1

28 U.S.C. § 1712.................................................................................................................1

28 U.S.C. § 1712(a) ...............................................................................................6, 12, 18

28 U.S.C. § 1712(c) ...........................................................................................................18

Fed. R. Civ. P. 23(a)(4)................................................................................................*passim*

Fed. R. Civ. P. 23(e)..........................................................................................................15

Fed. R. Civ. P. 23(e)(2).....................................................................................................15

Fed. R. Civ. P. 23(e)(2)(A)................................................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................... 1, 3, 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...............................................................................11, 13, 15

Fed. R. Civ. P. 23(e)(2)(D)................................................................................................18

Fed. R. Civ. P. 23(e)(4).......................................................................................................2

Fed. R. Civ. P. 23(g)(4).....................................................................................................16

**Other Authorities**

American Law Institute,
    *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ...........................................11

Brickman, Lester,
    LAWYER BARONS (2011) ................................................................................................18

Burdge, Ronald L.,
    UNITED STATES CONSUMER LAW ATTORNEY FEE SURVEY REPORT, 2017-2018.........................21

Eisenberg, Theodore & Geoffrey P. Miller,
    *Attorneys' Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. OF EMPIRICAL
    LEGAL STUD. 248 (2010) .............................................................................................11

Fitzpatrick, Brian T.
    *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL
    LEGAL STUD. 811 (2010) .............................................................................................11

Hantler, Steven B. & Robert E. Norton,
    *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS
    1343 (2005) .............................................................................................................12

Henderson, William D.,
    *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*,
    77 TUL. L. REV. 813 (2003) ........................................................................................16

Sheley, Erin L. & Theodore H. Frank,
    *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769
    (2016) ....................................................................................................................14

Silver, Charles,
    *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000) .......................................17

Tharin, James & Brian Blockovich,
    *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005)............................12

S. Rep. 109-14 (2005) .............................................................................................................6

## INTRODUCTION

Congress has condemned "abuses of the class action device," such as when "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" and where "unjustified awards are made to certain plaintiffs at the expense of other class members." 28 U.S.C. § 1711 note §§ 2(a)(3), (a)(3)(A). To address these abuses, Congress passed the Class Action Fairness Act ("CAFA"), which implements a strict and specific regime for evaluating all settlements and accompanying fee awards that involve coupons. 28 U.S.C. § 1712. Yet the plaintiffs don't mention CAFA a single time in support of either settlement approval or their fee request.

This coupon settlement proposes to distribute coupons with a maximum face value of $10.58—but a likely value closer to $5[1]—that can be used to buy products that the complaint alleges to be carcinogenic, while class counsel seeks uncontested fees of $2.6 million dollars in cash. Non-aerosol products purchasers may file a claim to receive *up to* two coupons, prorated to a value $5 each at the time of this filing, which is allegedly "equal to the average retail selling price of the Non-Aerosol Product(s) purchased[.]" Dkt. 55-9 at 14. These coupons are highly unlikely to be redeemed, and redemption value is the relevant valuation under § 1712 and Rule 23(e)(2)(C)(ii).

Aerosol product purchasers receive even less than that: illusory injunctive relief and no monetary or coupon relief. Aerosol product purchasers could have applied for a refund for up to three products without proof of purchase and more than three with proof of purchase from Johnson & Johnson's pre-existing—but long-expired—refund program. Even crediting class counsel with the refund program extension, however, the requested amount of attorney's fees far exceeds what is reasonable considering the monetary value of the benefits accrued to the class.

Class counsel's efforts to justify the disproportionate settlement fall flat. The settling parties' claim that the settlement caused the refund program for purchasers of aerosol products is untrue. The program was preceded by and resulted from Johnson & Johnson's voluntary recall program and the

---

[1] Under the settlement the actual value of the coupons will be determined by the number of valid claims made such that the total amount of coupons does not exceed $1.75 million. Dkt. 55-9 at 15. As of June 24, 2022, 172,764 claims have been submitted. Assuming each claim is for two coupons, the maximum allowed without proof-of-purchase, then Frank's back-of-the-envelope calculations put the final coupon value at $5.06 (($1,750,000 / 172,764) / 2 = $5.06). For purposes of this brief, Frank uses the approximate $5 value per coupon.

U.S. Food and Drug Administration's investigation into the possible contamination of Johnson & Johnson sunscreen products with benzene, which were announced July 14, 2021. Notice of the appearance of benzene in Johnson & Johnson sunscreen products came two months prior from independent pharmaceutical lab Valisure, which filed a citizen petition alerting the FDA of the issue on May 24, 2021. The first-filed complaint in this consolidated action was filed in this Court on May 25, 2021. *Serota v. Johnson & Johnson Consumer Inc.,* No. 21-cv-61103 (S.D. Fla.), Dkt. 1.

