**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:21-md-3015-SINGHAL/Valle**

IN RE:                                                    MDL CASE NO.: 3015

**JOHNSON & JOHNSON AEROSOL SUNSCREEN**                    Order No. 24
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO: ALL CASES**
_____/

## ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, CERTIFYING THE SETTLEMENT CLASS, AND AWARDING ATTORNEY'S FEES

**BEFORE THE COURT** is Plaintiffs' Motion and Memorandum in Support of Final

Approval of Class Action Settlement (DE [82]), the Objection of Theodore H. Frank (DE

[83]), and the subsequent response (DE [87]) and reply (DE [90]).  The Final Approval

Hearing was held on August 12, 2022.  This Court has considered all of the submissions

and arguments with respect to the Class Action Settlement Agreement.  *See generally*

(Ex. 1 Settlement (DE [82-1]) at 13–67).

Over the past eighteen months, the lawyers in this case have worked to resolve

their clients' differences and conclude what, on its face, could be a very difficult case with

myriad issues and multiple trials.  During that same period of time—and for even longer—

lawyers in another MDL case in this District have been working long hours to resolve

claims that ultimately resulted in a defense victory at summary judgment.[1]  So, in that

second case, despite thousands of plaintiff's lawyer hours and plaintiff representative

time, no fees and costs will be awarded them.  Of course, on that case, no one objects to

---

[1] *See* 20-md-2924-ROSENBERG/Reinhart (the "ZANTAC cases").

the fee model, nor is there a vehicle for anyone to do so.  That's because our system has worked that way—and efficiently—for decades.  But here, where lawyers and litigants have actively and expeditiously concluded a case resulting in (1) cash awards, (2) coupon awards, and (3) injunctive relief, there are objections to the settlement and the proposed attorneys' fees and cost awards.  And the objector had every right to file his papers; indeed, he properly followed the rules, and in an adversarial system this process ought to lead to better results.  The problem arises when in answer to the Court's question of what would make this settlement and award better or acceptable to the objector, the objector answered with a conclusory and somewhat flippant response of "a better settlement".

This Order is a long time coming.  Were it not for the sole objection, it would have been entered six months ago.  Nevertheless, this Court now enters this Order and makes the following findings of fact and conclusions of law:

## I.   <u>FINDINGS OF FACT</u>

1.      On May 24, 2021, Valisure, an independent chemical testing laboratory, filed a citizen petition with the U.S. Food & Drug Administration ("FDA") disclosing its findings that certain Johnson & Johnson Consumer, Inc. products sold under the company's Neutrogena and Aveeno brands contained high levels of benzene and requested, *inter alia*, that the Commissioner issue a regulation, request recalls of the products, and revise relevant industry guidance.

2.      On May 25, 2021, plaintiff Serota filed a putative nationwide class action complaint arising out of the presence of benzene in Defendant Johnson & Johnson Consumer, Inc.'s ("Defendant" or "JJCI") sunscreen products.  *See Serota v. Johnson &*

*Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.), (First Am. Compl. (DE [4]) ¶¶ 38–237) (hereinafter, the "*Serota* Complaint").

3.    Other putative class action complaints followed shortly thereafter in multiple jurisdictions. *See, e.g.*, *Serota v. Johnson & Johnson Consumer Inc.*, No. 21-cv-61103 (S.D. Fla.); *Dickerson v. Johnson & Johnson Consumer Inc.*, No. 21-cv-07230 (C.D. Cal.); *Brennan v. Johnson & Johnson Consumer Inc.*, No. 21-cv-04869 (N.D. Cal.).

4.    Generally, Plaintiffs assert claims for violations of various states' consumer protection and/or deceptive and unfair trade practices acts, unjust enrichment, negligent misrepresentation/omission, breach of express and implied warranties, strict product liability-failure to warn, and strict product liability-manufacturing defects. *Serota* Compl. ¶¶ 38–237.

5.    The relief sought includes an order by the Court certifying the case as a class action, an award of compensatory damages, interest, attorneys' fees, and costs, as well as injunctive relief. *See Serota* Compl. ¶¶ 1, 36, 52.

6.    On July 14, 2021, Defendant JJCI announced it was voluntarily recalling all lots of five Neutrogena and Aveeno aerosol sunscreen product lines[2] because benzene was detected in samples of the recalled products.

7.    On the same day JJCI instituted its recall, it announced it would offer full cash refunds for the full average retail selling price of the affected products.

8.    JJCI then established a process for claimants to obtain such refunds.

---

[2] The Aerosol Products impacted by the recall were: (1) NEUTROGENA® Beach Defense® aerosol sunscreen; (2) NEUTROGENA® Cool Dry Sport aerosol sunscreen; (3) NEUTROGENA® Invisible Daily™ defense aerosol sunscreen; (4) NEUTROGENA® Ultra Sheer® aerosol sunscreen, and (5) AVEENO® Protect + Refresh aerosol sunscreen.

