### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 0:21-md-03015-SINGHAL

IN RE:                                                    MDL CASE NO.: 3015

**JOHNSON & JOHNSON SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**

_____  /

**THIS DOCUMENT RELATES TO: ALL CASES**

_____  /

### THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Meredith Serota, Jacob Somers, Lauren Harper, Heather Rudy, Frederic Salter,

Judith Barich, Dina Casaliggi, Kelly Granda, Kyra Harrell, Carman Grisham, Katherine Brennan,

and Michelle Mang ("Plaintiffs"), on behalf of themselves and all others similarly situated, file

this Class Action Complaint ("CAC") against Defendant Johnson & Johnson Consumer Inc.

("Johnson & Johnson" or "Defendant"), and in support state the following:

### NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiffs, and others similarly situated, who

purchased Neutrogena Sunscreen Products manufactured, sold and distributed by Defendant.

Defendant distributes, markets and sells several over-the-counter Sunscreen Products under their

brand name "Neutrogena." Several of Defendant's Neutrogena Sunscreen Products (identified

below) have been independently tested and shown to be adulterated with unsafe and/or unwanted

levels of benzene[1], a known human carcinogen. The presence of unsafe and/or unwanted levels of

---

[1] For purposes of this Second Amended Complaint only, the phrase "unsafe level" of benzene refers to a drug product that contains benzene above 2 parts per million ("ppm"). *See* FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs, 12/27/2023, at

benzene in Defendant's Neutrogena Sunscreen Products was not disclosed in the products' label, in violation of state and federal law. Plaintiffs and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiffs are citizens of a state different from Defendant.

3.      This Court has jurisdiction over each Defendant because Defendant is authorized to conduct and do business in Florida. Defendant has marketed, promoted, distributed, and sold Neutrogena Sunscreen Protection products, including the Sunscreen Products identified below, in Florida and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a

---

https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs
("Drug manufacturers with a risk for benzene  contamination should test their drugs accordingly and should not release any drug product batch that contains benzene above 2 ppm[.] … If any drug product batches with benzene above 2 ppm are already in distribution, the manufacturer should contact FDA to discuss the voluntary initiation of a recall[.]").

substantial part of the events or omissions giving rise to Plaintiff Serota's and Somers' claims occurred while they resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## THE PARTIES

5.     Plaintiff Meredith Serota ("Serota") is a citizen and resident of Palm Beach County, Florida, and at all times relevant hereto, has been a resident of Palm Beach County. In or around March 20, 2020, Serota purchased Neutrogena Ultra Sheer® Weightless Sunscreen Spray SPF 100+ (Qty 2) and Neutrogena Ultra Sheer Face Mist SPF 55 (Qty 4) from Target, located at 3599 W. Hillsboro Blvd. Deerfield Beach, Florida 33442, in Broward County. She paid approximately $8.99 each for the Neutrogena Ultra Sheer® Weightless Sunscreen Spray SPF 100+ and $12.99 each for the Neutrogena Ultra Sheer Face Mist SPF 55. During that time, based on the false and misleading claims by Defendant, Serota was unaware that Defendant's Sunscreen Products may be adulterated with unsafe and/or unwanted levels of benzene. Serota purchased Defendant's Sunscreen Products on the assumption that the labeling of Defendant's  Sunscreen Products was accurate and that the Products were unadulterated, safe and effective. Serota would not have purchased Defendant's Sunscreen Products had she known the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Serota suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.     Plaintiff Jacob Somers ("Somers") is a citizen and resident of Escambia County, Florida, and at all times relevant hereto, has been a resident of Escambia County. Within the past four years, Somers has purchased numerous Neutrogena Sunscreen Products, including Neutrogena Beach Defense SPF 100.  During that time, based on the false and misleading claims

by Defendant, Somers was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Somers purchased the Defendant's Sunscreen Products on the assumption that the labeling of Defendant's Sunscreen Products was accurate and that the products were unadulterated, safe and effective. Somers would not have purchased Defendant's Sunscreen Products had he known that the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Somers suffered injury in fact when he spent money to purchase Products he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

7.      Plaintiff Lauren Harper ("Harper") is a citizen and resident of Denver County, Colorado, and at all times relevant hereto, has been a resident of Denver County. Harper purchased Neutrogena Beach Defense Sunscreen Spray SPF 70 from Target, located at 1985 Sheridan Blvd., Edgewater, Colorado 80214, in Jefferson County, Colorado. During that time, based on the false and misleading claims by Defendant, Harper was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Harper purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Harper would not have purchased Defendant's Sunscreen Product had she known the Product could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Harper suffered injury in fact when she spent money to purchase a Product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unsafe and/or unwanted levels of benzene, Harper has purchased the Products again and will continue to do so in the imminent future.

4

8.     Plaintiff Heather Rudy ("Rudy") is a citizen and resident of Lake County, Illinois, and at all times relevant hereto, has been a resident of Lake County. Within the past four years, Rudy has purchased numerous Neutrogena sunscreen products, including Neutrogena Beach Defense Sunscreen Spray SPF 100 and Neutrogena Beach Defense Sunscreen Spray SPF 30, from Walgreens in Gurney, Illinois and Walmart in Waukegan, Illinois. During that time, based on the false and misleading claims by Defendant, Rudy was unaware that Defendant's Sunscreen Products may be adulterated with benzene. Rudy purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Rudy would not have purchased Defendant's Sunscreen Product had she known there was a risk the Product could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Rudy suffered injury in fact when she spent money to purchase a product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unwanted levels of benzene, Rudy has purchased the Products again and will continue to do so in the imminent future.

9.     Plaintiff Fredric Salter ("Salter") is a citizen and resident of Montgomery County, Maryland, and at all times relevant hereto, has been a resident of Montgomery County. Within the past four years, Salter has purchased Neutrogena sunscreen products from Costco Wholesale in Montgomery County. During that time, based on the false and misleading claims by Defendant, Salter was unaware that Defendant's Sunscreen Products may be adulterated with benzene. Salter purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Salter

would not have purchased Defendant's Sunscreen Product had he known there was a risk the Product could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Salter suffered injury in fact when he spent money to purchase a product he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unwanted levels of benzene, Salter has purchased the Products again and will continue to do so in the imminent future.

10.     Plaintiff Judith Barich ("Barich") is a citizen and resident of Livingston County, Michigan, and at all times relevant hereto, has been a resident of Livingston County. Within the past four years, Barich has purchased numerous Neutrogena sunscreen products, including Neutrogena Beach Defense Sunscreen Spray SPF 100 and Neutrogena Beach Defense Sunscreen Spray SPF 70. Barich purchases her Neutrogena sunscreen products from either Walgreens, located at 8720 W. Grand River Rd., Brighton, Michigan 48116 or Meijer, located at 8650 Grand River Ave., Brighton, Michigan 48116. During that time, based on the false and misleading claims by Defendant, Barich was unaware that Defendant's Sunscreen Products may be adulterated with benzene. Barich purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Barich would not have purchased Defendant's Sunscreen Product had she known there was a risk the Product could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Barich suffered injury in fact when she spent money to purchase a product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

11.     Plaintiff Dina Casaliggi ("Casaliggi") is a citizen and resident of Kings County (Brooklyn Borough), New York, and at all times relevant hereto, has been a resident of Kings

County. In or around 2020, Casaliggi purchased Neutrogena Beach Defense Sunscreen Spray SPF 50 in Brooklyn, New York. During that time, based on the false and misleading claims by Defendant, Casaliggi was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Casaliggi purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Casaliggi would not have purchased Defendant's Sunscreen Product had she known the Product could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Casaliggi suffered injury in fact when she spent money to purchase a Product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unsafe and/or unwanted levels of benzene, Casaliggi has purchased the Products again and will continue to do so in the imminent future.

