UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 0:21-md-03015-SINGHAL/Valle

IN RE:  MDL CASE NO.: 3015

**JOHNSON & JOHNSON SUNSCREEN**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**
_____/

**THIS DOCUMENT RELATES TO: ALL CASES**
_____/

**PLAINTIFFS' REPLY TO OBJECTOR 'S RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. THE SETTLEMENT COMPLIES WITH ELEVENTH CIRCUIT LAW FOR APPROVAL . 1

III. THE FEE AWARD IS APPROPRIATE AS GOVERNED BY STATUTE ............................... 3

IV. THE CLASS REPRESENTATIVES HAVE ARTICLE III STANDING AND MEET THE REQUIREMENTS OF RULE 23 ................................................................................................. 4

V. RESPONSE TO OBJECTOR'S VOUCHER VALUATION ARGUMENTS .......................... 7

VI. RESPONSE TO OBJECTOR'S REFUND VALUATION ARGUMENTS ............................. 9

VII. CONCLUSION.................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) .................................................................................................... 6

*Boggs v. Divested Atomic Corp.*
  141 F.R.D. 58 (S.D. Ohio 1991) ................................................................................. 5

*Briseno v. Henderson*
  988 F.3d 1014 (9th Cir. 2021) ..................................................................................... 2

*Cordoba v. DIRECTV, LLC*
  942 F.3d 1259 (11th Cir. 2019) ................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*
  528 U.S. 167 (2000) .................................................................................................... 7

*Gulf Oil Co. v. Bernard*
  452 U.S. 89 (1981) ...................................................................................................... 1

*In re Asbestos School Litig.*
  104 F.R.D. 422 (E.D. Pa. 1984) .................................................................................. 6

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litigation*
  952 F.3d 471 (4th Cir. 2020) .................................................................................. 7, 8

*Koby v. ARS Nat'l Servs.*
  846 F.3d 1071 (9th Cir. 2017) ................................................................................... 10

*Linneman v. Vita-Mix Corp.*
  970 F.3d 621 (6th Cir. 2020) ....................................................................................... 3

*McBride v. Legacy Components, LLC*
  778 Fed.Appx. 708 (11th Cir. 2019) ......................................................................... 10

*McKinney-Drobnis v. Oreshack*
  16 F.4th 594 (9th Cir. 2021) ....................................................................................... 8

*Nuwer v. FCA US LLC*
  343 F.R.D. 638 (S.D. Fla. 2023) ................................................................................. 5

*Parole Comm. v. Geraghty*
  445 U.S. 388 (1980) .................................................................................................. 7

*Pearson v. NBTY, Inc.*
  772 F.3d 778 (7th Cir. 2014) .................................................................................... 2

*Pinto v. Princess Cruise Lines, Ltd.*
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..................................................................... 3

*Poertner v. Gillette Co.*
  618 Fed.Appx. 624 (11th Cir. 2015) ......................................................................... 9

*Ponzio v. Pinon*
  87 F.4th 487 (11th Cir. 2023) .................................................................................... 1

*Reynolds v. Beneficial Nat'l Bank*
  288 F.3d 277 (7th Cir. 2002) .................................................................................. 10

*Ruehling v. Armstrong*
  2014 WL 12617962 (M.D. Fla. Nov. 3, 2014) ......................................................... 7

*Sullivan v. DB Investments, Inc.*
  667 F.3d 273 (3d Cir. 2011) ...................................................................................... 6

*Williams v. Reckitt-Benckiser*
  65 F.4th 1243 (11th Cir. 2023) ......................................................................... 4, 5, 6

**Statutes**

28 U.S.C. § 1712 ............................................................................................................. 3

28 U.S.C. § 1712 (b)(2) ............................................................................................... 3, 4

28 U.S.C. § 1712(b)(1) .................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 1, 4

I.  **INTRODUCTION**

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). As demonstrated in exemplary fashion by this litigation, the class device provides a mechanism whereby alleged injured consumers can receive redress quickly and efficiently in a manner benefiting not only the parties but the Court system as well. No person has come before this Court disputing that the relief provided to the class members by this settlement is fair, reasonable or adequate. Indeed, they cannot, as the class received absolutely everything (arguably more) than it was entitled to under the law. At base, the sole objection before this Court is whether the amount of fees sought by Class Counsel (here, roughly the amount of Counsel's billed lodestar) requires denial of the settlement. It does not. The language of CAFA clearly sets forth the way the fees should be calculated and reviewed, and Plaintiffs have complied with those provisions. The kitchen sink objection filed by Mr. Frank ("Objector") attacks the settlement as if it were a common fund, attempting to devalue and dismember the settlement benefits to distort the fee award. Properly applying CAFA, the relevant case law in this Circuit, and reviewing the full record before the Court, it is clear that the relief for the class was not only fair, but complete, and the litigation, settlement and other work by Class Counsel justifies the fee sought.