The parties settled on December 17, 2021, stating "The Aerosol Products Refund Program is ongoing" and that "[Johnson & Johnson] will hold open and not discontinue the Aerosol Products Refund Program until January 14, 2022." Dkt. 55-9, at 13-14. But Johnson & Johnson had announced the recall and refund offer months earlier on July 14, 2021, *without* any deadline by which consumers had to request a refund. *See Johnson & Johnson Consumer Inc. Issues Voluntary Recall of Specific NEUTROGENA® and AVEENO® Aerosol Sunscreen Products Due to the Presence of Benzene,* Johnson & Johnson (notifying consumers that they "may contact the [Johnson & Johnson] Consumer Care Center 24/7 with questions or to request a refund by calling 1-800-458-1673.").[2] With December marking the first mention of the purported extension, the parties appear to be agreeing to extend the program from no deadline in the first place. Further, plaintiffs do not disaggregate the monetary value of the refund before versus after the supposed extended refund period, and instead only provide the total monetary value of all refunds provided, rather than for just the four weeks after the settlement. As a matter of law, a settlement may not take credit for relief provided by a defendant before a settlement agreement. (Nor may a suit take credit for an ongoing refund program. *In re Aqua Dots Prod. Liab. Litig.,* 654 F.3d 748 (7th Cir. 2011).) Thus, plaintiffs' $9.5 million attribution as settlement value is fictional.

So too is plaintiffs' attribution of $80 million in settlement value to prospective injunctive relief relating to recalled products. Again, as a matter of law, imposing costs on Johnson & Johnson is not equivalent to providing benefits to the class. More fundamentally, prospective injunctive relief does not match the class itself, which comprises individuals who purchased in the past, not those who will purchase in the future.

---

2   *Available at* https://www.jnj.com/johnson-johnson-consumer-inc-issues-voluntary-recall-of-specific-neutrogena-and-aveeno-aerosol-sunscreen-products-due-to-the-presence-of-benzene

As a result, the only true compensatory relief to class members is the coupons to non-aerosol purchasers. Under the most generous estimates, empirical data suggest that no more than 5% of the coupons will be redeemed; the parties do not satisfy their burden under Rule 23(e)(2)(C)(ii) to suggest a higher-than-expected rate. What class counsel characterizes as a $1.75 million benefit for the class is likely under $100,000. Yet class counsel asks for over 27 times this amount, far above the Eleventh Circuit's benchmark of around 25% for fee awards in common fund settlements. *See Arkin v. Pressman*, No. 21-11019, 2022 U.S. App. LEXIS 18205, at *3 (11th Cir. Jun. 30, 2022).

If the Court finds that there is any value in the settlement's proposed injunctive relief, then the class should not be certified under Rule 23(a)(4) because the relief would create an impermissible interclass conflict between past-purchaser and future-purchaser class members. Only future purchasers would avail themselves of whatever benefit the injunctive relief creates, thereby treating them differently than those class members who will never purchase Johnson & Johnson sunscreen products again. And any prospective relief provides no unique benefit to class members, as opposed to non-class members and opt-outs.

The settlement includes other indicia of an unfair, lawyer-driven settlement that fails Rule 23 scrutiny. Class counsel seeks to insulate the award from attack by including a clear sailing agreement that prevents Johnson & Johnson from challenging the fee request and allowing any unawarded fees under the clear sailing threshold to revert to Johnson & Johnson instead of the class.

In discharging its fiduciary duty to the class, the Court should deny final settlement approval. In the alternative, if the Court approves the settlement, CAFA counsels that the Court should delay any fee award until after the coupon redemption period so that attorney fees are commensurate with the relief *actually received* by class members.

## ARGUMENT

### I.   Objector Frank is a member of the settlement class.

Objector Ted Frank is a class member who purchased Johnson & Johnson aerosol and lotion sunscreen products during the class period and has filed a claim here. *See* Declaration of Theodore H. Frank, ¶¶ 5-8 (attached).

Frank is Director of Litigation at the Hamilton Lincoln Law Institute, whose Center for Class

Action Fairness ("CCAF") represents him *pro bono*. Frank's declaration under oath includes all information required by the Preliminary Approval Order, including his organization's history of objecting to class-action settlements and fee requests on behalf of himself and other class members. As the Seventh Circuit recently wrote, "Frank's track record—which now includes his success in this case—speaks for itself." *In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022). CCAF attorney John M. Andren intends to appear at the fairness hearing on his behalf. Frank brings this objection through CCAF in good faith to protect the interests of the class. Frank Decl. ¶¶ 11-14. His objection applies to the entire class, and to class members like himself who will not benefit from the injunctive relief; he adopts any objections not inconsistent with this one.

## II. Because class-action settlements are predisposed to agency problems, courts must scrutinize settlements to prevent class counsel from self- dealing at the expense of absent class members.

### A. Courts must be wary of the allocation of a class-action settlement.

To protect absent class members, courts have a duty to make sure that class counsel have not bargained away the rights of the class. "The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of the unnamed class members who by definition are not present during the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"). To combat the omnipresent "danger that the parties and counsel will bargain away the interests of the unnamed class members in order to maximize their own," the district court must act as a fiduciary of the class and apply zealous scrutiny to the proposed settlement. *Id.* "Careful scrutiny by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quotation omitted). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey II*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (cleaned up).