9.      Shortly thereafter, counsel for plaintiffs in the *Serota* and *Brennan* actions began settlement discussions with JJCI.

10.     On July 30, 2021, the *Serota* plaintiffs filed a first amended class action complaint adding an additional Florida plaintiff and plaintiffs from Colorado, Illinois, Maryland, Michigan, New York, Ohio, Oregon, and Washington.  *See Serota* Compl. ¶¶ 5–14.

11.     The JPML issued its Transfer Order (DE [1]) consolidating this matter before this Court on October 8, 2021.

12.     After initiating settlement discussions, counsel for Serota, Brennan, and JJCI agreed to jointly retain former United States District Judge John C. Lifland ("Judge Lifland") as a mediator in an attempt to reach a nationwide resolution.[3]

13.     Confidential mediation statements were prepared by both parties and submitted to Judge Lifland prior to mediation.

14.     The mediation session took place on September 8, 2021, wherein the parties discussed and evaluated the claims, damages, allegations and defenses, and were able to agree in principle on a general framework for global settlement, including with respect to retailer defendant Costco.[4]

15.     The parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, and for several weeks thereafter Settlement Counsel and JJCI's counsel did so.

---

[3] After 27 years in private practice, John C. Lifland served as an USDJ for nineteen years.  Prior to his nomination by President Ronald Reagan, he received his undergraduate degree from Yale University and then in 1957 his law degree from Harvard Law School.  The American Inn of Court chapter in his jurisdiction is named after him.  He was also at one point in his career Chairman of the New Jersey Board of Bar Examiners.

[4] Costco is named as a defendant in one of the actions pending before this Court.  *See McLaughlin v. Johnson & Johnson Consumer, Inc.*, No. 21-cv-13710 (D.N.J.).

16.     During this process, Serota and Brennan's counsel also retained experts and consultants to evaluate the claims asserted by JJCI.  (Richards Decl. (DE [55-2]) ¶ 8).

17.     Ultimately, the Parties were able to reach an agreement in principle to settle the litigation on a class-wide basis, which was memorialized on October 21, 2021.

18.     A Joint Notice of Settlement (DE [25]) was filed with the Court on October 29, 2021.

19.     Over the course of the parties' negotiations, JJCI voluntarily produced information by which Plaintiffs were able to assess the merits of the claims and defenses.

20.     The type of information produced included information regarding JJCI's notice of potential benzene contamination; communications between JJCI and its affiliates concerning potential benzene contamination; information regarding studies and analysis performed by JJCI with respect to the potential benzene contamination; JJCI's communications with the FDA regarding potential contamination; information about JJCI's sunscreen manufacturers and raw material suppliers; and information on JJCI's refund program, including procedures and protocols for processing refunds, criteria for payment, number of claims made, refund amounts paid, consumer complaints made, and consumer communications.  (Richards Decl. (DE [55-2]) ¶ 9).

21.     Plaintiffs conducted an independent investigation into their claims and JJCI's defenses.   Their investigation included the testing of products using an independent third-party laboratory; consultations with experts in the fields of chemistry, cosmetics, and toxicology; and informal surveys of class members regarding issues such

as the sufficiency of JJCI's Aerosol Product Recall and Aerosol Products Refund Program.

22.    On December 17, 2021, the parties executed the Settlement and, on the same day, Plaintiffs filed a Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (DE [55]).

23.    The proposed Settlement defines the Class as follows:

> "Class" means all persons and entities in the United States who purchased one or more of the Aerosol Products or Non-Aerosol Products defined herein for personal, family, or household use and not for resale . . . .

(Prop. Settlement (DE [55-10]) ¶ 11).

24.    Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of JJCI, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff.  *Id.*

25.    The relief offered by the Settlement provides for (1) a full refund for the Aerosol Products subject to the JJCI's voluntary recall through January 14, 2022, and (2) a voucher equal to the average retail selling price of the Non-Aerosol Products which may be used toward the purchase of any Neutrogena or Aveeno product(s), up to a maximum of two (2) such units per household.  *See* (Ex. 1 Settlement (DE [82-1]) ¶¶ 50–53).

26.    The vouchers are transferable, may be aggregated, and expire not less than twelve (12) months from their date of issuance.  *See id.*

27.     The Settlement also offers injunctive relief that requires JJCI to direct its external manufacturer to (1) purge any existing inventory of isobutane intended for the use in Aerosol Products; (2) adopt new testing protocols requiring any supplier of isobutane raw material intended for use in Aerosol Products to test for the presence of benzene at no more than 0.1 parts per million (PPM) and refrain from shipping such raw material unless the shipment has passed such test; and (3) engage an independent, ISO-certified laboratory to test random samples from at least 25% of manufacturing lots of finished Aerosol Products for the presence of benzene, and to withhold release of such lots unless all samples have passed the test.  *See id.* ¶¶ 48-49.