12.     Plaintiff Kelly Granda ("Granda") is a citizen and resident of Cuyahoga County, Ohio, and at all times relevant hereto, has been a resident of Cuyahoga County. In or around July 1, 2021, Granda purchased Neutrogena Beach Defense Sunscreen Spray SPF 50 for $13.91 from Sam's Club, located in Brooklyn, Ohio. In or around June 24, 2021, Granda purchased Neutrogena Beach Defense Sunscreen Spray SPF 30 for $12.99 and Neutrogena Wet Skin Kids Sunscreen Spray SPF 70 for $13.99 from FSAstore.com, an online retailer. During that time, based on the false and misleading claims by Defendant, Granda was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Granda purchased the Defendant's Sunscreen Products on the assumption that the labeling of Defendant's Sunscreen Products was accurate and that the Products were unadulterated, safe and effective. Granda would

not have purchased Defendant's Sunscreen Products had she known there was a risk the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Granda suffered injury in fact when she spent money to purchase a Product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.   Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unsafe and/or unwanted levels of benzene, Granda has used the Products again this past summer and will continue to do so in the imminent future.

13.     Plaintiff Kyra Harrell ("Harrell") is a citizen and resident of Columbia County, Oregon, and at all times relevant hereto, has been a resident of Columbia County. In or around March 2021, Harrell purchased Neutrogena Ultra Sheet Sunscreen Spray SPF 100+ from Walmart, located at 2295 Gable Road, St. Helens, Oregon 97051. During that time, based on the false and misleading claims by Defendant, Harrell was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Harrell purchased the Defendant's Sunscreen Product on the assumption that the labeling of Defendant's Sunscreen Product was accurate and that the Product was unadulterated, safe and effective. Harrell would not have purchased Defendant's Sunscreen Product had she known the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Harrell suffered injury in fact when she spent money to purchase a Product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unwanted levels of benzene, Harrell has purchased the Products again and will continue to do so in the imminent future.

8

14.     Plaintiff Carmen Grisham ("Grisham") is a citizen and resident of Utah County, Utah. At all times relevant hereto, has was a citizen and resident of the State of Washington. Within the past four years, within the State of Washington, Grisham purchased numerous Neutrogena Sunscreen Products, including Neutrogena Beach Defense SPF 60+ (Qty 2) and Neutrogena Beach Defense SPF 70. During that time, based on the false and misleading claims by Defendant, Grisham was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Grisham purchased Defendant's Defendant's Sunscreen Products on the assumption that the labeling of Defendant's Sunscreen Products was accurate and that the Products were unadulterated, safe and effective. Grisham would not have purchased Defendant's Sunscreen Products had he known the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Grisham suffered injury in fact when he spent money to purchase Products he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Following Defendant's recall of the Sunscreen Products in July 2021 and subsequent corrective action taken by Defendant to ensure that the Products no longer contain unwanted levels of benzene, Grisham has purchased the Products again and will continue to do so in the imminent future.

15.     Plaintiff Katherine Brennan ("Brennan") resides in Alameda, California, and at all times relevant hereto has been, a resident of the County of Alameda. In or around April 2018, Brennan purchased Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70 from Costco Wholesale in San Leandro, located in Alameda County. During that time, based on the false and misleading claims by Defendant, Brennan was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Brennan purchased Defendant's Sunscreen Products on the assumption that the labeling of Defendant's Sunscreen

Products was accurate and that the Products were unadulterated, safe and effective. Brennan would not have purchased Defendant's Sunscreen Products had she known the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Brennan suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

16.     Plaintiff Michelle Mang ("Mang") resides in Mountain View, California, and at all times relevant hereto has been, a resident of the County of Santa Clara. Mang purchased Defendants' Cool Dry Sport Water-Resistant Sunscreen Spray SPF 50, Beach Defense® Water + Sun Protection Sunscreen Spray Broad Spectrum SPF 70, and Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70 between 2017 and 2019 at Walmart, 600 Showers Dr., Mountain View, CA 94040 and Target, 555 Showers Dr., Mountain View, CA 94040. During that time, based on the false and misleading claims by Defendant, Mang was unaware that Defendant's Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Mang purchased Defendant's Sunscreen Products on the assumption that the labeling of Defendant's Sunscreen Products was accurate and that the Products were unadulterated, safe and effective. Mang would not have purchased Defendant's Sunscreen Products had she known the Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen. As a result, Mang suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

17.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its headquarters and principal place of business at Grandview Road, Skillman, New Jersey, 08558. Johnson & Johnson Consumer Inc. manufactures, markets, advertises, labels, distributes and sells the adulterated sunscreens at issue in this litigation and is the parent company of Neutrogena

Corp., a defunct company.

I.   **INTRODUCTION**

    A.   **Independent Third-Party Laboratory Testing Detected High and/or unwanted levels of Benzene in Some of Defendant's Sunscreen Products**

18.   The FDA recommends consumers use broad spectrum sunscreens with SPF values of at least 15 daily, which have been shown to reduce the risk of skin cancer and early skin aging when used with other sun protection measures.

19.   Medical authorities such as the Center for Disease Control and Prevention, the American Academy of Dermatology, and major physicians' associations endorse similar daily usage recommendations.

20.   Given this guidance, throughout the Class Period, Plaintiffs have continued to purchase sunscreen products which they viewed as necessary for promoting their health and welfare.

21.   Defendant manufactures, markets, advertises, labels, distributes, and sells a variety of Neutrogena sunscreen spray/aerosol products and lotions, including:

| 1 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion SPF 110 |
|---|---|---|---|
| 2 | Neutrogena | Lotion | Age Shield Face Sunscreen Lotion, SPF 70 |
| 3 | Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 |
| 4 | Neutrogena | Lotion | Beach Defense Water Plus Sun Protection Sunscreen Broad Spectrum Lotion SPF 70 |
| 5 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 50 |
| 6 | Neutrogena | Spray | Cooldry Sport Water-Resistant Sunscreen Spray SPF 70 |
| 7 | Neutrogena | Lotion | Healthy Defense Daily Moisturizer with Sunscreen SPF 50 |
| 8 | Neutrogena | Lotion | Hydro Boost Water Gel Lotion Sunscreen SPF 50 |

| 9 | Neutrogena | Spray | Kids Water-Resistant Sunscreen Spray Oil-Free SPF 70 |
| 10 | Neutrogena | Lotion | Oil-free Facial Moisturizer with Sunscreen SPF 15 |
| 11 | Neutrogena | Lotion | Pure & Free Baby Sunscreen Lotion - SPF 50 |
| 12 | Neutrogena | Lotion | Sensitive Skin Sunscreen Lotion With SPF 60+ |
| 13 | Neutrogena | Lotion | Sheer Zinc Dry-Touch Face Sunscreen SPF 50 |
| 14 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray |
| 15 | Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 |
| 16 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion Broad Spectrum SPF 55 |
| 17 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 30 |
| 18 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Sunscreen Lotion SPF 45 |
| 19 | Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 |
| 20 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen SPF 55 |
| 21 | Neutrogena | Spray | Ultra Sheer Face Mist Sunscreen Spray - SPF 55 |
| 22 | Neutrogena | Lotion | Ultra Sheer Liquid Sunscreen Lotion, Broad Spectrum SPF 70 |
| 23 | Neutrogena | Lotion | Ultra Sheer Sunscreen Lotion SPF 100+ |
| 24 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ |
| 25 | Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 |
| 26 | Neutrogena | Spray | Wet Skin Swim Humidity Sweat Sunscreen Broad Spectrum SPF 30 (collectively referred to as "Sunscreen Products").[2] |

22.    In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy,

---

[2] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendant that are affected by this action and Plaintiffs reserve their right to include any such products in this action.

ran tests on a variety of Defendant's Sunscreen Products. Specifically, Valisure tested numerous lots of Defendant's spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm.

23.     For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm for extended periods of time and defines "skin absorption" as an exposure route.

24.     Notably, benzene is not listed as an active or inactive ingredient on any of the labels of Neutrogena's Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

25.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendant's Sunscreen Products tested that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352).

26.     On July 14, 2021, Johnson & Johnson Consumer Inc. announced it was voluntarily recalling all lots of five Neutrogena and Aveeno aerosol sunscreen product lines because benzene was detected in samples of the recalled products. Specifically, the Sunscreen Products recalled by Johnson & Johnson include (1) Neutrogena Beach Defense sunscreen, (2) Neutrogena Cool Dry Sport sunscreen, (3) Neutrogena Invisible Daily defense sunscreen, (4) Neutrogena Ultra Sheer sunscreen, and (5) Aveeno Protect + Refresh sunscreen. [3]

---

[3]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/johnson-johnson-

27.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum.