II.  **THE SETTLEMENT COMPLIES WITH ELEVENTH CIRCUIT LAW FOR APPROVAL**

Prior to the 2018 amendment to Rule 23(e)(2), the Eleventh Circuit applied the *Bennett* factors.[1] *Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023). Since the 2018 amendment, the Eleventh Circuit has made clear that the *Bennett* factors are not to be displaced but rather complementary to the new concerns of "procedure and substance that should guide the decision

---

[1] Bennett factors are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Ponzio*, 87 F.4th at 494.

whether to approve the proposal." *Id.* This Court has had the opportunity to review the proposed settlement previously considering the amended Rule 23 factors. The same findings should be made again since the benefits to the class have not changed.

Neither *Briseno* nor *Pearson*, which Objector relies on, are remotely on point. *Pearson* noted that "only one-fourth of one percent of [the] fraud victims will receive even modest compensation." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). *Briseno* involved ConAgra's use of the words "100 Natural" on its Wesson oil product. In that settlement, ConAgra had stopped marketing with "100 Natural" years before the settlement "for reasons unrelated to this or any other litigation" and the injunctive relief requiring ConAgra to continue to not use those words was meaningless because ConAgra had sold Wesson to another company. *Briseno v. Henderson*, 988 F.3d 1014, 1028 (9th Cir. 2021).[2] Both of these out of circuit cases stand in stark contrast to the settlement here, where the class received the benefit of full refunds (totaling $9.5 million), vouchers that would cover the full value of a JJCI product, and meaningful injunctive relief that required JJCI to change its practices and provide sunscreen with far less benzene than allowed by the FDA.[3] It is likely for that reason that the "crux" of Objector's objection, is not the relief achieved, but the attorney's fees at issue. The record in this case is clear that the attorneys' fees were not only negotiated at arms-length, but they were negotiated entirely after the settlement had been negotiated for the class. There was no collusion and importantly, this is not a common fund and attorneys' fees cannot pour over to the class as Objector suggests. To do so would create a structure where class members were entitled to more monetary relief than they paid for the products at issue, and could create an ethically prohibited fee sharing agreement with counsel.

---

[2] In *Briseno,* the Court did not scrutinize the attorneys for any collusion, nor did it apply the new Rule 23 factors.
[3] This again is the opposite of *Briseno* where the Ninth Circuit found the injunctive relief illusory as it did not obligate ConAgra to do anything over and above what it was already doing for business reasons. *Id.*

### III. THE FEE AWARD IS APPROPRIATE AS GOVERNED BY STATUTE

In determining the proper fee award in a class case, this Court "need not pick a theory out of a hat because Congress has already picked one for us…" *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 626 (6th Cir. 2020) (citing 28 U.S.C. § 1712)[4]. 28 U.S.C. § 1712 (b)(2) expressly allows the "application of a lodestar with a multiplier method of determining attorney's fees." Objector does not argue that lodestar was used inappropriately, but rather that it should not be used at all. And then the fees can only be determined after the settlement has been approved and after the vouchers have been redeemed. But this reading would ignore § 1712(b)(1) completely, which specifically states that if "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel", as is the case here, "any attorney's fee award **shall** be based upon the amount of time class counsel reasonably expended working on the action," i.e. the lodestar. (emphasis added). To the extent Objector has an issue with the application of the loadstar method to determine fees, his problem is with Congress, not this settlement.

Objector compounds this mistake with the assumption that injunctive relief is worthless, and thus the time and money expended by the lawyers to obtain that relief is also worthless. Not so. "[W]hen determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider . . . the economic value of any prospective injunctive relief obtained for the class." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007). Here, class members obtained the significant benefit of purchasing future products with no more than one (1) part per million benzene, half the level permitted by FDA

---

[4] "If Congress had required district courts to use the percentage method in every coupon settlement, then it would have created a perverse incentive for attorneys: namely, to settle too early and for too little in order to maximize the fees award on a per-hour basis." *Linneman*, 970 F.3d at 626.

guidance[5] - a "real and immediate" benefit actualized each time a purchase is made. *Williams v. Reckitt-Benckiser* 65 F.4th 1243, 1253 (11th Cir. 2023). By negotiating, implementing and monitoring manufacturing and testing policies and protocols far more quickly than the FDA, this settlement was responsible for ensuring that consumers had access to an effective cancer-preventing product far more quickly than had it waited for formalized FDA guidance[6]. Indeed, at least nine class representatives have already benefited from this injunctive relief—each was able to purchase sunscreen products with less benzene than permitted by the FDA and each has indicated a desire to continue to purchase such products in the future.