Every dollar reserved to the class is a dollar defendants cannot pay class counsel, so naturally, a conflict of interest emerges. Defendants are "uninterested in what portion of the total [settlement] payment will go to the class and what percentage will go to the class attorney." *Piambino II*, 757 F.2d at 1143 (cleaned up); *accord In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) ("*Bluetooth*"). Because of this indifference, judges must look for not just actual collusion (governed by Rule 23(e)(2)(B)) but also the Rule 23(e)(2)(C) problem: "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (cleaned up). Thus, while class counsel and defendants have proper incentives to bargain effectively over the size of a settlement, they have no such constraints on allocating it between the payments to class members and the fees for class counsel—unless courts police that allocation. *Bluetooth*, 654 F.3d at 949; *see also Pampers*, 724 F.3d at 717.

When, as here, class counsel favor themselves over their clients, a district court has a legal obligation to reject the proposed settlement. *Bluetooth*, 654 F.3d at 948-49; *see also Pampers*, 724 F.3d at 721; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786-87 (7th Cir. 2014).

**B.      Coupon settlements present specific allocation issues and are disfavored.**

Congress expressed concern in CAFA that "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where … class counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." 28 U.S.C. § 1711 note §§ 2(a)(3), (a)(3)(A); *see also EasySaver*, 906 F.3d at 754-55. Such unfairness was prevalent because the use of coupons unlikely to be redeemed "masks the relative payment of class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("*Inkjet*") (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002)).

Coupon settlements suffer from other flaws, including that "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa*, 517 F. Supp. 2d at 1302. Coupons also benefit the defendant as they can "serve as a form of advertising for the defendants …." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). And when a settlement contemplates unused coupon value functionally

reverting to the defendant, in this case by never leaving the defendant in the first place, the dangers are "even more grave." *Roes*, 944 F.3d at 1053. "Unchecked, such reversions would allow defendants to create a larger coupon pool than they know will be claimed or used, just to inflate the value of the settlement and the resulting attorneys' fees." *Id.* at 1054.

It is because of "the[se] well-documented problems associated with such settlements [that] Congress voiced its concern over coupon settlements when it amended [CAFA] to call for judicial scrutiny of attorneys' fee awards in coupon cases." *Reed v. Continental Guest Servs. Corp.*, No. 10 Civ. 5642, 2011 WL 1311886, at *3 (S.D.N.Y. Apr. 4, 2011). Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny" and to value the settlement, at least for fee purposes, based "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a). *See also McKinney-Drobnis*, 16 F.4th at 602. The Senate Committee's Report on CAFA confirms these legislative aims:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fee demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable, and adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. Rep. 109-14, at 31 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 32.

As discussed in Section III.A below, one cannot evade CAFA with the semantic trip of calling coupons "vouchers," as the parties do. Dkt. 78-1 at 2. As in other contexts, legal effect "is governed by functions rather than labels." *Hertz Corp. v. Alamo Rent-A-Car*, 16 F.3d 1126, 1131 (11th Cir. 1994).

### C.  Settlements may contain illusory relief that obscures the true allocation of the class relief.

Class counsel can structure a settlement to obscure the relative allocations between lawyers and class members by artificially inflating the settlement's apparent value. The illusion of a large settlement benefits both class counsel and a defendant: "The more valuable the settlement appears to the judge, the more likely the judge will approve it. And the bigger the settlement, the bigger the fee for class counsel." See Howard M. Erichson, *How to Exaggerate the Size of Your Class Action Settlement*,

DAILY JOURNAL (Nov. 8, 2017).[3] Without judicial oversight to weed out such practices, class members are left with disproportionate settlements in which class counsel recovers far more than the 25-percent benchmark set by this Court. *See* Howard Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. 859 (2016).

Consider the likelihood of settlement approval if class counsel openly sought approval of a common-fund cash settlement of $1.75 million, which paid the lawyers $2.6 million in fees and expenses and paid class members $87,500 in collective damages—as this settlement ultimately does. Few judges would approve that deal, and it is foreclosed by precedent. *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (class counsel receiving even 38.9% of settlement benefit is "clearly excessive"); *Bluetooth*, 654 F.3d at 947-49 (disproportionate fee award is a hallmark of an unfair settlement). For the deal to have any chance of court approval, it must conceal this result. So settling parties create hypothetical class recoveries and difficult-to-calculate "benefits" that ultimately have little value to the class but are cheap for defendants to provide. These hypothetical recoveries get a high price tag that inflates the overall "value" of the settlement package that goes to the judge but do nothing for the class.

The value of injunctive relief is "easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Defendants benefit from *res judicata* following judicial approval of the settlement and the minimal cost of such relief, while class counsel hopes for approval of a higher fee request. The critical question for a reviewing court is whether the change achieved by the settlement actually benefits class members. Even if commencement of the litigation might have spurred a defendant to alter its conduct, that voluntary change in conduct is not consideration for the class members' release of claims. *Koby v. ARS Nat'l. Services, Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017). The value to class members of a defendant agreeing in the settlement to stop doing something it already stopped is virtually zero. *See id.*; *Staton*, 327 F.3d at 961; Erichson, 92 NOTRE DAME L. REV. at 874-76. Here, Johnson & Johnson undertook the "new testing and business practices to prevent the recurrence of benzene contamination in its sunscreen products" (Dkt. 78-1 at 3), as a result of the investigation and petition filed by an

---

[3] *Available at* https://www.dailyjournal.com/articles/344700-how-to-exaggerate-the-size-of-your-class-action-settlement.