28.     The Settlement includes a fees and costs provision wherein JJCI agrees not to object to a fee application up to and including the sum of $2,500,000, plus reimbursement of reasonable costs and expenses up to $100,000.  *Id.* ¶ 61.

29.     On December 20, 2021, Class Counsel filed their Motion to Appoint Interim Class Counsel Under Rule 23(g) (DE [57]).

30.     On January 6, 2022, this Court held the Initial Conference regarding the motion, and invited counsel involved in this proceeding to submit applications to be selected as Plaintiffs' lead/liaison counsel by January 14, 2022.  *See* (Order No. 10 (DE [62]) entered Jan. 10, 2022).

31.     The Court entered its Order (DE 64]) granting Class Counsel's motion on February 2, 2022.

32.     The Court conducted a preliminary fairness hearing on February 17, 2022.

33.     There was no opposition to Plaintiffs' motion for preliminary approval.

34.     On March 28, 2022, in its Order Granting Motion for Preliminary Approval of Class Action Settlement (DE [68]) this Court determined that the Class satisfied the requirements for certification under Federal Rule of Civil Procedure 23, and that the Settlement was fair, reasonable, adequate, and not the result of collusion.

35.     Accordingly, this Court granted the motion for preliminary approval.  *See* (Order No. 14 (DE [68]) entered Mar. 28, 2022).

36.     This Court ordered the Parties to provide Class Members with notice as set forth in the Settlement and that any objections to the Settlement be filed by the Objection and Exclusion Date of July 7, 2022.  *Id.*; *see also* (Decl. of Jason Rabe (DE [82-2]) ¶¶ 13–15) ("Rabe Decl.").

37.     The Court set the final approval hearing (the "Fairness Hearing") for August 12, 2022.  (Order No. 14 (DE [68]) entered Mar. 28, 2022).

38.     Following preliminary approval, Settlement Plaintiffs conducted additional discovery.

39.     Specifically, Class Counsel deposed two JJCI employees who were key players in JJCI'S response to the purported benzene contamination: (1) Carla Oliviera, Regional Leader for the North American Consumer Care Center, and (2) Derek Henderson, Head of Global Franchise Quality at JJCI.

40.     Mr. Henderson was responsible for JJCI's root-cause investigation and had knowledge regarding the company's testing, investigation, suppliers, and FDA interactions.

41.     Ms. Oliviera was responsible for the consumer-facing aspects of JJCI's Aerosol Products Refund Program, including processing refunds.

42.     Additionally, in accordance with the terms of the Settlement, JJCI made an additional documentary production which included documents and data related to material specifications and testing.

43.     Finally, all documents produced by JJCI to Class Counsel in the course of the settlement negotiations/investigation, as well as deposition transcripts, have been provided to all other plaintiffs' counsel who requested copies of such materials.

44.     The Parties timely provided class members with the approved notice. (Janowicz Decl. (DE [82-3]) ¶¶ 7–16); (Rabe Decl. (DE [82-2]) ¶¶ 8–12).

45.     The notice campaign included paid print, digital, and social media advertising, as well as the creation of a toll-free telephone hotline, a dedicated website, and a dedicated e-mail address.  (Janowicz Decl. (DE [82-3]) ¶¶ 4–16); (Rabe Decl. (DE [82-2]) ¶¶ 8–12).

46.      The notice program, as implemented, reached at least 75% of potential class members, with a claims rate of approximately 2.88%.  (Janowicz Decl. (DE [82-3]) ¶ 18); (Grombacher Decl. (DE [82-1]) ¶ 47).

47.     By the date the motion for final approval was filed, over 172,000 claims had been received.  (Grombacher Decl. (DE [82-1]) ¶ 52).

48.     Ultimately, over 209,000 claims were received and processed by the Settlement Administrator.  *See* (Supp. Decl. of Rabe (DE [91-1]) ¶ 4).

49.     Only two requests for exclusion from the class were received.  *See* (Rabe Decl. (DE [82-2]) ¶ 14).

50.     Settlement Plaintiffs filed a corrected fee application (DE [78-1]) on June 2, 2022, and their Motion for Final Approval of Class-Action Settlement (DE [82]) on June 24, 2022.

51.     On July 7, 2022, Theodore H. Frank ("Mr. Frank") filed an objection to final approval of the settlement (DE [83]).

52.     Plaintiffs filed an opposition to the objection on August 8, 2022.  *See* (DE [87]).

53.     Mr. Frank filed a reply on August 11, 2022.  *See* (DE [90]).

54.     On August 12, 2022, the Court held a Fairness Hearing on Plaintiffs' Motion and Memorandum in Support of Final Approval of Class Action Settlement (DE [82]).

55.     Counsel for Plaintiffs, JJCI, and Mr. Frank presented argument.

56.     At the conclusion of the Fairness Hearing, this Court instructed the parties to submit their proposed findings of facts and conclusions of law to the court.