28.     According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[4] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[5] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[6]

29.     Likewise, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[7]and classifies benzene as a "Class 1" solvent that should be "avoided."[8]  FDA's Guidance for Industry states that "Solvents in Class 1 . . . should

---

consumer-inc-issues-voluntary-recall-specific-neutrogenar-and-aveenor-aerosol.

[4] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).

[5] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

[6] *Id*. at 34.

[7]     https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

[8] https://www.fda.gov/media/71737/download.

not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[9]

30.    The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[10] The FDA regulates sunscreens, including the Sunscreen Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients.  In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays.  Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[11]

31.    Per the FDA regulations governing Defendant's Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[12] there are certain acceptable active ingredients in products that are labeled as sunscreen.[13]  Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Sunscreen Products. Nor is benzene identified as an active or inactive ingredient on any of the Neutrogena Sunscreen Products. Nevertheless, Defendant proclaims in its advertising that "Neutrogena maintains that the sunscreen ingredients we use are safe and effective . . .", which is a false and misleading statement.

32.    The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not

---

[9] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[10] *See generally* 21 CFR §§352.1– 352.77.
[11] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[12] 21 CFR §352.10.
[13] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[14] Defendant failed to meet this standard as further described below.

33.     The manufacture of any misbranded or adulterated drug is prohibited under federal law[15] and Florida state law.[16]

34.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[17]

35.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[18]

36.     Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[19]

37.     A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[20]

> (b) If the labeling does not contain, among other things, "the proportion of each

---

[14] 21 CFR §352.1

[15] 21 U.S.C. §331(g).

[16] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").

[17] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).

[18] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of such drug, device, or cosmetic, for pay or otherwise.").

[19] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid, or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health.").

[20] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.").

active ingredient[.]"[21]

(c) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[22]

38.    If a manufacturer labels a drug but omits ingredients, that renders the drug misbranded.[23]

39.    Because Defendant did not disclose that unsafe and/or unwanted levels of benzene, a known human carcinogen, could be present in the Sunscreen Products purchased by Plaintiffs and the putative class members, its Sunscreen Products are adulterated and misbranded.

40.    Defendant wrongfully advertised and sold the Neutrogena Sunscreen Products without any labeling to indicate to consumers that these Products may contain unsafe and/or unwanted levels of benzene. The following image shows an example:

---

[21] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").
[22] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.").
[23] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").



41.     Plaintiffs have standing to represent members of the putative class because there is sufficient similarity between the specific Sunscreen Products purchased by the Plaintiffs and the other Sunscreen Products not purchased by Plaintiffs. Specifically, each and every one of Defendant's Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen"— and (ii) fail to include labeling indicating to consumers that the Sunscreen Products could contain unsafe and/or unwanted levels of benzene. Accordingly, the misleading effect of all of the Sunscreen Products are substantially the same.

B.     **The Parties' Contractual Agreement**

42.     As part of the negotiated settlement, the parties entered into a contractual agreement for JJCI to undertake additional obligations in regard to the testing of its Sunscreen Products. Through confirmatory depositions and review of data and documents produced, Plaintiffs have confirmed that JJCI, in accordance with the parties' agreement:

(1) Directed its external manufacturer to purge any existing inventory of isobutane;

(2) Adopted new specifications applicable to any supplier of isobutane raw material for use in its aerosol products, that requires such raw material to contain not more than one (1) part per million (PPM) benzene;

(3) Directed its external manufacturer to require that, prior to dispatching any shipment of isobutane raw material intended for use in aerosol products, the raw material supplier test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from shipping such raw material to JJCI's external manufacturer unless the shipment has passed such test; and

(4) Required JJCI's external manufacturer to test for the presence of benzene at one (1) PPM or more in such raw material, and to refrain from use of such raw material unless it has passed such test.

(5) Engaged in finished product testing to ensure compliance with the contractual agreement.

43.     While Plaintiffs have confirmed that Defendant has fully performed the contractual agreement, Plaintiffs understand that these enhanced protocols and practices are still being implemented.

44.     Plaintiffs reserve the right to seek further injunctive relief should Defendant

terminate such efforts resulting in unsafe or unwanted and/or unwanted levels of benzene to be in the Sunscreen Products.

## CLASS ALLEGATIONS

45.     Plaintiffs bring this action on behalf of themselves and all other similarly situated class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following class against Defendant for violations of Florida state laws and/or similar laws in other states:

### Multi-State Class Action

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the United States of America and its territories (excluding California) from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

46.     In the alternative, Plaintiffs bring this action on behalf of themselves and all other similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following class:

### Florida Sub-Class

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Florida from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental

entities, and any judge, justice or judicial officer presiding over this matter.

## Colorado Sub-Class

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Colorado from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

## Illinois Sub-Class

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Illinois from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

## New York Sub-Class

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of New York from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

**Ohio Sub-Class**

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Ohio from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

**Oregon Sub-Class**

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Oregon from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

**Washington Sub-Class**

All consumers who purchased any lotion or spray Neutrogena Sunscreen Product in the State of Washington from May 25, 2017, to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Neutrogena Sunscreen Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

47.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains thousands of

purchasers of Defendant's Sunscreen Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

48.    Plaintiffs' claims are typical to those of all class members because members of the class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive sunscreen claims that accompanied each and every sunscreen product in the Neutrogena collection. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

49.    Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)    whether Defendant's Sunscreen Products contained unsafe and/or unwanted levels of benzene;

(b)    whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

(c)    whether the alleged conduct constitutes violations of the laws asserted;

(d)    whether Defendant's alleged conduct violates public policy;

(e)    whether Defendant engaged in false or misleading advertising;

(f)    whether Defendant were unjustly enriched as a result of their labeling, marketing, advertising and/or selling of the Sunscreen Products; and

(g)    whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss.

///

23

50.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

51.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiffs and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

52.     The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

53.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Sunscreen Products that may contain unsafe  and/or unwanted levels of benzene, and requiring Defendant to provide a full refund of the purchase price of the Sunscreen Products to Plaintiffs

and Class members.

54.     Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiffs and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### FIRST CAUSE OF ACTION

**Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213**

**(On Behalf of the Plaintiffs Serota and Somers and the Florida Sub-Class)**

55.     Plaintiffs Serota and Somers incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

56.     Plaintiffs Serota and Somers bring this Count individually and on behalf of the Florida Sub-Class.

57.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

58.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

59.     As alleged herein, Plaintiffs have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Sunscreen Products from Defendant in reliance on Defendant's representation that the Sunscreen Products were safe and effective and were not adulterated with unsafe and/or unwanted levels of benzene, a known human carcinogen.

25

60.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiffs and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

61.     Defendant has engaged, in conduct that is likely to deceive members of the public. This conduct includes representing in its labels that its Sunscreen Products are safe, which is untrue, and failing to make any mention that the certain Sunscreen Products could contain unsafe and/or unwanted levels of benzene, a known human carcinogen.

62.     Similarly, Defendant has engaged in deceptive, untrue, and misleading advertising by "promising" to consumers, among other things, (i) that they "carefully select ingredients,"[24] (ii) that "safety is paramount,"[25] (iii) that they "avoid unnecessary and harsh ingredients,"[26] and (iv) that "the sunscreen ingredients we use are safe and effective . . . "[27] when in fact their Sunscreen Products do contain unsafe  and/or unwanted levels of a known (but undisclosed) human carcinogen (i.e. benzene). The following image shows an example of such deceptive advertising:

---

[24] https://www.neutrogena.com/our-promise.html.
[25] https://www.neutrogena.com/our-promise.html.
[26] https://www.neutrogena.com/our-promise.html.
[27]     https://www.neutrogenamd.com/sites/neutrogenahcp_us/files/20190416-fda-proposal-guide-3b.cocoon.pdf.