Congress has specifically stated that the loadstar method is an appropriate measure for awarding attorneys' fees where injunctive relief has been obtained. Again, 28 U.S.C. § 1712(b)(2) provides: "Any attorney's fee . . . shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. **Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees**." (emphasis supplied).

IV. **THE CLASS REPRESENTATIVES HAVE ARTICLE III STANDING AND MEET THE REQUIREMENTS OF RULE 23**

Objector argues that class certification fails because only nine of the twelve named plaintiffs allege future injury, but this argument fundamentally misunderstands both Article III and Rule 23 requirements. As Objector acknowledges, this Circuit holds that only the "named plaintiff

---

[5] FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs | FDA, Feb. 24, 2025 ("Drug manufacturers with a risk for benzene contamination . . . should not release any drug product batch that contains above 2 ppm, consistent with the recommendations described in the ICH Q3C guidance.").

[6] Ironically, while Objector purports to be advocating on behalf of the class members, the Objection seems to argue that the Class Counsel should be penalized rather than lauded for having implemented the safety protocols immediately. In so arguing, Objector creates a perverse Hobson's choice - delay critical benefits to class members until after final approval has been granted, or forgo payment for the time and efforts spent negotiating, implementing and monitoring such relief.

must have standing" for class certification. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). Here, nine named plaintiffs have standing for **both** damages and injunctive relief, which is more than sufficient to satisfy Rule 23's representativeness requirements. And Plaintiffs have named "at least one" class representative for both aerosol products and non-aerosol products. *See Williams*, 65 F.4th at 1258. *See* TAC, Dkt. No. 128 ¶¶ 5, 16. The fact that three named plaintiffs did not allege future injury does not defeat certification where adequate representation exists through the other nine. Moreover, Objector Frank ignores that the "large portion" analysis from *Cordoba* applies to the class as a whole, not just named plaintiffs. *See Cordoba*, 942 F.3d at 1276-77. Given that over 200,000 consumers filed claims in this case, that sunscreen is undisputedly a product that is purchased repeatedly and used on an ongoing basis throughout life, Objector has provided no basis to conclude that a "large portion" of the class lacks the intent to purchase again.

Objector's additional arguments that commonality and typicality are lacking are without merit. Common questions exist because, as alleged, there is a risk of benzene contamination in every sunscreen product, TAC at ¶ 299, meaning every class member is potentially exposed to "unsafe and/or unwanted levels of benzene," even if not every product has been tested. TAC at ¶ 49 (common questions include whether JJCI's products "contained unsafe and/or unwanted levels of benzene"). *See e.g.*, *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 653 (S.D. Fla. 2023) (common questions over alleged design defect causing safety risk in all automobiles involved in the case predominates). That is why JJCI issued a recall of "all lots" of its Neutrogena and Aveeno aerosol products in the first place. Further, Rule 23 does not require that class members' claims be substantially identical to be "typical." "The harm suffered by the named plaintiffs may differ in degree from that suffered by other class members of the class so long as the harm suffered is of the same type." *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D. Ohio 1991) (quoting *In*

re *Asbestos School Litig.*, 104 F.R.D. 422, 430 (E.D. Pa. 1984)). Here, the class members share predominantly common issues as to the conduct of JJCI despite being subjected to different levels of risk. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011). The fact that this is a settlement-only class is also important, because, as the U.S. Supreme Court has held, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, …for the proposal is that there be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Objector's standing arguments also fundamentally mischaracterize the allegations in the TAC and the applicable legal standards. Objector admits that a class can benefit from prospective injunctive relief when "individuals [ ] have ongoing relationships with the defendant," but he fails to acknowledge that is exactly the case here. Objector Opp. p. 25. Because numerous named class members have expressly declared they have purchased JJCI sunscreen products post-injunctive relief and further stated their intentions to continue to purchase these products in the future, these are not speculative assertions. They are concrete allegations of an existing and intended future relationship, creating the necessary Article III standing for prospective relief.