independent laboratory and the later recall of affected products it undertook under the supervision of the FDA. Plaintiffs refuse to provide a valuation for this supposed injunctive relief, instead asserting vaguely that this "important injunctive relief" is value created by the settlement. *Id.*

Where courts fail to scrutinize settlements, they will look like the one here: valueless injunctive relief; coupons that can't even purchase a product that is the subject of the lawsuit; and attorneys' fees wildly disproportionate to the actual payout to the class, shielded from appellate review by self-dealing "clear-sailing" and "kicker" clauses. E.g., *Roes*; *Pampers*; *Bluetooth*; *Pearson*. The Settlement here has these telltale signs. Meanwhile, class counsel capitalized on Johnson & Johnson's voluntary, pre-settlement recall and refund program by characterizing it as a settlement benefit that somehow compensated class members for their release of claims. *E.g.*, Dkt. 78-1 at 3. Exacerbating the problems, the Settlement includes a "clear-sailing" clause whereby Johnson & Johnson agreed not to challenge the attorneys' fees as well as a "kicker" so that any reduction in the fee award reverts to Johnson & Johnson rather than the class. Dkt. 55-9 at 17. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. And worse, it prevents the court from correcting the misallocation of the settlement relief by returning excessive fees to class members.

The vitality of the class-action mechanism depends on rigorous scrutiny by the judiciary and the application of doctrinal tests that properly align the incentives of class counsel with those of the vulnerable, absent class members whose claims they settle away. This oversight function cannot be delegated to private mediators who serve the interests of the named parties. There is no presumption in favor of settlement approval; a rigorous analysis is required, not merely a surface-level one. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1261-63 (11th Cir. 2020) ("*NPAS*"). The Court must scrutinize this settlement's red flags and should reject the proposal before it. And as discussed in Section III below, the settlement violates CAFA and Rule 23(e) as a matter of law.

## III.   The coupon settlement is unfair, as the class is not the foremost beneficiary.

The coupon settlement does not follow CAFA's requirement to base attorney's fees on the value of coupons redeemed. Instead, class counsel negotiated a settlement that allows themselves to extract fees far outstripping the class's actual settlement benefit. This is an impermissible distribution of settlement proceeds to class counsel and particularly unwarranted as absent class members receive

$0 in cash compensation because of this settlement. Merely reducing the fee award cannot correct this imbalance because counsel has insulated its negotiated fee through what is effectively a clear sailing agreement, which ensures that if counsel does not get its requested $2.6 million, the money remains with the defendant. Such a cynical and self-dealing settlement should be rejected in its entirety.

### A.    The $5 vouchers are coupons.

"Coupon" is not defined in CAFA and thus must be given its "ordinary meaning." *See Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) . "A coupon may be defined as a certificate or form 'to obtain a discount on merchandise or services,'" and "Webster's also defines coupons as 'a form surrendered in order to obtain an article, service or accommodation.' Coupons are commonly given for merchandise for which no cash payment is expected in exchange." *Dardarian v. Officemax N. Am., Inc.*, No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at *6-7 (N.D. Cal. July 12, 2013) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)). Not only does this ordinary meaning of "coupon" comport with the ordinary meaning of "voucher," *id.*, but Congress intended the terms to be used interchangeably. *Redman v. Radioshack Corp.*, 768 F.3d 622, 636 (7th Cir. 2014).

The $5 vouchers here are no more than certificates "to obtain a discount on merchandise or services." *Dardarian*, 2013 U.S. Dist. LEXIS 98653, at *6-7. That the parties used the euphemism "voucher" in place of "coupon" does not change the underlying substance of the relief. *See, e.g.*, *Inkjet*, 716 F.3d at 1176 ("e-credits" are a "euphemism" for coupons); *EasySaver*, 906 F.3d 747 ("credits"); *Figueroa*, 517 F. Supp. 2d at 1320 ("merchandise credits" are coupons); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015) ("*Online DVD*") (courts should "ferret[] out the deceitful coupon settlement that merely co-opts the term 'gift card' to avoid CAFA's requirements"); *McKinney-Drobnis v. Oreshack*, 16 F.4th at 604 ( "vouchers" "valid only for select products or services" count as coupons under CAFA).

Even if the Court is inclined to disregard the ordinary meaning of coupon and follow the multifactor balancing applied in *McKinney-Drobnis*, the $5 "vouchers" are still coupons. *McKinney-Drobnis* considered three guiding factors in determining that the vouchers resulting from the settlement were coupons under CAFA: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely

transferrable." 16 F.4th at 602 (quoting *EasySaver* at 755). Applying those factors, the $5 vouchers here are coupons. As in *McKinney-Drobnis*, the vouchers here might "require class members 'to hand over more of their own money before they can take advantage of' those benefits[.]" 16 F.4th at 604. Because of the number of claims submitted for vouchers and the thereby high likelihood of the coupons being prorated to a value of $5 to avoid exceeding $1.75 million in the aggregate. According to its own product website, the only Neutrogena sun product that costs close than $5 is Sun Rescue™ After Sun Medicated Relief Gel for Sunburned Skin, listed for a 25% discounted sale price of $5.99. *See* Declaration of John M. Andren ¶ 5 But that is not a *sunscreen* product, so a $5 voucher "is not enough to purchase" Neutrogena's or Aveeno's sunscreen offerings and class members cannot replace "the [product] that class members were allegedly injured by—without spending their own money." *McKinney-Drobnis,* 16 F.4th at 604.