57.     This Court has considered these filings, the supporting declarations, all of the submissions and arguments with respect to the Settlement Agreement, and has independently read numerous cases and materials over the past six months, totaling thousands of pages in order to arrive at the proper result under the law.[5]  Before moving on to conclusions and findings, the Court would be remiss in not recognizing the hard work and effort that the lawyers on all sides—plaintiff, defense, and objector—put into this matter in terms of their written submissions and well-organized arguments.

---

[5] Among the materials reviewed in their entirety which are of course in addition to any cited during the course of this litigation, are as examples: (1) Fitzpatrick, Brian T., THE CONSERVATIVE CASE FOR CLASS ACTIONS, Chicago: The University of Chicago Press, 2019; (2) Sheley, Erin L. and Frank, Theodore H., PROSPECTIVE INJUNCTIVE RELIEF AND CLASS ACTION SETTLEMENTS, Harvard Journal of Law and Public Policy, January 6, 2016; and (3) MDL Standards and Best Practices, Duke Law Center for Judicial Studies, Duke Law School, September 11, 2014.

## II.   CONCLUSIONS OF LAW

### A.   Jurisdiction

This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and at least one Plaintiff is a citizen of a state different from the Defendant.  Further, venue is proper in this forum.

### B.   Legal Standards

#### 1.   Settlement Approval

Federal Rule of Civil Procedure 23 ("Rule 23") authorizes district courts to "prescribe measures to prevent undue repetition or complication in presenting evidence or argument," to "impose conditions on the representative parties or on intervenors," and to "deal with similar procedural matters."  Fed. R. Civ. P. 23(d)(1)(A), (C), (E).  No class action may be settled without court approval.  *See* Fed R. Civ. P. 23(e).  The decision of whether to approve or reject a settlement "is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "[S]ettlements are 'highly favored in the law' because 'they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'" *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1257 (11th Cir. 2021) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).  As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Bennett*, 737 F.2d at 986; *see also Jairam v. Colourpop Cosmetics, LLC*, 2020 WL 5848620, at *3 (S.D. Fla.

Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements.").  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g., Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 13:44 (4th ed. 2002) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

"A class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors."  *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1273 (quoting Fed. R. Civ. P. 23(e)(2)).  The Eleventh Circuit has also instructed district courts to consider several additional factors called the *Bennett* factors.  *Id.* (citing *Bennett*, 737 F.2d at 986).  The factors include (1) "the likelihood of success at trial," (2) "the range of possible recovery," (3) "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable," (4) "the complexity, expense and duration of litigation," (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.

Courts, however, should not convert settlement fairness hearings into trials on the merits or mini-trials.  *See United States v. Knight*, 271 Fed. Appx. 896, 902 (11th Cir.

2008) ("[I]t cannot be overemphasized that neither the trial court in approving the settlement nor this Court in review of that approval have the right or the duty to reach any ultimate conclusions on the issues of fact or law which underlie the merits of a dispute.") (quoting *Cotton*, 559 F.2d at 1330). "A trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991); *see also Cotton*, 559 F.2d at 1330 (a trial judge "should be hesitant to substitute its own judgment for that of counsel"); *Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."); Manual for Complex Litigation § 21.61 (4th ed. 2021) ("The judge cannot rewrite the agreement."). Instead, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 675 (S.D. Fla. 2006) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). After all, the very purpose of a settlement is to avoid the need to determine sharply contested issues and to dispense with wasteful and expensive litigation and discovery. *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981) (in considering whether to approve a class settlement, courts "do not decide the merits of the case or resolve unsettled legal questions").

Objectors can play a "beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement." Manual For Complex Litigation § 21.643 (4th ed. 2021). And because objectors have the right to object pursuant to Rule

23(e)(5)(A), it is the Court's obligation to closely review the issues they present. *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1257. A challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993). Thus, Federal Rule of Civil Procedure 11 applies to objectors and their attorneys and should be invoked in appropriate cases.

### 2.  Class Certification

Rule 23 sets forth a number of requirements that a class action must meet in order for a district court to certify the class. First, all four requirements in Rule 23(a) must be satisfied: (1) the class must be "so numerous that joinder of all members is impracticable," (2) there must be "questions of law or fact common to the class," (3) the class representatives' claims or defenses must be "typical" of the class's claims or defenses, and (4) the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). "These four requirements are often referred to as the numerosity, commonality, typicality, and adequacy requirements, respectively." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1275 (citing *Vega*, 564 F.3d at 1265). In addition to meeting these four requirements, a class action must also satisfy one of the three parts of Rule 23(b). Fed. R. Civ. P. 23(b); *see Vega*, 564 F. 3d at 1265. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court has an independent obligation to "conduct its own inquiry" that the Rule 23 class-certification standards are satisfied, regardless of whether any party has contested an element. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). The Plaintiffs have the burden of establishing class certification is appropriate. *Carriuolo v. General Motors Co.*, 823 F.3d 977, 981 (11th Cir. 2016) (citing *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997)). The class here is hundreds of thousands, perhaps millions, of consumers whose claims involve common facts and law and whose injury or complaint is identical. There is no question that Rule 23(a)(1)'s numerosity standard is met. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Likewise, the other Rule 23(a) factors are not an issue in this case. Under Rule 23(a)(3), a "class representative must possess the same interest and suffer the same injury as the class members." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004). There is no question in this case that the class representative meets this threshold.