Carefully Selected Ingredients

At Neutrogena®, safety is paramount. What we include in our products is just as important as what we exclude from them. We strive to avoid unnecessary and harsh ingredients and we prioritize ingredients that are not only safe for your skin, but also safe for the planet, throughout the lifecycle of our products. We are committed to ingredient transparency so you can make informed decisions for your skin health.[28]

63.     By committing the acts alleged above, Defendant has engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.[29]

64.     Defendant's conduct is substantially injurious to consumers. Consumers are

---

[28] https://www.neutrogena.com/our-promise.html.
[29] Defendant's conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

purchasing and, as instructed in the label, "apply[ing] liberally" Defendant's Sunscreen Products without knowledge that the Sunscreen Products could contain unsafe and/or unwanted levels of a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for sunscreens potentially adulterated with unsafe and/or unwanted levels of benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiffs and the putative Class have been "aggrieved" (i.e. lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

65.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's representation of the ingredients contained in its Sunscreen Products' labels and injury resulted from ordinary use of the Sunscreen Products, consumers could not have reasonably avoided such injury.

66.    Further, at the time of filing the original class action complaint in this matter, Defendant's conduct was ongoing and continuing, such that prospective injunctive relief was necessary. Absent the injunctive relief sought and obtained as a result of the contractual agreement noted above, Defendant may continue to advertise, promote and sell Sunscreen Products that deceive the public with respect to the presence of unsafe and/or unwanted levels of benzene.

67.    Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

68.    Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

69.    Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees

within the limitations set forth therein form the non-prevailing party.

70.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

71.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

72.     Defendant engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Sunscreen Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

73.     As a result of Defendant's unfair and deceptive trade practices, Plaintiff and the putative Class s are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if she prevails.

74.     Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of their Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

75.     In accordance with FDUTPA,[30] Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence

---

[30] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.

a corrective advertising campaign.

76.    Plaintiffs reserve the right to seek injunctive relief should Defendant terminate the actions it has agreed to undertake on behalf of the Class.

77.    On behalf of Plaintiffs and the putative Class, Plaintiffs also seek an order entitling them to recover all monies spent on Defendant's Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[31] In addition, the measure of restitution should be a full refund of the purchase price. But for Defendant's misrepresentations and omissions, Plaintiffs would have paid nothing for Sunscreen Products that could contain unsafe and/or unwanted levels of a known human carcinogen (i.e. benzene). and/or unwanted levels of

78.    Wherefore, Plaintiffs and members of the Class are entitled to injunctive relief as outlined in the contractual agreement referenced above, equitable relief, and a full refund in the amount they spent on the Defendant's Sunscreen Products.

## SECOND CAUSE OF ACTION

**Violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 – 115**

**(On Behalf of Plaintiff Harper and the Colorado Sub-Class)**

79.    Plaintiff Harper incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

80.    Plaintiff Harper brings this Count individually and on behalf of the Colorado Sub-Class.

81.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation

---

[31] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages . . . ."

as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e). The CCPA further prohibits "represent[ing] that goods . . . are of a particular standard, quality, or grade . . . if he knows or should know that they are of another," and "advertis[ing] goods . . . with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

82.     Defendant is a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

83.     In the course of Defendant's business, it willfully misrepresented and failed to disclose, and actively concealed, the defective nature of the Sunscreen Products as described above. Accordingly, Defendant engaged in unlawful trade practices, including representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Sunscreen Products are of a particular standard and quality when they are not; advertising the Sunscreen Products with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

84.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

85.     Defendant's conduct proximately caused injuries to Plaintiff Harper and the Colorado Class members.

86.     Plaintiff Harper and the other Class members have suffered an injury in fact, including the loss of money, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their Sunscreen Products, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability and safety of the Sunscreen Products. Defendant's representations were untrue because the Sunscreen Products

31

contained unsafe and/or unwanted levels of benzene, a known human carcinogen, which was neither labeled or otherwise disclosed. Had Plaintiff Harper and the other Class members known this, they would not have purchased the Sunscreen Products.

87.     Plaintiff Harper and the Colorado Class members were injured as a result of Defendant's conduct in that they paid for their Sunscreen Products and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's  conduct, misrepresentations and omissions.

88.     As a direct and proximate result of Defendant's violations of the CCPA, Plaintiff Harper and the Colorado Class members have suffered injury-in-fact and/or actual damage.

## THIRD CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

**815 Ill. Comp. Stat. 505/1 – 505/12**

**(On Behalf of Plaintiff Rudy and the Illinois Sub-Class)**

89.     Plaintiff Rudy incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

90.     Plaintiff Rudy brings this Count individually and on behalf of the Illinois Sub-Class.

91.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") makes unlawful:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any

> trade or commerce are hereby declared unlawful whether any person
> has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

92.     Defendant has violated and continues to violate ICFA by, among other things, (1)

misrepresenting that its Sunscreen Products were safe when in fact its Sunscreen Products are

unsafe because they contain benzene, a human carcinogen, (2) failing to disclose to consumers in

its labeling or otherwise that its Sunscreen Products contained benzene, and (3) continuing to

market, advertise and sell Sunscreen Products adulterated with benzene.

93.     Defendant knew, or through the exercise of reasonable care should have known,

that its Sunscreen Products were adulterated with benzene. Defendant's unfair conduct, as

described herein, is intentional, and Defendant intends for consumers to rely on its unfair and

misleading practices, including with respect to Defendant's decision to continue to sell

Sunscreen Products identified by Valisure as containing benzene.

94.     Defendant's unfair conduct, as described herein, occurred in the course of trade or

commerce.

95.     Defendant's conduct, as described herein, violates ICFA because it (1) offends

public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial

injury to consumers.

96.     Defendant's conduct offends the public policy of Illinois in that it violates a

standard of conduct contained in an existing statute or common law doctrine that typically

applies to such a situation. Specifically, among other things, it is unfair and misleading to

represent to consumers that a product is safe and contains the ingredients identified on the label

when in fact the product is unsafe because it contains a cancer causing chemical not identified on

the label.

97.     Defendant's conduct, as described herein, has caused and continues to cause substantial injury to consumers, including Plaintiff Rudy the members of the Illinois Sub-Class.

98.     Additionally, Defendant made deceptive statements and omissions regarding the Sunscreen Products.  Defendant represented that the Sunscreen Products were safe when they are not because they are adulterated with benzene. And, Defendant did not disclose that the Sunscreen Products contain benzene when they do.

99.     Defendant's deceptive statements and omissions are material because they concern ingredients and contaminants and safety, which are among the types of information that consumers, including Plaintiff Rudy and the members of the Illinois Sub-Class, would be expected to rely upon in making purchasing decisions.

100.    Defendant's deceptive statements and omissions have the capacity to deceive consumers, including Plaintiff Rudy and the Illinois Sub-Class, by inducing them to purchase the Sunscreen Products.

101.    Defendant's intended for consumers, including Plaintiff Rudy and the members of the Illinois Sub-Class, to rely on its deceptive statements and omissions by purchasing the Sunscreen Products.

102.    Defendant made its deceptive statements and omissions in the course of conduct involving trade or commerce.

103.    Plaintiff Rudy and the members of the Illinois Sub-Class have been injured as a direct and proximate result of Defendant's deceptive conduct in violation of ICFA. Plaintiff Rudy and the members of the Illinois Sub-Class paid for the Sunscreen Products as a result of Defendant's deceptive statements and omissions.

34

104.    Through its deceptive practices, Defendant has improperly obtained and continues to improperly obtain and retain money from Plaintiff Rudy and the members of the Illinois Sub-Class.

105.    The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers or to competition.

106.    The injury caused by Defendant's conduct could not reasonably have been avoided by consumers because they did not know and could not have known that the Sunscreen Products were adulterated with benzene, particularly given that benzene is not listed as an ingredient on the Sunscreen Products' label.

107.    Plaintiff Rudy therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff Rudy and the members of the Illinois Sub-Class may be irreparably harmed and/or denied an effective and complete remedy.

<u>**FOURTH CAUSE OF ACTION**</u>

**Violation of Maryland's Consumer Protection Act**

**Md. Code Ann., Com. Law §§ 13-101 - 501**

**(On Behalf of Plaintiff Salter and the Maryland Sub-Class)**

108.    Plaintiff Salter incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

109.    Plaintiff Salter brings this Count individually and on behalf of the Maryland Sub-Class.

110.    Plaintiff Salter, members of the Maryland Sub-Class, and Defendant are "persons" within the meaning of Md. Code Com. Law §13-101(h).