Objector attempts to dismiss these allegations as insufficient under *Williams*, but *Williams* involved materially different facts as addressed in Plaintiffs' Updated Motion for Approval, Dkt. 130 at 37-43.  Absent the injunctive relief obtained, JJCI would have every legal right to continue to manufacture and sell aerosol and/or non-aerosol sunscreen products with benzene levels above the agreed-upon 1 PPM limit because current FDA guidance sets a higher limit of 2 PPM benzene. The settlement agreement provided enforceable assurance that JJCI could not go beyond 1 PPM benzene. This is not the "hypothetical upon hypothetical upon hypothetical" that Objector paints it as.  Objector Opp. at p. 12. Rather, when litigation pressure fades, the retreat to an earlier,

cheaper, and regulatory compliant manufacturing process could reasonably be expected.

Objector's argument that some of the JJCI's obligations under the settlement have concluded does not strip the named Plaintiffs of standing to seek injunctive relief. Article III standing is assessed "at the time the action commences"—not at some later date, such as the time a settlement is ultimately approved. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). *See also U.S. Parole Comm. v. Geraghty*, 445 U.S. 388, 398 (1980)[7] *Ruehling v. Armstrong*, 2014 WL 12617962, at *3 (M.D. Fla. Nov. 3, 2014). Even if the settlement's manufacturing-related commitments no longer bind JJCI *today*, that does not change the fact that users of these everyday products stood to receive significant benefits from those commitments at the time this case was filed, and in fact received such benefits for at least two years. The named plaintiffs therefore had, and have, standing to seek those commitments.

V.   **RESPONSE TO OBJECTOR'S VOUCHER VALUATION ARGUMENTS**[8]

Objector's pessimistic redemption rate projections, which depend upon cherry-picked examples from other cases, fundamentally misunderstand the value proposition here. The settlement here has already demonstrated exceptional consumer engagement, which exceeds the problematic settlements Objector cites.[9] Over 209,000 consumers filed claims under this settlement—a level of participation that signals genuine consumer interest in the voucher relief being offered. Indeed, consumers continue to inquire as to when the vouchers will be issued.

---

[7] As explained in *DL v. District of Columbia*, 860 F.3d 713, 722 (D.C. Cir. 2017), "[t]he point in Geraghty was that claims relate back when a trial court's *error* prevents a class from gaining independent status under Rule 23. … What matters is that the named plaintiffs' claims became moot … due to the district court's mistake. In other words, but for the district court's error—certifying an overly broad class—the parents' claims would not have become moot."

[8] *See* Exhibit A Comparison Chart.

[9] The *Message Envy* class had approximately 106,000 claimants. Ross Wiener, Massage Envy: Are All Vouchers Now Coupons Under CAFA?, CERTUM GROUP (Oct 22, 2021), https://certumgroup.com/blog/litigation-news/massage-envy-are-all-vouchers-now-coupons-under-cafa/ (last accessed July 13, 2025), and the *Lumber Liquidators* class had 178,859 claimants, *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litigation*, 952 F.3d 471, 482 (4th Cir. 2020).

Rabe Dec. at para 9.  Moreover, people who took time to file claims are more likely to redeem vouchers than passive class members, and the already high claims rate demonstrates that consumers see ongoing value in Neutrogena and Aveeno products.

Unlike the durable goods and services in Objector's comparison cases, (e.g. bamboo flooring, warranties/accident protection) these vouchers are for consumable personal care products (like sunscreen and personal care products) that require regular replenishment, creating multiple natural redemption opportunities during the twelve-month voucher period.  Not only that, but both the FDA and major medical societies actively encourage people to keep buying and using sunscreen throughout their lives to minimize the risks inherent in exposure to the sun. As such, Objector's cited redemption rates from the *Massage Envy* and *Lumber Liquidators* cases are inapposite. Further, these vouchers benefit from the extensive retail presence of JJCI products, which are available at virtually every pharmacy chain (CVS, Walgreens, Rite Aid), grocery store, and online platform (Amazon).

The Third Amended Complaint ("TAC") also acknowledges that JJCI has successfully addressed the benzene issues through enhanced testing protocols, and that current products do not contain unsafe benzene levels. TAC. at ¶¶ 1 n.1, 42. Accordingly, several named plaintiffs have already "resumed purchasing the products post-recall and intend to continue doing so, believing the products are now safe." *Id.* at 7-9, 11-14. This resolution of the underlying safety concerns removes the primary barrier that might prevent redemption. This stands in stark contrast to the other settlements cited by Objector where ongoing product defects or service problems continue to deter consumer usage.