Similarly, the number of "products that [Aveeno and Neutrogena] sells pale in comparison to the millions of low-cost products that Walmart sells, as in *Online DVD*" and all of Aveeno and Neutrogena's products "fall under the same umbrella category of' skincare, hair care, and cosmetics. *Id.* at 605. Indeed, the type of products that can be obtained with a settlement coupon here is even more limited than the "251 different products" available in *McKinney-Drobnis. Id.* As in *McKinney-Drobnis*, class members cannot elect cash instead of a coupon. *Compare* 16 F.4th at 599-600 *with* Dkt. 55-9 at 14-15. The Johnson & Johnson coupons contain an expiration date and are thereby less flexible than the coupons found to be coupons in *McKinney-Drobnis. Compare* 16 F.4th at 605, *with* Dkt. 55-9 at 15. And, as in *McKinney-Drobnis*, the vouchers are transferable and can be aggregated. *Compare* 16 F.4th at 605, *with* Dkt. 55-9 at 14.

In short, the vouchers expire, can be used only for a narrow range of Aveeno- and Neutrogena-branded items, and fall within any meaning of "coupon" under CAFA. Thus, the attorney's fees should be based on the actual value of coupons redeemed, not the total value of coupons available to the class.

### B.     In economic reality, the settlement impermissibly benefits class counsel at the expense of the class.

As discussed below, the class is likely to redeem less than $100,000 of the coupons. Meanwhile, class counsel negotiated for itself a $2.7 million pay day, backed by illusory injunctive relief that only

benefits consumers generally (*i.e.*, not class members), and shielded by clear sailing. This settlement is a prime example of a "sharp professional practice" of attorneys "us[ing] the class action procedure for their personal aggrandizement." *Piambino II*, 757 F.2d at 1144 (cleaned up). Regardless of whether the Court determines that the settlement relief qualifies as "coupons" under CAFA, the settlement still unfairly affords class counsel "preferential treatment" at the expense of the class. *See Roes*, 944 F.3d at 1052 (vacating settlement approval without reaching the CAFA question); *Pampers*, 724 F.3d at 718 ("preferential treatment" standard); *Arkin*, No. 21-11019, 2022 U.S. App. LEXIS 18205, at *21. *Roes* reiterates three subtle signs of a class action settlement that is inequitable between class counsel and the class in violation of Rule 23(e)(2)(C)(iii): (1) A disproportionate distribution of fees to counsel; (2) a clear sailing agreement; and (3) a reversion of unclaimed funds or unawarded fees to the defendant. 944 F.3d at 1049. All are present here.

1. **Class counsel asks for a disproportionate distribution of fees.**

The first sign of preferential treatment is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *accord In re GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.*, 55 F.3d 768, 803 (3d Cir. 1995) ("[N]on-cash relief … is recognized as a prime indicator of suspect settlements."); *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). This is an example of the latter scenario; the class receives coupons and prospective injunctive relief while the agreement permits the representatives to seek, unopposed, an award of $2.6 million in fees.

A proportionate attorney award is roughly 25% of the settlement value.[4] "In mathematical

---

[4] *See Arkin*, No. 21-11019, 2022 U.S. App. LEXIS 18205, at *3; *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (establishing benchmark of "20 to 30% range"); Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. OF EMPIRICAL LEGAL STUD. 248, 262 (2010) (surveying cases and finding a mean fee in consumer cases of 25%); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 833 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a median of 25.4% for the award of attorneys' fees "with almost no awards more than 35 percent").

terms, the equation for the percentage method in constructive common-fund cases effectively works like this: the actual payment to counsel is the product of (1) the percentage the court decides to award, and (2) the payment to the class plus the expected payment to counsel (together, the class benefit)." *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1092 (11th Cir. 2019); *accord Redman*, 768 F.3d at 630. And an award that vastly exceeds the 25% benchmark is disproportionate and renders the settlement unfair. *See, e.g.*, *Pampers*, 724 F.3d 713 (vacating settlement where fees cannibalized $2.7 million of the $3.1 million constructive common fund value); *Roes*, 944 F.3d at 1056 (vacating approval where fees amounted to 45% of the cash settlement component). To reach the appropriate ratio here, the class benefit would have to be valued at about $7.8 million.[5] This $7.8 million cannot consist of the face value of the coupon relief, as "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a); *see also Inkjet*, 716 F.3d at 1186 n.18. The burden of proving that quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719; *accord Holmes*, 706 F.2d at 1147. Class counsel cannot meet this burden because (1) the actual redemption rate of coupons is typically in the low single digits, (2) setting aside the redemption rate, class counsel's valuation of the aggregate settlement relief is inflated, and (3) class counsel fails to attempt any real valuation of the prospective injunctive relief.

*First*, evaluating whether a coupon settlement is unfairly skewed toward class counsel will require a court to make estimates from redemption rates in analogous cases,[6] which shows the redemption rate will almost certainly be in the low single digits. *See, e.g.*, *Swinton*, 454 F. Supp. 3d at 866 (citing white paper showing "coupons delivered via email accessed through a mobile device … were redeemed at a rate of 2% to 4%."); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443, 1445, 1448 (2005) (typically "redemption rates are tiny,"

---

[5] 2.6 million / (2.6 million + 7.8 million) = 25%.