The class satisfies Rule 23(b)(3) because the commonality requirement is easily met. The evidence the plaintiffs would offer at an individual trial to establish liability would be the same sort of evidence that every member of the proposed Class would also have to offer at their own individual trials. Here, use of the class action device is superior to other available procedural methods for adjudicating the claims at issue in this case. The damages or other financial detriment suffered by the Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against JJCI. Thus, members of the Class would have little interest in pursuing their own separate actions.

### III.   **TERMS OF THE SETTLEMENT**

The Settlement resolves all claims of the Plaintiffs and the Class against JJCI related to the presence of benzene in the Aerosol Products, excluding claims for bodily injuries.   The details are contained in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement") (DE [82-1]).  The primary terms of the Settlement are described below.  *See generally* (Ex. 1 Settlement (DE [82-1]) at 13–67).

### A.  **The Class**

The Class is comprised of all consumers who purchased Neutrogena and/or Aveeno sunscreen products at issue in this litigation, and is defined as:

> All persons and entities in the United States who, at any time between May 26, 2015 and the Notice Date purchased one or more of the Aerosol Products or Non-Aerosol Products defined herein for personal, family, or household use and not for resale:
> Neutrogena/Aveeno Aerosol Products: Neutrogena® Beach Defense® aerosol sunscreen, Neutrogena® Cool Dry Sport aerosol sunscreen, Neutrogena® Invisible Daily™ defense aerosol sunscreen, Neutrogena® Ultra Sheer® aerosol sunscreen, and Aveeno® Protect + Refresh aerosol sunscreen.
> Neutrogena/Aveeno Non-Aerosol Products: Neutrogena® Ultra Sheer® Dry-Touch Water Resistant Sunscreen, Neutrogena® Sheer Zinc™ Dry-Touch Face Sunscreen, and Aveeno® Baby Continuous Protection® Sensitive Skin Sunscreen Lotion.

(Ex. 1 Settlement (DE [82-1]) at 22, ¶ 11).  Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of JJCI, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff.  *Id.*

### B.  Right to Opt-Out of Participation

The Settlement allows any Class Member to opt-out of the Settlement and the Class.  Any Class Member who wishes to seek exclusion from the Class has been advised of his or her right to be excluded, and of the deadline and procedures for exercising that right.  (Ex. 1 Settlement (DE [82-1]) ¶¶ 56, 76, 106).

### C.  Release

In exchange for the relief described above, and upon entry of a Final Order and Judgment approving the Settlement, the Plaintiffs and the Class will release JJCI, Costco and their related and affiliated entities (the "Released Parties," as further defined in Paragraph 34 of the Settlement) from, inter alia, all claims (excluding claims for bodily injuries) for injunctive relief or economic loss arising out of or relating to the facts, activities, or circumstances alleged in the Action (as defined in Paragraph 1 of the Settlement).  (Ex. 1 Settlement (DE [82-1]) ¶¶ 68–71.  In other words, the Settlement contemplates a release specific to the subject matter addressed in this action and does not contemplate a general release of any and all claims of any kind against JJCI.

### D.  Incentive Awards to Named Plaintiffs

The Court cannot grant Plaintiffs' request for incentive awards pursuant to the Eleventh Circuit's ruling in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). Under the Settlement, Class Counsel have reserved the right to seek reasonable Incentive Awards to named Plaintiffs Katherine Brennan, Michelle Mang, Meredith Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Heather Rudy, Fredric Salter, and Judith Barich in the amount of $250 each, for a total of $3,000, for their services as the representatives of the Class.  (Ex. 1 Settlement

(DE [82-1]) ¶ 59).  The Incentive Awards would be paid separately by JJCI from the relief being offered to the Class Members, and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs.  *Id.* at ¶ 61.

The Incentive Awards are intended to recognize the time and effort expended by the Plaintiffs on behalf of the Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer to the Class Members, as well as the exposure and risk the Plaintiffs incurred by participating and taking a leadership role in this litigation.  (Ex. 1 Settlement (DE [82-1]) ¶ 59).  The Settlement, however, is not conditioned upon any Incentive Award being approved by the Court.  (Ex. 1 Settlement (DE [82-1]) ¶ 59).

The incentive awards here are nominal and well-deserved.  In no way could they be considered payment of a "salary."  But this Court is bound by its parent court's decision in *Johnson*.  *Johnson*, 975 F.3d at 1260.