111.    The Maryland Consumer Protection Act ("MCPA") provides that a person may

not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law §13-303. Defendant participated in misleading, false, or deceptive acts that violated the MCPA.

112.    In the course of Defendant's business, Defendant concealed and suppressed material facts concerning that its Sunscreen Products contain benzene. Benzene is not identified as an ingredient on the Sunscreen Products' label.

113.    Plaintiff Salter members of the Maryland Sub-Class had no means of discerning that Defendant's representations were false and misleading until after their purchase of the Sunscreen Products

114.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

115.    In the course of Defendant's business, Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the MCPA by, among other things, marketing and advertising its Sunscreen Products as safe when they are not because they are adulterated with benzene, a human carcinogen, and failing to disclose on the Sunscreen Products' label that the Sunscreen Products contain benzene.

116.    The MCPA prohibits "(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2)Representation that: (i)Consumer goods . . . have a . . . characteristic [or] benefit . . . which they do not have; [or] (iv)  Consumer goods … are of a particular standard, quality, grade, style, or model which they are not;  (3) Failure to state a material fact if the failure deceives or tends to deceive;  (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or

omission of any material fact with the intent that a consumer rely on the same in connection with:  (i) The promotion or sale of any consumer goods[.]" Md. Code Com. Law §13- 301.

117.    Defendant misrepresented material facts that its Sunscreen Products were safe and benzene-free even when in fact they not safe because they contain benzene, a human carcinogen.

118.    Defendant knew, or in the exercise of reasonable care should have known, that its conduct violated the MCPA.

119.    Defendant's practice of advertising, marketing and labeling its Sunscreen Products as safe and not listing benzene as ingredient was material to Plaintiff Salter and the Maryland Sub-Class.

120.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Salter, about the true and unsafe nature of the Sunscreen Products they purchased.

121.    Plaintiff and the Maryland Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Maryland Sub-Class members who purchased the Sunscreen Products would not have purchased the Sunscreen Products had they known they could contain benzene.

122.    Defendant had an ongoing duty to all consumers to refrain from unfair and deceptive practices under the MCPA.

123.    Defendant's violations present a continuing risk of deception to Plaintiff Salter as well as to the general public insofar as the Sunscreen Products are still being marketed and sold throughout Maryland and the rest of the United States, including Sunscreen Products identified by Valisure as containing benzene. Thus, Defendant's unlawful acts and practices complained of

herein affect the public interest, including public health.

124. As a direct and proximate result of Defendant's violations of the MCPA, Plaintiff and the Maryland Sub-Class members suffered injury-in-fact and/or actual damage.

125. Pursuant to Md. Code Com. Law §13-408, Plaintiff and the Maryland Sub-Class seek actual damages, attorneys' fees, and any other just and proper relief available under the MCPA.

### FIFTH CAUSE OF ACTION

**Violation of Michigan's Consumer Protection Act**

**Mich. Comp. Laws §§ 445.901-922**

**(On Behalf of Plaintiff Barich and the Michigan Sub-Class)**

126. Plaintiff Barich incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

127. Plaintiff Barich brings this Count individually and on behalf of the Michigan Sub-Class.

128. Plaintiff Barich, Michigan Sub-Class members, and Defendant are "persons" within the meaning of the MCPA.

129. Defendant engaged in trade practices prohibited by the Michigan Consumer Protection Act ("MCPA"), including:

a. § 445.903(c): representing that goods or services have characteristics that they do not have;

b. § 445.903(e): representing that goods or services are of a particular standard if they are of another;

c. § 445.903(s): failing to reveal a material fact, the omission of which

tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

d. § 445.903(bb): making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

e. § 445.903(cc): failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

130.    By selling the adulterated Sunscreen Products with exclusive knowledge of the defect, and by promoting, marketing and advertising the Sunscreen Products while failing to disclose and concealing the Suncreen Products' defective nature Defendant engaged in deceptive practices that violate Michigan law.

131.    Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Sunscreen Products.

132.    Plaintiff Barich and Michigan Sub-Class members suffered ascertainable loss as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Barich and the Michigan Sub-Class members known that the Sunscreen Products contain benzene, they would not have purchased the Sunscreen Products.

133.    Accordingly, Plaintiff Barich and the Michigan Sub-Class members seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the MCPA.

## <u>SIXTH CAUSE OF ACTION</u>

**Violation of New York's General Business Law §349**

**N.Y. Gen. Bus. Law §349**

**(On Behalf of Plaintiff Casaliggi and the New York Sub-Class)**

134.    Plaintiff Casaliggi incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

135.    Plaintiff Casaliggi brings this Count individually and on behalf of the New York Sub-Class.

136.    Defendant is a "person" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

137.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

138.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

139.    In the course of business, Defendant's violated N.Y. Gen. Bus. Law § 349 by making false or misleading statements on Sunscreen Products by not disclosing that the Sunscreen Products contained unsafe and/or unwanted levels of benzene.

140.    In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff and Class members that the Sunscreen Products were safe and suitable as sunscreen. Defendant, however, concealed and suppressed material facts concerning the Sunscreen Products, including that the Sunscreen Products were unsafe and unsuitable as sunscreen and that they contained unsafe and/or unwanted levels of benzene, a human carcinogen.

141.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading because the labeling did not disclose the presence of unsafe  and/or unwanted levels of benzene, and the Class members had no reason to otherwise

suspect the Sunscreen Products contained unsafe and/or unwanted levels of benzene.

142.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Sunscreen Products were safe and suitable as sunscreen.

143.    Defendant intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding the Sunscreen Products with intent to mislead Class members.

144.    Defendant knew or should have known that their conduct violated the NY DAPA.

145.    Defendant owed the Class a duty to disclose the true and unsafe nature of the Sunscreen Products.

146.    Defendant's concealment of the true characteristics of the Sunscreen Products was material to Class members.

147.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Casaliggi and Class members, about the true nature of the Sunscreen Products.

148.    Plaintiff Casaliggi and Class members would not have purchased the Sunscreen Products had they known that the Sunscreen Products contained unsafe levels benzene, a known human carcinogen.

149.    At the time the original class action complaint was filed in this action, Defendant's violations presented a continuing risk to Plaintiff Casaliggi and the New York State Class as well as to the general public. Moreover, Defendant's unlawful acts and practices complained of herein affect the public interest.

150.    Plaintiff Casaliggi and Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under the NY DAPA. Plaintiff Casaliggi and all Class members suffered ascertainable loss because of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

151.    As a direct and proximate result of Defendant's violations of the NY DAPA, Plaintiff Casaliggi and Class members have suffered injury-in-fact and/or actual damage.

152.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Plaintiff Casaliggi and Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

## SEVENTH CAUSE OF ACTION

**Violation of New York's General Business Law**

**N.Y. Gen. Bus. Law §350**

**(On Behalf of Plaintiff Casaliggi and the New York Sub-Class)**

153.    Plaintiff Casaliggi incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

154.    Plaintiff Casaliggi brings this Count individually and on behalf of the New York Sub-Class.

155.    Defendant was engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA").

156.     The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350-a.

157.     Defendant caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendant, or that through the exercise of reasonable care should have been known by Defendant, to be untrue and misleading.

158.     Defendant made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive concerning the Sunscreen Products, particularly concerning their unsafe nature. Specifically, Defendant intentionally concealed and suppressed material facts concerning the Sunscreen Products, namely, that they were unsafe and unsuitable as sunscreen because they contained unsafe and/or unwanted levels of the known human carcinogen benzene.  Defendant intentionally and grossly defrauded and misled Class members concerning the true and unsafe nature of the Sunscreen Products.

159.     The misrepresentations and omissions regarding the Sunscreen Products set forth herein were material and likely to deceive a reasonable consumer.

160.     Defendant intentionally and knowingly misrepresented material facts regarding the Sunscreen Products with intent to mislead Plaintiffs Casaliggi and Class members.

161.     Defendant's false advertising was likely to and did in fact deceive reasonable consumers, including Class members, about the true characteristics of the Sunscreen Products, and the quality of Defendant's Sunscreen Products.

162.    Plaintiff Casaliggi and Class members would not have purchased the Sunscreen Products had they known that the products contained unsafe and/or unwanted levels of benzene.