Moreover, at $4.98 per voucher, the individual amounts are sufficient for meaningful

purchases, in that they can cover significant portions of typical product costs.[10] The one-year redemption period also strikes the right balance. It's long enough for redemption, providing multiple purchase cycles for consumable products, but short enough to maintain urgency, preventing vouchers from being forgotten.

## VI. RESPONSE TO OBJECTOR'S REFUND VALUATION ARGUMENTS

Finally, as partially addressed above, Objector's argument that the $9.5 million in refunds should not be credited as settlement value fundamentally mischaracterizes the causal relationship between the litigation and J&J's refund program. While Objector attempts to draw an artificial distinction between "voluntary" corporate action and litigation-driven relief, the undisputed timeline demonstrates that the refund program was not just coincidental to the litigation pressure created by this case. The fact that JJCI announced its refund program less than two months after this lawsuit was filed—and after numerous, similar lawsuits were filed across multiple jurisdictions—demonstrates that the litigation, at least in part, created the pressure that drove JJCI's response and that the refund program was motivated, at least in part, by the present litigation.[11] *See Poertner v. Gillette Co.*, 618 Fed.Appx. 624, 629 (11th Cir. 2015) (rejecting objector Frank's argument that defendant's decision to stop selling the challenged products was not motivated by the present litigation). While JJCI may have characterized its actions as "voluntary" for public relations purposes, the reality is that it faced imminent class action litigation and chose to implement a refund program as a proactive response to that legal threat.

---

[10] Neutrogena sunscreen products, for example, typically range from $8 – $12 and rarely exceed $15. https://www.neutrogena.com/sun/sunscreen-for-face

[11] At the August 12, 2022 fairness hearing, JJCI's counsel himself acknowledged that the refunds paid to consumers as a result of the recall, and the injunctive relief obtained, amounted to "roughly $80 million in hard costs to [JJCI]" and is a "*fair way of thinking about the value of the relief that has been obtained by the class.*" 8/12/2022 Hearing Trans. 102:16-18 (emphasis added). This sentiment was echoed by this Court, who stated: "I think the timing is significant because the recall [ ] is approximately two months *after* the [Plaintiffs'] complaint was filed." *Id.* at 86:16-20. Objector offers no "contrary evidence" to refute JJCI's assertion, nor the Court's factual finding,

The settlement removed that uncertainty by contractually obligating JJCI to maintain the refund program (which has already been fully booked with no discounting) through a specified date. This certainty itself has value—class members could rely on the availability of refunds rather than hoping JJCI would continue its "voluntary" program until the date specified in the settlement. Objector relies on *Reynolds* for the proposition that only "incremental benefits" conferred on the class as a result of the settlement count toward settlement value. 288 F.3d 277, 286 (7th Cir. 2002). However, the *Reynolds* court's concern was with benefits that could occur "with absolutely minimal effort," not benefits that class counsel actively negotiated to ensure they did not expire prematurely. *See id.* Here, Class Counsel took substantial steps to ensure continued access to refunds and safe products, including the installation of an ombudsman who could assist claimants with their refunds. These are benefits to the class that have now actualized. Unlike the cases cited by Objector, where the injunctive relief codified practices the defendant "was … already doing" before the lawsuit was filed, *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1080 (9th Cir. 2017), here JJCI was not offering cash refunds to consumers before this litigation was filed, nor had it put its enhanced testing protocol in place—both the refund program and the changed business practices were *new* responses to litigation pressure. There can be no question that this litigation and the ensuing settlement agreement, which is enforceable by the court, materially altered the parties' legal relationship and modified JJCI's behavior in a way that directly benefited Plaintiffs and the class. *See McBride v. Legacy Components, LLC*, 778 Fed.Appx. 708, 710-711 (11th Cir. 2019). Following Objector's approach would perversely incentivize manufacturers to delay implementing remedial measures in response to litigation, knowing that early action would not be credited in any eventual settlement. This would harm class members by delaying relief and harm judicial efficiency by encouraging protracted litigation.

VII.  **CONCLUSION**

For all the reasons discussed, the settlement should be approved.

Dated: July 24, 2025

By: /s/ *Bryan F. Aylstock*
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
BRYAN F. AYLSTOCK (FL Bar # 78263)
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: baylstock@awkolaw.com
E-mail: jrichards@awkolaw.com

By: Kiley L. Grombacher
**BRADLEY/GROMBACHER, LLP**
Kiley L. Grombacher, Esq. (245960)
Marcus J. Bradley, Esq. (174156)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: kgrombacher@bradleygrombacher.com
E-Mail: mbradley@bradleygrombacher.com

*Attorneys for Plaintiff*