[6] CAFA may allow such *ex ante* predictive judgments when approving a coupon settlement as fair, though it requires deferring any fee award until after the coupons have been redeemed. *Compare Redman*, 768 F.3d at 634 (allowing estimation of redemption rate based on considered economic judgment at settlement approval stage), *with Inkjet*, 716 F.3d at 1181-83 & 1187 n.19 (requiring actual accounting of coupons redeemed before an attorneys' fee attributable to them may be awarded; further suggesting bifurcating or staggering the fee award).

"mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); Steven B. Hantler & Robert E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS 1343, 1347 (2005) (noting one settlement where only two of more than 96,000 coupons were redeemed). Without providing data on the rate of redemption by claimants of the vouchers, the parties have failed to prove the vouchers have actual value. *See Pampers*, 724 F.3d at 719 (parties failed to prove that a "rerun" refund program had actual value and did not even proffer "data as to the numbers of consumers who obtained refunds" in the earlier refund offer). Even if the redemption rate is an unusually robust 5%—a retail value of under $100,000—class counsel will have allocated over 93% of settlement benefit to themselves. Anything more than $33 thousand in fees is a disproportionate windfall to class counsel at the expense of the class. Under Eleventh Circuit precedent and Rule 23(e)(2)(C)(iii), the settlement should be rejected. *See, e.g.*, *Camden I*, 946 F.2d at 774-75.

It is the burden of the proponents of the settlement to prove that the voucher "has actual value for consumers." *Pampers*, 724 F.3d at 719 (citing *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)) (internal quotations and other citations omitted). As of May 28, 2022, only 172,611 claims for vouchers have been received, corresponding to $3,652,449 million were every single claimant to qualify for two vouchers and use both. But because the amount allocated for vouchers is limited to $1.75 million, if all claimants redeemed two vouchers, their vouchers would have to be prorated to $5 per voucher.

*Second*, class counsel do not meet their burden to quantify any degree of class benefit from the so-called injunctive relief for it to be considered in the Court's fairness analysis. *See* Dkt. 110, at 8-9. The proponents of a settlement must "bear the burden of demonstrating that class members would benefit from the settlement's injunctive relief." *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017); *Pampers*, 724 F.3d at 719 (compiling authorities). This non-monetary relief includes a putative extension of the refund program for aerosol products and the prospective relief of: (1) the non-sale of any aerosol products subject to the aerosol product recall; (2) corrections to the sourcing and use of isobutane raw material supply, which contained the carcinogen benzene leading to the recall in the first place; and (3) testing of finished goods aerosol products.

Counsel for plaintiffs places a monetary value of more than $80 million on the "prospective" injunctive relief and claims credit for it in its entirety by including it in the monetary value of the

settlement to class members. Dkt. 82-1 at 10. But this prospective injunctive relief consists of actions the FDA would have required Johnson & Johnson to take, regardless of the settlement. And the monetary value could have been directed at the class members who purchased non-aerosol sunscreens in the form of refunds, since they cannot benefit from the prospective relief unless they continue to purchase Neutrogena and Aveeno products. Put simply, the prospective injunctive relief is a sellout of the class. To the extent that it has any value at all, it imposes settlement costs that could have instead been benefits targeted to the class of past purchasers.

"The fairness of the settlement must be evaluated primarily based on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Pampers*, 724 F.3d at 720 (internal quotation marks omitted; emphasis in original). "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786. These are proper recognitions of the principle that the class consists of people who interacted with defendant in the past, while the prospective injunctive relief can only benefit those who interact with defendant in the future. Commentators have recognized the problem of such fictive injunctive relief in settlements that remit no benefit to class members. *See, e.g.*, Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. PUB. POL'Y 769, 832 (2016) ("[T]here should be a presumption against approval of such settlements or awarding fees for such relief outside of the actions against public institutions originally contemplated by Rule 23(b)(2).")

The $80 million valuation is illusory as a matter of law in other respects. *First*, "[t]he standard under Rule 23(e) 'is not how much money a company spends on purported benefits, but the value of those benefits to the class.'" *Bluetooth*, 654 F.3d at 944 (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009) (Walker, J.)). It is "egocentrism" to assume that the class members are concerned about the costs incurred by Johnson & Johnson. *Pampers*, 724 F.3d at 720; *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) (putting defendant out of business not valuable to class members). *Second*, Johnson & Johnson would have incurred these costs independently of the settlement because of the pre-existing recall. To artificially inflate the valuation of the settlement to support an exorbitant attorney's fees payout, class counsel is including necessary expenditures by Johnson & Johnson that are a byproduct of Johnson & Johnson's day-to-day business operations.

These costs are epiphenomenal and predetermined, resulting from the recall, not the settlement, and certainly not the product of litigation. Notably, class counsel does not include a predicted redemption rate, nor valuation of the coupons in her appraisal of "The Monetary Value of the Settlement to Class Members." Dkt. 82-1, ¶¶ 45-49.