### E.  **Attorneys' Fees and Expenses**

Under the Settlement, Class Counsel have also reserved the right to petition the Court for an award of reasonable attorneys' fees of up to $2,500,000 and reimbursement of costs and expenses incurred in the prosecution of this case up to $100,000.  (Ex. 1 Settlement (DE [82-1]) ¶ 63).  The Attorneys' Fees and Expenses provision was separately and independently negotiated by the Parties apart from the class settlement provisions, in an arm's-length negotiation.  Any such Attorneys' Fees and Expenses award would be paid separately by JJCI from the relief being offered to the Class Members.  The Settlement is not conditioned upon any Attorneys' Fees and Expenses award being approved by the Court.  *Id.*

## IV.    **FINAL APPROVAL OF SETTLEMENT AGREEMENT**

The parties filed the complete Class Action Settlement Agreement (DE [82-1]), which permitted comments from class members and facilitated judicial review.  The Court, having considered the Settlement Agreement including all of its exhibits; the objections and comments received regarding the settlement; all motions and other court filings by objectors; the arguments and authorities presented by the parties and their counsel in their briefing; the arguments at the final approval hearing on August 12, 2022; and the record in this action, and good cause appearing, hereby finds the Settlement is fair reasonable and adequate, and certifies the Settlement Class.

### A. **Fairness Factors**

Before a court may finally approve a proposed settlement, it must consider the factors listed in Rule 23(e)(2) including whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  As explained below, consideration of each of these factors and the *Bennett* factors, supports a finding that the settlement is fair, reasonable, and adequate and should be approved.

The first prong of Rule 23(e)(2) directs the Court to consider whether the class representatives and class counsel have adequately represented the class.  Fed. R. Civ.

P. 23(e)(2)(A).   Traditionally, adequacy of representation has been considered in connection with class certification.   For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation."   *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007).

This Court finds that the class representatives and class counsel have adequately represented the class.   Adequacy of representation is primarily based on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class" and "whether plaintiffs have interests antagonistic to those of the rest of the class."   *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003).   Here, Class Members have responded favorably to the settlement.   Only one objection was received and only two (2) exclusions were requested.   *See* (Rabe Decl. (DE [82-2]) ¶ 15).   The Court appointed class counsel after a comprehensive appointment process and after hearing argument from counsel during the Initial Conference held January 6, 2022.   *See generally* (Order No. 8 (DE [52]) entered Dec. 15, 2021); (Order No. 10 (DE [62]) entered Jan. 10, 2022) (directing the parties, if they were unable to reach an agreement regarding lead/liaison counsel, to submit applications by January 14, 2022); (Order No. 12 (DE [64]) entered Feb. 9, 2022).   Along with counsel named in Plaintiffs' Motion to Appoint Interim Class Counsel Under Rule 23(g) and Class Counsel as Requested in the Motion for Preliminary Approval and Incorporated Memorandum of Law (DE [57]), filed December 20, 2021, the Court received two additional applications.   Class Counsel's experience in product liability class action

litigation generally and experience in false advertising litigation specifically has been brought to bear here, as they effectively worked to bring this case to a successful resolution.  The Court has observed class counsel's diligence, ability, and experience in pleadings and motion practice; in their presentation of the settlement to this Court; and in their attention to matters of notice and administration after the announcement of the settlement.  The excellent job Class Counsel have done for the class is also demonstrated in the benefits afforded by the Settlement.

With respect to the second factor under Rule 23(e)(2), this Court already found at the preliminary approval stage that the Settlement was "the result of arm's-length negotiations between experienced class action attorneys[.]"  (Order No. 14 (DE [68]) at 2); *see also* Fed. R. Civ. P. 23(e)(2)(B).  The record continues to support that finding. This Court has observed the zeal with which counsel for the parties have advanced their clients' interests in this case, their written work, and their oral advocacy at status conferences and the numerous other hearings that have been conducted.  Further, the Settlement was achieved only after a full-day mediation with, Judge Lifland, a retired federal judge and continued negotiations for several weeks thereafter to finalize the specific settlement terms.  (Grombacher Decl. (DE [82-1]) ¶¶ 11–13); *see generally Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (presence of "highly experienced mediator" pointed to "absence of collusion").  The participation of an experienced neutral mediator gives the Court strong confidence that the negotiations were conducted in an arms-length, non-collusive manner.  *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 630 (11th Cir. 2015) (objector's claim of "self-dealing" by parties to class

settlement "was belied by the record: the parties settled only after engaging in extensive arm's-length negotiations moderated by an experienced, court-appointed mediator.").