163.    At the time of filing the original class action complaint, Defendant's violations of the NY FAA presented a continuing risk to Class members and to the general public. And Defendant's deceptive acts and practices affected the public interest.

164.    Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's false advertising in violation of the NY FAA.

165.    The Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Class member. Because Defendant's conduct was committed willingly and knowingly, Class members are entitled to recover three times actual damages, up to $10,000.

166.    The Class also seeks an order enjoining Defendant's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

## EIGHTH CAUSE OF ACTION

### Violation of Ohio's Consumer Sales Practices Act

### Ohio Rev. Code §§ 1345.01 - 13

### (On Behalf of Plaintiff Granda and the Ohio Sub-Class)

167.    Plaintiff Granda incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

168.    Plaintiff Granda brings this Count individually and on behalf of the Ohio Sub-Class.

169.    Plaintiff Granda, the Ohio Class members, and Defendant are persons within the meaning of Ohio Rev. Code § 1345.01(B). Defendants are suppliers as defined by Ohio Rev. Code

§ 1345.01(C).

170.    Plaintiff Granda and the Ohio Class member are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchases of the Sunscreen Products are "consumer transactions" within the meaning of Ohio Rev. Code § 2345.01(A).

171.    Ohio Rev. Code 1345.02 (the "Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. The Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

172.    In the course of its business, Defendant concealed and suppressed material facts concerning the Sunscreen Products. Defendant misrepresented that the Sunscreen Products were safe and suitable as sunscreen when in fact they were unsafe and unsuitable as sunscreen because they contained unsafe and/or unwanted levels of the known human carcinogen benzene. Defendant also misrepresented through its labeling that its Sunscreen Products were safe and suitable as sunscreen and/or unwanted levels of when in fact its Sunscreen Products are not safe or suitable as sunscreen because they contained unsafe and/or unwanted levels of benzene.

173.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Sunscreen Products.

174.    Defendant knew, or through the exercise of reasonable care should have known, that its Sunscreen Products contained unsafe and/or unwanted levels of benzene at the time of sale.

Defendant acquired additional information concerning the Sunscreen Products' adulterated nature after its Sunscreen Products were sold by virtue of Valisure's publishing its findings in May 2021.

175.    Defendant owed Plaintiff Granda and the Ohio Class a duty to disclose the true nature of the Sunscreen Products because Defendant: (a) possessed exclusive knowledge about the adulteration; (b) intentionally concealed the adulteration from Plaintiff Granda and the Ohio Class; and (c) made incomplete representations about the Sunscreen Products' safety and suitability as sunscreen, while purposefully withholding material facts from Plaintiff Granda and the Ohio Class that contradicted these representations.

176.    Defendant thus violated the Ohio CSPA by, at a minimum: 1) representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not; (3) advertising the Sunscreen Products with the intent not to sell them as advertised; (4) failing to disclose information concerning the Sunscreen Products with the intent to induce consumers to purchase the Sunscreen Products; and (5) otherwise engaging in conduct likely to deceive.

177.    Defendant intentionally and knowingly misrepresented material facts regarding the Sunscreen Products with the intent to mislead Plaintiff Granda, and the Ohio Class members.

178.    Defendant knew or should have known that its conduct violated the Ohio CSPA.

179.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Granda, and the Ohio Class.

180.    Plaintiff Granda and the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Granda, and the Ohio Class members who

purchased the Sunscreen Products would not have purchased them had they known the Sunscreen Products were contaminated with unsafe and/or unwanted levels of benzene.

181.    Defendant had an ongoing duty to Plaintiff Granda and the Ohio Class to refrain from unfair and deceptive practices under the Ohio CSPA.

182.    Defendant's Pursuant to Ohio Rev. Code § 1345.09, Plaintiff Granda, and the Ohio Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, actual damages, and any attorneys' fees, costs, and any other just and proper relief, to the extent available under the Ohio CSPA.

## NINTH CAUSE OF ACTION

### Violation of Ohio's Deceptive Trade Practices Act

### Ohio Rev. Code §§ 4165 et seq.

### (On Behalf of Plaintiff Granda and the Ohio Sub-Class)

183.    Plaintiff Granda incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

184.    Plaintiff Granda brings this Count individually and on behalf of the Ohio Sub-Class.

185.    Defendant, Plaintiff Granada, and the Ohio Class members are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

186.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following:

> (1) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; ...

(2) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; ...

(3) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; ... [or]

(4) Advertises goods or services with intent not to sell them as advertised.

187.    In the course of its business, Defendant, concealed and suppressed material facts concerning the Sunscreen Products, and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Sunscreen Products.

188.    Defendant knew, through the exercise of reasonable care should have known, that its Sunscreen Products contained unsafe and/or unwanted levels of benzene at the time of sale. Defendant acquired additional information concerning the Sunscreen Products' adulterated nature after its Sunscreen Products were sold by virtue of Valisure's publishing its findings in May 2021.

189.    Defendant owed Plaintiff Granda and the Ohio Class a duty to disclose the true nature of the Sunscreen Products because Defendant: (a) possessed exclusive knowledge about the adulteration; (b) intentionally concealed the adulteration from Plaintiff Granda and the Ohio Class; and (c) made incomplete representations about the Sunscreen Products' safety and suitability as

sunscreen, while purposefully withholding material facts from Plaintiff Granda and the Ohio Class that contradicted these representations.

190.    Defendant thus violated the Ohio DTPA by, at a minimum: (1) representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not; (3) advertising the Sunscreen Products with the intent not to sell them as advertised; (4) failing to disclose information concerning the Sunscreen Products with the intent to induce consumers to purchase the Sunscreen Products.

191.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Granda, and the Ohio Class members.

192.    Plaintiff Granda, and the Ohio Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Granda, and the Ohio Class members who purchased the Sunscreen Products, would not have purchased them had they known the Sunscreen Products were contaminated with unsafe and/or unwanted levels of benzene.

193.    Defendant had an ongoing duty to Plaintiff Granda and the Ohio Class to refrain from unfair and deceptive practices under the Ohio DTPA.

194.    At the time of filing the original class action complaint in this action, Defendant's violations presented a continuing risk to Plaintiff Granda, the Ohio Class, and the general public. And Defendant's unlawful acts and practices complained of herein affect the public interest.

195.    Pursuant to Ohio Rev. Code § 4165.03, Plaintiff Granda, and the Ohio Class, seek an order enjoining Defendant's unfair and/or deceptive acts or practices, actual damages, punitive

damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

## TENTH CAUSE OF ACTION

### Violation of Oregon's Unlawful Trade Practices Act

### Or. Rev. Stat. §§ 646.605-656

### (On Behalf of Plaintiff Harrell and the Oregon Sub-Class)

196.    Plaintiff Harrell incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

197.    Plaintiff Harrell brings this Count individually and on behalf of the Oregon Sub-Class.

198.    Defendant, Plaintiff Harrell, and the Oregon Class members are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

199.    Defendant is engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. §646.605(8).

200.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce…." Or. Rev. Stat. § 646.608(1).

201.    In the course of its business, Defendant concealed and suppressed material facts concerning the Sunscreen Products.  Defendant (1) misrepresented that the Sunscreen Products were safe and suitable as sunscreen when in fact they were unsafe and unsuitable as sunscreen because they contained unsafe and/or unwanted levels of the known human carcinogen benzene; (2) misrepresented through its labeling that its Sunscreen Products did not contain unsafe and/or unwanted levels of benzene when in fact its Sunscreen Products did contain unsafe  and/or unwanted levels of benzene; (3) and otherwise engaged in activities with a tendency or capacity to

deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Sunscreen Products.

202.    Defendant knew, or through the exercise of reasonable care should have known, about the Sunscreen Products' adulterated nature at the time of sale. Defendant acquired additional information concerning the Sunscreen Products' adulterated nature after its Sunscreen Products were sold by virtue of Valisure's publishing its findings in May 2021.

203.    Defendant owed Plaintiff Harrell and the Oregon Class a duty to disclose the true nature of the Sunscreen Products because Defendant: (a) possessed exclusive knowledge about the defect; (b) intentionally concealed the foregoing from Plaintiff Harrell and the Oregon Class; and (c) made incomplete representations about the Sunscreen Products' safety and ingredients, while purposefully withholding material facts from Plaintiff Harrell and the Oregon Class that contradicted these representations.