The extension of the refund program and the prospective injunctive relief do not result from the settlement agreement. Defendant has not shown that extending the refund program or any of the safety measures being taken for future product lines to prevent the recurrence of a recall because of carcinogens were not actions being taken regardless of the settlement. In any event, an injunction to obligate a defendant to continue doing what it was doing has "no real value." *Koby*, 846 F.3d at 1080. Even if class counsel could demonstrate that the refund period was extended as a result of the settlement, they have not disclosed the extension's monetary value. Instead, they have only provided that the total refund amount of $9,528,207.62, most of which was surely obtained in the initial publicity in the July recall months before settlement. In failing to disclose this information, Class counsel have not revealed the value-add of litigation to the refund program and thereby the class. Dkt. 82-1, ¶¶ 47. Class counsel cannot retroactively claim credit for benefits accrued to consumers before December 17 who happen to also be members of the class when those benefits do not result from the settlement. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1224 & n.4 (9th Cir. 2015) (amount that the class *actually* receives matters). Pre-settlement actions cannot count toward the value of the settlement and thereby cannot factor into attorney's fees. Rule 23(e) applies and the insulated, disproportionate fee request that relies on the zero value "injunctive" relief renders the settlement unfair under Rule 23(e)(2).

Whether the Court views this settlement as a coupon or in-kind settlement, class counsel seeks a windfall at the expense of class members. That disproportionality makes the settlement unfair under Rules 23(e)(2)(A) and (e)(2)(C)(ii) and (iii), and it also makes class certification improper under Rules 23(a)(4) and (g)(4) because an "extremely expedited settlement of questionable value accompanied by an enormous legal fee" casts doubt on the adequacy of counsel's representation. *GM Trucks*, 55 F.3d at 801-803. "If, as it appears, [class counsel] was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class." *Tech. Training Assocs., Inc.*, *v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 694 (11th Cir. 2017).

2.      **The settlement agreement contains a disfavored clear-sailing clause.**

A second indication of preferential treatment for counsel present in the settlement is the "clear-sailing" clause—*i.e.*, where defendant consents not to challenge the award of fees to Class counsel. *Roes*, 944 F.3d at 1050-51; see Dkt. 55-9 at 17. "Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.'" *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari)). It shows that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (internal quotation omitted). The "red carpet treatment" is especially pronounced in coupon cases, where class counsel have had little success in the face of defendants invoking section 1712's restriction on fees. See Chambers, 980 F.3d 645; *Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020). Thus, a clear-sailing clause is a "questionable feature" that, "at least in a case … involving a non-cash settlement award to the class[,] … should be subjected to intense critical scrutiny." *Redman*, 768 F.3d at 637; *accord Guoliang Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740, 2018 U.S. Dist. LEXIS 123322, at *12 (E.D.N.Y. Mar. 31, 2018); *see also* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions.").[7]

3.      **The segregated fee fund acts as a disfavored kicker.**

A third indication of preferential treatment here is a "kicker" clause under which class counsel's fee fund is segregated from the class benefit so that any unawarded fees revert to the defendant rather than going to benefit the class. *Bluetooth*, 654 F.3d at 948-49; *see also Arkin*, No. 21-11019, 2022 U.S. App. LEXIS 18205, at *21 (describing among other things the disincentive to seek

---

[7] Negotiating class benefit and fees separately does not allay the inherent conflict when representatives negotiate their own compensation unless "fee negotiations [are] postponed until the settlement was judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005); *accord Pearson*, 772 F.3d at 786-87 (finding implausible that separate negotiation could benefit the class); *Richardson v. L'Oreal United States*, 991 F. Supp. 2d 181, 204 (D.D.C. 2013) (separate negotiation cannot cure unfair allocation between class and counsel).

out class members created by kicker provisions). Here, the unawarded fees never leave Johnson & Johnson's pocket. Dkt. 55-9 at 16-17. As a coupon settlement, Johnson & Johnson does not actually pay out any funds to the class until the claims are made, meaning any unused funds do not revert to Johnson & Johnson, but never leave its accounts.

A segregated fee structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards. *See Pearson*, 772 F.3d at 786. There is "no apparent reason the class should not benefit from the excess allotted." *Roes*, 944 F.3d at 1059-60. Fee segregation thus has the self-serving effect of protecting class counsel by deterring scrutiny of the fee request. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for defeating objectors"). A court and potential objectors have less incentive to scrutinize a request because the kicker combined with the clear-sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (arguing that reversionary kicker is *per se* unethical). For these reasons, a "kicker" clause should be subject to a "strong presumption of … invalidity." *Pearson*, 772 F.3d at 787.

## IV. If the prospective injunctive relief is of value, the class cannot be certified under Rule 23(a)(4) because of an impermissible conflict of interest between past purchasers and repeat purchasers.

If the court finds that the injunctive relief is of value, it creates a conflict of interest between the past purchasers who want to maximize compensatory remedy and repeat purchasers who have an interest in injunctive relief, creating a zero-sum allocation conflict. Consumers generally and repeat purchaser class members who want to continue buying aerosol sunscreen products from Johnson & Johnson benefit from greater prospective injunctive relief, while class members who are solely past purchasers and want to maximize compensatory relief are not benefited by prospective injunctive relief. This creates an internal conflict within the class rendering over-valuation of the injunctive relief and invalidation of the finding of adequate representation of those class members solely interested in financial renumeration.