Indeed, the terms of the Settlement belie any sort of self-dealing or other conflict-of-interest concerns.  The Settlement offers all Class Members the same form of relief—a refund for Aerosol Products purchased and a voucher for Non-Aerosol Products purchased.  Additionally, Class Counsel is not seeking reimbursement of more costs than were incurred in the prosecution of the action, and the fee award sought is in line with those approved in similar settlements in this circuit.  Neither Settlement Plaintiffs nor Class Counsel are disproportionately rewarded in relation to the Settlement class itself.

The third factor the Court considers under Rule 23(e)(2) is the relief provided for the class taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

The Parties each retained third-party laboratories to test the Aerosol and Non-Aerosol Products.  Therefore, if litigation had continued there would have been a "battle of experts" with an uncertain outcome.  Damages could have also been highly contested based on the Parties' laboratory results.   In sum, continuing this action without a settlement would have involved several major litigation risks and delays, including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review.

The stage of the proceedings and the discovery completed weigh in favor of

approval.  When considering these factors, courts will look to "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1348 (S.D. Fla. 2011).  While negotiations began at an early stage, this action was settled only after JJCI had withdrawn the Aerosol Products from the market and provided relevant discovery which, in turn, permitted Class Counsel to evaluate the probability of success on the merits, the relevant defenses, the possible range of recovery, and the likely expense and duration of the litigation.  Class Counsel evaluated thousands of pages of discovery and retained and worked with experts to evaluate the merits of the claims and the relief sought.  In other words, Class Counsel had a clear view of the strengths and weaknesses of the case before agreeing to and recommending approval of the Settlement.

The fourth and final factor under Rule 23(e)(2) directs the court to consider whether class members are treated equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).  According to the advisory committee notes, this factor is closely related to the adequacy requirement of Rule 23(a).  The court expressly considers whether the settlement provides equitable "treatment of some class members vis-à-vis others," and whether the settlement apportions "relief among class members [that] takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways."  Adv. Comm. Notes 23(e)(2) (2018).

The near "unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements."  *In re Art Materials Antitrust Litig., MDL* No. 436, 100 F.R.D. 367, 372 (N.D.

Ohio 1983); *see also Lipuma v. Am/ Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). The "small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 467; *accord Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. I11. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Penn. Dept. of Corrections,* 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider."). Here, Class Members have responded favorably to the settlement. Only one objection was received and only two (2) exclusions were requested. *See* (Rabe Decl. (DE [82-2]) ¶ 15); (Obj. of Mr. Frank (DE [83]) filed July 7, 2023). Out of over 209,000 Class Members, only one objection—by Mr. Frank—was filed in opposition to the proposed Settlement. Having considered the relevant submissions, the arguments of the parties presented at the Fairness Hearing, and the applicable law, the Court finds that Mr. Frank's objection does not merit rejection of the Settlement.

Among other things, the objector's argument was that injunctive relief should not be recognized because JJCI "had to pull the product off the market without regard to any court resolution." But there is zero evidence to support this conclusory statement. JJCI did in fact pull the products after complaints generating this case had been filed, but other companies did not. This argument carries little weight. Next, when asked what would make the settlement more fair in the eyes of the objector, the response as noted in the introduction to this Order was, in effect, "a better settlement." But, as President Teddy

Roosevelt famously noted, "complaining about a problem without posing a solution is called whining."  Let's look at the facts one last time.

We know there were more than 209,000 claims filed.  Let's assume each of those individuals had gone to local attorneys seeking representation on this matter.  And let's assume that after a free consultation, each individual decided to go forward for personal and principle reasons and that each was able to afford their lawyer's $125 fee.  The Court has selected this fee example because it is the cost to hire counsel in this jurisdiction for a speeding ticket where one is traveling ten miles above the speed limit.  Most people with common sense would assume a report regarding a product with a potential carcinogen might cause more concern than a traffic infraction, but in any case, in this scenario the lawyers' collective fees would total $26,125,000 and no one would say a word.[6]  Here the fees sought are well less than 10% of that number.  The lawyers have done their work.  There is nothing at all collusive.  Claimants availed themselves of top lawyers without leaving their homes or even spending one dime.

The Settlement here offers a 100% recovery of actual damages for recalled and affected products, a recovery for non-affected products in the form of a voucher that can be used for any Neutrogena or Aveeno product (not just sunscreens), and injunctive relief, rendering it "a rare class action settlement which provides complete relief for all alleged harms."  *Begley v. Ocwen Loan Servicing, LLC*, 2017 WL 1167289, at *4 (N.D. Fla. Nov. 22, 2017).  This Settlement provides immediate, real, substantial, and practical benefits to the Class Members.  There is no "better settlement."

---

[6] The Court would note as an aside that this $26,125,000 fee example represents an amount less than what Elizabeth Holmes paid for her defense on her Theranos related criminal trial according to her Pre-Sentence Investigation Report.  And again, no one said a word because the lawyers deserved to be paid.