204.    Defendant thus violated the Oregon UTPA by, at a minimum: (1) representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not; (3) advertising the Sunscreen Products with the intent not to sell them as advertised; and (4) failing to disclose information concerning the Sunscreen Products with the intent to induce consumers to purchase the Sunscreen Products

205.    Defendant intentionally and knowingly misrepresented material facts regarding the Sunscreen Products with the intent to mislead Plaintiff Harrell and the Oregon Class members.

206.    Defendant knew or should have known that its conduct violated the Oregon UTPA.

207.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Harrell and the Oregon Class members.

208.    Plaintiff Harrell and the Oregon Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Harrell and the Oregon Class members who purchased the Sunscreen Products would not have purchased them had they known they were adulterated with unsafe and/or unwanted levels of benzene.

209.    Defendant had an ongoing duty to Plaintiff Harrell and the Oregon Class to refrain from unfair and deceptive practices under the Oregon UTPA.

210.    At the time of the filing of the original class action complaint, Defendant's violations presented a continuing risk to Plaintiff Harrell, the Oregon Class, and the general public. And Defendant's unlawful acts and practices complained of herein affect the public interest.

211.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiff Harrell and the Oregon Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, actual damages or $200, whichever is greater, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

**ELEVENTH CAUSE OF ACTION**

**Violation of Washington's Consumer Protection Act**

**Wash. Rev. Code. Ann. §§19.86.010-920**

**(On Behalf of Plaintiff Grisham and the Washington Sub-Class)**

212.    Plaintiff Grisham incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

213.    Plaintiff Grisham brings this Count individually and on behalf of the Washington

Sub-Class.

214.    Defendant, Plaintiff Grisham and the Washington Sub-Class are "persons" within the meaning of Wash. Rev. Code §19.86.010(2).

215.    Defendant is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code §19.86.010(2).

216.    The Washington Consumer Protection Act ("WCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code §19.86.020.

217.    Over the course of Defendant's business, Defendant intentionally or negligently concealed and suppressed material facts about its Sunscreen Products, namely, that its Sunscreen Products were adulterated with unsafe  and/or unwanted levels of benzene. Defendant knew, or through the exercise of reasonable care should have known, that it was deceptively advertising the Sunscreen Products. In failing to disclose its deceptive practices, Defendant knowingly, intentionally, and/or negligently concealed material facts about the Sunscreen Products and breached its duty not to do so.

218.    Defendant thus violated the WCPA, at a minimum, by: (i) making direct statements or causing reasonable inferences about the Sunscreen Products that had the tendency to mislead consumers; (ii) engaging in advertising concerning the Sunscreen Products which had the tendency to mislead consumers; and (iii) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, exclusions or restrictions of the Sunscreen Products by failing to disclose that its Sunscreen Products were adulterated with unsafe and/or unwanted levels of benzene.

219.    At the time of filing the original class action complaint, Defendant, therefore,

intentionally and knowingly misrepresented and continued to misrepresent material facts regarding the Sunscreen Products with intent to mislead Plaintiff Grisham and the Washington Sub-Class.

220.    The acts and omissions of Defendant constitute unfair methods of competition and/or unfair or deceptive acts or practices which directly or indirectly affect the people of the State of Washington and which have injured Plaintiff Grisham and the members of the Class in their business or property and which was the cause of said injury.

221.    Defendant knew or should have known that its conduct violated WCPA.

222.    Defendant was under a duty to Plaintiff Grisham and the Washington Sub-Class to disclose its deceptive advertising practices because Defendant was in a superior position to know the true facts about its representations of the Sunscreen Products and Defendant failed to disclose the deceptive nature of the labeling to Plaintiff Grisham and the Washington Sub-Class.

223.    Defendant's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff Grisham and the Washington Sub-Class, about the true unsafe nature of the Sunscreen Products.

224.    Plaintiff Grisham and the Washington Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's  misrepresentations and its concealment of and failure to disclose material information about the Sunscreen Products.

225.    As a direct, substantial and/or proximate result of these violations, Plaintiff Grisham and the members of the Class suffered injury to business or property. Specifically, Plaintiff Grisham and the members of the Class paid money for Sunscreen Products they otherwise would not have purchased had they known that they were adulterated with unsafe  and/or unwanted levels of benzene.

226.    The acts and/or omissions of Defendant are injurious to the public interest because

these acts and/or omissions: violate a statute that incorporates RCW Chapter 19.86, violate a statute that contains a specific legislative declaration of public interest impact, injures other persons, and/or had or has the capacity to injure other persons.

227.   The unlawful acts and omissions pled herein were committed in the course of Defendant's business. At the time of filing the original class action complaint in this action, the unlawful acts and omissions pled herein were part of a pattern or generalized course of conduct. The unlawful acts and omissions pled herein were repeatedly committed prior to the acts involving Plaintiff Grisham and have continued. Absent the injunctive relief obtained on behalf of the Class under the contractual agreement, there is a real and substantial potential for repetition of Defendant's unlawful conduct Sunscreen Products Indeed, this Second Amended Complaint is not based upon a single transaction. The acts and omissions of Defendant pled herein were not reasonable in relation to the development and preservation of Defendant's business.

228.   The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Grisham, the members of the Class and the general public will be irreparably harmed absent the entry of an order granting the injunctive relief obtained against Defendant under the contractual agreement. Plaintiff Grisham, the members of the Class and the general public lack an adequate remedy at law. An injunction against Defendant is in the public interest. At the time of filing the original class action complaint in this action, Defendant's unlawful behavior was ongoing; absent the entry of the injunction obtained on behalf of the Class under the contractual agreement, Defendant's unlawful behavior is likely to reoccur.

229.   Pursuant to Wash. Rev. Code §19.86.090, Plaintiff Grisham and the Washington Sub-Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, actual damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief

available under the WCPA. Because Defendant's actions were willful and knowing, actual damages should be trebled.

**TWELFTH CAUSE OF ACTION**

**Violations of the Unfair Competition Law (the "UCL")**

**Cal. Bus. & Prof. Code § 17200, *Et Seq.***

**(On Behalf of Plaintiffs Brennan and Mang and the California Sub-Class)**

230.     Plaintiffs Brennan and Mang incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

231.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…." Cal. Bus. & Prof. Code § 17200.

*Fraudulent Acts and Practices*

232.     Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the UCL.

233.     Defendant has engaged in conduct that is likely to deceive members of the public. This conduct includes failing to make any mention that the Sunscreen Products are adulterated with benzene, a known human carcinogen.

234.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

*Unlawful Acts and Practices*

235.     The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.

236.    Defendant's conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

237.    Defendant's conduct also violates Cal. Health & Safety Code § 111730, which prohibits the sale of any misbranded product. The Sunscreen Products are "false and misleading in any particular" in that the Products' labeling does not warn consumers that the Products contain benzene, a known human carcinogen, in violation of Health & Safety Code § 111730.

238.    By violating the FTC Act and/or Cal. Health and Safety Code § 111730, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

*Unfair Acts and Practices*

239.     Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

240.    Defendant has engaged in unfair business practices. This conduct includes representing that the Sunscreen Products do not contain benzene when in fact they do contain benzene.

241.    Defendant has engaged in conduct that violates the legislatively declared policies of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. Defendant gained an unfair advantage over its competitors, whose advertising for products must comply with the FTC Act.

242.    Defendant's conduct, including misrepresenting the safety and efficacy of the Sunscreen Products, is substantially injurious to consumers. Consumers are purchasing and, as

instructed in the label, "apply[ing] liberally" sunscreen products without knowledge that there is a risk the Sunscreen Products are adulterated with a human carcinogen. Moreover, such conduct has caused substantial injury to consumers because consumers would not have paid for sunscreens adulterated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiffs Brennan and Mang and the putative Class have "lost money or property" as required for UCL standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

243.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's representation of the ingredients contained in the Sunscreen Products' labels and injury resulted from ordinary use of the contaminated products, consumers could not have reasonably avoided such injury.

244.    By committing the acts described above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

245.    As a result of the conduct described above, Defendant has been unjustly enriched at the expense of the Plaintiffs Brennan and Mang and the putative Class.

246.    An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code 17203.

247.    Wherefore, Plaintiffs Brennan and Mang pray for judgement against Defendant, as set forth hereafter. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

248.     In accordance with California Business & Professions Code section 17203,[32] Plaintiffs Brennan and Mang seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices.

249.      On behalf of Plaintiffs Brennan and Mang and the putative Class, Plaintiffs also seeks an order for the restitution of all monies spent on the Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[33]

### THIRTEENTH CAUSE OF ACTION

**Violations of California's False Advertising Law**

**California Business & Professions Code §§17500, *Et. Seq.*,**

**(On Behalf of Plaintiffs Brennan and Mang and the California Sub-Class)**

250.     Plaintiffs Brennan and Mang incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

251.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

252.     Defendant's advertising claims that their Sunscreen Products are safe are untrue or misleading because these claims fail to disclose that the Sunscreen Products are in fact adulterated with benzene, a known human carcinogen.

254.     Defendant knew, or reasonably should have known, that its claims were untrue or

---

[32] "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

[33] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.
"The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

misleading.

255.    Absent injunctive relief, Defendant may continue to advertise, promote and sell adulterated Sunscreen Products that deceive the public as to their safety. Plaintiffs are thus likely to again be wronged in a similar way, especially given Plaintiffs Brennan's and Mang's desire to purchase Defendant's Sunscreen Products in the future if they can be assured that the Sunscreen Products are unadulterated and meet the advertising claims. For instance, if Plaintiffs encounter Defendant's Sunscreen Products in the future and there is risk those products still contain benzene, Plaintiffs may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

256.    Plaintiffs Brennan and Mang and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Sunscreen Product(s).

## FOURTEENTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Multi-State Class and All State Classes)

257.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

258.    As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiffs and members of the Class when they purchased the Sunscreen Products.

259.    In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

260.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has

been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

261.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

262.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from the false and deceptive labeling and marketing of the Sunscreen Products to Plaintiffs and members of the Class.

263.    Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

264.    The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class.

265.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.

266.    Finally, Plaintiffs and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.[34]

## FIFTEENTH CAUSE OF ACTION

### Negligent Misrepresentation/Omission

---

[34] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

**(On Behalf of the Multi-State Class and All State Classes)**

267.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

268.    Through its labeling and advertising, Defendant made representations to the Plaintiff and the Class members concerning the safety of its Sunscreen Products.

269.    Defendant had a duty to provide accurate information to consumers with respect to the safety of its Sunscreen Products as detailed above.

270.    Defendant failed to fulfill its duty to accurately disclose in its labeling and advertising that the Sunscreen Products contained unsafe and/or unwanted levels of benzene.

271.    Additionally, Defendant had a duty to not make false representations with respect to its Sunscreen Products.

272.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Sunscreen Products as detailed above.

273.    Such failures to disclose on the part of Defendant amounts to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

274.    Plaintiffs and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

275.    By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

## <u>SIXTEENTH CAUSE OF ACTION</u>

**Breach of Express Warranty**

**(On Behalf of the Multi-State Class and All State Classes)**

276.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

277.     As detailed above, Defendant, through its written literature, packaging and labeling, and written and media advertisement, expressly warranted that the Sunscreen Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

278.     Moreover, the Sunscreen Products' labeling (specifically in the "Sun *Protection* Measures")[35] represents that the regular use of broad spectrum sunscreen is "protective" and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health risk. Defendant breached this express warranty because its  Sunscreen Products are not safe. To the contrary, the Sunscreen Products pose a dangerous health risk because they contain unsafe and/or unwanted levels of benzene—a chemical that actually *increases* the risk of cancer when exposure occurs either through inhalation or skin absorption.

279.     Plaintiffs and the Class read and relied on these express warranties provided by Defendant in the packaging and written advertisements.

280.     Defendant breached its express warranties because the Sunscreen Products are defective and not reasonably safe for their intended use.

281.     Defendant knew or should have known that the Sunscreen Products did not conform to their express warranties and representations and that, in fact, the Sunscreen Products are not

---

[35] Specifically, the "Directions" section of Neutrogena's Beach Defense Sunscreen Product SPF 70 states: "**Sun Protection Measures**: Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher . . . ."

safe and pose serious health risks because they contain unsafe and/or unwanted levels of benzene.

282.    Plaintiffs and the Class have suffered harm on account of Defendant's breach of their express warranty regarding the fitness for use and safety of the Sunscreen Products and are entitled to damages to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

### Breach of Implied Warranty

### (On Behalf of the Multi-State Class and All State Classes)

283.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

284.    Because the Sunscreen Products contained unsafe and/or unwanted levels of benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Sunscreen Products are used.

285.    Plaintiffs and members of the Class purchased the Sunscreen Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

286.    The Sunscreen Products were not altered by Plaintiffs or members of the Class.

287.    Plaintiffs and members of the Class were foreseeable users of the Sunscreen Products.

288.    Plaintiffs and members of the Class used the Sunscreen Products in the manner intended.

289.    As alleged, the Sunscreen Products were not adequately labeled and did not disclose that they contain unsafe and/or unwanted levels of benzene.

290.    The Sunscreen Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendant.

291.    Defendant impliedly warranted that the Sunscreen Products were merchantable, fit and safe for ordinary use.

292.    Defendant further impliedly warranted that the Sunscreen Products were fit for the particular purposes for which they were intended and sold.

293.    Contrary to these implied warranties, the Sunscreen Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

294.    By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

**EIGHTEENTH CAUSE OF ACTION**

**Strict Product Liability – Failure to Warn**

**(On Behalf of the Multi-State Class and All State Classes)**

295.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

296.    Defendant knew or should have known that its Sunscreen Products contained unsafe and/or unwanted levels of benzene, which is a known carcinogen.

297.    Defendant had a duty to warn Plaintiffs and the Class about the presence of unsafe and/or unwanted levels of benzene in its Sunscreen Products.

298.     In addition, Defendant had a duty to warn Plaintiffs and the Class about the dangers of the presence of unsafe and/or unwanted levels of benzene in its Sunscreen Products.

299.    Defendant knew that the risk of exposure to unsafe and/or unwanted levels of benzene from use of its products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for benzene content.

300.    Defendant did not warn Plaintiffs and the Class that the Sunscreen Products contained unsafe and/or unwanted levels of benzene or about the dangers of the presence of unsafe and/or unwanted levels of benzene in its Sunscreen Products.

301.    Plaintiffs and the Class have suffered damages by purchasing Sunscreen Products in a manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant, because benzene is a known carcinogen that is absorbed through inhalation and through the skin. Plaintiffs and the members of the Class would not have purchased Defendant's Sunscreen Products had they known they contained unsafe and/or unwanted levels of benzene.

302.    Plaintiffs and the Class were justified in their reliance on Defendant's labeling and advertising of the product for use as sunscreen.

303.    Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## NINETEENTH CAUSE OF ACTION

### Strict Product Liability – Manufacturing Defect

### (On Behalf of the Multi-State Class and All State Classes)

304.    Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

305.    The Sunscreen Products contained a manufacturing defect when they left the possession of Defendant. Specifically, the Sunscreen Products differ from Defendant's intended result or from other lots of the same product line because they contain unsafe and/or unwanted levels of benzene.

306.    Plaintiffs used the Sunscreen Products in a way that was reasonably foreseeable to Defendant.

307.    As a result of the defects in the manufacture of the Sunscreen Products, Plaintiffs

and the Class suffered damages. Accordingly, Plaintiffs and members of the Class suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

a)  An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of Class notice;

b)  An order adopting the injunctive relief obtained on behalf of the Class under the contractual agreement with respect to the injunctive relief requested to enjoin Defendant from continuing the unlawful practices alleged herein;

c)  An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA, plus pre- and post-judgment interest thereon;

d)  An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiffs and members of the Class as a result of any wrongful or unlawful act or practice;

e)  An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

f)  An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

g)  An order providing for all other such equitable relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


DATED: June 3, 2025


By: /s/ *R. Jason Richards*
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLLC**
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com
*Attorneys for Plaintiff*

68