Binding Eleventh Circuit precedent holds that it is impermissible to join similarly conflicting

parties into a single class with unitary representation. *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F. App'x 457, 464 (11th Cir. 2018) ("*3M Co.*") (holding "the Class's interests could not adequately be represented by counsel purporting to negotiate on behalf of both the Water Authority and the Class, because their interests were inherently conflicted"). In *3M Co.*, class members "asserted claims for monetary damages addressing individualized harms … claims not shared by the Water Authority" while the Water Authority was seeking to "maximiz[e] the amount of injunctive relief obtained from Defendants while minimizing the value of … class members' individualized claims for compensatory damages." *Id.* at 464.

## V. Alternatively, if the Court approves the settlement, it should defer the fee award until after the coupon redemption period.

CAFA requires that attorneys' fees founded on coupon relief must be based on the actual redemption of the coupons. 28 U.S.C. §§ 1712(a), (c).[8] While the Ninth Circuit interprets CAFA to mandate a percentage-based fee award in coupon settlements, other circuits interpret it merely to limit how the percentage-based method can be applied, with an option to use the lodestar method instead. *See Linneman*, 970 F.3d at 627-28 (detailing the split). The Eleventh Circuit has not weighed in. The Ninth Circuit's reasoning provides the best reading of the statute. That said, the conflict does not matter for purposes of this case because the percentage-based award plaintiff seeks here would violate every circuit's reading of the statute by "using the face of coupons in determining the value of a settlement." *Id.* at 928.

We are told that in gross "[t]he total hours billed by appointed Class counsel for this litigation

---

[8] Even if the Court holds that the refund process extension provides material benefit and the settlement is not solely a coupon settlement, Section 1712 of CAFA still applies. *McKinney-Drobnis,* 16 F.4th at 604 (9th Cir. 2021) (finding that "section 1712(a) uses mandatory language, stating that if a proposed settlement *provides for coupon relief,* the attorneys' fee award 'shall' be based on the redemption value of the coupons") (emphasis added); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg, Sales Prac. & Prods. Liab. Litig.*, 952 F.3d 471, 491 (4th Cir. 2020) (argument to the contrary is "unconvinc[ing]"); *Rougvie v. Ascena Retail Grp., Inc.*, 2016 WL 4111320, 2016 U.S. Dist. LEXIS 99235, at *84 (E.D. Pa. July 29, 2016) (applying CAFA to settlement where class could choose between cash or store merchandise vouchers as "the only consistent reading of the Act"); *McKnight v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 136706, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) (applying CAFA despite cash option).

is 2,552.47 hours." Dkt. 78-1 at 17. But class counsel has failed to provide the information needed to assess the hours they claim to have expended. Only two of class counsel have even bothered to submit charts of the hours billed to the litigation. *See* Declarations of Alexandra Walsh & Kimberly Channick, Dkt.78-1 196-204. Even there, information is provided only by day with no breakdown by task. For instance, Kimberly Channick's July 23, 2021, entry for 7.7 hours, includes a block narrative description of the work performed as "[t]eam call, calls with outside counsel, editing relatedness motion." *Id.* at 203. Class members (and the Court) have zero insight into how those 7.7 hours are distributed among the listed tasks. This information is required for any meaningful review of class counsel's work in a lodestar fee award.  It is troubling that only two have even bothered to submit even cursory time logs.

Even assuming all 2,552.47 claimed hours were reasonably expended—a generous assumption in a case in which almost no litigation occurred and a settlement was reached on Dkt. 25—class counsel's rate of $750 per hour for every partner, associate, and paralegal far exceeds industry standards. In 2017-18, the median rate for class-action practitioners in Miami was $350/hour. Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report, 2017-2018 ("Survey Report"), at 258, *available at* https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf. With inflation, a reasonable blended market rate in 2022 is no more than $420/hour, suggesting a multiplier of more than 2.4 would be required to reach the requested $2.6 million amount. Even at the excessive rate of $750/hour, class counsel's costs of billed hours multiplied by rate still falls well short of $2.6 million. At either rate, in a CAFA coupon settlement of this type, no upward multiplier at all would be warranted. *See, e.g., Linneman*, 970 F.3d at 632-33; *Chambers*, 980 F.3d at 665. Ultimately, the consequence is that only the percentage method could potentially justify class counsel's fee request. If the Court approves the settlement, it should defer the fee request pending a report on redemptions after the one-year voucher expiration period.

## CONCLUSION

The proposed coupon settlement disproportionately benefits class counsel at the expense of class members. The proposed settlement also contains other problematic provisions—clear sailing and a kicker. Given the Court's fiduciary duty to the class, one heightened under CAFA, the proposed settlement should not be approved. Alternatively, if the Court approves the settlement, it should not award fees until after the coupon redemption period.

Date: July 7, 2022

Respectfully submitted,

*/s/ John M. Andren*
John M. Andren
Florida Bar No. 1011609
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (703) 582-2499

*Attorneys for Objector Theodore H. Frank*

I, Theodore H. Frank, am the objecting class member. I sign this written objection drafted by my attorneys as required by ¶17(e) of the Preliminary Approval Order.

Theodore H. Frank

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the

CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ John M. Andren*
John M. Andren
Florida Bar No. 1011609