## B. **Requested Fees**

Pursuant to Rule 23(h), in a certified class action, the court may award reasonable attorney's fees and costs as authorized by law or by the parties' agreement:

> Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
> (2) A class member, or a party from whom payment is sought, may object to the motion.
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
> (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h). "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "It is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). As the Eleventh Circuit noted in Camden I, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Such fees also encourage efforts to seek redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature. *See e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1367; *Mashburn v. Nat'l Healthcare*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). The court has

discretion to determine an appropriate fee percentage.  *See Hensley*, 461 U.S. at 437. However, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *In re Sunbeam Securities Litig.*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

Plaintiffs seek a total of $2,500,000 for their Class Counsel as reasonable fees. Class Counsel requests the Court approve $100,000 in litigation costs and expenses that are being paid as part of the $100,000 dollars, which JJCI has agreed to pay separately. The requested amount of $2,500,000 in Attorneys' Fees and $100,000 in Expenses comports with both the Settlement Agreement and Eleventh Circuit law.  *See* (Ex. 1 Settlement (DE [82-1]) ¶ 61) ("JJCI agrees to pay the approved fee amount, up to $2,500,000 million, and costs, up to $100,000[.]").  The requested award is inclusive of not only all Class Counsel's fees, but also reimbursement of all litigation expenses (other than the cost of administration and notice, which JJCI is paying directly) as well as the value of the non-monetary/injunctive relief obtained on behalf of the Class.  *See Williams v. Reckitt Benckiser, LLC*, 2021 WL 8129371, at *39 (S.D. Fla. Dec. 15, 2021) (noting that "courts may also consider the nonmonetary relief provided to the Class as 'part of the settlement pie'" for purposes of determining counsel's fee award).

The "fundamental focus is the result actually achieved for class members."  Fed. R. Civ. P. 23(h) committee note.  Moreover, the fee and cost payment is separate from the relief due to the Class members.  The Parties negotiated and reached this cap of $2,500,000 in Attorneys' Fees and $100,000 in Expenses only after reaching agreement on all other material terms of this settlement.  *See Hensley v. Eckerhart*, 461 U.S. at 437

("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee").  Moreover, "[w]here class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately."  *In re Home Depot*, 931 F.3d 1065, 1080 (11th Cir. 2019); *see also Saccoccio v. J.P. Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("The 'common fund' analysis is appropriate even where the fee award will be paid separately by Defendants.").

In *Camden I*, the Eleventh Circuit held that in common fund settlements like this one, an attorney's fee award "shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774.  The percentage method requires a district court to consider a number of relevant factors called the *Johnson* factors in order to determine if the requested percentage is reasonable.  *See id.* at 772 & n.3, 775 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).[7]

This Court finds the requested fees of $2,500,000 will represent approximately one-third of the common fund.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) ("[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements."); *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (finding the average percentage award

---

[7]The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

in the Eleventh Circuit is "roughly one-third").  "Courts often use a cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee."  *In re Home Depot, Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019); *see also Waters*, 190 F.3d at 1298 (noting that "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  A lodestar "cross-check" supports that the fees requested here are reasonable.  Collectively, Class Counsel have submitted attorney time which shows 2,552.47 hours of work has been spent on this litigation as of the filing of the motion for fees.  Applying an hourly rate of $750 per hour, which is a rate previously approved by multi-district courts in this district and elsewhere, results in a lodestar of $1,914,352.50, and Class Counsel's work is not yet complete.  Accordingly, the lodestar cross-check supports the reasonableness of the requested fee award.  Given the risks inherent in this litigation, the efficient way in which Class Counsel was able to negotiate a nationwide resolution to this matter impacting both recalled and non-recalled sunscreen products, and the significant value of the changed business practices adopted by JJCI, such an award is appropriate.[8]

## V.      CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT[9]

As this Court previously found in granting Plaintiffs' Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (DE [55]), for purposes of settlement of this action, all requirements of Rule 23 are met.  (Order No. 14 (DE [68]) at 4) (noting "the Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.").  There was no opposition to Settlement Plaintiffs' motion for preliminary

---

[8] While the Court cannot grant Plaintiffs' request for incentive awards at this time, it shall retain jurisdiction to allow Plaintiffs to renew the request for incentive awards if *Johnson* ultimately is overruled.  *See Johnson,*975 F.3d 1244 at 1260.
[9] *See generally* (Order No. 14 (DE [68]) entered Mar. 28, 2022).

approval (DE [55]).  No new or contrary evidence or information has been brought forward to undermine that sound conclusion.  The Objection of Theodore H. Frank (DE [83]) is overruled.  Accordingly, in addition to granting final approval of settlement, the Court orders certification of the Settlement Class for purposes of effectuating the Settlement.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion and Memorandum in Support of Final Approval of Class Action Settlement (DE [82]) is **GRANTED**.  Based on the foregoing findings of facts and conclusions of law, this Court grants final approval of the class action settlement agreement and certifies a settlement class under Federal Rule of Civil Procedure 23(b)(2).

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 27th day of February 2023.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF